# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

---

Skidmore et al.

*Michael Skidmore, Trustee for the*
*Randy Craig Wolfe Trust*
*Plaintiff-Appellant*

v.

Led Zeppelin *et al.*

*Defendants-Appellees*

---

# Plaintiff-Appellant Michael Skidmore's
# Excerpts of the Record
# Volume VI of XI

---

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California.  The case was docketed in the Central District at 15-cv-03462)

---

Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyers for Appellant Skidmore*

## EXCERPTS OF THE RECORD: VOLUME VI of XI
(1240 – 1539)

06/21/2016    Transcript for June 21, PM (Doc. No. 287) ...................................................... 1240

06/22/2016    Transcript for June 22, AM and PM (*Doc. No. 280*)........................................ 1311

06/23/2016    Transcript for June 23, AM (*Doc. No. 281*)...................................................... 1402

07/08/2016    Amended Judgment (*Doc. No. 297*) .................................................................. 1420

06/23/2016    List of Exhibits and Witnesses (*Doc. No. 272*)................................................ 1422

06/23/2016    Jury Note 2 (*Doc. No. 266*) .............................................................................. 1496

06/23/2016    Verdict Sheet (*Doc. No. 263*)........................................................................... 1497

06/23/2016    Jury Instructions Given (*Doc. No. 273*)........................................................... 1501

06/23/2016    Judgment on Verdict (*Doc. No. 262*)................................................................ 1535

06/15/2016    Plaintiff's Motion to Use Recordings to Prove Access (Doc. No. 244) .......... 1536

1               UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3         HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                      – – –

5

6  MICHAEL SKIDMORE, AS TRUSTEE FOR  )
    THE RANDY CRAIG WOLFE TRUST,     )
                               )

7               PLAINTIFF,   )
                               )

8        vs.               ) No. CV 15-03462-RGK
                               )

9  LED ZEPPELIN; JAMES PATRICK PAGE;  )
    ROBERT ANTHONY PLANT; JOHN PAUL    )

10  JONES; SUPER HYPE PUBLISHING,     )
    INC.; WARNER MUSIC GROUP CORP.,    )

11  PARENT OF WARNER/CHAPPELL MUSIC,  )
    INC.; ATLANTIC RECORDING           )

12  CORPORATION; RHINO ENTERTAINMENT   )
    COMPANY,                        )

13                              )
               DEFENDANTS.   )

14  _____)

15

16            REPORTER'S TRANSCRIPT OF JURY TRIAL

17                DAY 5, VOLUME II

18             TUESDAY, JUNE 21, 2016

19                 12:58 P.M.

20             LOS ANGELES, CALIFORNIA

21

22

23          CINDY L. NIRENBERG, CSR 5059, FCRR
            U.S. Official Court Reporter

24            255 East Temple Street
            Los Angeles, CA 90012

25            *www.msfedreporter.com*

2

```
1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE
     RANDY CRAIG WOLFE TRUST:
4
          FRANCIS ALEXANDER, LLC
5         BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
               AJ FLUEHR, ATTORNEY AT LAW
6         280 N. PROVIDENCE ROAD, SUITE 1
          MEDIA, PENNSYLVANIA  19063
7         215-500-1000

8         KULIK GOTTESMAN & SIEGEL, LLP
          BY:  GLEN L. KULIK, ATTORNEY AT LAW
9         15303 VENTURA BOULEVARD, SUITE 1400
          SHERMAN OAKS, CALIFORNIA  91403
10        310-557-9200

11

12
     FOR DEFENDANT LED ZEPPELIN:
13
          PHILLIPS NIZER, LLP
14        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
          666 FIFTH AVENUE
15        NEW YORK, NEW YORK  10103
          212-977-9700
16

17   FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:

18        LAW OFFICES OF PETER J. ANDERSON, PC
          BY:  PETER J. ANDERSON, ATTORNEY AT LAW
19        100 WILSHIRE BOULEVARD, SUITE 2010
          SANTA MONICA, CALIFORNIA  90401
20        310-260-6030

21        PHILLIPS NIZER, LLP
          BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
22        666 FIFTH AVENUE
          NEW YORK, NEW YORK  10103
23        212-977-9700

24

25
```

1    **APPEARANCES OF COUNSEL (CONTINUED):**

2

3    **FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY:**

4
            LAW OFFICES OF PETER J. ANDERSON, PC
5           BY:  PETER J. ANDERSON, ATTORNEY AT LAW
            100 WILSHIRE BOULEVARD, SUITE 2010
6           SANTA MONICA, CALIFORNIA  90401
            310-260-6030
7

8

9

10   ALSO PRESENT:

11          NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

12          BRAD COHEN, WARNER MUSIC GROUP

13          SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

14          KEVIN SEGAL, TRIAL TECHNICIAN

15          DAN MORENO, TRIAL TECHNICIAN

16

17

18

19

20

21

22

23

24

25

4

```
1                    I N D E X

2

3    DEFENDANTS' WITNESSES:                PAGE

4    JAMES PATRICK PAGE

5        DIRECT BY MR. ANDERSON (RESUMED)     5

6        CROSS BY MR. MALOFIY                18

7

8

9    FURTHER PROCEEDINGS               PAGE

10   DISCUSSION HELD OUTSIDE PRESENCE OF JURY  29

11   DISCUSSION HELD OUTSIDE PRESENCE OF JURY   45

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, JUNE 21, 2016

 2                            12:58 P.M.

 3                          - - - - -

 4       (Jury in at 12:58 P.M.)

 5              THE COURT:  Okay.  The record will reflect that all

 6   the members of the jury are in their respective seats in the

 7   jury box, the witness is on the witness stand, and we are in

 8   direct examination.

 9              Counsel, you may inquire.

10              MR. ANDERSON:  Thank you very much, Your Honor.

11                       JAMES PATRICK PAGE,

12                having been previously duly sworn,

13                    testified further as follows:

14                       DIRECT EXAMINATION

15                          (RESUMED)

16   BY MR. ANDERSON:

17   Q.   Mr. Page, before we continue with the creation of

18   "Stairway to Heaven," just a couple of questions I wanted to

19   ask you.

20              Did you attend an event at the Berklee College of

21   Music a few years ago?

22   A.   I did.

23   Q.   And in your honor, did they open up a portion of music

24   with some portion of "Stairway to Heaven"?

25   A.   Yes.  I was receiving an honorary doctorate there and --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

6

1    along with some other participants, as well, inductees, and

2    they had a musical concert reflecting the work of myself and

3    others.

4            But they opened up the whole of the concert,

5    beginning of the concert, with what we call the fanfare, which

6    precedes -- they didn't play the solo, but it precedes the solo

7    in "Stairway to Heaven."

8    Q.   Okay.  Thank you.

9            Continuing with the creation of "Stairway to Heaven,"

10   when I asked you the question about your original concept, you

11   used the phrase "a reveal."

12           What did you mean by "a reveal"?

13   A.   Well, I was working towards something which was quite

14   symphonic and also anthemic.  So what I meant by "a reveal" was

15   that the instruments would be layered.  As the verses continued

16   through, they would be layered or be introduced to include more

17   texture.  And as that texture came, it would -- it would just

18   keep adding more things texturally to the whole piece.

19   Q.   Thank you.

20           When did you start composing music for "Stairway to

21   Heaven"?

22   A.   Well, it's somewhere between May and August of 1970.

23           I actually moved houses during that period, as well,

24   so in between being -- touring and whatever.  I would say it's

25   between the location of Pangbourne in Berkshire or my home in

7

1    Sussex, which was Plumpton.

2    Q.    Okay.  And did you work on music for "Stairway to Heaven"

3    at those houses?

4    A.    Well, I was working on various ideas all the time, to be

5    honest with you, if I wasn't on the -- if I wasn't on the road.

6    It gave me -- it gave me the balance between the sort of loud

7    music on tour and I'd sort of turn the coin and play acoustic

8    guitar when I wasn't on the road, and I would be preparing for

9    the next album that was coming.  So, yes, acoustic guitar.

10   Q.    Okay.  Thank you.

11         Which part or parts of "Stairway to Heaven" did you

12   compose first?

13   A.    Well, I -- I seem to remember that I had the fanfare first

14   and the idea of that going into a solo, which was pretty

15   radical and no one had done something like that before.

16   Q.    Okay.  And early on, had you decided to use a 12-string

17   guitar?

18   A.    During the build through it, yes.

19   Q.    Okay.  And at some point, did you work on "Stairway to

20   Heaven" at Headley Grange?

21   A.    Yes, I did.

22   Q.    When you first arrived at Headley Grange, could you tell

23   us what you had in terms of "Stairway to Heaven" at that point?

24   A.    Well, basically, I had the ideas for a map, if you like,

25   of putting this together, all the sections, and I -- you know,

8

1    as I had said before earlier, I wanted it to sort of reach a

2    sort of climax at the end of it.

3            Obviously, at this point of time, there was no lyrics

4    involved, so it was really just the sequence and the mapping of

5    the music and the sections.

6            It was an ambitious piece and I needed to -- I needed

7    to -- I must say that with Led Zeppelin, if you came up with

8    ideas or somebody had a riff or something, if it wasn't very

9    good, it would be jettisoned and you move on very quickly to

10   something else.

11           So because this was a very ambitious idea, I wanted

12   to make sure that rather than me just try and plow through on

13   my own with nobody knowing it, I thought the best thing to do

14   was to get together with John Paul Jones and so at least there

15   would be two members that would know it from beginning to end.

16   So I started to routine him.

17   Q.   Okay.  Before we get to that, could you tell us, what is

18   Headley Grange?

19   A.   Ah, well, Headley Grange was a -- excuse me.  Headley

20   Grange was a country house in -- pretty isolated -- that was in

21   Hampshire in a village called Headley.  Hampshire is in

22   England, in the south of England.

23           And I had heard that bands had -- well, a band had

24   rehearsed there.  There might have been bands, but it was

25   Fleetwood Mac.  So it was also said that you could use it as a

9

1   residence, as well, stay there and it had enough bedrooms to do

2   that.

3          So knowing that Fleetwood Mac had been there and it

4   was isolated, there hadn't been any noise problems, so I sort

5   of started putting two and two together and adding up, and then

6   four plus four equals eight.  And that's the idea of using

7   Headley Grange, to reside there -- because it was, you know, a

8   commitment, asking the rest of the band if they'd do this, you

9   know -- and bringing in a mobile recording truck which had a

10  multitrack.

11         So normally recordings in those -- you know, the

12  masters will be two tracks, but this is a -- this is a

13  multitrack, so you could record on various tracks to various

14  instruments.

15  Q.   And did you and the other members of Led Zeppelin work on

16  other recordings and compositions at Headley Grange?

17  A.   Oh, yes.  We worked on lots of material there.

18  Q.   Okay.  Did you use the mobile recording truck for other

19  compositions at Headley Grange?

20  A.   Well, the thing was that we arrived and the truck arrived

21  more or less at the same time, and the microphones were sort of

22  set up into the -- to begin with, into the living room.

23         And then we just got on with it, really.  We

24  started -- you know, we were -- we were staying there, we were

25  eating there, sleeping there, and we were writing and recording

10

1  music there.

2  Q.   And did I understand your testimony a few minutes ago --

3  did I understand correctly that the first person you introduced

4  what eventually became "Stairway to Heaven" to was John Paul

5  Jones?

6  A.   I think so.

7  Q.   And can you describe for us how you introduced the music

8  to John Paul Jones and -- let's start with that.

9  A.   Well, let's just say I had a very ambitious map that I was

10  trying to establish and something which was going to sort of

11  break certain musical rules, this whole idea of acceleration.

12  It's more in classical music you'll find this, but not

13  necessarily in pop or what one loosely termed rock.

14       So I basically wanted to make sure that I could run

15  through the various ideas that I had.  I only had an idea of

16  how to glue them together, but, as I say, I wanted to have an

17  ally who would know it so by the time we got together with John

18  Bonham and, indeed, Robert, you know, it would be starting to

19  shape up into a piece.

20  Q.   Okay.  And was that introduction -- well, actually, I'm

21  sorry.  Let me start this way.

22       Were there tapes of you introducing the pieces, the

23  music, to John Paul Jones and then other members of the band?

24  A.   Well, I didn't play anybody any of the cassette tapes that

25  I had of any of this.  I don't know whether there's any

1    cassette tapes of bits of "Stairway" because they've gone off

2    into the ether, I'm afraid, but I did have a cassette recorder

3    and I was recording the -- fortunately recording the stages of

4    development of the song.

5    Q.   And those recordings that you do have exist today and were

6    produced in this case?

7    A.   Well, yes, they exist today.

8    Q.   And they were done at Headley Grange in 1970?

9    A.   Yes.  Yes.

10   Q.   I'm going to play what I understand is the earliest

11   surviving recording from Headley Grange relating to "Stairway

12   to Heaven."

13         And before I do that, can you sort of tell us what

14   we're going to hear?

15   A.   Okay.  You're going to hear me introducing it to --

16   basically, routining it so that -- so that John Paul Jones gets

17   to memorize it.  And the bits that you will hear, it's the same

18   story.  I'm laying out the overall plan for it.

19         John Paul Jones is on the electric piano because I

20   wanted the electric piano to come in at some point on this

21   song, because, as I say, it was very ambitious and also very

22   long, that it wouldn't have been for him just to play the bass

23   along with this.  It wouldn't have been as effective as if he'd

24   have played the electric piano with the voicings of the guitar.

25         So what we're going to hear is this is the very first

12

1   sort of introduction, if you like, for me to John Paul Jones

2   where we're running through, and I think right now is the time

3   to record it as a point of reference.  It's like a sketchbook,

4   you know?

5           And on this, as well, there is -- there is a section

6   that I try out that gets jettisoned after this tape.

7   Q.   Okay.  Could I ask you, when you hear that section come

8   up, when you hear the portion that was --

9   A.   Thrown away.

10  Q.   -- if you could just raise your hand so that we know.

11  A.   Yes, certainly.

12          MR. ANDERSON:  And so, Your Honor, I would seek leave

13  to play Exhibit 2011-1.

14          THE COURT:  Okay.

15      *(Playing of audio recording.)*

16          THE WITNESS:  (Indicating).  That was --

17          MR. ANDERSON:  I didn't mean for you to stop it.  We

18  want to hear --

19      *(Laughter.)*

20          MR. ANDERSON:  We want to hear -- he's just

21  identifying it.

22      *(Playing of audio recording.)*

23          MR. ANDERSON:  Okay.  So we can go ahead and stop it

24  at this point.

25  ///

13

```
 1  BY MR. ANDERSON:
 2  Q.   So did we hear -- first of all, excuse me, we heard the
 3  portion that you had created but in this process of creating
 4  "Stairway to Heaven" you decided to abandon?
 5  A.   When I put my hand up, yeah, that bit, I sort of threw it
 6  in at the time and that's all -- knowing they're going to throw
 7  this out.
 8  Q.   Okay.
 9  A.   So it doesn't really make it anyway past that stage.
10  Q.   Right.  And then we --
11  A.   But it's a process of repetition here.  We're playing
12  things over and over and turn back to the very first part --
13  Q.   And that's what I was going to ask.  Did we hear --
14  A.   -- so John Paul Jones gets to be more familiar, right.
15  Q.   Okay.  Thank you.
16        Did we hear in this recording basically you were
17  repeating portions of it so John Paul Jones could learn it?
18  A.   It's at the process where he's -- he's -- yeah, yeah.
19  It's pretty -- this recording is pretty soon after I've
20  originally played it to him.  I maybe only run through it once
21  or twice beforehand and then it's time to make a note of it.
22  Q.   And this is a recording done 46 years ago in a country
23  house at Headley -- called Headley Grange and -- of you and
24  John Paul Jones working on what became "Stairway to Heaven,"
25  right?
```

14

```
 1    A.   Yeah.  Like the first parts, yeah.
 2              MR. ANDERSON:  Okay.  And, Your Honor, if I may have
 3    leave to play Exhibit 2011-3.
 4              MR. MALOFIY:  What is it?
 5              MR. ANDERSON:  It's one -- also one of the Headley
 6    Grange tapes.  It's the third one.
 7              THE COURT:  Okay.
 8         (Playing of audio recording.)
 9    BY MR. ANDERSON:
10    Q.   Okay.  Could you please describe what we just heard?
11    A.   Yeah.  Okay.  So there's like a sort of link between the
12    verses, and then there's some arpeggio chords, which are played
13    quite rhythmically, and that's sort of establishing the -- an
14    area whereby that would be vocals to come in.
15              And then it gets through to the point of the fanfare,
16    and John is -- he doesn't really know what it is, so I've
17    stopped it so I can show him what the fanfare is.
18    Q.   Okay.  Thank you.
19              MR. ANDERSON:  There are two more that I would like
20    to play.  The next one is 2011-5.
21              MR. MALOFIY:  One moment.
22              No objection.
23              THE COURT:  Thank you, counsel.
24              Go ahead.
25         (Playing of audio recording.)
```

15

```
1              MR. ANDERSON:  We can stop it at that point.
2              THE WITNESS:  Yeah.
3    BY MR. ANDERSON:
4    Q.   If you can please describe what we've heard in that
5    portion of that recording.
6    A.   Okay.  So we've gone from the fanfare section and then it
7    goes into what would be the guitar solo chords.  And in actual
8    fact, the vocal will pick up the last verse over those chords,
9    as well, except -- yeah, that's it.  That's what happens there.
10   Q.   Okay.
11   A.   So that went on for ages, those chords, and I thought it
12   was best to not try your patience.
13   Q.   Okay.  Thank you.
14              And, finally, in terms of the Headley Grange tapes,
15   if we could play Exhibit 2011-7.
16              MR. MALOFIY:  No objection.
17        (Playing of audio recording.)
18              MR. ANDERSON:  Thank you, Your Honor.
19   BY MR. ANDERSON:
20   Q.   Could you please describe what we just heard?
21   A.   Okay.  Well, we've heard a run-through now with what John
22   Paul Jones and I had worked out the night before -- I think
23   it's probably the following day -- running through the overall
24   structure with Robert.
25              And Robert, you can hear that he's got some of the
```

1  lyrics already coming through that, again, would end up on the

2  final one.  But at this point, we still haven't run it through

3  with John Bonham on drums, and he's going to come in almost

4  about halfway through the song --

5  Q.   And --

6  A.   -- and that's going to be after this.

7  Q.   Thank you.

8       And did I hear correctly that Mr. Plant had not

9  completed all the lyrics and at some point --

10 A.   Well, this is a really early stage.  You know, again, this

11 is a really, you know, early growth of the -- of the song and

12 the piecing together of it.

13      It's -- yeah, it's going through up to the point of

14 the solo, where the chords were just repeating over and over.

15 We're at no point at the moment where Robert's going to come up

16 with the last verse, for example, but once we get -- once we

17 start kicking this over with the -- with the drums, as well,

18 then it's getting more sort of -- how do you put it? -- more

19 growth to it and more volume even, you know, and more texture.

20      And then Robert sort of finishes the vocals -- well,

21 as far as I remember, he had a good 85 percent of it all done

22 in a very, very short time.

23 Q.   And so all of these recordings that we've listened to are

24 46-year-old recordings of the process of creating "Stairway to

25 Heaven" at Headley Grange?

17

```
1   A.    Correct.

2   Q.    And where was Headley -- I'm sorry.  Where was "Stairway

3   to Heaven" actually recorded in a studio?

4   A.    Okay.  Can I just explain why we go to the studio?  Is

5   that all right?

6         MR. MALOFIY:  Objection.  Asked and answered.  We

7   went through this on direct and also on cross.

8         THE COURT:  Why don't you state the question again,

9   counsel.

10        MR. ANDERSON:  Okay.  I think he's referring to his

11  question of him, but --

12  BY MR. ANDERSON:

13  Q.    Yes, sir.  Without elaboration, just where was the -- the

14  final recording that was released to the public in 1971 --

15  A.    The final recording was recorded not at Headley Grange.  I

16  elected to take it up to London to a studio called Island

17  Studio, and we went in the large studio, the Number 1 studio,

18  and we recorded it there.

19        MR. ANDERSON:  Okay, Your Honor.  If I may now have

20  permission to play the entirety of the released version,

21  "Stairway to Heaven," that plaintiff is claiming is an

22  infringement.

23        THE COURT:  Okay.

24        MR. MALOFIY:  No objection.  Our focus on the first 2

25  minutes and 14 seconds, to be clear --
```

18

```
 1                THE COURT:  Okay.

 2                MR. MALOFIY:  -- with counsel.

 3                THE COURT:  Okay.

 4           (Playing of audio recording.)

 5  BY MR. ANDERSON:

 6  Q.   Mr. Page, is that Led Zeppelin's 1971 recording of your

 7  and Mr. Plant's musical composition, "Stairway to Heaven"?

 8  A.   Yes, it is.

 9                MR. ANDERSON:  Thank you, Your Honor.  That's all the

10  questions I have for Mr. Page.

11                THE COURT:  Cross-examination.

12                MR. MALOFIY:  Yes.

13                          CROSS-EXAMINATION

14  BY MR. MALOFIY:

15  Q.   You had just testified that you started working on

16  "Stairway to Heaven" in May, June, is that correct --

17                MR. ANDERSON:  Objection.

18  BY MR. MALOFIY:

19  Q.   -- of 1970?

20                MR. ANDERSON:  Misstates the testimony.

21                THE COURT:  Well, why don't we just ask him.

22                Did you start working during that period of time on

23  it?

24                THE WITNESS:  I started working on various guitar

25  pieces at home between those months.  I can't exactly say
```

```
 1    exactly where it is.
 2            But do you mind if I can just clarify this in one
 3    way?  I do know that I go to Headley Grange from my house at
 4    Plumpton, so, yes, I mean, this stuff was -- all these bits
 5    were put together before we went to -- before I went to
 6    Headley.
 7    BY MR. MALOFIY:
 8    Q.   Isn't it true New Musical Express, April 25, 1970, it
 9    stated:  "In what direction are you going?"
10            Your answer was:
11            "It sounds crazy, but we've got something we want to
12            try, but I don't want to tell you about it in case it
13            doesn't come off.  It's an idea for a really long
14            track on the next album.  And so much that 'Dazed and
15            Confused' and all those things went into sections,
16            but we want to try something new with the organ and
17            acoustic guitar build-up and build up to the electric
18            thing."
19            Do you recall that the genesis of "Stairway to
20    Heaven" was an acoustic guitar and an organ, not the fanfare?
21    A.   That's not actually an organ on there, but I -- but what I
22    could say is I don't remember the circumstances of that
23    interview at all, but I'd always had ideas of doing things
24    which -- which involved electric -- acoustic guitar building
25    into electric.  I've done it before with "Ramble On," et
```

1  cetera, et cetera.  It wasn't a new idea, but to actually have

2  orchestrated guitars and getting that thing across.  It doesn't

3  necessarily mean that I'm talking about "Stairway" there, to be

4  honest.

5           MR. MALOFIY:  Can we pull up 98.

6  BY MR. MALOFIY:

7  Q.   This is the same page of the *New Musical Express* we looked

8  at earlier on in this case with your testimony.

9           MR. MALOFIY:  I would just blow this up so you can

10  see it.

11      *(The exhibit was displayed on the screen.)*

12  BY MR. MALOFIY:

13  Q.   Can you read that?

14  A.   "It sounds corny, but we've got something we want to try

15  out, but" -- okay.  Well, we haven't tried it out, I don't

16  think, then if I said that.

17  Q.   Right.  But you were sharing to a reporter at the *New*

18  *Music Express* --

19  A.      Yeah.

20  Q.   -- that you were trying this piece out that was -- that

21  was going to be the basis of acoustic guitar and organ and then

22  building to a bigger piece.

23  A.      Yeah, but it doesn't -- yeah, I'm saying that.  I'm

24  saying -- I'm outlining some sort of thing that has textures to

25  it, but it doesn't necessarily mean to say that it is

| | |
|---|---|
| 1 | "Stairway" or that it isn't, really. |
| 2 | Q.   Does this refresh your recollection that you started |
| 3 | "Stairway to Heaven" in April of 1970 and that it started out |
| 4 | with an acoustic guitar and an organ part? |
| 5 | A.   No. |
| 6 | Q.   It doesn't? |
| 7 | A.   No, it doesn't, because we don't start working it out -- |
| 8 | it's not even an organ, it's the electric piano, and that's |
| 9 | much later in the year of 1970 -- |
| 10 | Q.   You'd agree -- |
| 11 | A.   -- at Headley Grange. |
| 12 | Q.   You'd agree that "Taurus" is an electric piano and an |
| 13 | acoustic guitar? |
| 14 |          MR. ANDERSON:  Objection.  Lacks foundation.  It's |
| 15 | beyond the scope of the direct. |
| 16 |          THE COURT:  Overruled.  If you know. |
| 17 |          THE WITNESS:  No.  No.  No. |
| 18 |          THE COURT:  Okay.  Next question. |
| 19 | BY MR. MALOFIY: |
| 20 | Q.   Am I correct that this is also the same page of the *New* |
| 21 | *Musical Express* which indicates that "Spirit do some really |
| 22 | nice things on albums," which is a quote attributable to you? |
| 23 |          MR. ANDERSON:  Objection.  Outside the direct. |
| 24 |          THE COURT:  Sustained.  It's outside the scope of |
| 25 | direct. |

22

1  BY MR. MALOFIY:

2  Q.   Isn't it true the story you told in court as to how

3  "Stairway to Heaven" was written is different than what you had

4  stated in recorded interviews in 1972?

5          MR. ANDERSON:  Objection.  Relevance.  Argumentative.

6  Outside the scope.

7          THE COURT:  Overruled.  If you know.

8          THE WITNESS:  I don't know whether it's different to

9  what I've said before.  I wouldn't have thought so, because

10  it's pretty clear about how it comes together, me writing it on

11  acoustic guitar at home and then presenting it to John Paul

12  Jones so he gets an idea of it.  And we've actually heard the

13  way that it builds.  I mean, it can't be any different than

14  that.

15          MR. MALOFIY:  Please play 100165-A.

16          MR. ANDERSON:  If we can just have a moment,

17  Your Honor.

18          MR. MALOFIY:  It was already played and also moved

19  into evidence earlier on in this case.

20          MR. ANDERSON:  With the characterization by counsel

21  it was a 1972 interview, we've since determined, I believe,

22  it's a 1990 interview.

23          MS. FREEMAN:  165-A.

24          MR. ANDERSON:  Oh, okay.

25          MR. MALOFIY:  No, it's not.

23

```
1              THE COURT:  You may play it, counsel.

2              MR. MALOFIY:  Thank you.

3              Move to strike counsel's mischaracterization.

4              THE COURT:  Sustained.

5              MR. MALOFIY:  Thank you.

6         (Playing of audio recording.)

7              MR. MALOFIY:  Stop it there.

8    BY MR. MALOFIY:

9    Q.   It says -- if I'm not mistaken, that's you on that

10   recording, correct?  Is that you?

11   A.   That's my voice.

12   Q.   All right.  And it says:  "I came up to -- I wrote it in

13   different places.  The intro of it I came up in a cottage in

14   Bron-Yr-Aur"; is that right?  Thank you.

15             Did I pronounce it correctly?

16   A.   That's what I hear it to say.

17   Q.   I did my best.

18             Now, you testified earlier on that this was a --

19   glitch, you glitched in 1972, correct?

20   A.   May I ask you a question, please?  Is this the interview

21   of Pete Frame?

22   Q.   Sir, your counsel --

23   A.   Oh, sorry.

24   Q.   Your counsel will, I'm sure --

25             THE COURT:  Why don't you state the next question.
```

24

```
 1              Restate it.
 2   BY MR. MALOFIY:
 3   Q.   Isn't it true earlier on when you testified, you said you
 4   had a glitch in that interview and you said the wrong thing --
 5   A.   Yeah.
 6   Q.   -- in 1972?
 7   A.   Yeah, that's correct.
 8   Q.   Are you having a glitch today?
 9              MR. ANDERSON:  Objection, Your Honor.
10              THE COURT:  Sustained.  Argumentative.
11              THE WITNESS:  I would rather hope not.
12              THE COURT:  That means you don't answer.  Okay.
13   BY MR. MALOFIY:
14   Q.   Did you ever correct that misstatement ever?
15              MR. ANDERSON:  Objection, Your Honor.  Vague,
16   ambiguous, outside the scope of the direct.
17              THE COURT:  Sustained.
18              MR. MALOFIY:  Let me go to 100164A, also played and
19   admitted into evidence.
20              MR. ANDERSON:  Your Honor, that is the one that
21   character -- excuse me -- counsel characterized as a 1972
22   recording when he was questioning Mr. Jones and which we've
23   since determined is a 1990 recording.
24              THE COURT:  Why don't you two figure it out.
25              Talk to him.
```

```
 1              MR. MALOFIY:  I'm not sure if we will figure it out

 2     right now.

 3              THE COURT:  Is it a 1997 or 1992?

 4              MR. MALOFIY:  From what -- this is from -- this is

 5     from audio defense counsel provided which was stamped 1972.

 6              THE COURT:  Okay.

 7              MS. FREEMAN:  No, it is not.  It is stamped 1990.

 8              THE COURT:  Well, go ahead.  You can get that on

 9     cross.

10              MS. FREEMAN:  It's 1990.

11              THE COURT:  Counsel.

12              Go ahead.

13              MR. MALOFIY:  Can we play that, as well.

14          (Playing of audio recording.)

15              MR. MALOFIY:  Stop it.

16     BY MR. MALOFIY:

17     Q.   Is that John Paul Jones' voice?

18     A.   That's John Paul Jones' voice.

19     Q.   And whether or not he said it in 1972 or, as counsel wants

20     to make clear, in 1990 -- I know it's a dispute at this

21     stage -- but he said something diametrically opposed and you

22     said something different as you -- in court here under oath,

23     correct?

24              MR. ANDERSON:  Your Honor, it's argumentative.

25              THE COURT:  Sustained.  It will be argumentative.
```

26

```
 1              You can bring that up in argument, counsel.
 2    BY MR. MALOFIY:
 3    Q.    Whether he said it in 1972 or 1990, his voice here said
 4    that you and Mr. Plant had come back from the Welsh mountains
 5    with a guitar intro and maybe a verse.
 6              Did I hear that correctly?
 7              MR. ANDERSON:  Objection.  It's argumentative.  It's
 8    not even impeaching.
 9              THE COURT:  It speaks for itself.
10              MR. ANDERSON:  And it speaks for itself.
11              THE COURT:  The jury heard it.
12    BY MR. MALOFIY:
13    Q.    Sir, to be clear with this jury, there's a difference
14    between Headley Grange and Bron-Yr-Aur, correct?
15              MR. ANDERSON:  Objection.  Vague and ambiguous.
16              THE COURT:  Overruled.
17              You've got about a minute left, counsel.
18              THE WITNESS:  There's a difference between
19    Bron-Yr-Aur, Headley Grange, and, indeed, my home.
20    BY MR. MALOFIY:
21    Q.    Right.  And Bron-Yr-Aur is a cottage in the Welsh
22    mountains, correct?
23    A.    Yes, when we were there on the third album, yeah.
24    Q.    And that's where you and Mr. Plant had spent time together
25    alone, correct?
```

```
 1   A.   For the third album, yes.

 2   Q.   And then later, you met with the group, John Paul Jones,

 3   Robert Plant, yourself, and also John Bonham, to work in

 4   Headley Grange, correct?

 5   A.   I met with them, yes.

 6   Q.   Right.  And this was months later, correct?  This was

 7   sometime in December?

 8   A.   A good time after Headley Grange, yeah.

 9   Q.   But to be clear, Bron-Yr-Aur --

10   A.   I'm sorry.  I'm sorry.  A good time after Bron-Yr-Aur,

11   yeah --

12   Q.   Right.  Thank you.

13   A.   -- because we were touring.

14         THE COURT:  Okay.

15   BY MR. MALOFIY:

16   Q.   One last question.

17         THE COURT:  Last question.  Go ahead.

18   BY MR. MALOFIY:

19   Q.   Do you -- do you believe that the intro to "Stairway to

20   Heaven" is protectable or do you believe it is just common?

21         MR. ANDERSON:  Objection, Your Honor.  Calls --

22         THE COURT:  Sustained.  That's for the jury to

23   determine.

24   BY MR. MALOFIY:

25   Q.   If someone took the intro to "Stairway to Heaven," would
```

```
 1    you sue?

 2            MR. ANDERSON:  Your Honor --

 3            THE COURT:  Sustained.

 4            Okay.  Thank you, counsel.

 5            MR. MALOFIY:  Thank you.

 6            THE COURT:  Is there redirect?

 7            MR. ANDERSON:  Thank you, Your Honor.  Defendants

 8    rest.

 9            THE COURT:  Okay.  You may step down.

10            THE WITNESS:  Thank you, sir.

11            THE COURT:  Ladies and gentlemen, I know it's ten of

12    1:00 -- or ten of 2:00, I guess, but we are going to be

13    breaking at this time.

14            We're going to have you come back in tomorrow morning

15    at 8:30 and I anticipate at that time we'll go right into

16    argument and instruction, but I have to talk with the

17    attorneys.  We have to do jury instructions and everything else

18    this afternoon, so I'm going to excuse you at this time.

19            I know you don't want to go home, but I'm going to

20    excuse you anyway and we're going to have you come back in at

21    8:30 tomorrow morning.

22            Now, remember it's particularly important now that

23    you not think about this case or talk to anybody else or form

24    or express any opinions about the matter until you return and

25    go back into deliberations.  So with that admonishment, we will
```

1    see you back in at 8:30 tomorrow morning.

2              MR. KULIK:  Your Honor, just --

3              THE COURT:  We'll be on break, counsel.  I'll come

4    back and talk to you afterwards.

5              MR. KULIK:  We have --

6              THE COURT:  Counsel, I'll come back and talk to you

7    in a second.  We're on break.  We'll be in recess.

8              THE CLERK:  All rise.

9         *(Jury out at 1:49 P.M.)*

10        *(Recess taken 1:49 to 1:58 P.M.)*

11        *(The following was heard outside the presence of the*

12        *jury.)*

13             THE COURT:  The record will reflect no jurors are

14   present.

15             In this matter, there are several issues that have

16   been -- some issues that have been asked of the Court.  I want

17   to talk to you a little bit about logistics.

18             Counsel, you wanted to put something on the record

19   first?

20             MR. KULIK:  Your Honor, we had two rebuttal witnesses

21   of ten minutes each --

22             THE COURT:  Okay.

23             MR. KULIK:  -- and I wanted permission to call those

24   two.

25             THE COURT:  Okay.  The Court has already heard and

30

1    made a ruling on that and they would not be permitted.

2              MR. KULIK:  Okay.  Thank you, Your Honor.

3              THE COURT:  Thank you, counsel.

4              In this particular matter -- I checked with both

5    sides and both sides said that they would rather put the case

6    on -- or, excuse me, the argument tomorrow morning rather than

7    this afternoon.  That's why I let everybody go.

8              I do want to talk to you a little bit about jury

9    instructions.  It's going to take me about -- now that the case

10   is over, about 45 minutes.  And I'm going to ask you to come

11   back in about 45 minutes so I can tell you what the jury

12   instructions will be before we get into argument tomorrow.

13             Keep in mind a few things.  When you're arguing the

14   case tomorrow, neither side should ever say, "The judge will

15   instruct you this way."  You can say, "I anticipate the judge

16   will instruct you this way," but the instructions come from the

17   Court.  So not a biggie, but I just wanted to make sure you

18   understood that.

19             I also understand that there are several things -- or

20   a few things that the plaintiff wants to raise as far as

21   judicial notice; is that correct?

22             MR. MALOFIY:  Yes, Your Honor.

23             THE COURT:  Okay.  What's that?

24             MR. MALOFIY:  On judicial notice, we had submitted

25   certified records from the Ventura County Court indicating that

31

1    the Trust is valid and proper and also relating to the

2    formation of the Trust and the ownership of the copyrights.  We

3    believe that there's been no evidence whatsoever in this case

4    to dispute the validity of the Trust or the ownership of the

5    copyrights.

6          Furthermore, because we have certified court records

7    that for 20 years have not been disputed in any way, no

8    evidence has been brought in this case from Quinn Wolfe or from

9    any other alleged beneficiary, we believe it is highly

10   prejudicial for the jury to even consider that, but it would

11   be -- what we are -- at the very least, for the Court to

12   consider a request for judicial notice --

13         THE COURT:  Okay.

14         MR. MALOFIY:  -- of these records and so that the

15   Courts be consistent in their rulings since it's never been

16   changed in 20 years.

17         THE COURT:  Counsel, let me -- whether or not it's

18   been changed in 20 years or not is not in front of the jury.

19         The only thing in front of the jury -- and I know the

20   defense disagrees with this, but the only thing in front of the

21   jury is that there's a trust and that the Trust holds the --

22   holds the copyright.  I don't think you need anything more.

23         The only evidence before the Court is that the

24   intellectual property rights of -- of Wolfe are owned -- are in

25   the Trust, and we haven't had anything to rebut that yet.

32

1          MR. MALOFIY:  That's right.  So we would ask for a

2     directed verdict on the issue of ownership, that the Trust owns

3     the ownership of the copyright.

4          THE COURT:  Counsel?

5          MR. ANDERSON:  Your Honor, there's a distinction

6     between saying that the intellectual property rights of Randy

7     Wolfe are in the Trust.  Those intellectual property rights are

8     the right to receive royalties.  The difference is who owns the

9     copyright.

10         What is in evidence is a 1967 assignment of the

11    renewal term of copyright, so the copyright is not owned by --

12    was not owned by Randy Wolfe.

13         THE COURT:  You're arguing two different things and,

14    counsel, as far as directing the jury on any issue at all, I'm

15    going to ask you to respond to the fact that any property

16    rights owned by Wolfe are in the Trust, and that's what I was

17    going to direct you to.  I wasn't going to talk about who has

18    the copyright.  You can talk about that later.

19         But I don't think there's any evidence at all to show

20    that there -- that the intellectual property rights of Wolfe

21    are not in the Trust, and there is evidence to show that it was

22    in the Trust.  It's just not an issue.

23         MR. ANDERSON:  And that's what I'm trying to --

24         THE COURT:  Okay.

25         MR. ANDERSON:  -- the copyright is not owned, but the

33

```
 1    intellectual property rights --

 2            THE COURT:  Any intellectual property of Randy Wolfe

 3    is owned -- excuse me, is in the Trust.  And that's -- yes, we

 4    can direct the -- we can direct the jury as to that issue.

 5            MR. MALOFIY:  Thank you, Your Honor.

 6            THE COURT:  Okay.  And I'm going to ask you to

 7    prepare something that says just that.  Not the copyright, but

 8    any intellectual property owned by Randy Wolfe is in the Trust.

 9            MR. MALOFIY:  Thank you, Your Honor.

10            THE COURT:  Okay.  Next issue.

11            MR. MALOFIY:  Can I raise it?

12            THE COURT:  Yeah.

13            MR. MALOFIY:  May I?

14            THE COURT:  Yeah.

15            MR. MALOFIY:  The other issue of a request for

16    judicial notice is that the song was a charting song, and we

17    provided Billboard charts to the Court to take judicial notice

18    of.

19            Courts in the past and, I believe, the Ninth

20    Circuit -- I believe we have case law on it.  I just haven't

21    looked at my motion in the last probably couple days -- well,

22    probably the last week, but the Courts and, I believe, the

23    Ninth Circuit do acknowledge and take judicial notice of songs

24    that have placed in the Billboard charts.  It's also ancient

25    documents --
```

34

```
 1            THE COURT:  As to the "Taurus" production or as to
 2    the Led Zeppelin?
 3            MR. MALOFIY:  As to the album which "Taurus" was on,
 4    which was a charting album.
 5            THE COURT:  Okay.  Counsel?
 6            MR. ANDERSON:  We filed opposition to that,
 7    Your Honor.  The problem is that they're asking the Court to
 8    take judicial notice of a fact and the documents that they
 9    provided, one of them is a third-party summary of information
10    supposedly obtained from past Billboard articles.
11            It's also irrelevant, because it's the Spirit album,
12    not "Taurus."
13            THE COURT:  Okay.  Go ahead, counsel.
14            MR. MALOFIY:  It's authenticated as an ancient
15    document rule and there is nothing in the record to dispute --
16            THE COURT:  Okay.
17            MR. MALOFIY:  -- the accuracy.  These things are
18    regularly used by courts to consider the charting of albums.
19            THE COURT:  Okay.  The Court's not going to take
20    judicial notice of that.
21            You also had issue as to outstanding motions.  Maybe
22    that's the defense side.
23            MR. MALOFIY:  Well, we have a couple issues,
24    Your Honor.
25            THE COURT:  Go ahead.  I didn't mean to cut you off.
```

35

```
 1    Go ahead.
 2              MR. MALOFIY:  The only -- the first, second, and
 3    third amendment to the Trust was brought in to indicate who the
 4    beneficiary was.  Now, I know we discussed -- and we discussed
 5    that the Court's going to take -- well, the Court's going to
 6    give a directed verdict on ownership of the intellectual
 7    property; however, I --
 8              THE COURT:  That's correct, of any -- of the
 9    intellectual property owned by Randy Wolfe is in the Trust.
10              MR. MALOFIY:  That's right.
11              THE COURT:  Yeah.
12              MR. MALOFIY:  But because we don't have the fourth
13    and fifth amendment in the record, it -- it has legal documents
14    which are not complete in that it doesn't show who the current
15    beneficiary is.
16              THE COURT:  But why do we care?
17              MR. MALOFIY:  Well, because we show who the
18    beneficiary was of the first, second, and third amendment,
19    which is inconsistent with who it is now.
20              THE COURT:  Who cares?  The issue -- and when I --
21    I'm not saying that sarcastically.  What I'm saying is the
22    plaintiff in this matter is the executor of the Trust.
23              MR. MALOFIY:  That's right.
24              THE COURT:  The executor of the Trust holds those
25    property rights.
```

```
 1              MR. MALOFIY:  All we would say is that --
 2              THE COURT:  Doesn't make any difference who it goes
 3   to.
 4              MR. MALOFIY:  There was argument initially that
 5   somehow Mr. Skidmore or the Trust improperly took ownership of
 6   intellectual property from Quinn Wolfe.  The documents which
 7   Mr. Anderson presented or discussed in his testimony with his
 8   witnesses indicated that Quinn Wolfe was the beneficiary and
 9   that's not accurate as to today.
10              THE COURT:  And I don't -- I don't think there's
11   sufficient evidence to even argue that Quinn Wolfe is the
12   beneficiary of it.
13              MR. ANDERSON:  We're not arguing that he's the
14   beneficiary.  In fact, we're arguing the opposite, that the --
15   and all we're interested in and all we put in evidence was that
16   he was supposed to be the beneficiary but he then was removed.
17              THE COURT:  Counsel, it doesn't make any difference
18   if he's supposed to be or not.  The Court is making a
19   determination that the intellectual property owned by Wolfe is
20   in the Trust, who is the plaintiff, and that's it.
21              MR. ANDERSON:  It's relevant to the unclean hands
22   defense, Your Honor, that was raised in the pre-trial
23   conference order and the Memorandum of Contentions of Law and
24   Law.  It's a narrow issue.  It doesn't concern the subsequent
25   amendments.
```

37

```
 1          THE COURT:  Counsel, I'm assuming you don't want to
 2   show your hands again.
 3          MR. MALOFIY:  No.  I don't want to be admonished by
 4   the Court again.
 5          THE COURT:  Okay.  All right.  Counsel, as far as
 6   that is concerned, I'm not going to get into that.  I don't
 7   think that's an issue in this case.  The fact that, you know,
 8   who is a beneficiary doesn't make any difference.  I don't
 9   think that it goes towards unclean hands, so I'm not going to
10   get into it.
11          MR. MALOFIY:  We would just ask that those first,
12   second, and third amendments which were presented are not --
13   are not shown or considered by the jury --
14          MR. ANDERSON:  Your Honor --
15          MR. MALOFIY:  -- because they are confusing and they
16   could be prejudicial, that's all, since they're not at issue.
17   They're --
18          THE COURT:  Counsel, first, second, and third
19   amendments, as to those.
20          MR. MALOFIY:  I believe the fourth may be in the
21   record, too.  I'm not sure.
22          THE COURT:  Okay.
23          MR. ANDERSON:  Your Honor, this is a defense that
24   counsel -- that plaintiff never moved for summary judgment on
25   that we presented evidence in the record of what happened here,
```

38

```
 1   that Quinn was -- is the sole heir of Randy Wolfe.  He was
 2   under a Superior Court order that counsel wants -- that's in
 3   the record.  He was supposed to receive these rights when he
 4   turned 22, which was ten years ago.
 5              THE COURT:  Counsel, I don't think there's sufficient
 6   evidence to substantiate that in this trial and I don't think
 7   it's relevant anymore in this trial.
 8              So that's the ruling of the Court, that it's not
 9   relevant in this trial.
10              The property interest -- intellectual property
11   interest that Wolfe had is in the Trust --
12              MR. ANDERSON:  May we --
13              THE COURT:  -- and is owned by the Trust.
14              MR. ANDERSON:  May we brief the issue, Your Honor?
15   Because it turns on the --
16              THE COURT:  On your motion for new trial, sure, you
17   can brief it.
18              MR. MALOFIY:  We would just want to be clear that
19   there's going to be no argument of unclean hands to the jury so
20   I don't have to make that example ever again.
21              THE COURT:  Well, I would definitely sustain the fact
22   that you should not make that example ever again.
23              MR. MALOFIY:  Okay.
24              THE COURT:  I don't see, at this point, unclean
25   hands --
```

39

1    MR. MALOFIY:  Thank you, Your Honor.

2    THE COURT:  -- so I don't think there is sufficient

3 evidence at this time to show a defense of unclean hands.

4    MR. ANDERSON:  May we submit a memorandum, just a

5 short two pages, explaining the defense?  It was previously

6 briefed, but --

7    THE COURT:  It has been previously briefed.

8    Counsel, if you want to submit it, that's fine.  I

9 may or may not read it.  If you want to do it in your motion

10 for new trial, I definitely will read it.  It has been briefed

11 before and the Court's made a ruling on it.  But you can -- you

12 certainly can submit it to the Court.  I'm not going to prevent

13 you from doing that.

14    MR. ANDERSON:  Could I explain my concern,

15 Your Honor?

16    THE COURT:  Go ahead.

17    MR. ANDERSON:  Thank you.

18    We tried to put on testimony about what happened with

19 the Trust and, as a result of the objections, Your Honor ruled

20 that we have to just rely on the language.  The language in the

21 documents, of course, has never been read out loud.  It's

22 something that the Court looks at and makes a legal

23 determination.

24    And so what we were going to do was read from the

25 language that's in the record, and what I'm asking is the

40

```
 1    opportunity to explain the significance to the unclean hands

 2    defense of the language that is in the record in the agreements

 3    that form the Trust.

 4            THE COURT:  Okay.  And you made it for the record.

 5    The Court's already ruled on it.

 6            Next issue.

 7            MR. MALOFIY:  Thank you, Your Honor.

 8            I believe the Court was clear throughout this case,

 9    but just to preserve the issue, it was plaintiff's position

10    that because access was hotly disputed, that we did want the

11    sound recording of "Taurus" to be played for the jury.  It

12    wasn't played.  We just want to make that of record, that it

13    was an issue that plaintiff had.

14            THE COURT:  That's already on the record.

15            MR. MALOFIY:  Thank you, Your Honor.

16            THE COURT:  Anything else?  Okay.  Counsel --

17            MR. MALOFIY:  Nothing else.  Thank you, Your Honor.

18            THE COURT:  Okay.  Counsel, you've got some motions.

19            MR. ANDERSON:  Yes.  We filed a motion for judgment

20    as a matter of law.  We did include, respectfully, a request

21    that it be ruled on -- one portion of it be ruled on quickly,

22    because it would have obviated the need -- basically, the

23    portion that was directed to the request for profits.

24            We don't think the plaintiff carried the burden of

25    proving revenues attributable to "Stairway to Heaven," so we
```

```
 1   were hoping to make things a little bit easier, because if we

 2   had that ruling in hand and it was favorable to the defendants,

 3   we wouldn't have had two of the witnesses today.

 4            But that ship's sailed, so --

 5            THE COURT:  Well, that will be noted for the record.

 6            And, counsel, on your motions to dismiss, I have told

 7   both that they can be taken under submission by the Court, and

 8   I will give you both a chance to brief it, and it doesn't have

 9   to be done before the jury reaches a verdict.

10            I will give you until next Monday to brief it

11   entirely and I will give you until next Thursday to -- for an

12   opposition.

13            MR. KULIK:  Well, they already filed their motion,

14   Your Honor.

15            THE COURT:  I'm sorry?

16            MR. KULIK:  The motion has already been filed.  It's

17   just our opposition that's due.

18            THE COURT:  Well --

19            MR. ANDERSON:  Our motion has been filed.  I haven't

20   received a motion from counsel.  If you want --

21            THE COURT:  Are you talking about opposition?

22            MR. ANDERSON:  -- an oral motion --

23            THE COURT:  No, he's talking about opposition.  He

24   says your motion has been filed and all he has to do is file an

25   opposition.
```

42

```
1              MR. KULIK:  That's correct.
2              THE COURT:  Okay.  Then I'll give you until Friday to
3    file the opposition.
4              MR. KULIK:  Okay.
5              MR. ANDERSON:  And we renew our motion -- our Rule 50
6    motion at this time, as well, but --
7              THE COURT:  That's correct, and you can also put --
8    well, have you done that in writing also?
9              MR. ANDERSON:  Yes, we did submit it in writing.
10             THE COURT:  Okay.  Then it will be renewed and it
11   will be submitted and you'll have until Friday to respond to
12   it.
13             MR. MALOFIY:  Thank you, Your Honor.
14             THE COURT:  Okay.
15             MR. ANDERSON:  There was one other thing that -- and
16   I --
17             THE COURT:  I'm here for you.  Go ahead.
18             MR. ANDERSON:  Thank you, Your Honor.
19             And I'm hesitant to bring it up -- and I'm glad the
20   public isn't here.  We filed, basically, objections to the
21   conduct of counsel during the case talking to the press, asking
22   leading questions -- loaded questions, really.
23             And I don't really want to dwell on the past; my
24   concern is closing argument.
25             And I am concerned -- we are concerned that we are
```

43

```
 1   going to hear closing argument that is not the kind of argument
 2   that's made in this district in this courthouse, and we would
 3   feel much more comfortable if the Court would remind counsel
 4   that closing argument has to be based on evidence, that it
 5   can't be passion or prejudice, it can't -- but can't violate
 6   any of the rules that apply to closing argument in this court.
 7             THE COURT:  Okay.  So I guess, basically, what you're
 8   asking the Court to do is follow the law?
 9             MR. ANDERSON:  Your Honor, I --
10             THE COURT:  I intend to.  I intend to follow the law.
11             MR. ANDERSON:  I meant no disrespect by it and I --
12             THE COURT:  No, no, no, I understand that, but I'm
13   saying many times people will do that.  They'll -- you know,
14   they'll make motions in limine saying, "We want all hearsay
15   stricken."  Well --
16             MR. ANDERSON:  Yeah.
17             THE COURT:  -- you follow the law.  If argument --
18   everyone knows.  You know, if during argument, you bring up
19   facts that are not -- have not been presented in front of the
20   jury, that's improper, and if it's significant enough, I will
21   interrupt you during your argument saying you can't do that.
22             MR. ANDERSON:  Thank you, Your Honor.  It's just a
23   heads up.
24             THE COURT:  I mean, that's just Rules of Court.
25   Okay.
```

44

```
1              MR. MALOFIY:  Thank you, Your Honor.

2              THE COURT:  Okay.  Now, anything else to decide

3    before I get into jury instructions?

4              MR. ANDERSON:  I think that covers it.

5              THE COURT:  Okay.  I'm going to -- I'm going to ask

6    you to hang around for about 45 minutes and I'll -- I hopefully

7    will be able to get enough of the jury instructions done so

8    that you'll know what instructions we're going to be using and

9    what ones we're not.

10             And I'm going to need -- which side is best equipped

11   to be a scrivener to prepare a clean set of instructions?

12             MS. FREEMAN:  Oh, no, not me.  Not me.

13             THE COURT:  Somebody's going to have to do that.

14             MR. MALOFIY:  My associate will do it.

15             THE COURT:  Okay.  And I will probably read some

16   instructions to you that will be modified and you'll have to

17   take it down in court.

18             Who's your -- who's your assistant?

19             MR. MALOFIY:  Mr. A.J. Fluehr.

20             THE COURT:  Okay.  You're going to have to take it

21   down in court and prepare those modifications on it also so we

22   don't get into things that aren't supposed to be there.  Okay?

23             MR. FLEUR:  May I use a laptop?

24             THE COURT:  You can use a laptop.  But it's going to

25   be about 45 minutes from now, so --
```

45

```
1          MR. ANDERSON:  I just wanted to know, last night
2   we -- early this morning we filed I think it's three
3   supplemental jury instructions --
4          THE COURT:  I've got them.
5          MR. ANDERSON:  -- and a revised special verdict that
6   has a typo in it that I just found.
7          THE COURT:  I've got them and I'll be talking to you.
8          I've got a feeling that neither one of the special
9   instructions will be given -- or, excuse me, verdicts will be
10  given, but I'll talk to you about that also.
11         I may not get to you as far as the verdict form goes
12  until tomorrow morning, but I'll -- hopefully we can do it
13  tonight.  It's going to be much shorter than has been proposed.
14         Okay.  We'll see you back in 45 minutes.
15         MR. MALOFIY:  Thank you, Your Honor.
16         THE COURT:  Okay.  Thank you.
17         THE CLERK:  All rise.
18      (Recess taken 2:14 to 3:09 P.M.)
19      (The following was heard outside the presence of the
20      jury.)
21         THE COURT:  Counsel, I'm going to be talking about
22  the instructions that the Court is going to be giving, and a
23  little preparation on this so that you'll understand.
24         This is not to discuss with counsel what instructions
25  are going to be given and which aren't.  Both sides have fully
```

46

```
 1   briefed this on the instructions, their objections, their
 2   replies, et cetera, that I am confident that I can just come
 3   out and give the instructions, but I want to let you know what
 4   they are so you can use them in your argument.
 5           So I'm going to go through the instructions so that
 6   you know what they are for the argument.  I'm going to ask the
 7   scrivener -- boy, I feel sorry for him.
 8           Can you type fast?
 9           MR. FLUEHR:  Yes.
10           THE COURT:  Okay.  Well, I'm going to be jumping
11   around also with these instructions, so -- let me start out
12   with -- just a second.
13           And, by the way, when you do the clean set of
14   instructions, you understand that you don't put any heading on
15   it at all, you don't say anything about defendants or
16   plaintiffs or anything, it's -- and it should be "Instruction
17   Blank," and I'll put in one, two, three, four.
18           So all you do is give the wording and I'll put in
19   which instruction it is, because I may change the order in how
20   I give them.
21           Are we on the same line?
22           MR. FLUEHR:  Yeah.
23           THE COURT:  Okay.  Defense Instruction Number 2,
24   which is, "The duty of the jury" -- now, this may be a little
25   tough for you.  I'm going to give that entire instruction with
```

47

1    the second sentence crossed out, the one that starts, "Each of
2    you have received a copy of," but everything else is going to
3    be given in that instruction, including the part that's been
4    lined out where it says, "A copy of these instructions will be
5    sent to the jury," because it will be sent back to the jury
6    room.  Okay?
7              MR. FLUEHR:  So just to clarify --
8              THE COURT:  To clarify for you, that instruction is
9    going to be given in its entirety, including the part that has
10   been lined out, with the exception of the second sentence that
11   starts with, "Each of you have received a copy."  That will be
12   stricken.
13             MR. FLUEHR:  Understood.
14             THE COURT:  Okay.  Good.
15             Okay.  Number -- let me put that aside.  Put that
16   aside.
17             On the joint instructions -- most of these are going
18   to come from the joint instructions for the next 13 or 14.
19             I'm going to be giving Instruction Number 4, burden
20   of proof.
21             Number 5 I'm going to be giving, but you're going to
22   have to delete out -- I can't even read what it is.  It says,
23   "You should decide this case as to each party," I guess it
24   says.  But, anyway, it's going to read, "You should decide this
25   case as to each defendant separately."

48

```
1            The word before "defendant" and the word after
2   "defendant" is going to be lined out.
3            Does that make sense?
4            MR. FLUEHR:  Understood.
5            THE COURT:  Okay.  Number 6 will be given in its
6   entirety.
7            Number 7 will be given, but we have to bring it up to
8   the present date, so it's going to be "what they may say," not
9   "what they" -- or, excuse me, "what they have said," not "what
10  they may say."
11           Do you have the instruction in front of you there?
12           MR. FLUEHR:  Yes.
13           THE COURT:  So it's got to be in the present tense,
14  "what they have said," "what was received," not "what they may
15  say."  So you're going to have to kind of go through that
16  instruction and put it all in the same tense.
17           MR. FLUEHR:  Understood.
18           THE COURT:  Okay.  Number 8, that's going to be given
19  in its entirety except for the third paragraph that's in
20  parentheses.
21           MR. FLUEHR:  One second, Your Honor.
22           THE COURT:  Sure.
23           MR. FLUEHR:  Okay.  And then Number 8 except for the
24  third paragraph.
25           THE COURT:  Yeah.  And that's what's in parentheses.
```

49

```
 1    It starts out, "The testimony you are about to hear...."
 2            Number 9 will be given as modified.  The first
 3    paragraph will be given; the second paragraph starting, "By way
 4    of example" will not be given.
 5            You let me know when you're ready for the next one.
 6            MR. FLUEHR:  Understood.
 7            I'm ready.
 8            THE COURT:  Ten will be given, which is ruling on
 9    objections.
10            Eleven, credibility of witnesses, will be given.
11            Thirteen, publicity during trial, will be given.
12            Nineteen, expert testimony, will be given as
13    modified.
14            Again, when you have "about to be heard," et cetera,
15    it's going to be -- and I'll just read it to you and you can
16    get the flavor for it.  "You have heard testimony from
17    witnesses who testified to opinions and the reasons for those
18    opinions.  This opinion testimony is allowed because of the
19    education and experience of the witnesses."
20            The next paragraph remains in.
21            The last two paragraphs will be stricken.
22            MR. FLUEHR:  Understood.
23            THE COURT:  Okay.  The next instruction will be Joint
24    Instruction 20, and all you have to modify there is "have been"
25    as opposed to "may be."
```

50

1        So, "Certain charts or summaries have been admitted

2   into evidence," not "may be."  Okay?

3        MR. FLUEHR:  Understood.

4        THE COURT:  Twenty-one will be given.  The only

5   modification will be talking about corporations, but not

6   partnerships.  "Partnership" will be stricken.

7        MR. FLUEHR:  Understood.

8        THE COURT:  Okay.  Now we're going to move to some of

9   the instructions, and this is going to be a little more

10  difficult for you, because it's going to be referring to --

11  some are plaintiff's instructions, some are defendants'

12  instructions.

13       The next instruction that will be given is

14  Defendants' 30, which is the elements of the copyright

15  infringement -- I'm sorry.  Plaintiff's 30, not defendants'.

16  Plaintiff's 30 will be given without modification.

17       MR. FLUEHR:  Understood.

18       THE COURT:  Okay.  Defendants' 22 will be given.

19       MR. FLUEHR:  Without modification?

20       THE COURT:  Without modification.

21       MR. FLUEHR:  Understood.

22       THE COURT:  Twenty-four will be given -- Defendants'

23  24 will be given.  The only modification is we're going to

24  strike out any reference to the date, because there's some

25  disagreement as to whether or not it's 1967 or 1966, so it will

1   just read "Plaintiff contends the copyright in the musical

2   composition" -- dates will be stricken.  "1967" will be

3   stricken all the way through that instruction.

4           MR. FLUEHR:  Will the "1971 song 'Stairway to

5   Heaven'" stand?

6           THE COURT:  I'm sorry?

7           MR. FLUEHR:  Only dates with respect to "Taurus" are

8   being stricken, correct?

9           THE COURT:  Is there any other dates in there?  I

10  don't think so.

11          MR. FLUEHR:  "'Taurus' infringement of the 1971" --

12          THE COURT:  Oh, oh.  Yeah, just -- you don't even

13  need that.  Just strike all the dates in that instruction.

14          MR. FLUEHR:  Understood.

15          THE COURT:  Twenty-six, Defendants' 26 -- and you're

16  going to have to bear with me on this.  I'm going to have to

17  read it to you so hopefully you can -- it should start out,

18  "There is a valid copyright in the musical composition

19  'Taurus.'"

20          MR. FLUEHR:  One second, Your Honor.

21          THE COURT:  Sure.  It's the first paragraph.

22          MR. FLUEHR:  Go ahead.

23          THE COURT:  Okay.  So it's, "There is a valid

24  copyright in the musical composition 'Taurus' if the plaintiff

25  proves by a preponderance of the evidence that, Number 1, Wolfe

52

```
 1    created the musical composition 'Taurus.'"
 2              MR. FLUEHR:  Understood.
 3              THE COURT:  "Number 2, the musical composition
 4    'Taurus' is original.
 5              "Number 3," just the way Number 2 is worded here.
 6    And if you want me to read it, if that's faster, I'll do that.
 7    "A copyright in the musical composition was registered with the
 8    United States Copyright Office."
 9              MR. FLUEHR:  Okay.
10              THE COURT:  Number 4, "At the time of that
11    registration, a written transcript of the musical composition
12    was deposited with the Copyright Office," which is just the
13    first part of it.  Okay?
14              MR. FLUEHR:  I've got it.
15              THE COURT:  Great.  Just a second.
16              Number -- Defendants' Number 31, again, I'm going to
17    modify this quite a bit, too.  Well, maybe not.
18              If you have it in front of you, we can save a lot of
19    time, I think.
20              MR. FLUEHR:  Almost.  One second.
21              THE COURT:  Sure.
22              MR. FLUEHR:  A lot of objections, replies.
23              I have it in front of me.
24              THE COURT:  It is?  It is in front of you now?
25              MR. FLUEHR:  Yes, Number 31.
```

53

```
 1              THE COURT:  Okay.  What I'm going to leave in -- and
 2    you stop me if you want me to read every word of it, but I'm
 3    going to leave in the part that says, "The plaintiff must prove
 4    by a preponderance of the evidence that the creators of
 5    'Stairway to Heaven' had access to the musical composition
 6    'Taurus.'"
 7              So that lined-out part is not going to be in there.
 8    Okay?
 9              MR. FLUEHR:  Understood.
10              THE COURT:  "Plaintiff's work" is going to be crossed
11    out.
12              Then it says, "You may find that the creators of
13    'Stairway to Heaven,'" cross out "defendant," "had access to
14    the musical composition 'Taurus,'" cross out "plaintiff's
15    work," "if the creators of 'Stairway to Heaven,'" cross out
16    "the defendant," cross out "whoever" -- excuse me, "whoever
17    created the work owned by the defendant," so the next words
18    would be, "had a reasonable opportunity to hear and/or copy the
19    musical composition 'Taurus' before 'Stairway to Heaven' was
20    created."
21              The next paragraph is going to be deleted.
22              MR. FLUEHR:  Understood.
23              THE COURT:  Okay.
24              MR. MALOFIY:  Your Honor --
25              THE COURT:  Yes?
```

54

1      MR. MALOFIY:  -- the only concern I have -- should I

2  stand?  The only concern I have is that I don't want the jury

3  to be confused as to whether or not it means the deposit copy

4  of the musical composition.

5      Can it be clear that it can mean live performance or

6  sound recording?

7      THE COURT:  So you're talking about the deposit copy.

8  Well, let me tell you why I didn't go into that is because you

9  don't have to show that they heard or saw the deposited copy;

10  all you got to do is show that they heard a musical composition

11  containing the deposited copy.

12      MR. KULIK:  That's the problem.  We think the words

13  "musical composition" might infer to the jury that you're

14  referring to the deposit copy, suggesting that they had to have

15  seen the deposit copy.

16      THE COURT:  Well, that's why I said "musical" --

17  that's exactly why I said "musical composition," as opposed to

18  "the deposit copy."

19      I didn't -- "deposit copy" is not in there, and you

20  can argue that, that it's not in there.  The instruction does

21  not say "deposit copy."

22      So if they were exposed to any composition that

23  contained what was in the deposit copy, that's access.

24      MR. KULIK:  Again, our only concern is that if the

25  jury reads the words "composition," they might think that

55

```
 1    that's referring to some sort of written composition.

 2              THE COURT:  Well, they're going to be -- they're

 3    going to be informed of that very effectively by counsel during

 4    his argument.

 5              You can handle that and you can distinguish between a

 6    composition and -- I guess the defendant is going to do it

 7    anyway -- distinguish between a composition and the deposited.

 8              Okay.  Number 20 -- back with me?

 9         MR. FLUEHR:  Yes.

10         THE COURT:  Okay.  28.  The first part of that --

11         MR. FLUEHR:  I'm sorry, Your Honor --

12         THE COURT:  Defendants' 28.

13         MR. FLUEHR:  Okay.  Defendants' 28.

14         THE COURT:  And the first paragraph is going to be

15    omitted and the last sentence is going to be omitted that says,

16    "In copyright law, the original work," et cetera.

17              So you're just going to have the paragraph that

18    starts, "Original work" just the way it is here, with the

19    "works owned by others" crossed out.  Just like it is there.

20         MR. FLUEHR:  Understood.

21         THE COURT:  And the two examples.

22              Okay.  Thirty-two.  Oh, I'm sorry.  Defendants' 32

23    will be modified as follows.  It's going to be given, but under

24    paragraph 2, we're going to strike out "in" -- the second line

25    in paragraph 2 where it says "in 1967" will be stricken, the
```

56

1    date there.

2         Paragraph Number 3, "as transcribed in 1967" will be

3    stricken.

4         The fourth paragraph -- the fourth and fifth line --

5    I guess it's the fourth line -- there's a sentence that starts,

6    "The examples of musical elements...."

7         Do you see that?

8         MR. FLUEHR:  Yes.

9         THE COURT:  That whole sentence will be stricken down

10   to where it says "sequence of three notes."

11        MR. FLUEHR:  Okay.

12        THE COURT:  On the next page of that instruction, the

13   one, two, three -- the third full paragraph that starts out,

14   "For the second test" --

15        MR. FLUEHR:  Yes.

16        THE COURT:  -- that will be given with the "total

17   concept and feel" stricken out, and the date, "1967," will be

18   stricken out.

19        The next paragraph, "1967" will be stricken out.

20        And in the last paragraph, the last sentence will be

21   stricken that starts, "If there is no" -- or, "If he has also

22   proven that the creator of 'Stairway to Heaven,'" that last

23   sentence will be stricken.

24        MR. FLUEHR:  Understood.

25        THE COURT:  Okay.  Stay with me here.

```
 1            Okay.  The next one that's going to be given -- was
 2    that 32?  I think that was 32.  Yeah.
 3            The next one that's going to be given is Plaintiff's
 4    43.
 5            MR. FLUEHR:  One second.  Let me switch documents.
 6            THE COURT:  Sure.  And that's going to be given in
 7    its entirety.
 8            MR. FLUEHR:  One more second.
 9            Plaintiff 43 in its entirety, correct?
10            THE COURT:  Yes.
11            MR. FLUEHR:  All right.
12            THE COURT:  Next one is Defendants' 39.  It talks
13    about de minimis.  That's going to be given with the following
14    modifications.
15            The first sentence in the second paragraph starting
16    "The defendants deny copying" will be stricken, and the last
17    sentence will be stricken that starts, "If you find the
18    plaintiff has not proven."
19            MR. FLUEHR:  So on Defense 39, the first and last
20    sentences are being stricken?
21            THE COURT:  Well, wait.  No, no, no.  The first
22    paragraph stays in.
23            MR. FLUEHR:  Oh, okay.  I understand.
24            THE COURT:  The first sentence in the second
25    paragraph starting out, "The defendants deny copying," that
```

58

```
 1   will be stricken.

 2            MR. FLUEHR:  Okay.

 3            THE COURT:  And the last sentence starting with the

 4   words, "If you find the defendant has not proven substantial

 5   copying," that will be stricken.

 6            MR. FLUEHR:  Gotcha.

 7            THE COURT:  Okay.

 8            MR. FLUEHR:  Just to confirm on that, on the first

 9   paragraph, it will be in its entirety, and then it will go to,

10   "A use is trivial or de minimis," and then it will have Points

11   1 and 2 --

12            THE COURT:  Yes.

13            MR. FLUEHR:  -- correct?

14            THE COURT:  Perfect.  Well done.

15            Okay.  We're jumping back to -- what was 39?  What

16   was Defendants' 39?

17            MR. ANDERSON:  De minimis, Your Honor.

18            THE COURT:  Defendants' 39, what was that one?

19            MR. FLUEHR:  De minimis, Your Honor.

20            THE COURT:  De minimis?  Oh, we already talked about

21   that, right?

22            MR. FLUEHR:  We just did, yes.

23            THE COURT:  Okay.  That's what we just -- okay.

24            Next one -- go back -- I'm sorry to jump around, but

25   go back to the joint instructions.
```

```
 1              MR. FLUEHR:  One second.  Okay.
 2              THE COURT:  I believe it's Instruction 35.  It talks
 3    about vicarious infringement.
 4              MR. FLUEHR:  I'm there.
 5              THE COURT:  I'm not yet.
 6              Okay.  Vicarious -- that will be given.  You'll
 7    notice that that has to be modified a little bit.  Let's --
 8    both sides talk about that.
 9              "If you find that" -- and whose name should be in
10    there?
11              MR. ANDERSON:  Well, Your Honor, there has to be an
12    act of direct infringement and then someone else --
13              THE COURT:  Sure there is.  So the direct
14    infringement would be by Plant or Page?
15              MR. ANDERSON:  Well, I think it would be more
16    generic.  Part of the problem is that there hasn't been an
17    identification of who is vicariously liable, but in trying to
18    work through this, I would say that, "If you find that a
19    defendant infringed the copyright" --
20              THE COURT:  I like that.
21              THE COURT REPORTER:  Can you put the microphone on,
22    please.
23              MR. ANDERSON:  My apologies.
24              THE COURT:  I think rather than the name of the
25    direct infringer, "If you find that a named defendant has
```

60

```
 1    infringed the plaintiffs' copyright in 'Taurus'" -- how about
 2    the rest of it?  Name of the alleged and vicarious -- it would
 3    be the companies, obviously.
 4          MR. ANDERSON:  I mean, part of this -- if I can just
 5    step back, and I apologize, but instructions are only properly
 6    given if there's been some evidence to establish, for example,
 7    vicarious liability, and we're all trying to figure out how we
 8    can make this general because there's been no evidence.  And so
 9    I'm not sure why the instruction would be given at all.
10          MR. KULIK:  Well, I don't think you have to make it
11    general at all.  I think the first entry should be Page and
12    Plant.  They would be directly responsible.
13          And then we have Warner/Chappell Music and Rhino
14    Records and Atlantic Records, so the corporate would be
15    vicariously.  I think the jury will be confused if we don't lay
16    that out.
17          MR. ANDERSON:  I think -- I mean, we've asked them --
18    previously for them to identify who they are talking about, but
19    Page and Plant haven't sold within the three years preceding
20    the filing of the action.
21          THE COURT:  I'm not going to get into argument on
22    that.  I'm going to go with that, counsel:  "If you find that
23    either Defendant Page or Plant infringed, you must determine
24    whether or not" -- any one of the three companies.  So put that
25    in --
```

61

```
 1              MS. FREEMAN:  Your Honor, I'd like to note an
 2    exception to this, because the infringing acts within the past
 3    three years are the sale of records, and we don't sell records,
 4    we don't manufacture them, and we don't distribute them.
 5              THE COURT:  Okay.  That will be noted.
 6              The contributory negligence, same thing on that.
 7    That's going to have to be modified the same way.
 8              MR. ANDERSON:  May I ask what the other blanks --
 9              THE COURT:  I'm sorry?
10              MR. ANDERSON:  I apologize, Your Honor.  Going back
11    to 35, and it will probably apply to the other one, if we put
12    "Page or Plant" -- if you do do that in the first bracketed
13    space, what names go in all of the others?
14              THE COURT:  In the name of the alleged infringing
15    work is "Taurus."
16              MR. ANDERSON:  Well, that one I figured out.  I'm
17    sorry.
18              THE COURT:  Okay.
19              MR. ANDERSON:  But --
20              THE COURT:  The name of the alleged vicarious
21    infringers?
22              MR. ANDERSON:  "You must determine whether" -- and
23    then, quote -- or, I'm sorry, bracket, "name of alleged
24    vicarious" --
25              THE COURT:  Yeah, that would be any one of the three
```

62

```
 1    companies, any of the three companies.  Okay.
 2             MR. FLUEHR:  What's the exact language we're going
 3    with?
 4             THE COURT:  I'm sorry?
 5             MR. FLUEHR:  What's the exact language?  "Any one of
 6    the three companies"?
 7             MR. KULIK:  Well, no, you're going to put --
 8             THE COURT:  No, you're --
 9             MR. FLUEHR:  Oh, okay.  Just clarifying.  Okay.
10             MR. ANDERSON:  And just so the record is clear, I'm
11    not agreeing to that.
12             THE COURT:  No, I understand that, counsel.  You and
13    your co-counsel have stated objection for the record.
14             MR. ANDERSON:  Thank you, Your Honor.
15             THE COURT:  Same modifications on the contributory
16    negligence.
17             MR. FLUEHR:  Understood.  What number is that?
18             MR. KULIK:  Thirty-six.
19             MR. FLUEHR:  Thirty-six.
20             THE COURT:  I'm sorry.  Thirty-six.
21             Then when we get to damages, counsel, the only damage
22    instruction I'm going to give is to the lost profits, which is
23    what we were talking about anyway.
24             And, you know, I may have to go over this again, but
25    I'd like you to go ahead and do the -- I might have to modify
```

63

1    this tomorrow morning.

2              Let's see.  Well, as of now, I'd like you to do it

3    the same as Defendants' 49, and I may modify it tonight.

4              And then the next instruction is going to be joint

5    instruction --

6              MR. MALOFIY:  Your Honor --

7              THE COURT:  Yes?

8              MR. MALOFIY:  -- respectfully, as relates to damages,

9    you know, it's plaintiff's burden to show the gross revenues

10   and it's the defendants' burden to show the expenses.  And

11   so --

12             THE COURT:  Is that not in there?

13             MR. MALOFIY:  Well, you said it's just going to be

14   profits, and so I'm not sure which -- we didn't identify which

15   instruction you're referring to, so I'm not sure what you're

16   referring to.

17             THE COURT:  I'm referring to Instruction 49 that

18   talks about profits.  And profits, I think, are defined -- and

19   I'll have to go through it -- as gross --

20             MR. MALOFIY:  Forty-nine of whose instructions, Your

21   Honor?

22             THE COURT:  Yeah, of defendants' instructions.

23             And it says that "the defendants' profit is

24   determined by subtracting all expenses from the defendant's

25   gross revenues."

64

```
1              So it's in there, but what you want is something that
2    indicates that the --
3              MR. MALOFIY:  The burden of proof is --
4              THE COURT:  -- the burden of proof.
5              MR. MALOFIY:  The burden of proof and the defendants'
6    burden --
7              THE COURT:  Okay.  If you could prepare -- you're
8    going to prepare another instruction for tomorrow dealing
9    with --
10             MR. ANDERSON:  I believe it's already in this --
11             THE COURT:  Is it in there?
12             MR. ANDERSON:  Yeah.  It's the second page, "The
13   plaintiffs have the burden of proving the defendants' gross
14   revenue," et cetera, and then it goes on --
15             THE COURT:  Does it have, "The defendant has the
16   burden of proving the expenses"?
17             MR. ANDERSON:  Exactly.  At line 14, "The defendant
18   has the burden of proving" --
19             THE COURT:  Oh, you're right.  It's in there.
20             MR. ANDERSON:  Yeah.
21             MR. MALOFIY:  And apportionment.  Defendants have the
22   burden of proving apportionment, as well.
23             I'm looking for the instruction, Your Honor.  I just
24   want to make sure it's in there.
25             THE COURT:  Okay.  I'm not giving the apportionment
```

65

1   instruction.

2          MR. ANDERSON:  Well, at page 67, line 8, it says,

3   "Each defendant has the burden of proving his or its expenses,"

4   and then at page -- the same page, line 14, "The defendant has

5   the burden of proving the portion of the profit," et cetera, et

6   cetera.

7          MR. MALOFIY:  Okay.

8          MR. ANDERSON:  Okay.

9          MR. MALOFIY:  Then I'm okay.

10         THE COURT:  Okay.  Now, then we're going to conclude

11  with the following, and that is the instructions -- Joint

12  Instructions 30, 35, 36, and 43 -- or, excuse me, I'm sorry.

13  Strike all that.  Strike everything I just said.

14         We're going to go with the conclusion instructions,

15  which is 43, 44, 45, and 46.  And those are just the standard

16  closing instructions, duty to deliberate, et cetera.

17         Counsel, before I go any further, there was one

18  instruction I asked you to prepare for tomorrow.  And

19  somebody's got to remember that.  We just talked about --

20         MR. ANDERSON:  I believe Your Honor said that there

21  would be one, but I don't think you shared --

22         THE COURT:  I asked counsel to prepare it.

23         MR. ANDERSON:  I don't recall that, Your Honor.

24         MR. MALOFIY:  Oh, the intellectual property.  Is that

25  the one?

66

```
1            THE COURT:  Oh, yes --
2            MR. ANDERSON:  Oh.
3            THE COURT:  -- dealing with the intellectual property
4   being in the --
5            MR. MALOFIY:  Trust.
6            THE COURT:  Yeah.  Thank you.  I knew there was
7   somebody that --
8            MR. MALOFIY:  Thank you, Your Honor.
9            THE COURT:  I knew there was younger people than me
10  that could remember that.
11           MR. MALOFIY:  I think it was my associate.
12           MR. ANDERSON:  He's the youngest man in the --
13           THE COURT:  Well, he must be younger than all of us,
14  then.
15           MR. MALOFIY:  He is.
16           THE COURT:  Okay.
17           MR. ANDERSON:  And I believe it was that any
18  intellectual property that Randy Wolfe had went to the Trust.
19           THE COURT:  Was in the Trust.
20           Now, counsel, I'm going to be modifying the verdict
21  forms a little but.  I'm going to go through very quickly to
22  talk about that.  And you don't have to prepare these.  The
23  Court will prepare them.
24           If you look at the Special Verdict Form that was in
25  defendants' -- behind the defendants' instructions, I would
```

67

```
1    not -- I'm going to be giving most of those with the exception
2    of I don't think I'll be giving Instruction 17 -- oh, I'm
3    sorry.  I'm talking about the special verdict.
4            I would not be giving Question Number -- on Question
5    Number 3, I would not be giving the last three people.  As far
6    as access to the music, it only really pertains to Page and
7    Plant.
8            I would not be giving Number 7, Question Number 7.
9            I would not be giving Question Number 9 or 10 or 11.
10           Now, that's tentative.  I'm going to be going over
11   those tonight, but that's to give you a heads up.
12           And then on the verdict forms that pertain to
13   damages, I would only be giving Question Number 15 and
14   Number 16.
15           And, again, I'm going to be working on those tonight.
16           MR. ANDERSON:  Okay.  And if it's any help to
17   Your Honor, the supplemental one, they were prepared as
18   separate because of the issue of bifurcation --
19           THE COURT:  Uh-huh.  Uh-huh.
20           MR. ANDERSON:  -- and profits being tried to the
21   Court.  Obviously, Your Honor --
22           THE COURT:  I have to look at those.  I just -- I'm
23   just trying to give you a heads up as to where --
24           MR. ANDERSON:  No, I appreciate that, but all I was
25   going to say, we combined them into a single form retaining the
```

68

```
 1    same numbering with some language --

 2              THE COURT:  I'll take a look at it.

 3              MR. ANDERSON:  Okay.  Thank you.

 4              THE COURT:  Yep.

 5              MR. MALOFIY:  I apologize.  I missed on the damages,

 6    was it 15 and 16 or 15 and 17?  I missed what you had said.

 7    Can you repeat it?

 8              THE COURT:  I think it was -- well, let me check,

 9    because it's just -- it's on lost profits.  It would be -- I

10    may have misquoted that.

11              Let's see.  Fifteen would be given.

12              Oh, by the way, on 15 and 16, although they're going

13    to be given, I would be striking out the last part of both

14    those that say, "and are not taken into account in calculating

15    the damages you awarded in Question Number 14."

16              The very last phrase in both of those would be taken

17    out.  Okay?  Okay.

18              MR. MALOFIY:  One --

19              THE COURT:  Yes.

20              MR. MALOFIY:  One last thing, Your Honor.

21              THE COURT:  Sure.

22              MR. KULIK:  We have one more instruction that we

23    wanted to propose.  Would you rather we just write it up and

24    bring it tomorrow, Your Honor?

25              THE COURT:  Yeah.  Why don't you tell everyone up
```

69

```
 1    front?  What is it dealing with?
 2              MR. KULIK:  We would like the following instruction:
 3              "In 2014, the Supreme Court of the United States made
 4              a ruling that copyright plaintiffs are never barred
 5              by the passage of time from filing a lawsuit and
 6              seeking compensation and credit within the statutory
 7              period starting three years before the suit was
 8              filed."
 9              THE COURT:  Okay.  Why don't you write it up and I'll
10    decide whether or not to give it tomorrow morning.  Okay?
11              MR. MALOFIY:  Thank you.
12              THE COURT:  Be prepared in your argument not to
13    mention it if I don't give it.  Okay?
14              MR. MALOFIY:  Understood.
15              MR. ANDERSON:  And, Your Honor, I think we had a
16    recent filing on this subject and that actually overstates the
17    law.
18              THE COURT:  Okay.
19              MR. MALOFIY:  One last thing, Your Honor.  I
20    apologize.
21              THE COURT:  Yes.
22              MR. MALOFIY:  I note -- I touched on it -- I touched
23    upon it during my questioning of I think one of the experts,
24    but the inverse ratio rule, it's because the greater the proof
25    of access the lesser the proof of substantial similarity.
```

70

1          Because access is at issue here and it's not conceded

2     and because it is hotly debated, we believe there is a strong

3     showing of access in this case and, because there is a strong

4     showing of access, our bar for substantial similarity is

5     lessened.

6          I'd be happy to argue it to the jury, but I'm not

7     sure how Your Honor would like to handle it because we didn't

8     address it.

9          THE COURT:  That's because we weren't giving that

10    instruction.

11         MR. ANDERSON:  Right.  I think it's --

12         THE COURT:  We're not going to give that instruction.

13         Okay.  Thank you very much.

14         Enjoy your night preparing your argument for

15    tomorrow.  I'm looking forward to it.

16         Thank you, counsel.

17         MR. MALOFIY:  Thank you, Your Honor.

18         MR. ANDERSON:  Thank you, Your Honor.

19         THE CLERK:  All rise.

20    *(Evening recess taken 3:41 P.M.)*

21                        --oOo--

22

23

24

25

1

2

3                              CERTIFICATE

4

5        I hereby certify that pursuant to Section 753,

6   Title 28, United States Code, the foregoing is a true and

7   correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: JUNE 21, 2016

13

14

15

16

17                  /s/  Cindy L. Nirenberg, CSR No. 5059

18                      Official Court Reporter

19

20

21

22

23

24

25

1      **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

3      **HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

4                          **– – – –**

5

6      **MICHAEL SKIDMORE, AS TRUSTEE FOR )**
       **THE RANDY CRAIG WOLFE TRUST,      )**
7                                          **)**
                          **PLAINTIFF,      )**
8                                          **)**
           **vs.                            )    No. CV 15–03462–RGK**
9                                          **)**
       **LED ZEPPELIN; JAMES PATRICK PAGE; )**
10     **ROBERT ANTHONY PLANT; JOHN PAUL   )**
       **JONES; SUPER HYPE PUBLISHING,     )**
11     **INC.; WARNER MUSIC GROUP CORP.,   )**
       **PARENT OF WARNER/CHAPPELL MUSIC,  )**
12     **INC.; ATLANTIC RECORDING          )**
       **CORPORATION; RHINO ENTERTAINMENT  )**
13     **COMPANY,                          )**
                                          **)**
14     **_____DEFENDANTS._____)**

15

16                 **REPORTER'S TRANSCRIPT OF JURY TRIAL**

17                  **DAY 6; PAGES 1205 TO 1295**

18                 **WEDNESDAY, JUNE 22, 2016**

19                       **8:32 A.M.**

20                 **LOS ANGELES, CALIFORNIA**

21

22     _____

23           **SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR**
             **Official Reporter, U.S. District Court**
24                 **255 East Temple Street**
                   **Los Angeles, CA  90012**
25                     **213.894.5949**

1206

1  **APPEARANCES OF COUNSEL:**

2

3  **FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE**
   **RANDY CRAIG WOLFE TRUST:**

4
           FRANCIS ALEXANDER, LLC
5          BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
           280 N. PROVIDENCE ROAD, SUITE 1
6          MEDIA, PENNSYLVANIA  19063
           215.500.1000
7
           KULIK GOTTESMAN & SIEGEL, LLP
8          BY:  GLEN L. KULIK, ATTORNEY AT LAW
           15303 VENTURA BOULEVARD, SUITE 1400
9          SHERMAN OAKS, CALIFORNIA  91403
           310.557.9200
10

11  **FOR DEFENDANT LED ZEPPELIN:**

12         PHILLIPS NIZER, LLP
           BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
13         666 FIFTH AVENUE
           NEW YORK, NEW YORK  10103
14         212.977.9700

15

16  **FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:**

           LAW OFFICES OF PETER J. ANDERSON, PC
17         BY:  PETER J. ANDERSON, ATTORNEY AT LAW
           100 WILSHIRE BOULEVARD, SUITE 2010
18         SANTA MONICA, CALIFORNIA  90401
           310.260.6030
19
           PHILLIPS NIZER, LLP
20         BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
           666 FIFTH AVENUE
21         NEW YORK, NEW YORK  10103
           212.977.9700

22

23  ///

24  ///

25  ///

1207

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2

 3   FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
     CORPORATION, RHINO ENTERTAINMENT COMPANY:
 4
          LAW OFFICES OF PETER J. ANDERSON, PC
 5        BY:  PETER J. ANDERSON, ATTORNEY AT LAW
          100 WILSHIRE BOULEVARD, SUITE 2010
 6        SANTA MONICA, CALIFORNIA  90401
          310.260.6030
 7

 8

 9   ALSO PRESENT:

10        NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11        BRAD COHEN, WARNER MUSIC GROUP

12        SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13        DAN MORENO, TRIAL TECHNICIAN

14

15

16                        I N D E X

17

18   PROCEEDINGS:                                        PAGE:

19    Plaintiff's closing argument by Mr. Malofiy        1209

20    Defendants' closing argument by Mr. Anderson       1236

21    Plaintiff's rebuttal argument by Mr. Malofiy       1263

22    Jury Instructions                                  1266

23    Discussion outside the presence of the jury        1286

24    Discussion outside the presence of the jury        1287
      re exhibits
25
```

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JUNE 22, 2016

 2                            8:32 A.M.

 3                            - - - -

 4        (In the presence of the jury:)

 5          THE COURT:  Okay.  The record will reflect that the

 6   jurors are all present in their respective seats in the jury

 7   box.

 8        Hopefully you had a pleasant night last night and you're

 9   ready to go today.

10        You now have all the evidence that you are to consider to

11   determine what the facts of this case are.  Both sides are --

12   have rested on it, and it's in your hands.

13        Before you go back for your deliberations, we're going to

14   have argument.  That means the attorneys can argue their case

15   to you as to what they think of the evidence.  Remember what I

16   told you earlier, that argument is not evidence, what they say

17   is not evidence, but it's important insofar as it's what they

18   think the evidence shows, so you should listen to it very

19   carefully.

20        If, during that argument, counsel says something as far as

21   how they recall the evidence, and your recollection is

22   different than theirs, your recollection controls, okay?  If

23   they make a statement that is contrary to what you think it is,

24   it's not because they're trying to deceive you; it's that

25   that's how they remember it.  And it's how you remember it that
```

1209

1  controls, okay?

2      Also, you'll find out that each side's going to have about

3  45 minutes to argue the case.  Plaintiff, if he wishes, can

4  break it up.  He can do his initial argument, then he can do

5  some -- save some at the end for rebuttal.  Because the

6  plaintiff has the burden, and that's why the plaintiff has the

7  opportunity to have a rebuttal argument at the end of the

8  defendant's argument.

9      I think we've covered everything.  Everything -- you all

10  ready to go into argument?  Okay.

11      Counsel.

12          MR. MALOFIY:  Yes.

13      May it please the Court, may it please defense counsel,

14  Mr. Jimmy Page, Robert Plant, Atlantic Recording, Rhino

15  Records, Warner/Chappell, may it please you, ladies and

16  gentlemen of the jury.

17      We've been here now roughly a week.  I think everyone here

18  thanks you for your patience and your service.  That's all I

19  can say to that.  We thank you for all your efforts in coming

20  to the resolution of this case.  We couldn't do it without you.

21      Initially in this case, I shared with you that this case

22  was about one thing, and it's a six-letter word: credit.  And I

23  also shared with you that this case was about copyright, and

24  copyright is about, you know, in the beginning, God created.

25  Just like copyright law.

1    We respect and we value creation.  And creation does not

2  mean copying.  Creation means doing something independently.

3  Creation means doing something on your own.  Creation means

4  doing something that is unique and is memorable and that is

5  important.

6    Now, there's also something I shared with you earlier on:

7  Give credit where credit is due.  And in this case, we believe,

8  and we've said from day one, that this case has always been

9  about credit.

10    Now, to be clear, and as I shared with you throughout this

11  case, the evidence showed that our claim is not for the eight

12  minutes of "Stairway to Heaven."  Our claim is focused on the

13  first 2 minutes and 14 seconds.  Our claim is focused primarily

14  on Part A, which is a very unique descending chromatic line

15  which is used in an original and creative way.  Our claim is

16  also focused on this ascending line which is part of it, which

17  is an AB, BC, C to F sharp pair.

18    I'm going to move more into that, but I think it's

19  important to understand what we're asking as plaintiff and what

20  the evidence showed.

21    What we're asking is that when you deliberate and when you

22  come to your conclusion, it doesn't mean all the sudden Randy

23  Wolfe, who's no longer here, Randy California, becomes the

24  writer of "Stairway to Heaven" and Mr. Page and Mr. Plant have

25  no rights to that song whatsoever.  No.  It means that we're

1   asking for a one-third credit, to share the credit.  And all

2   we're asking is that the credits are shared.  It doesn't

3   displace Mr. Plant.  It doesn't misplace Mr. Page.  It doesn't

4   minimize their amazing contribution to that song.  It doesn't

5   say the solo wasn't one of the most quintessential solos of all

6   time.  It doesn't mean the song is devalued.  It doesn't change

7   the fact that they will still be writers on "Stairway to

8   Heaven."  It means that they're going to share the credit.  And

9   that's what we're asking of you as a jury.

10       If this song was written by three people, and the

11  introduction was written by Randy California, and the rest of

12  it, the lyrics and the arrangement and the other parts, the

13  solo and the other parts at the end of the song, were written

14  by Mr. Page, if they worked collectively together in a band or

15  if they were a band together, they would have split that credit

16  in three equal parts.  And Led Zeppelin often did that.  And

17  bands do that.

18       So we're not saying we are hundred percent owners of this

19  song, we should get hundred percent credit.  We're saying,

20  isn't it established through the evidence that there was a

21  Part A, a very unique guitar part, and that part was used in

22  the introduction of "Stairway to Heaven"?  That's what we're

23  asking.

24       Now, let's talk about a few things that I addressed

25  earlier on in this case.

1212

```
1    In this case, I said the pink elephant is that we have
2    Led Zeppelin here, who is one of the biggest bands of all time,
3    probably one of the top five rock bands of all time.  We have
4    Jimmy Page, who's an incredible guitar player.  We also have
5    Robert Plant, who's very charismatic, and it's obvious why he
6    was such a successful frontman, all right, and they were very
7    talented, and nothing we're saying here takes away from that.
8    Not one of our experts said that Robert Plant is not an amazing
9    frontman.  Not one of our experts or not one of our witnesses
10   said Jimmy Page is not an amazing guitar player.  It comes down
11   to giving credit where credit is due.
12       But we can't go in a time capsule.  But we have to.  And
13   we have to go back many, many years.  And when we go back many,
14   many years, what we know is that Robert Plant was a young man,
15   and so was Jimmy Page, and so was John Paul Jones, who
16   testified, and what we know is that they were session
17   musicians.  Not Mr. Plant, but Mr. Page and Mr. Jones.  And
18   session musicians play other people's music.  That's what they
19   do.  And they did it day in and day out, hundreds and hundreds
20   of times, and they worked in the studio playing other people's
21   music.
22       And then what we also learned and what the evidence showed
23   in this case is that they covered people's music that they
24   liked, and in covering their music, then they played their
25   music.  And what we also learned is that when they were going
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  on their first U.S. tour, nearly every song was a cover.  There

2  was no original music when Led Zeppelin came on U.S. soil and

3  was playing to concerts and to fans.  All these songs were

4  covers of other songs, Mississippi Delta blues players, rock

5  musicians, rock bands like we have here in this case.

6       There was a time, and as I shared with you in my opening,

7  that Spirit was the big band in the western scene here, the

8  whole West Coast scene, and that's a band that Mr. Page and

9  Mr. Plant and Mr. Jones were aware of and they followed.  Why

10 do we know that?  Well, we know that because Mr. Plant --

11 excuse me, Mr. Page had testified that he has five albums, five

12 albums of Spirit, all of which he bought in the day.  When we

13 talk about in the day, he even was able to mention the albums.

14 Spirit's self-titled album that he had in his collection that,

15 if you recall, he said he bought initially, and then when I

16 asked the question -- the answer to be read back by the court

17 reporter, he came back on his word and said, No, I don't know

18 actually how I got that album.

19       MS. FREEMAN:  Objection, misstates the testimony.

20       THE COURT:  Overruled.

21    Again, ladies and gentlemen, I've told you -- I'm not

22 going to keep interrupting argument -- it's your memory that

23 controls.  Okay.

24       MR. MALOFIY:  And then he moved back on that position

25 said no, no, he can't recall exactly how he got it.

1    Now, what we know is that he was able to name Spirit's

2  self-titled album in '68.  He was able to name *The Family That*

3  *Plays Together* in '68.  *Clear* in '69.  *Twelve Dreams of*

4  *Dr. Sardonicus*, also, 1970.  And then he had a live album,

5  which was a double set, all right?  It's our position, and we

6  asked Mr. Plant and Mr. Page, that at least two of these albums

7  had "Taurus" on it.

8    And there's also something else that's a pink elephant in

9  this room.  We wanted to have the opportunity to play you the

10  sound recording, and the Court made a decision that it would

11  not allow that.  We have to respect the Court's decision.  We

12  have to respect the judge.  That's something that we wanted to

13  share with you.  That's something the defense did not want to

14  share.

15    THE COURT:  And ladies and gentlemen, you can't

16  consider that.  If we've excluded from evidence, it's not

17  something that you should consider that they may have wanted to

18  show to you.  That's inappropriate.

19    Go ahead, Counsel.

20    MR. MALOFIY:  I'll move forward.

21    But what we do know is that Mr. Plant and Mr. Page also

22  performed "Fresh Garbage" live, and "Fresh Garbage" was also a

23  song on the first album.  And they not only performed it once,

24  they didn't perform it twice, they didn't perform it three

25  times, they performed it somewhere between 15 to 20 times in

1215

```
 1    concert.  This is also a song that appeared on the first
 2    self-titled album which was in Mr. Plant's -- Page's
 3    collection, but we just don't know when.
 4        Going back to the band Spirit and going back to who Randy
 5    California was, Randy California was an amazing guitar player.
 6    The evidence showed that in this case.  There has been no
 7    dispute that he was not a prodigy.  There was no dispute that
 8    he wasn't -- played with Jimi Hendrix for many years.  There
 9    was testimony from his sister that they moved to New York City
10    and where he played with the great Jimi Hendrix for many years,
11    and he was well revered and well regarded in the music
12    communities as a very young guitar player who was a prodigy and
13    was taught by some of the best blues musicians and guitarists
14    of all time.
15        Another issue that has to be addressed and discussed is,
16    well, why is the case being brought now?  And I discussed that
17    in my opening, and I also need to share it with you now.  The
18    Trust has a fiduciary duty in bringing a suit.  Why?  Because
19    the law was changed in 2014, which said if there is --
20        THE COURT:  Counsel, the Court instructs the jury on
21    the law.  What you say the law is is not necessarily true.  The
22    Court will instruct the jury on the law.  It's not for the
23    attorneys to tell the jury what they think the law is.
24        MR. MALOFIY:  Understood.
25        I anticipate the Court will instruct you that --
```

1216

```
1          THE COURT:  The Court's not going to instruct in that
2    area.
3          MR. MALOFIY:  Oh, understood, Your Honor.
4          THE COURT:  Okay.
5          MR. MALOFIY:  I'll move forward.
6       Mr. Skidmore has a fiduciary duty to the Trust.  He has a
7    fiduciary duty to bring claims on behalf of the Trust.  He's
8    done that in this case here today, and that's why we are here
9    with this case.
10       Let me move forward to a couple things that we talked
11   about in this case.
12       One, and what we've shown, is that the Trust has the
13   intellectual property of Randy California and that the Trust
14   has the copyright of "Taurus."  That was something initially,
15   if you recall, that defendants disputed.  We believe that this
16   has been unrebutted in this case, and we believe that the
17   evidence has shown that the Trust is the valid and proper
18   holder of the intellectual property.
19       We have, which is marked as 3031-00042, which is -- and
20   which was shown to the jury, which is -- I'll use this here.
21       (Exhibit was displayed on the screen.)
22          MR. MALOFIY:  If we see here, in -- excuse me.  In
23   1996, January 11th, 1996, there was a renewal of the "Taurus"
24   copyright.  The copyright claimant here is listed as Randy
25   California as the author.  There's been no dispute that this
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1217

```
 1    copyright was registered and renewed by Randy California
 2    roughly a year before his death in 1996.
 3         There's also no dispute, and the evidence showed, that in
 4    1967, the initial --
 5         Excuse me.
 6         (Exhibit was displayed on the screen.)
 7         MR. MALOFIY:  -- the initial copyright for "Taurus"
 8    was filed with the copyright office, and as we've heard, this
 9    is called a deposit copy.  And what it is, what the evidence
10    has shown is that it is a representation of the music, the
11    compositional elements embodied in this piece of work.  This is
12    the actual deposit copy which gets filed with the copyright
13    office.  I'm going to talk a little bit more about that.
14         Also in regards to the "Taurus" deposit copy, there's no
15    dispute here that it was written by Randy California and that
16    it was written in the late '60s, sometime in '66 or '67, when
17    he was very young.
18         Additionally, we saw evidence that there's also the
19    "Stairway to Heaven" deposit copy in the copyright office,
20    which also -- which was filed in 1972, January.
21         There's no doubt that "Taurus" was a piece of work that
22    was written prior to Led Zeppelin's "Stairway to Heaven."
23    There's no dispute that it was released and sold, as the
24    evidence had shown, in the United States, in the United
25    Kingdom, in Germany, in Japan, some Scandinavian countries as
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01323**

1218

1  well.  This wasn't some obscure band that wasn't popular at

2  that time.  And we're going back many, many years.  It was a

3  band that was popular at the time and was a hot band.  In fact,

4  this band was so popular and so hot that Spirit, that when

5  Led Zeppelin came over, they weren't the band that they are

6  today, or that they are known to be today, and Led Zeppelin was

7  a band that opened for Spirit.  Now, that was their first show

8  on U.S. soil, December 26th, 1968.  There's no dispute, and I

9  believe the evidence is clear, that Led Zeppelin did, in fact,

10  open for Spirit.

11      Now, if you recall, Mark Andes said -- and if you recall

12  Mark Andes, he was I believe the second witness that took the

13  stand, maybe the third, I believe the third, and he had longer

14  hair, and he was a bass player who played in the first lineup

15  of Spirit, and he says he recalls "Taurus" being played at the

16  December 26th, 1968 show.

17      In fact, we also know that Led Zeppelin performed

18  "Fresh Garbage" prior to that show on December 26th, 1968.  We

19  also know that they played "Fresh Garbage" at that show.  We

20  also know that Mr. Plant was familiar with "Fresh Garbage," a

21  song by Spirit, because even in Band of Joy, which was a band,

22  his predecessor band to Led Zeppelin, they also played the

23  music of Spirit.

24      We have to put things in context here to give it meaning,

25  and in context is that Mr. Page has somewhere 10,000 albums or

1    records that he collected over the years, and he's been a

2    connoisseur of records and albums and music.  But when he chose

3    to cover a rock band, he covered Spirit.  And he could have

4    covered -- 10,000 albums times 10 songs an album, there could

5    have been 100,000 songs he could have covered, and he chose a

6    specific band, Spirit, and a specific song, "Fresh Garbage,"

7    that was on a specific self-titled album that was on the same

8    side as "Taurus."

9        To believe that Mr. Plant -- excuse me, Mr. Page had the

10   album, to believe that Mr. Page was familiar with the music but

11   did not listen to the fourth song on the album, I think is

12   difficult to believe.  But whether or not that's true or not is

13   something you're going to have to consider as jurors, the

14   credibility of defendants.

15       Let's talk about that for a moment.  You know, there's

16   something called selective memory, and what we have here is a

17   lot of testimony about what happened many years ago.  But that

18   testimony is not rebutted because I say so, it's not rebutted

19   because people's memories say so; it's rebutted because we have

20   audio recordings of reporters, many of which we have here, who

21   have the actual audio of what occurred and how it occurred and

22   when it occurred.  You don't have to believe me.  You don't

23   have to believe defendants.  You just have to hear their words.

24   They confirm:  That's my voice.

25       If you recall, although Mark Andes has a clear memory of

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1220

```
 1    playing "Taurus," or has a memory of playing "Taurus" on
 2    December 26, 1968, although he has a memory, and so does Jay
 3    Ferguson, of playing -- or having Led Zeppelin open for them,
 4    Led Zeppelin or Jimmy Page and Robert Plant have a distinct
 5    memory they left immediately thereafter.  There's many things
 6    in their memory which aren't clear, but certain facts are
 7    clear, and you have to, as the jury, have to make the decision:
 8    Are those convenient facts that they're remembering, is that a
 9    selective memory, is that a convenient truth, or is that
10    actually what happened?
11        Let's talk about a few things.
12        If you recall, Page denied remembering opening for Spirit
13    and seeing any of their shows live.  Day 2, in the afternoon of
14    his testimony, he said, "I didn't see Spirit live."  That was a
15    statement he made.  And then I showed him document 1000 --
16    excuse me, 100158, which I have right here.
17        (Exhibit was displayed on the screen.)
18        MR. MALOFIY:  And the bottom of that, on the first
19    column, it reads, "Kind of funny, Page reflects, of Led
20    Zeppelin's success."
21        Quote, "It's kind of funny.  On our first tour around, we
22    played second fiddle to other groups.  Last time, we were the
23    second group and Spirit was the third.  Now we've each gone up
24    a notch.  On the current tour, Spirit has second billing."
25        Now, in 1969 when this article was written, Mr. Page had a
```

1221

1  clear memory of who Spirit was, that they were touring

2  together, that they were opening, that they were playing shows

3  together, and that they were jockeying their position as who

4  was more important on that bill. And that's important as a

5  band, where they are on that bill, where they are on that

6  lineup. And very quickly, I don't believe Led Zeppelin was

7  opening for any bands after a short period of time because of

8  their tremendous success. But there was a time in 1969, as

9  this article indicates, that Jimmy Page knew who Spirit was,

10 knew who their lineup was, knew that they were playing concerts

11 together, knew where they were in the billing, and was very

12 proud of the fact that they had bopped Spirit, who they were

13 originally opening for, and now Spirit was basically opening

14 for them.

15      Now, that was entirely inconsistent with his testimony

16 that he has no recollection of seeing Spirit play live, all

17 right? And so one of the things that you're going to have to

18 consider is, is Mr. Page's and Mr. Plant's memory better now,

19 or was it better in 1969 and 1970 and 1971 and '72? Is their

20 memory of facts more fair now, or was it unbiased in '69 and

21 '70 and '72 when they were sharing the bands they liked, the

22 bands they played with, the music they were inspired by, the

23 music they were copying, who they were opening for, and what

24 type of music made them excited?

25      You know, I also asked Mr. Page about albums, Spirit

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    albums, and if you recall, in example 98, he said, "I always

2    enjoy seeing them."  Now, here's another statement which

3    absolutely contradicts his testimony on the stand.  And why

4    does it contradict it?  Because he said, "I always enjoy seeing

5    them," all right?  Presumably, he was seeing them live.  I

6    don't know how else you would be seeing the band.  They're

7    touring together.

8        Can we pull up 98 for the jury?

9        Let's pull back for a second, and let's take the top here

10   for a moment so we can identify the date.

11       (Exhibit was displayed on the screen.)

12       MR. MALOFIY:  And if you see here, this is another

13   article which we were able to show you, from New Musical

14   Express, and it was April 25th, 1970, and it actually has a

15   quote of Jimmy Page, and that's him as a young man, and if we

16   go here, we can blow up this portion for the orientation of the

17   jury.

18       It says, "What do you think of the American pop scene?"

19       Jimmy Page:  "Well, one always gets inspiration from

20   people like Love, but I believe they've broken up, which is

21   unfortunate, because Arthur Lee was a tremendous writer, and of

22   course Buffalo Springfield, and all the offshoots of these

23   things will be and are great."

24       And this is where I'm reading right here, right underneath

25   the picture.  And for the orientation of the jury, let me just

1    point to it.  I'm reading from right here, over here, "will be

2    and are great."

3        "There are groups over here doing really good things.

4    Blood, Sweat and Tears aren't my cup of tea.  Spirit do some

5    really nice things on albums.  They give a really nice

6    atmosphere when they play, and I always enjoy seeing them."

7        Now, this also rebuts Mr. Page's testimony that he wasn't

8    familiar with their albums.  Not album; albums.  There was only

9    two albums when this article was written, the first album, the

10   self-titled, and the second album.  Now, he's saying he's

11   familiar with the albums.

12           MS. FREEMAN:  Objection.  It misstates the testimony.

13           THE COURT:  Overruled.

14           MR. MALOFIY:  Now, he's saying he's familiar with the

15   albums.  It's plural.  It also says that -- it also says that

16   he enjoys seeing them live and appreciates their atmosphere.

17       The reason I have to step through this is because access

18   has been so hotly disputed.

19       Now, we've shown not just album, but albums.  We've shown

20   five albums in his collection, one a double album, all these

21   albums bought during the day.  We have a slip-up on the stand,

22   or maybe a correction, that he bought the first album and had

23   it in his collection.  And we also have him saying that, in

24   articles, that he opened for Spirit.

25       These are all things that establish one of the elements

1  we've established in this case, which is access.  And once we

2  get through access, then we move to substantial similarity.

3  But let me finish the other evidence which clearly indicates

4  access in this case.

5        In 1972, exam- -- excuse me, Exhibit 157.

6        Can we pull that up for the jury?

7        (Exhibit was displayed on the screen.)

8            MR. MALOFIY:  And if you look here, and for the

9  orientation of the jury, right here, and it is a bit hard to

10  read, so I'll do my best.  He was asked about certain bands,

11  and he said, "They were like that, very cut and dried and samey

12  every night.  They were obviously very good even though they

13  didn't strike me on an emotional level like Spirit did."  And

14  that's right here.

15            THE COURT:  And Counsel, please, from the podium.

16            MR. MALOFIY:  Okay.  Yes, Your Honor.

17      "Even though they didn't strike me on an emotional level

18  like Spirit did, for instance.  I saw Spirit a couple times and

19  thought they were very good."

20      Now, here we have again another quote in another magazine

21  by another publication at a different time, from 1972, quoting

22  Mr. Page saying he likes Spirit, they moved him on an emotional

23  level.  That's a strong adjective about how this band moved

24  him.  And he also said that he saw them, Spirit, a couple

25  times.  It clearly indicates that Mr. Page's memory today is

1    not as accurate, or he's selectively misremembering things that

2    happened many years ago.  Many years ago it was clear.  It was

3    clear that he had the albums, he was familiar with the albums,

4    plural, he saw them in shows, plural, he saw the performances,

5    he was emotionally moved by them, he liked them very much.

6         Now, could we go to 160-A exhibit.  160-A exhibit.  This

7    is hard to hear, so I'm going to ask you to pay attention as

8    best you can to the beginning of it, which is where Mr. Page

9    says, "I really like Spirit."

10        (Audio played.)

11            MR. MALOFIY:  I'll stop there.

12        Can you just play that again?

13        (Audio played.)

14            MR. MALOFIY:  Stop.

15        Could we play it one more time?

16        (Audio played.)

17            MR. MALOFIY:  Stop.

18        "Spirit is a band I really like."

19        Those are the words.  Mr. Page confirmed that that's his

20   voice, and that's him saying that he liked this band.

21        The evidence is not just a reporter making a mistake one

22   time in a magazine.  It's not just some reporter who wants to

23   put words in Mr. Plant's (sic) mouth 40 years ago.  It's

24   multiple sources from multiple periodicals, from multiple

25   periods of time, which clearly indicate that there was access

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1226

```
 1   to this music, there was a deep appreciation for this music,
 2   there was a deep respect for these musicians, that they
 3   followed them, that they toured with them, that they had their
 4   albums, and that the access component in this case is so
 5   clearly laid out and established, not just from my words, not
 6   just from argument here on the podium, but from the witnesses,
 7   from Mr. Page himself, but from Mr. Page's own words from many
 8   years ago.
 9       The reason why credibility is an issue in this case is
10   because if you can't believe somebody about something they're
11   saying about one issue, you can't believe what they're saying
12   about any issue.
13       Forty years ago, Mr. Page and Mr. Plant didn't have a
14   reason to misremember facts, to have selective memory, and to
15   have completely diametrically opposed positions about bands
16   they like, Spirit, and things like that.  But today they do.
17   Because we are in a lawsuit and we are focused on one thing
18   here:  Credit.
19       Now, let me move forward.
20       Larry Knight testified that he met Mr. Plant.  You
21   remember Larry Knight.  He was a bass player that was in Spirit
22   later.  He testified that in '73 he was at the Rainbow, I
23   believe it was the Rainbow concert, and there was a record
24   number of encores.  There was a record number of encores.
25   There was a afterparty thrown by CBS, and at that afterparty
```

1227

```
1    Mr. Page was there, and he said that Mr. Page said "Great
2    show."  There's more evidence:  "Great show."  He said he saw
3    the members commingling.  He saw the members talking.  He says
4    he didn't hear what they said, and he's not sure exactly what
5    they said, but this is the sort of thing that would happen.
6    You have two of the hottest guitar players at the time,
7    Mr. California, who's no longer here, and we have Mr. Page, who
8    is here, and they're in a small group environment of an
9    aftershow for a Spirit concert.  Of course they're going to
10   come together.  Of course they're going to talk.  This is bands
11   that were on tour together, opening for each other, and
12   bands -- and two musicians who very much appreciated and liked
13   each other at that time.
14        Now, we discussed widespread distribution.  This album was
15   sold in all the countries I said.  Why do we know that?
16   Because the witnesses said that, okay.  That's undisputed here.
17   It's been sold in many, many countries all throughout the
18   world, and it was a song that was very popular, and there was
19   charting songs, singles, from those albums.
20        Let me move to a few other points here.
21        And access is also established because, if you recall,
22   100165-A:
23        (Audio played.)
24        MR. MALOFIY:  We gotta cue it up.  I apologize.
25        (Audio played.)
```

1228

```
 1          MR. MALOFIY:  Pause it there.

 2          "The intro of it I came up with in Bron-yr-Aur, in a

 3    cottage."

 4          That was from 1972.  Why is that important?  Because the

 5    genesis of "Stairway" was an intro, Part A, and maybe a verse.

 6    And that's what we learned in 1972.  Today -- for 40 years,

 7    that's been established as what has happened.  But in this

 8    case, all of the sudden there's been a change of facts, a

 9    complete rewriting of history of how the song was written.

10    Because Mr. Page and Mr. Plant don't want to say that, yes,

11    "Stairway to Heaven," the genesis was a guitar, acoustic

12    guitar, intro, and a verse, which is "Taurus."  That's what

13    they don't want to say in this case, and that is what is at

14    issue in this case.  So everyone conveniently took the stand

15    and said something diametrically opposed to what they all said

16    for the last 40 years, and they say no, no, no, their memory is

17    better now, these were all glitches or they were misremembering

18    or they had issues with their memory a year after the song was

19    written, a year after it was released, and their memory is

20    better today.

21          Could we continue playing that?

22          (Audio played.)

23          MR. MALOFIY:  Going to 100164-A.

24          (Audio played.)

25          MR. MALOFIY:  That was John Paul Jones.
```

1    Now, there's a dispute.  I think counsel jumped up at some

2    point and said, no, no, no, this is 1990.  Whether it was 1972

3    or 1990, they've been maintaining that story for another 20

4    years?  It makes no difference.  The point is, is that this is

5    the story they maintained.  Whether it was as early as 1990 or

6    as early as 1972, the story never changed except when we were

7    in court today, in court for this case, and then this story is

8    diametrically opposed to what actually happened.  Because what

9    did John Paul Jones say?  They came back from the Welsh

10   mountains -- they, meaning Jimmy Page and Robert Plant -- with

11   a guitar sequence chord progression and maybe a verse.  And

12   that, guitar intro and verse, that was "Taurus," and that's a

13   band they were familiar with and the band they liked.

14       What they did after that, that's their credit.  They

15   deserve that credit.  But they also should share the credit in

16   recognizing that this was not something that was independently

17   created.  This is something that they pulled from and lifted

18   from a band and a composer, Randy California, which they very

19   much liked and they very much were well aware of and that they

20   had.

21       Let me move forward to substantial similarity.

22       You know, substantial similarity.  We heard from two

23   experts.  Both experts said the other's qualified.  Our expert

24   is qualified.  Defendant's expert was qualified.  You heard

25   their testimony.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1230

```
1        What makes "Taurus" unique?  What makes it unique is that
2   it has a descending chromatic line, a descending arpeggiated
3   chromatic chord progression and line, and then it also has an
4   ascending line.  And what it means is that it's moving,
5   basically, descending and ascending, the notes are moving in
6   two different directions.  That's what makes it memorable and
7   unique.
8        Now, when our expert analyzed the "Taurus" deposit copy
9   and also the "Stairway to Heaven" music, he was able to say
10  both these lines are important.  And why are they important?
11  Because the ascending line has the AB, BC, C to F sharp pair,
12  and the chromatic arpeggiated chord progression is also present
13  in both pieces of work.  And why is it important?  Because it
14  never goes to the E.  It skips the E.  And out of all the 65
15  examples that Dr. Ferrara showed, not one of them, not one of
16  them skipped the E.  And the only two songs in music history
17  that are able to show that it skips the E was two pieces of
18  work:  "Taurus" and "Stairway to Heaven."  That is a very, very
19  unique compositional element in how it doesn't do what every
20  song wants to do.  It doesn't resolve in cadence to hitting the
21  E.  It omits it.  It leaves it.  It skips over it.  And it
22  leaves the listener wanting.  That is something that, as lay
23  people or as lay persons hearing this, it may not be apparent.
24  And that's why there are experts.
25       And you've heard from Dr. Ferrara.  He was on the stand.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1231

1   He got paid $100,000 to try to figure out how these things,

2   even though they are similar, how they're really -- it's not

3   protectable.

4           THE COURT:  You have about 10 minutes left.

5           MR. MALOFIY:  Yes, Your Honor.

6       The point is, and this is the big point:  Mr. Jimmy Page

7   took the stand not once, but twice.  Spent hours up there.  He

8   told you about the arrangement, the instrumentation, all these

9   things.  He didn't tell ya where he got the idea for the

10  introduction.  And when you heard even the Headley Grange

11  tapes, you heard strumming, but the one part that popped out

12  that was finished was the Part A part, that acoustic guitar

13  part.  That arpeggiated acoustic guitar was clear and distinct,

14  and it popped out.  The one part you didn't hear -- and the

15  rest of it was strumming, and that's because it was a piece of

16  music that was lifted from "Taurus," from Randy California.

17      Now, he also didn't tell you about his influences or what

18  inspired him to write that, and that's very, very important.

19  It's important because, of all these examples that Dr. Ferrara

20  came up with, did he ever show you that Jimmy Page or Robert

21  Plant or John Paul Jones had ever heard "To Catch a Shad"?  Did

22  he show you this is prior art they relied upon?  No.  Did

23  Mr. Jimmy Page ever say he was familiar with any of this prior

24  art that had these alleged similarities which our expert

25  disputed?  Never.  Did Randy California -- did they show any

1  evidence that Randy considered any of this prior art in coming

2  to his creation?

3      What does original mean?  Not copied.  What does original

4  mean?  Not copied.  There's no evidence that Randy California

5  copied "Taurus" from anywhere or anyone.  There's no evidence

6  that this song "Shad" or these other songs were distributed.

7  There's no evidence that they went out to the public.  There's

8  no evidence that they were widely sold.  In fact, they weren't.

9  There's no evidence that these were even played in court.  And

10 when Dr. Ferrara played them, they changed the key and changed

11 the tempo and performed in such a way to try to make them sound

12 as much similar as possible.  But they're not.  And those sound

13 recordings weren't played for you by defendants.

14      But there's no evidence that Mr. Jimmy Page heard "Shad."

15 There's no evidence that Mr. California did.  There's no

16 evidence that Mr. Plant did.  In fact, they took the stand and

17 didn't even address it.  They didn't even say, Hey, you know,

18 this came from another song, or Hey, I was inspired by this.

19 The only thing we have, the only shred of evidence of the

20 inspiration, was Mary Poppins.  That's the only thing that

21 Mr. Page had indicated that was inspirational for this

22 introduction, was the ascending and descending line in Mary

23 Poppins.

24      There's elements that make "Taurus" and "Stairway" unique.

25 The ascending line, AB, BC, C to F sharp pair, the descending

```
 1    chromatic chord progression that misses the E.  That's very
 2    important.  There's also the rhythmic pulse of each work moving
 3    in eighth notes.  Those are the very, very important things.
 4         I'm going to move forward to damages.
 5         How much time do I have?  Five minutes?
 6         I'll move forward to damages.
 7         Oh, one last thing.  There was pitch collections
 8    Dr. Stewart references.  Every pitch were the same, and they
 9    were used, and they were the same in both "Stairway" and
10    "Taurus," which also none of the other songs were.  And the
11    note durations were also unique.  There were five things that
12    these two songs "Taurus" and "Stairway to Heaven" had that the
13    other songs didn't, and that's what we know.
14         Let me move forward to damages here.
15         The damages in this -- we had this as a demonstrative.
16    This is demonstrative.  We showed it to you earlier.
17              THE COURT:  Okay.
18              MR. MALOFIY:  We have here --
19         Could we blow this up?
20              MS. FREEMAN:  Objection.  It was not.
21              THE COURT:  Overruled.
22              MS. FREEMAN:  We just saw --
23              THE COURT:  Overruled, Counsel.
24              MR. MALOFIY:  We have these damages that we heard
25    about in this case.  I summarized them for you.
```

1    The record revenues in this case, if you look here, came

2    down to 3 million 42.  Roughly 3 million dollars.  That is

3    based upon their proration if it's a straight line proration.

4    We have to prove, and I anticipate the judge will tell you, we

5    have to prove gross revenues.  Gross revenues is 13.5 million.

6    Now, the number is somewhere in the middle.  Why do we

7    know that?  Because we know that qualitatively "Stairway to

8    Heaven" was a much more important song than the whole album.

9    Why?  When they did a feature of it, they had four songs.  What

10   was one of the four songs?  "Stairway to Heaven."  When you

11   consider Michael Jackson's *Thriller*, that's a huge album.

12   "Beat It," a huge song.  These are the quintessential songs

13   that people buy catalogs or people buy albums for.

14   So, respectfully, their apportionment was a straight line

15   apportionment.  No.  The value of "Stairway to Heaven" is much

16   more important than a straight line.  It's somewhere between

17   these two numbers.

18   These are the costs they had.  If you accept their costs,

19   you have to subtract out some money here.  No matter what, if

20   you look at a total of these two columns, it's between these

21   two numbers.  Next -- and that's for record labels.

22   Next is the legacy albums.  It's our responsibility, and

23   I'm sure the Court -- I anticipate the Court will instruct you

24   that we have to show gross revenues; they have to show

25   apportionment and costs.

```
1        If you look here, the revenues for the legacy albums was

2   3 million.  That's what Mr. Gardner said.  We had indicated and

3   our expert said it was 5 million.  So it's somewhere between

4   those two numbers.  That's not disputed.

5        They never told you how many tracks.  They never

6   apportioned.  That evidence is not there.  So those are the two

7   numbers.

8        When you look at the O2 concert, what you have is, you

9   have, if you do it by per track, there were 17 tracks.

10  Mr. Gardner said that.  Based on 17 tracks, it's 588,000.  If

11  you do it on the total, it's 10 million.  If "Stairway to

12  Heaven" is equal to one-seventeenth of those songs, that's one

13  thing, but it's more important.  So you have to determine the

14  qualitative value of it, and it's somewhere between those two

15  numbers.  If you add that up, these are the other numbers you

16  have to take down.

17       Now, the last piece is the publishing revenues.

18       The publishing revenues are represented here and here.

19  These are the defendant's numbers based on 87 songs.  These are

20  plaintiff's numbers based on the total.  We have to -- the

21  Court will instruct you, I anticipate, we have to show gross

22  revenues; they have to show apportionment and cost.

23       If you look here, the total publishing is 350,000 if you

24  look at a straight eighty- -- if it's one of 87.  The total is

25  30 million.  It's somewhere in between those two numbers.  And
```

```
1    qualitatively "Stairway to Heaven" is worth more.  That's what
2    you're going to have to determine and decide.
3         We're asking --
4         I'll hold two minutes for rebuttal.
5         We're asking that this jury consider the facts, consider
6    the evidence and what was said.  Consider the credibility of
7    the witnesses.  That's very important.  Because if you can't
8    believe someone on one thing, you can't believe them on
9    anything.
10        This song, "Stairway to Heaven," introduction, was lifted
11   from a piece called "Taurus" by Randy California.  We ask that
12   you give the Trust and Randy California, even though he's not
13   here, a one-third credit in the song.  Could it be less?  Sure.
14   Could it be more?  Sure.  But that's what we're asking.  And
15   we're also asking you to determine the economic damages which
16   is fair in this case.
17        I'll hold two -- I'll hold a minute for rebuttal, or two,
18   perhaps.
19             THE COURT:  Thank you, Counsel.
20             MR. MALOFIY:  If I could get that much.
21             THE COURT:  Or three or four?
22             MR. MALOFIY:  Thank you, Your Honor.
23             THE COURT:  Counsel.
24             MR. ANDERSON:  Thank you, Your Honor.
25        Last week I told you that I wouldn't be able to talk to
```

1  you again until we had all the evidence in.  And now that time

2  has come.

3      I think the best part, the best place to start is the

4  beginning, and a week ago, plaintiff's counsel told you, if you

5  remember, "To sum this up in six words, you can go back to the

6  first Bible, and it says, "In the beginning, God created."  He

7  promised you six words; he delivered only five.  And that is

8  what he has done, what plaintiff has done throughout the case.

9  He has made promises and he hasn't delivered.

10      Even now, in the opening statement -- the closing

11  statement, excuse me, counsel tells you what the evidence was

12  that he heard, and it's not the evidence that was in this

13  court, that was adduced in this courtroom, and I think it's

14  very important, as the judge told you, to distinguish between

15  what Mr. Malofiy has told you and what you heard.

16      Now, I also asked you last week to keep track of what

17  promises were made in the opening statements and to decided

18  today who kept their promises and who didn't.  So if we can go

19  through what promises were made and what the evidence showed.

20      Now, one of the things that plaintiff has to show is

21  ownership.  He has to show that he owns the copyright in the

22  musical composition "Taurus."  And at best what you have seen

23  is something murky and something that is not clear and

24  definite.

25      Now, you can infer what you feel is appropriate from the

1   following fact.  Plaintiff did not present the registration,

2   the renewal registration, for the "Taurus" copyright.  What he

3   presented, as you'll see, is a printout from the Internet.  Not

4   the registration.  Not the certificate.

5       Now, we're willing to assume today that whatever rights,

6   intellectual property rights, that Randy California had when he

7   died now belong to Mr. Skidmore as the trustee.  The question

8   that you have is whether those intellectual property rights

9   included the "Taurus" copyright.  And, importantly, they have

10  not presented the certificate.

11      Now, saying that he owns the copyright is not the same

12  thing as proving it.  And we've seen evidence that he doesn't

13  own the copyright.  If we look at the "Taurus" deposit copy,

14  Counsel didn't show you the one part at the bottom.

15      (Exhibit was displayed on the screen.)

16          MR. ANDERSON:  This is what was filed with the

17  original registration with the United States Copyright Office

18  in 1968, and it says Hollenbeck Music, copyright 1967.  But he

19  stands here, plaintiff stands here in this courtroom and claims

20  to own what Hollenbeck owns.

21      Now, we also put into evidence the original -- we did.

22  Plaintiff didn't.  But we put in the original certified copy

23  from the United States Copyright Office of the registration.

24      And if we could show the whole registration.

25      (Exhibit was displayed on the screen.)

1    MR. ANDERSON:  The first page is a certificate signed

2  and authenticated by the United States Copyright Office.  The

3  second page is the registration itself.

4    Now, if we can focus on the copyright claimant language,

5  you see Hollenbeck Music Company.  Not Randy Wolfe.  That's the

6  evidence you have that this copyright was owned by Hollenbeck.

7    We also have the 1967 songwriter agreement that Mr. Wolfe

8  signed.  That's in evidence.  You'll be able to see that.  And

9  it's legalese.  Like all lawyers, you know, you use a hundred

10  words when you can only use five, but you'll see it's a

11  contract between Randy Wolfe and Hollenbeck Music, and it

12  includes language that Randy Wolfe assigned all rights,

13  including the renewal copyright, to Hollenbeck Music, the

14  renewal copyright that plaintiff claims to own.  This is the

15  documentary proof.  This is what you have.  What they have, on

16  the other hand, is a printout from the Internet.  And you get

17  to balance that, and you have to decide, have they proved by a

18  preponderance of the evidence that the plaintiff owns the

19  copyright?

20    The other thing I would mention, you heard Mr. Skidmore

21  testify.  He didn't write the "Taurus" composition.  He didn't

22  even know Randy Wolfe at the time.  And he's not a relative of

23  Randy Wolfe.  And he also testified that any recovery that

24  plaintiff gets in this case, while at the one hand saying we

25  really just care about credit, on the other hand saying, well,

```
1    but we want millions and millions of dollars, but Mr. Skidmore

2    also testified that none of that goes to Quinn Wolfe, the only

3    real relative of --

4            MR. MALOFIY:  Objection.

5            MR. ANDERSON:  -- and the son of Randy Wolfe.

6            THE COURT:  Sustained.  It would be immaterial if it

7    goes to Quinn Wolfe.

8            MR. ANDERSON:  Now, that's ownership.  Let's next go

9    to access.  And what that means is, is there nonspeculative

10   evidence there that these gentlemen actually heard "Taurus"?

11   Not "Fresh Garbage," not other albums, but heard "Taurus."  And

12   what you've heard from plaintiff is that there was supposedly a

13   lot of interaction between Led Zeppelin and meetings and all

14   that kind of stuff.  But you've seen the evidence, you've heard

15   the evidence, and once again, plaintiff didn't deliver.

16       Now, Mr. Andes testified, for example, that he saw -- at

17   Mothers Club, that he saw Jimmy Page there.  And then we took a

18   break, and then he came back and said, Oh, I was wrong, Jimmy

19   Page wasn't there.  He did say that he saw Robert Plant there.

20   But one of the most important things about listening to what a

21   witness says is what do they leave out?  Mr. Andes never

22   testified that "Taurus" was performed at Mothers Club.

23           MR. MALOFIY:  Objection.

24           THE COURT:  Overruled.

25           MR. ANDERSON:  There is no evidence --
```

```
1         THE COURT:  It's for the jury to decide what was

2    presented.

3         MR. ANDERSON:  There is no evidence that "Taurus" was

4    performed that night.

5         Now, Mr. Ferguson, the other surviving member of Spirit,

6    someone who was actually there 45, 50 years -- almost 50 years

7    ago, said that typically "Taurus" is performed.  But then you

8    heard him say -- well, you heard him admit that out of over a

9    hundred different concerts that Spirit performed, he could only

10   remember one occasion where "Taurus" was performed.  And now

11   there is a reason -- well, let me get to that in a second.

12        You also heard from Janet Wolfe.  And we all appreciate

13   that she's the sister of Randy Wolfe, and we all understand her

14   pain when her brother passed away.  That's a tragedy.  But she

15   was talking about events when she was 12 years old, in 1967,

16   which is before there's any claim that Led Zeppelin ever heard

17   "Taurus."  She also testified that Mr. Wolfe would play

18   "Taurus" whenever his girlfriend was present.  But Mr. Ferguson

19   testified that by 1968, when they were touring, girlfriends

20   generally didn't come.  There is no evidence that the

21   girlfriend was there in Denver, and there's no real evidence

22   that "Taurus" was performed.

23        Also, Ms. Wolfe, before I move on, testified that she went

24   to concerts in California, Boston, New York, and Florida.

25   Those aren't locations -- she wasn't in Denver.  She wasn't
```

1    anywhere else where the groups were supposedly crossing paths.

2        Now, Mr. Ware.  That's the videotaped deposition of the

3    gentleman in England that plaintiff arranged for and played for

4    you at the beginning of this case.  One thing that I think you

5    may have realized is odd, this case has gotten worldwide

6    publicity.  It's all over the place.  People are following

7    this.  People were following it as it led up to this trial.

8    Out of billions of people, the only person who came forward who

9    had any information that plaintiff claims was relevant is a

10   friend of Mr. Skidmore's, someone who's done business with him

11   in the past.

12       Now, Mr. Ware also testified that he saw Mr. Plant at the

13   front of the Mothers Club, directly in front of the group

14   performing, of Spirit performing.  But Mr. Ferguson said he was

15   there performing and he didn't see Mr. Plant there.

16   Mr. Ferguson and Mr. Andes testified to a short meet-and-greet

17   prior to taking the stage at the back of the club where

18   Mr. Plant says he was regularly meeting with friends and

19   talking.

20       What does Mr. Ware really say?  He says that Mr. Plant was

21   at the front when Spirit was performing.  Mr. Ferguson didn't

22   see him, which is kind of hard to understand.  And that

23   Mr. Plant was talking to friends in front of a giant speaker.

24   Which makes no sense.  How could you go to a concert, sit next

25   to a speaker and talk to someone?  That doesn't make sense, and

1  it conflicts with what Mr. Ferguson says.

2      Mr. Ware -- oh, and let me also point out, this is another

3  instance where what someone doesn't say is very important.  Did

4  Mr. Ware ever say that "Taurus" was performed at Mothers Club?

5  No.

6      Counsel played the portion of Mr. Ware's deposition

7  confirming that they had to get an order of the Court to go all

8  the way to England and take his deposition.  Ms. Freeman went,

9  all the way to England, to ask questions.  That was an

10  important deposition.  Mr. Ware met with plaintiff's counsel.

11  If Mr. Ware had any information that "Taurus" was played, he

12  would have said it.  He didn't.  And the reason is, "Taurus"

13  wasn't played.

14      That's important.  Because Mothers Club is really

15  irrelevant.  If "Taurus" wasn't played at Mothers Club, why are

16  we even talking about it?  We're only talking about it because

17  they say Mr. Plant ran into -- Mr. Plant was there and had a

18  brief conversation with Mr. Ferguson and Mr. Andes.  And

19  there's also this suggestion that they played snooker rather

20  than Mr. Plant going home where there was a baby-sitter with

21  his child.  Mothers Club is irrelevant, because "Taurus" wasn't

22  played there.

23      The other interesting thing about Mr. Ware, before I move

24  on, is this gentleman who is claiming to have this clear

25  recollection from 45-plus years ago could not remember an

1    e-mail, a post that he did two weeks before his deposition.

2    You heard him say that.  You heard Ms. Freeman ask him, do you

3    remember this?  Did you post something?  "I don't remember it."

4    When she showed it to him, he said, Well, yeah, that's

5    something I sent.  And what was he sending?  He was researching

6    Mothers Club.  He was trying to put together -- a reasonable

7    conclusion you can reach is that Mr. Skidmore's friend was

8    trying to put together facts to establish that, yeah, he was at

9    Mothers Club.  He came up with a handbill that said -- and he

10   said, This is what I got in January when I was at Mothers Club.

11   But look at it.  It's in evidence.  It's two pieces of paper,

12   and one of them is a concert a month before.  Why would they be

13   handing out a handbill in January of 1970 for a concert in

14   December of 1969?  You can judge for yourself whether Mr. Ware

15   is just simply testifying falsely, if his memory is somehow odd

16   or different, but the fact is, Mothers Club is irrelevant,

17   because "Taurus" wasn't performed.

18        Larry Fuzzy Knight.  Even now -- plaintiff said Larry

19   Fuzzy Knight will come in and talk about how Randy California

20   and Mr. Page talked at this 1973 afterparty.  Even now, today,

21   he tells you that Mr. Knight said that they talked.  But you

22   heard his testimony.  It wasn't as advertised.  Mr. Knight, he

23   asked him, did you see them talking?  And he said, Well, I saw

24   Randy California walking around.

25        I mean, this is your -- once again, what they're telling

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   you the evidence is going to show is not what the evidence
 2   actually shows.  It's also 1973.  "Stairway to Heaven" has
 3   already been released.  It's irrelevant.  If their paths did
 4   cross, and we don't think they did, Mr. Page and Led Zeppelin
 5   were touring at that point in time.  They weren't in London at
 6   that point in time.  He didn't live in London at that point in
 7   time.  But even if their paths crossed, it's irrelevant,
 8   because "Stairway to Heaven" had already been released.  And,
 9   of course, there's no evidence that "Taurus" was played at that
10   occasion.
11       There's a very crucial fact that plaintiff is overlooking.
12   There is no evidence that "Taurus" was ever performed in the
13   presence of these gentlemen.  Mr. Ferguson didn't say that.
14   Mr. Andes admitted he didn't know that.  Mr. Ware didn't raise
15   it.  Ms. Wolfe didn't say it.  There is no evidence that
16   "Taurus" was ever performed by Spirit in their presence.
17       Counsel told you that he was -- a week ago, plaintiff took
18   the position and told you that they were going to show that
19   Spirit was, and "Taurus" was, a successful, widely distributed
20   recording, that the album was successful.
21       Once again, what didn't they show?  They didn't show
22   record sales.  They didn't come in here -- and they could have.
23   They didn't come in here to show there was some number of
24   record sales.  They asked a witness, Could you get the record
25   in London?  Could you get the record in the U.S.?  Yeah.  But
```

1246

```
 1   what does that tell you?  Does that tell you it's widely
 2   distributed?
 3        What do we know about "Taurus"?  We know, and Mr. Ferguson
 4   and Mr. Andes, and I believe Mr. Skidmore, confirmed "Taurus"
 5   was never released as a single.  And what that means is there
 6   was no radio play of "Taurus."  It wasn't on the radio.  And
 7   there's no evidence at all, even though they could have brought
 8   in evidence if it would have been helpful, there's no evidence
 9   at all as to the extent of any sales of the Spirit album, the
10   first Spirit album, or "Taurus."  And what we know from
11   Mr. Ferguson is that it was the second album that was the
12   break-through album, not the first.
13        And we used, when we were talking to Mr. Ferguson and
14   Mr. Andes, a time line.  And I'd like to talk about that, for
15   several reasons.
16        (Exhibit was displayed on the screen.)
17        MR. ANDERSON:  First of all, this morning counsel told
18   you that at the time of the April 1970 interview where someone
19   is quoting Mr. Page as making a statement, that, by, way, is
20   not on the audio recording of that interview.  There are two
21   exhibits.  There's a press article that has a quote of him, and
22   there is an audio exhibit that the press article's based on.
23   The audio exhibit does not contain the quote.  And we've heard
24   testimony even from Mr. Andes, I believe it was, that
25   articles -- that people are misquoted in articles.  That's
```

1247

1    just common sense.

2        Now, counsel told you a few minutes ago, very

3    emphatically, that when Mr. Page supposedly said -- in April of

4    1970, that when Mr. Page supposedly referred to albums, and

5    counsel said in April of 1970 "Taurus" -- excuse me, Spirit had

6    only released two albums, well, that's just not true.  We heard

7    from Mr. Ferguson and Mr. Andes when these albums were

8    released.  And you can see that *Clear* was released in 1969.

9    Their break-through album, Spirit's break-through album --

10       Can you make that a little smaller, please.  Thank you.

11       -- *The Family That Plays Together* was released.  That was

12   their hit.  That was the album that had "I Got a Line on You."

13   That is -- "I Got a Line on You" may be the only song that any

14   of us remember, if we remember any of them.  And no disrespect

15   to Randy Wolfe.  That, and "Nature's Way" are great songs, but

16   they are on subsequent albums.

17       And what counsel told you this morning was that as of

18   April 1970, when Mr. Page supposedly referred to albums, there

19   was only the Spirit album, the first one, and *The Family That*

20   *Plays Together*.  And what you can see from the chart, confirmed

21   by Mr. Andes and Mr. Ferguson, is that, actually, in truth,

22   there were three albums.  There was the first album that didn't

23   do that well, there was the second album that was the

24   break-through album, and there was the third, *Clear*.  And

25   Mr. Page testified, honestly and truthfully, Yes, I bought *The*

1248

| | |
|---|---|
| 1 | *Family That Plays Together*, that's the album I bought, and I |
| 2 | had *Clear.* So if that quote, if you want to accept that quote, |
| 3 | even though it doesn't appear on the audio recording, that's |
| 4 | fine. It's perfectly consistent with his testimony that he had |
| 5 | the second and third album. And the second and the third |
| 6 | album, again, don't have "Taurus." "Taurus" is the song that |
| 7 | matters. |
| 8 | Now, Mr. Ferguson and Mr. Andes -- |
| 9 | Please keep it up. |
| 10 | -- testified about touring in support of an album and what |
| 11 | that means. And what that means, it's pretty common sense, is |
| 12 | that when you release an album, you go out to tour to get |
| 13 | people interested in the album. What do you do? The evidence |
| 14 | is, you play the songs from the new album plus any hits from |
| 15 | the old ones. "Taurus" wasn't a hit. There's no evidence that |
| 16 | "Taurus" was a hit. And in fact, Mr. Ferguson confirmed that |
| 17 | "Taurus" was not among the quote/unquote "tent pole" songs that |
| 18 | they routinely played. There isn't a single set list of any |
| 19 | concert in evidence where "Taurus" was performed. |
| 20 | And if we look at the time line, you'll see. As of |
| 21 | December 1968, they have new songs. Those are the songs, songs |
| 22 | from that album, plus any successes, that they would have |
| 23 | played, Spirit would have played, in December of 1968. |
| 24 | If we look at October 1969, those are the songs, plus any |
| 25 | successes, like "I Got a Line on You," that they would have |

1249

```
1   played in concerts.

2        Same thing with November of 1970 and The Twelve Dreams of

3   Dr. Sardonicus.  Those are the albums they would have -- the

4   songs they would have played at concerts.

5        Now, I want to talk briefly about the concerts.

6        There is no evidence that Led Zeppelin performed at the

7   Northern California Pop Festival.  Ferguson and Andes both

8   admitted they don't know.  There is a poster that counsel

9   relies on that refers to them playing there, but they didn't

10  play there.  In fact, they were on the other side of the

11  country at the Kinetic Club on that occasion.

12       On the other occasions, I believe it's two or maybe -- one

13  of the occasions they weren't even playing on the same day.

14  The evidence is that Spirit and Led Zeppelin were never on the

15  stage together, they never toured together.  And no one, out of

16  all the witnesses that they've been able to gather and all the

17  people that they've presumably talked to, and any person that

18  might have come forward because they saw the press, there isn't

19  a single person that says that Led Zeppelin or any member of

20  Led Zeppelin was present when Spirit was performing, let alone

21  that Spirit performed "Taurus."

22       And again, we know from the testimony about touring in

23  support of albums that they wouldn't have played "Taurus."

24  They would have played the hits, and they would have played the

25  new releases on their new album.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1250

1    There's been a lot of talk about "Fresh Garbage." It's a

2  complete distraction. Mr. Plant told you that he had a

3  compilation album in England that had "Fresh Garbage" and other

4  songs released by Columbia and did not have "Taurus."

5  Mr. Skidmore testified he had it as well; didn't have "Taurus."

6  So it's not relevant. It's as simple as that.

7    Now, plaintiff repeatedly talks about playing a bass riff

8  live from "Fresh Garbage" as something that's evil or bad. But

9  Mr. Ferguson and Mr. Andes have both testified that groups can

10  do that. It's lawful. And in fact, under what was going on at

11  that time and what goes on now, Led Zeppelin could have played

12  the entirety of "Fresh Garbage," which they didn't do. They

13  only played that little riff.

14    Spirit performed the Beatles. They performed other

15  people. There's nothing wrong with that. The law allows that.

16    Mr. Hanson, one of plaintiff's own experts, testified that

17  he's played the Beatles songs live. There's nothing wrong

18  about that. It's completely lawful.

19    There's no evidence that Led Zeppelin ever played

20  "Taurus." That's the song that this case is about. This case

21  is not about "Fresh Garbage."

22    Mr. Page admitted in this case and testified that, 45

23  years later, in a collection of 10,000 records and CDs, there

24  are some Spirit albums. He didn't have to do that. I mean, he

25  had to do it under the law, but he came forward and he answered

1251

```
 1   the question honestly.  And for that, they're now trying to
 2   draw speculation that if it appears in his collection, which
 3   he's accumulated over the years from people who left records at
 4   his house, from people who gave him records, that the fact that
 5   45 years after the fact there are Spirit albums there, in
 6   addition to the ones he told you he purchased because he liked
 7   them, that somehow he must have had them, quote/unquote, in the
 8   day, as counsel likes to say, trying to imply that he had it in
 9   1969 or 1968.  There's no evidence of that.  And if what
10   counsel is saying, that they really are these nefarious people,
11   why would they admit it?  This is a crucial point here.  This
12   is an important piece of evidence.  He is being honest.  And
13   you should take that into consideration on everything else that
14   he says.
15        Now, counsel says -- has repeatedly asked witnesses, Was
16   your memory better in 1972?  They should have sued in 1972.
17   That's what you should be asking yourself.  Why didn't
18   Hollenbeck sue?  Why didn't Randy Wolfe sue?  How can you wait
19   half a century and then criticize people when they don't
20   remember if they were at Mothers Club?  How can you criticize
21   people 45 years later for the delay that you caused, that the
22   delay that the people who actually own the copyright caused
23   because they recognized there was no claim and they didn't file
24   a lawsuit?
25        I'd like to just talk about substantial similarity,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    because that's the next issue.

2        On substantial similarity, it has to be substantial

3    similarity as to protectable expression.  Your job is really

4    pretty easy, because everyone on both sides, their expert and

5    ours, admits that what is shared here, the descending chromatic

6    scale, is in the public domain.  It has existed for hundreds of

7    years.  It appears in all kinds of songs.  It's in "Michelle."

8        Counsel said, well, you know, their prior art, their prior

9    art is obscure stuff, who knows -- who -- there's no

10   information that "To Catch a Shad" was sold or distributed.

11       But you know the Beatles.  You know "Michelle" was out

12   there.  You know "Michelle" was one of the most popular songs

13   in pop history.  It was released in 1965, and it has the

14   descending chromatic scale that Mr. Wolfe used a year or two

15   years later in "Taurus."  Now, I don't have to say he copied it

16   from "Michelle", because it belongs to everyone.  It's just a

17   musical device.

18       Counsel also, and his expert, refers to pairs of A and B,

19   B and C.  They're not pairs in the music.  They just happen to

20   be next to each other as part of a larger context, of a larger

21   piece of music that you've heard, that Dr. Ferrara played for

22   you, that is different.  All his expert did is pluck out a

23   descending chromatic scale, which everyone on both sides agrees

24   is in the public domain, is not original, and is free for

25   anyone to use, and pluck out a couple of notes, three notes,

1    and say, Aha!

2        And they talk about pitches.  They talk about -- which are

3    just the tones, disregarding the notes and their duration.  And

4    Dr. Ferrara explained why the duration is what makes the

5    melody.  Just having the pitches really doesn't tell you what

6    the song is about.  He played different songs, different pitch

7    sequences, and then added the rhythm, and you could tell

8    they're completely different songs.

9        So what has Dr. Stewart done?  Dr. Stewart has basically

10   counted pitches.  But there's only 12 -- there's actually only

11   seven pitches.  On a chromatic scale, maybe 12.  It's a very

12   limited vocabulary.  It's not surprising at all that there

13   would be pitches in common.  But let's talk about the pitches

14   that are different.

15       The "Taurus" deposit copy with the X.  My apologies.

16       (Exhibit was displayed on the screen.)

17       MR. ANDERSON:  This is the "Taurus" deposit copy.

18   This is the copyrighted work.  This is what plaintiff claims

19   was infringed by "Stairway to Heaven."  And Dr. Ferrara went

20   through it and he took out the notes that aren't relevant, that

21   aren't the same, and what are you left with?  You're left with

22   a descending chromatic scale.

23       MR. MALOFIY:  Objection.  This was demonstrative.  It

24   was not part of --

25       MR. ANDERSON:  It was an exhibit.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1254

```
1        THE COURT:  Overruled.

2        MR. ANDERSON:  Thank you.

3     Keeping score on where we are, Randy Wolfe did not create

4  a descending chromatic scale.  He did not create A and B, the

5  notes A and B.  He did not create eighth notes, which is about

6  as basic as you can get in music.  And yet, counsel says -- and

7  he didn't create the key of A minor.  These are standards.

8  There are all kinds of songs that have these kinds of elements.

9  And just as Mr. Wolfe didn't have to pay the Beatles or the

10 person who did "Cry Me a River" or the person who did "My Funny

11 Valentine" to use basic chromatic things that we can all use,

12 there's no basis to come in now and say, My God, there's a

13 descending chromatic scale in "Stairway to Heaven" that for

14 some reason Hollenbeck and Randy Wolfe never raised for 40

15 years.

16    Dr. Stewart himself admitted that these things we're

17 talking about are basic building blocks of music.  That's all

18 they are.  They're common.  And, as I expect the judge will --

19 Judge Klausner will instruct you, there has to be originality.

20 You have to copy something original.  Counsel's telling you

21 it's unique, but his own witnesses are saying it's commonplace.

22 Once again, plaintiff is not delivering on what they're telling

23 you.

24    Now, Mr. Mathes.  If you remember, he's one of our expert

25 witnesses, and he talked about the 1963 folk song "To Catch a
```

1255

1   Shad," which is remarkably similar to "Taurus." And it's
2   years, three, four years before. And I'm not saying that Randy
3   California found "To Catch a Shad" and copied it. I'm saying
4   that it proves that these kinds of musical building blocks were
5   out there. They were being used. Again, they don't belong to
6   everyone, and Randy Wolfe didn't have to get anyone's
7   permission to use them. Neither did Led Zeppelin.
8           Now, you may remember that plaintiff's counsel had
9   Mr. Hanson play a comparison of what they first said was the
10  "Taurus" deposit copy and "Stairway to Heaven" merged. And
11  then when it actually turned out, well, it wasn't the "Taurus"
12  deposit copy, it was one half, one clef off of the "Taurus"
13  deposit copy, and when you heard it -- and you're the judges of
14  this, but pay attention to it if you hear it again, or maybe
15  you noticed when it was heard. It's a different work. When
16  you take "Taurus" and you superimpose it over "Stairway to
17  Heaven" as they did, you get a third work. It's different.
18  It's going in different places at different times. There are
19  notes that are out of place. And that's because they're
20  different. That's because they're different. But when
21  Mr. Mathes played a -- they're called mash-ups, when you put
22  two things together. When he played a mash-up of the "Taurus"
23  deposit copy and "To Catch a Shad," it really sounds good. It
24  sounds good because they are so similar, because the basic
25  building blocks are there.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    And I think, if we could play that one more time.

2    (Audio played.)

3    MR. ANDERSON:  Why does that sound so good?

4  Mr. Mathes explained:  It's the basic building blocks that both

5  of them share.  That's what this case is about, is that they're

6  basic building blocks, in these and many other songs.  Plus,

7  Hollenbeck didn't sue, Randy Wolfe didn't sue, the first

8  trustee didn't sue, and now half a century later, Mr. Skidmore

9  sues.

10    Counsel told you that a crucial, important part of this

11  case is that, in "Taurus" and in "Stairway to Heaven," this

12  chromatic scale is shorter.  But shorter, what does that mean?

13  The evidence is, and Dr. Ferrara explained, there's -- you

14  don't -- there are no rules for how long a descending chromatic

15  scale has to be.  And a descending chromatic scale is in the

16  public domain.  Having 90 percent of a descending chromatic

17  scale doesn't make it original.  If that was the case, I could

18  take a Shakespeare book, or play, which is in the public

19  domain, knock off the last act and now copyright it.

20    You can't do that.  You can't take something that's in the

21  public domain, shorten it, and say, Oh, wow, you know, now I've

22  got a protectable work.

23    The descending chromatic scale, no matter how much of it

24  you take, is in the public domain.  No matter how much of it

25  appears to be similar, it's in the public domain.

1    And the assertion that there are no other works that don't

2    go to the E was actually disproved by Dr. Stewart himself,

3    because Dr. Ferrara went through that chart and showed you

4    where the E is on prior art. But it's all irrelevant, because

5    what we're talking about is a descending chromatic scale. It

6    belongs to everyone. Anyone can use it. And the fact that

7    it's in "Stairway to Heaven" and in "Taurus" is no more proof

8    of anything than the fact it's also in "Michelle" and "My Funny

9    Valentine" and all the other songs that have descending

10   chromatic scales.

11   In this case, as in any case, you should consider the

12   quality of the evidence. You should consider what makes sense.

13   You don't leave your common sense outside the courtroom when

14   you come in here. You have, collectively, over a hundred years

15   of experience. That gives you commence sense. And so listen

16   to -- and you've heard the evidence, and evaluate it with your

17   own life experiences, with your common sense.

18   You saw Dr. Stewart get nervous when I asked him

19   questions. You saw him admit that things were commonplace.

20   Keep that in mind.

21   You heard Dr. Ferrara explain all of this and give you

22   prior art. And it all hung together. It all made sense.

23   There's reasons for that.

24   The testimony you're hearing from the plaintiff's side is

25   not living up to what the plaintiff has told you to expect.

1258

```
 1        The testimony you're hearing from the defendant's side
 2   makes sense.  It's as simple as that.
 3             THE COURT:  You have about 10 minutes left.
 4             MR. ANDERSON:  Thank you, Your Honor.
 5        Plaintiff also relies on witnesses who have questionable
 6   ties to Mr. Skidmore and to others.
 7        Mr. Hanson is a personal friend of Mr. Malofiy.  Ms. Wolfe
 8   is a personal friend of Mr. Kulik's wife.  Andes, Mr. Andes, is
 9   another client of Mr. Malofiy.  Mr. Ware and Mr. Pates do
10   business, or are personal friends for many years in the case of
11   Pates, with Mr. Skidmore.  You can consider that when you
12   evaluate their testimony, when you try to decide how much
13   credibility to give to what they said.  But I want to say
14   again, none of them, none of them said that Led Zeppelin was
15   ever present when "Taurus" was performed.
16        Independent creation.  I told you a week ago it's a very
17   important defense.  You saw in this courtroom, you heard in
18   this courtroom, the process of the independent creation of
19   "Stairway to Heaven."  You heard the routining tapes, the
20   rehearsal tapes.  You heard how it grew.  That is independent
21   creation.
22        Bron-yr-Aur.  It's a red herring.  What difference does it
23   make whether part of "Stairway to Heaven" was done at
24   Bron-yr-Aur or wasn't?  There's no testimony or evidence that
25   Randy California was at Bron-yr-Aur.  There was no electricity.
```

1259

```
1   There was no radio to play where they could have heard
2   something.  There was no record player that they could have
3   played a record.  It's a cottage out in Wales, in the
4   mountains.  What difference does it make?  It doesn't make a
5   difference.  Counsel, plaintiff, is simply trying to say, Well,
6   if a half century later, they're unclear whether a part of it
7   was written at Bron-yr-Aur, or, as Mr. Page testified, at his
8   home when he was moving homes, but, gee, you gotta throw out
9   all their testimony.
10       Judge Klausner already instructed you, and I expect he'll
11  instruct you again, that in the normal case, when two people
12  remember events differently or when someone recalls an event
13  differently, that doesn't mean they're lying.  It just means
14  that we're fallible, we're human beings.  Hold that against --
15  that standard, hold that instruction against what's going on
16  here, people questioning these gentlemen about events a half
17  century later.
18       If we came in and every story jived completely, well,
19  you'd say, well, that's impossible, how could they actually
20  remember that so perfectly?  They come in, they testify
21  honestly, there are glitches or whatever about what happened a
22  half century ago, and all the sudden that makes them
23  unbelievable?  It just doesn't make sense.  And again, you
24  don't leave your common sense at the door.
25       One of the things that the plaintiff is raising is that
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1260

1 | Mr. Page is quoted on April 25, 1970, as referring to what

2 | counsel believes is the creation of "Stairway to Heaven," an

3 | epic song.  Mr. Page testified that his recollection is he

4 | started working on that in May or June of 1970.  So does that

5 | show he's not telling the truth, that a half century later he's

6 | a week off, that instead of starting in May of 1970, there's an

7 | article that says he started on April 25 of 1970, that he was

8 | thinking about an epic song?  How does that support the

9 | plaintiff's case?  That he's a week off a year later?  Excuse

10 | me, a half century later.

11 |      We've mentioned several different defenses a week ago.  I

12 | want to go through them very quickly.  One is, de minimis, I

13 | expect you'll learn about it in the jury instructions, that the

14 | alleged use was so small and so minor.  One was the fair use.

15 | One was the statute of limitations.

16 |      I don't think -- because of all this, we don't believe

17 | you'll get to the issue of damages, but just to finish this

18 | off, remember Dr. Einhorn.  He's the gentleman who was yelling

19 | at you.  He's the gentleman who sat there and blurted out

20 | answers.  And what did he really tell you?  If we look -- we've

21 | got -- the record company defendants showed you that their

22 | gross revenues were 3 million dollars attributable to "Stairway

23 | to Heaven."  What did he do?  He multiplied it by eight?  Why?

24 | It's a bigger number.  That's all.  He had no justification for

25 | multiplying by eight.  And what is plaintiff's counsel now

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01366**

1    telling you?  Well, it's some number in between.  What's

2    that -- they have the burden of proving the revenues that are

3    attributable to "Stairway to Heaven."  And we showed -- David

4    Woirhaye showed you how you get to the 3 million dollars as a

5    gross revenue figure, and they come in with someone who says,

6    well, multiply it by eight, and then counsel tells you, well,

7    it's somewhere in between.

8         Evaluate the quality of the evidence.

9         Now, that's just the revenue figure.  You have to take

10   deductions out of that to get to profits, and when you do that,

11   which they're completely ignoring, then you get to a number

12   more like 800,000 on the record company side, and then you get

13   to decide how much of that is attributable to a descending

14   chromatic scale and how much of it is attributable to all the

15   important things that Mr. Mathes identified, all the important

16   things in "Stairway to Heaven" that you heard when it was

17   played in the courtroom.

18        Now, Mr. Einhorn also went through one of the ugliest

19   exhibits I've ever seen in all my years of practice, a stack of

20   unrelated financial statements from two different companies

21   over a three-year period.  And he went through that, and he

22   picked out a number and said there are 6 million pounds there.

23        And you heard from Tim Gardner what those numbers were.

24   Those numbers were for the whole catalog, not just "Stairway to

25   Heaven."  They have the burden of proving the profits that

1262

```
1   are -- or revenues that are attribute to "Stairway to Heaven,"
2   and what they did is, they just threw the whole catalog at you.
3   They didn't do any allocation.  Plus, it's not only the whole
4   catalog, it's all the writers.  It's John Paul Jones and
5   Mr. Bonham's estate, who aren't defendants.  That's irrelevant.
6   And those numbers are payments -- and Mr. Gardner confirmed
7   this.  They were payments under a 2008 contract.  They're
8   outside the statute of limitations.
9        Counsel tells you and has told you from the beginning,
10  this is about credit.  Now, Randy Wolfe got credit for the work
11  he did.  He was helped by Jimi Hendrix.  You heard that story.
12  And no one here is taking that away from him.  Mr. Page
13  testified honestly that he liked Spirit's work.  He had bought
14  the second and the third album.  He knew about those songs.
15  Randy Wolfe is entitled to the credit he's entitled to.  But
16  he's not entitled to credit for something he didn't do.  And
17  Mr. Skidmore is not entitled to any credit on "Stairway to
18  Heaven."  He didn't write anything on "Taurus."  He's not even
19  a relative of Randy Wolfe.  This is like saying to someone,
20  We're going to say your child has a different parent.  That's
21  what he's asking you to do.  He's asking you to take "Stairway
22  to Heaven," a song, the iconic song that Mr. Page and Mr. Plant
23  wrote 45 years ago, and say, well, it's got a new parent:
24  Mr. Skidmore.  That's not fair, it's not supported by the
25  evidence, and you should reject that.
```

```
1         Thank you very much.

2              THE COURT:  Thank you, Counsel.

3         Counsel, you have another couple of minutes on rebuttal.

4              MR. MALOFIY:  Thank you, Your Honor.

5         Let's be clear about a couple things.  First off,

6    defendants failed to provide any expert to dispute our damages.

7    None.  There's been no expert to talk about apportionment or to

8    establish the value, because no expert could take the stand, in

9    all of the United States or anywhere in the world, to dispute

10   our valuation.  And they could have got anyone.  Remember they

11   got Dr. Ferrara.  For how much?  $100,000.  Who flipped on

12   plaintiff and who worked with Hollenbeck prior to.

13             MR. ANDERSON:  Your Honor --

14             MR. MALOFIY:  Plaintiff's publisher.

15             THE COURT:  Overruled.

16        Go ahead.

17             MR. MALOFIY:  All right?  So they could have got

18   anyone.  But no one rebutted our numbers.

19        It's our burden -- and I believe the Court will instruct

20   you on this.  It's our burden to show gross revenues.  It's

21   their burden to show, to prove, costs, expenses and

22   apportionment.  I gave you two numbers.  So you could look at

23   the two numbers and come to a number in between.  A straight

24   line apportionment and considering the qualitative value of one

25   of the greatest songs in rock history.
```

```
 1        A few things.  You know, defense counsel tried to trick
 2   you.  The '67 copyright is not -- is out of existence, and the
 3   renewal is what stands today.  That's what he tried to do.  He
 4   tried to tell you that the '67 copyright is active or it's
 5   valid.  No.  It's the 1996 contract.
 6        Second thing.  Reasonable possibility of access.  That's
 7   what access means.  It doesn't mean we have a camera with
 8   Mr. Page and Mr. Plant sitting there transcribing "Taurus."
 9   No.  It means a reasonable possibility of access.  And did they
10   have a reasonable possibility to hear "Taurus" on the albums,
11   see them in concert, hang out with them, have five albums in
12   the collection, play their music live and cover their music?
13   That's the issue here.
14        Now, few other things just to go through.  They keep on
15   saying --
16            THE COURT:  Counsel, you got about 15 seconds.  I
17   don't know how you're going to go through a few, but go ahead.
18            MR. MALOFIY:  -- "Taurus" was not played live.
19        It was.  We heard Janet, we heard Mark Andes and Jay
20   Ferguson say in the early years it was played regularly as part
21   of their set.
22        I'll just finish up with, there's so many -- when you have
23   the same key, the same tempo, the same instrumentation, bands
24   playing together --
25            MR. ANDERSON:  Your Honor.
```

```
 1           MR. MALOFIY:  When you have all these similarities

 2     and --

 3           THE COURT:  Go ahead.  I overruled the objection.

 4           MR. MALOFIY:  When you have all these similarities and

 5     when you have all these things in concert that all come

 6     together, it's not coincidence, all right?  There's enough

 7     facts here to clearly establish that these bands knew each

 8     other, they were familiar with each other's music, they played

 9     and toured together, they had the albums, and they knew what

10     was going on.

11         We ask that you consider your burden, which is more than

12     50 percent.  We show our case more than 50 percent -- it's not

13     (indicating).  It's not like a criminal trial.  It's more than

14     50 percent.  51 percent.  If we tilt the scale ever so

15     slightly, you must find in our favor, and I believe the Court

16     will instruct you on that.

17           THE COURT:  Thank you, Counsel.

18           MR. MALOFIY:  Thank you.

19           THE COURT:  Ladies and gentlemen, I'm going to leave

20     it up to you.  You've been here for a little over an hour and a

21     half.  We have instructions I'm going to be instructing you on.

22     It'll take, I don't know, 20 to 30 minutes, maybe.  But we have

23     been going for an hour and a half, so I'm going to leave it up

24     to you.  Do you want to take a 10, 15-minute break now, and

25     I'll instruct you, or do you want to go ahead and do
```

1    instructions?  It's your call, the eight of you.

2          JUROR NO. 8:  Let's take a break.

3          THE COURT:  Everybody agree, take a break?

4      Okay.  We'll come on back in in about 10 or 15 minutes,

5    and we'll go ahead and read the instructions at that time.

6      We'll be in recess.

7          THE CLERK:  All rise.

8      Court is in recess.

9      (Recess held from 10:06 a.m. to 10:17 a.m.)

10     (In the presence of the jury:)

11         THE COURT:  Okay.  Ladies and gentlemen, now that

12   you've heard all the evidence and the arguments of the

13   attorneys, it's my duty to instruct you on the law that applies

14   to this case.

15     A copy of these instructions will be sent to the jury room

16   for you to consult during your deliberations.

17     It is your duty to find the facts from all the evidence in

18   this case.  To those facts you will apply the law that I give

19   to you.  You must follow the law as I give it to you whether

20   you agree with it or not.  You must not be influenced by any

21   personal likes or dislikes, opinions, prejudices or sympathies.

22   That means that you must decide this case solely on the

23   evidence before you.  You will recall that you took an oath to

24   do so.

25         Please do not read into these instructions or into

1    anything that I may say or do or I have said or done in the

2    past that I have any opinion regarding the evidence or what

3    your verdict should be.

4        When a party has the burden of proof on any claim or any

5    affirmative defense by a preponderance of the evidence, it

6    means that you must be persuaded that the evidence that the

7    claim or affirmative defense is more probable -- or probably

8    true than not true.  You should base your decision on all the

9    evidence regardless of which party presents that evidence.

10       You should decide this case as to each defendant.  As you

11   know, there's five different defendants here, and you have to

12   decide the case as to each defendant separately.  Unless

13   otherwise stated, these instructions applies to all the

14   parties.

15       The evidence you are to consider in deciding what the

16   facts are consist of the sworn testimony of witnesses, the

17   exhibits that are admitted into evidence, any facts to which

18   the lawyers have agreed or stipulated, or any fact that I

19   instruct you that you must accept as proved.

20       In reaching your verdict, you may consider only the

21   testimony and the exhibits received into evidence.  Certain

22   things are not evidence, and you may not consider them in

23   deciding what the facts are.  And I'll list them for you.

24       As we've said before, arguments or statements by the

25   attorneys are not evidence.  The lawyers are not witnesses.

1268

```
1   What they say in their opening statements, closing arguments or

2   at other times is intended to help you to interpret the

3   evidence, but it's not evidence.  If the facts as you remember

4   differ from the way the lawyers have stated them, it's your

5   memory that controls.

6         Question and objections by the lawyers are not evidence.

7   Attorneys have a duty to their client to object when they

8   believe that a question is improper under the rules of

9   evidence.  You should not be influenced by the objection or as

10  to the Court's ruling on the objection.

11        Testimony that is excluded or stricken or that I have

12  instructed you to disregard is not evidence and must not be

13  considered.  In addition, some evidence is received only for a

14  limited purpose.  If I instruct you to consider certain

15  evidence only for a limited purpose, you must do so and not

16  consider that evidence for any other purpose.

17        Anything that you have seen or heard when the court is not

18  in session is not evidence.  We talked about that earlier.  You

19  are to decide this case solely on the evidence received during

20  this trial.

21        Some evidence may be admitted for a limited purpose.  If

22  we -- if I instruct you that an item of evidence is to be

23  admitted only for a limited purpose, you must consider -- or

24  you must consider it only for that limited purpose and not for

25  any other purpose.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1269

1   Evidence may be either direct or circumstantial.  Direct

2   evidence is direct proof of a fact, such as the testimony of a

3   witness about what that witness personally saw or heard or did.

4   Circumstantial evidence is proof of one or more facts from

5   which you consider another fact.  You should consider both

6   kinds of evidence.  The law makes no distinction between the

7   weight to be given to either direct or circumstantial evidence.

8   It is for you to decide how much weight is to be given to any

9   evidence.

10   There are rules of evidence that control what can be

11   received into evidence.  When a lawyer asks a question or

12   offers an exhibit into evidence, and the lawyer on the other

13   side thinks that it is not permitted by the rules of evidence,

14   that lawyer may object.  If I overrule the objection, the

15   question may be answered and exhibit received.  If I sustain

16   the objection, the question cannot be answered, exhibit cannot

17   be received.  Anytime I sustain an objection to a question, you

18   must ignore that question and not guess as to what the answer

19   might have been.

20   Again, sometimes I may have ordered that evidence be

21   stricken from the record and that you disregard it or ignore

22   it.  That means that you are to decide this case -- excuse me.

23   That means when you are deciding this case, you must not

24   consider any stricken evidence for any purpose.

25   In deciding the facts of this case, you may have to decide

1270

1  which testimony is to be believed and which testimony is not to
2  be believed.  You may believe everything a witness says, or
3  part of it, or none of it.
4      In considering the testimony of a witness, you may take
5  into account the opportunity and the ability of the witness to
6  see or hear or know the things testified to; the witness's
7  memory; the witness's manner while testifying; the witness's
8  interest in the outcome of the case, if any; the witness's bias
9  or prejudice, if any; whether other evidence contradicts the
10 witness's testimony; the reasonableness in a witness's
11 testimony in light of all the other evidence; or any other fact
12 that bears on believability.
13     Sometimes a witness may say something that is not
14 consistent with something else he or she had said earlier.
15 Sometimes different witnesses will give different versions as
16 to what happened.  People often forget or make mistakes in what
17 they remember.  Also, two people may see the same event but
18 remember it differently.  You may consider these differences,
19 but do not decide the testimony is not true simply because it
20 differs from the other testimony.
21     However, if you decide that a witness has deliberately
22 testified falsely or untruthfully about something important,
23 you may choose not to believe anything that witness said.  On
24 the other hand, if you think that a witness testified
25 untruthfully as to some things and told the truth as to others,

1271

1 you may accept that part that you think is true and ignore that

2 that is not.

3     The weight of the evidence as to any fact does not

4 necessarily depend on the number of witnesses who have

5 testified. What is important is how believable the witnesses

6 are and how much weight you think each testimony deserves.

7     If there is any news media accounts or commentaries about

8 this case or anything to do with this case, you must ignore it.

9 You must not read, watch, or listen to any news media accounts

10 or commentary about this case or anything to do with it. This

11 case must be decided by you solely and exclusively on the

12 evidence that you receive during this case and on the

13 instructions I give to you that apply to this case. If any

14 juror is exposed to any outside information, please notify the

15 Court immediately.

16     You have heard testimony from witnesses who have testified

17 to opinions and the reasons for their opinions. This opinion

18 testimony is allowed because of the education, experience -- or

19 experience of the witnesses. We refer to this sometimes as

20 expert testimony. Such opinion testimony should be judged like

21 any other testimony. You may accept it or reject it or give it

22 as much weight as you think it deserves, considering the

23 witness's education and experience, the reasons given for the

24 opinion, and all the other evidence in this case.

25     Certain charts or summaries have been admitted into

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

01377

1  evidence to illustrate information brought into trial.  Charts

2  and summaries are only as good as the underlying information

3  that support it.  You should therefore give only such weight as

4  you think the underlying evidence deserves.

5      Now, all parties are equal before the law, and a

6  corporation is entitled to the same fair and conscientious

7  consideration as any party.

8      Now we're getting to the instructions concerning

9  copyright.

10      First of all, let me instruct you that any and all

11  intellectual property of Randy Craig Wolfe, including the song

12  "Taurus," is currently owned by the Randy Craig Wolfe Trust,

13  the trustee of which is the plaintiff, Mr. Skidmore.

14      Anyone who copies an original element of a copyrighted

15  work during the term of the copyright without the owner's

16  permission infringes on the copyright.

17      On the plaintiff's copyright infringement claim, the

18  plaintiff has the burden of proving by a preponderance of the

19  evidence that the plaintiff is the owner of a valid copyright

20  and that the defendant copied original elements from that

21  copyrighted work.

22      If you find the plaintiff has proved both these elements,

23  your verdict should be for the plaintiff.  On the other hand,

24  if you find the plaintiff has failed to prove either of these

25  elements, your verdict should be for the defendant.

1    Plaintiff has filed a claim against the defendant for

2    violation of the United States Copyright Act, which governs

3    this case.  In order for you to undertake your

4    responsibilities, you must know what a copyright is, what it

5    protects, and what it does not protect.

6    Copyright confers certain exclusive rights to the owner of

7    a work, including the right to:  Reproduce or authorize a

8    reproduction of the copyright work; prepare derivative works

9    based on the copyrighted work; distribute the copyrighted work

10   to the public; and perform publicly a copyrighted musical work.

11   Copyright only protects the author's original expression

12   in a work and does not protect ideas, themes, common musical

13   elements, such as descending chromatic scales, arpeggios, or

14   short sequences of these three notes -- of these three notes.

15   Also, you can also -- excuse me.  Also, there are no

16   copyright infringements without actually copying.  If two

17   people independently create two works, no matter how similar,

18   there is no copyright infringement unless a second person

19   copied the first.

20   Plaintiff contends that the copyright in the musical

21   composition "Taurus" is infringed by the song "Stairway to

22   Heaven."

23   It is important that you understand that the copyright is

24   a musical composition of "Taurus" -- excuse me.  It is

25   important that you understand what the copyrighted musical

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01379**

1274

```
1    composition "Taurus" protects and what it doesn't protect.

2         Musical composition consists of rhythm, harmony, and

3    melody, as transcribed in written form.  The performance of a

4    musical composition can be recorded, but under the law, musical

5    compositions and sound recordings are different works with

6    different potential copyrights.

7         In this case, the plaintiff has no rights in the sound

8    recording of "Taurus," and claims rights only in the musical

9    composition of "Taurus" that -- as transcribed in the deposit

10   copy.  As a result, the plaintiff must base his claim only on

11   the original expression contained in the deposit copy of

12   "Taurus."  That is, the defendant must prove that "Stairway to

13   Heaven" copies an original expression in the deposit copy of

14   "Taurus."  Plaintiff cannot rely on any claimed similarities

15   between the recording of "Taurus" and the recording of

16   "Stairway to Heaven."

17        There is a valid copyright in the musical composition

18   "Taurus" if the plaintiff proves by preponderance of the

19   evidence the following:  That Wolfe created a musical

20   composition "Taurus"; that the musical composition "Taurus" is

21   original; the copyright in the musical composition was

22   registered in the United States Copyright Office; and, at the

23   time of the registration, the written transcript of the musical

24   composition was deposited with the copyright office.

25        The plaintiff must prove by a preponderance of evidence
```

1  that the creators of "Stairway to Heaven" had access to the

2  musical composition "Taurus."  You may find that the creators

3  of "Stairway to Heaven" had access to the musical composition

4  "Taurus" if the creators of "Stairway to Heaven" had a

5  reasonable opportunity to hear and/or copy the musical

6  composition "Taurus" before "Stairway to Heaven" was created.

7      An original work may include or incorporate elements taken

8  from prior works or works from public domain.  However, any

9  elements from prior works or public domain are not considered

10  original parts and may not be protected -- or are not protected

11  by the copyright.  Instead, the original parts of plaintiff's

12  works is limited to the parts created independently by the

13  work's author, that is, the author did not copy from any other

14  work or public domain; and, two, by use of at least some

15  minimal creativity by the creator.

16      Okay.  For an authorized copy -- excuse me.  For an

17  unauthorized copy or use -- let me try it again.  For the

18  unauthorized use of a copyright work to constitute copyright

19  infringement, the unauthorized use must copy original material

20  protected by the copyright and must be significant enough to

21  constitute infringement.  This means that even if the fact of

22  copying is proven, the legal consequences will -- no legal

23  consequences will follow from the fact unless original material

24  is copied and copying is substantial.

25      The copyright that plaintiff sues upon protects only the

1    musical composition "Taurus" as it is transcribed in the

2    deposit copy that accompanied the registration to the copyright

3    with the United States -- with the copyright with the

4    United States Copyright Office.  This is the work that you must

5    compare to "Stairway of Heaven."

6        To prove substantial similarities between the two musical

7    compositions -- excuse me, between the musical composition of

8    "Taurus," and the -- as transcribed, in the "Stairway to" --

9    and the "Stairway to Heaven," plaintiffs must prove that there

10   are both substantial intrinsic and extrinsic similarities

11   between the two works.

12       Extrinsic similarities is an objective test and requires

13   that you determine whether the two works are similar in their

14   original expression.  To do that, you must break the work down

15   into their specific musical elements.  This means that you must

16   disregard all musical elements that are not original in

17   "Taurus."  Once you have disregarded all the musical elements

18   that are not original in "Taurus," you must then decide whether

19   there are any remaining musical elements that are original to

20   "Taurus" and also appear in "Stairway to Heaven," and if so,

21   whether they are substantially similar or insubstantially

22   similar.

23       If the plaintiff does not prove that, applying this first

24   test, "Stairway to Heaven" is substantially similar to the

25   original expression in the musical composition "Taurus," then

1    your verdict must be for the defendant.

2         If the plaintiff does prove, applying this first test,

3    that "Stairway to Heaven" is substantially similar to the

4    original expression in the musical composition "Taurus," then

5    you must proceed to the second test of subjective intrinsic

6    similarities.

7         For the second test, you may decide -- must decide whether

8    the ordinary reasonable person would find the musical

9    composition "Taurus," as transcribed in the deposit copy, and

10   "Stairway to Heaven" are substantially similar in their

11   original expression.  In this test, you must also disregard all

12   the musical elements that are not original in "Taurus."

13        If plaintiff does not prove that applying -- excuse me.

14   If plaintiff does not prove that, applying the second test, the

15   musical composition as transcribed in the deposit copy and

16   "Stairway to Heaven" are substantially similar in its original

17   expressions, your verdict must be for the defendant.

18        If plaintiff does prove the first test and the second

19   test, then he has proved substantial similarities.

20        If plaintiff shows defendant had access to plaintiff's

21   work -- if plaintiff shows the defendant had access to

22   plaintiff's work and that there is a substantial similarity

23   between the infringed and the infringing work, a presumption of

24   copyright arises.  Excuse me.  A presumption of copying arises,

25   and that shifts the burden to the defendant to rebut or to show

1278

1   that the alleged infringing work was independently created.

2       In determining whether defendants' song was independently

3   created, you may consider evidence presented by the defendant

4   regarding the matter in which the composition creators created

5   defendants' song and any other evidence or -- of the

6   circumstances surrounding the creation of the defendants' song.

7       To prevail on a copyright claim, the plaintiff must prove

8   substantial copying of original expressions in the copyrighted

9   work.  That also means that the trivial or minimal copying of

10  the original expressions is not an infringement.

11      A use is trivial or de minimis if the alleged copyright

12  original expression is quantitatively a small portion of the

13  plaintiff's copyright work and the alleged copied original

14  expression is not qualitatively important to the plaintiff's

15  copyright work.

16      If you find that the defendant Page and Plant infringed on

17  plaintiff's copyright in "Taurus," you must decide whether or

18  not the corporate defendants, which is Warner/Chappell Music,

19  Incorporated, Atlantic Recording Corporation, and Rhino

20  Entertainment Company, are vicariously -- have vicariously

21  infringed that copyright.

22      The plaintiff has the burden of proving each of the

23  following elements by a preponderance of the evidence:  That

24  the defendant directly -- and we're talking about the

25  defendant corporate defendants, the three corporate

1    defendants -- directly benefited financially from infringing

2    activities of Page and Plant; number two, that the corporate

3    defendants had a right and the ability to supervise and control

4    the infringing activities of Plant and Page; and, three, the

5    defendant failed to exercise that right and ability that they

6    had.

7         If you find that the plaintiff has proved each of these

8    elements, your verdict should be for the plaintiff if you also

9    find that defendant Plant and defendant Page infringed

10   plaintiff's copyright.  If, on the other hand, the plaintiff

11   has failed to prove any of these elements, your verdict should

12   be for the defendant, the three defendants, the corporate

13   defendants, Warner/Chappell, Atlantic Recording Company, and

14   Rhino Entertainment.

15        There is another theory called contributing, or cont- --

16   or contributing infringement, is what it's known as.  A

17   defendant may be liable for copyright infringement engaged in

18   by another if he knew or had reason to know of the infringing

19   activity and intentionally induced or materially contributed to

20   the infringing activity.

21        If you find that the defendants Page or Plant infringed

22   the plaintiff's copyright in "Taurus," you must determine

23   whether or not the corporate defendants, the three that I

24   mentioned before, contributed -- contributorily infringed that

25   copyright.

1280

```
1     The plaintiff has the burden of proving both the following
2  elements beyond a preponderance of the evidence:  That the
3  defendant knew or had reason to know the infringing activities
4  by the defendant Page and Plant; and the defendant
5  intentionally induced or materially contributed to the
6  defendants Page and Plant's infringing activities.
7     If you find that the defendant Page and Plant infringed on
8  plaintiff's copyright and that you also find that the plaintiff
9  had proved both of these elements, your verdict should be for
10 the plaintiff.  If, on the other hand, the plaintiff has failed
11 to prove either or both of these elements, your verdict should
12 be for the corporate defendants.
13     Let me talk to you a little bit about damages.
14     If you find liability, then you must consider damages.
15 The copyright owner is entitled to any profits of the defendant
16 attributed to the infringement that occurred on or after
17 May 31st, 2011.  Each defendant's profits, if any, from the
18 alleged infringement must be calculated and awarded separately.
19 Also, you may not award any profits attributed to allega- --
20 excuse me, alleged infringement that occurred before May 31st,
21 2011.
22     You may make an award of the defendants' profits only if
23 you find that the profits showed a casual (sic) relationship
24 between the infringement on or after May 31st, 2011 and the
25 defendants' gross revenue.
```

1281

1    A defendant's profit is determined by subtracting all
2    expenses from the defendant's gross revenue.

3    A defendant's gross revenue is all of the defendant's
4    receipts that plaintiff proves were caused by the use,
5    performance, or sale of copies of "Stairway to Heaven" on or
6    after May 31st, 2011.  The plaintiff has the burden of proving
7    that the defendants' gross revenues, including the casual (sic)
8    relationship, by a preponderance of the evidence.

9    Expenses are all those operating expenses, overheads,
10   production costs, management fees and advance payments incurred
11   at any time in producing the defendants' gross revenue.  Each
12   defendant has the burden of proving his or her -- his or hers
13   or its expenses by a preponderance of evidence.

14   The plaintiff is entitled to recover profits that are
15   attributable to the factors -- excuse me.  The plaintiff is not
16   entitled to recover profits that are attributable to factors
17   other than the use of the copyright work.  The defendant has --
18   the defendant has the burden of proving the portions of the
19   profits, if any, attributable to factors other than the alleged
20   infringing of the copyright work.

21   You must exclude from any award of profits all profits
22   that the evidence proves are attributable to factors other than
23   the alleged copyrighting of the musical composition "Taurus."
24   For example, you must exclude profits that are attributable to
25   other elements of the music in "Stairway to Heaven," to the

1  lyrics in "Stairway to Heaven," to performances by the members

2  of Led Zeppelin, to the recording of "Stairway to Heaven," to

3  the public interest in Stair- -- or in Led Zeppelin and its

4  members, and to the marketing efforts generated -- generating

5  such profits.

6      Now, before beginning your deliberations, you'll elect one

7  of your members of the jury who will preside over your

8  deliberations and also serve as a spokesman for the jury to

9  this Court.

10     You shall diligently strive to reach an agreement with all

11 the other jurors if you can do so.  The verdict must be

12 unanimous.

13     Each of you must decide this case for yourselves, but you

14 should do so only after you have considered all the evidence,

15 discussed it fully with all the other jurors, and listened to

16 their views.

17     It is important that you attempt to reach a unanimous

18 verdict if you can do so, but of course only if each of you can

19 do so after having made your own conscientious decision.  Do

20 not be unwilling to change your opinion if the discussion

21 persuades you that you should, but do not come to a decision

22 simply because the other jurors think it's right, or change an

23 honest belief about the weight or the effect of the evidence

24 simply to reach a verdict.

25     Because you must base your verdict only on the evidence

1283

```
 1   received in this case and in these instructions, I remind you
 2   that you must not be exposed to any other information about
 3   this case or to the issues it involves.  Examples of
 4   discussion -- of discussions -- excuse me.  Except for
 5   discussions of the case with your fellow jurors for your
 6   deliberations, you cannot communicate with anyone else, and do
 7   not let anybody else communicate with you in any way about the
 8   merits of this case or anything to do with it.  This includes
 9   discussing the case in person, in writing, by phone, by
10   electronic means, via e-mail, text messaging, or any other
11   Internet chat room, blog, websites, or social media
12   application.  This applies to communicating with your family
13   members, your employer, the media or press or people that may
14   be involved in this trial.  If you are asked or approached in
15   any way about your jury service or anything to do about this
16   case, you must respond that you have been ordered by the Court
17   not to discuss this matter and to report it to the Court
18   immediately.
19        Do not read, watch, listen to any news or media accounts
20   or commentary about this case or anything to do with it.  Do
21   not do any research, such as consulting dictionaries, searching
22   the Internet, or using other reference materials, and do not
23   make any investigations in any way or try to learn about this
24   case outside of what you hear here in court.
25        Again, that goes back to your duty that you must determine
```

1284

1   the facts only from what you hear in court.  If you start doing

2   outside investigations, you become really, for one side or the

3   other, an investigator.  That's not what it's about.  You're to

4   take the evidence that has been received during this trial and

5   determine the facts only from that evidence.

6        The law requires these restrictions to ensure that the

7   parties have had a fair trial based on the same evidence that

8   each party has had an opportunity to address.  A juror who

9   violates these restrictions jeopardizes the fairness of the

10  proceedings, and a mistrial could result that would require the

11  entire process to start over again.

12       If any juror is exposed to any outside information, please

13  notify the Court immediately.

14       If it becomes necessary during your deliberations to

15  communicate with me, you may send a note through the clerk

16  signed by one or more of the jurors.  No member of the jury

17  should ever attempt to communicate with me except in a signed

18  writing.  I will not communicate with any member of the jury on

19  anything concerning this case except in writing or here in open

20  court.

21       If you send out a question, I will consult with the

22  lawyers before answering it, which may take some time.  So you

23  should remember -- because sometimes that could take half

24  hour, an hour, whatever, if it's necessary.  So you should

25  remember that you may still continue your deliberations while

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1285

```
 1   waiting for an answer to any question.  Remember that you are

 2   not to tell anyone, including the Court, how you stand on any

 3   of the issues, whether in terms of the vote count or otherwise,

 4   until you have reached a unanimous verdict and have been

 5   discharged.

 6        A verdict form has been prepared for you.  After you have

 7   reached a unanimous verdict, or agreement on a verdict, your

 8   presiding juror should complete the verdict form according to

 9   the delib- -- or to your deliberations, sign it, date it, and

10   advise the clerk that you are ready to return to this

11   courtroom.

12        Do you have any questions before we send you back?

13        Okay.  Do you want to swear in the bailiff, please.

14            THE CLERK:  Would you please state your name for the

15   record and spell your last name.

16            THE BAILIFF:  John Eric McBride, M-c-B-r-i-d-e.

17            THE CLERK:  Thank you.

18        Do you solemnly swear to keep this jury together in some

19   private and convenient place, that you will not permit any

20   person to speak to, communicate with them, nor do so yourself,

21   unless by order of the Court or to ask whether they have agreed

22   upon a verdict, and that you will return them to court when

23   they have so agreed or when ordered by the Court, so help you

24   God?

25            THE BAILIFF:  I will.
```

1286

```
1          THE CLERK:  Thank you.

2      Okay.  All rise.

3       (Whereupon, at 10:46 a.m., the jury was escorted

4        to the jury room for deliberations.)

5      (Outside the presence of the jury:)

6          THE COURT:  You may be seated.

7      In this matter I'm going to ask counsel, at least for the

8  remainder of the day, if you would stay near the courthouse, so

9  if there's any questions we can get ahold of you and we can

10 resolve those questions as soon as possible.

11     Okay.  We'll be in recess.

12         MR. ANDERSON:  Your Honor, may I just -- just one

13 point.  And I apologize.  On, I think it's instruction No. 26,

14 which relates to damages, I heard the Court twice say, if I

15 heard correctly, that the plaintiff has the burden of proving a

16 "casual" relationship when it should have been "causal."

17         THE COURT: Causal relationship.  I'm sorry.  But the

18 instructions, they're going to have those back there, Counsel,

19 and they can read it.

20         MR. ANDERSON:  And I just didn't want to interrupt.

21         THE COURT:  Okay.

22         MR. KULIK:  Your Honor, I just want to put on the

23 record that I thought opposing counsel's reference to Quinn

24 Wolfe in his closing argument, after Your Honor considered this

25 at length yesterday and made a very, very definitive ruling on
```

1287

```
1    the subject, I thought his reference to it, to sneak it in

2    there intentionally and willfully, was really, really out of

3    bounds.

4            THE COURT:  Almost as bad as what the plaintiff did

5    several times during their argument, too, Counsel.  It's

6    argument.  We allowed it in.  The Court sustained objections to

7    it, kept it out for that reason, and -- but you've put it on

8    the record.

9            MR. ANDERSON:  And I would just put on the record that

10   we also object to what plaintiff's counsel did.  Just so it's

11   on the record.  Thank you.

12           THE COURT:  I understand.  Okay.

13      Any other --

14           MR. ANDERSON:  No.

15           THE COURT:  -- catfights or anything else?

16      (Laughter.)

17           THE COURT:  Okay.  We'll be in recess.

18           THE CLERK:  All rise.

19      Court is in recess.

20      (Off record at 10:48 a.m.)

21      (Lunch recess held from 11:30 a.m. to 1:00 p.m.)

22      (Outside the presence of the jury at 1:37 p.m.:)

23           THE COURT:  Record will reflect the jury is not

24   present, obviously, and there are some questions as to, first

25   of all, the exhibits.
```

1288

```
1        So which ones are we concerned with?  I'm assuming there's
2   supposed to be a oral motion as to three of them, four of them?
3           MR. ANDERSON:  Your Honor, I think we've resolved
4   that.
5           THE COURT:  Okay.
6           MR. ANDERSON:  On --
7           THE COURT:  Why don't you just state for the record
8   which ones.
9           MR. ANDERSON:  Yes.  2011-1, 2011-3, 2011-5, and
10  2011-7.  They are the so-called "Headley Grange tapes" that
11  were played yesterday, and I believe plaintiff's counsel has
12  stipulated to their admission.
13          THE COURT:  Okay.
14      So stipulated?
15          MR. MALOFIY:  Yeah, so stipulated, Your Honor.  Thank
16  you.
17          THE COURT:  Okay.  What else do we have left?
18          MR. ANDERSON:  Your Honor, on the audio and video
19  files, 524-V, 523-X.  I think that's everything, but
20  basically --
21          THE COURT:  524-V and 527-X.
22          MR. ANDERSON:  527-X.
23          THE COURT:  Okay.
24          MR. ANDERSON:  And I understand counsel will represent
25  on the record that those are true and correct copies of the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01394**

 1   audio recordings and video recordings that were provided to

 2   defendants and played during the trial.

 3           THE COURT:  Okay.

 4           MR. MALOFIY:  Yes, that's accurate.

 5           THE COURT:  And be received?

 6           MR. ANDERSON:  Yes.

 7           THE COURT:  Okay.

 8           MR. ANDERSON:  Yes.  And the only point on the

 9   contract, the 2012 contract that's identified as 140194

10   through -241, our understanding is that that's under seal.  I'm

11   told by the clerk that may not be an issue here --

12           THE COURT:  Right.

13           MR. ANDERSON:  -- but it was designated under the

14   protective order.

15           THE COURT:  Yeah.

16           MR. ANDERSON:  140419, I understand from plaintiff's

17   counsel that that's been withdrawn.

18           THE COURT:  Okay.

19           MR. ANDERSON:  And I suppose, just as a caution, I

20   would ask plaintiff's counsel to confirm that none of the

21   exhibits that they're moving to introduce are based on or

22   derive from the "Taurus" sound recording.  With that

23   understanding, we would have no objection to the remaining

24   ones.

25           MR. MALOFIY:  That's accurate.

```
 1              THE COURT:  Okay.  Okay.

 2              MR. ANDERSON:  Thank you, Your Honor.

 3              THE COURT:  So we've got everything settled?

 4              MR. ANDERSON:  I thought I did.

 5              THE COURT:  Okay.

 6              MR. ANDERSON:  The court reporter -- I mean the clerk

 7   was gesturing.

 8              THE COURT:  I think there was a question on 160, the

 9   1972 --

10              MR. ANDERSON:  Oh, my apologies, Your Honor, yes.

11       160 is a multipage article that includes material that's

12   within the Court's motion in limine -- excuse me, defendants'

13   motion in limine and the Court's ruling, motion in limine

14   No. 5.  Counsel for both sides have agreed that defendants will

15   supply a PDF copy of that article that includes the first page

16   and the two pages from which plaintiff's counsel read.

17              THE COURT:  Okay.

18              MR. ANDERSON:  And the other pages will be excluded.

19              THE COURT:  Okay.  That takes care of the exhibits?

20              MR. MALOFIY:  I believe so.  I just want to look at

21   it.

22              THE COURT:  Sure, go ahead.

23              MR. ANDERSON:  We actually had it done, so it's just

24   an issue of figuring out how to get it from the laptop.

25              THE COURT:  If there's a problem, just let me know.
```

```
1          MR. ANDERSON:  Okay.  Thank you very much, Your Honor.

2          THE COURT:  Counsel, understand you also wanted to put

3     something on the record as far as verdict is concerned, so let

4     me give you a chance to do that.

5          MR. MALOFIY:  Right.  I just want to confirm that the

6     Rhino Atlantic contract is in.  Did we address that?

7          MR. ANDERSON:  Yes.  Yes.  You got it.

8          THE COURT:  Okay.

9          MR. MALOFIY:  The one issue we have, Your Honor, is

10    that one issue in this case has been credit, and we asked for

11    credit, and also -- not -- we're not asking the Court to make a

12    determination of ownership of the "Stairway to Heaven"

13    copyright, but we are asking for a determination of credit or

14    writing credit.  I think that there was -- it was in the

15    complaint multiple times.  I wrote down where we have it in the

16    complaint and the relief requested in the ad damnum clause.  So

17    it was in the body, in the counts, as well as the ad damnum

18    clause.  And, additionally, there was enough evidence in court,

19    or plaintiff believes there was sufficient evidence to show the

20    quality, importance of the different parts of the song and what

21    part we are alleging was written by Randy California.

22         We've gone through to specify that we're focused on the

23    first 2 minutes and 14 seconds, Part A specifically, and that

24    part is made up of five parts -- of, excuse me, six parts of A

25    and two parts of B.  And the first 2 minutes 14 seconds, we've
```

1292

1  identified that.  We've had experts identify that.  We've

2  looked to that.  And also the quality and importance of the

3  different sections not just from our expert but also from --

4  not just from our musicological expert, but their musicological

5  expert, and also Mr. Mathes, who is their qualitative expert,

6  who also discussed the different parts and the qualitative

7  importance, who identified also the intro as one of the

8  important parts of the song.

9      Because of that, and also because we have evidence that

10 Randy California had written the song "Taurus," which we have

11 addressed as and also shown in court that this was the Part A,

12 we believe that this is a very important part of the case, and

13 perhaps -- we wanted to -- I -- after looking at the verdict

14 form, I did want to address it with the Court, because it is

15 something of importance to plaintiff.

16     THE COURT:  Well, I understand that, and you put it on

17 the record, but my question is, what are you asking for?

18     MR. MALOFIY:  Determination of writing share.

19     THE COURT:  You asking for a special finding?

20     MR. MALOFIY:  That's right, Your Honor, special -- a

21 special verdict or as part of the verdict itself.

22     THE COURT:  Okay.

23     Counsel.

24     MR. ANDERSON:  Yes, Your Honor.  Thank you.

25     First of all, by my reading, that relief is not requested

1    in the complaint.

2         Second, it's not a remedy under the Copyright Act.  The

3    Copyright Act, there is -- first of all, there is no copyright

4    right to credit, and there are cases to that effect.

5         Second, it's not a remedy under Section 504.

6         Third, there's no evidence on it, and let me -- if I can

7    just give you a brief example.  The custom and practice in the

8    industry and one of -- the custom and practice in the industry

9    is that half of a copyright is designated for the music, half

10   of the copyright is designated for the lyrics.  And so there's

11   all kinds of evidence that was never adduced because this was

12   never pled.  There is also the issue that there was never an

13   expert witness identified by the plaintiff to testify as to

14   what would be an appropriate share.

15        So for all those reasons --

16        THE COURT:  Okay.  Counsel, I appreciate -- I'm not

17   too sure that it's appropriate to give.  I don't know, though.

18   I'd like you to -- if you're asking for a verdict form, or a

19   finding, if you could write it down for the Court, and I'll

20   look at it.  I've heard arguments on both sides.  I'll either

21   include it or I won't.  But I have to see it first.  I have to

22   see what the verdict form says.

23        MR. MALOFIY:  I'll do that right now.

24        THE COURT:  Sure.

25        MR. MALOFIY:  In a nutshell, one, is plaintiff -- is

1294

```
 1    Randy California or plaintiff entitled to credit; and two, what

 2    is that credit, what is the amount.

 3            THE COURT:  Put it down in writing.  And I don't care,

 4    it doesn't have to be typed.  You can just write it on scratch

 5    paper for me.

 6            MR. ANDERSON:  And may I write down a few citations to

 7    cases that say that this is not a copyright remedy?

 8            THE COURT:  I think you both have argued the issues to

 9    me.  I just want to see what he's asking to be introduced.

10            MR. ANDERSON:  Okay.  Thank you, Your Honor.

11            THE CLERK:  All rise.

12            THE COURT:  I'll let you know through the clerk what

13    the Court's decision is.

14            MR. MALOFIY:  Thank you.

15            THE CLERK:  Court is in recess.

16

17        (Off record at 1:45 p.m.)

18

19        (Proceedings adjourned at 4:00 p.m.)

20

21

22                        --o0o--

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01400**

1295

```
 1                          CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported proceedings

 6   held in the above-entitled matter and that the transcript page

 7   format is in conformance with the regulations of the

 8   Judicial Conference of the United States.

 9

10   Date:  JUNE 27, 2016

11

12

13

14                      /S/ SANDRA MACNEIL

15                    Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3    HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4    – – – –

5

6    MICHAEL SKIDMORE, AS TRUSTEE FOR  )
     THE RANDY CRAIG WOLFE TRUST,      )
7                                      )
                   PLAINTIFF,          )
8                                      )
         vs.                          )    No. CV 15–03462–RGK
9                                      )
     LED ZEPPELIN; JAMES PATRICK PAGE; )
10   ROBERT ANTHONY PLANT; JOHN PAUL   )
     JONES; SUPER HYPE PUBLISHING,     )
11   INC.; WARNER MUSIC GROUP CORP.,   )
     PARENT OF WARNER/CHAPPELL MUSIC,  )
12   INC.; ATLANTIC RECORDING          )
     CORPORATION; RHINO ENTERTAINMENT  )
13   COMPANY,                          )
                                       )
14                 DEFENDANTS.         )

15

16        REPORTER'S TRANSCRIPT OF JURY TRIAL

17           DAY 7; PAGES 1296 TO 1313

18           THURSDAY, JUNE 23, 2016

19                 9:27 A.M.

20           LOS ANGELES, CALIFORNIA

21

22   _____

23        SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
          Official Reporter, U.S. District Court
24                255 East Temple Street
                  Los Angeles, CA  90012
25                  213.894.5949

1297

```
1    APPEARANCES OF COUNSEL:

2


3    FOR PLAINTIFF MICHAEL SKIDMORE AS TRUSTEE FOR THE
     RANDY CRAIG WOLFE TRUST:
4
          FRANCIS ALEXANDER, LLC
5         BY:  FRANCIS MALOFIY, ATTORNEY AT LAW
          280 N. PROVIDENCE ROAD, SUITE 1
6         MEDIA, PENNSYLVANIA  19063
          215.500.1000
7
          KULIK GOTTESMAN & SIEGEL, LLP
8         BY:  GLEN L. KULIK, ATTORNEY AT LAW
          15303 VENTURA BOULEVARD, SUITE 1400
9         SHERMAN OAKS, CALIFORNIA  91403
          310.557.9200
10


11   FOR DEFENDANT LED ZEPPELIN:

12        PHILLIPS NIZER, LLP
          BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
13        666 FIFTH AVENUE
          NEW YORK, NEW YORK  10103
14        212.977.9700

15

16   FOR DEFENDANTS JAMES PATRICK PAGE, ROBERT ANTHONY PLANT:

17        LAW OFFICES OF PETER J. ANDERSON, PC
          BY:  PETER J. ANDERSON, ATTORNEY AT LAW
17        100 WILSHIRE BOULEVARD, SUITE 2010
18        SANTA MONICA, CALIFORNIA  90401
          310.260.6030
19
          PHILLIPS NIZER, LLP
20        BY:  HELENE M. FREEMAN, ATTORNEY AT LAW
          666 FIFTH AVENUE
21        NEW YORK, NEW YORK  10103
          212.977.9700
22

23   ///

24   ///

25   ///
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01403**

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2

 3   FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
     CORPORATION, RHINO ENTERTAINMENT COMPANY:
 4
           LAW OFFICES OF PETER J. ANDERSON, PC
 5         BY:  PETER J. ANDERSON, ATTORNEY AT LAW
           100 WILSHIRE BOULEVARD, SUITE 2010
 6         SANTA MONICA, CALIFORNIA  90401
           310.260.6030
 7

 8

 9   ALSO PRESENT:

10         NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11         BRAD COHEN, WARNER MUSIC GROUP

12         SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13         DAN MORENO, TRIAL TECHNICIAN

14

15

16                       I N D E X

17

18   PROCEEDINGS:                              PAGE:

19    Discussion outside the presence of the jury   1299
      re jury note
20
      Jury note addressed in open court            1304
21
      Verdict                                      1308
22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 23, 2016

 2                            9:27 A.M.

 3                            - - - -

 4       (Outside the presence of the jury:)

 5            THE COURT:  The record will reflect the jury is not

 6   present.

 7       There's a note from the jury that you both have received

 8   copies of asking for plaintiff's audio of "Taurus'" guitar --

 9   of "Taurus" on guitar, and plaintiff's audio of "Stairway to

10   Heaven" on guitar.

11       I understand there is a disagreement as to what that

12   means?

13            MR. MALOFIY:  Yes.

14            THE COURT:  Okay.  What's the plaintiff's position?

15            MR. MALOFIY:  The plaintiff's position is that I don't

16   think there's disagreement as to plaintiff's version of

17   "Stairway to Heaven."  The disagreement is plaintiff's version

18   of "Taurus."

19            THE COURT:  Is that the only disagreement?  "Stairway

20   to Heaven," everybody agrees on?

21            MR. MALOFIY:  I believe so.

22            MR. ANDERSON:  The exhibit they proposed playing

23   "Stairway to Heaven" is not a complete, but it is what they put

24   into evidence as --

25            THE COURT:  Okay.  So the only disagreement is what is
```

1300

1    the "Taurus."  And what's your position and what's the defense

2    position?

3         MR. MALOFIY:  The one that was played as audio

4    throughout the trial was 527-V, which is the "Taurus" bass

5    clef.  The actual full "Taurus" deposit copy was played live by

6    Mr. Hanson, and the "Taurus" deposit copy recorded was never

7    played in full for this court or anyone, and so --

8         THE COURT:  Try that again.  The plaintiff's --

9         MR. MALOFIY:  The "Taurus" deposit that we played over

10   and over in court was 527-V, and that was Mr. Hanson playing

11   the "Taurus" deposit copy bass clef, and that's what we used in

12   this court as an audio exhibit throughout the trial and also

13   the comparison.

14        THE COURT:  I don't want to know -- I want to know

15   exactly what it is.  It's Hanson's -- go ahead, say it again.

16        MR. MALOFIY:  Hanson's re-recording -- excuse me.

17   Hanson's performance of the "Taurus" deposit copy bass clef,

18   which was used in court over and over again.  The version they

19   want to play was never played in court in full.

20        THE COURT:  So this is the one that you -- what you

21   think they're referring to.  And I don't care what was played

22   in court.  What I'm interested in is what they're referring to,

23   and I'm going to ask them when they come in.  What they're

24   asking for, or what you feel they're referring to is the

25   deposit copy played by --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01406**

1301

```
 1              MR. MALOFIY:  Mr. Hanson, our expert.

 2              THE COURT:  Hanson.

 3              MR. MALOFIY:  Right.

 4              THE COURT:  And you feel it's what?

 5              MR. ANDERSON:  Your Honor, first of all, what he's --

 6    it wasn't played throughout the trial, but --

 7              THE COURT:  I don't care.  I want to find out what

 8    they want.

 9              MR. ANDERSON:  Right.  The problem with that recording

10    is, it's only part of "Taurus."  It's only the one clef.

11              THE COURT:  And I don't care if it's part or not.

12    It's what they ask for, and all I want to know is what they ask

13    for.

14              MR. ANDERSON:  Also admitted into evidence --

15              THE COURT:  And counsel, I've gotta tell both sides,

16    one counsel should be on any one issue.  If you want to have --

17    I've had both counsel come up here.  I can't control all these

18    counsel.  One counsel on each side, okay?

19         Go ahead.

20              MR. ANDERSON:  Exhibit 525-V is a plaintiff's exhibit.

21    It was admitted into evidence.  It is Mr. Hanson playing the

22    entire -- both clefs of the "Taurus" deposit copy.

23              THE COURT:  I'm sorry, playing --

24              MR. ANDERSON:  Playing the "Taurus" deposit copy, not

25    just part of the "Taurus" deposit copy.
```

1302

```
 1         THE COURT:  So you're saying that what you think they
 2   mean is Hanson's playing of both.
 3         MR. ANDERSON:  Of the "Taurus" deposit copy, not just
 4   part of the "Taurus" deposit copy.
 5         THE COURT:  Okay.  So what you're saying is that you
 6   think they mean that they want to hear Hanson's playing of the
 7   entire deposit copy.
 8         MR. ANDERSON:  Right.
 9         THE COURT:  You're saying you think they want play
10   Hanson's version of --
11         MR. ANDERSON:  Just the bass clef.
12         MR. MALOFIY:  It's 527-V, "Taurus" bass clef, because
13   that was --
14         THE COURT:  Just the bass clef.
15         MR. MALOFIY:  Because that's what was played
16   throughout this trial.
17         THE COURT:  Just -- I don't care if it was played
18   throughout the trial.  I want to know what they want to know.
19   And I'm going to ask them.  Do they want Hanson's version of
20   the entire deposit copy, or do they want Hanson's version of
21   just the bass clef?
22         MR. MALOFIY:  And that's what was used for comparison,
23   for Your Honor's reference.
24         THE COURT:  Okay.
25         MR. ANDERSON:  And may I ask, Your Honor, if -- to
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    give them the choice, if they also want to hear the "Taurus" --

 2    for example, if they're asking for the bass clef, if they also

 3    want to hear the entire deposit copy.

 4            THE COURT:  I'm going to ask them what they're asking

 5    for.  I'm not going to indicate or suggest what they meant.  I

 6    want to know if they want the Hanson version of "Taurus," the

 7    entire playing of the deposit copy, or just the playing of the

 8    bass clef.

 9            MR. ANDERSON:  And if I could explain, Your Honor.

10            THE COURT:  Yes.

11            MR. ANDERSON:  He played live --

12            THE COURT:  I don't care --

13            MR. ANDERSON:  -- 525 --

14            THE COURT:  Counsel, I don't care what he played.  I

15    want to know what the jury wants to know.  If they want to

16    know just two words of what a witness says, that's what I'm

17    going to --

18            MR. ANDERSON:  This is important to that, I think.  If

19    they want to hear what Mr. Hanson played live, it's 525-V.

20            THE COURT:  What he played live.

21            MR. ANDERSON:  On the stand, he played the entire

22    "Taurus," both hands, both clefs, and that -- a recording of

23    that was produced as 525-V.

24            MR. MALOFIY:  It was never played in court.

25            MR. ANDERSON:  So it helps the Court to identify what
```

1    they're asking for.  If they wanted to hear what Mr. Hanson

2    played live, that would be 525-V.

3            MR. MALOFIY:  It was never played in court, and the

4    purpose -- it was objected to by defense counsel, and the

5    objection was sustained by Your Honor.

6            THE COURT:  I'm going to ask them whether they want

7    Hanson's playing of the bass -- or excuse me, of the deposit

8    copy, the entire deposit copy of "Taurus," or just the bass

9    clef.

10           MR. MALOFIY:  Thank you.

11           MR. ANDERSON:  Thank you, Your Honor.

12           THE COURT:  Okay.  Why don't we go ahead and bring

13   them in.

14           THE CLERK:  All rise.

15       (Brief pause in the proceedings.)

16       (In the presence of the jury at 9:40 a.m.:)

17           THE COURT:  Okay.  First of all, we have a note from

18   the jury.

19       The foreperson is who?

20           JURY FOREPERSON:  (Raises hand.)

21           THE COURT:  Juror No. 3.  Okay.  And that note reads

22   as follows.

23       First of all, the Court should, for the record, indicate

24   that the jury is present at this time, and we're going over a

25   note that you sent to the Court.

1305

1    And the note says this, that we would like to listen to,

2    No. 1, plaintiff's audio of "Taurus" guitar, and, No. 2,

3    plaintiff's audio of "Stairway to Heaven" guitar.

4        Is that correct?

5            JURY FOREPERSON:  (Nods head up and down.)

6            THE COURT:  Yes?

7            JURY FOREPERSON:  We'd like to listen to them twice.

8            THE COURT:  You'd like to listen to them twice.  Okay.

9            JURY FOREPERSON:  Right.

10           THE COURT:  Okay.  As to the plaintiff's audio of

11   "Taurus" guitar, I've gotta figure out which one you mean.  Do

12   you mean the full playing of the deposit copy or do you mean

13   just the bass clef playing of the deposit copy?

14           JUROR NO. 6:  Bass clef.

15           JURY FOREPERSON:  The full copy.

16           THE COURT:  The full copy.  Okay.  So that's what you

17   want, those two, but you want them played twice?

18           JURY FOREPERSON:  Yes.

19           THE COURT:  Do you want them played twice in sequence,

20   or -- in other words, you want --

21           JURY FOREPERSON:  In sequence.

22           THE COURT:  For instance, do you want "Stairway to

23   Heaven" played twice and then "Taurus" played twice, or do you

24   want "Stairway to Heaven," "Taurus," "Stairway to Heaven" and

25   "Taurus"?

1306

```
 1          JURY FOREPERSON:  "Taurus" played, followed by
 2   "Stairway to Heaven," and then "Taurus" followed by "Stairway
 3   to Heaven."
 4          THE COURT:  Okay.  You got it.  Can we do that?
 5          TRIAL TECH:  Sure.
 6          THE COURT:  And if you could just identify the exhibit
 7   number so I have that.
 8          MR. MALOFIY:  Sure.  It's going to be 524-V.
 9          MR. ANDERSON:  And 525 --
10      (Video began to play.)
11          MR. ANDERSON:  He started on the wrong -- that's
12   "Stairway to Heaven."  I think they want "Stairway to
13   Heaven" --
14          THE COURT:  You want "Taurus" first?
15          JURY FOREPERSON:  Yes.
16          THE COURT:  Okay.  We'll start with "Taurus" first.
17          MR. MALOFIY:  Sure.
18          MR. ANDERSON:  Which is 525-V.
19          MR. MALOFIY:  Correct.
20          THE COURT:  Okay.
21      (Video played.)
22          THE COURT:  Okay.  Now we'll play "Stairway to
23   Heaven."
24      (Video played.)
25          THE COURT:  Okay.  Now we'll play it one more time for
```

```
 1    you.
 2         We'll play "Taurus" first.
 3         (Video played.)
 4             THE COURT:  And "Stairway to Heaven."
 5         (Video played.)
 6             THE COURT:  Okay.  Does that answer your question?
 7             JURY FOREPERSON:  Thank you.
 8             THE COURT:  Okay.  We'll send you back in for your
 9    deliberation again.
10         We'll be in recess.
11             THE CLERK:  Okay.  All rise.
12         (Jury out at 9:45 a.m.)
13         (Off record at 9:45 a.m.)
14         (In the presence of the jury at 10:08 a.m.:)
15             THE COURT:  Okay.  The record will reflect that all
16    the members of the jury are in their respective seats in the
17    jury box.
18         My understanding is, I have a note here that you have
19    reached a verdict.  Is that correct?
20             JURY FOREPERSON:  That's correct.
21             THE COURT:  Okay.  Has it been dated and signed?
22             JURY FOREPERSON:  Yes.
23             THE COURT:  And is it unanimous?
24             JURY FOREPERSON:  Yes.
25             THE COURT:  Okay.  If you'd pass that up to the
```

1308

```
1    bailiff.
2        And as you do that, let me admonish the audience here,
3    whatever the verdict is one way or the other, there's to be no
4    disruption in the courtroom.  You can be as disruptive as you
5    want out in the streets, but no disruption in the courthouse or
6    in the courtroom, because this is a federal court and we want
7    to conduct it with the proper demeanor.
8        Okay.  If you want to read the verdict, please.
9            THE CLERK:  Yes.
10   (Reading:)
11           "United States District Court, Central
12           District of California.  Michael Skidmore versus
13           Led Zeppelin, et al., case No. Civil 15-3462-RGK.
14           "Verdict.
15           "We the jury, in the above-titled action,
16           find as follows:
17           "Question No. 1:  Do you find by a
18           preponderance of evidence that the plaintiff is
19           the owner of a valid copyright in the musical
20           composition 'Taurus'?
21           "Answer:  Yes.
22           "If your answer to question No. 1 is yes,
23           please proceed to the next question.
24           "Question 2:  Do you find by a preponderance
25           of the evidence that any of the defendants had
```

1309

```
 1          access to musical -- I'm sorry, to the musical
 2          composition 'Taurus' before 'Stairway to Heaven'
 3          was created?
 4               "Answer:  Yes.
 5               "If your answer to question 2 is yes, please
 6          proceed to the next question.
 7               "Question 3:  Please put a checkmark next to
 8          each defendant listed below who you find by a
 9          preponderance of the evidence had access to the
10          musical composition 'Taurus' before 'Stairway to
11          Heaven' was created.
12               "Answer:  James Patrick Page, there is a
13          checkmark.  Robert Plant, there is a checkmark.
14               "Question 4:  Do you find by a preponderance
15          of the evidence that the original elements of the
16          musical composition 'Taurus' are extrinsically
17          similar to 'Stairway to Heaven'?
18               "Answer:  No.
19               "If your answer to question four is no,
20          please have this verdict signed formed -- form --
21          let me try that again -- please have this verdict
22          form signed and dated by the presiding juror and
23          returned to the court clerk."
24       Dated the 23rd day of June 2006 (sic) at Los Angeles,
25    California, signed by the foreperson of the jury.
```

1   THE COURT:  Okay.  Ladies and gentlemen, is that your

2   verdict, say you one, say you all?

3   JURORS:  Yes.

4   THE COURT:  Now, anytime we take a verdict on any

5   case, criminal or civil, we always do what we call "polling of

6   the jury," which means we go through each juror and we ask, is

7   the verdict as read by the clerk, does that represent your own

8   individual verdict?

9   So let me start with juror No. 1.

10  JUROR NO. 1:  Yes.

11  THE COURT:  Juror No. 2?

12  JUROR NO. 2:  Yes.

13  THE COURT:  Juror No. 3?

14  JUROR NO. 3:  Yes.

15  THE COURT:  Juror No. 4?

16  JUROR NO. 4:  Yes.

17  THE COURT:  Juror No. 5?

18  JUROR NO. 5:  Yes.

19  THE COURT:  Juror No. 6?

20  JUROR NO. 6:  Yes.

21  THE COURT:  Juror No. 7?

22  JUROR NO. 7:  Yes.

23  THE COURT:  Juror No. 8?

24  JUROR NO. 8:  Yes.

25  THE COURT:  Okay.  The verdict will be recorded.

1    At this time I want to thank you very much for your
2  participation.  It's -- it was a long -- wasn't that long.  It
3  was five days, six days, but you did it, you paid attention all
4  through the trial.  We appreciate that and the effort that you
5  put in.
6    I'm going to be excusing you at this time.  Once we excuse
7  you, you are also relieved of your obligation not to talk about
8  the case.  So you can talk about it.  Keep in mind a few
9  things.  One is, sometimes the jurors like to go out and talk
10 with the attorneys to see what they did right or wrong.  Most
11 of the time the jurors just want to go home, you don't want to
12 talk to anybody.  Either way you want to go, the CSO will take
13 care of you, and he will make sure that if you don't want to
14 talk to anybody, he'll escort you out without you having to
15 talk to anybody.
16    If you do talk to anybody about the case, remember the
17 fact that your deliberations back there in the jury room are
18 between you and the other jurors.  You can say what you think
19 about a case, but you really shouldn't get into what other
20 jurors said.  Let them say what they think, but they should
21 have the dignity of being able to express things with you
22 without thinking you're going to give it to everybody else.
23    So with that admonishment, again I thank you very much.
24 We appreciate your attendance and the work you did on this
25 case.

1312

```
 1        The jury is excused at this time.

 2            THE CLERK:  All rise.

 3        (The jury was excused and exited the courtroom at

 4        10:14 a.m.)

 5            THE COURT:  Counsel, I want to thank you also very

 6     much for the participation and your presentation of the case.

 7     The Court appreciated it.

 8        We will be in recess.

 9            THE CLERK:  All rise.

10        Court is adjourned.

11

12            (Proceedings concluded at 10:14 a.m.)

13

14                         --o0o--

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**01418**

1313

```
1                          CERTIFICATE

2

3         I hereby certify that pursuant to Section 753,

4    Title 28, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported proceedings

6    held in the above-entitled matter and that the transcript page

7    format is in conformance with the regulations of the

8    Judicial Conference of the United States.

9

10   Date:  JUNE 27, 2016

11

12

13

14                    /S/ SANDRA MACNEIL

15              Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

NOTE: CHANGES MADE BY THE COURT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SKIDMORE, *etc.*, | ) | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | [~~*PROPOSED*~~] AMENDED JUDGMENT |
| | ) | |
| LED ZEPPELIN, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

01420

**JUDGMENT**

The Court having granted the Motion of defendants John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp. for Summary Judgment; the action having been tried before the Court siting with a Jury as to the remaining defendants, James Patrick Page, Robert Anthony Plant, Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company; Led Zeppelin, being a non-juridical entity that was never served; and the issues having been duly tried and the Jury having duly rendered its verdict,

**IT IS ORDERED AND ADJUDGED** that plaintiff Michael Skidmore take nothing; that the action **is closed**; and that defendants James Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc., Atlantic Recording Corporation, Rhino Entertainment Company and Super Hype Publishing, Inc., and Warner Music Group Corp. recover of the plaintiff their costs of action, taxed in the sum of $_____.

Dated: July 08, 2016

_____
The Honorable R. Gary Klausner
United States District Judge

1

### LIST OF EXHIBITS AND WITNESSES

| Case Number | CV 15-3462 RGK (AGRx) | Title | SKIDMORE v. LED ZEPPELIN, et al |
|---|---|---|---|
| Judge | R. GARY KLAUSNER | | |
| Dates of Trial or Hearing | JUN 14 2016; 06·15·16; 06·16·16; 06·17·16; 06·21·16; 06·22·16 | | |
| Court Reporters or Tape No. | | | 06·23·16 |
| Deputy Clerks | SHARON L WILLIAMS, ANEL HUERTA, PAUL CONGCO | | |

| Attorney(s) for Plaintiff(s) / Petitioner(s) | Attorney(s) for Defendant(s) / Respondent(s) |
|---|---|
| FRANCIS MALOFIY | PETER ANDERSON |
| GLEN KULIK | HELENE FREEMAN |
| | |
| | |
| | |

FILED
CLERK, U.S. DISTRICT COURT
JUN 23 2016
CENTRAL DISTRICT OF CALIFORNIA
BY                DEPUTY

| Plaintiff(s) or Petitioner(s) | | | Defendant(s) or Respondent(s) | | | EXHIBIT DESCRIPTION / WITNESS | Called By |
|---|---|---|---|---|---|---|---|
| Ex. No. | Id. | Ev. | Ex. No. | Id. | Ev | | |
| | | | | | | JANET WOLFE                    JUN 14 2016 | P |
| | | | | | | JAY FERGUSON                   JUN 14 2016 | P |
| | | | 312 | 6/14/16 | 6/14/16 | SPIRIT CD | |
| | | | 320 | 6/14/16 | NO | SPIRIT POSTER | |
| | | | 6A JUN 22 2016 | | | AUDIO   FRESH GARBAGE | |
| 306 | ✓ | ✓ | | | | POSTER FOLK ROCK FESTIVAL | |
| 313 | ✓ | ✓ | | | | LED GROOVY ARTICLE | |
| 314 | ✓ | ✓ | | | | ARTICLE-ATLANTA POP FEST. | |
| 318 | ✓ | ✓ | | | | SEATTLE POP FESTIVAL | |
| 319 | ✓ | ✓ | | | | TEXAS POP FESTIVAL | |
| 320 | ✓ | ✓ | | | | SPIRIT POSTER | |
| 321 | ✓ | ✓ | | | | CLASH ARTICLE | |
| 316 | ✓ | | | | | SEATTLE POP FESTIVAL | |
| | | | | | | MICHAEL WARE (VIDEO) | π |
| | | | 2950 | ✓ | ✓ | MOTHERS CLUB ARTISTS | |
| | | | 2955 | ✓ | ✓ | WEBSITE POST | |
| | | | 2954 | ✓ | ✓ | WARE E-MAIL | |
| 2951 | JUN 22 2016 | | | | | SPIRIT POSTER | |
| 2952 | | | | | | BILLBOARD CHARTS | |
| 2953 | | | | | | BILLBOARD CHARTS | |
| | | | | | | MARK ANDES | π |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LIST OF EXHIBITS AND WITNESS - CONTINUED

Case No. LV 16-3462          Title: SKIDMORE V. LED ZEPPELIN ET AL

| Plaintiff(s) | | | Defendant(s) | | | Exhibit Description / Witness | Called By |
|---|---|---|---|---|---|---|---|
| Ex. # | Id. | Ev. | Ex. # | Id. | Ev. | | |
| 532V | ✓ | NO | | | | TAURUS CLIP | |
| 524V | ✓ | NO | JUN 22 2016 | | | STAIRWAY TO HEAVEN CLIP | |
| 525V | ✓ | ✓ | | | | TAURUS DEPOSIT | |
| 535 | ✓ | ✓ | | | | PHOTO ANDES / PLANT | |
| 2060 | — | NO | | | | SUPERIOR COURT ORDER | |
| 2068 | ✓ | ✓ | | | | TAURUS DEPOSIT COPY | |
| 352 | ✓ | ✓ | | | | SPIRIT SET LISTS | |
| 2114-1 | ✓ | ✓ | | . | | SPIRIT SONGLIST | |
| | | | | | | BRUCE PATES | π |
| | | | | | | JAMES PATRICK PAGE | π |
| 373 | ✓ | ✓ | | | | SPIRIT ALBUM | |
| 157 | ✓ | ✓ | | | | ZIG ZAG INTERVIEW | |
| 205A | ✓ | ✓ | | | | SPIRIT'S FRESH GARBAGE | |
| 100158 | ✓ | ✓ | | | | NEWSPAPER ARTICLE | |
| 2023A | ✓ | ✓ | | | | AUDIO | |
| 39A | ✓ | NO | | | | AUDIO - TAURUS LIVE | |
| 2708 | ✓ | ✓ | | | | STAIRWAY DEPOSIT COPY | |
| 439243 | ✓ | ✓ | | | | ( FINANCIAL DOCUMENTS (03/2016) | |
| | | | | | | PGS 039245; 6039247; 6039289 6039321 | |
| 100164 | ✓ | NO | YES JUN 22 2016 | | | AUDIO STAIRWAY TO HEAVEN | |
| | | | | | | LARRY KNIGHT | π |
| | | | | | | KEVIN HANSON | π |
| 524V | ✓ | NO | JUN 22 2010 | | | AUDIO / VIDEO | |
| 532V | ✓ | NO | | | | AUDIO / VIDEO | |
| 527V | ✓ | ✓ | | | | AUDIO / VIDEO | |
| | | | | | | ALEXANDER STEWART | π |
| 508L | ✓ | ✓ | | | | LEAD SHEETS - PART A  PG. 1 | |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LIST OF EXHIBITS AND WITNESS - CONTINUED

Case No. CV 15-3462-RGK (AGRx) Title: SKIDMORE V. LED ZEPPELIN ET AL

| Plaintiff(s) | | | Defendant(s) | | | Exhibit Description / Witness | Called By |
|---|---|---|---|---|---|---|---|
| Ex. # | Id. | Ev. | Ex. # | Id. | Ev. | | |
| 500-1 | ✓ | NO | | | | CHROMATIC LINE | |
| 501-1 | ✓ | ✓ | | | | CHROMATIC LINE PRIOR ART PG.1 | |
| 508-1 | ✓ | ✓ | | | | HARMONY PG.1 | |
| 502-1 | ✓ | ✓ | | | | HARMONY PG.1 | |
| 506-1 | ✓ | ✓ | | | | NOTE PAIRINGS PG.1 | |
| 2704 | ✓ | | | | | TAURUS DEPOSIT COPY (FERRARA) | |
| 509-1 | ✓ | ✓ | | | | TAURUS / STAIRWAY PITCH COLLECTIONS | |
| 511-1 | ✓ | ✓ | | . | | TAURUS / STAIRWAY PITCH INVENTORY | |
| | ✓ | ✓ | | | | MICHAEL SKIDMORE | π |
| 460-0001 | ✓ | ✓ | | | | STIPULATION FOR ORDER | |
| 2031-0002 | ✓ | ✓ | | | | RENEWAL REGISTRATION | |
| 2070 | ✓ | ✓ | | | | AGREEMENT | |
| 461 | ✓ | ✓ | | | | TRUST | |
| 462 | ✓ | ✓ | | | | AMENDMENT TO TRUST | |
| 463 | ✓ | ✓ | | | | 2ND AMENDMENT TO TRUST | |
| 464 | ✓ | ✓ | | | | 3RD AMENDMENT TO TRUST | |
| 465 | ✓ | ✓ | | | | 4TH AMENDMENT TO TRUST | |
| | | | | | | MICHAEL EINHORN | π |
| 1XX | ✓ | ✓ | | | | RECORD SALE REVENUES | |
| | | | | | | LAWRENCE FERRARA | △ |
| 2092 | ✓ | ✓ | | | | FERRARA INITIAL REPORT | |
| 2406 | ✓ | ✓ | | | | REVISED REPORT FERRARA | |
| 41A | ✓ | REQ | | | | AUDIO OF TAURUS DEPOSIT COPY | |
| 2704 | ✓ | ✓ | | | | AUDIO TAURUS DEPOSIT COPY | |
| 2706 | ✓ | ✓ | | | | MUSICAL EXAMPLE (AUDIO) | |
| | | | | | | JOHN PAUL JONES | △ |
| 638 | ✓ | ✓ | | | | GONZAGE CONCERT | |

01424

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LIST OF EXHIBITS AND WITNESS - CONTINUED

Case No. CV 15-03462         Title: SKIDMORE V. LED ZEPPELIN ET AL.

| Plaintiff(s) | | | Defendant(s) | | | Exhibit Description / Witness | Called By |
|---|---|---|---|---|---|---|---|
| Ex. # | Id. | Ev. | Ex. # | Id. | Ev. | | |
| | | | | | | ROB MATHES | △ |
| | | | 51A | ✓ | ✓ | AUDIO TAURUS DEPOSIT COPY | |
| | | | 61A | ✓ | ✓ | | |
| | | | 2961 | ✓ | ✓ | MATHES AUDIO TO CATCH A SHAD | |
| | | | 2962 | ✓ | ✓ | AUDIO TAURUS DEPOSIT + TO CATCH A SHAD | |
| | | | 2963 | ✓ | NO | STRUCTURE REPORT | |
| | | | 2014 | ✓ | ✓ | CERTIFIED REGISTRATION | |
| | | | 2060 | ✓ | NO | | |
| | | | | | | TIM GARDNER | △ |
| PGS FROM EXHIBIT 2041 | | | D39256 | ✓ | NO | PAGES FROM FINANCIAL STMT | |
| | | | D39259 | ✓ | NO | PAGES FROM FINANCIAL STMT | |
| | | | D39260 | ✓ | NO | PAGES FROM FINANCIAL STMT | |
| | | | | | | DAVID XOIRHAYE | △ |
| | | | 2412 | ✓ | ✓ | PROFIT / LOSS STMT | |
| | | | | | | JEREMY BLIETZ | △ |
| | | | | | | ROBERT PLANT | △ |
| | | | | | | JAMES PAGE | △ |
| | | | 2112 | ✓ | NO | MAY 1969 CHICAGO FLYER | |
| | | | 2964 | ✓ | ✓ | TAURUS CERTIFIED REGIST. | |
| 98 | ✓ | ✓ | | | | NEW MUSIC EXPRESS ARTICLE | |
| 160A | ✓ | ✓ | | | | ZIG ZAG INTERVIEW | |
| 310 | ✓ | NO | | | | SPIRIT CD MAMMOTH GARDENS | |
| 344 | ✓ | NO | | | | CD IMAGE 1ST ATLANTA POP | |
| D040194 | ✓ NO | | (FROM 4/94) | | | | |
| 39A | ✓ | NO | | | | RECORDING TAURUS LIVE | |
| 32A | ✓ | NO | | | | RECORDING SPIRIT ALBUM | |
| 2XX | ✓ | NO | | | | RECORDING COMPARISON VIDEO | |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### LIST OF EXHIBITS AND WITNESS - CONTINUED

Case No. CV 15-3462          Title: SKIDMORE V. LED ZEPPELIN

| Plaintiff(s) | | | Defendant(s) | | | Exhibit Description / Witness | Called By |
|---|---|---|---|---|---|---|---|
| Ex. # | Id. | Ev. | Ex. # | Id. | Ev. | | |
| 2011-1 | ✓ | ~~NO~~ | YES | JUN 22 2016 | | AUDIO | |
| 2011-3 | ✓ | ~~NO~~ | YES | JUN 22 2016 | | AUDIO | |
| 2011-5 | ✓ | ~~NO~~ | YES | JUN 22 2016 | | AUDIO | |
| 2011-7 | ✓ | ~~NO~~ | YES | JUN 22 2016 | | AUDIO | |
| | | | | | | | |
| 2016 | ✓ | ✓ | | | | PETITION EXHIBIT A | |
| | | | | | | LAST PAGE - CERTIFICATION | |
| | | | | | | | |
| 2051 | ✓ | | | | | b 040241 | |
| 2027 | ✓ | | | | | b 000650 | |
| | | | 160 | JUN 22 2016 | | | |
| | | | 140194 to 140241 | JUN 22 2016 | | | |
| | | | 527X | JUN 22 2016 | | | |
| | | | 500 | JUN 22 2016 | | | |
| | | | 100169A | JUN 22 2016 | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

1   Francis Malofiy, Esquire
    Francis Alexander, LLC
2   280 N. Providence Rd. | Suite 1
3   Media, PA 19063
    T:  (215) 500-1000; F:  (215) 500-1005
4   E:  francis@francisalexander.com
5   *Attorney for Plaintiff*

6
    Glen L. Kulik, Esq.
7   Kulik Gottesman & Siegel LLP
8   15303 Ventura Blvd., Suite 1400
    Sherman Oaks, CA 91403
9   T:  (310) 557-9200; F:  (310) 557-0224
10  E:  gkulik@kgslaw.com
    *Attorney for Plaintiff*
11

12              **UNITED STATES DISTRICT COURT**

13         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14  MICHAEL SKIDMORE, as Trustee for          Case No. 15-cv-03462 RGK (AGRx)
15  the RANDY CRAIG WOLFE TRUST,
                                               Hon. R. Gary Klausner
16                  Plaintiff,

17        v.                                   **PLAINTIFF SUPPLEMENTAL
                                               EXHIBIT LIST**
18
19  LED ZEPPELIN; JAMES PATRICK
    PAGE; ROBERT ANTHONY PLANT;               **TRIAL: JUNE 14, 2016**
20  JOHN PAUL JONES; SUPER HYPE
21  PUBLISHING, INC.; WARNER MUSIC            **TIME: 9:00 A.M.**
    GROUP CORP., Parent of
22  WARNER/CHAPPELL MUSIC, INC.;
23  ATLANTIC RECORDING
    CORPORATION; RHINO
24  ENTERTAINMENT COMPANY,
25
                    Defendants.
26
27
28

{00255828;1}                          1
                  PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 191 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 7 of 74   Page ID #:7043
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 2 of 383   Page ID
#:6528

| | Description | Objections | Date Id. | Date Adm. |
|---|---|---|---|---|
| | | **AUDIO EXHIBITS** | | |
| 1A | Audio Exhibit 1: Dazed and Confused by Led Zeppelin (1969)[207A] | Defs: general objection, as to the entire Joint Exhibit List, that plaintiff has insisted upon the inclusion of material not properly or reasonably considered an exhibit for trial, has failed to identify what documents or recordings he is referring to, and has otherwise not cooperated in the preparation of a proper Joint Exhibit List. As to this specific exhibit: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 2A | Audio Exhibit 2: Dazed and Confused by Jake Holmes (1967)[208A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 3A | Audio Exhibit 3: Whole Lotta Love by Led Zeppelin (1969)[409A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 4A | Audio Exhibit 4: Muddy Waters' You Need Love (1962)(10 seconds – 28 seconds)[209A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 5A | Audio Exhibit 5: The Small Faces' You Need Loving (1966)(25 seconds – 48 seconds)[210A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 6A | Audio Exhibit 6: Live performance of Led Zeppelin | | JUN 1 4 2016 | |

{00255828;1}

2

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| 22A | Audio Exhibit 22: Acoustic Guitar | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 23A | Audio Exhibit 23:Cello 1 | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 24A | Audio Exhibit 24: Cello 2 | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 25A | Audio Exhibit 25: Cymbal | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 26A | Audio Exhibit 26: Flute | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 27A | Audio Exhibit 27: Harpsichord | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 28A | Audio Exhibit 28: String Bass | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 29A | Audio Exhibit 29: Viola | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 30A | Audio Exhibit 30: Violins | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | **AUDIO EXHIBITS – ALEXANDER STEWART** | | | |
| 31A | Audio Exhibit 31: "Stairway to Heaven" (album) | | | |
| 32A | Audio Exhibit 32: "Taurus" (album) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002. | JUN 1 5 2016 | |
| 33A | Audio Exhibit 33:Taurus Live at Ash Grove (7/10/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 34A | Audio Exhibit 34: Taurus Live at Ash Grove (7/31/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 35A | Audio Exhibit 35:Taurus Live at Ash Grove (8/8/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 36A | Audio Exhibit 36:Taurus Demo | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |

{00255828;1}

7

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 193 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 9 of 74   Page ID #:7045
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 8 of 383   Page ID #:6534

| | | | | |
|---|---|---|---|---|
| | | Recording (8/1967) | | | |
| | 37A | Audio Exhibit 37: Taurus Live at Kaleidoscope (4/5/1968) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| | 38A | Audio Exhibit 38: Taurus Live at The Time Coast | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| | 39A | Audio Exhibit 39: Taurus Live at Acoustic (1996) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | JUN 1 6 2016 | |
| | 40A | Audio Exhibit 40: Combination – Acoustic Taurus Synced to STH SR – Part A, played over Master SR of STH | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| | 41A | Audio Exhibit 41:Acoustic Taurus Synced to Master SR of STH – Part A | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |
| | 42A | Audio Exhibit 42: Stairway Acoustic – Part A [9A] | Defs: Defs MIL # 4, FRE 401-02, 403, 1002. | | |
| | 43A | Audio Exhibit 43: Taurus Acoustic – Part A [10A] | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |
| | 44A | Audio Exhibit 44: Combination – Acoustic Taurus Synced to Master SR of STH (Part A), played over Acoustic | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |

{00255828;1}

8

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 194 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 10 of 74   Page ID
#:7246
Case 2:15-cv-03462-RGK-AGR   Document 246   Filed 06/14/16   Page 9 of 383   Page ID
#:6535

| | | | | |
|---|---|---|---|---|
| 1 | | Stairway (Part A) [11A] | | | |
| 2 | | **AUDIO EXHIBITS – REBUTTAL OF MATHES** | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5–11 | 45A | Audio Exhibit 45: Mathes Audio Exhibit Tempo Matched - Stairway | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 12–19 | 46A | Audio Exhibit 46: Mathes Audio Exhibit Tempo Matched - Taurus | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 20–26 | 47A | Audio Exhibit 47: Mathes Audio Exhibit Tempo Matched - STH & Taurus | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 27–28 | 51A | Audio Exhibit 51: Taurus Deposit Copy | | JUN 2 1 2016 | JUN 2 1 2016 |

{00255828;1}

9

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 195 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 11 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 247   Filed 06/14/16   Page 13 of 383   Page ID
#:6539

| | | | | | |
|---|---|---|---|---|---|
| 1<br>2 | | Treble Clef<br>(Hanson) | | | |
| 3<br>4<br>5 | 61A | Audio Exhibit<br>61: Taurus<br>Deposit Copy<br>(by Ferrara) | | JUN 1 7 2016<br>JUN 1 7 2016 | JUN 2 1 2016 |
| 6<br>7<br>8<br>9 | 62A | Audio Exhibit<br>62: Taurus<br>Recording (by<br>Ferrara) | Defs: failure to identify and produce<br>audio exhibit (Ferrara provided only<br>one audio recording of Taurus<br>deposit copy, listed above); FRE<br>401-02, 403, 1002, & lack<br>foundation, MIL # 3, # 4, failure to<br>comply with FRCP 26(a)(2), (e) &<br>(b)(4). | | |
| 10<br>11<br>12<br>13<br>14 | 63A | Audio Exhibit<br>63:Combined -<br>Taurus Deposit<br>Copy and<br>Taurus<br>Recording (by<br>Ferrara) | Defs: failure to identify and produce<br>audio exhibit (Ferrara provided only<br>one audio recording of Taurus<br>deposit copy, listed above); FRE<br>401-02, 403, 1002, & lack<br>foundation, MIL # 3, # 4, failure to<br>comply with FRCP 26(a)(2), (e) &<br>(b)(4). | | |
| 15<br>16 | 64A | Audio Exhibit<br>64: Stairway to<br>Heaven (by<br>Ferrara) | | | |
| 17<br>18<br>19<br>20<br>21<br>22 | 65A | Audio Exhibit<br>65:Combined –<br>Taurus Deposit<br>Copy and<br>Stairway to<br>Heaven (by<br>Ferrara) | Defs: failure to identify and produce<br>audio exhibit (description does not<br>match audio recordings provided by<br>Ferrara); to the extent plaintiff refers<br>to another of plaintiff's audio<br>recordings, failure to identify and<br>produce audio exhibit, FRE 401-02,<br>403, 1002, & lack foundation, MIL<br># 4, failure to comply with FRCP<br>26(a)(2), (e) & (b)(4). | | |
| 23<br>24<br>25<br>26<br>27<br>28 | 66A | Audio Exhibit<br>66: Combined -<br>Taurus<br>Recording and<br>Stairway to<br>Heaven (by<br>Ferrara) | Defs: failure to identify and produce<br>audio exhibit (description does not<br>match audio recordings provided by<br>Ferrara); to the extent plaintiff refers<br>to another of plaintiff's audio<br>recordings, failure to identify and<br>produce audio exhibit, FRE 401-02,<br>403, 1002, & lack foundation, MIL<br># 3, # 4, failure to comply with<br>FRCP 26(a)(2), (e) & (b)(4). | | |

{00255828;1}

13

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 196 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 12 of 74   Page ID #:7942
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 20 of 383   Page ID #:6546

| | | | | |
|---|---|---|---|---|
| 95 | Deposition of Robert Mathes (2016.05.27) (Transcript) [Mathes] | | | |
| 95V | Deposition of Robert Mathes (2016.05.27) (VIDEO) [Mathes] | | | |
| 96 | Deposition of Lawerence Ferrara (2016.05.27) (Transcript) [Ferrara] | | | |
| 96V | Deposition of Lawrence Ferrara (2016.05.27) (VIDEO) [Ferrara] | | | |
| 97 | Deposition of Michael Ware (2016.05.31) (Transcript) [Ware] | | | |
| 97V | Deposition of Michael Ware (2016.05.31) (VIDEO) [Ware] | | | |
| 98-1 | New Musical Express Article [Page][D98] | Defs: Defs MIL # 2 & # 5, FRE 40 02, 403, 404, 407, 408, 802, 805. | JUN 1 5 2016 | JUN 1 5 2016 |
| 99V | BBC Interview with Jimmy Page (minutes 1:13 to1:25)[VIDEO ][Page] | Defs: reserve right to play other portions of the interview. | | |
| 99T | Transcript of BBC Interview with Jimmy Page | | | |

{00255828;1}

20

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 197 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 13 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 249   Filed 06/14/16   Page 22 of 383   Page ID
#:7049
#:6548

| | | | | | |
|---|---|---|---|---|---|
| | | Heaven [AUDIO][Page][D109] | | | |
| | 110A | Take 4 - Stairway to Heaven [AUDIO][Page][D110] | | | |
| | 111A | Take 5 - Stairway to Heaven [AUDIO][Page][D111] | | | |
| | 112A | Take 6 - Stairway to Heaven [AUDIO][Page][D112] | | | |
| | 113A | Take 7 - Stairway to Heaven [AUDIO][Page][D113] | | | |
| | 114A | Take 8 - Stairway to Heaven [AUDIO][Page][D114] | | | |
| | 146 | Plant Crash Article[Page][Jones][D146] | | | |
| | 157 | Zig Zag reprinted in Guitar World Interview with Jimmy Page [Page][D157] | Defs: Defs MIL # 2, FRE 401-02, 403, 802, 805. | JUN 1 5 2016   JUN 1 5 2016  BMES 160-00009 | |
| | 160 | Zig Zag reprinted in Guitar World Interview with Jimmy Page [Page][D157] | Defs: either duplicative of Exh. 157 or not produced; Defs MIL # 2, FRE 401-02, 403, 802, 805. | | |
| | 160A | Zig Zag Interview with Jimmy Page [AUDIO][Page] | | JUN 1 5 2016   JUN 1 5 2016 | |

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 198 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 14 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 2720   Filed 06/14/16   Page 25 of 383   Page ID
#:6551

| | | | | |
|---|---|---|---|---|
| | (Original)[Jones] | | | |
| 204 | Photos of Lez Zeppelin II Album Covers and Vinyl (Remastered) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 205A | Spirit's Fresh Garbage Performance (Feb. 3, 1970)(7:58) [AUDIO][Jones] | Defs: FRE 901, 401-02, 403; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | 'JUN 1 5 2016 | ✓ 6-15-16 |
| 206A | Led Zeppelin Playing Fresh Garbage (2:51) [AUDIO][Jones][6A] | Defs: FRE 901, 401-02, 403; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 207A | Dazed and Confused (Led Zeppelin)(1969) [AUDIO][Jones][1A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 208A | Dazed and Confused (Jake Holmes)(1967)[AUDIO][Jones][2A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 209A | You Need Love (Muddy Waters)(1962)[AUDIO][Jones][4A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 210A | You Need Loving (The Small Faces)(1966)[AUDIO][Jones][5A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 211A | Babe I'm Gonna Leave You (Joan Baez/Anne Bredon)(1962)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

{00255828;1}

25

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 199 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 15 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 243   Filed 06/14/16   Page 31 of 383   Page ID
#:6557

| | | | | | |
|---|---|---|---|---|---|
| 303A | Spirit CD - Valley Music Theatre (12/31/1970)(Disc One)[AUDIO] [Ferguson] | | | | |
| 304 | Spirit CD - Valley Music Theatre (12/31/1970)(Disc Two)[Ferguson] | | | | |
| 304A | Spirit CD - Valley Music Theatre (12/31/1970)(Disc Two)[AUDIO] [Ferguson] | | | | |
| 305 | Poster – Northern California Folk-Rock Festival [Ferguson] | Defs: FRE 901, 802, 401-02, 602. | | JUN 1 5 2016 | JUN 1 5 2016 |
| 306 | Spirit CD - The Forum (12/12/1970)[Ferguson] | | | | |
| 306A | Spirit CD - The Forum (12/12/1970) [AUDIO] [Ferguson] | | | | |
| 307 | Spirit CD - Mammoth Gardens (6/5/1970)[Ferguson] | | | | |
| 307A | Spirit CD - Mammoth Gardens (6/5/1970)[AUDIO][Ferguson] | | | | |
| 308 | Spirit CD - Cincinnati, Ohio (Unknown venue)(Late 1970)[Ferguson] | | | | |

{00255828;1}

31

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 200 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 16 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 252   Filed 06/14/16   Page 32 of 383   Page ID
#:6558

| | | | | | |
|---|---|---|---|---|---|
| 1<br>2<br>3<br>4 | 308A | Spirit CD - Cincinnati, Ohio (Unknown venue)(Late 1970)[AUDIO][ Ferguson] | | | |
| 5<br>6<br>7 | 309 | Spirit CD - Whisky A Go Go (11/1/1970)[Fer guson] | | | |
| 8<br>9 | 309A | Spirit CD - Whisky A Go Go (11/1/1970)[AU DIO][Ferguson] | | | |
| 10<br>11<br>12 | 310 | Spirit CD - Mammoth Gardens (2/1/1969)[Ferg uson] | JUN 1 5 2016 | | |
| 13<br>14<br>15 | 310A | Spirit CD - Mammoth Gardens (2/1/1969)[AU DIO][Ferguson] | | | |
| 16<br>17<br>18 | 311 | Spirit CD - Civic Center (Baltimore, MD)(10/3/1969 ) [Ferguson] | | | |
| 19<br>20<br>21<br>22 | 311A | Spirit CD - Civic Center (Baltimore, MD) (10/3/1969) [AUDIO][Fergu son] | | | |
| 23<br>24<br>25 | 312 | Spirit CD - Center Arena (Seattle, WA)(5/22/1970 ) [Ferguson] | JUN 1 4 2016 | JUN 1 4 2016 | |
| 26<br>27<br>28 | 312A | Spirit CD - Center Arena (Seattle, WA)(5/22/1970 ) | | | |

{00255828;1}

32

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 201 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 17 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 243   Filed 06/14/16   Page 33 of 383   Page ID
#:6559

| | | | | |
|---|---|---|---|---|
| | [AUDIO][Ferguson] | | | |
| 313 | "Rock Concert is Real Groovy – Rocky Mountain News Music Critic [Ferguson][D136] | | JUN 1 5 2016 | JUN 1 5 2016 |
| 314 | "Atlanta Pop- 'Greatest Musical Fair Ever'" – The Hurricane (7/11/1969)[Ferguson][D202] | | JUN 1 5 2016 | JUN 1 5 2016 |
| 315 | Atlanta Pop Festival Announcement [Ferguson][D125] | Defs: FRE 802. | | |
| 316 | Seattle Pop Festival Poster [Ferguson][D136] | Defs: FRE 802. | JUN 1 5 2016 | JUN 1 5 2016 |
| 317 | Sylvan Rock Flows Smoothly – Seattle Post Intelligencer (7/29/1969)[Ferguson][D117] | | | |
| 318 | Seattle Pop Festival Poster [Ferguson] | Defs: FRE 802. | JUN 1 5 2016 | JUN 1 5 2016 |
| 319 | Texas International Pop Festival Poster and News Articles [Ferguson] | Defs: FRE 802. | JUN 1 5 2016 | JUN 1 5 2016 |
| 320 | Spirit Poster for (12/26/1967)[Ferguson] | | JUN 1 4 2016 | JUN 1 5 2016 |
| 321 | Robert Plant Crash Article – Melody Maker (2/7/1970) | | JUN 1 5 2016 | JUN 1 5 2016 |

{00255828;1}

33

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 202 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 18 of 74   Page ID
#:7424
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 36 of 383   Page ID
#:6562

| | | | | |
|---|---|---|---|---|
| | (Spirit)(Disc 1)[Ferguson] | 403, 1002. | | |
| 338A | Time Circle (Spirit)(Disc 1) [AUDIO][Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 338.2 | Time Circle (Spirit)(Disc 2)[Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 338.2A | Time Circle (Spirit)(Disc 2) [AUDIO][Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 339 | Time Circle Notes [Ferguson][D137] | Defs: Defs. MIL # 3, FRE 802, 805. | | |
| 340 | All for One Contract [Ferguson] | Defs: FRE 401-02, 403. | | |
| 341 | Letter Canceling "All For One"Contract [Ferguson] | Defs: FRE 401-02, 403. | | |
| 342 | Subpoena to Jay Ferguson [Ferguson] | | | |
| 343 | CD Jay Ferguson Interview with Bruce Pates Summerland, CA (June 28, 2000) [Transcript] | Defs: FRE 602, 802, 401-02, 403. | | |
| 343A | CD Jay Ferguson Interview with Bruce Pates Summerland, CA (June 28, 2000)[AUDIO][Ferguson] | Defs: FRE 401-02. | | |
| 344 | [DVD] CD Image – 1st Atlanta Pop | 'JUN 1 5 2016' | | |

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 203 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 19 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 248   Filed 06/14/16   Page 38 of 383   Page ID
#:6564

| | | | | |
|---|---|---|---|---|
| 352 | Bruce Pates Document for Spirit Setlist from (2/1/1969)[Andes] | | 'JUN 1 5 2016  JUN 1 5 2016 | |
| 353 | "Stairway to Heaven: Song Remains Pretty Similar" by Vernon Silver [Andes] | Defs: Defs MIL # 2, # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 360 | Subpoena Bruce Pates [Pates] | | | |
| 361 | Letter to Ed Cassidy and Notice from Hollenbeck (6/30/1971)[Pates] | Defs: FRE 401-02. | | |
| 362 | Songwriter Contract (8/29/1967)[Pates] | Defs: this is Cassidy's songwriter contract, which is not relevant; FRE 401-02, 403, 404. | | |
| 363 | Vintage Guitar Magazine [Pates] | Defs: FRE 401-02. | | |
| 364 | Cds and List of Songs | Defs: as to 1st CD, Defs MIL # 3, FRE 401-02, 403, 802, 901; as to 5th CD, FRE 401-02, 403, 802, 901, 1002; as to 6th CD, Defs MIL # 2, # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1); as to 7th CD, FRE 802, 901. | | |
| 365 | Email on Texas Intl. Pop Festival Files from Francis to Peter [Pates] | Defs: FRE 401-02; to the extent plaintiff means to refer to the audio files transferred, see objections to Exh. 364. | | |
| 366 | Goldmine Magazine with Randy Interview [Pates] | Defs: FRE 802, 901, 401-02, 403, 404. | | |

{00255828;1}

38

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 204 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 20 of 74   Page ID
#:7656
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 39 of 383   Page ID
#:6565

| | | | | |
|---|---|---|---|---|
| 367 | Spirit CD – Civic Center Santa Monica, CA (9-29-1967)[Pates] | Defs: as to 1st CD, Defs MIL # 3, FRE 401-02, 403, 404, 802, 901, 1002. | | |
| 367A | Spirit CD – Civic Center Santa Monica, CA (9-29-1967)[AUDIO][Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 404, 802, 901, 1002. | | |
| 368 | Led Zeppelin CD – Whisky A Go Go (1/5/1969)[Pates] | Defs: FRE 401-02. | | |
| 368A | Led Zeppelin CD – Whisky A Go Go (1/5/1969)[AUDIO][Pates] | Defs: FRE 401-02. | | |
| 369 | Spirit CD – Live at the Troubadour (12-6-1975)[Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 802, 901, 1002. | | |
| 369A | Spirit CD – Live at the Troubadour (12-6-1975)[AUDIO][Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 802, 901, 1002. | | |
| 370 | Quinn Message to Bruce Pates [Pates] | Defs: FRE 401-02. | | |
| 371 | Quinn Message to Pates on (4-30-2002)[Pates] | Defs: FRE 401-02. | | |
| 372 | Quinn Message to Bruce Pates on Yahoo Groups [Pates] | Defs: FRE 401-02. | | |
| 373 | Spirit Album [Pates] | Defs: this deposition exhibit is a photocopy of the back of the album; to the extent plaintiff intends to refer to the audio recordings on the album, Defs MIL # 3, FRE 401-02, | JUN 1 5 2016 JUN 1 5 2016 | |

{00255828;1}

39

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 21 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 44 of 383   Page ID
#:6570

| | | | | |
|---|---|---|---|---|
| 412A | Communications Breakdown (Led Zeppelin)(1969)(Clip)[AUDIO] [Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 413A | Nervous Breakdown (Eddie Cochran)(1958)(Clip)[AUDIO] [Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 414A | Since I've Been Loving You (Led Zeppelin)(Clip) [AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 415A | Never (Moby Grape)(Clip)[AUDIO][Plant | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 450 | Stipulation to Order and Order for Substituted Judgment to Create and Fund Revocable Living Trust and Execute a Pour-Over Will (Probate Code Sec. 2 580(b)(5)) and (13)) [Skidmore] | 450- 0001 | JUN 1 7 2016 | JUN 1 7 2016 |
| 451 | Randy Craig Wolfe Trust [Skidmore] | | JUN 1 7 2016 | JUN 1 7 2016 |
| 452 | First Amendment to Randy Craig Wolfe Trust (February 26, | | JUN 1 7 2016 | JUN 1 7 2016 |

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 206 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 22 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 248   Filed 06/14/16   Page 45 of 383   Page ID
#:6571

| | | | | |
|---|---|---|---|---|
| | 2002)[Skidmore] | | | |
| 453 | Second Amendment to Randy Craig Wolfe Trust (February 26,2002)[Skidmore] | | JUN 1 7 2016 | JUN 1 7 2016 |
| 454 | Third Amendment to Randy Craig Wolfe Trust (February 26, 2002 [Skidmore] | | JUN 1 7 2016 | JUN 1 7 2016 |
| 455 | Fourth Amendment to Randy Craig Wolfe Trust (February 26, 2002)[Skidmore] | | JUN 1 7 2016 | JUN 1 7 2016 |
| 456 | Fifth Amendment to Randy Craig Wolfe Trust (February 26, 2002)[Skidmore] | | | |
| 457 | Certification of Trust Existence and Authority [Skidmore] | | | |
| 458 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 459 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 460 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 461 | Alice Cooper Interview [Skidmore] | Defs: FRE 401-02, 802. | | |

{00255828;1}                                        45

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 23 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 49 of 383   Page ID
#:6575

| | | | | |
|---|---|---|---|---|
| | Mall | | | |
| 500-1 | Chromatic Line [Stewart Exhibit] | | JUN 1 6 2016 | |
| 501-1 | Other Art Chromatic Line Comparison [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 502-1 | Harmony [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 503-1 | Ferrara Harmony Comparison [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 504 | Mathes Taurus Deposit Copy [Stewart Exhibit][2603.B] | | | |
| 505-1 | A Section Taurus and STH [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 506-1 | Taurus and STH Note Pairings [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 507 | Mathes [2603][2603.B][2603.C][2605] [Stewart Exhibit] | | | |
| 508 | Ferrara [2704][2705][2707] [Stewart Exhibit] | | | |
| 509-1 | Taurus and STH Pitch Collections (Graphed) [Stewart | | JUN 1 6 2016 | JUN 1 6 2016 |

{00255828;1}

49

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 208 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 24 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 269   Filed 06/14/16   Page 50 of 383   Page ID
#:6576

| | | | | | |
|---|---|---|---|---|---|
| | | Exhibit] | | | |
| | 510 | Taurus and STH Pitch Collections (Written) [Stewart Exhibit] | | | |
| | 511~1 | Taurus and STH Pitch Inventory (Quantative) [Stewart Exhibit] | | JUN 1 6 2016 | JUN 1 6 2016 |
| | 512 | Taurus and STH Form [Stewart Exhibit] | | | |
| | 513 | T Deposit Copy and STH Vocal Melody [Stewart Exhibit] | | | |
| | 514 | Wayne's World Film Information [Stewart Exhibit] | | | |
| | 514V | Wayne's World World Stairway Clip (with Overdub) | | | |
| | 514VV | Wayne's World World Stairway Clip (without Overdub) | | | |
| | 515 | "Phrase" (Harvard Dictionary of Music) [Stewart Exhibit] | | | |
| | 516 | Stewart To Catch a Shad Interlude Transcription | | | |
| | 517 | Defense Rebuttal Expert | Plt: FRE 401-402; Failure to Disclose | | |

{00255828;1}                                   50
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 209 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 25 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 241   Filed 06/14/16   Page 55 of 383   Page ID
#:6581

| | | | | | |
|---|---|---|---|---|---|
| 1 | 523 | Top Pop Albums 1955-1992 - Joel Whitburn | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | 524V | STH [Plaintiff Video Exhibit] | JUN 1 5 2016 | | |
| 5 | 525V | TAURUS DEPOSIT [Plaintiff Video Exhibit] | | JUN 1 5 2016 | JUN 1 5 2016 |
| 6 | | | | | |
| 7 | 527V | T DEPOSIT (Bass Clef) [Plaintiff Video Exhibit] | | JUN 1 5 2016 | JUN 1 6 2016 |
| 8 | | | | | |
| 9 | 529V | STH PAIRS [Plaintiff Video Exhibit] | | | |
| 10 | | | | | |
| 11 | 530V | T PAIRS [Plaintiff Video Exhibit] | | | |
| 12 | | | | | |
| 13 | 532V | TAURUS ALBUM [Plaintiff Video Exhibit] | JUN 1 5 2016 | | |
| 14 | | | | | |
| 15 | 534V | TAURUS (Treble Clef) [Plaintiff Video Exhibit] | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | 535 | Andes and Plant Photo | JUN 1 5 2016 | | |
| 19 | 536 | Spirit and Led Zeppelin Poster - Illinois Speedway | | | |
| 20 | | | | | |
| 21 | 537 | Randy California Pictures | | | |
| 22 | | | | | |
| 23 | 538 | 1968.12.30 - Led Zeppelin Gonazage University Concert, Spokane Washington | JUN 1 7 2016 | | |
| 24 | | | | | |
| 25 | | | | JUN 1 7 2016 | |
| 26 | | | | | |
| 27 | 538.1A | The Train Kept A Rollin | | | |
| 28 | 538.2A | I Can't Quit | | | |

{00255828;1}

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

55

01446

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 210 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 26 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 128 of 383   Page ID
#:6654

| | | | | |
|---|---|---|---|---|
| RHINO ENTERTAINMENT COMPANY, SUPER HYPE PUBLISHING, INC., WARNER MUSIC GROUP CORP., WARNER/CHAPPELL MUSIC, INC.. (EIDEL, MICHAEL) [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 09/22/2014) *(FILED 09/22//2014)* *(ECF No. 30)* | | | | |
| 3031 | AMENDED COMPLAINT against ATLANTIC RECORDING CORPORATION, JOHN PAUL JONES, JAMES PATRICK PAGE, ROBERT ANTHONY PLANT, RHINO ENTERTAINMENT COMPANY, SUPER HYPE PUBLISHING, INC., WARNER | Defs: Defs MIL # 1, # 2, # 3, # 5, # 8, #14; FRE 401-02, 403, 404, 407, 408, 701-05, 802 & 805; assertions as to substantial similarity barred by failure to timely provide expert disclosures as to relevant work (1967 transcription), FRCP 26(a), 26(e) & 37(c)(1). | **'JUN 1 7 2016** | JUN 1 7 2016 |

3031-00042

{00255828;1}                                128

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

**01447**

| | | | | |
|---|---|---|---|---|
| | | Ballroom listing (D000099) | | | |
| 2008 | Grande Ballroom listing (D000100) | FRE 402; 802 | | |
| 2009 | Concert Database Grande Ballroom listing (D000101) | FRE 402; 802 | | |
| 2010 | Grande Ballroom performance photo (D000103) | FRE 402; 802 | | |
| 2011 | Bootleg albums (D000104-06) and Headley Grange recordings on album | FRE 402; *2011-1,3,5,7* | *JUN 1 5 2016* | |
| 2012 | Denver 12/68 review (D000136) | FRE 402; 802 | | |
| 2013 | Spirit Time Circle album and liner notes (D000137-145) | FRE 402; 802; 901 | | |
| 2014 | Cert. of Registration of Copyright in Stairway to Heaven (D000178-80) | FRE 402; 802; 901 | *JUN 2 1 2016*  *JUN 2 1 2016* | |
| 2015 | Stip. to Order & Order 2/19/02 in Ventura Cty. Superior Court Case No. P72493 (D000203-07) | FRE 402; 802; 901 | | |
| 2016 | Petition for Substituted Judgment 1/14/02 in Ventura Cty. Superior Court | *PETITION, EXHIBIT A, LAST PAGE - CERTIFICATION* FRE 402; 802 | *JUN 1 7 2016*  *JUN 1 7 2016* | |

{00255828;1}                                      271

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 264   Filed 06/14/16   Page 272 of 383   Page ID
#:6798

| | | | | |
|---|---|---|---|---|
| | Case No. P72493 (D000208-36) | | | |
| 2017 | Ventura County Superior Court filings in P 76088 | FRE 402; 802 | | |
| 2018 | Ventura County Superior Court filings in P 76088 | FRE 402; 802 | | |
| 2019 | Rhino Re-release marketing materials (D000291-93) | FRE 402; 802 | | |
| 2020 | Billboard Top Albums 1955-2001 (D000559-61) | FRE 402; 802; 901 | | |
| 2021 | Stairway to Heaven deposit copy (D000562-65) | FRE 402; 802; 901 | | |
| 2022 | Chet Baker Bouree recording (D000134) | FRE 402; 802; 901 | | |
| 2023 | Chim Chiree recording (D000135) | FRE 402; 802; 901   *2023-A* | JUN 1 6 2016 | JUN 1 6 2016 |
| 2024 | To Catch A Shad recording, The Modern Folk Quartet | FRE 402; 802; 901 | | |
| 2025 | Led Zeppelin DVD 2003 | FRE 402; 802; 901 | | |
| 2026 | Led Zeppelin IV documents (D000608-641) | FRE 402; 802; 901 | | |
| 2027 | WB Music-Flames of Albion 2008 Admin Agreement (D000642-54) | FRE 402; 702; 802; 901   *6000640* | JUN 1 5 2016 | |

{00255828;1}

272

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| 2035 | Rhino-Atlantic P&L (D040419) (Subject to update) | FRE 402; 702; 802; 901 | | |
| 2036 | *Record-side accounting statements (D005047-36251) | FRE 402; 702; 802; 901 | | |
| 2037 | Summary as to Individuals (D040451-55) (Subject to update) | FRE 402; 702; 802; 901 | | |
| 2038 | *Alfred accounting statements D036252-893) | FRE 402; 702; 802; 901 | | |
| 2039 | *ASCAP accounting statements to J Page (D036894-38062) | FRE 402; 702; 802; 901 | | |
| 2040 | *ASCAP accounting statements to R Plant (D038063-39242) | FRE 402; 702; 802; 901 | | |
| 2041 | *Reports of Directors-Flames of Albion (D039243-281) | pgs 39243; 39247; 39266; 39269; 39266; 39265; 39289; 39321, 39296 | JUN 16 2016  JUN 21 2016 | |
| 2042 | *Reports of Directors-Superhype Tapes (D039282-321)28 | FRE 402; 702; 802; 901 | | |
| 2043 | *RAL accounting statements to J Page/Classicberry (D039322-434) | FRE 402; 702; 802; 901 | | |

{00255828;1}

274

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | | |
|---|---|---|---|---|---|
| 2044 | *RAL accounting statements to R Plant/Trolcharm (D039435- 562) | FRE 402; 702; 802; 901 | | | |
| 2045 | *RAL accounting statements to J Baldwin/JPJ Comm'ns (D039563-687) | FRE 402; 702; 802; 901 | | | |
| 2046 | *SoundExchange accounting statements (D039688-401-0291) | FRE 402; 702; 802; 901 | | | |
| 2047 | *Letter of direction 11/1/68 (D0404192) | FRE 402; 702; 802; 901 | | | |
| 2048 | *Letter agreement re letter of direction 12/4/1969 (D0404193) | FRE 402; 702; 802; 901 | | | |
| 2049 | Rhino Agreement 7/1/12 (D0401-0294-237) | FRE 402; 702; 802; 901 | | | |
| 2050 | Rhino letter agreement 7/1/12 (D040238-41) | FRE 402; 702; 802; 901 | | | |
| 2051 | *Recording Contract 11/1/68 (D040242-259) | FRE 402; 702; 802; 901   bD40241 | 'JUN 1 5 2016 | | |
| 2052 | *Recording Contract amendment 12/4/69 (D040260-62) | FRE 402; 702; 802; 901 | | | |
| 2053 | *Confirming letter 12/4/69 (D040263) | FRE 402; 702; 802; 901 | | | |
| 2054 | Master | FRE 402; 702; 802; 901 | | | |

{00255828;1}

275

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | container labels (D040264-65) | | | |
| 2055 | 1969 itineraries (D040396-99) | FRE 402; 802; 901 | | |
| 2056 | Total Spins info 2011-15 (D040400-15) (Subject to update) | FRE 402; 702; 802; 901 | | |
| 2057 | Documents re theft of J Page tapes (D040421-41) | FRE 402; 802; 901 | | |
| 2058 | Taurus 1967 transcription (D040443) [Stewart] | | JUN 1 5 2016 | JUN 1 5 2016 |
| 2059 | Partial summary of Led Zeppelin awards/recognit ion (D040444-50) | FRE 402; 802; 901 | | |
| 2060 | Superior Court Order approving Wolfe-Hollenbeck Exclusive Songwriter's & Composer's Agreement 11/20/67 | FRE 402; 802; 901; improper changing of copyright subject of litigation; failure to disclose | JUN 1 5 2016 | — |
| 2061 | Corrections to registrations re Taurus (HOA 000024-25) | FRE 402; 802; 901; improper changing of copyright subject of litigation; failure to disclose | | |
| 2062 | Corrections to registrations re Taurus (HOA 000038-41) | FRE 402; 802; 901; improper changing of copyright subject of litigation; failure to disclose | | |
| 2063 | Chris Farlowe & The Thunderbirds album and Spring Is Near recording (D40416-17) | FRE 402; 702; 802; 901 | | |

{00255828;1}

276

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

01452

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 32 of 74   Page ID
#:7068
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 277 of 383   Page ID
#:6803

| | | | | | |
|---|---|---|---|---|---|
| 2064 | Randy Craig Wolfe Trust Agreement (deposition exhibit 451) | FRE 402 | | | |
| 2065 | First Amendment to Trust Agreement (deposition exhibit 452) | FRE 402 | | | |
| 2066 | Second Amendment to Trust Agreement (deposition exhibit453) | FRE 402 | | | |
| 2067 | Third Amendment to Trust Agreement (deposition exhibit 454) | FRE 402 | | | |
| 2068 | Fourth Amendment to Trust Agreement (deposition exhibit 455) | FRE 402 | | | |
| 2069 | Fifth Amendment to Trust Agreement (deposition exhibit 456) | FRE 402 | | | |
| 2070 | Exclusive Songwriter's and Composer's Agreement – Wolfe/Hollenbeck 8/29/67 | FRE 402 | JUN 1 7 2016<br>JUN 1 7 2016 | | |
| 2071 | Ode Records Recording Contract 8/29/67 | FRE 402; 802; 901 | | | |
| 2072 | Malofiy letter to Adler 7/29/14 | FRE 402; | | | |

{00255828;1}                                277

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | performed 2/1/69 (deposition exhibit 352) | | | |
| 2088 | Spirit performance Texas Pop Festival https://www.youtube.com/watch?v=1q80pFUe3Es | FRE 402; 802; 901 | | |
| 2089 | YouTube listing of songs Spirit performed at Texas Pop Festival | FRE 402; 802; 901 | | |
| 2090 | Plaintiff's Response to second set of Interrogatories | FRE 402; | | |
| 2091 | Defendants' second Request for Admissions | FRE 402; | | |
| 2092 | Dr. Ferrara initial report and attachments/visual & audio exhibits | FRE 402; 703; 802; 901 | 'JUN 1 7 2016 | JUN 1 7 2016 |
| 2093 | Dr. Ferrara rebuttal report and attachments/visual & audio exhibits | FRE 402; 703; 802; 901 | | |
| 2094 | R. Mathes initial report and attachments/visual & audio exhibits | FRE 402; 703; 802; 901 | | |
| 2095 | R. Mathes audio exhibit – Kennedy Center performance identified in | FRE 402; 703; 802; 901 | | |

{00255828;1}

279

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | initial report | | | |
| 2096 | R. Mathes rebuttal report and attachments/visual & audio exhibits | FRE 402; 703; 802; 901 | | |
| 2097 | Led Zeppelin album (1968) | FRE 402; | | |
| 2098 | Led Zeppelin II album | FRE 402; | | |
| 2099 | Led Zeppelin III album | FRE 402; | | |
| 2100 | Led Zeppelin IV Album | FRE 402; | | |
| 2101 | Houses of the Holy album | FRE 402; | | |
| 2102 | Physical Graffiti album | FRE 402; | | |
| 2103 | Presence album | FRE 402; | | |
| 2104 | In Through the Out Door album | FRE 402; | | |
| 2105 | Coda album | FRE 402; | | |
| 2106 | Heart Kennedy Center performance of Stairway to Heaven | FRE 402; 802; 901 | | |
| 2107A | Mothership (CD) | FRE 402; | | |
| 2017V | Mothership (DVD) | FRE 402; | | |
| 2108 | How the West Was Won album | FRE 402; | | |
| 2109 | Song Remains the Same video | FRE 402; | | |
| 2110 | Celebration Day video | FRE 402; | | |
| 2111 | Celebration Day CD | FRE 402; | | |
| 2112 | *May 23-24, 1969 Kinetic, Chicago | FRE 402; 802; 901; failure to disclose | 'JUN 1 5 2016 | |

{00255828;1}                                        280
                        PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 35 of 74   Page ID
#:7071
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 281 of 383   Page ID
#:6807

| | | Performance | | | |
|---|---|---|---|---|---|
| | 2113 | Spirit "Texas Pop Festival" 9-1-69 CD and list of songs (from Exh. 364) | FRE 402; 802; 901; failure to disclose | | |
| | 2114 | Spirit "Hornsey Town Hall" 2-3-70 CD and list of songs (from Exh. 364) | FRE 402; 802; 901; failure to disclose   JUN 1 5 2016 | 2114-1 | JUN 1 5 2016 |
| | 2058A S | Taurus Deposit Copy (D040443) [Stewart] | | | |
| | 2058-1 | Taurus Deposit Copy With Handwritten Notes [Stewart] | | | |
| | 2092 - B | Dr. Ferrara's Transcription of Stairway to Heaven [Stewart] [Johnson] | | | |
| | 2115 | Curriculum Vitae of Alexander Stewart [Stewart] | | | |
| | 2116 | Subpeona [Stewart] | | | |
| | 2117 | Stairway to Heaven Sheet Music [Stewart] | | | |
| | 2118 | Court Order [Stewart] | | | |
| | 2119 | 2016.04.30 Expert Report - Dr. Stewart [Stewart] | | | |
| | 2200 | Definition of "Verse" from The Harvard Dictionary of Music [Stewart] | | | |

{00255828;1}

281

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 36 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 285 of 383   Page ID
#:6811

| | | | | | |
|---|---|---|---|---|---|
| 1 | | Deposition in a Civil Trial [Ferrara] | | | |
| 2 | | | | | |
| 3 | 2701 | Invoices [Ferrara] | | | |
| 4 | 2702 | Document entitled Jazzology [Ferrara] | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | 2703 | Document entitled Ferrara Cases [Ferrara] | | | |
| 8 | 2704 | Taurus Deposit Copy [Ferrara] | | JUN 1 6 2016 | JUN 1 6 2016 |
| 9 | | | | | |
| 10 | 2705 | Musical Example 1 [Ferrara] | | JUN 1 7 2016 | JUN 1 7 2016 |
| 11 | 2706 | Expert Report [Ferrara] | | | |
| 12 | 2707 | Transcription [Ferrara] | | | |
| 13 | | | | | |
| 14 | 2708 | Stairway to Heaven deposit copy (D000562-65) [Ferrara] | | | ✓ JUN 1 6 2016 |
| 15 | | | | | |
| 16 | 2709 | Policy, Academic Integrity for Students at NYU [Ferrara] | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | 146 | Robert Plant Road Crash [D146] [Plant] [Ware] | | | |
| 20 | | | | | |
| 21 | 3218 | Order Granting Plaintiff's Motion for Leave to Depose Newly Discovered Witness [Ware] | | | |
| 22 | | | | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | 2950 | List of Artists Playing at Mothers Club [Ware] | | JUN 1 5 2016 | JUN 1 5 2016 |
| 26 | | | | | |
| 27 | | | | | |
| 28 | 2951 | Copy of Poster of Spirit | | JUN 1 6 2016 | |

{00255828;1}                                        285

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 37 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 286 of 383   Page ID
#:6812
#:6073

| | | | | |
|---|---|---|---|---|
| | Playing at Mothers Club [Ware] | | | |
| 2952 | Billboard Charts [Ware] | JUN 1 6 2016 | | |
| 2953 | Billboard Charts [Ware] | JUN 1 6 2016 | | |
| 2954 | Email from Mr. Ware to Mr. Skidmore [Ware] | JUN 1 5 2016 | JUN 1 5 2016 | |
| 2955 | Post Downloaded From Website [Ware] | JUN 1 5 2016 | JUN 1 5 2016 | |
| | **Additional Exhibits added by Plaintiff** | | | |
| | **D000001-601** | | | |
| 100001 | Session Man CD Cover and Liner Notes | | | |
| 100002 | Session Man CD Cover and Liner Notes | Defs: failure to identify the exhibit by a unique number, making it unclear what plaintiff refers to; apparently duplicative of exhibit above; objections reserved. | | |
| 100003 | Session Man CD Cover and Liner Notes | Defs: failure to identify the exhibit by a unique number, making it unclear what plaintiff refers to; apparently duplicative of exhibit above; objections reserved. | | |
| 100004 | Session Man CD Cover and Liner Notes | Defs: failure to identify the exhibit by a unique number, aking it unclear what plaintiff refers to; apparently duplicative of exhibit above; objections reserved. | | |
| 100005 | Session Man CD Cover and Liner Notes | Defs: failure to identify the exhibit by a unique number, making it unclear what plaintiff refers to; apparently duplicative of exhibit above; objections reserved. | | |
| 100006 | Session Man CD Cover and Liner Notes | Defs: failure to identify the exhibit by a unique number, making it unclear what plaintiff refers to; apparently duplicative of exhibit | | |

{00255828;1}

286

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 222 of 300

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 38 of 74   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 304 of 383   Page ID
#:6830

| | | | | |
|---|---|---|---|---|
| 100153 | "My Back Pages" Interview with Jimmy Page | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100154 | "My Back Pages" Interview with Jimmy Page | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100155 | "My Back Pages" Interview with Jimmy Page | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100156 | "My Back Pages" Interview with Jimmy Page | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100157 | "My Back Pages" Interview with Jimmy Page | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100158 | News Article Speaking About Spirit in 1969 | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | JUN 1 5 2016 | |
| 100159 | News Article on how Jimmy Saw Spirit Shows | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

{00255828;1}                                304
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR Document 242 Filed 06/14/16 Page 305 of 363 Page ID #:6831

| | | | | |
|---|---|---|---|---|
| | | objections reserved. | | |
| 100160 | D000160 – ZigZag JP Interview, Spirit & Kaleidoscope | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100161 | BBC Article on Jimmy Allegedly Wrote Stairway | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100162 | BBC Article on Jimmy Allegedly Wrote Stairway | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100163 | BBC Article on Jimmy Allegedly Wrote Stairway | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100164 | D000164 – BBC Arms of Atlas – Stairway | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 100164 T | Transcript of BBC Arms of Atlas - Stairway | | | |
| 100165 | D000165 – RFP 5,35,37,67-69,81 – ZigZag – Stairway To Heaven | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as | JUN 1 6 2016  100165-AUDIO | |

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | | |
|---|---|---|---|---|---|
| 1<br>2<br>3<br>4 | 130904<br>-<br>134194 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 5<br>6<br>7<br>8 | 134195<br>-<br>135849 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 9<br>10<br>11<br>12 | 135850<br>-<br>136251 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 13<br>14<br>15<br>16 | 136252<br>-<br>136893 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 17<br>18<br>19<br>20 | 136894<br>-<br>138062 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 21<br>22<br>23<br>24 | 138063<br>-<br>139242 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 25<br>26<br>27<br>28 | 139243<br>-<br>139321 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | UNDER SEAL<br>b 039246<br>b 039247<br>b 039289<br>b 039321<br>b 039256<br>b 039259<br>b 039266 | 06-16-16 |

{00255828;1}                                                         379

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 41 of 74   Page ID
#:7077
Case 2:15-cv-03462-RGK-AGR   Document 242   Filed 06/14/16   Page 380 of 383   Page ID
#:6906

| | | | | | |
|---|---|---|---|---|---|
| | Statements | objections reserved. | | | |
| | 139322 - 139687 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 139688 - 140191 | Summary of Mechanical Royalties, Publishing Receipts, etc., Directors Statements | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 140192 - 140193 | Letters from 1968 to 69 concerning who to make payments to | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 14194- 140241 | Agreement on Exploitation from July 2012 | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | ꝑ 040194  JUN 1 5 2016 | |
| | 140242 - 140263 | 1968 Letter Agreement | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 140264 - 140265 | Covers of Masters | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

{00255828;1}                                                 380
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Road
Media, PA 19063
T: (215) 500-1000; F: (215) 500-1005
E: francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T: (310) 557-9200; F: (310) 557-0224
E: gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST, | Case No. 15-cv-03462 RGK (AGRx) |
| Plaintiff, | Hon. R. Gary Klausner |
| v. | **JOINT WITNESS LIST** |
| LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, | Pre-trial Conf.:  April 25, 2016<br>Trial Date:        May 10, 2016 |
| Defendants. | |

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/16   Page 2 of 36   Page ID #:4562
Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 43 of 74   Page ID
#:7079

## JOINT WITNESS LIST

By submitting this witness list jointly, and including by providing an estimate of cross-examination time, no party agrees with another party's ability to call the witness or that the testimony described is admissible and not precluded. All objections to the calling of identified witnesses, to the use of their depositions in lieu of live testimony and to the testimony described are reserved and, in some cases, the subject of pending motions in limine.

| Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|
| **WITNESSES PLAINTIFF INTENDS TO CALL** | | |
| 1 Michael Skidmore c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000 **JUN 1 6 2016** | PLAINTIFF – Familiarity with Spirit and Wolfe family and as music writer; History as Trustee; Ownership of Randy Wolfe's intellectual property, including Taurus; Purpose of the Trust; Sales of Spirit's albums, including eponymous Spirit album with Taurus; Randy Wolfe's statements regarding Taurus and Stairway to Heaven, especially as it relates to Wolfe's state of mind, credit, and filing suit; Randy Wolfe's consultation of lawyers and legal issues about Stairway and Taurus, including that Wolfe though suit was barred by statute of limitations and his finances; | Direct: 2 hours Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 2 hours, if not, .75 hours |

2

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | Spirit performance tapes at the Ash Grove in 1967, and acquisition from Barry Hansen; | |
| 4 | | | |
| 5 | | General knowledge as music writer that Taurus and Stairway sound similar; | |
| 6 | | | |
| 7 | | Facts in Plaintiff's Complaint. | |
| 8 | | Facts in Defendants' Answers. | |
| 9 | | The creation in or about 1966-67 of the musical composition *Taurus* and ownership of the copyright in that musical composition. | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | Led Zeppelin's access to *Taurus*. | |
| 15 | | The technical audio creation, recordation, instrumentation, mixing, and mastering of *Taurus*. | |
| 16 | | | |
| 17 | | | |
| 18 | | Lack of independent creation and development of *Stairway to Heaven*. | |
| 19 | | | |
| 20 | | Communications and contact with Plaintiff, the band members of Spirit, Sprit, and/or his representatives. | |
| 21 | | | |
| 22 | | | |
| 23 | | To the extent this testimony overlaps that of another witness it does so to provide corroboration and weight to Plaintiff's positions regarding the jury's decision regarding disputed facts. | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | *See Declaration.* | |

3

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 229 of 300

Case 2:15-cv-03462-RGK-A◯ Document 198 Filed 04/24/16 ◯ge 4 of 36 Page ID #:4564
Case 2:15-cv-03462-RGK-AGR Document 272 Filed 06/23/16 Page 45 of 74 Page ID #:7081

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 2 | Mark Andes c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000  JUN 1 5 2016 | FACT WITNESS - Musical background and history; Background with Randy Wolfe and Spirit; When Taurus was composed, the composition of Taurus, production of Taurus, and recording of Taurus; Contracts signed by Spirit's members; When, where, and frequency Taurus was played in concert; Spirit playing with Led Zeppelin, especially in Denver, CO and several festivals; Content of Spirit's albums; Interactions between band members of Spirit and Led Zeppelin, including at concerts and in social settings most notably the Atlanta Pop Festival and at Mother's Club; Introduction to Led Zeppelin by Toby Roberts; Led Zeppelin playing Spirit songs; Communications and contact with Plaintiff, the band members of | Direct: 3 hours Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 2.5 hours, if not, 1.5 hours |

4

**01466**

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | Spirit, Sprit, and/or his representatives. To the extent this testimony overlaps that of another witness it does so to provide corroboration and weight to Plaintiff's allegations of the factual disputes. Facts in Plaintiff's Complaint. Facts in Defendants' Answers. The creation in or about 1966-67 of the musical composition *Taurus* and ownership of the copyright in that musical composition. Led Zeppelin's access to *Taurus*. Led Zeppelin as the opening act for Spirit. Defendants' admiration and familiarity with Spirit's music, including the song *Taurus*. Access of the authors of the musical composition *Stairway to Heaven* to the musical composition *Taurus*. Substantial Similarity | |

Line numbers: 1–28

5

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 231 of 300

Case 2:15-cv-03462-RGK-A⌒⌒ Document 198 Filed 04/24/16 ⌒ge 6 of 36 Page ID #:4566
Case 2:15-cv-03462-RGK-AGR Document 272 Filed 06/23/16 Page 47 of 74 Page ID #:7083

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | between *Taurus* and *Stairway to Heaven*. The technical audio creation, recordation, instrumentation, mixing, and mastering of *Taurus*. Lack of independent creation and development of *Stairway to Heaven. See Declaration.* | |
| 3 | Jay Ferguson 2865 Torito Road Santa Barbara, CA 93108 (805) 969-0235 | FACT WITNESS Musical background and history; Background with Randy Wolfe and Spirit; When Taurus was composed, the composition of Taurus, production of Taurus, and recording of Taurus; Contracts signed by Spirit's members; When, where, and frequency Taurus was played in concert; Spirit playing with Led Zeppelin, especially in Denver, CO and several festivals; Content of Spirit's albums; Interactions between band members of Spirit and Led Zeppelin, including at concerts and in social settings most notably the Atlanta Pop Festival and at Mother's Club; Composition of and familiarity with Fresh | Direct: 3 hours  Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 2 hours, if not, 1 hour |

6

**01468**

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/16   Page 7 of 36   Page ID #:4567
Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 48 of 74   Page ID #:7084

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | Garbage; | |
| | | Led Zeppelin playing | |
| 4 | | Spirit songs; | |
| | | Communications and | |
| 5 | | contact with Plaintiff, | |
| | | the band members of | |
| 6 | | Spirit, Sprit, and/or his | |
| | | representatives. See | |
| 7 | | Declaration. | |
| | | To the extent this | |
| 8 | | testimony overlaps that | |
| | | of another witness it | |
| 9 | | does so to provide | |
| | | corroboration and | |
| 10 | | weight to Plaintiff's | |
| | | positions regarding the | |
| 11 | | jury's decision | |
| | | regarding disputed | |
| 12 | | facts. | |
| | | Facts in Plaintiff's | |
| 13 | | Complaint. | |
| | | Facts in Defendants' | |
| 14 | | Answers. | |
| | | The creation in or | |
| 15 | | about 1966-67 of | |
| | | the musical | |
| 16 | | composition | |
| | | *Taurus* and | |
| 17 | | ownership of the | |
| | | copyright in that | |
| 18 | | musical | |
| | | composition. | |
| 19 | | Led Zeppelin's | |
| 20 | | access to *Taurus*. | |
| | | Led Zeppelin as the | |
| 21 | | opening act for Spirit. | |
| | | Defendants' admiration | |
| 22 | | and familiarity with | |
| | | Spirit's music, | |
| 23 | | including the song | |
| 24 | | *Taurus*. | |
| | | Access of the authors of | |
| 25 | | the musical composition | |
| | | *Stairway to Heaven* to | |
| 26 | | the musical composition | |
| 27 | | *Taurus*. | |
| | | Substantial Similarity | |
| 28 | | between *Taurus* and | |

7

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 233 of 300

Case 2:15-cv-03462-RGK-A      Document 198   Filed 04/24/16   ge 8 of 36   Page ID #:4568
Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 49 of 74   Page ID
#:7085

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | *Stairway to Heaven.* The technical audio creation, recordation, instrumentation, mixing, and mastering of *Taurus.* Lack of independent creation and development of *Stairway to Heaven.* Communications and contact with Randy and band members of Spirit, *See Declaration.* | |
| 4 | Bruce Pates c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000 'JUN 1 5 2016 | FACT WITNESS - Familiarity with Spirit, Wolfe and friendship with Spirit's members and Wolfe's family members; Purpose of Trust; Ownership of Wolfe's copyrights, including Taurus; Role as band's historian and roadie; Randy Wolfe's statements regarding Taurus and Stairway to Heaven, especially as it relates to Wolfe's state of mind, credit, and filing suit; Randy Wolfe's consultation of lawyers and legal issues about Stairway and Taurus, including that Wolfe though suit was barred by statute of limitations and his finances; Communications with Tracy Longo, especially about Randy Wolfe considering lawsuit against Led Zeppelin; Where and when | Direct: 2 hours Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 1 hour |

8

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 234 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/16   Page 9 of 36   Page ID #:4569
Case 2:15-cv-03462-RGK-AGR   Document 272   Filed 06/23/16   Page 50 of 74   Page ID #:7086

| Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|
| | Taurus was played; Concerts Spirit and Led Zeppelin played together; Knowledge of similarities between Taurus and Stairway to Heaven; To the extent this testimony overlaps that of another witness it does so to provide corroboration and weight to Plaintiff's positions regarding the jury's decision regarding disputed facts. *See Declaration.* | |

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 235 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/17   Page 10 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 207   Filed 06/23/16   Page 51 of 74   Page ID
#:7087

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| 1 2 | | | | |
| 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 | 5 | Tracy Longo<br>Guitar Tech Corner<br>1822 E. Main Street<br>Ventura, CA 93001<br>(805) 647-7221 | FACT WITNESS - Randy Wolfe's guitar tech who has personal knowledge relating to Wolfe's guitars and guitar set-up historically. Additionally, he has knowledge regarding Wolfe wanting to file suit and being in the process to file suit against Led Zeppelin for infringing his song Taurus, including Wolfe's state of mind regarding his rights in Taurus, suing Led Zeppelin over Taurus, and/or whether Wolfe thought Led Zeppelin lifted Taurus. He also has knowledge of Wolfe's interactions with Jimmy Page; Page asking Randy who to play Taurus, and Page interacting with Wolfe. *See Declaration.* | Direct: 45 min<br><br>Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 45 min |
| 19 20 21 22 23 24 25 26 27 28 | 6 | Andrea (Wolfe) Baum<br>c/o Glen Kulik, Esq.<br>5164 Paanau Road<br>Koloa, Hawaii 96756 | FACT WITNESS – Knowledge regarding her brother Randy Wolfe. His guitar skills and ability at a young age, including playing with Jimmy Hendrix in NYC, starting the band Spirit. Necessary background, shows Randy Wolfe was legitimate musician and prodigy. She also has knowledge regarding writing the song Taurus, for who it was written, when, and why. This goes to ownership. | Direct: 30 min<br><br>Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 30 min, if not, 10 min |

10

01472

Case 2:15-cv-03462-RGK- GR   Document 198   Filed 04/24/1   Page 11 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 2671   Filed 06/23/16   Page 52 of 74   Page ID
#:7088

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | Success of Spirit and the first album Taurus being played live in concert in late 1960s and early 1970s, especially in early-to-mid 1967. Goes to ownership. Additionally, information about the trust and formation. *See Declaration.* | |
| 7 | Janet Wolfe 2885 Pierpont Boulevard Ventura, CA 93001 JUN 1 4 2016 | FACT WITNESS - Knowledge regarding her brother Randy Wolfe. His guitar skills and ability at a young age, including playing with Jimmy Hendrix in NYC, starting the band Spirit. She also has knowledge regarding writing the song Taurus, for who it was written, when, and why. Goes to ownership. Success of Spirit and the first album. Taurus being played live in concert in late 1960s and early 1970s, especially in early-to-mid 1967. Wolfe's statements and state of mind regarding Wolfe's view of Led Zeppelin lifting Taurus, and inquiries to Randy Wolfe about Taurus and Stairway to Heaven. Goes to ownership, abandonment, and waiver. Knowledge of similarity of Taurus and Stairway. Additionally, information about the Trust and formation. *See Declaration.* | Direct: 30 min Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 30 min, if not, 10 min |

11

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | 8 | Marla (Wolfe) Randall 6120 Sutter Ave Ventura, CA 93003 | FACT WITNESS - Knowledge regarding her brother Randy Wolfe. His guitar skills and ability at a young age, including playing with Jimmy Hendrix in NYC, starting the band Spirit. She also has knowledge regarding writing the song Taurus, for who it was written, when, and why. Goes to ownership. Success of Spirit and the first album. Taurus being played live in concert in late 1960s and early 1970s. Additionally, information about the Trust and formation and operation. | Direct: 30 min Cross: described testimony includes testimony subject to pending motion in limine; if testimony permitted, 30 min, if not, 10 min |
| | 9 | Linda Mensch, Esq. Bryan Cave, LLP 161 N. Clark Street Suite 4300 Chicago, IL 60601 (312) 602-5049 | FACT WITNESS (ATTORNEY) - Knowledge that Randy Wolfe actively sought her legal advice and had an in person meeting with her in the 1990's to legally file suit against Led Zeppelin for infringing his song Taurus. Information related to why suit wasn't brought at that time, including the legal landscape, statute of limitations, and finances. Goes to ownership, abandonment, and waiver. *See Declaration.* | Direct: 30 min Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 20 min |
| | 10 | David Waterbury 12116 Hartsook Street | FACT WITNESS – Knowledge regarding | Direct: 40 min |

12

**01474**

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 238 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1?   Page 13 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 273  Filed 06/23/16   Page 54 of 74   Page ID
#:7090
#:7573

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | Valley Village, CA 91607 (818) 505-8080 | Randy Wolfe confronting Jimmy Page in the UK after an after concert party. Jimmy Page's comments to Wolfe in regards to the taking of Taurus. Wolfe's state of mind regarding Taurus and Stairway to Heaven. Wolfe being upset, financially broke, and unable to file suit. Concerns ownership, abandonment, and. waiver. *See Declaration.* | Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 30 min |
| 11 | Larry Knight 7438 Shoshony Avenue Van Nuys, CA 91406 (818) 344-5515   JUN 1 6 2016 | FACT WITNESS – Bass player for Spirit after the initial lineup. Knowledge regarding the concert at the Rainbow (UK) where there were 7 encores. After concert party where Jimmy Page and Randy Wolfe met and had discussion. Page complimenting Knight and the band Spirit on their performance and inquiring what they were doing. Establishes knowledge and intent for contributory and vicarious infringement, as well as rebuts Page's denials he barely knew Spirit and does not remember meeting Wolfe. Goes directly to credibility of Page. *See Declaration.* | Direct: 30 min   Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 30 min |
| 12 | Paul Franklin 2235 Compote Circle Palmdale, CA 93551 | FACT WITNESS – Knowledge regarding Randy Wolfe | Direct: 30 min   Cross: witness and |

13

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1   Page 14 of 36   Page ID
#2474
Case 2:15-cv-03462-RGK-AGR   Document 221   Filed 06/23/16   Page 55 of 74   Page ID
#:7091

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | (213) 800-3505 | confronting Jimmy Page in the UK after an after concert party—meeting confirmed by eyewitness Larry Knight. Jimmy Page's comments to Wolfe in regards to the taking of Taurus. Wolfe being upset, financially broke, and unable to file suit. Goes to state of mind, ownership, abandonment, and waiver. Additionally, Page admitting to lifting Taurus for Stairway to Heaven. *See Declaration.* | described testimony is subject to pending motion in limine; if testimony permitted, 30 min |
| 13 | Barry Hansen 6102 Pimenta Avenue Lakewood, CA 90712 (562) 480-9820 | FACT WITNESS - Knowledge of tapes of Taurus from 1966-68. Custody and control of tapes. Confirmation of emails providing these original tapes of Taurus to Michael Skidmore. Authenticity of tapes, when they were created, and how kept and eventually provided to Michael Skidmore. Confirmation Spirit playing Taurus live prior to August 29, 1967 contract. *See Declaration.* | Direct: 45 min Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 45 min |

14

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1   Page 15 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 275   Filed 06/23/16   Page 56 of 74   Page ID
#:7092

|  | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | 14 | Michael R. Lee, Ph.D.<br>4134 S. Eudora Street<br>Englewood, CO 80110<br>(303) 919-0579 | FACT WITNESS – Knowledge that Randy Wolfe actively sought her legal advice and had an in person meeting with her in the 1990's to legally file suit against Led Zeppelin for infringing his song Taurus. Information related to why suit wasn't brought at that time, including the legal landscape, statute of limitation, and financial reasons. Also knows that Spirit album was widely sold and distributed. Goes to rebuttal on ownership, abandonment, waiver, and widespread distribution of song. *See Declaration.* | Direct: 30 min<br><br>Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 30 min |
| | 15 | Robert Lee, Esq.<br>4134 S. Eudora Street<br>Englewood, CO 80110<br>(303) 919-0579 | FACT WITNESS (ATTORNEY) - Knowledge that Randy Wolfe actively sought legal advice and understood that statute of limitations barred suit. Information related to why suit wasn't brought at that time, including the legal landscape, statute of limitation, and financial reasons. Goes to rebuttal on ownership, abandonment, waiver, and widespread distribution of song. *See Declaration.* | Direct: 30 min<br><br>Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 30 min |
| | 16 | Alexander Stewart, Ph.D. c/o Francis Malofiy, Esq. Francis Alexander, LLC | EXPERT WITNESS – This witness will testify on the subject matter of | Direct: 4 hours<br><br>Cross: witness and |

15

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 241 of 300

Case 2:15-cv-03462-RGK-GR   Document 198   Filed 04/24/1    Page 16 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 06/23/16   Page 57 of 74   Page ID
#:7093
#:4576

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | 280 N. Providence Road Media, PA 19063 (215) 500-1000  **JUN 1 6 2016** | musicology, music transcription, substantial & strikingly similarity, and comparatively analyze *Taurus* and *Stairway to Heaven*. A written report prepared and signed by Dr. Stewart is was produced in discovery. Additionally a Declaration containing Rebuttal was submitted to the Court. The Report, Declaration, Audio Recordings and Transcription, and materials relied upon in coming to his opinion are incorporated by reference and are intended to be used at time of trial. *See Report, Declaration, Supplemental Declaration.* | described testimony is subject to pending motion in limine; if testimony permitted, 4 hours |
| 17 | Erik Johnson c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000 | EXPERT WITNESS – Substantial similarity and striking similarity. This witness will testify as a Master Musician/Session Musician (Multi-Instrumentalist), Professor of Music, and musicologist who listened to, analyzed, transcribed, and performed on the faithful re-recordings of *Taurus* and *Stairway to Heaven*. It is expected that Mr. Johnson will perform at time of trial and discuss the | Direct: 2 hours  Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 2 hours |

16

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 242 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1   Page 17 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 277   Filed 06/23/16   Page 58 of 74   Page ID
#:7094

| Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|
| | substantial similarity in the compositional elements as articulated on the piano. A written report prepared and signed by Mr. Johnson is was produced in discovery. Additionally a Declaration containing Rebuttal was submitted to the Court. The Report, Declaration, Audio Recordings and Transcription, and materials relied upon in coming to his opinion are incorporated by reference and are intended to be used at time of trial. *See Report, Declaration, & Supplemental Declaration* | |

17

**01479**

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| 1 2 | | | | |
| 3 4 5 6 7 8 9 10 11 12 13 14 15 16 | 18 | Brian Bricklin c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000 | EXPERT WITNESS – This witness will testify on the subject matter of music production, audio engineering, songwriting and songwriting process, and band member. A written report prepared and signed by Brian Bricklin was produced in discovery along with a rebuttal report. Additionally a Declaration was submitted to the Court. The Report, Declaration, and Audio Recordings are incorporated by reference and are intended to be used at time of trial. *See Report & Declaration.* | Direct: 2 hours Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 1.5 hours |
| 17 18 19 20 21 22 23 24 25 26 27 28 | 19 | Kevin Hanson c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000  **JUN 1 6 2016** | EXPERT WITNESS - Substantial similarity and striking similarity. This witness will testify as a Master Musician/Session Musician (Guitar) and Professor of Music who listened to, analyzed, and performed on the faithful re-recordings of *Taurus* and *Stairway to Heaven*. It is expected that Mr. Hanson will perform at time of trial and discuss the substantial similarity in the compositional elements as articulated on the guitar. A written report prepared and signed by Kevin | Direct: 2 hours Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 1.5 hours |

18

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 244 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/16   Page 19 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 257-9   Filed 06/23/16   Page 60 of 74   Page ID
#:7096
#:4579

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| 1 2 3 4 5 6 7 8 9 10 11 12 | | | Hanson was produced in discovery. Additionally a Declaration containing Rebuttal was submitted to the Court. The Report, Declaration, Audio Recordings and Video Demonstration, and materials relied upon in coming to his opinion are incorporated by reference and are intended to be used at time of trial. *See Report & Declaration.* | |
| 13 14 15 16 17 18 19 20 21 | 20 | Michael Einhorn, Ph.D. c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000  JUN 1 7 2016 | EXPERT WITNESS – This witness will testify on the subject matter professional valuation of damages. A written report prepared and signed by Michael Einhorn has been produced and served in discovery. The Report and materials relied upon in coming to his opinion are intended to be used at time of trial. *See Report & Declaration.* | Direct: 2 hours Cross: 2 hours |
| 22 23 24 25 26 27 28 | 21 | Dennis Somach c/o Francis Malofiy, Esq. Francis Alexander, LLC 280 N. Providence Road Media, PA 19063 (215) 500-1000 | EXPERT WITNESS – This witness will testify on the subject matter of qualitative importance of Stairway to Heaven to Led Zeppelin, music history, and Led Zeppelin history. A written report prepared and signed by Denny Somach was prepared and discovery. | Direct: 1.5 hours Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted, 1.5 hours |

**01481**

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 245 of 300

Case 2:15-cv-03462-RGK-AGR  Document 198  Filed 04/24/1~  Page 20 of 36  Page ID
Case 2:15-cv-03462-RGK-AGR  Document #:2580  Filed 06/23/16  Page 61 of 74  Page ID
#:7097

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | Additionally, a Declaration containing Rebuttal was submitted to the Court. The Report, Declaration, and materials relied upon in coming to his opinion are intended to be used at time of trial. *See Report & Declaration.* | |
| 22 | Robert Coit, Esq. 770 County Square Drive Suite 200 Ventura, CA 93003 (805) 650-1197 | FACT WITNESS (ATTORNEY) - Ventura , California, County Superior Court proceedings *re* Randy Craig Wolfe, including creation, termination and/or duration of Randy Craig Wolfe Trust and ownership and/or disposition of rights with respect to musical composition *Taurus.* | Direct: 1 hour Cross:  1 hour |
| 23 | Terry Lynn Moore 770 County Square Drive Suite 200 Ventura, CA 93003 (805) 650-1197 | FACT WITNESS – Ventura , California, County Superior Court proceedings *re* Randy Craig Wolfe, including creation, termination and/or duration of Randy Craig Wolfe Trust and ownership and/or disposition of rights with respect to musical composition *Taurus.* | Direct: 20 min Cross: 30 min____ |

20

**01482**

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 246 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1...   Page 21 of 36   Page ID #4581
Case 2:15-cv-03462-RGK-AGR   Document 258   Filed 06/23/16   Page 62 of 74   Page ID #:7098

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 24 | Dave McKenna Address Unknown | FACT WITNESS - Author of Article *re:* Randy Wolfe. Mr. McKenna interviewed Bernice Perle (Randy Wolfe's Mother) shortly before her death. The article was produced in discovery. | Direct: 30 min Cross: witness and described testimony is subject to pending motion in limine; if testimony permitted 30 min |
| 25 | Flames of Albion Music Ltd | PMK WITNESS - Structure of corporate Defendants, contracts between the parties and related entities, exploitation of Stairway to Heaven. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 1.5 hours Cross: 45 min |
| 26 | Succubus Ltd | PMK WITNESS – Structure of corporate Defendants, contracts between the parties and related entities, exploitation of Stairway to Heaven. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 30 mins Cross: 30 min |
| 27 | Sons of Binion Ltd | PMK WITNESS - Structure of corporate Defendants, contracts between the parties and related entities, exploitation of Stairway to Heaven. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 30 mins Cross: 30 min |

21

01483

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1^   Page 25 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document#2585 Filed 06/23/16   Page 63 of 74   Page ID
#:7099

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | 36 | Robert Anthony Plant (potentially by deposition) | DEFENDANT – Authorship of the composition *Stairway to Heaven*; Led Zeppelin's songwriting process; change of credits on songs; alleged lack of familiarity with *Taurus*; familiarity with Spirit and its music; familiarity with Randy Wolfe; access to Taurus and Spirit's music; past interviews. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 5 hours Cross: 3.5 hours |
| | 37 | Jeremy Blietz or other PMK on behalf of Warner/Chappell Music, Inc. | PMK WITNESS – Structure of corporate Defendants, contracts between the parties and related entities, exploitation of Stairway to Heaven; knowledge and intent. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 3 hours Cross: 2.5 hours |

25

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 38 | Joan Hudson or other PMK of Joan Hudson & Co. | PMK & FACT WITNESS – Structure of corporate Defendants, contracts between the parties and related entities, exploitation of Stairway to Heaven; knowledge and intent. Money and exploitation regarding Stairway to Heaven: financials, accounting, gross revenues. | Direct: 3 hours Cross: 2.5 hours |
| 39 | David L. Oleksow 9340 Fuerto Drive; Suite 204 La Mesa, CA 91941 (619) 595-7099 | FACT/EXPERT WITNESS- Forensic Document Examiner who examined original trust documents. | Direct: 20 min Cross: Oleksow is a consulting expert for defendants and was never designated/disclosed as a testifying expert.  He also was never identified by plaintiff as a witness plaintiff may call and, as a result, is within a pending motion in limine; if testimony permitted, 30 min. |
| 40 | Lou Adler | Sales and distribution of Taurus and the album named Spirit; Registration of Taurus copyrights and other filings with copyright office; Composition of Taurus, recording, and production; | Direct: 30 mins Cross: 30 mins |

26

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 41 | Hollenbeck Music<br>3969 Villa Costera 1<br>Malibu, CA 90265 | Sales and distribution of Taurus and the album named Spirit; Registration of Taurus copyrights and other filings with copyright office; Composition of Taurus, recording, and production; | Direct: 30 Mins<br><br>Cross: 30 mins |
| 42 | Ode Records<br>3969 Villa Costera 1<br>Malibu, CA 90265 | Sales and distribution of Taurus and the album named Spirit; Registration of Taurus copyrights and other filings with copyright office; Composition of Taurus, recording, and production; | Direct: 30 Mins<br><br>Cross: 30 mins |
| 43 | Penny A. Castle<br>Universal Music Publishing Group<br>2100 Colorado Avenue<br>Santa Monica, CA 90404<br>E:penny.castle@umusic.com | Copyright filings with respect to Taurus; communications regarding copyright filings with respect to Taurus; superiors; | Direct: 30 Mins<br><br>Cross: witness was never identified by plaintiff as a witness plaintiff may call and, as a result, is within a pending motion in limine; if testimony permitted, 30 min |
| 44 | Brad Tolinksi<br>New York City, New York | Interviews with James Patrick Page; Content of Tolinski's books and publications | Direct: 30 Mins<br><br>Cross: witness was never identified by plaintiff as a witness plaintiff may call and, as a result, is within a pending motion in limine; if testimony permitted, 30 mins |

27

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | 45 | Greg DiBenedetto<br>22287 Mulholland Hwy \| Ste 192<br>Calabasas CA 91302 | Interviews with James Patrick Page; Content of DiBenedetto's books and publications | Direct: 30 Mins<br><br>Cross: witness was never identified by plaintiff as a witness plaintiff may call and, as a result, is within a pending motion in limine; if testimony permitted, 30 mins |
| | | Mike Ware<br>Bath, England<br>Email:<br>mikeware1952@yahoo.com.uk<br><br>JUN 1 5 2016 | Was at Mother's Club in Birmingham, England at the Spirit concert. He along with Robert Plant were in the front row watching Spirit perform. | Direct: 15 Mins<br><br>Cross: witness was never identified by plaintiff as a witness plaintiff may call and, as a result, is within a pending motion in limine; also, claimed testimony is collateral, relating only to where, 45 years ago, Plant was sitting at Mothers' Club, where he admits he was present; if his testimony is offered, defendants are properly provided the opportunity to depose him; if testimony permitted, 30 mins |
| | | **WITNESSES DEFENDANTS INTEND TO CALL** | | |
| | 46 | Lou Adler<br>Hollenbeck Music<br>3969 Villa Costera 1<br>Malibu, CA 90265 | The 1967 creation and ownership, and performance and exploitation of, the musical composition *Taurus* | Direct: 2 hours<br>Cross: 1 hour |
| | 47 | Howard Frank, Esq.<br>Hollenbeck Music<br>3969 Villa Costera 1 | The ownership of the musical composition *Taurus,* and Hollenbeck | Direct: 1 hour<br>Cross: 30 min |

28

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 251 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/17   Page 29 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 258   Filed 06/23/16   Page 67 of 74   Page ID
#:7103

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | Malibu, CA 90265 | Music's knowledge of and inaction *re Stairway to Heaven* | |
| 48 | Mark Andes (by deposition if witness does not appear) | The 1967 creation and ownership, and performance and exploitation of, the musical composition *Taurus* (as a surviving member of Spirit, his knowledge re performance is different than Adler's and Frank's) | Direct: 4 hours Cross: 4 hours |
| 49 | David Woerhaye or other PMK on behalf of Rhino Entertainment Co. and Atlantic Recording Corporation | Atlantic Recording Corporation's deductible expenses as to *Stairway to Heaven*; the marketing and promotion of Led Zeppelin and the *Stairway to Heaven* recording and/or the products in which it appears, and the allocation of claimed profits between the allegedly infringing portion of *Stairway to Heaven* and non-infringing elements | Direct: 3 hours Cross: 1.5 hours |

01488

Case 2:15-cv-03462-RGK-GR   Document 198   Filed 04/24/1?   Page 30 of 36   Page ID
#:4590
Case 2:15-cv-03462-RGK-AGR   Document 172   Filed 06/23/16   Page 68 of 74   Page ID
#:7104

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | 50 | Jay Ferguson | The 1967 creation and ownership, and performance and exploitation of, the musical composition *Taurus* (as a surviving member of Spirit, his knowledge re performance is different than Adler's and Frank's) | Direct: 4 hours Cross: 4 hours |
| | 51 | Dr. Lawrence Ferrara   JUN 1 7 2016 | Lack of striking or substantial similarity between the works; prior art and common musical ideas and devices; quantitative importance of the allegedly similar portions | Direct: 5 hours Cross: 2 hours |
| | 52 | John Paul Jones   JUN 1 7 2016 | Authorship of the composition *Stairway to Heaven*, including independently of *Taurus*; prior art; lack of familiarity with *Taurus*; to the extent his testimony overlaps that of another witness it does so to provide corroboration and weight to defendants' evidence | Direct: 4 hours Cross: 3 hours |
| | 53 | James Patrick Page | Authorship of the composition *Stairway to Heaven*, including independently of *Taurus*; session | Direct: 5 hours Cross: 3.75 hours |

30

**01489**

Case 2:15-cv-03462-RGK-AGR   Document 175   Filed 06/23/16   Page 69 of 74   Page ID #:7105

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| | | musician work and prior art; lack of familiarity with *Taurus*; demonstrative evidence as to *Stairway to Heaven* and allegedly similar portions; to the extent his testimony overlaps that of another witness it does so to provide corroboration and weight to defendants' evidence | |
| 54 | Robert Mathes<br><br>JUN 1 7 2016 | Lack of striking or substantial similarity between the works; prior art; qualitative importance of the allegedly similar portions; importance and appeal of *Stairway to Heaven*; allocation of *Stairway to Heaven* profits to elements (for example, performance, other compositional elements, lyrics, recording) other than portions claimed to be similar to *Taurus* | Direct: 3 hours<br>Cross: 2 hours |
| 55 | Robert Anthony Plant<br><br>'JUN 2 1 2016 | Authorship of the composition *Stairway to Heaven*, including independently of *Taurus*; prior art; lack of familiarity with *Taurus*; to the extent his testimony overlaps that | Direct: 4 hours<br>Cross: 3 hours |

31

| | | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|---|
| | | | of another witness it does so to provide corroboration and weight to defendants' evidence | |
| | 56 | Michael Skidmore | Randy Craig Wolfe Trust and ownership and/or disposition of Randy Wolfe's rights, including with respect to musical composition *Taurus*; knowledge of and action/inaction *re Stairway* | Direct: 4 hours<br>Cross: 2 hours |
| | 57 | Jeremy Blietz or other PMK on behalf of Warner/Chappell Music, Inc.<br><br>JUN 2 1 2016 | Warner/Chappell Music, Inc.'s deductible expenses as to *Stairway to Heaven*; the allocation of claimed profits between the allegedly infringing portion of *Stairway to Heaven* and non-infringing elements | Direct: 3 hours<br>Cross: 1.5 hours |

**DEFENDANTS MAY CALL IF THE NEED ARISES:**

| | | | | |
|---|---|---|---|---|
| | 58 | *Joan Hudson or other PMK of Joan Hudson & Co.<br><br>TIM GARDNER<br>JUN 2 1 2016 | The individual defendants' respective deductible expenses as to *Stairway to Heaven*; the allocation of claimed profits between the allegedly infringing portion of *Stairway to Heaven* and non-infringing elements; *post-May 31, 2011 revenues | Direct: 3 hours<br>Cross: 2 hours |

32

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/   Page 33 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 4593   Filed 06/23/16   Page 71 of 74   Page ID
#:7107

| | Witness Name & Address | Brief Statement of Testimony | Time Estimate (Direct/Cross) |
|---|---|---|---|
| 59 | *Quinn Wolfe | Randy Craig Wolfe Trust and ownership and/or disposition of Randy Wolfe's rights, including with respect to musical composition *Taurus*; knowledge *re Taurus* and/or *Stairway* | Direct: 1 hour<br><br>Cross: 1 hour<br><br>Plaintiff objects to the testimony of Quinn Wolfe and Mary Quinting. Their testimony is wholly irrelevant to this matter. This issue is the subject of two motions in limine filed by Plaintiff. |
| 60 | *Mary Quinting | Randy Craig Wolfe Trust and ownership and/or disposition of Randy Wolfe's rights, including with respect to musical composition *Taurus*; knowledge *re Taurus* and/or *Stairway* | Direct: 1hour<br><br>Cross: 1 hour<br><br>Plaintiff objects to the testimony of Quinn Wolfe and Mary Quinting. Their testimony is wholly irrelevant to this matter. This issue is the subject of two motions in limine filed by Plaintiff. |

33

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1   Page 34 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 4594   Filed 06/23/16   Page 72 of 74   Page ID
#:7108

**Plaintiff's Position:** Plaintiff reserves the right to call in its case in chief (as if on cross) Defendants or Defendants' Witnesses.

Plaintiff also reserves the right to use deposition testimony in its case in chief. Without limiting this right, Plaintiff identifies the following depositions:

### TESTIMONY BY VIDEO-DEPOSITION

Plaintiff identifies the following witnesses whose video-deposition testimony (or deposition testimony) may be used during Plaintiff's case in chief, during cross-examination, or re-direct; or for other permissible uses, inclusive of but not limited to: impeachment, rebuttal, or credibility.

1.   James Patrick Page
2.   John Paul Jones
3.   Robert Plant
4.   Jay Ferguson
5.   Mark Andes

### TESTIMONY BY DEPOSITION

Plaintiff identifies the following witnesses whose depositions may be used during Plaintiff's case in chief, during cross-examination, or re-direct; or for other permissible uses, inclusive of but not limited to: impeachment, rebuttal, or credibility.

6.   Bruce Pates
7.   Michael Skidmore
8.   William Ruhlmann
9.   David Woirhaye
10.  Jeremy Blietz

34

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1   Page 35 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 4595   Filed 06/23/16   Page 73 of 74   Page ID
#:7109

1      **Defendants' position:**  Plaintiff, by failing to comply with LR 16-2.7, waived

2  any right to use deposition testimony, whether video or otherwise, in lieu of live

3  testimony.

4

5

6

7      Both Plaintiff and Defendants reserve their rights to call witnesses identified

8  by the other party, to call witnesses not listed for impeachment purposes and to

9  amend or supplement this witness list as provided by law.

10                        Respectfully submitted,

11

12  Dated: April 24, 2016           · /s/ Francis Malofiy
                                   Francis Alexander Malofiy, Esq.

13                             FRANCIS ALEXANDER, LLC
                             Attorney for Plaintiff

14                            MICHAEL SKIDMORE,
                    As Trustee of the Randy Craig Wolfe Trust

15

16                            Glen Kulik, Esq.
                    KULIK GOTTESMAN & SIEGEL LLP

17                            Attorney for Plaintiff
                           MICHAEL SKIDMORE,

18                     As Trustee of the Randy Craig Wolfe Trust

19

20  Dated: April 24, 2016            /s/ Peter J. Anderson
                             Peter J. Anderson, Esq.

21                         LAW OFFICES OF PETER J.
                             ANDERSON

22                       A Professional Corporation
                        Attorney for Defendants

23                    JAMES PATRICK PAGE, ROBERT
               ANTHONY PLANT, JOHN PAUL JONES,

24                 WARNER/CHAPPELL MUSIC, INC.,
                SUPER HYPE PUBLISHING, INC.,

25             ATLANTIC RECORDING CORP., RHINO
              ENTERTAINMENT COMPANY and

26               WARNER MUSIC GROUP INC.

27

28

Case: 16-56287, 03/15/2017, ID: 10362366, DktEntry: 15-6, Page 258 of 300

Case 2:15-cv-03462-RGK-AGR   Document 198   Filed 04/24/1    Page 36 of 36   Page ID
Case 2:15-cv-03462-RGK-AGR   Document 256   Filed 06/23/16   Page 74 of 74   Page ID
#:7110

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
666 Fifth Avenue
New York, New York  10103
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

36

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT

JUN 23 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

MICHAEL SKIDMORE,

             Plaintiff(s),

    -vs-

LED ZEPPELIN, et al.

             Defendant(s).

CASE NO:  CV 15-03462-RGK (AGRx)

JURY NOTE NUMBER _2_

Today's Date: _6/23/2016_

____ THE JURY HAS REACHED AN UNANIMOUS VERDICT

_X_ THE JURY REQUESTS THE FOLLOWING:

Would Like to listen to:

① Plaintiff's audio of Taurus (guitar)

② Plaintiff's audio of Stairway to Heaven (guitar)

——————— REDACTED

FOREPERSON OF THE JURY

01496

**REDACTED AS TO FOREPERSON'S SIGNATURE**

FILED
CLERK, U.S. DISTRICT COURT

JUN 23 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE,                  )   Case No. CV 15-03462-RGK (AGRx)
                                   )
             Plaintiffs,           )
                                   )
        v.                         )   **VERDICT**
                                   )
LED ZEPPELIN, et al.,              )
                                   )
             Defendants.           )
_____)

We, the jury in the above entitled action find as follows:

QUESTION NO. 1: Do you find by a preponderance of the evidence that plaintiff is the owner of a valid copyright in the musical composition Taurus?

Answer:

Yes   ⤬

No   _____

If your answer to Question No. 1 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 1 is "Yes," please proceed to the next question.

QUESTION NO. 2: Do you find by a preponderance of the evidence that any of the defendants had access to the musical composition Taurus before Stairway to Heaven was created?

Answer:

Yes   ⤬

No   _____

1 | If your answer to Question No. 2 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

2

3 | If your answer to Question No. 2 is "Yes," please proceed to the next question.

4 | QUESTION NO. 3: Please put a checkmark next to each defendant listed below who you find by a preponderance of the evidence had access to the musical composition Taurus before Stairway

5 | to Heaven was created:

6 | Answer:

7 | James Patrick Page         ✓

8 | Robert Plant         ✓

9

10 | QUESTION NO. 4: Do you find by a preponderance of the evidence that original elements of the musical composition Taurus are extrinsically substantially similar to Stairway to Heaven?

11 | Answer:

12 | Yes

13 | No         ✗

14

15 | If your answer to Question No. 4 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

16 | If your answer to Question No. 4 is "Yes," please proceed to the next question.

17

18 | QUESTION NO. 5: Do you find by a preponderance of the evidence that original elements of the musical composition Taurus are intrinsically substantially similar to Stairway to Heaven?

19 | Answer:

20 | Yes

21 | No

22

23 | If your answer to Question No. 5 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

24 | If your answer to Question No. 5 is "Yes," please proceed to the next question.

25

26

27

28

2

**01498**

QUESTION NO. 6: Do you find by a preponderance of the evidence that James Patrick Page and Robert Plant independently created Stairway to Heaven?

Answer:

Yes     _____

No     _____

If your answer to Question No. 6 is "Yes," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 6 is "No," please proceed to the next question.

QUESTION NO. 7: Do you find by a preponderance of the evidence that the portion or portions of the musical composition Taurus that were copied in Stairway to Heaven are commonplace, trivial, or appeared in other works before the musical composition Taurus was created?

Answer:

Yes     _____

No     _____

If your answer to Question No. 7 is "Yes," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

If your answer to Question No. 7 is "No," please proceed to the next question.

QUESTION NO. 8: As to each defendant listed below do you find by a preponderance of the evidence that they infringed the copyright in the musical composition Taurus on or after May 31, 2011:

Answer:

| | | |
|---|---|---|
| James Patrick Page | Yes _____ | No _____ |
| Robert Plant | Yes _____ | No _____ |
| Warner/Chappell Music, Inc. | Yes _____ | No _____ |
| Rhino Entertainment Company | Yes _____ | No _____ |
| Atlantic Recording Corporation | Yes _____ | No _____ |

If your answer is yes to any of the defendants, please proceed to the next question.
If your answer is no to all of the defendants, please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.

3

**01499**

1  QUESTION NO. 9: Do you find by a preponderance of the evidence that any of the defendants received profits that are attributable to his or its infringement of the copyright in the musical
2  composition Taurus on or after May 31, 2011?

3  Answer:

4  Yes  _____

5  No  _____

6  If your answer to Question No. 9 is "No," please have this verdict form signed and dated by the Presiding Juror and returned to the court clerk.
7
    If your answer to Question No. 9 is "Yes," please proceed to the next question.
8

9  QUESTION NO. 10: For each defendant listed below, please state the profits, if any, that you find by a preponderance of the evidence he or it received that are attributable to his or its
10 infringement of the copyright in the musical composition Taurus on or after May 31, 2011?

11 Answer:

12 James Patrick Page                    $ _____

13 Robert Plant                          $ _____

14 Warner/Chappell Music, Inc.           $ _____

15 Rhino Entertainment Company           $ _____

16 Atlantic Recording Corporation        $ _____

17

18 Signed this __23__ day of June, 2016 at Los Angeles, California.
19

20                          **REDACTED**

21

22

23

24

25

26

27

28                                      4



FILED
CLERK, U.S. DISTRICT COURT

JUN 2 3 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE,

                  Plaintiffs,

       v.

LED ZEPPELIN, et al.,

                  Defendants.

Case No. CV 15-03462-RGK (AGRx)

**JURY INSTRUCTIONS**

## Instruction No. 1

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## Instruction No. 2

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Page 2 of 33

# Instruction No. 3

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

# Instruction No.   4

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct you to accept as proved.

# Instruction No. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

Page 5 of 33

## Instruction No. 6

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Page 6 of 33

## Instruction No.  7

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# Instruction No. 8

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Page 8 of 33

## Instruction No.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness

said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

# Instruction No. 10

    If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

Page 11 of 33

## Instruction No. 11

You have heard testimony from witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Page 12 of 33

## Instruction No. 12

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying information that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Page 13 of 33

01514

# Instruction No. 13

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Page 14 of 33

## INSTRUCTION NO.   14

The jury is instructed that any and all intellectual property of Randy Craig Wolfe,

including the song Taurus, is currently owned by the Randy Craig Wolfe Trust, the

trustee of which is plaintiff Michael Skidmore.

**Instruction No.   15**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

1. the plaintiff is the owner of a valid copyright; and
2. the defendant copied original elements from the copyrighted work.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

## Instruction No.  16

Plaintiff has filed a claim against Defendants for violation of the United States Copyright Act, which governs this case. In order for you to undertake your responsibility, you must know what a copyright is, what it protects, and what it does not protect.

Copyright confers certain exclusive rights to the owner of a work including the rights to:

1. Reproduce or authorize the reproduction of the copyrighted work;
2. Prepare derivative works based upon the copyrighted work.
3. Distribute the copyrighted work to the public; and
4. Perform publicly a copyrighted musical work.

Copyright only protects the author's original expression in a work and does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes.

Also, there can be no copyright infringement without actual copying. If two people independently create two works, no matter how similar, there is no copyright infringement unless the second person copied the first.

Page 16 of 33

## Instruction No.   17

Plaintiff contends that the copyright in the musical composition Taurus is infringed by the song Stairway to Heaven.

It is important that you understand what the copyright in the musical composition Taurus protects and does not protect.

A musical composition consists of rhythm, harmony and melody as transcribed in written form.   The performance of a musical composition can be recorded, but under the law musical compositions and sound recordings are different works with different potential copyrights.

In this case, plaintiff has no rights in any sound recording of Taurus, and claims rights only in the musical composition Taurus as transcribed in the deposit copy.  As a result, plaintiff must base his claim only on original expression contained in the deposit copy of Taurus.

That is, plaintiff must prove that Stairway to Heaven copies original expression in the deposit copy of Taurus.  Plaintiff cannot rely on any claimed similarities between recordings of Taurus and Stairway to Heaven.

Page 17 of 33

## Instruction No. 19

The plaintiff must prove by a preponderance of the evidence that the creators of Stairway to Heaven had access to the musical composition Taurus. You may find that the creators of Stairway to Heaven had access to the musical composition Taurus if the creators of Stairway to Heaven had a reasonable opportunity to hear and/or copy the musical composition Taurus ▓▓▓▓ before Stairway to Heaven was created.

## Instruction No. 20

   An original work may include or incorporate elements taken from prior works or works from the public domain.  However, any elements from prior works or the public domain are not considered original parts and not protected by copyright.  Instead, the original part of the plaintiff's work is limited to the part created:

1.   independently by the work's author, that is, the author did not copy it from another work; and

2.   by use of at least some minimal creativity.

# Instruction No. 21

For an unauthorized use of a copyrighted work to constitute copyright infringement, the unauthorized use must copy original material protected by the copyright and must be significant enough to constitute infringement. This means that even if the fact of copying is proven, no legal consequences will follow from that fact unless original material is copied and the copying is substantial.

The copyright that plaintiff sues upon protects only the musical composition Taurus as it was transcribed in the deposit copy that accompanied the registration of the copyright with the United States Copyright Office. That is the work that you must compare to Stairway to Heaven.

To prove substantial similarity between the musical composition Taurus as transcribed and Stairway to Heaven, plaintiff must prove that there is both substantial extrinsic similarity and substantial intrinsic similarity between the two works.

Extrinsic similarity is an objective test and requires that you determine whether the two works are similar in original expression. To do that, you must break the works down into their specific musical elements. You must then disregard all musical elements that are not original to Taurus. Once you have disregarded all musical elements that are not original to Taurus, you must decide whether there are any remaining musical elements that are original to Taurus and also appear in Stairway to Heaven and, if so, whether they are substantial similarities or insubstantial similarities.

If plaintiff does not prove that, applying this first test, Stairway to Heaven is substantially similar to original expression in the musical composition Taurus, your verdict must be for defendants.

Page 21 of 33

If plaintiff does prove that, applying this first test, Stairway to Heaven is substantially similar to original expression in the musical composition Taurus, then you must proceed to a second test for subjective intrinsic similarity.

For that second test, you must decide whether the ordinary, reasonable person would find that the musical composition Taurus as transcribed in the deposit copy, and Stairway to Heaven, are substantially similar in their original expression.  In this second test, you must also disregard all musical elements that are not original to Taurus.

If plaintiff does not prove that, applying this second test, the musical composition Taurus as transcribed in the deposit copy, and Stairway to Heaven, are substantially similar in their original expression, your verdict must be for defendants.

If plaintiff does prove both the first test and second test, then he has proven substantial similarity.

## Instruction No. 22

     If Plaintiff shows Defendants had access to Plaintiff's work and that there is a substantial similarity between the infringed and infringing works, a presumption of copying arises, that shifts the burden to Defendants to rebut or to show that the alleged infringing work was independently created.

     In determining whether Defendants' song was independently created, you may consider evidence presented by Defendants regarding the manner in which the composers created Defendants' song and any other evidence of the circumstances surrounding the creation of Defendants' song.

Page 23 of 33

# Instruction No. 13

To prevail on a copyright claim, the plaintiff must prove substantial copying of original expression in the copyrighted work. That also means that trivial or minimal copying of original expression is not an infringement.

A use is trivial or de minimis if:

1.   The allegedly-copied original expression is quantitatively a small portion of the plaintiff's copyrighted work; and

2.   The allegedly-copied original expression is not qualitatively important to plaintiff's copyrighted work.

# Instruction No. 24

If you find that defendants Page and Plant infringed the plaintiff's copyright in Taurus, you must determine whether defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and/or Rhino Entertainment Co. vicariously infringed that copyright. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    the defendant directly benefitted financially from the infringing activity of Page and Plant;

2.    the defendant had the right and ability to supervise and control the infringing activity of Plant and Page ; and

3.    the defendant failed to exercise that right and ability.

If you find that the plaintiff has proved each of these elements, your verdict should be for the plaintiff if you also find that Plant and Page infringed plaintiff's copyright.  If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendants Warner-Chappell, Atlantic Recording Corporation, and/or Rhino Entertainment Co.

Page 25 of 33

01526

# Instruction No. 25

A defendant may be liable for copyright infringement engaged in by another if they knew or had reason to know of the infringing activity and intentionally induced or[materially contributed to that infringing activity.

If you find that Plant and Page infringed the plaintiff's copyright in Taurus, you must determine whether defendants Warner/Chappell Music, Inc., Atlantic Recording Corporation, and/or Rhino Entertainment Co. contributorily infringed that copyright. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.   the defendant knew or had reason to known of the infringing activity of Plant and Page; and

2.   the defendant intentionally induced or[materially contributed to Plant and Page's infringing activity.

If you find that Plant and Page infringed the plaintiff's copyright and you also find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either or both of these elements, your verdict should be for the corporate defendant.

Page 26 of 33

01527

# Instruction No. 26

The copyright owner is entitled to any profits of a defendant attributable to infringements that occurred on or after May 31, 2011. Each defendant's profits, if any, from the alleged infringement must be calculated and awarded separately. Also, you may not award any profits attributable to alleged infringements that occurred before May 31, 2011.

You may make an award of a defendant's profits only if you find that the plaintiff showed a causal relationship between infringement on or after May 31, 2011 and the defendant's gross revenue.

A defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

A defendant's gross revenue is all of the defendant's receipts that plaintiff proves were caused by the use, performance or sale of copies of Stairway to Heaven on or after May 31, 2011. The plaintiff has the burden of proving the defendant's gross revenue, including the causal relationship, by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, production costs, management fees and advance payments incurred at any time in producing the defendant's gross revenue. Each defendant has the burden of proving his or its expenses by a preponderance of the evidence.

Plaintiff is not entitled to recover profits that are attributable to factors other than use of the copyrighted work. The defendant has the burden of proving the portion of the profit, if any, attributable to factors other than the alleged infringement of the copyrighted work. You must exclude from any award of profits all profits that the evidence proves are attributable to factors other than

the portion of the profit, if any, attributable to factors other than the alleged infringement of the copyrighted work. You must exclude from any award of profits all profits that the evidence proves are attributable to factors other than alleged copying of the musical composition Taurus. For example, you must exclude profits that are attributable to the other elements and music in Stairway to Heaven, to the lyrics in Stairway to Heaven, to the performances by the members of Led Zeppelin, to the recording of Stairway to Heaven, to the public interest in Led Zeppelin and its members and to the marketing efforts that generated the profits.

01529

# Instruction No. 27

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## Instruction No. 28

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or social media application.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.

If any juror is exposed to any outside information, please notify the court immediately.

Page 31 of 33

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL SKIDMORE

PLAINTIFF(S)

v.

LED ZEPPELIN, et al.

DEFENDANT(S).

CASE NUMBER

CV 15-03462-RGK (AGRx)

### JUDGMENT ON THE VERDICT
### FOR DEFENDANT(S)

　　　　This action having been tried before the Court sitting with a jury, the Honorable R. GARY KLAUSNER ,
District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

　　　　IT IS ORDERED AND ADJUDGED that the plaintiff(s):

MICHAEL SKIDMORE

take nothing; that the  action be dismissed on the  merits; and that the defendant(s):

LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; WARNER/CHAPPELL MUSIC. INC.; ATLANTIC

RECORDING CORPORATION; AND RHINO ENTERTAINMENT COMPANY

recover of the plaintiff(s) its costs of action, taxed in the sum of _____.

Clerk, U. S. District Court

Dated: 6/23/16

By S. Williams
Deputy Clerk

At: Los Angeles, CA

cc:　　Counsel of record

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 1
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
   15303 Ventura Blvd., Suite 1400
8  Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F:  (310) 557-0224
   E:  gkulik@kgslaw.com
10 *Attorney for Plaintiff*

11

12                 **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 MICHAEL SKIDMORE, as Trustee for     | Case No. 15-cv-03462 RGK (AGRx)
   the RANDY CRAIG WOLFE TRUST,
15                                       | Hon. R. Gary Klausner
16              Plaintiff,
17                                       | **PLAINTIFF MOTION TO USE
        v.                               |   SOUND RECORDINGS IN TRIAL
18                                       |   TO  PROVE ACCESS**
19 LED ZEPPELIN; JAMES PATRICK
   PAGE; ROBERT ANTHONY PLANT;          | Trial:       June 14, 2016
20 JOHN PAUL JONES; SUPER HYPE          | Time:        9:00 a.m.
   PUBLISHING, INC.; WARNER MUSIC       | Courtroom:   850
21 GROUP CORP., Parent of
22 WARNER/CHAPPELL MUSIC, INC.;
   ATLANTIC RECORDING
23 CORPORATION; RHINO
   ENTERTAINMENT COMPANY,
24
25              Defendants.
26
27
28

   CASE NO. 15-cv-03462 RGK (AGRx)                      PLAINTIFF'S MOTION TO USE SOUND
                                              RECORDINGS IN TRIAL TO ESTABLISH ACCESS

                              **01536**

1    This court has held that pre-1976 recordings of *Taurus* are not entitled to statutory

2    copyright protection and thus sound recordings may not be used to establish

3    infringement. However, that does not mean that the sound recordings are irrelevant in this

4    trial. To the contrary, they are crucial to the issues of access and rebutting the affirmative

5    defense of independent creation; respectfully, it would be erroneous and prejudicial for

6    the Court to refuse to allow Plaintiff to use the recordings for those purposes.

7    For example, Defendant Jimmy Page admitted at his deposition that he has in his

8    record collection a copy of the vinyl album *Spirit* that contains the sound recording of

9    *Taurus.* There will also be testimony that the group Spirit was very popular at the time

10   and *Taurus* as played on the radio. Plaintiff must be permitted to play for the witness the

11   recording of *Taurus* to establish what he had access to.

12   Further, the song *Taurus* was played regularly by Spirit in concert in the years

13   1968-70 and the testimony has already established that Led Zeppelin performed several

14   times at the same shows as Spirit and the band members even attended Spirit concerts as

15   fans. Plaintiff has recordings of Spirit performing *Taurus* live, and per the testimony of

16   the manner in which the band performed in concert and the arrangement never changed

17   over time.

18   These are the versions of *Taurus* that Led Zeppelin had access to, they did not have

19   access to the deposit copy or some recording that was limited to the notes in the deposit

20   copy. Defendants tacitly admit that this issue is relevant, claiming that "Skidmore can

21   simply establish that he played *Taurus* at their depositions and ask them whether they

22   heard it before 1971." *See* ECF No. 239, at p.1:20-22. But it is the jury who is supposed

23   to consider the relevant evidence. It is nonsensical to claim that evidence not even

24   presented to the jury could somehow adequately be considered by the jury. Defendants,

25   by disputing access, have made access a central issue in this case. Defendants now seek

26   to avoid the natural consequences of their trial strategy and artificially keep highly

27   relevant evidence on this dispute of fact from the jury.

28

---

1

1      Further, there are several crucial similarities between the sound recordings of the
2 two songs that are evidence not of infringement but of access and lack of independent
3 creation. In other words, to the extent that there are specific, qualitatively important
4 similarities in the way the songs were recorded on the respective albums is evidence that
5 Led Zeppelin has access to *Taurus*. Defendants' concerns about prejudice are not
6 warranted, as their own experts can explain the substantial similarity comparison to the
7 jury and the Court can issue a limiting instruction if need be.

8      Thus, even if the recordings are not relevant to prove infringement, they are highly
9 relevant – indeed crucial – to proving access and/or rebutting independent creation.  In
10 the *Blurred Lines* case access was conceded by the defendants and thus was not a
11 relevant issue at trial.  Here, access is a very critical issue in dispute and an important part
12 of this trial.

13      Plaintiff respectfully notes that it previously filed a brief/motion on this issue on
14 June 12, 2016 (ECF No. 232), which has been attached as Exhibit 1. Defendants
15 responded on June 13, 2016 (ECF No. 239), which has been attached as Exhibit 2. Thus,
16 pursuant to the Court's pre-trial instructions on June 14, 2016, this issue has been fully
17 briefed and is ready for the Court's consideration.

Dated:  June 15, 2016         FRANCIS ALEXANDER, LLC

                     */s/ Francis Alexander Malofiy*
                     Francis Alexander Malofiy, Esq.
                     Attorney for Plaintiff

2

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that PLAINTIFF'S MOTION TO USE SOUND RECORDINGS IN TRIAL TO ESTABLISH ACCESS has been served upon counsel by electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

*****

Respectfully submitted,
Francis Alexander, LLC
*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
E:  francis@francisalexander.com
*/d/ June 15, 2016*

3

**01539**