# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

---

### Skidmore et al.

*Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Plaintiff-Appellant*

v.

### Led Zeppelin *et al.*

*Defendants-Appellees*

---

## Plaintiff-Appellant Michael Skidmore's
## Excerpts of the Record
## Volume X of XI

---

(Music copyright infringement, on appeal from the final Order dated June 23, 2016 of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California.  The case was docketed in the Central District at 15-cv-03462)

---

**Francis Alexander, LLC**
Francis Malofiy, Esquire
Alfred Joseph Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyers for Appellant Skidmore*

## EXCERPTS OF THE RECORD: VOLUME X of XI
(2412 – 2680)

03/07/2016   Plaintiff's Opposition to SJ [Notice of Errata] (*Doc. No. 126*)  ...................... 2412

Statement of Genuine Issues by Plaintiff (Doc. No. 118-1)  ........................... 2439

Declaration of Dr. Alexander Stewart (Doc. No. 118-8).................................. 2504

03/07/2016   Declaration of Barry Hansen (Doc. No. 119-1)  ............................................... 2526

02/25/2016   Amended Statement of Uncontroverted Facts (*Doc. No. 105*)  ........................ 2548

02/25/2016   Excerpts of Defendants' Motion for Summary Judgment (*Doc. No. 97*)  ......... 2598

Declaration of Peter J. Anderson (*Doc. No. 97-10*)  ........................................ 2629

Exhibit 16 - Taurus Copyright Registration (*Doc. No. 97-11*)  ......................... 2638

Exhibit 17 - Taurus Deposit Copy (*Doc. No. 97-11*)........................................ 2642

Exhibit 18 - Stairway to Heaven Deposit Copy (*Doc. No. 97-11*)  ................... 2644

05/20/2015   Answer to Amended Complaint by Corporate Defs. (*Doc. No. 69)*  ................ 2645

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
4  T:  (215) 500-1000; F:  (215) 500-1005
   E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F:  (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*
11

12

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15 | MICHAEL SKIDMORE, as Trustee for | Case No. 15-cv-03462 RGK (AGRx) |
16 | the RANDY CRAIG WOLFE TRUST, | |
   | | Hon. R. Gary Klausner |
17 | Plaintiff, | |
18 | | **NOTICE OF ERRATA AND** |
   | v. | **CORRECTION TO PLAINTIFF'S** |
19 | | **MEMORANDUM OF POINTS AND** |
20 | LED ZEPPELIN; JAMES PATRICK | **AUTHORITIES IN OPPOSITION** |
   | PAGE; ROBERT ANTHONY PLANT; | **TO MOTION FOR SUMMARY** |
21 | JOHN PAUL JONES; SUPER HYPE | **JUDGMENT OR PARTIAL** |
22 | PUBLISHING, INC.; WARNER MUSIC | **SUMMARY JUDGMENT** |
   | GROUP CORP., Parent of | |
23 | WARNER/CHAPPELL MUSIC, INC.; | Date:    March 28, 2016 |
24 | ATLANTIC RECORDING | Time:    9:00 a.m. |
   | CORPORATION; RHINO | Room:    850 |
25 | ENTERTAINMENT COMPANY, | |
26 | | |
   | Defendants. | |
27 | | |
28

---

NOTICE OF ERRATA AND CORRECTION

**02412**

**TO THE COURT AND ALL PARTIES TO THIS ACTION:**

PLEASE TAKE NOTICE that Plaintiff Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust, hereby provides notice of errata and correction as follows:

On March 7, 2016, Plaintiff filed his "Memorandum of Points and Authorities In Opposition To Motion For Summary Judgment or Partial Summary Judgment." When the document was filed it inadvertently omitted the table of authorities and contained some formatting mistakes. Attached as Exhibit A is a corrected version of the Memorandum of Points and Authorities which includes the table of authorities and correct the formatting issues.

Dated:  March 8, 2016                *Respectfully submitted,*

                                     Francis Alexander, LLC

                                     */s/ Francis Alexander Malofiy*
                                     Francis Alexander Malofiy, Esquire
                                     Attorney ID No.:  208494
                                     280 N. Providence Road | Suite 105
                                     Media, PA 19063
                                     T:  (215) 500-1000
                                     F:  (215) 500-1005
                                     E:  francis@francisalexander.com

---

1

NOTICE OF ERRATA AND CORRECTION





EXHIBIT A

**02414**

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 105
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F:  (310) 557-0224
E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>            Plaintiff,<br><br>      v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>            Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    March 28, 2016<br>Time:    9:00 a.m.<br>Room:    850 |

1

2

## TABLE OF CONTENTS

Page

3   I.      INTRODUCTION ........................................................................... 1

4   II.     FACTS ........................................................................................... 3

5   III.    LEGAL STANDARD. ................................................................... 5

6   IV.    PAGE AND PLANT WERE FAMILIAR WITH *TAURUS*
        STARTING IN 1968 AND AT A MINIMUM THERE IS A
7       REASONABLE POSSIBILTY OF ACCESS RAISING A
        TRIABLE ISSUE OF FACT ............................................................ 6

8
            1.      DEFENDANTS HAD DIRECT ACCESS TO *TAURUS* ................... 6
9
            2.      THERE IS CIRCUMSTANTIAL EVIDENCE OF
10                   ACCESS AND WIDESPREAD DISTRIBUTION. ............................ 7

11   V.     THERE IS SUBSTANTIAL SIMILARITY – INDEED
        STRIKING SIMILARITY -- BETWEEN *TAURUS* AND
12      *STAIRWAY TO HEAVEN*. ............................................................ 8

13          A.      THIS CASE SATISFIES THE "SUBSTANTIAL
                SIMILARITY TEST" FOR COPYRIGHT ......................... 9
14
            B.      THE INVERSE RATIO RULE APPLIES IN THIS CASE. .............. 11
15
            C.      THE COMPOSITION IN QUESTION IS UNIQUE AND
16              PROTECTABLE. ....................................................... 11

17   VI.    TAURUS IS NOT A WORK FOR HIRE AS IT WAS
        CREATED BEFORE ANY PUBLISHING OR RECORDING
18      CONTRACT WAS SIGNED. ........................................................ 13

19   VII.   RANDY DID NOT ABANDON OR WAIVE HIS CLAIMS. .................... 15

20   VIII.  THIS CASE IS NOT BARRED BY LACHES. ................................. 17

21   IX.    DEFENDANTS' DEPOSIT COPY ARGUMENT MISSES THE
        MARK. ........................................................................................ 18
22
23   X.      CONCLUSION. .......................................................................... 20

24

25

26

27

28

1

1

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

2

3  <u>Cases</u>

4  *Baxter v. MCA, Inc.*, 812 F.2d 421 (9th Cir. 1987) ................................................. 12

5  *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010) ...................... 5, 11

6  *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227 (6th Cir. 2007) ................. 18

7  *Colon v. U.S.*, 474 F.3d 616, 621-23 (9th Cir. 2007) ............................................... 15

8  *Elsmere Music, Inc. v. Nat'l Broad. Co.,*
9  482 F.Supp. 741 (S.D.N.Y.1980) ............................................................................ 11

10  *Gladwell Govt. Services Inc. v. County of Marin*,
   265 Fed. Appx. 624 2008 WL 268268 (9th Cir. 2008) ........................................... 14

11

12  *Hadady Corp. V. Dean Witter Reynolds, Inc.*,
   739 F. Supp. 1392 (C.D. Cal. 1990) ................................................................... 15, 16

13

14  *Harris v. Emus Records Corp.*,
   734 F.2d 1329 (9th Cir. 1984) ................................................................................. 19

15  *KnowledgePlex, Inc. v. Placebase, Inc.*,
16  C 08-4267 JF (RS), 2008 WL 5245484 (N.D. Cal. Dec. 17, 2008) .................... 19, 20

17  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) ..................................................................................... 6

18

19  *Marya v. Warner/Chappell Music, Inc.*,
   2015 WL 5568497 (C.D. Cal. Sept. 22, 2015) ................................................... 15, 16

20  *Melchizedek v. Holt*, 792 F. Supp. 2d 1042 (D. Ariz. 2011) ............................. 15, 16

21  *New Era Publications Int'l, ApS v. Hendry Holt & Co.*,
22  873 F.2d 576 (2d Cir. 1989) ..................................................................................... 18

23  *Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189 ................................. 19

24

25  *Oracle Am., Inc. v. Goggle Inc.*,
   2012 WL 1965778 (N.D. Cal. May 31, 2012) .......................................................... 16

26  *Oravec v. Sunny Isles Luxury Ventures L.C.*,
27  469 F. Supp. 2d 1148, 1178 (S.D. Fla. 2006) .......................................................... 16

28  *Petrella v. Metro Goldwyn Mayer, Inc.*, 134 S. Ct. 1062 (2014) ....................... 17, 18

2

---

*Playboy Enters., Inc. v. Dumas*, 53 F.3d 549 (2d Cir .1995) .................................... 14

*Santrayll v. Burrell,* 1996 WL 134803 (S.D.N.Y. Mar.25, 1996) ........................... 11

*Scentsy, Inc. v. B.R. Chase*, 942 F. Supp. 2d 1045 (D. Idaho 2013) ........................ 19

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
969 F.2d 410 (7th Cir. 1992) ....................................................................... 14

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) ........................ 17

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) .................................................. 6, 11

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) .................................................. 9, 12

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ...................... 6, 19

*Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054 (9th Cir. 2002).......................... 5

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136  (9th Cir. 2003)................. 17

Statutes

17 U.S.C. § 408(b) ....................................................................................... 18

17 U.S.C. § 501 (b) ...................................................................................... 17

17 U.S.C. § 507 ........................................................................................... 17

Copyright Act of 1909, § 12, 35 Stat 1075 (1909)................................................. 19

Other Authorities

Paul Goldstein, Goldstein on Copyright §3.8 (2013) ............................................. 18

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff alleges that the song *Stairway to Heaven*, written in 1971 by Defendants Jimmy Page ("Page") and Robert Plant ("Plant"), infringes the copyright in the song *Taurus* written by Randy Wolfe a/k/a Randy California ("Randy") in 1966 and included in the first album released by the rock group Spirit in 1968. Defendants ask this court to believe that until recently they never really heard of Randy, the group Spirit, or the song *Taurus,* and that Page recently discovered a vinyl copy of the song in his record collection but has no idea how or when it got there. Page who denies any recollection of Spirit, but when presented in his deposition with interviews in the early 1970s shortly before he started writing *Stairway to Heaven,* admitted he was a fan of Spirit, enjoyed their albums, and liked seeing them live. Plaintiff's Alleged Facts ("PAF") 23. Defendants' assertions that they created Stairway to Heaven in almost total ignorance of Taurus and Spirit is contradicted by an enormous body of evidence which is more than adequate to raise triable issues of fact. Page told a member of Spirit on April 14, 1973, Larry "Fuzzy" Knight, that he was a huge fan of the band. PAF 58.

The issue of "access" is a nonstarter for Defendants. Led Zeppelin's very first concert in the United States was in 1968 as the opening act for Spirit, shortly after the latter's first album *Spirit* containing *Taurus* was released and while the band was on tour promoting the album. *Spirit* the album and Taurus received wide radio play around the world and were sold in the United States and Britain. Because *Taurus* was Randy's favorite song, it was performed at nearly every show. Statement of Genuine Issues ("SGI") 23. As a tribute to Spirit, Led Zeppelin regularly performed a Spirit song called *Fresh Garbage,* which was on the same album that contained *Taurus.* Plant attended a Spirit concert in early 1970 after which Plant and Spirit went out drinking together was a fan of Spirit. At the end of the night Plant was in a serious automobile accident.

Page admits to owning a vinyl copy of the Spirit album on which *Taurus*

1

appeared. SGI 82. All surviving members of Led Zeppelin admitted to playing Spirit's music at Led Zeppelin's concerts. SGI 67. Led Zeppelin's members attended Spirit shows in Britain, even reserving seats. Before Randy died, he told a friend that while Led Zeppelin and Spirit were back stage at a show in 1969, Page had sought out Randy and specifically asked him how to play the opening notes to Taurus, which Randy repeated for him several times. SGI 82. In sum, there is overwhelming evidence to establish a "reasonable possibility" that Page and Plant had access to and were familiar with *Taurus* before *Stairway to Heaven* was written.

On the second crucial issue, not only is there substantial similarity between the two compositions, the similarity is striking. It does not require expert testimony to prove this fact as the similarity is so noticeable that it has been the subject of intense public debate for decades. It has been common knowledge since the 1970s that the two songs are eerily similar, and the debate has raged all these years whether *Stairway to Heaven* is a rip-off. Despite this common knowledge, Plaintiff also submits the testimony of four (4) music experts who dissected the two songs note for note, instrument for instrument, before concluding that the first half of *Stairway to Heaven* is a note-for-note copy of *Taurus'* guitar. Page admitted in his deposition the obvious similarity between the songs, and so, too, did Defendant John Paul Jones. Furthermore, the vocal melody is substantially similar to the harpsichord notes in *Taurus*. Plaintiff's four musical experts are unequivocal that the substantial similarity—indeed, striking similarity—cannot be coincidental.

Indeed, it was established in discovery that Led Zeppelin wrote a great many of their songs by taking other people's work without giving them credit. Page admitted in the past that Led Zeppelin wrote their songs by copying other people's music, as Plaintiff alleges Zeppelin did with *Taurus*. Plant was confronted with this statement at his deposition and admitted under oath that he did not dispute either the "accuracy" or the "validity" of Page's quote. In fact, Led Zeppelin had a well-known practice of writing songs by "lifting" melodies and instrumentals that they admired.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1    Defendants make several other unmeritorious arguments. Defendants argue

2   that *Taurus* was a work for hire because of an August 29, 1967 agreement between

3   Randy California and his producer at the time, Hollenbeck Music. What the motion

4   omits is that Randy wrote and created the song in 1966 well before any such

5   agreement. Randy's sisters testified that he wrote the song for his girlfriend (later his

6   wife) Robin, whose astrological sign was Taurus, and immediately the band started

7   performing the song at the famous Ash Grove club in Hollywood.

8    Finally, Defendants contend that Randy abandoned his right to sue for

9   copyright infringement because he never brought a suit during his lifetime. The

10  argument makes no sense in light of the Supreme Court's holding last year in

11  *Petrella v. MGM* that one does not lose his right to sue for infringement by virtue of

12  his delay in filing a suit.  Plaintiff has produced witnesses, including life-long

13  friends and bandmates, who testify that Randy confronted Page about the theft early

14  1970s, that Page even admitted the theft but threatened to bury Randy under

15  lawyers, that Randy was extraordinarily upset about the situation over the years, that

16  he was advised by lawyers that it was too late for him to sue (which was proven

17  wrong in 2015 by the *Petrella* decision), and that he was still considering a legal

18  action in December 1996 just prior to his death.

19  **II.    FACTS.**

20   Randy Wolfe was a musical genius. PAF 1. In early 1966 at age 15, his family

21  moved to New York where in June, he met Jimi Hendrix. The two became fast

22  friends and played shows together that summer. Id. When summer ended, Hendrix

23  was offered an opportunity to go to London to form a new band (The Jimi Hendrix

24  Experience) and wanted Randy to go with him. Id. However, Randy's mother

25  thought he was too young so when Hendrix went to London Randy's family moved

26  back to California in September 1966.  PAF 3.

27   That fall, when he returned to high school, Randy met a girl who would later

28  become his wife. PAF 2. To impress her, he wrote a song. Her astrological sign was

3

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1    Taurus, so Randy named his new song *Taurus*. PAF 2. Also that fall, Randy formed
2    a band called Spirits Rebellious with two of his school friends, Jay Ferguson and
3    Mark Andes. PAF 3. In late 1966 through the summer of 1967, they played every
4    week in Hollywood at a club called the Ash Grove. PAF 3. One of the songs they
5    played every night was *Taurus,* which remained Randy's favorite song until the day
6    he died. PAF 5.

7        The family eventually moved in 1967 from Ojai to Santa Monica.  Brian
8    Berry, brother of singer Jan Berry of "Jan and Dean" fame, heard the band
9    rehearsing and knocked on the door to introduce himself. Id. This led to a fast
10   friendship, and it was Berry who later introduced Spirit to Lou Adler, owner of
11   Hollenbeck and Ode Records, which signed the band to a recording contract on
12   August 29, 1967. Id. Hollenbeck filed a copyright for *Taurus* that listed Randy
13   California as the author. SGI 11.

14       The first Spirit album was released in late 1967. SGI 14. The band later
15   embarked that same year on a lengthy tour in support of the album, which features,
16   among other cuts, *Taurus* and another song called *Fresh Garbage.* Janet Wolfe Decl,
17   ¶7. The group Led Zeppelin, originally named "The New Yardbirds," was formed in
18   1968 in England.  It consisted of Page, Plant, bassist John Paul Jones, and drummer
19   John Bonham (now deceased).  On December 26, 1968, Led Zeppelin performed its
20   first show in the United States. SGI 31. The show took place in Denver, Colorado,
21   and the group was the opening act that night for Spirit. Id.; PAF 18. Led Zeppelin
22   experienced equipment failures that evening so the members of Spirit had to loan the
23   band some of its equipment.  SGI 31.

24       Led Zeppelin and Spirit continued to play shows together, and even when the
25   members of Led Zeppelin were not performing, they came to Spirit shows to watch.
26   SGI 77. In interviews at the time, Page expressed his affection for Spirit, their
27   music, and their performances. SGI 103.  In homage to Spirit, Led Zeppelin had
28   been performing the Spirit song *Fresh Garbage* at its own shows. PAF 25. At one

4

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   point in 1969, Page asked Randy to teach him the introduction to *Taurus*, which

2   Randy showed him several times. PAF 21.

3       Led Zeppelin began writing *Stairway to Heaven* in 1970.  They created the

4   first part then but did not create the second half of the song until a bit later. PAF 32,

5   33-34. *Stairway to Heaven* was released on the album "Led Zeppelin IV" on

6   November 8, 1971. SGI 85. On April 14, 1973, Randy confronted Page about the

7   similarity between *Taurus* and *Stairway to Heaven*. Page became defensive and,

8   although he acknowledged copying *Taurus*, told Randy that for every lawyer Randy

9   hired he would hire 20, inferring Randy that he would be buried if he dared to file a

10   suit. SGI 28; PAF 56-60.

11       In 1996, Randy registered a renewal copyright for *Taurus* in his own name.

12   PAF 13-14. Randy was hounded by the media, the public, and his family and friends

13   about the similarity between the two songs. PAF 10; Stewart Decl., ¶29. He

14   considered filing a lawsuit many times, but by the time he got his nerve to do

15   anything he was told by lawyers that the suit would be barred by the passage of time.

16   PAF 64.  Still, until shortly before his tragic drowning in Hawaii on January 2, 1997,

17   he was still being urged to sue and was considering it. PAF 64.

18  **III.**   **LEGAL STANDARD.**

19       In considering a summary judgment motion, all evidence and inferences must

20   be construed in favor of the non-movant. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.

21   3d 1054, 1061 (9th Cir. 2002). There must be no dispute of material fact and the

22   movant must be entitled to judgment as a matter of law for such a motion to be

23   granted. *Id.* Plaintiff in a copyright infringement case must show two things to prove

24   protected expression was copied: a reasonable possibility of access and substantial

25   similarity between the works. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624

26   (9th Cir. 2010). Importantly, under the Inverse Ratio Rule, the more evidence

27   showing Defendants had access to Plaintiffs' work the lower Plaintiffs' burden is to

28   show substantial similarity. *Id.* at 625.

5

**IV.** **PAGE AND PLANT WERE FAMILIAR WITH *TAURUS* STARTING IN 1968 AND AT A MINIMUM THERE IS A REASONABLE POSSIBILTY OF ACCESS RAISING A TRIABLE ISSUE OF FACT.**

Direct evidence of copying is rarely available, so plaintiffs may prove this element circumstantially by showing defendants had access to their work and that "the two works are 'substantially similar' in idea and expression of the idea." *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir. 1996); *see also L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846-47 (9th Cir. 2012) ("Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of . . . a chain of events linking the plaintiffs work and the defendant's access" (quotation marks omitted)). As a result, Plaintiffs are only required to show that Defendants had a "reasonable possibility" of access to Plaintiffs' work, not definitive proof. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). The Ninth Circuit has described access as "more than a 'bare possibility." *Id.* Access may be presumed if the works are strikingly similar. *Three Boys Music*, 212 F.3d at 485. Access can also be demonstrated by widespread distribution of the source work. *Id.*

At a minimum, there is a triable issue of fact because the evidence supports a finding of (i) *direct access*, and/or (ii) a reasonable possibility of access by way of circumstantial evidence and also because *Taurus* was widely distributed for sale and there is a striking similarity between *Taurus* and *Stairway to Heaven*.

**1.** **Defendants had Direct Access To *Taurus***

Page has admitted possessing the Spirit album in question which contains Taurus. SGI 82. Randy California's sisters and bandmates testified that *Taurus* was his favorite song which the band played as part of their regular set from 1966 through 1970 at nearly every concert. SGI 33. Led Zeppelin opened for Spirit in December 26, 1968, when Taurus was a regular song in Spirit's sets. SGI 31; PAF 18. This was the first of several concerts the two groups performed together before *Stairway to Heaven* was written. The members of Led Zeppelin also used to attend

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Spirit shows when they were not on the bill. PAF 21, 28. Robert Plant was in a serious auto accident in February 1970 returning from a Spirit concert after which he had gone out drinking and playing snooker with Spirit members Mark Andes, John Locke, and Randy California. PAF 28-31. Page admitted in 1970 that he had attended many Spirit concerts and enjoyed their albums. PAF 53. Before Randy died he told his friend and guitar technician, Tracy Longo, that, at a show in 1969, Page sought out Randy and specifically asked him how to play the opening notes to Taurus. SGI 82. Longo also related that Randy told him that Zeppelin reserved front row seats at a Spirit show in England. PAF 28.

**2.   There Is Circumstantial Evidence of Access and Widespread Distribution.**

First, Page admitted in interviews from 1970 and 1972, that he was (1) a fan of Spirit, (2) enjoyed their albums, (3) enjoyed seeing them live, and (4) that Spirit was one of the few bands that struck him on an "emotional level." PAF 22-23. Indeed, Spirit was one of only two rock bands in the entire world that Page and Zeppelin ever played live, the song *Fresh Garbage*, which is on the same *Spirit* album that Page owns. PAF 53.

Second, Spirit's album containing Taurus was widely available for purchase in the United States and Britain before 1971, was played repeatedly at concerts, and received wide radio airplay—and as noted above Page actually had the album in his possession. SGI 19-20. Furthermore radio operators in Los Angeles in the early 1970s verifed that *Taurus* received wide airplay in the late 1960s and early 1970s due to the band's popularity. SGI 20. Spirit was so popular that record stores would have separate sections set aside for Spirit's music. Id. Finally, Defendants' own motion admits that Ode Records released and distributed the Spirit album that contained Taurus. See SGI 13-15. Defendants' assertion that the *Spirit* album and "Taurus" were not widely distributed before 1971 is pure fantasy.

Third, all surviving members of Led Zeppelin admitted to playing Spirit's

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1  music at Led Zeppelin's concerts—namely a song named Fresh Garbage—meaning
2  they were intimately familiar with Spirit and its music. SGI 67. Zeppelin played
3  shows and festivals with Spirit, including its first show in the United States where
4  Led Zeppelin opened for Spirit in Denver, Colorado on December 26, 1968. SGI 37.
5  Spirit bassist Mark Andes remembers performing Taurus at that concert. Id. Led
6  Zeppelin members attended Spirit's concerts regularly and were familiar with
7  Spirit's music as Spirit was a popular band at the time. PAF 21.

8  **V.    THERE IS SUBSTANTIAL SIMILARITY – INDEED STRIKING**
9  **SIMILARITY -- BETWEEN *TAURUS* AND *STAIRWAY TO HEAVEN*.**

10      The public and the music world have long recognized the substantial
11  similarity between *Taurus* and *Stairway to Heaven*. Moreover, Plaintiff has
12  submitted declarations from four highly qualified music experts who testified that
13  the similarity is so striking that it could not be mere coincidence. SGI 110. It is not
14  only the guitar parts that are strikingly similar between the songs, *Stairway to*
15  *Heaven's* vocal melody, allegedly written by Plant, copies a significant portion of
16  *Taurus*' harpsichord melody, showing that the similarities between the songs cannot
17  possibly the result of some sort coincidence, as Defendants contend. PAF 70.

18      Further, Led Zeppelin's extensive and admitted history of copyright
19  infringement and music theft must also be taken into account. Page and Plant
20  admitted in their depositions that Led Zeppelin routinely took other people's songs
21  as an "original source" and used them to create Led Zeppelin's music. PAF 39-53.

22      Seven times, by means of litigation or the threat of litigation, Led Zeppelin
23  has been compelled to change the writing credits on their songs. PAF 50. There are
24  over sixteen songs in Led Zeppelin's catalogue which unmistakably borrowed from
25  other artists without credit. PAF 47. Plant also talked about Led Zeppelin's
26  ignominious history of lifting music from other artists without credit or attribution in
27  an NPR interview with Terry Gross in 2004. PAF 46. Plant acknowledged that he
28  lifted vocal melodies from other music, and that such lifting was naïve and

8

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1  irresponsible, but that Led Zeppelin had viewed it as "part of the game." Id. This

2  course of conduct resulted in lawsuits and in Led Zeppelin repeatedly changing the

3  credits for their songs, including for "Dazed and Confused," "Babe I'm Gonna

4  Leave You," "Whole Lotta Love," "How Many More Times," "The Lemon Song,"

5  "Bring it On Home," and "When the Levee Breaks." PAF 39-50. There is no other

6  band in rock history who has been compelled to change the writing credits on its

7  songs so many times, as Plant admitted at his deposition. PAF 45. The fact of the

8  matter is that Led Zeppelin's songwriting process heavily relied upon taking other

9  people's music and passing it off as their own.

10     The objective evidence shows that for almost a year before *Stairway to*

11  *Heaven* became a full song, Page claimed that the only portion that had been written

12  was the guitar introduction, which later also became the verse for the entire first half

13  of the song. Page states in an audio interview given to ZigZag magazine that he and

14  Robert Plant worked on the song at a Welsh cottage named Bron-yr-Aur in late 1970

15  and that the guitar and the first verse is what they had when they left the cottage.

16  PAF 36. This was confirmed by an audio interview of band member John Paul

17  Jones.  PAF 36-37. Otherwise stated, *Stairway to Heaven* was originally *only* Taurus

18  and the rest was written later.

19       A.   **This Case Satisfies the "Substantial Similarity Test" for Copyright**

20            **Infringement of a Musical Composition.**

21     For copyright infringement, the court applies the extrinsic test to determine

22  whether the two works meet the necessary degree of similarity. *Swirsky v. Carey*,

23  376 F.3d 841, 845 (9th Cir. 2004). The extrinsic test requires an "analytical

24  dissection of a work and expert testimony." *Id.* "Analytical dissection" requires

25  examining the works in "their constituent elements, and comparing those elements

26  for proof of copying as measured by 'substantial similarity.'" *Id.* "Expert testimony"

27  considers whether the compositions are identical on paper and their "structural

28  context," including harmony, rhythm, and meter. *Id.* at 847.

9

1    There are two aspects to Plaintiff's substantial similarity argument: the guitar
2    and harpsichord in *Taurus*.

3    The guitar is the most noticeable and instantly recognizable similarity
4    between the compositions of *Taurus* and *Stairway to Heaven*. In Defendants' own
5    words, *Stairway to Heaven* contains two basic parts: Part A, which is the guitar
6    Plaintiff assert was copied, and Part B. The first 2 minutes and 14 seconds of
7    *Stairway to Heaven* can be summarized as follows: (1) Part A repeats twice and is
8    followed by Part B; then (2) Part A repeats twice again, and is again followed by
9    Part B; and (3) Part A repeats twice again. Part A is nearly identical to Taurus.
10   Stewart Decl., ¶24.

11   Part A of Stairway is nearly identical to Taurus.[1] Plaintiff's experts are clear
12   that the guitar in Taurus and in the iconic first half of Stairway to Heaven are nearly
13   identical note for note. Indeed, simply playing the recordings back to back makes it
14   immediately clear that a triable dispute of fact exists as to whether Taurus and
15   Stairway to Heaven are substantially similar. Furthermore, if the recordings are
16   discarded and a session musician simply plays the two guitar compositions in the
17   two songs back to back, or even over each other, they are virtually indistinguishable.
18   Bricklin Decl., Audio Exhibits. Indeed, Defendants have submitted the expert report
19   of Mathes, which contained Mathes playing Stairway and then playing Taurus.
20   Bricklin Decl., Audio Exhibit 45, 46, 47. When Mathes's two recordings of him
21   playing Stairway and Taurus are played over each other, they are objectively almost
22   indistinguishable. Bricklin Decl., Audio Exhibit 45, 46, 47.

23   The simple fact of the matter is that there is a dispute of material fact for the
24   jury on substantial similarity. Stewart Decl., ¶9-10, 24. Note that defendant Page is
25   claiming that despite these unmistakable similarities he actually based Stairway to
26   Heaven on Chim Chim Cher-ee from Mary Poppins. A comparison of the Taurus,

27

28   _____

[1] Thus, of the first 2:14 of Stairway to Heaven six out of the eight parts is the guitar

10

1  Stairway to Heaven, and Chim Chim Cher-ee is sufficient to dispel this ludicrous

2  assertion.

3       In addition to the iconic guitar in Stairway to Heaven, the substantial

4  similarity comparison must also take into account that Robert Plant's vocal melody

5  lifts from the harpsichord melody in Taurus. Robert Plant's vocal melody is very

6  similar to the harpsichord melody in Taurus. Stewart Decl., ¶20-23. Notably, Plant's

7  copying of the harpsichord melody was done in the first half of Stairway to Heaven,

8  the same part where Page copied Taurus's guitar.

9       **B**.   **The Inverse Ratio Rule Applies In this Case.**

10      Although it should not be necessary to resort to the Inverse Ratio Rule, if it

11 were in question the rule would apply to this case.  The stronger the proof of access

12 the lower the burden on Plaintiff to prove substantial similarity. *Benay*, 607 F.3d at

13 624.

14      **C**.   **The Composition in Question is Unique and Protectable.**

15      Defendants argue that the chord progression in *Taurus* is common, just a

16 "minor line cliché," and not protected. To support this argument the only case cited

17 is Smith v. Jackson, 84 F.3d 1213, 1216 n3 (9th Cir. 1996)  which provides that

18 common or trite musical elements are not protected. The music in question is not

19 common or trite. Stewart Decl., ¶9-10. Defendants ignore Ninth Circuit precedent:

20
21      an arrangement of a limited number of notes can garner copyright
        protection. *See Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp.
22      741, 744 (S.D.N.Y.1980) (finding that four notes were substantial
        enough to be protected by copyright); *Santrayll v. Burrell,* 1996 WL
23      134803, at *2 (S.D.N.Y. Mar.25, 1996) (finding that the repetition of
        the word "uhoh" four times in a distinctive rhythm for one measure is
24      sufficiently original to render it protectable under the copyright laws).
        This Court has stated that "[e ]ven if a copied portion be relatively
25      small in proportion to the entire work, if qualitatively important, the
        finder of fact may properly find substantial similarity."
26
27
   _____
28
   composition taken from Taurus.

1  *Baxter v.MCA, Inc.,* 812 F.2d 421, 425(9th Cir. 1987);  *Swirsky*, 376 F.3d at 851-52.

2  Indeed, even combinations of unprotectable elements are protectable. Id. at 849.

3      First, Plaintiff's' experts are clear that the musical composition of Taurus, and

4  also of Stairway to Heaven are not some "minor line cliché." Stewart Decl., ¶50.

5  Indeed, Defendants anemic argument that Taurus is not protectable does not survive

6  an examination of Defendants' own depositions. Defendant Page admitted that the

7  iconic introduction to Stairway, which defense counsel are now calling a minor line

8  cliché, was just an important part of the song as any of the others. SGS 86. His

9  lawyers now attempt to create legal argument to the contrary.

10      Second, Page invokes the "Mary Poppins Defense," by claiming that he came

11  up with *Stairway to Heaven* from listening to Chim Chim Cher-ee in Mary Poppins,

12  as if this is proof how common the musical elements in question are. SGI 116. This

13  is flatly absurd as simply listening to the Stairway, Taurus, and Chim Chim Cher-ee

14  suffices to demonstrate. First, *Chim Chim Cher-ee* sounds nothing like *Stairway to*

15  *Heaven*, while *Taurus* sounds almost identical to it. Page's invocation of a song

16  from Mary Poppins sounds like the defense team had a musicologist comb through

17  every possible piece of music on the planet for a similar chord progression. Id. That

18  all they found was Chim Chim Cher-ee is damning. Second, for a piece to be

19  considered so common as to be unprotectable it has to be (1) used same field of

20  music as the subject of the songs in the lawsuit: rock and roll, and (2) used many

21  times. Swirsky, 376 F.3d at 850. Not even Defendants are claiming *Chim Chim*

22  *Cher-ee* is a rock song, and the other examples they present are not in the rock genre

23  or were created well after Taurus in 1966. Stewart Decl. at ¶41-45. The examples

24  proffered by Defendants post 1967 are not remotely similar to *Taurus* and *Stairway*.

25      Defendants further admitted that the first 2:14 of *Stairway to Heaven* only

26  included the instruments of guitar (written by Page) and recorder (written by Jones).

27  The two people credited with writing the song are Page and Plant. When Jones was

28  asked why he did not receive credit for the recorder, he stated that it was not

12

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1   significant. Thus, the only instrumental part of the first 2:14 that received any credit
2   was the guitar allegedly composed by Page. It is this guitar chord progression that
3   Page copied almost note for note from Taurus. SGI The fact that Page is claiming
4   writing credit for this part of the song, and admits that this part of Stairway is
5   important, is enough to dispel the notion this arrangement of notes is not entitled to
6   copyright protection. Defendants want to eat their cake and have it too, arguing that
7   *their* song is protectable and iconic but that Plaintiff's song is merely a common
8   chord progression. They cannot have it both ways. Note that the opening notes to
9   *Stairway to Heaven* are probably the most iconic notes in rock and roll history, but
10  Led Zeppelin is now trying to argue that they are inconsequential. Even deceased
11  Zeppelin drummer, John Bonham, was quite clear though that the opening notes had
12  incredible significance to Led Zeppelin's fans and audience, something Robert Plant
13  agreed with at his deposition.  SGI 107-122.

14      The fact of the matter is that Led Zeppelin has for years, whenever confronted
15  with their mass copying of music, justified their illicit practices by claiming that
16  they believed that the music they took was common or that musicians always borrow
17  from each other. PAF 46. This is the same argument that they have been using for
18  years to justify their serial, mass theft of music which they used to write a large
19  chunk of their catalogue. It should be disregarded. Led Zeppelin routinely used other
20  people's songs to create their material, often altering it very little and claiming it was
21  their own, and in the process accrued massive fame and fortune. Now they must
22  suffer the consequences for this behavior.

23  **VI**.   **TAURUS IS NOT A WORK FOR HIRE AS IT WAS CREATED**
24          **BEFORE ANY PUBLISHING OR RECORDING CONTRACT WAS**
            **SIGNED.**
25      For artistic expression to be a work for hire, that provision must be in a signed
26  contract that was reduced to writing before the creation of the work began. *Gladwell*
27  *Govt. Services Inc. v. County of Marin*, 265 Fed. Appx. 624 2008 WL 268268 (9th
28  Cir. 2008); *see also Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 558-59 (2d Cir

1   .1995); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 412-13 (7th Cir.

2   1992) ("The writing must precede the creation of the property" to qualify as a work-

3   for-hire agreement.)

4          Defendants claim that Taurus is a work for hire because of a publishing

5   contract Randy signed on August 28, 1967, with Hollenbeck Music that purports to

6   label his music as work for hire. This argument is erroneous. Work for Hire

7   contracts only apply to works created after the contract is reduced to writing and

8   signed. *Gladwell Govt. Services Inc*, 265 Fed. Appx. 624 2008 WL 268268; *see also*

9   *Dumas*, 53 F.3d at 558-59; *Schiller & Schmidt*, 969 F.2d at 412-13. Defendants

10  ignore that there is undisputed evidence in the record that *Taurus* was created and

11  performed starting in 1966. Spirit's original bassist, Mark Andes, stated under oath

12  in his deposition that Randy had created and written Taurus well before August 28,

13  1967. His two sisters testified that Randy wrote the song in 1966 shortly after the

14  family returned from living in New York about his then-girlfriend, Robin. PAF 1-14.

15         Further, Plaintiff has produced several recordings from 1967 of Spirit playing

16  *Taurus* in concert in the months before August 28, 1967. Randy's sisters testified

17  that Spirit had a regular gig at the Ash Grove in Hollywood and that *Taurus* was

18  routinely played live at this venue, of which authenticated recordings of those

19  concerts prove. There is an overwhelming amount of undisputed evidence from

20  Janet Wolfe, Andrea Wolfe Baum, Mark Andes, and Jay Ferguson, and Barry

21  Hanson that *Taurus* was created and written before the August 28, 1967 contract

22  was written and signed. When the copyright was registered by Hollenbeck Music it

23  stated that Randy California was the author. Randy California renewed the copyright

24  in 1996 as the author of the work in question. PAF 1-14.

25         Defendants also claim that Plaintiff failed to answer a request for admissions

26  in a timely manner and that therefore Plaintiff has admitted the work is a work for

27  hire.  Plaintiff's counsel understood that he had been granted an extension because

28  the trustee of the plaintiff was in a serious accident and thus unavailable to verify the

14

1   answers at the time. The admissions were fully answered, and denied, by Plaintiff

2   and Plaintiff's counsel repeatedly worked with Defendants to supplement discovery

3   answers as needed to avoid motion practice. At the time, Defendants never informed

4   Plaintiff that objections had been waived or matters had been deemed admitted.  It

5   was not until very recently, when it was too late to file a motion, that Defendants

6   suddenly sprung the argument on Plaintiff. Malofiy Decl., ¶24-27. The argument

7   that *Taurus* was a work-for-hire is directly contradicted by uncontroverted,

8   voluminous evidence in the record. Defendants have made no attempt to show that

9   they were prejudiced whatsoever by the discovery submission they claim was

10   untimely. See Conlon v. U.S., 474 F.3d 616, 621-23 (9th Cir. 2007)

11   **VII.   RANDY DID NOT ABANDON OR WAIVE HIS CLAIMS.**

12        Defendants have not presented any evidence that Randy California clearly

13   manifested his intent to waive or abandonment his copyrights in *Taurus*.  To find

14   abandonment, "the copyright owner must have clearly manifested that intention

15   through some affirmative act." *Hadady Corp. V. Dean Witter Reynolds, Inc.*, 739 F.

16   Supp. 1392, 1398-99 (C.D. Cal. 1990). "What does or does not constitute

17   abandonment appears to be a highly fact-specific inquiry." *Marya v.*

18   *Warner/Chappell Music, Inc.*, 2015 WL 5568497, at *11 (C.D. Cal. Sept. 22, 2015)

19   (describing waiver/abandonment ruling of numerous cases from the "early to mid-

20   Twentieth Century" to "recent cases."); *see also Melchizedek v. Holt*, 792 F. Supp.

21   2d 1042, 1053 (D. Ariz. 2011) ("There is a disputed issue of material fact" as to

22   whether "Plaintiff's copyright-related statements" constitutes an overt act indicating

23   intent to abandon."); *Oracle Am., Inc. v. Goggle Inc.*, 2012 WL 1965778, at *2

24   (N.D. Cal. May 31, 2012) ("several congratulatory communications do not, …

25   constitute a clear indication that Oracle … intended to relinquish its rights").

26        The sole piece of evidence Defendants try to use to support their

27   waiver/abandonment argument is an unapproved quote by Randy taken entirely out

28   of context.  Instead of providing this Court with the audio tape of the interview,

15

1    Defendants cite to an excerpt of it which was published without his approval.
2    However, the audio tape of the interview makes it clear that Randy felt he was
3    ripped off by Led Zeppelin, that his song was not taken with his permission and that
4    he was upset, but saving face and trying to joke about a bad situation. SGI 91.

5         Even in isolation, the quote Defendants' rely on does not indicate California
6    "clearly and unambiguously manifested his intent to abandon any copyright
7    protection." *See Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148,
8    1178 (S.D. Fla. 2006) aff'd, 527 F.3d 1218 (11th Cir. 2008) (waiver where architect
9    signed a letter stating he "reserve[d] no patent, trademark, copyright" in the work);
10   *Hadady Corp.* (waiver where plaintiff distributed newsletter which unequivocally
11   stated that copyright would last for two days only).  To the contrary, Randy's quote
12   is akin to statements held insufficient to demonstrate waiver or abandonment.  *See
13   e.g. Melchizedek*, 792 F. Supp. 2d at 1053 ("excerpt from Plaintiff's remarks 'just
14   take it'" insufficient to establish waiver/abandonment of copyright as a matter of
15   law); *Marya*, 2015 WL 5568497, at *11 (passage from TIME magazine "Lyricist
16   Patty Hill, … had no complaint to make on the use of the words because she long
17   ago resigned herself to the fact that her ditty had become common property to the
18   notion did not establish as a matter of law that she had "abandoned her copyright
19   interest in the lyrics.)

20        At a minimum, the testimony of several witnesses raises a triable issue of
21   whether Randy had abandoned/waived his copyrights in Taurus.  Spirit historian,
22   Bruce Pates, Linda Mensch, an intellectual property attorney in Chicago who met
23   with Randy in the early 1990s, Randy's lifelong best friend, Paul Franklin, former
24   members of spirit, Dave Waterbury, Tracy Long and the Lee brothers all attest that
25   Randy was extremely upset about the theft of his song in the 1970s, in the 1980s and
26   the 1990s, and that he repeatedly thought about pursuing a suit before his untimely
27   death.  Randy's statements and behavior throughout the years certainly do not
28   support Defendants' ludicrous contention that he clearly and unambiguously waived

16

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1  or abandoned his copyrights in *Taurus*. SGI 91.

2  **VIII.  THIS CASE IS NOT BARRED BY LACHES.**

3      In *Petrella v. Metro Goldwyn Mayer, Inc,* 134 S. Ct. 1062 (2014). The

4  Supreme Court held that a copyright infringement claim can never be barred by the

5  passage of time, or by laches.  Of course, for the calculation of damages the court

6  can only consider the period starting three years before the suit was brought.  The

7  Copyright Act expressly grants "legal or beneficial owners" equal right to sue within

8  three years of any infringing act.  Silvers v. Sony Pictures Entm't, Inc., 402 F.3d

9  881, 884 (9th Cir. 2005) ; 17 U.S.C. §§ 501 (b) ; 507 .  As to equitable relief, laches

10  will only warrant a threshold dismissal in "extraordinary circumstances" where the

11  relief requested amounts to "total destruction" of the work.  Id. at 1267, 1974.

12      Laches does not bar copyright infringement claims just because they are filed

13  by a beneficial owner as opposed to a legal owner. The Copyright Act confers

14  standing both to a beneficial or legal owner and the fact that one versus the other

15  brings suit, is not determinative of whether laches apply.  The focus should be on the

16  *relief sought* and not *on the identity of the party* bringing the claim.  Id.; see also

17  Mot. 10 ("legal relief" versus "equitable relief.")  The case cited by Defendants do

18  not state otherwise. See *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136,

19  1144 (9th Cir. 2003)  (standing to sue based on express language of the copyright act

20  section 501(b) and rejecting Cortner v. Israel's language in which Defendants rely

21  because it did not address beneficial owners in the context of work for hire).

22      Moreover, even assuming a claim for a beneficial owner can be considered an

23  "equitable relief," *Petrella* unequivocally held: "As to equitable relief, in

24  extraordinary circumstances, laches may bar at the very threshold the particular

25  relief requested by plaintiff." Id. at 1262.  "Extraordinary circumstances" are the

26  ones in which the equitable relief requested would result in "total destruction" of the

27  work.  Id. at 1978 (discussing *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d

28  227 (6th Cir. 2007)  (denying request for order to demolish housing project based on

17

1   copyrighted architectural design because plaintiff waited years to file suit and failed

2   to take steps to halt the construction until the project was occupied); *New Era*

3   *Publications Int'l, ApS v. Henry Holt & Co.*, 873 F.2d 576, 584 (2d Cir. 1989)

4   (allowing plaintiff to recover "its damages remedy" but denying injunctive relief

5   ordering "total destruction" of the books because plaintiff waited until books were

6   printed and distributed before suing).  Clearly, asking Defendants to disgorge profits

7   from the infringing work and credit Randy California for his original composition

8   does not result in the "total destruction" of *Stairway to Heaven*.  Thus, laches cannot

9   operate as a complete bar to Plaintiff's claim.

10  **IX.   DEFENDANTS' DEPOSIT COPY ARGUMENT MISSES THE MARK.**

11       Defendants' attempt to claim that only the deposit copy of Taurus should be

12  used in the relevant comparisons. This is simply not accurate and Defendants do not

13  support their argument with any applicable case law. The deposit copy of Taurus

14  does not reflect the entirety of the musical composition in a work, which is instead

15  reflected by the composition of Taurus embodied in the 49-year old sound recording.

16  Stewart Decl., ¶29-33.

17       The deposit requirement under 17 U.S.C. § 408(b)  "is to identify the

18  copyrighted work for the purposes of registration." Paul Goldstein, Goldstein on

19  Copyright § 3.8 (2013) . "Although the 1909 Copyright Act requires the owner to

20  deposit a 'complete copy' of the work with the copyright office, [the Ninth Circuit's]

21  definition of a 'complete copy' is broad and deferential*:* 'Absent intent to defraud

22  and prejudice, inaccuracies in copyright registrations do not bar actions for

23  infringement.' " Three Boys Music Corp., 212 F.3d at 486 (citing Harris v. Emus

24  Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)) ; see also Scentsy, Inc. v. B.R.

25  Chase, 942 F. Supp. 2d 1045, 1050 (D. Idaho 2013)  (finding that identification

26  materials are not required to disclose every element in which they claim a copyright);

27  KnowledgePlex, Inc. v. Placebase, Inc., C 08-4267 JF (RS), 2008 WL 5245484, at

28  *10 (N.D. Cal. Dec. 17, 2008)  (finding the Ninth Circuit has rejected the argument

1    that claims are limited to the scope of the deposit copy). Indeed, under the 1909 Act,

2    a claimant could not submit a recording of the composition in lieu of a lead sheet. <u>See</u>

3    Copyright Act of 1909, § 12, 35 Stat. 1075 (1909)  (repealed 1978).

4         Moreover, Defendants only cite <u>Newton v. Diamond</u> to support their argument,

5    a largely inapposite case focused on different issue. In <u>Newton</u>, which applied the

6    1976 Copyright Act, the sound recording had been licensed but the underlying

7    composition had not. <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244, 1249 (C.D. Cal.

8    2002), <u>aff'd</u> 388 F.3d 1189. The Court found that the use of the composition was de

9    minimis. <u>Newton</u> simply did not address when the composition contained in a sound

10   recording can be used as proof of the protected compositional elements of a work.

11        The Ninth Circuit has held that the composition elements reflected in a sound

12   recording, even if not on the deposit lead sheet, are to be considered by a jury. <u>Three</u>

13   <u>Boys Music Corp.</u>, 212 F.3d at 486-87. If the differences do not result in prejudice

14   and are not the result of fraudulent intent, then the consideration of the composition

15   in the sound recording is appropriate. <u>Id.</u> Here, there is no prejudice and no fraud—

16   nor do Defendants attempt to argue there is any. Defendants' own expert, Mathes,

17   demonstrated the relevance and necessity of examining the composition of the sound

18   recording of "Taurus" as his expert report explicitly compares the composition in the

19   sound recording of "Taurus" to the sound recording of Stairway to Heaven. Stewart

20   Decl. ¶32-33. When the opposing party's *own expert* admits the relevance of the

21   composition in the sound recording it is an unambiguous sign that Defendants are

22   well aware of the material being compared and that they have suffered no prejudice.

23        To be clear, Plaintiff is not and has never argued that the specific performance

24   related aspect of Taurus's sound recordings are protected. He has always argued that

25   the underlying composition was taken and used in Stairway. Plaintiff's experts were

26   explicit that they had disregarded specific performance related elements for the

27   substantial similarity comparison. Stewart Decl., at ¶51.

28        The fact that Defendants seek to obscure is that lead sheets are often not

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1    detailed and do not represent the entirety of the protected composition. Stewart Decl.,

2    at ¶33; *KnowledgePlex, Inc. v. Placebase, Inc.*, C 08-4267 JF (RS), 2008 WL

3    5245484, at *9 (N.D. Cal. Dec. 17, 2008) . An excellent example of this is the lead

4    sheet deposit copy submitted for *Stairway to Heaven* is significantly incomplete

5    when compared to the actual composition of the song. Stewart Decl., at ¶33. The fact

6    of the matter is that all parties are explicitly aware of the compositional comparison

7    being conducted in this lawsuit and Defendants cannot demonstrate any prejudice

8    whatsoever that the deposit copy of Taurus, like Stairway to Heaven, does not

9    explicitly identify every protected compositional element.

10    **X.**   **The Partial Motion for Summary Judgment Should be Denied**

11         Defendants claim there are no striking similarities. Plaintiff's experts

12    vehemently disagree. Defendants also argue that no extraterritorial profits can be

13    examined. Under the predicate act doctrine, initial acts of copying allow recovery of

14    international profits. Plaintiff has shown evidence that Page asked California how to

15    play Taurus at a show in the United States (the only country where they played

16    together), and that Led Zeppelin mixed Stairway at Sunset Studios in Los Angeles.

17    **XI.**   **CONCLUSION.**

18         For the reasons stated above, there are triable issues of fact which preclude

19    granting summary judgment or, in the alternative, partial summary judgment.

20                                   **\*\*\*\*\***

      *Dated: March 7, 2016*              *Respectfully submitted,*

21                                    Francis Alexander, LLC

22                                    */s/ Francis Alexander Malofiy*

23                                    Francis Alexander Malofiy, Esquire

                                     Attorney ID No.:  208494

24                                    280 N. Providence Road | Suite 105

25                                    Media, PA 19063

                                     T:  (215) 500-1000

26                                    F:  (215) 500-1005

27                                    E:  francis@francisalexander.com

28

1   Francis Malofiy, Esq.
2   Francis Alexander, LLC
    280 N. Providence Rd. | Suite 105
3   Media, PA 19063
    T: (215) 500-1000; F: (215) 500-1005
4   E: francis@francisalexander.com
5   *Attorney for Plaintiff*

6
    Glen L. Kulik, Esq. (SBN 082170)
7   Kulik Gottesman & Siegel LLP
8   15303 Ventura Blvd., Suite 1400
    Sherman Oaks, CA 91403
9   T: (310) 557-9200; F: (310) 557-0224
10  E: gkulik@kgslaw.com
    *Attorney for Plaintiff*
11

12                  **UNITED STATES DISTRICT COURT**

13            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15  MICHAEL SKIDMORE, as Trustee for       Case No. 15-cv-03462 RGK (AGRx)
    the RANDY CRAIG WOLFE TRUST,
16
                                            Hon. R. Gary Klausner
17              Plaintiff,

18        v.                                **STATEMENT OF GENUINE
                                            ISSUES OF PLAINTIFF MICHAEL**
19                                          **SKIDMORE AS TRUSTEE FOR**
    LED ZEPPELIN; JAMES PATRICK             **THE RANDY CRAIG WOLFE**
20  PAGE; ROBERT ANTHONY PLANT;             **TRUST IN OPPOSITION TO**
    JOHN PAUL JONES; SUPER HYPE             **MOTION FOR SUMMARY**
21  PUBLISHING, INC.; WARNER MUSIC          **JUDGMENT**
22  GROUP CORP., Parent of
    WARNER/CHAPPELL MUSIC, INC.;            **Date:   March 28, 2016**
23  ATLANTIC RECORDING                      **Time:   9:00 a.m.**
24  CORPORATION; RHINO                      **Room:**
    ENTERTAINMENT COMPANY,
25
26              Defendants.

27

28

---

Case No. 15-cv-03462 RGK (AGRx)        STATEMENT OF GENUINE ISSUES IN OPPOSITION TO
                                       DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael Skidmore as Trustee of the Randy Craig Wolfe Trust

("Plaintiff") respectfully submits the Statement of Genuine Issues in Support of

Plaintiff's Opposition to the Motion for Summary Judgment.

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| 1.    On August 29, 1967, Randy Wolfe ("Wolfe"), professionally known as Randy California, and the other members of the band Spirit entered into a recording contract with Ode Records, Inc., and Wolfe entered into an Exclusive Songwriter Agreement with Hollenbeck Music ("Hollenbeck"). *Evidence*:  First Am. Complaint ("FAC"; Doc. 31) at 6, ¶¶ 22, 24; Anderson Decl. at 1, ¶¶ 3-6; Ferguson Depo. (Anderson Decl. Exh. 8) at 22:22-23, 28:5-10, 28:15-25, 45:24 to 46:4, 238:1-11, 243:17-20, & Anderson Decl. Exh. 10 (deposition exhibit 347)[1] & Exh. 11; Andes Depo. (Anderson Decl. Exh. 9) at 16:22-24, 45:10-11; 46:8-12, 47:2-6, 48:14 to 49:5. | 1.    Undisputed. |

---

[1]  Unless otherwise specified, all references to "Exh." are to Exhibits to the Declaration of Peter J. Anderson.

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| 2.     Under the August 29, 1967 Exclusive Songwriter Agreement, Hollenbeck "employ[ed Wolfe] to render his services as a songwriter and composer . . . ." <br> *Evidence:* Exh. 11 at 1, ¶ 1. | 2.   Undisputed |
| 3.     Wolfe agreed in the August 29, 1967 Exclusive Songwriter Agreement that he "is deemed to be a 'writer for hire' hereunder with full rights of copyright renewal vested in [Hollenbeck]." <br> *Evidence:* Exh. 11 at 10, ¶ 11. | 3.   Disputed insofar as this fact purports to apply to works created before this agreement. <br><br> The Agreement expressly states the "term shall commence with the date hereof" August 29, 1967.  It does not and cannot apply retroactively. <br><br> *Evidence:*  Exh. 11 at 1, ¶2 [Term] |
| 4.     California law applies to the August 29, 1967 Exclusive Songwriter Agreement. <br> *Evidence:* Exh. 11 at 15, ¶ 16. | 4.   Disputed as a legal conclusion. |
| 5.     Plaintiff has produced no evidence that Wolfe disaffirmed the August 29, 1967 Exclusive Songwriter Agreement when he attained majority or at any time | 5.   Undisputed. |

2

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| thereafter.<br>*Evidence:* Anderson Decl. at 1-2, ¶ 7. | |
| 6.     On November 30, 1967, the Superior Court of the State of California entered its Order approving Hollenbeck's contract with Wolfe for his services as a songwriter.<br>*Evidence:* Anderson Decl. at 1, ¶ 8, & Exh. 12. | 6.     Undisputed. |
| 7.     After being twice warned that his prior discovery responses were late, plaintiff failed to respond to defendants' December 4, 2015 Request for Admissions, and he has not sought relief from his deemed admissions.<br>*Evidence:* Anderson Decl. at 2-3, ¶¶ 9-14, Exh. 13-15. | 7.     Disputed.<br><br>Plaintiff's counsel believed he had received an extension to the December 4, 2015.  He had communicated to Defendants that he was unable to reach his client, who was involved in a serious accident and was hospitalized during that time.<br><br>*Evidence:*   Francis Decl., ¶23-27 |
| 8.     Defendants' December 4, 2015 Request for Admissions included the requests that plaintiff admit that "The *Taurus* Composition is a work for hire," | 8.    Disputed as to the extent that it is used to determine that *Taurus* is a "work for hire."  Even assuming the request for admissions are deemed admitted, the |

3

**02442**

| | **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|---|
| 3 | "The *Taurus* Composition is a work for hire in which you contend that Randy Craig Wolfe was a beneficial owner" and "The *Taurus* Composition is a work for hire in which you claim beneficial ownership of the copyright as the successor to Randy Craig Wolfe." ***Evidence:*** Exh. 15 at 2:4-15. | Court is required to look at the totality of the evidence in deciding this legal issue. The undisputed evidence shows *Taurus* was created in 1966 prior to the term of the work-for-hire Agreement.<br><br>***Evidence:***<br>Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156;<br>Declaration of Barry Hansen, ¶1-2 & Emails; Declaration of Andrea Wolfe, ¶¶4-5; Declaration of Janet Wolfe; ¶¶4-5. |
| | 9.    After the August 29, 1967 recording contract and Exclusive Songwriter Agreement, the members of Spirit recorded in a recording studio their performances of various songs and a short instrumental called *Taurus*. ***Evidence:*** Ferguson Depo. (Anderson Exh. 8) at 197:15 to 198:1; Andes Depo. (Anderson Decl. 9) at 150:18 to 151:3, 156:7-16. | 9.    Disputed. Taurus was created in 1966 by Randy Craig Wolfe, recorded, and performed in concert many, many times before August 29, 1967.<br><br>***Evidence:***<br>Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156; Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore Decl., Exhibit 2; Declaration of Andrea Wolfe, ¶¶4-5; Declaration of Janet Wolfe; ¶¶4-5. |
| | 10.    Ode Records' recording of *Taurus* | 10.  Disputed. Adler added an orchestral |

4

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| was produced by Lou Adler and was the completed *Taurus*, with instruments and music that Spirit never performed live. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 198:12 to 199:2, 199:3-18; Andes Depo. (Anderson Decl. 9) at 158:2 to 160:14; Freeman Decl. at 1-2, ¶¶ 3-6, & Exh. 6 at 1-4. | introduction that was not played live and is insignificant to the song. *Evidence:* Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156, Exhibit 9 - Deposition of Jay Ferguson, at p.19-20. |
| 11.    On or about December 22, 1967, Hollenbeck, as owner, registered a copyright in the *Taurus* musical composition. *Evidence:* Anderson Decl. at 3, ¶ 15, & Exh. 16. | 11.    Disputed. The cited evidence only shows that Hollenbeck is listed as copyright claimant, and that Randy California is listed as the author. To the extent that this averment contends that Hollenbeck is the sole owner of the Copyright in *Taurus*, that is also disputed. *Evidence:* Anderson Decl., Exhibit 16 |
| 12.    Plaintiff has not produced in this action the deposit copy that accompanied Hollenbeck's 1967 registration of a copyright in the *Taurus* musical composition. *Evidence:* Anderson Decl. at 3, ¶ 16. | 12.    Disputed. The deposit copy has been produced in discovery. *Evidence:* Anderson Decl., Exhibit 17 |

5

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| 13.    While defendants obtained a copy of a *Taurus* transcription from the Library of Congress, it does not bear the Library of Congress' stamp, as does the *Stairway* deposit copy. *Evidence:* Anderson Decl. at 3, ¶ 17, & Exh. 16-17. | 13.    Undisputed. However, this fact is irrelevant. *Evidence:* |
| 14.    Ode Records, Inc., released its first Spirit album, titled *Spirit*, in 1967. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 46:10-19; Andes Depo. (Anderson Decl. Exh. 9) at 57:16-25. | 14.    Disputed. It was late 1967 or early 1968. *Evidence:* Janet Wolfe Decl., ¶7 |
| 15.    Ode Records' first Spirit album had eleven different recordings, including the recording of an instrumental composition titled *Taurus*. *Evidence:* Anderson Decl. at 3, ¶ 18, & Exh. 18; Ferrara Audio Exhibit 1 at Track 1. | 15.    Undisputed. |
| 16.    Ode Records' recording of *Taurus* includes a descending chromatic line and arpeggios, which are commonplace. *Evidence:* Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7, Exh. 2 (Stewart Report) at 4, ¶ 8. | 16.    Disputed. The descending chord line and arpeggios in Taurus are **not** commonplace. *Evidence:* Stewart Decl., ¶9-10, 50. |

6

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| 17.   A "single" is a song chosen from an album, to be played on the radio for promotion.<br>*Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 46:20 to 47:4, 47:10-14; Andes Depo. (Anderson Decl. Exh. 9) at 58:9 to 59:10. | 17.   Undisputed that singles are often played on the radio. |
| 18.   A recording of *Taurus* was not released as a "single."<br>*Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 48:2-8; Andes Depo. (Anderson Decl. Exh. 9) at 59:11-15, 60:3-4. | 18.   Undisputed. |
| 19.   There is no evidence that *Taurus* was played on the radio prior to the 1971 release of the album *Led Zeppelin IV*, with *Stairway to Heaven* ("*Stairway*").<br>*Evidence:*  Anderson Decl. at 4, ¶ 19. | 19.   Disputed.<br>*Evidence:*<br>Declaration of Mike Lee, ¶¶ 3-4;<br>Declaration of Robert Lee, ¶3. |

7

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| 20.    There is no evidence as to the extent of sales or other distribution of the first Spirit album prior to the 1971 release of the album *Led Zeppelin IV*, with *Stairway*.<br>***Evidence:*** Anderson Decl. at 4, ¶ 20. . | 20.    Disputed. "Spirit" the album and "Taurus" were sold all over the United States, England, and the world before 1971.<br>***Evidence:***<br>Malofiy Decl., Exhibit 2 – Page Interrogatory Response, ¶11, Exhibit 8 - Andes Depo., at p.56-57; Ferguson Decl., ¶6; Declaration of Mike Lee, ¶¶ 3-4; Declaration of Andrea Wolfe, ¶6; Declaration of Janet Wolfe, ¶7. Defendants' own statements of fact #13 admit that *Spirit* and "Taurus" was released for sale to the public. |
| 21.    Ode Records, Inc., released its second Spirit album, titled *The Family that Plays Together*, in 1968.<br>***Evidence:***  Ferguson Depo. (Anderson Decl. Exh. 8) at 49:18-21; Andes Depo. (Anderson Exh. 9) at 60:23 to 61:4. | 21.    Undisputed. |
| 22.    *The Family that Plays Together* was Spirit's first break out album, with Spirit's hit single, *I Got a Line on You*.<br>**Evidence**:  Ferguson Depo. (Anderson Decl. Exh. 8) at 51:10-16; Andes Depo. | 22.    It is not disputed that the album was successful, but the implication that Sprit's first album was not successful is disputed.<br>***Evidence:*** |

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| (Anderson Decl. Exh. 9) at 61:18-22, 62:5-23. | Declaration of Mike Lee, ¶¶ 3-4; Declaration of Andrea Wolfe, ¶6; Declaration of Janet Wolfe, ¶7. |
| 23.    When Spirit performed live, it supported its new or upcoming albums by performing songs from those albums, together with Spirit tent pole songs that did not include *Taurus*.<br>***Evidence:***  Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7, 53:22 to 54:21; Andes Depo. (Anderson Decl. Exh. 9) at 67:10-22, 68:7 to 69:9, 69:21 to 70:6, 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). | 23.    Disputed. Taurus was Randy California's favorite song and was played at nearly all of Spirit's early shows in the late 1960s, including shows that Led Zeppelin attended. Spirit member Jay Ferguson stated that the song was a feature and played very often.<br>***Evidence:***<br>Declaration of Janet Wolfe, ¶¶4-5, 7; Declaration of Andrea Wolfe, ¶¶4-6; Declaration of Mike Lee, ¶3-5 Malofiy Decl., Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21. |
| 24.    Of the 175 live Spirit performances from December 1968 to December 1971 that plaintiff claims occurred, *Taurus* was reportedly performed only at the Santa Monica, California, Civic Auditorium on May 29, 1970, and the Anaheim Convention Center in Anaheim, California at an unknown | 24.    Disputed. Misstates the evidence. Taurus was played often and was a "feature" song on the live Spirit performances from December 1968 to December 1971.<br>***Evidence:***<br>Declaration of Janet Wolfe, ¶¶4-5, 7; Declaration of Andrea Wolfe, ¶¶4-6 |

9

RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| date.<br>***Evidence:***   Anderson Decl. at 4, ¶ 22; Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:20, 71:19-22, 94:4-16, 95:12-14, 96:5-6, 96:22 to 97:2, 97:5 to 98:1, 98:9-13, 98:20 to 99:7, 100:11-22, 100:25 to 101:9, 177:19 to 178:17, & Anderson Decl. Exh. 21 (deposition exhibits, without audio CDs, 306 to 312); Andes Depo. (Anderson Decl. Exh. 9) at 78:8-21, 80:19-23, 82:24 to 83:2, 84:21-25, 85:1-14, 101:14, 101:25 to 102:4, 102:5-10, 102:19 to 103:4, & Anderson Decl. Exh. 20 (deposition exhibit 352). | Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21. |
| 25.    There is no evidence that Led Zeppelin's members were present at the Santa Monica Civic Auditorium or the Anaheim Convention Center when Spirit performed.<br>***Evidence:***   Anderson Decl. at 4, ¶ 24. | 25.    Undisputed. Plaintiff notes that this was not the only show that Taurus was played at.<br>***Evidence:***<br>Declaration of Janet Wolfe, ¶¶4-5, 7; Declaration of Andrea Wolfe, ¶¶4-6; Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21. |
| 26.    Spirit and Led Zeppelin never toured together. | 26.    Disputed.<br>***Evidence:*** |

10

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| **Evidence:**  Ferguson Depo. (Anderson Decl. Exh. 8) at 77:9-17. | Malofiy Decl., Exh. 1 [Page Depo], at p.419:2-14, 469:2-4, Exh. 7 [Jones Depo], p. 301:15-16; Longo. Decl., ¶19-21. |
| 27.    Spirit and Led Zeppelin never performed together and were never on the same stage at the same time. **Evidence:**  Page Decl. at 2, ¶ 10; Plant Decl. at 1, ¶ 7; Jones Decl. at 1, ¶ 10; Ferguson Depo. (Anderson Decl. Exh. 8) at 330:8-12. | 27.    Disputed. Jimmy Page asked Randy California how to perform Taurus. Furthermore, Led Zeppelin followed Spirit at the Atlanta Pop Festival and would have been close to the stage. **Evidence:** Longo Decl., ¶19-21; Malofiy Decl., Exhibit 8 – Andes Depo. at p.127:16-18, Exhibit 9 - Deposition of Jay Ferguson, at p.35:16-23. |
| 28.    The surviving members of Spirit have no recollection of ever speaking with, or seeing any other member of Spirit speak with, Jimmy Page, John Paul Jones or John Bonham. **Evidence:**  Ferguson Depo. (Anderson Decl. Exh. 8) at 87:2-18, 89:2-4, 89:8-9; Andes Depo. (Anderson Decl. Exh. 9) at 104:2-3, 104:13 to 105:2. | 28.    Disputed. Spirit's bassist starting in 1972, Larry "Fuzzy" Knight, spoke with Jimmy Page at an after party following a Spirit concert at the Rainbow in London on April 14, 1973. Knight also saw Jimmy Page and Randy California speaking that night. In addition, Defendants omit Robert Plant because there is voluminous evidence he had extensive interactions with Spirit's |

11

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| | members. |
| | *Evidence:* |
| | Knight Decl, at ¶7-13; Malofiy Decl., Exhibit 13 – Robert Plant Crash Article |
| 29.   At concerts, each band on the bill used its own guitars, amplifiers, keyboards, drums and other equipment, which took at least 15-20 minutes for road crews to set up or dismantle and remove between performances. *Evidence:* Page Decl. at 3, ¶ 14; Ferguson Depo. (Anderson Decl. Exh. 8) at 344:10 to 11; Andes Depo. (Anderson Decl. Exh. 9) at 89:4-12, 89:21-25. | 29.   Disputed. Andes Deposition says no such thing. He testified that "it would not be a long period of time." Moreover, at the December 26, 1968 concert Led Zeppelin had to borrow equipment from Spirit due to breakdowns. *Evidence:* Malofiy Decl, Exhibit 8 - Andes Deposition, at p.90:14-91:1; Longo Decl. at ¶16-18. |
| 30.   During equipment changes between bands, band members were not on stage. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 329:22 to 330:12, 346:13 to 347:6; Page Decl. at 3, ¶ 15. | 30.   Undisputed. However, Ferguson noted that a band "may be waiting to come on stage." *Evidence:* Malofiy Decl, Exhibit 9 – Ferguson Depo., at p.346:13-18. |
| 31.   On December 26, 1968, Led Zeppelin (in its first U.S. performance), Spirit and Vanilla Fudge – Vanilla Fudge being the headlining act that night – each played, separately, at the Arena | 31.   It is undisputed that Led Zeppelin opened for Spirit on that date, however there was significant interaction between the bands due to Zeppelin having broken equipment. |

12

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Auditorium in Denver, Colorado. *Evidence:* Page Decl. at 2:22-25; Plant Decl. at 1:24-27; Jones Decl. at 1, ¶ 8; Andes Depo. (Anderson Decl. Exh. 9) at 85:15-18. | *Evidence:* Longo Decl., ¶16-18. |
| 32.    There is no evidence that prior to December 26, 1968, Led Zeppelin and Spirit ever performed at the same venue on the same day. *Evidence:* Anderson Decl. at 4, ¶ 25. | 32.    Undisputed. *Evidence:* |
| 33.    When Spirit performed at the Arena Auditorium in Denver, Colorado on December 26, 1968, it was touring in support of its new album, *The Family that Plays Together*, playing songs from that new record and tent pole songs that did not include *Taurus*. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 53:22 to 44:21; 49:18-21, Andes Depo. (Anderson Decl. Exh. 9) at 60:23 to 61:4. | 33.    Disputed. Taurus was a feature song and was played very often by Spirit while on tour. *Evidence:* Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21. |
| 34.    The handbill for Spirit's performance on December 26, 1968, is captioned with the title of Ode Records' second Spirit album, "The Family that | 34.    Undisputed. *Evidence:* |

13

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Plays Together," and does not mention *Taurus*.<br><br>***Evidence:*** Andes Depo. (Anderson Decl. Exh. 9) at 92:14-17, 93:19 to 94:8, & Anderson Decl. Exh. 22 (deposition exhibit 320). | |
| 35.    When Spirit was not the headlining act – as was the case in Denver on December 26, 1968 – Spirit would play for as little as half an hour.<br><br>***Evidence:***   Ferguson Depo. (Anderson Decl. Exh. 8) at 43:21 to 44:9. | 35.    Disputed. This is a blatant mischaracterization of Ferguson's testimony. The testimony was that Spirit played 45 minutes to 1 hour on average, and up to an hour and half. Spirit only played for a half hour if they were the opener and time was running short. Spirit was not an opener on December 26, 1968—Led Zeppelin was.<br><br>***Evidence:***<br>Malofiy Decl., Exhibit 9 – Ferguson Depo., at 43:21 to 44:9. |
| 36.    The only known published review of the December 26, 1967 concert, identifies songs performed by Spirit and does not include *Taurus*.<br><br>***Evidence:***  Ferguson Depo. (Anderson Decl. Exh. 8) at 101:12 to 102:7, & Anderson Decl. Exh. 23 (deposition | 36.    Undisputed, but the news article exhibit in question only identifies two songs out of many that were played.<br><br>***Evidence:*** |

14

| | Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|---|
| 3 | exhibit 313) | |
| 4–21 | 37.   Other than – at his counsel's suggestion – Andes' testimony to a "faint recollection" that Spirit performed *Taurus* at the Denver Arena Auditorium, the evidence is that Spirit did not perform *Taurus* there.<br><br>**Evidence:**  Andes Depo. (Anderson Decl. Exh. 9) at 10:7-11, 94:11 to 95:5, 95:25 to 95:36, 97:9 to 99:9, 99:12 to 100:3; Ferguson Depo. (Anderson Decl. Exh. 38:24 to 39:1, 81:23 to 83:6. | 37.   Disputed. The evidence is that Andes has a recollection of performing Taurus in Denver on December 26, 1968, that Taurus was a feature song of Spirit, and that Spirit often played Taurus at shows. Defendants' gratuitous statement that Andes only had a faint recollection at counsel's suggestion is false and contradicted by his deposition testimony. Moreover, there is no evidence whatsoever that Taurus was not performed on December 26, 1968.<br><br>**Evidence:**<br>Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21, Exhibit 8 - Andes Deposition, at p.97-98, Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 22–27 | 38.   Andes testified that his testimony to a "faint recollection" that Spirit performed *Taurus* at the Denver Arena Auditorium, was based on the assumption it would have been typical to play it. | 38.   Disputed. The deposition speaks for itself, especially that a member of Spirit testified that Taurus was a commonly played song at that time.<br><br>**Evidence:**<br>Malofiy Decl., Exhibit 8 - Andes |

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| *Evidence:* Andes Depo. (Anderson Decl. Exh. 9) at 99:12 to 100:3. | Deposition, at p.97-98, Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 39.    Andes admitted, however, that a list of songs *Taurus* performed at a concert slightly more than a month later, was the songs they typically performed, and the list does not include *Taurus*.  *Evidence:*   Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10 to 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). | 39.    Disputed. Taurus is a song not a band. Andes and Ferguson's testimony was that Taurus was a feature song that was commonly played by Spirit.  *Evidence:*  Malofiy Decl., Exhibit 8 - Andes Deposition, at p.97-98, Exhibit 9 – Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 40.    Andes testified that Toby Roberts, who had helped the members of Led Zeppelin lease their first airplane, introduced him to the members at the Denver Arena Auditorium in December 1968.  *Evidence:*  Andes Depo. (Anderson Decl. Exh. 9) at 105:11 to 106:16. | 40.    Undisputed.  *Evidence:* |
| 41.    The members of Led Zeppelin did not know Toby Roberts in December 1968, Roberts was not involved in Led | 41.    Disputed. Andes has a clear recollection of Toby Roberts introducing the bands backstage in Denver in |

16

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Zeppelin's first U.S. performances and the members of Led Zeppelin did not lease their first airplane until 1973. *Evidence:* Page Decl. at 3, ¶ 16. | December 1968. *Evidence:* Malofiy Decl., Exhibit 8 - Andes Deposition, at p.105:13-108:16. |
| 42.   Andes does not recall anything that was said when Toby Roberts supposedly introduced him. *Evidence:*  Andes Depo. (Anderson Decl. Exh. 9) at 107:13-17. | 42.   Undisputed *Evidence:* |
| 43.   In any event, Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Arena Auditorium. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 103:1-4; Andes Depo. (Anderson Decl. Exh. 9) at 108:8-16. | 43.   Undisputed. *Evidence:* |
| 44.   The members of Led Zeppelin did not hear Spirit perform at the Arena Auditorium. *Evidence:*  Page Decl. at 2, ¶ 8, & at 3, ¶ 12; Plant Decl. at 1, ¶ 6, & at 2, ¶ 9; Jones Decl. at 1, ¶¶ 5-6, 8. | 44.   Disputed. The members of Led Zeppelin's declarations are not credible. They exhibited bafflingly selective memory loss when it came to knowing Spirit's music, its members, live shows, and Led Zeppelin's extensive history of using other people's music without credit. Almost everything that Led |

17

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| | Zeppelin testified about not knowing or recalling Spirit or its members is contradicted by news articles, sworn testimony of Spirit's band members, and interviews Page gave in the 1970s. Defendant Page claimed he could not ever remember seeing Spirit live, but was forced to admit this isn't correct. *Evidence:* Malofiy Decl., Exhibit 1 – Page Depo, p.460:6-467:9, 476-490, Exhibit 3 – New Musical Express Interview with Page, Exhibit 6 – Jones Depo. at 176-269; Exhibit 7 – Plant Depo., at p.297-355 |
| 45.    On July 5, 1969, Led Zeppelin and Spirit were among at least ten or more bands and performers that performed on the second day of the Atlanta Int'l Pop Festival held on July 4 and 5, 1969. *Evidence:* Page Decl. at 2:25-26, 2:27 to 3:2; Plant Decl. at 1:27-28, 2:1-3; Jones Decl. at 1-2, ¶ 9. | 45.    Undisputed. However, Led Zeppelin immediately followed Spirit. *Evidence:* Malofiy Decl., Exhibit 8 – Andes Depo, at p.127:16-18, Exhibit 9 – Ferguson Depo., at p.35:16-23, 104:3-6. |
| 46.    Led Zeppelin and Spirit performed separately at the Atlanta Int'l Pop | 46.    Undisputed. They did however play immediately after one another. |

18

**02457**

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Festival. *Evidence:* Ferguson Depo. (Anderson Decl. Exh. 8) at 329:8 to 330:12; Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. | *Evidence:* Malofiy Decl., Exhibit 8 – Andes Depo, at p.127:16-18, Exhibit 9 – Ferguson Depo., at p.35:16-23, 104:3-6. |
| 47.   Spirit's surviving members do not recall performing *Taurus* at the Atlanta Int'l Pop Festival. *Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 37:20 to 37:1, Andes Depo. (Anderson Decl. Exh. 9) at 129:3-5. | 47.   Undisputed. *Evidence:* |
| 48.   Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Atlanta Int'l Pop Festival. *Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 106:10-13, 108:6-10; Andes Depo. (Anderson Decl. Exh. 9) at 126:23 to 127:1, 127:10-25, 128:20-23. | 48.   Disputed. Andes clearly recalled meeting and conversing with Robert Plant when Led Zeppelin was going on stage after Spirit's set. *Evidence:* Malofiy Decl., Exhibit 8 – Andes Depo, at p.124:17 to 125:24. |
| 49.   The members of Led Zeppelin did not hear Spirit perform at the Atlanta Int'l Pop Festival. *Evidence:* Page Decl. at 3, ¶ 13; Plant | 49.   Disputed. The members of Led Zeppelin have selective memory loss regarding Spirit. Zeppelin immediately followed Spirit that day, and Andes |

19

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. | remembers interacting with Robert Plant backstage as Zeppelin was going on stage. *Evidence:* Malofiy Decl., Exhibit 1 – Page Depo, p.460:6-467:9, Exhibit 8 – Andes Depo, at p.109:2-15, 124:17 to 125:24; Exhibit 1 – Page Depo, p.460:6-467:9, 476-490, Exhibit 3 – New Musical Express Interview with Page, |
| 50.   On July 27, 1969, Led Zeppelin and Spirit were among at least ten or more bands and performers that performed on the third day of the Seattle Pop Festival held on July 25, 26 and 27, 1969. *Evidence:* Page Decl. at 2:26 to 3:2; Plant Decl. at 1:28 to 2:3; Jones Decl. at 1-2, ¶ 9. | 50.   Undisputed. *Evidence:* |
| 51.   Led Zeppelin and Spirit performed separately at the Seattle Pop Festival. *Evidence:*   Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. | 51.   Undisputed. *Evidence:* |
| 52.   Spirit's surviving members do not recall performing *Taurus* at the Seattle | 52.   Undisputed. *Evidence:* |

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Pop Festival. *Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 108:11-25; Andes Depo. (Anderson Decl. Exh. 9) at 130:20-22. | |
| 53.    Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. *Evidence:*   Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). | 53.     Disputed. Taurus was a feature song played often by Spirit as it was one of Randy California's favorite songs. *Evidence:* Malofiy Decl., Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 54.    A published review of the Seattle Pop Festival does not mention *Taurus*. *Evidence:*  Anderson Decl. at 5, ¶ 28, & Exh. 24 (deposition exhibit 317). | 54.     Disputed in part. The review does not mention any songs by any band and does not even mention Spirit. *Evidence:* Anderson Decl. at 5, ¶ 28, & Exh. 24 (deposition exhibit 317). |

21

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| 55.   Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Seattle Pop Festival.<br>***Evidence:***  Ferguson Depo. (Anderson Decl. Exh. 8) at 35:16-36:4, 37:10-18, 85:22 to 86:1, 108:11-25; Andes Depo. (Anderson Decl. Exh. 9) at 129:21-24, 130:6-17, 132:1-13, 136:1-10, 137:1 to 138:3. | 55.    Undisputed.<br>***Evidence:*** |
| 56.   The members of Led Zeppelin did not hear Spirit perform at the Seattle Pop Festival.<br>***Evidence:***  Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. | 56.    Disputed. The festival's posters indicate that Spirit and Led Zeppelin performed on the same day: July 27, 1969. Moreover, Defendant Page has a remarkable inability to recall anything about Spirit, contradicting multiple objective sources from the 1967 which state that he was very much aware of and appreciated the band.<br>***Evidence:***<br>Malofiy Decl., Exhibit 12 – Concert Posters, Exhibit 1 – Page Depo, p.460:6-467:9, 476-490, Exhibit 3 – New Musical Express Interview with Page, Exhibit 6 – Jones Depo. at 176-269; |

22

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| | Exhibit 7 – Plant Depo., at p.297-355 |
| 57.   The Texas Int'l Pop Festival took place over three days, and Spirit performed on the last day, September 1, 1969.<br>*Evidence:*   Ferguson Depo. (Anderson Decl. Exh. 8) at 115:4-8, 115:22-25. | 57.   Undisputed.<br>*Evidence:* |
| 58.   There is no evidence that Led Zeppelin performed on the same day as Spirit at the Texas Int'l Pop Festival.<br>*Evidence:*   Ferguson Depo. (Anderson Decl. Exh. 8) at 116:4 to 116:17. | 58.   Undisputed.<br>*Evidence:* |
| 59.   Led Zeppelin was not present at the Texas Int'l Pop Festival on the day that Spirit performed.<br>*Evidence:*   Andes Depo. (Anderson Decl. Exh. 9) at 140:21-25. | 59.   Disputed. The citation to Andes deposition does not support this averment. Andes says he has no recollection of Zeppelin performing.<br>*Evidence:* |
| 60.   Spirit's surviving members do not recall performing *Taurus* at the Texas Int'l Pop Festival.<br>*Evidence:*   Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:3; Andes Depo. (Anderson Decl. Exh. 9) at 101:7- | 60.   Undisputed.<br>*Evidence:* |

23

| | Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|---|
| 3 | 14, 138:9-17. | |
| 4 | 61.    Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. **Evidence:** Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). | 61.    Disputed. Taurus was a feature song played often by Spirit as it was one of Randy California's favorite songs. **Evidence:** Malofiy Decl., Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 13 | 62.    Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Texas Pop Festival. **Evidence:** Ferguson Depo. (Anderson Decl. Exh. 8) at 114:4-9; Andes Depo. (Anderson Decl. Exh. 9) at 140:21-25. | 62.    Undisputed. **Evidence:** |
| 20 | 63.    The members of Led Zeppelin were not present when Spirit performed at the Texas Pop Festival. **Evidence:** Page Decl. at 2-3, ¶¶ 9, 11; Plant Decl. at 1-2, ¶¶ 6, 8; Jones Decl. at 1, ¶ 5. | 63.    Undisputed. **Evidence:** |
| 26 | 64.    Although a poster for the Northern California Folk-Rock Festival in San | 64.    Disputed. The posters are evidence that Led Zeppelin performed at |

Case No. 15-cv-03462 RGK (AGRx)        RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Jose, California, on May 23-25, 1969, lists Led Zeppelin among 28 bands, there is no evidence that Led Zeppelin performed at that festival. **Evidence:** Ferguson Depo. (Anderson Decl. Exh. 8) at 89:18-25, 90:4-6; Andes Depo. (Anderson Decl. Exh. 9) at 122:3-8. | the festival. One poster states that Spirit and Led Zeppelin performed on the same day on Sunday July 27, 1969. **Evidence:** Malofiy, Decl., Exhibit 12 – Concerts Posters. |
| 65. Spirit's surviving members do not recall performing *Taurus* at the Northern California Folk-Rock Festival. **Evidence:** Ferguson Depo. (Anderson Decl. Exh. 8) at 89:18 to 25, 90:4-6; Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14. | 65. Undisputed **Evidence:** |
| 66. Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. **Evidence:** Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). | 66. Disputed. Taurus was a feature song of Spirit and was played often by Spirit as it was one of Randy California's favorite songs. **Evidence:** Malofiy Decl., Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |
| 67. Before coming to the U.S. in 1968, | 67. Disputed. The bass riff was the |

25

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| the members of Led Zeppelin had included in their live performances a medley that included a "bass riff" similar to the bass riff in a Spirit recording titled *Fresh Garbage*. <br> ***Evidence:***   Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. | riff from Fresh Garbage, or Led Zeppelin's attempt to play it. <br> ***Evidence:*** <br> Malofiy Decl., Exhibit 1 – Page Deposition, at p.388-90, 469; Exhibit 6 – Jones Deposition, at p.13-14. |
| 68.    *Fresh Garbage* was played on radio and included in a popular U.K. album titled *The Rock Machine Turns You On*, that combined recordings of many different groups, and that U.K. album did not include *Taurus*. <br> ***Evidence:***   Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. | 68.    Undisputed that Spirit's music was popular and played on the radio. <br> ***Evidence:*** |
| 69.    Before going to the U.S. in December 1968, members of Led Zeppelin were already familiar with *Fresh Garbage* from the radio and from the album, *The Rock Machine Turns You On*. <br> ***Evidence:***   Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. | 69.    It is not disputed that Spirit's music was played on the radio around the world, and sold on albums worldwide. <br> ***Evidence:*** |
| 70.    On or about January 31, 1970, Robert Plant and his wife were present | 70.    Undisputed. <br> ***Evidence:*** |

26

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| with friends at a local club, called Mothers, near his home in Birmingham, England, after which he and his wife were in an automobile accident while on the way home. | |
| 71.   No other member of Led Zeppelin was present at Mothers Club in January 1970.<br>*Evidence:*  Andes Depo. (Anderson Decl. Exh. 9) at 124:4-10. | 71.   Undisputed.<br>*Evidence:* |
| 72.   Spirit's surviving members testified that they saw Mr. Plant and, in a "meet-and-greet" that lasted 15 to 30 seconds, introduced themselves to him before Spirit performed at the other end of the club.<br>*Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 16:12-22, 17:14 to 18:1, 55:6 to 59:7, Andes Depo. (Anderson Decl. Exh. 9) at 111:17 to 112:3. | 72.   Disputed. Andes testified that in addition to the meet and greet he, Randy California, and John Locke spent the night after the concert partying with Robert Plant, playing snooker, and that they had extensive interaction.<br>*Evidence:*<br>Malofiy Decl., Exhibit 8 – Andes Deposition, at p.111:2 to 113:25. |
| 73.   Ode Records, Inc., released its third Spirit album, titled *Clear Spirit*, in October 1969.<br>*Evidence:*  Ferguson Depo. (Anderson Decl. Exh. 8) at 52:9-16, 53:2-9; Andes | 73.   Undisputed.<br>*Evidence:* |

27

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Depo. (Anderson Decl. Exh. 9) at 62:24 to 63:1, 63:20-23. | |
| 74.    Ode Records, Inc., released its fourth Spirit album, titled *Twelve Dreams of Dr. Sardonicus*, in 1970. ***Evidence:***   Ferguson Depo. (Anderson Decl. Exh. 8) at 53:10-21; Andes Depo. (Anderson Decl. Exh. 9) at 63:24 to 64:1. | 74.    Undisputed. ***Evidence:*** |
| 75.    Spirit's surviving members do not recall performing *Taurus* at Mothers Club in January 1970. ***Evidence:***   Ferguson Depo. (Anderson Decl. Exh. 8) at 21:4-9, 40:22 to 41:3; Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14. | 75.    Disputed. Ferguson testified that it could have been played because it was played often. The cited portion of Andes deposition has nothing to do with Mother's Club. ***Evidence:*** Malofiy Decl., Exhibit 9 – Ferguson Depo., at p.21:4-12. |
| 76.    Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. ***Evidence:***   Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 | 76.    Disputed. Taurus was a feature and played often by Spirit as it was one of Randy California's favorite songs. ***Evidence:*** Malofiy Decl., Ferguson Depo., at p.21:4-12, 38:2-21; Andrea Wolfe Decl., ¶5; Janet Wolfe Decl., at ¶5; |

28

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| (deposition exhibit 352). | |
| 77.   One of Spirit's surviving members contends that after Spirit's performance, he and other Spirit members went to a pub with Robert Plant, where they drank and played snooker.<br>***Evidence:***   Andes Depo. (Anderson Decl. Exh. 9) at 110:18 to 111: 1, 112:4 to 113:5. | 77.   Disputed. Andes does not "contend" this happened. He has a clear and distinct memory of this night because of Plant's car crash following the evening out.<br>***Evidence:***<br>Malofiy Decl., Exhibit 8 – Andes Depo., at p.111:2-113:25 |
| 78.   Spirit's other surviving member does not recall anything but briefly meeting Robert Plant at Mothers Club before Spirit began playing.<br>***Evidence:***   Ferguson Depo. (Anderson Decl. Exh. 8) at 59:1-7. | 78.   Disputed. Jay Ferguson was not present for the snooker game described by Andes.  Andes clearly testified that himself, Randy California, and John Locke were present. He did not mention Ed Cassidy or Jay Ferguson.<br>***Evidence:***<br>Malofiy Decl., Exhibit 8 – Andes Depo., at p.111:2-113:25 |
| 79.   Further, at the time pubs, by law, closed at 10 p.m. and well before Spirit would have finished performing at Mothers Club.<br>***Evidence:***   Plant Decl. at 2, ¶ 12. | 79.   Disputed as irrelevant. Andes recalls playing snooker with Robert Plant that night and several other members of Spirit.<br>***Evidence:***<br>Malofiy Decl., Exhibit 8 – Andes Depo., at p.111:2-113:25 |

29

| | **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|---|
| | 80.    In any event, Spirit's surviving members do not recall *Taurus* being played or discussed with Robert Plant in Birmingham, England. | 80.    Undisputed. It is noted that this happened in early 1970 well before Led Zeppelin even allegedly wrote Stairway to Heaven. |
| | *Evidence:*   Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:3, Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14, 112:25 to 113:1-5, 118:7-19. | *Evidence:* |
| | 81.    Andes also recalls speaking with Robert Plant, maybe in Atlanta, but they only exchanged pleasantries. | 81.    Disputed. The characterization of "exchanged pleasantries" is not accurate. They complimented each other and had a discussion. |
| | *Evidence:*   Andes Depo. (Anderson Decl. Exh. 9) at 108:23 to 110:14. | *Evidence:* Exhibit 8 – Andes Deposition, at p.109:2 to p.110:17, 124:14 to 125:24. |
| | 82.    The musical composition *Stairway* was created by Jimmy Page and Robert Plant in 1970, independently and without knowledge of *Taurus*. | 82.    Disputed. Page and Plant had knowledge of Taurus. They knew and appreciated Spirit's music, had seen them live, had listened to Spirit's albums, and had played Spirit's music live at Led Zeppelin's concerts. Page even possessed the Spirit album in question. Furthermore, Page asked Randy in 1969 how to play Taurus while backstage. The evidence shows that |
| | *Evidence:*   Page Decl. at 1, ¶¶ 3-4; Plant Decl. at 1, ¶¶ 3-4. | |

30

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| | Page and Plant wrote many of their songs by basing it on prior art and building from there. Moreover, the similarities between Taurus and Stairway to Heaven are striking. *Evidence:* Malofiy Decl., Exhibit 1 – Page Depo, p.460:6-467:9, 476-490, Exhibit 3 – New Musical Express Interview with Page, Exhibit 6 – Jones Depo. at 176-269; Exhibit 7 – Plant Depo., at p.297-355; Longo Decl., at ¶19-21 |
| 83.    *Stairway* was recorded in England in December 1970 to January 1971. *Evidence:*   Page Decl. at 1:15-16; Plant Decl. at 1:15-12-13; Jones Decl. at 1:10-11. | 83.     Disputed. The evidence indicates Page and Plant worked out the guitar introduction and first verse at Bron-yr-Aur, that they routined at Headley Grange, that they tracked at Island Studios, and that they mixed Stairway in Los Angeles at Sunset Studios, and that they remixed at Island. *Evidence:* Malofiy Decl, Exhibit 1 – Page Depo., at p.140-143. |
| 84.    Led Zeppelin first publicly | 84.     Undisputed. |

31

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| performed *Stairway* in March 1971 at Ulster Hall in Belfast, Northern Ireland. ***Evidence:*** Page Decl. at 1:16-17; Plant Decl. at 1:13-15; Jones Decl. at 1:11-13. | ***Evidence:*** |
| 85.   The untitled album commonly referred to as *Led Zeppelin IV*, which includes *Stairway*, was released to the public on November 8, 1971. ***Evidence:*** Page Decl. at 1:17-19; Plant Decl. at 1:15-17; Jones Decl. at 1:13-14. | 85.   Undisputed. ***Evidence:*** |
| 86.   *Stairway* begins with a minor line cliché and arpeggios, over which an ascending line is played. ***Evidence:*** Page Decl. at 1:20-21; Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 3-4, ¶¶ 9-13, & Exh. 1 at 4-5, ¶ 7, at 5-6, ¶¶ 10-12, at 7-8, ¶¶ 14-17. | 86.   Disputed. The opening notes of Stairway to Heaven are the most iconic in rock and roll. Defendant Page admitted that all parts of Stairway to Heaven are equally important in terms of songwriting credit. ***Evidence:*** Stewart Decl., ¶50. Malofiy Decl., Exhibit 1 – Page Depo. at p.365:4-18. |
| 87.   Long before 1968, Jimmy Page was aware of minor line clichés and arpeggios and had included similar music when he performed as a session guitarist. | 87.   Disputed. Defendants attempt to cast the opening notes to Stairway to Heaven, some of the most recognizable of all time, is unavailing. Furthermore, Ferrara is incorrect. The first chord is |

Case No. 15-cv-03462 RGK (AGRx)          RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| | **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|---|
| | *Evidence:*   Page Decl. at 1-2, ¶¶ 5-7; Ferrara Audio Exh. 1 at Track 15. | not A minor but G minor. In addition, the cited example that Page has long been aware of this was composed in 1969 or 1968. This is after Taurus was created, played live, and released. *Evidence:* Stewart Decl., ¶47. |
| | 88.    While he was with the Yardbirds and before Led Zeppelin was formed, Jimmy Page purchased a Sonic Wave, a Theremin-type devise [sic], in Los Angeles, California. *Evidence:*   Page Decl. at 4:1-2. | 88.    Disputed. *Evidence:* Malofiy Decl., Exhibit 15 – Get the Led Out by Denny Somach. |
| | 89.    Jimmy Page purchased the Sonic Wave after Jeff Beck told him that Brian Wilson of the Beach Boys used a Theremin in the 1966 song *Good Vibrations* and on tour. *Evidence:*   Page Decl. at 4:2-4. | 89.    Disputed. *Evidence:* Malofiy Decl., Exhibit 15 – Get the Led Out by Denny Somach. |
| | 90.    In 1991, Wolfe was interviewed in connection with the preparation of text – referred to as liner notes – to accompany the upcoming release of a two-CD album, titled *Time Circle*, combining a | 90.    Undisputed. *Evidence:* |

33

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| number of Spirit recordings.<br><br>***Evidence:***   Freeman Decl. at 3, ¶ 1, & Ruhlmann Depo. (Freeman Exh. 3) at 9:2-16, 10:11-17, 14:1-19, 15:7-16, 38:1-6; Ferguson Depo. (Anderson Decl. Exh. 8) at 183:13-17. | |
| 91.   In that interview, which was recorded, Wolfe stated that he was not bothered by the similarity between *Taurus* and *Stairway*, that he considered the band members friends, that "if they wanted to use" *Taurus* "that's fine," and "I'll let them have the beginning of Taurus for their song without a lawsuit" and he was "letting them off the hook."<br><br>***Evidence:***   Ruhlmann Depo. (Freeman Exh. 3) at 8:4-6, 8:18-25, 7:16 to 8:10; Freeman Decl. at 1-2, ¶¶ 4-6, & Exh. 4, Exh. 5, Exh. 6 at 5:1 to 8:4; Freeman Audio Exhibit 3 at 22 minutes 49 seconds to 27 minutes 25 seconds. | 91.   Disputed. Wolfe's comments were made in the context of Led Zeppelin ripping him off. Voluminous evidence shows that Wolfe was quite upset about the theft of his music but thought that he had little options. He repeatedly investigated whether he could bring suit following this interview indicating that that the comments in the nonpublic interview were not meant seriously or formally. Indeed, a careful listen to the audio confirms that Randy was making the best of a bad situation and, if anything, attempting to capitalize on the notoriety of having had Led Zeppelin steal his music for the most popular song in Rock history.<br><br>***Evidence:***<br>Declaration of David Waterbury, ¶4-6; |

34

**02473**

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| | Declaration of Paul Franklin, ¶7-9; Declaration of Tracy Longo, ¶27 and 2011 Email to Pates; Declaration of Bruce Pates, ¶; Declaration of Linda Mensch ¶2-6; Declaration of Mike Lee; Declaration of Robert Lee; Declaration of Barry Hanson; Freeman Audio Exhibit 3 at 22 minutes 49 seconds to 27 minutes 25 seconds. |
| 92.    In the text accompanying the album *Time Circle* released to the public in 1991, Wolfe is quoted as stating with respect to *Stairway*, that if Led Zeppelin wants to use it that is fine and "I'll let them have the beginning of 'Taurus' for their song." *Evidence:*   Freeman Decl. at 2, ¶ 7, & Exh. 7 (deposition exhibit 339) at 37. | 92.    Disputed. Wolfe never approved the quote in question, and the quote was made in the context of the fact Led Zeppelin had ripped him off. Voluminous evidence indicates that Randy repeatedly attempted to bring suit but did not have sufficient funds. *Evidence:* Malofiy Decl., Exhibit 21 - Deposition of William Ruhlmann, at p. |
| 93.    The quotation of Wolfe appearing in the text accompanying *Time Circle* is an accurate quotation of what Wolfe told the interviewer. *Evidence:*   Ruhlman Depo. (Freeman Exh. 3) at 9:9-16, 11: 15-25, 12:16 to | 93.    Disputed. The quote is taken out of context, and ignores the voluminous evidence in the record that Randy was angry about the theft and wanted to pursue a suit if possible, but he did not believe it was legally possible to do so at |

Case No. 15-cv-03462 RGK (AGRx)         RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| 24:9. | the time, nor did he have the money. *Evidence:* Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Tracy Longo, ¶27 and 2011 Email to Pates; Declaration of Bruce Pates, ¶; Declaration of Linda Mensch ¶2-6; Declaration of Mike Lee; Declaration of Robert Lee; Declaration of Barry Hanson; Freeman Audio Exhibit 3 at 22 minutes 49 seconds to 27 minutes 25 seconds. |
| 94.    The untitled album commonly referred to as *Led Zeppelin IV* and which includes *Stairway*, was released to the public on November 8, 1971. *Evidence:*   Page Decl. at 1:17-19. | 94.    Undisputed. *Evidence:* |
| 95.    When Wolfe's bandmate, Andes, first heard *Stairway* when it was released in the early 1970s, he believed there were similarities to *Taurus*. *Evidence:*   Andes Depo. (Anderson Decl. Exh. 9) at 172:11 to 173:1, 173:17-20. | 95.    Undisputed *Evidence:* |
| 96.    Although aware of *Stairway* and | 96.    Undisputed. Wolfe confronted |

36

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| believing its introduction is similar to *Taurus*, Wolfe did not sue.<br><br>***Evidence:*** Anderson Decl. at 5, ¶ 30. | Page about the theft and Page told him that he would hire more lawyers than Wolfe. Wolfe also had no money to pursue a lawsuit.<br><br>***Evidence:***<br>Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Tracy Longo, ¶27 and 2011 Email to Pates; Declaration of Linda Mensch ¶2-6; Declaration of Mike Lee; Declaration of Robert Lee; Freeman Audio Exhibit 3 at 22 minutes 49 seconds to 27 minutes 25 seconds. |
| 97.    Wolfe died in 1997 and from 2002 until her death, his mother, Bernice Pearl, was the trustee or co-trustee of the Randy Craig Wolfe Trust (the "Trust") that claims rights in *Taurus*.<br><br>***Evidence:*** FAC at 12, ¶ 62. | 97.    Undisputed.<br><br>***Evidence:*** |
| 98.    There is no evidence that Pearl sued or otherwise asserted a claim, individually or on behalf of the Trust, as to *Stairway*.<br><br>***Evidence:*** Anderson Decl. at 5, ¶ 6. | 98.    Undisputed.<br><br>***Evidence:*** |

37

| | **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|---|
| 1 2 | | |
| 3 4 5 6 7 8 9 | 99.   Plaintiff became a co-trustee of the Trust prior to Pearl's death, and did not file this action until May 31, 2014, over forty-three years after the 1971 release of *Led Zeppelin IV* and *Stairway*. ***Evidence:***  Complaint (Doc. 1) ; FAC at 12, ¶ 62. | 99.    Undisputed. ***Evidence:*** |
| 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 | 100.  In the over four decades between the 1971 release of Led Zeppelin IV and *Stairway* and plaintiff's filing of this action in 2014, multiple witnesses have died, including John Bonham (the fourth member of Led Zeppelin) in 1980;  Peter Grant (Led Zeppelin's personal manager and who attended many of their concerts) in 1995; Wolfe in 1997; John Locke (another member of Spirit) in 2006; Bernice Pearl (Wolfe's mother and trustee of the Trust) in 2009; Ed Cassidy (another member of Spirit) in 2012; Andy Johns (the engineer for the recording of recorded *Stairway*) in 2013; and Danny Tucker (Spirit's road manager in 1968-79). ***Evidence:***   Page Decl. at 4, ¶ 22; | 100.    Undisputed. ***Evidence:*** |
| 28 | | |

Case No. 15-cv-03462 RGK (AGRx)          RESPONSE TO STATEMENT OF ALLEGED
                                        UNCONTROVERTED FACTS

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Ferguson Depo. (Anderson Decl. Exh. 8) at 73:22 to 74:4, 77:18-19, 88:20-24; 89: 3-4. | |
| 101.   In the over four decades between the 1971 release of Led Zeppelin IV and *Stairway* and plaintiff's filing of this action in 2014, documents have been lost or stolen, including recordings reflecting the creation of *Stairway*, and set lists identifying the songs performed by Spirit at concerts. <br> ***Evidence:***   Page Decl. at 4, ¶ 21; Andes Depo. (Anderson Decl. Exh. 9) at 38:12-18, 39:13-17, 39:21-25, 64:3-17. | 101.   Disputed. There is no cited evidence that set lists for the concerts in question existed. The citations support only the notion that some recordings of Stairway were lost (but that copies were still produced in discovery). The Andes deposition citations are particularly inapplicable as he only states that he never kept any material in the first place, not that he lost anything. <br> ***Evidence:*** <br> Andes Depo. (Anderson Decl. Exh. 9) at 38:12-18, 39:13-17, 39:21-25, 64:3-17. |
| 102.   In 2012-14 and at substantial cost, Rhino Entertainment Co. arranged for the remastering and re-release of Led Zeppelin recordings, including the *Led Zeppelin IV* album and *Stairway*. <br> ***Evidence:***   Anderson Decl. at 6, ¶ 36. | 102.   Undisputed that Defendants rereleased the Led Zeppelin master recordings for significant pecuniary gain. <br> ***Evidence:*** |
| 103.   Jimmy Page has a collection of several thousands of different albums of many kinds, including albums he | 103.   Disputed. Page admits to owning the album and song in question, has admitted to being a fan of Spirit, has |

39

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| purchased, albums people gave him and albums that were simply left at his home, and he has never listened to many of them.<br><br>***Evidence:***   Page Decl. at 4, ¶ 19. | admitted listening to their albums, has admitted enjoying seeing their live shows (but now claim he can't remember ever seeing one), and that Spirit's songs strike him on an emotional level. The idea that he does not know how the album came into his position is absurdly convenient and not credible.<br><br>***Evidence:***<br>Malofiy Decl., Exhibit 3 – New Musical Express Interview, Exhibit 1 - Page Deposition at p.434-37, and p.467, Exhibit 4 – ZigZag Article Reprinted in Guitar World, Exhibit 5 – Audio of ZigZag Interview (D160). |
| 104.  In connection with this litigation, he found a copy of Spirit's first album in his collection of several thousand records.<br><br>***Evidence:***   Page Decl. at 4:9-10. | 104.   Disputed. See Answer to 103.<br><br>***Evidence:*** |
| 105.  He had not previously seen the album in his collection, he does not know how or when it got there and it may have been left by a guest, it is unlikely it was there for long since he | 105.   Disputed. See Answer to 103.<br><br>***Evidence:*** |

40

| **Defendants' Alleged Uncontroverted Facts** | **Plaintiff's Response and Evidence** |
|---|---|
| never noticed it before.<br><br>***Evidence:***   Page Decl. at 4:10:13. | |
| 106.  Plaintiff did not produce with his initial disclosures or in discovery the deposit copy of the *Taurus* musical composition that accompanied Hollenbeck's 1967 registration of copyright in that musical composition.<br><br>***Evidence:***   Anderson Decl. at 3, ¶ 16. | 106.   Undisputed.<br><br>***Evidence:*** |
| 107.  On February 10, 2014, plaintiff provided his initial expert disclosures, including the report of his musicologist, Alexander Stewart.<br><br>***Evidence:***   Anderson Decl. at 5, ¶ 32, & Ferrara Exh. 2 (Stewart Report). | 107.   Undisputed.<br><br>***Evidence:*** |
| 108.  Neither Stewart's nor any other report submitted by plaintiff, mentions the musical transcription of *Taurus* that would have accompanied Hollenbeck's 1967 registration of copyright in the *Taurus* musical composition.<br><br>***Evidence:***   Anderson Decl. at 5, ¶ 33, & Ferrara Exh. 2. | 108.   Disputed.<br><br>***Evidence:***<br>Stewart Decl., ¶24; Johnson Decl., ¶21, 31-39 |
| 109.  Stewart's report purports to analyze and compare Ode Records, | 109.   Undisputed, as that is the relevant composition. |

41

Case No. 15-cv-03462 RGK (AGRx)    RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Inc.'s and other recordings of *Taurus*, on the one hand, and *Stairway*, on the other hand.<br>Ferrara Exh. 2. | *Evidence:*<br>Stewart Decl., ¶24, 29-33 |
| 110.  Stewart's report purports to conclude there are substantial similarities, and does not claim there are striking similarities.<br>*Evidence:*  Ferrara Exh. 2. | 110.   Disputed. Plaintiff's experts conclude that the similarities individually and/or in the aggregate preclude the possibility of coincidence or independent creation.<br>*Evidence:*<br>Stewart Decl., at ¶24; Johnson Decl, ¶14-16 |
| 111.  Stewart's report relies on claimed similarities in how *Taurus* and *Stairway* were performed in their respective recordings, including purported similarities with  Spirit's recorded "fingerpicking style," "acoustic guitar," tempo, "classical instruments such as flute . . . strings and harpsichord," "atmospheric sustained pads" and "fretboard positioning and fingering" on the guitar.<br>*Evidence:*   Ferrara Exh. 2; Ferrara Decl. at 2, ¶ 6. | 111.   Disputed. Stewart's report speaks for itself, and he relies on a great many factors compositional factors.<br>*Evidence:*<br>Stewart Decl., at ¶9-10; Johnson Decl, ¶14-42 |

42

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| 112. The *Taurus* transcription that defendants believe may have been deposited with the Copyright Office and a phrase in *Stairway* both have a commonplace descending scale of pitches.<br>*Evidence:*   Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7. | 112.   Disputed.<br>*Evidence:*<br>Stewart Decl. at ¶50; Johnson Decl, ¶14, 15, 18, 36, 41 |
| 113. The descending scale in both the *Taurus* transcription and *Stairway* is a fundamental musical building block widely used in chord progressions in popular music prior to "Taurus", used in classical music as early as the 17th century, and so common that they are sometimes referred to as a "minor line cliché".<br>*Evidence:*   Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7, Exh. 2(Stewart Report) at 4, ¶ 8. | 113.   Disputed.<br>*Evidence:*<br>Stewart Decl. at ¶9-10, 50; Johnson Decl, ¶14, 21, 22, 25, 30, 41 |
| 114. Similar chord progressions with such descending pitches appear in prior compositions such as, for example, | 114.   Disputed. There are significant differences and none are as similar as Stairway to Taurus. |

43

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| "Dido's Lament" by Henry Purcell (1689), "My Funny Valentine", "A Taste of Honey", "Cry Me a River", "Michelle", "The Meaning of the Blues", "How Insensitive", "Walkin' My Baby Back Home", "More", and "Chim Chim Cher-ee" (from *Mary Poppins*), as well as The Beatles' *Michelle*.<br>***Evidence:*** Ferrara Audio Exh. 2 at Track 2; Ferrara Exh. 1 (Ferrara Report) at 4-5, ¶ 7, & at Attachment B at 5-22. | ***Evidence:***<br>Stewart Decl. at ¶32, 41-47; Johnson Decl, ¶26-28, 38, 41 |
| 115.  Randy Wolfe, as well as the other members of Spirit, were fans of The Beatles and performed songs by The Beatles.<br>***Evidence:*** Ferguson Depo. (Anderson Decl. Exh. 8) at 65:7-16, 66:22-23; Freeman Exh. 6 at 3:21 to 4:1. | 115.  Undisputed.<br>***Evidence:*** |
| 116.  Before 1968, Jimmy Page was aware of this musical device, having heard it as early as 1960 in a Chris Farlowe recording he arranged and, in 1964, in *Chim Chim Cher-ee* from the movie *Mary Poppins*.<br>***Evidence:*** Page Decl. at 1-2, ¶¶ 5-6; | 116.  Disputed. This is absurd and the first time Page has ever claimed he based Stairway to Heaven on *Chim Chim Cher-ee* from Mary Poppins. Moreover, *Chim Chim Cher-ee* is dissimilar to Taurus.<br>***Evidence:*** |

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| Ferrara Audio Exh. 1 at Track 4 (*Chim Chim Cher-ee*) & Track 8 (*Spring is Near*). | Stewart Decl. at ¶32, 41-47; Somach Decl., ¶16 |
| 117.  Before leaving for the U.S. in December 1968, Jimmy Page was a session musician on Cartoone's recording of *Ice Cream Dreams*, which includes a similar introduction. ***Evidence:***   Page Decl. at 2, ¶ 7; Anderson Decl. at 5, ¶ 29, & Exh. 25; Ferrara Audio Exhibit 1 at Track 15. | 117.    Disputed. Taurus had been for sale and released for over a year. In addition, *Ice Cream Dreams* and *Taurus* are dissimilar in key ways. ***Evidence:*** Stewart Decl. at ¶45, 47; Defense fact #13. |
| 118.  There is no substantial similarity in the structures of the *Taurus* musical composition and *Stairway to Heaven*, and their structures are markedly different. ***Evidence:***  Ferrara Decl. at 2, ¶ 8, & Ferrara Exh. 1 (Ferrara Report) at 5, ¶ 7, & Attachment A. | 118.    Disputed. The structure of Part I of Stairway to Heaven is nearly identical to that of "Taurus" after the introduction. ***Evidence:*** Stewart Decl. at ¶5. |
| 119.  There are no substantial harmonic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their harmonies are markedly different. ***Evidence:***   Ferrara Decl. at 3, ¶¶ 9-11, | 119.    Disputed. The harmonies of the A section are identical until the final measure. ***Evidence:*** Stewart Decl. at ¶11. |

45

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| & Ferrara Exh. 1 (Ferrara Report) at 5-6, ¶¶ 10-12, & Attachment B. | |
| 120.  There are no substantial rhythmic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their rhythms are markedly different. ***Evidence:***   Ferrara Exh. 1 (Ferrara Report) at 7, ¶ 13, & Attachment C. | 120.   Disputed. Both passages are treated with a nearly continuous eighth-note figuration. Stewart Decl., ¶12, 36. Stewart at 13-14 para 36. This is also demonstrated in Mathes audio excerpt 1. Dr. Ferrara's comparison of the melodies and rhythms (Attachments C & D) of the iconic guitar passages at issue in "Taurus" and "Stairway" are so deeply flawed that they must be completely discarded. Stewart Decl., ¶34 ***Evidence:*** |
| 121.  There are no substantial melodic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their melodies are markedly different. ***Evidence:***   Ferrara Decl. at 4-5, ¶¶ 12-15, & Ferrara Exh. 1 (Ferrara Report) at 7-8, ¶¶ 13-17, & Attachment D. | 121.   Disputed. 78% or 14 of the first 18 eighth-note slots contain the same pitches. ***Evidence:*** Stewart Decl., at ¶14-15, 19-20, 50; Johnson Decl, ¶14, 15, 18, 19, 22, 23, 24, 25 |
| 122.  The *Taurus* musical composition and *Stairway to Heaven* are very different musical compositions. | 122.   Disputed. Ferrara's report is severely flawed in its methodology and is riddled with errors and omissions. |

46

| Defendants' Alleged Uncontroverted Facts | Plaintiff's Response and Evidence |
|---|---|
| *Evidence:*   Ferrara Exh. 1 (Ferrara Report) at 8-9, ¶¶ 18-20, & Attachment E. | *Evidence:* <br> Stewart Decl., at ¶5, 24, 29; Johnson Decl, ¶14, 18, 34, 36 |
| 123.  Plaintiff has not presented any admissible evidence establishing that John Paul Jones, Super Hype Publishing, Inc., or Warner Music Group Corp. performed or distributed *Stairway* within the three years preceding plaintiff's filing of this action. <br> *Evidence:*   Anderson Decl. at 6, ¶ 37. | 123.   Disputed as irrelevant. <br> *Evidence:* |

## Plaintiff's Alleged Uncontroverted Facts

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| **Randy Craig Wolfe Wrote Taurus in 1966 and it is Not A Work For Hire** ||
| 1.      Randy Wolfe was a musical genius who at the age of 15 was playing with Jimi Hendrix in New York City. Hendrix offered Wolfe the chance to go to London as part of the Jimi Hendrix | Andrea Wolfe Decl., at ¶1-4; Janet Wolfe Decl., ¶1-5 |

47

| | Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|---|
| 3 | experience, but his parents declined. | |
| 4–10 | 2.   When Randy went back to high school that fall, he met a girl named Robin who would later become his wife. He was so enamored with her that he wrote her a song. Her astrological sign was Taurus, so Randy named his new song *Taurus*. | Andrea Wolfe Decl., at ¶4-5; Janet Wolfe Decl., ¶4-5 |
| 11–19 | 3.   When he returned from New York in the fall of 1966, Randy formed a band called Spirits Rebellious with two of his school friends, Jay Ferguson and Mark Andes.  In late 1966 through the summer of 1967, they played every week at a famous club in Hollywood called the Ash Grove, which was owned by Randy's uncle. | Janet Wolfe Decl., ¶5-8 |
| 20–27 | 4.   The family eventually moved in 1967 from Ojai to Santa Monica.  Brian Berry, brother of singer Jan Berry of the famous "Jan and Dean" group, heard the band rehearsing and knocked on the door to introduce himself.  This led to a fast friendship, and it was Berry who later introduced Spirit to Lou Adler, owner of | Janet Wolfe Decl., ¶5-8 |

48

| | Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|---|
| | Hollenbeck and Ode Records, which signed the band to a recording contract on August 29, 1967. | |
| | 5.      Taurus was played repeatedly before August 29, 1967 by Spirit in concerts at the Ash Grove. | Janet Wolfe Decl., ¶5-8; Andrea Wolfe Decl. at ¶5; Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156; Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore Decl., Exhibit 2 |
| | 6.      Taurus was recorded as part of a multi-song demo in early 1967 to promote Spirit. | Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore Decl., Exhibit 2; Malofiy Decl., Exhibit 8 – Andes Depo, at p. |
| | 7.      Spirit played many shows that included Taurus well before August 29, 1967, of which there is audio proof. | Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore Decl., Exhibit 2 |
| | 8.      Taurus was created before the August 29, 1967, contract Randy Wolfe signed with Hollenbeck Music and Lou Adler | Janet Wolfe Decl., ¶5-8; Andrea Wolfe Decl. at ¶5; Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156; Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore Decl., Exhibit 2 |
| | 9.      Taurus is not a work made for hire as the composition was created and made well before the August 29, 1967 agreement. | Janet Wolfe Decl., ¶5-8; Andrea Wolfe Decl. at ¶5; Malofiy Decl., Exhibit 8 – Andes Depo., p.150-156; Declaration of Barry Hansen, ¶1-2 & Emails; Skidmore |

49

| | Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|---|
| | | Decl., Exhibit 2 |
| | 10.    The orchestral opening to "Taurus" on the *Spirit* album was never played live. | Malofiy Decl., Exhibit 8 – Andes Depo, at p.155:15-20; Exhibit 9 – Ferguson Depo., at p.19:23-20:18. |
| | **Taurus has Never Been Registered With the Copyright Office as a Work For Hire** | |
| | 11.    Defendants have produced no evidence that Taurus was ever registered with the copyright office as a work made for hire. | Amended Complaint, Exhibit 2 |
| | 12.    "Taurus" was registered with the copyright office by Hollenbeck Music in December 1967 and listed Randy California as the "author." | Anderson Decl., Exhibit 16 |
| | 13.    Randy Craig Wolfe filed a renewal registration for Taurus in 1996 listing himself as the author. | Amended Complaint, Exhibit 2 |
| | 14.    Between 1996 and February 15, 2016, no individual or entity ever attempted to amend the renewal registration for Taurus or contest that Randy Craig Wolfe was the author of Taurus. | Amended Complaint, Exhibit 2 |
| | | |
| | 15. | |
| | 16. | Documents |

50

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| 17. | |
| **Defendants Were Familiar with Spirit's Music, Albums, and Live Shows, including the Song Taurus** | |
| 18.    Led Zeppelin opened for Spirit on December 26, 1968, in Denver, CO, Led Zeppelin's first show in the United States. | Malofiy Decl., Exhibit 1 - Page Deposition at p.416, 467-69 |
| 19.    Led Zeppelin's equipment was breaking during the December 26, 1968 show, and they had to borrow equipment from Spirit. | Declaration of Tracy Longo, ¶17-18. |
| 20.    While backstage at a concert in 1969 Page asked Randy California how to play the guitar in "Taurus," which Randy ran through with him several times. | Declaration of Tracy Longo, ¶19-21. |
| 21.    Defendant James Patrick Page stated in an interview published on April 25, 1970, by New Musical Express: "Spirit do some really nice things on albums. They give a really nice atmosphere when they play and I always enjoy seeing them." | Malofiy Decl., Exhibit 3 – New Musical Express Interview; Exhibit 1 - Page Deposition at p.467:4-9. |
| 22.    Defendant James Patrick Page stated in an interview done in November | Malofiy Decl., Exhibit 4 – ZigZag Article Reprinted in Guitar World, |

51

| | **Plaintiff's Alleged Uncontroverted Facts** | **Plaintiff's Evidence** |
|---|---|---|
| 1<br>2 | | |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | 1972 with ZigZag magazine that "[The Hollies] were like that: very cut and dried, and samey every night. They were obviously very good, even though they didn't strike me on an emotional level, like Spirit did, for instance. I saw Spirit a couple of times and thought they were very good." | Exhibit 5 – Audio of ZigZag Interview (D160); Exhibit 1 – Page Deposition, at p.434-37 |
| 11<br>12<br>13 | 23.    James Patrick Page stated in 1970s that Spirit was a band that he really liked. | Malofiy Decl., Exhibit 1 – Page Deposition, at p.434-37 |
| 14<br>15<br>16<br>17 | 24.    Defendant Page possesses the eponymous *Spirit* album which contained "Taurus." | Malofiy Decl., Exhibit 1 – Page Depo. at p.396-98; Exhibit 2 – Page Interrogatory Responses, at ¶11. |
| 18<br>19<br>20 | 25.    Led Zeppelin played portions of Spirit's song Fresh Garbage at Led Zeppelin's live shows starting in 1968. | Malofiy Decl., Exhibit 1 – Page Depo at p.492. |
| 21<br>22<br>23<br>24<br>25<br>26<br>27 | 26.    Defendant Page forgot that he liked Spirit despite twice stating in the 1970s that enjoyed seeing them live, that Spirit's performances struck him on an emotional level, that he liked Spirit's albums, and even though Led Zeppelin played Spirit's music live. | Malofiy Decl., Exhibit 1 – Page Depo., at p.439:3-8, Exhibit 3 – New Musical Express Article, Exhibit 4 – ZigZag Article Reprinted in Composition, Exhibit 5 – ZigZag Audio Interview, Exhibit 19 – Audio of Led Zeppelin Playing Spirit |
| 28 | | |

| **Plaintiff's Alleged Uncontroverted Facts** | **Plaintiff's Evidence** |
|---|---|
| 27.   Defendant Page's alleged recollection of not seeing the band Spirit perform live was demonstrably incorrect based on Page's own interviews. | Malofiy Decl., Exhibit 1 – Page Depo., at p.439, Exhibit 3 – New Musical Express Article, Exhibit 4 – ZigZag Article Reprinted in My Back Pages, Exhibit 5 – ZigZag Audio. |
| 28.   Led Zeppelin would reserve seats at Spirit concerts and in fact attended those concerts. | Longo Decl., at ¶13 |
| 29.   Defendant Plant attended a Spirit show in February 1970 at Mother's Club in Birmingham, England. | Malofiy Decl., Exhibit 13 – Robert Plant Crash Article, Exhibit 8 – Andes Depo, at p.111 to 113, 115 to 118. |
| 30.   Defendant Plant played snooker with Spirit bassist Mark Andes that night. | Malofiy Decl., Exhibit 13 – Robert Plant Crash Article, Exhibit 8 – Andes Depo, at p.111 to 113, 115 to 118. |
| 31.   Defendant Plant was in a car crash the night he saw Spirit perform in February 1970 at Mother's Ball. | Malofiy Decl., Exhibit 13 – Robert Plant Crash Article, Exhibit 8 – Andes Depo, at p.111 to 113, 115 to 118. |
| **Defendant Page Claimed in the 1970s that He Wrote the Guitar Introduction of Stairway to Heaven Before the Rest of the Song** | |
| 32.   Defendant Page teased Stairway to Heaven in a April 25, 1970, interview by stating "We want to try something new with the organ and acoustic guitar building up and building up to the electric thing." | Malofiy Decl., Exhibit 3 – New Musical Express Article |
| 33.   Defendant Page stated in an audio | Malofiy Decl., Exhibit 16 – ZigZag |

53

| **Plaintiff's Alleged Uncontroverted Facts** | **Plaintiff's Evidence** |
|---|---|
| interview with ZigZag magazine in December 1972 that he came up with the guitar introduction for Stairway to Heaven at the Welsh cottage of Bron-yr-Aur. | audio interview (D165), Exhibit 1 – Page Depo., at p.339. |
| 34.    Defendant Jones stated in an audio interview that "Page and Plant [came back] from the Welsh mountains with the guitar intro and verse." | Malofiy Decl., Exhibit 16 – ZigZag audio interview (D165); Def. Answer to Amend. Compl., ¶53; |
| 35.    When Jones denied under oath in his deposition that he ever said the quote in fact 21, and that it was completely inaccurate, he was incorrect and he did in fact make such a statement—as his own answer to the amended complaint admits. | Malofiy Decl., Exhibit 16 – ZigZag audio interview (D165); Def. Answer to Amend. Compl., ¶53; Jones Deposition, at p.106-09. |
| 36.    When Robert Plant denied that Page had ever played Stairway to Heaven's guitar introduction to him at Bron-yr-Aur, and claimed that he came up with the first verse to Stairway to Heaven at Headley Grange, he was incorrect. | Malofiy Decl., Exhbiit 6 - Jones Deposition, at p.106-09, Exhibit 16 – ZigZag audio interview (D165); Def. Answer to Amend. Compl., ¶53;. |

Case No. 15-cv-03462 RGK (AGRx)            RESPONSE TO STATEMENT OF ALLEGED
                                          UNCONTROVERTED FACTS

| | Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|---|
| 3 4 5 6 7 | 37.   The first part of Stairway to Heaven that Page created was the guitar, which he shared with Plant at Bron-yr-Aur, where Plant came up with the first verse. | Malofiy Decl., Exhibit 6 - Jones Deposition, at p.106-09, Exhibit 16 – ZigZag audio interview (D165); Def. Answer to Amend. Compl., ¶53; |
| 8 9 10 11 | 38.   Page and Plant used Taurus to create the first 2:14 minutes of Stairway to Heaven, including the guitar and vocal melody. | Stewart Decl., ¶24 |
| 12 | **Led Zeppelin Wrote Songs by Using Other People's Music Without Credit** | |
| 13 14 15 | 39.   Defendant Page gave an interview with Guitar World in 1993. | Malofiy Decl., Exhibit 1 - Page Depo, at p.456-58; Exhibit 7 - Plant Depo., at p.351-53 |
| 16 17 18 19 20 21 22 23 24 25 26 27 | 40.   Page stated in a May 1993 interview with Guitar World when asked "When you were borrowing from classic blues songs on the first two albums, did you ever think it would catch up to you?": "You mean getting sued? Well, as far as my end of it goes, I always tried to bring something fresh to anything that I used. I always made sure to come up with some variation. In fact, I think in most cases, you would never know what the original source could be. Maybe not | Malofiy Decl., Exhibit 1 - Page Depo, at p.456-58; Exhibit 7 - Plant Depo., at p.351-53. |

1
2
28

55

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| in every case– but in most cases. So most of the comparisons rest on the lyrics. And Robert was supposed to change the lyrics, and he didn't always do that– which is what brought on most of the grief. They couldn't get us on the guitar parts of the music, but they nailed us on the lyrics. We did, however, take some liberties, I must say [laughs]. But never mind; we did try to do the right thing, it blew up in our faces…" | |
| 41.   Robert Plant does not dispute the accuracy or validity of Page's quote made to Guitar World in or around May 1993. | Malofiy Decl., Exhibit 7 – Plant Depo., at p.351-53. |
| 42.   Led Zeppelin based many of their songs on prior artistic works. | Malofiy Decl., Exhibit 1 – Page Depo., 476-90, Exhibit 7 – Plant Depo., at p.317-19 |
| 43.   Led Zeppelin wrote several of their songs by copying the artistic expression of other artists. | Malofiy Decl., Exhibit 7 – Plant Depo., at p.297-333 |
| 44.   Led Zeppelin changed the credits on their songs "Dazed and Confused," "Babe I'm Gonna Leave You," "Whole Lotta Love," "How Many More Times," | Malofiy Decl., Exhibit 1 – Page Depo., 476-490, Exhibit 6 – Jones Depo. at 176-269, Exhibit 7 – Plant Depo., at p. 297-333 |

56

| | **Plaintiff's Alleged Uncontroverted Facts** | **Plaintiff's Evidence** |
|---|---|---|
| 3 4 5 | "The Lemon Song," "Bring it On Home," and "When the Levee Breaks," to credit other artists. | |
| 6 7 8 | 45.    Robert Plant could not identify any other band, ever, that changed the credits on their songs as much as Led Zeppelin. | Malofiy Decl., Exhibit 7 – Plant Depo., at p.351-53. |
| 9 10 11 12 13 14 15 | 46.    Robert Plant admitted to "lifting" vocal melodies from other songs, stated that the lift was his responsibility, stated that back in the 1960s and 1970s he thought lifting was "just part of the game," and stated that he knew that sounded "naïve and irresponsible." | Malofiy Decl., Exhibit 17 - 2004 NPR Interview of Robert Plant with Terry Gross (22:10 to 24:25); Exhibit 7 – Plant Depo, at p.325-33 |
| 16 17 18 19 20 21 22 23 24 25 26 27 | 47.    The following Led Zeppelin songs, not including Stairway to Heaven, were based on prior art and were not independently created as they share unmistakable and not coincidental similarities to other musical works: "Dazed and Confused," "Babe I'm Gonna Leave You," "Whole Lotta Love," "How Many More Times," "The Lemon Song," "Bring it On Home," and "When the Levee Breaks," "Hats off to (Roy) Harper," "Since I've Been Loving | Malofiy Decl., Exhibit 1 – Page Depo., 476-490, Exhibit 6 – Jones Depo. at 176-269; Exhibit 7 – Plant Depo., at p.297-355 |

57

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| You," "Custard Pie," "In My Time of Dying," "Boogie with Stu," "Nobody's Fault but Mine," "The Girl I love She Got Long Black Wavy Hair," "Your Time is Gonna Come," and "Communication Breakdown." | |
| 48.   Led Zeppelin had two to three songwriting processes: (1) a band member would bring a unique composition to the band, (2) all members of the band would groove together, and (3) and an original chord progression would be played by one member for other band members. | Malofiy Decl., Exhibit 7 – Plant Depo. at p.333-36, Exhibit 6 – Jones Depo., at p.159-160 |
| 49.   The songs credited to Page and Plant, and not Jones and Bonham, were not jam sessions; Jones and Bonham were given song credit for jam sessions. | Malofiy Decl., Exhibit 6 - Jones Depo., at p.159-160 |
| 50.   Jones claims that he never knew Page and Plant took the music and lyrics for the song Whole Lotta Love from Willie Dixon's You Need Loving as played by Muddy Waters and covered by the Small Faces—even though there was a prior lawsuit over that song and he was | Malofiy Decl., Exhibit 6 - Jones Depo., at p.193-212, 225-234, 239-247, 253-54; Bricklin Decl., Audio Exhibits |

58

| **Plaintiff's Alleged Uncontroverted Facts** | **Plaintiff's Evidence** |
|---|---|
| deposed for it. Jones claims the same for "When the Levee Breaks" for which he received writing credit, which was based on "When the Levee Breaks" by Memphis Minnie and Kansas Joe McCoy. Jones claims the same for "in My Time of Dying" for which he received writing credit, which was based on Josh White's "Jesus Make Up My Dying Bed (also known as In My Time of Dying," and Blind Willie Johnson's "Jesus Gonna Make Up My Dying Bed." Jones claims the same for "Since I've Been Loving You" for which he received writing credit, which was taken from Moby Grape's "Never." Jones claims the same for "Lemon Song" for which he received writing credit, which was based on "Howlin' Wolf's Killing Floor." These examples are not exhaustive. | |
| 51.   As Page and Plant did with at least sixteen other songs, they used a prior work to create Stairway to Heaven: "Taurus" by Spirit. | Malofiy Decl., Exhibit 1 – Page Depo., 476-490, Exhibit 6 – Jones Depo. at p.176-269; Exhibit 7 – Robert Plant at p.297-355; Bricklin Decl., Audio |

Case No. 15-cv-03462 RGK (AGRx)          RESPONSE TO STATEMENT OF ALLEGED UNCONTROVERTED FACTS

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| | Exhibits |
| 52.  Page had previously asked Randy California how to play the introduction to Taurus. | Declaration of Tracy Longo, ¶19-21 |
| 53.  Spirit was the only rock band that Led Zeppelin ever covered, besides NRBQ, and Page is on record stating that Spirit moved him on an emotional level, that he enjoyed their albums, and that he does possess "Taurus" on a vinyl album of *Spirit*. | Malofiy Decl., Exhibit 3 – New Music Express Page Interview, Exhibit 4 – Page ZigZag Interview; Exhibit 6 – Jones Depo. at p.59-60, 79; Exhibit 7 – Plant Depo., at p.252-53. |
| **Randy California Confrontation with Jimmy Page and Anger Over the Theft of His Song by Led Zeppelin** | |
| 54.  In the early 1970s Randy California was upset over what he viewed as the misappropriation of Taurus in Stairway to Heaven. | Declaration of Paul Franklin, ¶5-9; Declaration of Mike Lee, ¶; Declaration of Dave Waterbury, ¶3-7. |
| 55.   In 1970, Randy was seriously injured when he was thrown from a horse.  He was in the hospital for months, and while he was in intensive care, Ferguson and Andes decided to leave the group because they believed that Randy would never fully recover.  Shortly after he was released from the hospital Jimi Hendrix died.  Hendrix and | Janet Wolfe Decl., ¶9 |

60

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| Randy had become very close friends over the years.  The combination of his serious injuries, Ferguson and Andes leaving the group, and Hendrix dying, sent Randy into a tailspin of depression which lasted several years. | |
| 56.    On April 14, 1973, Spirit performed at the Rainbow in London, England, and played around 7 encores. | Declaration of Larry "Fuzzy" Knight, at ¶7; |
| 57.    Following the show there was an after party at which Spirit's members and James Patrick Page were present. | Declaration of Larry "Fuzzy" Knight, at ¶8; |
| 58.    Page spoke with Spirit's bassist Larry "Fuzzy" Knight, complimented Spirit's work, said he was a "huge fan" of the band, and complimented the show Spirit played. | Declaration of Larry "Fuzzy" Knight, at ¶9-10; |
| 59.    During this party, Page was taken aside by Randy California and confronted about Zeppelin's use of Taurus in Stairway to Heaven. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Larry "Fuzzy" Knight, at ¶12-13; |
| 60.    Page acknowledged taking Taurus and using it in Stairway to Heaven, but told California that Led Zeppelin would hire 20 to 25 lawyers for every lawyer | Declaration of Paul Franklin, ¶7-9 ("Page admitted that he lifted Taurus for Stairway but threatened him and said that he would get 20 lawyers for every |

61

| | Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|---|
| 3<br>4 | California could hire and that Spirit would never win such a suit. | lawyer Randy might be able to hire"); Declaration of David Waterbury, ¶4-6; |
| 5<br>6<br>7<br>8 | 61.    Randy California was angry and depressed over the taking of Taurus in Stairway to Heaven in 1970s. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Mike Lee; Declaration of Robert Lee; |
| 9<br>10<br>11<br>12<br>13 | 62.    Randy California was angry and depressed over the taking of Taurus in Stairway to Heaven in 1980s. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Bruce Pates, ¶; Declaration of Mike Lee; Declaration of Robert Lee; |
| 14<br>15<br>16<br>17 | 63.    Randy California was angry and depressed over the taking of Taurus in Stairway to Heaven in 1990s. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Mike Lee ¶6-7; Declaration of Robert Lee ¶4; |
| 18<br>19<br>20<br>21<br>22<br>23<br>24 | 64.    Randy California attempted to take legal action against Led Zeppelin several times but believed that the statute of limitations had ran; and he also had no money. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Tracy Longo, ¶26-27 & 2011 Email to Pates; Declaration of Mike Lee ¶6; Declaration of Robert Lee ¶4; Declaration of Linda Mensch, ¶2-6; Janet Wolfe Decl., ¶10 |
| 25<br>26<br>27 | 65.    While in Chicago, IL in the 1990s, Randy went with Spirit historian Bruce Pates to an entertainment lawyer named | Declaration of Linda Mensch, ¶2-6. |

28

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| Linda Mensch. Mensch told Randy that any suit over Taurus against Led Zeppelin was likely barred by the statute of limitations and that it would be very expensive, a significant obstacle given that Randy had no money. | |
| 66.   Randy considered legal action several times but never had the money and thought that he likely would not be able to sue. | Declaration of David Waterbury, ¶4-6; Declaration of Paul Franklin, ¶7-9; Declaration of Tracy Longo, ¶26-27 & 2011 Email to Pates; Declaration of Mike Lee ¶6; Declaration of Robert Lee ¶4; Declaration of Linda Mensch, ¶2-6; Janet Wolfe Decl., ¶10 |
| 67.   Before his death on January 2, 1997, Randy California told his guitar tech and friend, Tracy Longo, that he was again considering a lawsuit against Led Zeppelin. | Declaration of Tracy Longo, ¶25-27 & attached 2011 Email from Longo to Pates |
| **Taurus and Stairway to Heaven Are Substantially, even Strikingly, Similar** | |
| 68.   Taurus guitar is substantially similar to Stairway Guitar | Stewart Decl., ¶20-24; Johnson Decl, ¶14-16 |
| 69.   Harpsichord in Taurus and vocal melody in Stairway are substantially similar. | Stewart Decl., ¶20-24. |
| 70.   Songs are strikingly similar and not | Stewart Decl., ¶20-24; Johnson Decl, |

| Plaintiff's Alleged Uncontroverted Facts | Plaintiff's Evidence |
|---|---|
| product of coincidence. | ¶14-16 |
| 71.    The guitar at issue in Taurus is not a common unprotected element of a song. | Stewart Decl., ¶9-10, 50; Johnson Decl, ¶22, 25-26, 30 |
| 72.    The guitar introduction to Stairway to Heaven contains the most iconic notes in rock and roll history. | Malofiy Decl., Exhibit 7 – Plant Depo., at p.280:16 to 281:14. |

DATED:  March 7, 2016              FRANCIS ALEXANDER, LLC


                                                  */s/ Francis Malofiy*
                                                  Francis Malofiy, Esq.
                                                  Attorneys for Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 105
Media, PA 19063
T:  (215) 500-1000; F:  (215) 500-1005
E:  francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T:  (310) 557-9200; F:  (310) 557-0224
E:  gkulik@kgslaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**DECLARATION OF ALEXANDER STEWART, Ph.D  IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    March 28, 2016<br>Time:   9:00 a.m.<br>Room:  850 |

1   **DECLARATION OF ALEXANDER STEWART, Ph.D**

2        I, Alexander Stewart, Ph.D, declare as follows:

3        1.     I am Professor of Music, Director of Latin American and Caribbean Studies,

4   and Jazz Studies Coordinator at the University of Vermont. I have contributed to numerous

5   peer reviewed journals and other publications and I am author of a book published by

6   University of California Press. My work encompasses extensive music transcriptions,

7   musicological analysis, historical research, and other scholarly activities, particularly in

8   popular music. I earned a Ph.D. in Music (Ethnomusicology Concentration) from the

9   Graduate Center of the City University of New York (CUNY) and a Master of Music in Jazz

10  and Commercial Music from Manhattan School of Music. During 2006-07, I was a Fulbright

11  scholar researching traditional and popular music in Mexico. As an active professional

12  musician I have performed with leading musicians in jazz and popular music for more than

13  thirty years. I have provided expert opinions and analysis on music copyright matters for over

14  twelve years. I have personal knowledge of the facts recited in this declaration and if called

15  as a witness could testify competently to such facts.

16       2.     I have been asked to compare the songs "Taurus" (T) by Randy California of

17  the group Spirit and "Stairway To Heaven" (STH) by Jimmy Page and Robert Plant. I

18  downloaded the recordings of T and STH from iTunes and purchased the sheet music to STH

19  from musicnotes.com. I was also provided six live versions and a demo of "Taurus" and

20  additional guitar sheet music to STH by attorney Francis Alexander Malofiy. These

21  recordings, sheet music to STH, and transcriptions of the relevant parts of the recordings are

22  attached to this report.

23       3.     Both songs prominently feature a musical segment that contains substantially

24  similar musical expression. This four-measure passage (labeled "A" in the analysis below)

25  appears four times in T at 0:45, 0:58, 1:37, and 1:50. In STH the passage appears six times,

26  at 0:00, 0:13, 0:53, 1:06, 1:47, and 2:00. In three of the six appearances in STH (the first,

27  second, and sixth), it is heard instrumentally (without vocals). During the last iteration some

28

2

Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**02505**

1 | arpeggiated variations are heard in the guitar. As discussed further below, live versions of

2 | Taurus also feature a similar fingerpicking style in the passage's later appearances. The third,

3 | fourth, and fifth  iterations of the passage in STH contain a vocal part. While T is entirely

4 | instrumental  and features no vocals, a melodic figure heard in the keyboard during this

5 | section bears a similarity to the main vocal melody heard during this passage in  STH. For

6 | reasons given below, these "A" passages are clearly the most important  musical expression in

7 | both works. Before discussing this musical expression further, this report will examine the

8 | general characteristics of each song.

9 | **General Characteristics**

10 |

| | Key | Tempo (BPM) | Style |
|---|---|---|---|
| Taurus | A minor | ~72 | quasi-classical |
| Stairway (Part I) | A minor | ~73 | quasi-classical |

12 |     4.    As can be seen above, both songs are in the same keys (A minor) and are

13 | performed at nearly identical tempos. The tempos or beats are somewhat fluid in both songs,

14 | as the guitarist lingers slightly on the final cadence during the passages  in question. While

15 | the tempo of STH eventually accelerates, Part I remains very close to the starting tempo

16 | throughout. As will be discussed further below, the instrumental textures are also quite

17 | similar, featuring most prominently acoustic guitar and "classical" instruments such as flute,

18 | recorders (a type of end-blown flute), and, in T, strings and harpsichord. In both songs the

19 | overall mood or style is  suggestive of Renaissance-era classical music.

20 | **Structure/form**

21 | **"Stairway to Heaven"**

22 | PART I

23 | 0:00    A (instrumental)
0:13    A (instrumental)

24 | 0:26    B (instrumental)
0:53    A vocal

25 | 1:06    A vocal

26 | 1:20    B vocal
1:47    A vocal

27 | 2:00    A (instrumental variation)

28 | Case No. 15-cv-03462 RGK (AGRx)

DECLARATION OF ALEXANDER STEWART IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

3

PART II

| | | |
|---|---|---|
| 2:14 | vamp 1 (two chord) interlude | |
| 2:39 | C | |
| 2:51 | C | |
| 3:06 | vamp 1 (two chord) interlude | |
| 3:29 | C | |
| 3:41 | C | |
| 3:56 | vamp 1 (two chord) interlude | |
| 4:19 | $C^1$ (drums enter) | |
| 4:30 | $C^1$ | |
| 4:45 | vamp 1 (two chord) interlude | |
| 5:07 | $C^1$ | |
| 5:18 | $C^1$ | |
| 5:34 | Instrumental interlude | |
| 5:55 | vamp 2 (three chord) guitar solo | |
| 6:44 | vocal re-enters over vamp 2 | |

**Section descriptions**

A               4 measure verse with descending A minor guitar pattern
B               8 measure "bridge"
Vamp 1        2 chord progression (essentially Amin – D)
C               4 measure verse melody from A section over descending C major pattern
$C^1$             4 measure variation of verse melody over descending C major pattern Vamp 2               3 chord progression (Amin – G – F)

**"Taurus" (studio version)**

| | | |
|---|---|---|
| 0:00 | Intro (studio version only) | |
| 0:45 | A | |
| 0:58 | A | |
| 1:12 | B | |
| 1:37 | A | |
| 1:50 | A | |
| 2:04 | B | |

**Section descriptions**

Intro               "atmospheric" sustained "pads" and short figurations in free time
A               4 measure verse with descending A minor guitar pattern
B               7 measure "bridge"

     5.     As can be seen in the above analysis, the structure of Part I of "Stairway to Heaven" is nearly identical to that of "Taurus" after the introduction. The  introduction in Taurus is not set to a steady beat or meter and effectively sets the mood for the song proper

DECLARATION OF ALEXANDER STEWART IN
OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4

1  that begins a 0:44. The A sections in both songs are four measures long. They are repeated

2  (AA) and separated by a longer B section or bridge. The overall form of both songs thus can

3  be represented as:

4  T                    (intro) AABAAB
   STH (Part I)              AABAABAA
5

6      6.    It is important to note that *every* live version and the demo of Taurus

7  begin with the A sections. Clearly, the intro was added for the studio version and was

8  not part of the original composition**.** Therefore, forms of "Taurus" and Part I of "STH"

9  are identical. The only structural differences between them are that STH repeats the A

10  sections at the end (still maintaining the AA structure) and the B section in T is one

11  measure shorter, i.e., seven measures instead of eight.

12      7.    After Part I, at 2:14 STH transitions to other material, much of which

13  eventually is supported by the rhythm section (bass and drums). Most of my analysis will be

14  concerned with the first part of STH which contains enough musical content and length to

15  comprise song unto itself (the average popular song is about three minutes in length). Part I

16  is important not only because it is the first music the listener hears (for over two minutes),

17  but also because it contains the weightiest compositional material in the song. It is meant to

18  evoke a complex polyphonic classical texture and in that respect it offers contrast with the

19  later vamps (repeated patterns of two or three chords) and jams (improvised sections). As

20  discussed later in this report in my qualitative analysis, the most memorable and iconic

21  musical materials in STH are heard during Part I.

22                        **Specific Musical Expression**

23      8.    The "A" sections in both songs are similar on every level: melody, rhythm,

24  harmony, texture, tempo, instrumentation, and fretboard positioning and fingering.

25      9.    Harmony. The underlying harmonic structure contains a descending

26  chromatic bass line. While a related structure has a long history in Western music

27  (sometimes referred to as the "Lament" ground bass), many composers through the ages

28  Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN          5
                                            OPPOSITION TO DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT

1  have found original and creative ways to use this foundational pattern. The setting of the

2  passage in T is exemplar of such creativity and contains original musical expression. By

3  way of comparison I would note as one example that many thousands of songs have been

4  set to twelve-bar blues. Substantial and original expression contained therein remains

5  protectable despite this commonality. As will be seen in my analysis below, both "Taurus"

6  and STH depart from the traditional sequence in similar and significant ways.

7          10.     The chromatic version of the traditional sequence moves through six pitches

8  from the tonic (do) to the important harmonic goal on the fifth degree of the scale (sol). In

9  an unusual variation, both T and STH avoid or defer reaching this important goal on the last

10  pitch of the sequence (the fifth degree or E). In addition to not incorporating the entire six-

11  pitch sequence (A G# G F# F E), both T and STH use the first five pitches in exactly the

12  same way. As the bass line descends chromatically from A to F#, each pitch is held for two

13  beats duration before lingering on F for four beats in the third measure. In both songs the

14  movement to the final pitch of the sequence, the fifth degree of the scale E, is not arrived at

15  directly and is only suggested near the end of the fourth measure.

16          11.     The following is a harmonic analysis of the two passages:

17
| T(1:37) | Amin | Amin/G# | Amin/G | Amin/F# | Fmaj7 | D5 E5/A[1] |
| STH | Amin | Amin/G# | Amin/G | Amin/F# | Fmaj7 | G A (E) |

18

19  As can be seen, the harmonies are identical until the final measure. A comparison of the

20  cadences will be found later in this report.

21          12.     Rhythm and tempo. Besides the descending chromatic line described above,

22  both passages are treated with a nearly continuous eighth-note figuration.

23          13.     Each measure of the four-measure passage contains four beats and each of

24  these four beats is subdivided in two, for a total of 32 positions or eighth-note "slots"

25

26  _____

27  [1] The fourth measure of these patterns contain slight variations. My analysis of Taurus will focus on the third iteration (1:37) of the A section as representative.

28  Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN          6
                                            OPPOSITION TO DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT

(4x2x4). These eighth notes are set to almost exactly the same tempo making the passages' durations almost the same in both songs – about 13 seconds.

14.      Guitar Melody. The following table graphically presents these four measures and depicts the steady eighth-note figurations heard in the acoustic guitar in these passages. Since both songs are in the same key, the actual pitches can be easily compared without transposition.

Example 1.      Acoustic guitar themes in "Taurus" and "Stairway to Heaven"

| | 1 | | 2 | | 3 | | 4 | | 1 | | 2 | | 3 | | 4 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAURUS | | C | ECB | | | C | ECB | | | C | ECB | | | C | ECB | |
| | A | | | | A | G# | | G# | G | | | | G | F# | | F# |
| HEAVEN | C | E | A | B | E | C | B | | C | E | C | C | F# | D | A | F# |
| | A | | | G# | | | | | G | | | | F# | | | |

| | 1 | | 2 | | 3 | | 4 | | 1 | | 2 | | 3 | | 4 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TAURUS | | C | ECB | | AB | | AB | | | | | | | | | |
| | F | | | F | | F | | F | D | | | D | A | | | G |
| HEAVEN | E | C | A | C | | E | C | A | G | A | A | | | | | |
| | F | | | | | | | | B | A | A | | | A | F | E |

15.      Most of the similarities occur during the first 18 notes. The first measure is almost identical, the second measure contains only two different pitches, and the first two slots of the third measure contain the same pitches. With two slight re-orderings, swapping CE for EC, 14 of the first 18 eighth-note positions or slots (78%) contain the same pitches. Since these pitches, C and E, are both present in T (on the second and fourth beats), and they are chord tones in A minor they are virtually interchangeable (A minor = A, C, E). While there are two B's in the first measure of both songs, the two B's in STH are heard in the top part. The second B in STH moves to a C/G on the first beat of the second measure. During the first 18 notes, then the, basic melodic sequence is virtually the same.

Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN
OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                              7

02510

16. Instrumentation and orchestration. One of the most significant similarities between T and STH is the overall texture and orchestration. Both songs feature acoustic guitars on the main theme of the passage discussed immediately above. This acoustic guitar part is the signature theme in both songs. The passages at issue also are supported by sustained chords or "pads" using string or recorder sounds. The descending chromatic line is doubled by string or recorder sounds in both songs (after the first iteration of the signature theme in STH and after the second iteration in T). Example 2 provides transcriptions of these two parts.

Example 2. String and recorder parts in "Taurus" and "Stairway to Heaven"



17. The presence of acoustic guitar, strings, recorder/flute sounds, and harpsichord as well as the noticeable absence of bass and drums (and other instruments characteristic of rock and roll) lend both songs a decidedly "classical" style, particularly evoking a Renaissance atmosphere.

18. In both songs, the descending bass line is doubled by instruments with very similar sounds – a cello in T and a bass recorder in STH. This thickening of the texture, occurring after the initial exposition of the theme, contributes to the gradual build in intensity.

19. Other important similarities provide additional evidence of copying. In both songs the passages are set to "pads" or sustained strings or flute sounds. In T these pads are heard in the first, second and third iterations of the passage. The pads in STH occur in the second, fourth, fifth, and sixth iterations (see measures 5, 21, 33, and 37 in the transcription

1  of STH). While the pads contain some different pitches, in both songs they begin with the

2  same sustained pitch as the highest note, E. The top note of any vertical sonority is almost

3  always the most prominent.

4        20.   Vocal Melody. The vocal melody in STH that is set to these guitar passages

5  in the A sections is similar to the harpsichord melodies heard in T during the third iteration

6  of the studio version (1:37) and in the keyboard parts at the very beginning of all the live

7  versions. In STH, this melody, which establishes the subject matter of the song and contains

8  the words "stairway to heaven," is arguably the most important vocal theme in STH. The

9  melody of STH is set to three phrases that climb successively to three higher pitches: C, D,

10  and E. The melody in T also gradually works its way upward through these same pitches.

11  The first vocal phrase of STH begins similarly to the clavinet melody in T as can be seen

12  below:

13  Taurus          A B C  A
    Heaven          A B C BA C ("There's a lady who's sure…")
14

15  It is important to note that this keyboard melody in T and the vocal in STH are placed

16  similarly over the guitar passage in the A sections of both songs.

17        21.   The final cadences of these passages also contain important similarities. The

18  resolution of STH comes at the beginning of the fourth measure while in T the resolution

19  generally also comes in the fourth measure, but on the third beat. The cadence in STH

20  (essentially G major to A minor) contains the following pitches (as can be seen in measure

21  24 of the STH sheet music).

22  Stairway
    D     E
23  B     C
    G     A
24  B     A

25

26  The cadence in T generally resolves to A on the third beat of the fourth measure.

27  Melodically, the same movement from G to A occurs at the end of the measure leading into

28  Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN          9
                               OPPOSITION TO DEFENDANTS' MOTION FOR
                               SUMMARY JUDGMENT

1   the next A section.

2   <u>Taurus</u>

    D     A  (GA)

3   D     E

    A     A

4   A     B

    D     A

5

6   Example 3 provides a transcription of this cadence from T at 1:47.

7   Example 3.     "Taurus" cadence (1:47)

8



17

18     22.      While there are differences between these two cadences, both A sections

19   return to the tonic in the fourth measure. Most important, the melodic movement from flat-7

20   to 1 (G to A) is exactly the same in both songs, although in T it happens at the end of

    measure four rather than at the beginning of the measure.

21

22     23.      Significance. The passages at issue are clearly important, easily the *most*

23   important musical expression in both songs. In T the segments comprise the central musical

24   themes heard in the work. Although in the studio version of T a long introduction is heard, in

25   live versions, there was no introduction and the song began with the main theme heard in the

26   acoustic guitar. Similarly in STH the passages open the song, and have acquired iconic

27   status. Instantly recognizable, countless aspiring guitarists and other instrumentalists have

28   Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN    10

                                        OPPOSITION TO DEFENDANTS' MOTION FOR

                                        SUMMARY JUDGMENT

1  learned these parts in their early programs of study.

2        24.    In summary, important musical expression in Taurus and Part I of STH is

3  substantially similar. These similarities should be obvious to the average listener and

4  become explicit under musicological analysis. There is no doubt that the creators of

5  "Stairway to Heaven" drew upon the musical expression central to "Taurus." Besides the

6  overall general form, sound, feel, style, and tempo, these similarities include the signature

7  themes of both songs, in particular the acoustic guitar passages I have labeled section "A."

8  Nearly 80% of the pitches of the first eighteen notes match, along with their rhythms and

9  metric placement. The harmonic setting of these A sections feature the same chords during

10 the first three measures and an unusual variation on the traditional chromatic descending

11 bass line in the fourth measure. While the cadence is delayed slightly in T, each passage

12 ends by moving from flat-7 to 1 (G to A). Moreover, these passages are supported by similar

13 "pads" or sustained string or recorder sounds and string and bass recorder parts that are

14 identical. The passages are overlayered by vocal melodies in STH and prominent keyboard

15 parts in T that begin the same way. In professional opinion, these similarities, both

16 individually and in the aggregate, preclude the possibility of coincidence or independent

17 creation.

18 **Preliminary Response to Ferrara and Mathes Reports**

19       25. Before addressing the specific content in the undated Ferrara and Mathes reports,

20 I would like to reiterate the most important points in this case.

21       26. "Taurus" contains original protectable expression. A central theme in "Taurus" is

22 the 4-measure guitar part.

23       27. "Taurus" and "Stairway" are much more similar to each other than any of the

24 other songs mentioned by Ferrara in his report are to either of these songs. The guitar parts in

25 "Taurus" and "Stairway" are much more similar to each other than they are to any other

26 similar passages in any of the songs referenced in the Ferrara report.

27       28. These similarities, which are readily apparent even to casual listeners and are

28 Case No. 15-cv-03462 RGK (AGRx)            DECLARATION OF ALEXANDER STEWART IN            11
                                             OPPOSITION TO DEFENDANTS' MOTION FOR
                                             SUMMARY JUDGMENT

1  made clear in my expert analysis, are substantial and involve expression important to both

2  compositions.

3        29. Ferrara's report is severely flawed in its methodology and is riddled with errors

4  and omissions as discussed further below. Despite offerings transcriptions of the recordings

5  of nearly all his examples of so-called prior art, he never offers a single note transcribed

6  from "Taurus." Even more breathtaking in its inconsistency is his reliance on a painstaking

7  transcription of the recording of "Stairway" (which must have taken many hours to

8  complete) for his comparison of the works at issue in this case while completely avoiding a

9  similar dissection of "Taurus." He describes using software to loop and slow down the

10  recording in order to accomplish this (see footnote 2 on p. 72). By his own count he has

11  identified 11,104 note heads in "Stairway." While this transcription fills 29 pages (Visual

12  Exhibit B), he could not take the time to transcribe a single note from the recording of

13  "Taurus" though he references both the time frame in which it was recorded (January 1968)

14  and the album on which this work appeared (*Spirit*).

15        30. I have seen Dr. Ferrara's work in numerous other comparisons and I don't believe

16  I have ever seen him go to such lengths to avoid discussing a sound recording in which a

17  composition is embodied. Indeed, standard musicological practice requires that the relevant

18  portions of both works be rendered in transcriptions. In the interest of fairness, the same

19  techniques and procedures must be used in the analysis both compositions. For some

20  unexplained reason Dr. Ferrara has chosen not to follow standard musicological procedures

21  (that he has followed in numerous other matters).

22        31. The deficiency of the lead sheet deposit copy of "Taurus" is noted at the very

23  beginning of Mr. Mathes' report. In his words, "the lead sheet is strangely lacking in that the

24  guitar figure, as played on the recording, is not there" (Mathes Report para. 4). As can be

25  heard not only in the studio recording of "Taurus," but in every live version as well (most of

26  which pre-date the studio version), this guitar passage forms an integral part of the

27  composition of "Taurus" as it was conceived, created and fixed in the period before the

28  Case No. 15-cv-03462 RGK (AGRx)              DECLARATION OF ALEXANDER STEWART IN          12
                                                OPPOSITION TO DEFENDANTS' MOTION FOR
                                                SUMMARY JUDGMENT

1    recording of the album *Spirit*.

2         32. If the guitar figure is not in the lead sheet, as stated by the defendant's other

3    expert, then how can Dr. Ferrara's comparison of the guitar passages, which relies entirely

4    upon this lead sheet, be be considered valid? Unfortunately, as a result, Dr. Ferrara has

5    wasted considerable time in preparing a 199-page report that ignores the relevant passage

6    found in the original work. This omission compels us to disregard almost the entirety of Dr.

7    Ferrara's report.

8         33. Obviously he has taken an evasive approach to this case. Lead sheets are

9    notoriously lacking in musical detail, and, quite often, contain inaccuracies in their

10   representation of the composition. Indeed, the first sixteen measures of "Stairway" are

11   completely missing from the deposit copy lead sheet of that composition. Would the

12   defendants be willing to concede that none of the sounds heard during this entire section are

13   part of the protectable musical expression contained in the "Stairway" composition?  Besides

14   the iconic guitar A section, these measures contain an eight-bar B section and recorder

15   backgrounds, that, in their aggregate, comprise nearly 275 notes. Plagiarists around the

16   world will be glad to learn that this expression is free for the taking if, according to the

17   defendants' presumed argument, since it was not included in the deposit copy of "Stairway,"

18   it is not part of the composition.

19        34. In particular, Dr. Ferrara's comparison of the melodies and rhythms (Attachments

20   C & D) of the iconic guitar passages at issue in "Taurus" and "Stairway" are so deeply

21   flawed that they must be completely discarded.

22        35. The pitch sequence heard in the first three measures of the A section of "Taurus"

23   contains at least 30 pitches (the number varies slightly among the different iterations of this

24   section and in terms of the notes that are sustained rather than re-struck). Ferrara's analysis

25   shows only 15 notes and leaves out approximately *half* the notes (Musical Example 10).

26        36. Rhythmically, there is a steady stream of eighth notes in both passages – during

27   the three measures, 24 consecutive eighth-notes (as charted in my report in example 1).

28   Case No. 15-cv-03462 RGK (AGRx)         DECLARATION OF ALEXANDER STEWART IN         13
                                            OPPOSITION TO DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT

1   Ferrara's claim that "there are no significant rhythmic similarities" (p.42 para. 7) is patently

2   false. In fact, the rhythms in these three-measure passages are *identical*.

3       37. Mr. Mathes' performance of the passages in question confirms these facts. He

4   plays a steady stream of 24 eighth-notes during these three measures, thereby directly

5   contradicting Ferrara's faulty comparison.

6       38. Similarly, Dr. Ferrara's comparisons with so-called prior art must also be rejected

7   because he has not relied on an accurate representation of the compositional elements of

8   "Taurus." In fact, he has intentionally avoided them. This is a clear case of "garbage in –

9   garbage out."

10      39. Amazingly, Dr. Ferrara is unable to compare such basic elements as the tempos

11  of each work because the deposit copy of "'Taurus' does not include an indication of the

12  tempo" (p. 7 para 13). All he needed to do was listen briefly to the recording as Mr. Mathes

13  was clearly able to do in his recreation of the A section of "Taurus." Ferrara also attempts to

14  make much of the fact that "Stairway" has lyrics and a vocal while "Taurus" does not; in

15  other words, "Stairway" is a song and "Taurus" is an instrumental. Strictly speaking this

16  statement is correct, however, the term "song" is frequently used when referring to

17  compositions that embody similarities to vocal works (e.g. Mendelssohn's Songs Without

18  Words). Moreover, much of the opening section of "Stairway" in which the A guitar passage

19  occurs is an instrumental anyway.

20      40. Dr. Ferrara commits another analytical conceit when he states: "The basic

21  rhythmic pulse in the portion of 'Taurus' with similarities to 'Stairway' is quarter notes, but

22  the basic rhythmic pulse in the portion of 'Stairway' with similarities to 'Taurus' is eighth

23  notes. Only after halving the notes values in "Taurus" can they be properly compared with

24  the notes in 'Stairway'" (p.40 para 4). The decision whether to represent the basic notational

25  unit as eighth notes or quarter notes is mostly arbitrary and has little effect on the sound of

26  these works when performed. Indeed, well before I saw the deposit copy I transcribed

27  "Taurus" using eighth notes as the basic unit (as I would expect most transcribers).

28  Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN          14
                                            OPPOSITION TO DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT

41. My original report stated that while other works use similar descending minor harmonic patterns, both "Taurus" and "Stairway" were unusual in their avoidance of the typical final pitch of this sequence, the fifth or E in the key of A minor. Indeed, most of the examples provided by Ferrara, including the Purcell, the Chopin, the Ellington, (Visual Exhibits D, E, and H); "Chim Chim Cher-ee" (Musical Example 4), "Walkin' My Baby Back Home" (Musical Example 6), "Spring Is Near" (Musical Example 9), "Cry Me a River" (Musical Example 13), "Michelle" (Musical Example 14-15), all arrive at the fifth degree of the scale. Some, such as "What Are You Doing the Rest of Your Life" (Visual Exhibit L), after a slight detour, reach a sustained fifth before returning to the beginning of the sequence.

42. "A Taste of Honey" (Musical Example 12), "Music to Watch Girls By" (Musical Examples 16-17) and "More" (Visual Exhibit G and Musical Example 7) never even arrive at the flat 6 and only contain the first four notes of the descending sequence.

43. Some of his examples, such as "How Insensitive" (Musical Example 5), "Night and Day," and "One Note Samba," (Visual Exhibits F, I., and K respectively) and feature only a chromatic bass line and the chords or harmonies above them are different from those found in "Taurus" and "Stairway."

44. Quite a few (e.g., "More" and "Summer Rain") also are in major keys and, as Ferrara points out represent temporary "'tonicization' (i.e., momentary change of the 'tonic' or key tone) of a minor key" (p. 31, paragraph 26).

45. Many of Ferrara's examples (e.g., Purcell, Visual Exhibit D and "Meaning of the Blues," Musical Example 3) also have very different durations and harmonic rhythms for the progression.

46. Dr. Ferrara provides examples of what he claims are "melodic similarities" between the guitar parts in section A of "Taurus" and "Stairway" and the guitar parts of several other songs that predate "Taurus." Once again it is essential to note that, since he is not using a complete and accurate transcription of the guitar part in "Taurus" (as recognized

1  by defendant's other expert Mathes), these comparisons are fundamentally flawed. Still,

2  once again "Taurus" and "Stairway" are much more similar to each other than either is to

3  any of these examples. Musical Example 11 (an arrangement for Johnny Mathis of "My

4  Funny Valentine") is very different rhythmically and in durations and in the guitar part

5  contains no pitches except arpeggiated chord tones. The Beatles version of a "Taste of

6  Honey" (Musical Example 12) and Davey Graham's recording of "Cry Me a River"

7  (Musical Example 13) are also different rhythmically and melodically (containing triplet

8  arpeggios). It is also important to note that the recording of "Summer Rain" (Musical

9  Examples 18 and 19) postdates several of the live versions of "Taurus" and more properly

10  belongs with the songs in the next section of Dr. Ferrrara's report that discusses songs

11  released after "Taurus."

12     47. Since "Summer Rain" and the next three examples postdate "Taurus," they do

13  nothing to undermine the originality of the guitar passage in "Taurus." Moreover, they are

14  less similar to either "Taurus" or "Stairway" than these two works are to each other. "Ice

15  Cream Dream" (Musical Example 20) does not contain the essential second tone of the

16  progression at all (#7 or G# in the key of A minor). Moreover, Ferrara's analysis and

17  transcription are incorrect. The first chord of the song is G minor, not A minor meaning that

18  he does not even get the correct key in his transcription. "Thoughts" (Musical Example 21)

19  and "And She's Lonely" (Musical Example 22), like the standard progressions in paragraph

20  17 of this report, arrive at the fifth degree of the progression (E in the key of A minor).

21     48. Dr. Ferrara's Audio Exhibits are exemplar of more shoddy work. Many of the

22  pieces are incorrectly labeled or totally absent. Tracks 6, 7, and 8 are not the songs "Walkin'

23  My Baby Back Home," "More," or "Spring Is Near." Track 17 is not "And She's Lonely."

24  Without having the actual recordings that he has purported to represent in his transcriptions

25  and comparisons, it is impossible to determine their accuracy.

26     48. While I can easily provide more detailed analysis of these comparisons

27  (especially if I am provided all the correct recordings), for now I can emphatically state that

28  Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF ALEXANDER STEWART IN          16
                                            OPPOSITION TO DEFENDANTS' MOTION FOR
                                            SUMMARY JUDGMENT

1   not one of the examples provided by Ferrara and Mathes as having similar harmonies,

2   melodic and rhythmic patterns, and/or instrumentation (i.e., acoustic guitar) is as similar to

3   "Taurus" and "Stairway" as they are to each other.

4         49. Mr Mathes' report at least appears to compare more of the compositional

5   elements of "Taurus" and "Stairway." However, his report is colored by effusive praise and

6   hyperbole regarding Led Zeppelin and its individual members. Adjectives such as

7   "unrivaled," "inimitable," "incredible," "gorgeous," "wonderful," and "monumental,"

8   "extremely particular and very special" and "completely unique and beautifully so" do little

9   to further objective analysis of the musical expression at issue. Given Led Zeppelin's well

10   known history of having appropriated from other works perhaps he should adopt a more

11   cautious and neutral tone in his appraisal of their creative accomplishments. In any event,

12   much of his report reads more like an article in a fan magazine. "John Paul Jones was not

13   only a great Bass player, but Zeppelin's secret weapon from an arrangement standpoint."

14   Robert Plant's "artistry became the model for all Rock singers" and "Jimmy's" "legendary"

15   solo made "rock history."

16         50. I also find his constant use of the term "line cliché" (which he attributes to his

17   training at Berklee College of Music) not particularly informative. Many of the other

18   elements in "Stairway," in particular the two and three-chord vamps, could also be

19   considered clichés. Still, he recognizes that the guitar passages at issue in this case are more

20   than clichés and contain "special" elements. While he is correct in saying that the passage in

21   "Stairway" ascends higher than the line in "Taurus," he does not directly compare the

22   pitches note-for-note as I have in my analysis which shows that nearly 78% or 14 of the first

23   18 eighth-note slots contain the same pitches. Much of the higher range of "Stairway" is due

24   to mere octave displacement (placing the same pitch class at a higher octave), not because of

25   the introduction of new pitches to the sequence.

26         51. In preparing this report I was careful to disregard performance elements and

27   focus on compositional elements in order to reach my conclusions.

28   Case No. 15-cv-03462 RGK (AGRx)       DECLARATION OF ALEXANDER STEWART IN    17
                                                    OPPOSITION TO DEFENDANTS' MOTION FOR
                                                    SUMMARY JUDGMENT

1    52. Because of time constraints, I have been unable to offer further analysis of these

2  reports at this time. Regardless, as I have tried to show in this brief response, I have found

3  nothing persuasive in the Ferrara and Mathes reports that contradicts my finding that

4  substantial original musical expression from "Taurus" has been copied in "Stairway."

5

6

7    Executed this 7th day of March, 2016 at Burlington, Vermont.

8    I declare under penalty of perjury under the laws of the United States that the

9  foregoing is true and correct.

10

11  _____

12    Alexander Stewart, Ph.D.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Case No. 15-cv-03462 RGK (AGRx)        DECLARATION OF ALEXANDER STEWART IN        18
                                          OPPOSITION TO DEFENDANTS' MOTION FOR
                                          SUMMARY JUDGMENT

**AUDIO EXHIBITS**

**Audio Exhibit 1:**
**Dazed and Confused by Led Zeppelin**

**Audio Exhibit 2:**
**Dazed and Confused by Jack Holmes (1967)**

**Audio Exhibit 3:**
**Whole Lotta Love by Led Zeppelin**

**Audio Exhibit 4:**
**Muddy Waters' You Need Love (1962) (10 seconds – 28 seconds)**

**Audio Exhibit 5:**
**The Small Faces' You Need Loving (1966) (25 seconds – 48 seconds)**

**Audio Exhibit 6:**
**Live performance of Led Zeppelin playing Fresh Garbage 1-10-1969**

**AUDIO EXHIBITS – COMPARISON AUDIO**

**Audio Exhibit 7:**
**Stairway to Heaven (0 seconds – 25 seconds)**

**Audio Exhibit 8:**
**Taurus (45 seconds – 1 minute, 13 seconds)**

**Audio Exhibit 9:**
**8 measures of Stairway from note 1 of the acoustic guitar, repeated multiple times**

**Audio Exhibit 10:**
**Part A:**
**8 Measures of Taurus from note 1 of the acoustic guitar, repeated multiple times**

**Audio Exhibit 11:**
**8 measures of Stairway and Taurus played together from note 1 of the acoustic guitar, repeated multiple times**

**AUDIO EXHIBITS - RE-RECORDING OF STAIRWAY TO HEAVEN**

| | |
|---|---|
| **Audio Exhibit 12:** | **Acoustic Guitar** |
| **Audio Exhibit 13:** | **Bass** |
| **Audio Exhibit 14:** | **Drums** |
| **Audio Exhibit 15:** | **Electric 12 Strings** |
| **Audio Exhibit 16:** | **Electric Piano** |
| **Audio Exhibit 17:** | **End Guitar** |
| **Audio Exhibit 18:** | **Les Pauls** |
| **Audio Exhibit 19:** | **Recorders** |
| **Audio Exhibit 20:** | **Slide** |
| **Audio Exhibit 21:** | **Solo** |

**AUDIO EXHIBITS - RE-RECORDING OF TAURUS**

| | |
|---|---|
| **Audio Exhibit 22:** | **Acoustic Guitar** |
| **Audio Exhibit 23:** | **Cello 1** |
| **Audio Exhibit 24:** | **Cello 2** |
| **Audio Exhibit 25:** | **Cymbal** |
| **Audio Exhibit 26:** | **Flute** |
| **Audio Exhibit 27:** | **Harpsichord** |
| **Audio Exhibit 28:** | **String Bass** |
| **Audio Exhibit 29:** | **Viola** |
| **Audio Exhibit 30:** | **Violins** |

**AUDIO EXHIBITS – ALEXANDER STEWART**

| | |
|---|---|
| **Audio Exhibit 31:** | **(Previously: Audio Exhibit A)** |
| **"Stairway to Heaven" (album)** | |

| | |
|---|---|
| **Audio Exhibit 32:** | **(Previously: Audio Exhibit B)** |
| **"Taurus" (album)** | |

| | |
|---|---|
| **Audio Exhibit 33:** | **(Previously: Audio Exhibit E)** |
| **Taurus Live at Ash Grove (7/10/1967)** | |

| | |
|---|---|
| **Audio Exhibit 34:** | **(Previously: Audio Exhibit C)** |
| **Taurus Live at Ash Grove (7/31/1967)** | |

| | |
|---|---|
| **Audio Exhibit 35:** | **(Previously: Audio Exhibit D)** |
| **Taurus Live at Ash Grove (8/8/1967)** | |

| | |
|---|---|
| **Audio Exhibit 36:** | **(Previously: Audio Exhibit H)** |
| **Taurus Demo Recording (8/1967)** | |

| | |
|---|---|
| **Audio Exhibit 37:** | **(Previously: Audio Exhibit F)** |
| **Taurus Live at Kaleidoscope (4/5/1968)** | |

| | |
|---|---|
| **Audio Exhibit 38:** | **(Previously: Audio Exhibit G)** |
| **Taurus Live at The Time Coast** | |

| | |
|---|---|
| **Audio Exhibit 39:** | **(Previously: Audio Exhibit H)** |
| **Taurus Live at Acoustic (1996)** | |

| | |
|---|---|
| **Audio Exhibit 40:** | **(Previously: Audio Exhibit J)** |
| **Combination – Acoustic Taurus Synced to STH SR – Part A, played over Master SR of STH** | |

| | |
|---|---|
| **Audio Exhibit 41:** | **(Previously: Audio Exhibit K)** |
| **Acoustic Taurus Synced to Master SR of STH – Part A** | |

| | |
|---|---|
| **Audio Exhibit 42:** | **(Previously: Audio Exhibit L)** |
| **Stairway Acoustic – Part A:** | |

| | |
|---|---|
| **Audio Exhibit 43:** | **(Previously: Audio Exhibit M)** |
| **Taurus Acoustic – Part A:** | |

| | |
|---|---|
| **Audio Exhibit 44:** | **(Previously: Audio Exhibit N)** |
| **Combination – Acoustic Taurus Synced to Master SR of STH (Part A), played over Acoustic Stairway (Part A)** | |

**AUDIO EXHIBITS – REBUTTAL OF MATHES**
**Audio Exhibit 45:**        **Mathes Audio Exhibit Tempo Matched - Stairway**
**Audio Exhibit 46:**        **Mathes Audio Exhibit Tempo Matched - Taurus**
**Audio Exhibit 47:**        **Mathes Audio Exhibit Tempo Matched - STH & Taurus**




**VIDEO EXHIBITS – DEMONSTRATIVE GUITAR PERFORMANCE**
**Video Exhibit 1:**        **Taurus – Left Hand**
**Video Exhibit 2:**        **Taurus – Right Hand**
**Video Exhibit 3:**        **Stairway to Heaven – Left Hand**
**Video Exhibit 4:**        **Stairway to Heaven – Right Hand**

**02525**

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 105
3  Media, PA 19063
   T:  (215) 500-1000; F:  (215) 500-1005
4  E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6  Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*

11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 MICHAEL SKIDMORE, as Trustee for          Case No. 15-cv-03462 RGK (AGRx)
   the RANDY CRAIG WOLFE TRUST,
16
                                             Hon. R. Gary Klausner
17              Plaintiff,

18       v.                                  **DECLARATION OF BARRY
                                             HANSEN IN OPPOSITION TO
19                                           DEFENDANTS' MOTION FOR
   LED ZEPPELIN; JAMES PATRICK               SUMMARY JUDGMENT OR IN
20 PAGE; ROBERT ANTHONY PLANT;               THE ALTERNATIVE, PARTIAL
   JOHN PAUL JONES; SUPER HYPE               SUMMARY JUDGMENT**
21 PUBLISHING, INC.; WARNER MUSIC
22 GROUP CORP., Parent of                    **Date:    March 28, 2016**
   WARNER/CHAPPELL MUSIC, INC.;              **Time:    9:00 a.m.**
23 ATLANTIC RECORDING                        **Room:    850**
   CORPORATION; RHINO
24
25 ENTERTAINMENT COMPANY,

26              Defendants.

27

28

---

Case No. 15-cv-03462 RGK (AGRx)          DECLARATION OF BARRY HANSEN IN OPPOSITION TO
                                         DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  **DECLARATION OF BARRY HANSEN**

2  I, Barry Hansen, declare as follows:

3  1. The song Taurus was played by the band Spirit during the early years

4  1967 and 1968. The song was also played at the Ash Grove. I had maintained tape

5  recordings of Spirit playing the Ash Grove and other places from over the years. I

6  recently (2008) provided these tape recordings to Mick Skidmore.

7  2. The attached exhibit is a collection of emails between Mick Skidmore

8  and myself which identify the tapes of Spirit that I had retained, dates, and songs

9  played.

10  3. Executed this 7th day of March, 2016 at Los Angeles County,

11  California. I declare under the penalty of perjury under the laws of the United States

12  of America that the foregoing is true and correct.

13

14  _Barry Hansen_
     Barry Hansen

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Comcast Webmail - Email Message                                                 Page 1 of 4

**From:** MIKOFF@aol.com
**To:** bplll@comcast.net
**Subject:** Fwd: Spirit live tapes found
**Date:** Wednesday, July 02, 2008 12:45:55 PM

Bruce

See below!  Tell Mark I go the Ian McLagen disc.

Cheers

Mick

> From: bearyhansen@ca.rr.com
> To: MIKOFF@aol.com
> Sent: 7/2/2008 1:33:10 P.M. Eastern Daylight Time
> Subj: Re: Spirit live tapes found
>
> Mick - I haven't tried to play any of these tapes yet, but I'll list them for your edification. This is
> what it says on the boxes; no guarantee that the reels match the boxes, though I have no reason
> to believe they don't.
>
> Some, but not all, of the boxes have song lists.  The Magic Mushroom tapes do have them...and
> none of these have any of the three titles from "California Blues."  If you have any questions about
> song lists please ask.
>
> ASH GROVE   (from the soundboard; see my note about the balance in earlier correspondence
> below)
> 6-26-67
> 7-24-67
> 7-24-67 / 7-31-67
> 7-31-67
> 7-31-67
> 8-7-67
> 8-7-67 / 8-14-67
>
> IIRC, most of the other live tapes were made from the sound booth with a single open-air mic
> (usually not a very good one).
>
> 8-18-67, Magic Mushroom
> 8-19-67, Magic Mushroom
> 11-4-67, Magic Mushroom
> 12-24-67  (venue??)
> 1-13-68, Topanga Elementary School
> 4-5-68, Kaleidoscope
> 4-6-68, Kaleidoscope
> 11-2-68, Whisky



Exhibit 468
Skidmore
Virginia Dodge, RDR, CRR 2/5/16

http://mailcenter3.comcast.net/wmc/v/wm/48764D70000C664500001C7B22156616648B7...   7/10/2008

Comcast Webmail - Email Message                                    Page 2 of 4

? '69, ? Topanga Corral   (contains songs that appeared on the "Clear" album)

MISC. ITEMS
8-67  Demo (probably a copy of the Paramount Recorders session that appeared on "Chronicles")
1-68, "Spirit Tunes"  (IIRC, this consists of acoustic performances recorded so I could make lead sheets)
6-20-68, Jam
6-68, KPFK Talk Show
"Spirit Odds and Ends"

In addition there are two reels labelled "Red Roosters". At least one was recorded at the Ash Grove in 1965.

One thing I did not find, alas, was the original 15 IPS mixdown tape for the 8-67 Paramount session....just a 15 IPS analog copy of that, plus the probable 7.5 copy listed above. I don't think I ever got the original reel back after I lent it to the people who were assembling "Chronicles."

I would be willing to lend any or all of these, provided I can have copies of the digital transfers, and provided that shipping expenses are paid.

I'll let you know if I find any more tapes. I think this is all or nearly all of what I have.

Yours, Barry


At 03:40 PM 7/1/2008, you wrote:

Dear Barry,

Great news.  I eagerly await further information.

Best Regards

Mick

In a message dated 7/1/2008 4:04:21 P.M. Eastern Daylight Time, bearyhansen@ca.rr.com writes:

Dear Mick - I have found a stash of about 20 7" reels of Spirit live from 1967-68.  Some of the boxes have been nibbled by termites but at first glance the tapes should be OK.  More details soon.

-Barry Hansen


At 10:37 AM 4/30/2008, you wrote:

Barry

Thank you so much for the reply.  I really appreciate anything you can do, and obviously at your leisure.  It's

Comcast Webmail - Email Message                                        Page 3 of 4

quite possible that I can salvage something from the tapes, and I'd at least like to try.  The three tracks that Randy used on California blues, state "Live from Magic Mushroom,"  I've already cleaned those up and they sound actually pretty good ("Tell Everyone," "Soundtrack for a Moth" and Shoes Back On.") I was hoping there might be more.

Anyway, great hearing from you.  You can never tell when people get your emails or not.  Sundaze wants to do a vinyl edition of the Demos, which I think would be great, hence the search for the reel. I'd like to do a nice package, good photos and sleeve notes etc.  Perhaps nearer to the time we can chat on your recollections of the sessions and the times.  I'm coming out to see Ed in a couple of weeks.  We have someone interested in his Ash Grove archives.

Anyway, Barry thanks again for anything you can do.  My contact information is 103 Greenleaf St, Quincy, MA 02169.  Tel # 617-471-0108.  I look forward to hearing from you in due course, and perhaps meeting you on one of my trips to LA.

Sincere best regards

Mick Skidmore

In a message dated 4/30/2008 1:15:31 P.M. Eastern Daylight Time, bearyhansen@ca.rr.com writes:
Dear Mick,
Ed Pearl forwarded your email.  I have not received any other emails from you recently.  My address changed about 15 months ago due to factors beyond my control.
In any case I'd be happy to do what I can to make Randy's music available in the best possible circumstances.
I should warn you that I have not been an ideal tape archivist. The tapes you probably want are in haphazardly sorted boxes scattered around several storage facilities.  I'll be glad to do what I can to locate anything of Spirit or Randy, but I can't promise overnight service.  Hopefully nothing has deteriorated too badly, but most of them haven't been looked at in many years, so I can't promise anything about that either.  They were recorded on the cheapest tapes I could find, since neither I or the group had much cash to spare in those days.
I'm not sure right now if I got the original 2-track

Comcast Webmail - Email Message                                    Page 4 of 4

mixdown reel of the summer 1967 demo session at
Paramount Recorders back from the people who
assembled Chronicles, but that'll be the first thing I
look for.  (Unfortunately I never did get the original
eight track session tape).
I should have some reels of Spirit's 1967 Monday
night sessions at the Ash Grove. Most of those
haven't been heard by me or anyone else since
the Sixties. The group would listen to them once or
twice, and then move on. I never paid much
attention to them as they're very badly
balanced...taken right off the PA which was mainly
there just so the vocals could be heard in the club;
there was little or no attempt to mic the instruments
properly. But you're welcome to do what you can
with them.

All the best,
Barry Hansen

Need a new ride? Check out the largest site for U.S. used
car listings at AOL Autos.

Gas prices getting you down? Search AOL Autos for fuel-efficient used cars.

Gas prices getting you down? Search AOL Autos for fuel-efficient used cars.

02531

Zimbra: bpIII@comcast.net                                                     Page 1 of 6

SmartZone Communications Center Collaboration Suite              bpIII@comcast.net

Fwd: Spirit tapes - detailed inventory     Monday, November 10, 2008 6:54:51 PM
From: MIKOFF@aol.com
   To: bpIII@comcast.net

Bruce

Comments welcome.

Cheers

Mick

From: awc99@verizon.net
To: MIKOFF@aol.com
Sent: 11/10/2008 7:20:57 P.M. Eastern Standard Time
Subj: Spirit tapes - detailed inventory

Hi Mick,

 Here is a detailed list of the SPIRIT TAPES.

As we spoke about an offer you thought reasonable I'll
ask for your input to their value. There are 28 tapes available.
LMK what you want to do and how to proceed.

Arthyr

Subject: Spirit tapes - detailed inventory

(FYI - there are 10 Ash Grove reels. I may have said there
were 15 at one point, but in reality there are just 10. They
were made on Monday nights, when the Ash Grove was
normally dark.  The evenings were open to the public, but
there wasn't any advertising or publicity, so the audience
consisted mostly of families and friends.  Ed Pearl let Spirit
use the club as a favor, since Randy was his nephew. I ran
the lights and sound, because I'd done that as an Ash
Grove employee a couple years earlier, and knew how
they worked.   I don't believe anyone was paid. Certainly I
wasn't paid. I honestly don't recall whether admission was
charged. I seem to recall that beer and wine was available,
but I'm pretty sure the kitchen was closed. These evenings
were rehearsals...but the group did, most of the time



Exhibit 469
Skidmore
Virginia Dodge, RDR, CRR 2/5/16

http://sz0038.wc.mail.comcast.net/zimbra/mail                              11/10/2008

Zimbra: bpIII@comcast.net                                                Page 2 of 6

anyway, play all the numbers straight through without stopping, and played each song only once per set, so in that sense they were more like performances.)

****

Here are all the Spirit tapes we are able to find.   The majority feature the original group.
Also included are tapes by the Red Roosters (1965: Randy California [then known as Randy Wolfe], Jay Ferguson, Mark Andes, Mike Fondiler, Ed Cassidy - all but Fondiler would go on to be members of Spirit).

There are 28 7" reels.   Ten of these were clearly recorded at the Ash Grove; in addition there is another reel that was compiled in 1967 from Ash Grove tapes, for use as a demo.

Songs are listed for all tapes where a song list appears on the box or on an enclosed sheet.  Some tapes have no surviving song list. Sometimes one or two songs are listed on a tape box but not others.
I cannot guarantee that the song lists are accurate or that they match the tapes they were found with.
I have not listened recently to most of these tapes. I can listen to particular ones now if needed.
Some of the boxes have water and insect damage. In some cases there is insect residue on the tape reels. However, as far as I can tell, the tapes themselves are all still playable.
AG = These are tapes recorded at the Ash Grove.  The Ash Grove is not identified on these tape boxes, but the dates are.  These shows were held on Monday nights between 6-26-67 and 8-14-67.  Not all shows are included (there's nothing from 7-17-67); at least one tape appears to have been recorded over an earlier one.

Red Roosters - Ash Grove, 1965   Walkin' Down the Line (fragment) / Walkin' the Dog / My Friend / I Want To Be Loved / Ya Ya / With Your Love / Girl from the North Country (fragment) / Duncan and Brady (fragment) / On The Road Again / Somebody To Love / Wild About My Lovin' / Rock Me Mama / unidentified fragment

Red Roosters 3 3 / 4  (No further info)

AG 6-26-67   1 set
on same reel - "Improvised Film Soundtrack"  6-26-67

Spirit Audition 7-7-67  [location unknown]
on same reel: AG 7-10-67 - 1st set (new tunes)   Shotgun

Zimbra: bpIII@comcast.net                                                    Page 3 of 6

AG  7-10-67  2nd set   "Neat feedback, last cut"
AG 7-10-67  3rd set   "fine guitar on 'Foxy', also cf. vocal on blues jam"

AG 7-24-67  Set 1  /  Set 2

AG 7-24-67  "From Audience"   Elijah / Hey Joe / Darlin' If / She Came To Stay / Topanga Home

AG 7-24-67 Set 3
AG 7-31-67 set 1  Free Spirit (beginning incomplete) / She's looking good / Darlin' I Know / I Saw Her Today / If I Had A Woman / Eventide

AG 7-31-67  Set 2  Ostrich Head / Topanga Home / Hey Joe / Taurus / Hear You Say / Conquistadores / Foxy Lady
AG 7-31-67 Set 3  Blues (Broken Amp) / Tunji / Shotgun / She Came To Stay / Brain Train / Gramophone Man / Darlin' If / Elijah Rock Part 1   ("Lots of wow at times")

AG 7-31-67   Elijah Rock - Part 2   (no other details)

AG 8-7-67  Set 1  Free Spirit / Shutgun / Darlin' If / Boo / Topanga Home / She Came To Stay / Conquistadores
AG 8-7-67  Set 2  Tunji / If I Had A Woman / Brain Train / Gramophone Man / Hear You Say / My Favorite Things / Darlin' I Know / Hey Joe

AG 8-7-67 Set 3  Ostrich Head / Blues (Monday Evenin') / I Saw Her Today / Matt's Theme / Straight Arrow / Taurus / FoxyLady
AG 8-14-67 Set 1   Moonfire or Idiot's Delight (world premiere) / Straight Arrow / Boo / Shotgun / Music Is Love

SPIRIT Demo   (Apparently a composite of Ash Grove tapes- "Partial Tunes")
Only For Love / Shotgun / Our Topanga Home / Millionaire Blues / Boo / She Came To Stay / Elijah Rock
Also on this reel - Dream Within A Dream / I Got a Line On You (March 1968, Sound Recorders Studio)

SPIRIT ON CHRISTMAS EVE 1967  (Benefit for Topanga Free School - Topanga Community Center)
Set 1 - Very Little Time To Fly / It's All The Same / Tunji / Only For Love / Girl In Your Eye / Topanga Fire / Mechanical World / Water Woman
Set 2 - My Favorite Things / Uncle Jack / Fresh Garbage / Dream/Dream / Kahuna / I Can't Stand It / Elijah Rock

SPIRIT Odds And Ends   Audio Hype by B[arry] H[ansen] /

Zimbra: bpIII@comcast.net                                              Page 4 of 6

Track for same / Preliminary version of Uncle Jack / She Came To Stay (preliminary) / Uncle Jack-vocal rehearsal / Uncle Jack-track + vocal rehearsal / She came to stay (as far as it ever got)

Spirit At the Whisky-a-Go-Go, 11-2-68
It's All The Same / Fresh Garbage / New Dope In Town / Apple Orchard Blues / Water Woman / Mechanical World / I Got A Line On You
into / Darlin' If / Trouble At The Whisky / It Shall Be / Poor Richard / Uncle Jack / Workin' at the Whisky / Elijah

Spirit - Magic Mushroom, Fri. Aug, 18, 1967 (Set One)
Free Spirit / Hear You Say / If I Had A Woman / Darker Than The Night / She Came To Stay / Moonfire / Foxy Lady

Spirit 8-19-67  Magic Mushroom
("Defective Tape"?  I could not get it to play well in 2008. Apparently it played OK at some previous time on a different machine).
Tunji / unidentified "good" / Turn Around / Darlin' If / Brian Berry Blues / Hey Joe / Only For Love / Boo / Hear You Say / (space) / Topanga Home / Shotgun / Darker Than The Night / Foxy Lady / I Can't Stand It / She Came To Stay / Gramophone Man (F.U.) / Free Spirit (Beg.. F.U.)

Spirit - Magic Mushroom 11-4-67  Set 3
Cop the Gig / Only for Love (glitch) / Fresh Garbage / Topanga Home / Chocolate Days (inc.) / Water Woman / Foxy Lady

Spirit - Elementary School  Sat. Jan. 13, 1968   + Fresh Garbage, Free Spirits, etc.  (no other details)

Spirit Tunes 1-68   [These were probably intended for making lead sheets]   1-13 Columbia (1st 9), 1-16 Topanga (track 10)
Little To Say-JF / Song No. 2 or DMF-RC and JF / He Cannot Keep Himself Together Anymore-JF / Majestic Black-RC / Kahuna Dream-RC / It's All The Same-RC / Give a Life-Take a Life-RC / Pisces-RC / Very Little Time To Fly-JL / Give Me the Time Of Day-RC sketch

KALEIDOSCOPE  Fri. April 5, 1968   7.5 ips mono
1st set: Alfred Artichoke (incomplete) / Shotgun / Mechanical World / Fresh Garbage / I Got A Line On You / Elijah
2nd set: It's all the same / Uncle Jack / Straight Arrow / Varush(a / Taurus / I Saw Her Today / Tunji [drum solo missing] / It's all the same   "Original tape of 1st set has fluctuating level"

Zimbra: bpIII@comcast.net                                                Page 5 of 6

Spirit - Kaleidoscope - Sat. April 6, 1968
1st set: Alfred Artichoke / Mechanical World / Fresh Garbage / I Got A Line On You / Elijah
2nd set: Shotgun / Water Woman / Give A Life, Take A Life / Billy the Brush Man / Straight Arrow / Tunji

Spirit Jam June 20  1968 (no further details)

Spirit on KPFK Talk Show - June 1968

(Probably) Topanga Corral, ? 1969
All the same / Fresh Garbage / I'm Jealous / Groundhog / Dark-Eyed Woman / "Listening Thing" / You Have Only To Remind Me / Policeman's Ball / Aren't You Glad / Mechanical World / I Got A Line On You / I Saw Her Standing There / unidentified instrumental / unidentified song / Time To Fly / Shoes Back On / Tell Everyone / Soundtrack For a Moth / Poor Richard / How're You Doin' Zeda / Shotgun / Tunji

RANDY CALIFORNIA - KAPTAIN KOPTER & THE (fabulous) TWIRLYBIRDS
Downer / Devil / I don't want nobody / Day tripper / Mother and child reunion / Things yet to come / Rain / Rainbow
"Recorded between April-July"

SPIRIT - FUTURE GAMES - OLD MIX  (no further details)

Note: in addition to these I have a 10 1 / 2" reel which contains the demo I produced for the band at Paramount Recording Studios in Hollywood in the early summer of 1967.  This is identified as a copy.  IIRC, my original of this was turned over to WERC / CREW (Spirit's label in later years) for the "Chronicles" CD.


Arthur Chadbourne

The Dr. Demento Show
Talonian Productions
CELL - 562 480-9743
Fax 562 598 0034
awc99@verizon.net
P.O.Box 545
Seal Beach, CA
90740
visit: DrDemento.com

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
3  280 N. Providence Rd. | Suite 105
   Media, PA 19063
4  T:  (215) 500-1000; F:  (215) 500-1005
   E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
7  Glen L. Kulik, Esq. (SBN 082170)
   Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*
11

12            **UNITED STATES DISTRICT COURT**

13         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 MICHAEL SKIDMORE, as Trustee for    | Case No. 15-cv-03462 RGK (AGRx)
   the RANDY CRAIG WOLFE TRUST,
16                                       | Hon. R. Gary Klausner
17            Plaintiff,
                                         | **DECLARATION OF KEVIN
18     v.                                | HANSON IN OPPOSITION TO
                                         | DEFENDANTS' MOTION FOR
19                                       | SUMMARY JUDGMENT OR IN
20 LED ZEPPELIN; JAMES PATRICK          | THE ALTERNATIVE, PARTIAL
   PAGE; ROBERT ANTHONY PLANT;          | SUMMARY JUDGMENT**
21 JOHN PAUL JONES; SUPER HYPE
   PUBLISHING, INC.; WARNER MUSIC       | **Date:   March 28, 2016**
22 GROUP CORP., Parent of               | **Time:  9:00 a.m.**
   WARNER/CHAPPELL MUSIC, INC.;         | **Room:**
23 ATLANTIC RECORDING
24 CORPORATION; RHINO
   ENTERTAINMENT COMPANY,
25
26            Defendants.
27
28

---

Case No. 15-cv-03462 RGK (AGRx)         DECLARATION OF KEVIN HANSON IN OPPOSITION TO
                                        DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## DECLARATION OF KEVIN HANSON

I, Kevin Hanson, declare as follows;

1.   I have been retained as an expert in this case to listen to *Taurus* and *Stairway to Heaven*, to perform both pieces as a master musician and execute the pieces as per their original recordings. I have personal knowledge of the facts recited it this declaration and if called as a witness could testify competently to such facts.

2.   I am an accomplished musician, proficient on electric and acoustic guitars, bass, drums, keyboards and vocals. I was engaged to play the following instruments on the *Taurus* and *Stairway to Heaven* re-recordings:

- Electric 6 and 12 string guitars
- Acoustic guitars
- Recorder parts via MIDI.

I was also asked to analyze both Taurus and Stairway to Heaven from both performance and production perspectives.

## QUALIFICATIONS

3.   I am a guitarist, songwriter, producer, teacher, and university professor with 35 years of playing experience and 25 years of teaching experience. I have performed and recorded extensively with both major label and independent bands, toured throughout the US and internationally, and have both studied and taught the guitar on a focused, in-depth level. I have played on hundreds of both major label and independent recordings for 20 years, in genres including rock, jazz, blues, gospel, hip hop, R+B and classical. I teach university courses on songwriting and on the form and structure of songs. This requires a profound understanding of song composition, arrangement, instrumentation, production and performance.

## STAIRWAY TO HEAVEN

### Familiarity with Led Zeppelin and *Stairway to Heaven*

4.   I have heard *Stairway to Heaven* my entire life. The song was still

1

1    hugely popular in 1972, the year of my birth. Led Zeppelin's music, in particular

2    Led Zeppelin IV, was a significant part of my musical upbringing. It was played on

3    the radio, on our home stereo system and at many social functions. I began learning

4    Led Zeppelin's guitar riffs when I began playing guitar at age 10 and still use the

5    guitar parts from *Stairway to Heaven* as teaching tools and songwriting topics in my

6    current teaching positions.

7    **Comparative Analysis of Original *Stairway To Heaven***

8    **to Re-Recorded *Stairway To Heaven***

9         5.     The re-recorded version of Stairway to Heaven was performed and

10   recorded to sound identical to the original. All of the guitar parts were emulated

11   with great specificity in terms of instrumentation, sound, performance feel and

12   energy. The main theme and all of the riffs, chords, guitar solo, and other solo lines

13   are all played note-for-note in the re-recorded version, performed to a high level of

14   musical accuracy.

15   ***TAURUS***

16   **Familiarity with Spirit and Taurus**

17        6.     I first heard of the band Spirit through an article discussing the

18   similarities of the song *Taurus* and *Stairway to Heaven*. When I first heard *Taurus*,

19   I was shocked at the similarities. I am deeply acquainted with the music of Led

20   Zeppelin and, regrettably, with the multiple accusations levied at the band for their

21   habit of borrowing the music of others without properly crediting the original

22   artists. These stories are common knowledge in the music scene, with the example

23   of *Stairway to Heaven* and its remarkable similarity to *Taurus* being the most

24   notable.

25   **COMPARATIVE ANALYSIS OF TAURUS AND STAIRWAY TO HEAVEN**

26        7.     Many of the components of the initial guitar figure of Taurus are

27   virtually identical to those found in Stairway to Heaven: the key, the tempo, the

28   feel, the chord progression, the pitches and duration of the melody and the

2

instrumentation are strikingly similar and much of the two pieces are identical. Knowing the history of the bands' mutual encounters, it is my opinion that the similarities of the main themes, as performed on acoustic guitar, are beyond coincidental.

8.     Taurus was written and performed in a ballad-like tempo on a steel string acoustic guitar in the key of A minor, as was Stairway to Heaven.

9.     Taurus begins with an arpeggiated A minor figure in 8th notes on the notes A, C, and E, as does Stairway to Heaven. The rhythm of the figures is identical up until the last measure.

10.     The bass notes of the guitar figure of Taurus descend chromatically from the tonic down to the b6 degree, as does Stairway to Heaven.

11.     Taurus' opening figure begins on the 4th string at the 7th fret with the third finger and on the 3rd string at the 5th fret with the first finger, as does Stairway to Heaven.

12.     Both selections are performed at virtually the same tempo with the same feel, articulation and style.

13.     The chord progression is virtually identical for the first 5 chord changes.

14.     The phrasing of the two figures is virtually identical. Groups of four 8th notes descending over five chords that finally resolve to the tonic.

15.      When the audio tracks of the two figures are isolated and matched at the same tempo, they are almost indistinguishable. I incorporate by reference the audio exhibits.

16.     *Taurus* and *Stairway to Heaven* are similar both from a listening standpoint and from a performance standpoint. From a listening standpoint, the main guitar themes of both songs are strikingly similar in tempo, key, melody, melodic shape, rhythm, phrasing, instrumentation, and mood.

17.     From a performance standpoint, *Taurus* and *Stairway to Heaven* are

3

1  performed at a nearly identical position on the guitar fretboard. Both figures begin

2  on the same strings in the same position with the same fingerings.

3      18.    For a reasonably skilled guitarist there are many ways to play one

4  chord. For an A minor triad, there are at least 20 different inversions that are

5  common and easily accessible. When the instrument's range beyond one octave is

6  taken into consideration, this number is increased substantially. In comparing the

7  video exhibits "*Taurus* - left hand" and "*Stairway to Heaven* - left hand", one can

8  see that the triads in both examples begin in the same position in the same octave. I

9  incorporate by reference the four video exhibits of *Taurus* and *Stairway to Heaven*.

10     19.    The guitar parts that I replicated in the re-recordings of both songs did

11  receive songwriting credit, as they rightfully should, as they are both melodic

12  themes of primary importance. The verses of both songs are built around the guitar

13  parts.

14     20.    The chord progression for the main theme of STH is not uncommon. It

15  has been used in many jazz standards, show tunes, and orchestral works. The

16  following elements from Stairway to Heaven and Taurus are almost completely in

17  common:

18          o    Actual melodic material;

19          o    Rhythmic placement of the notes of the guitar part;

20          o    Nearly identical performance, in tempo, style and articulation.

21  This sets *Stairway to Heaven* apart from a song like "Chim Chim Cher-ee", which

22  does feature a chromatically descending bass line, but functions simply to move the

23  harmony beneath an entirely different melody. It is also a medium-fast waltz.

24  *Stairway to Heaven's* similarities to *Taurus* are in the actual guitar part itself, not

25  just a harmonic device. *Stairway to Heaven* also differs from what many mistakenly

26  consider to be the same chromatic descending line. A song such as "*Ice Cream*

27  *Dream*" by The Cartoones does not follow this chromatic bass line. The first

28  interval is a whole step, which by definition is not chromatic. To compare the main

guitar theme of *Stairway to Heaven* to a song like Davey Graham's version of "*Cry Me a River*" is also not a proper comparison. Though the chromatic bass movement is intact for a brief moment, Graham's usage of it is a loose interpretation of the original vocal melody. The brief section in question is also performed in a different time signature, 12/8, which gives it a completely different feel from *Taurus* or *Stairway to Heaven*.

21.    To further illustrate, some common jazz standards, "*My Funny Valentine*" (Rodgers and Hart), "*It Don't Mean a Thing If It Ain't Got That Swing*" (Duke Ellington) and "*In Walked Bud*" (Thelonius Monk) all feature a chromatically descending bass line underneath a minor chord. The aforementioned songs differ greatly from *Taurus* and *Stairway to Heaven* because the melodies of *Taurus* and *Stairway to Heaven* are intimately linked to the composition and performance of the main guitar theme. It is my opinion that *Taurus* was the single greatest influence on the composition of *Stairway to Heaven*.

22.    I have additionally provided video of me playing the acoustic guitar part of Taurus and Stairway to Heaven:

     Video Exhibit 1:    Taurus – Left Hand

     Video Exhibit 2:    Taurus – Right Hand

     Video Exhibit 3:    Stairway to Heaven – Left Hand

     Video Exhibit 4:    Stairway to Heaven – Right Hand

23.    I offer these opinions to a reasonable degree of professional and musical certainty. I am being compensated at $175 per hour for this report and $350 for trial testimony.

Executed this 7th day of March, 2016, at Philadelphia, Pennsylvania.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                              */s/ Kevin Hanson*

5

1    Kevin Hanson

2

3    *** *See attachments including Audio and Visual Files* ***

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
6

Case No. 15-cv-03462 RGK (AGRx)            DECLARATION OF KEVIN HANSON IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**<u>AUDIO EXHIBITS</u>**
**Audio Exhibit 1:**
**Dazed and Confused by Led Zeppelin**

**Audio Exhibit 2:**
**Dazed and Confused by Jack Holmes (1967)**

**Audio Exhibit 3:**
**Whole Lotta Love by Led Zeppelin**

**Audio Exhibit 4:**
**Muddy Waters' You Need Love (1962) (10 seconds – 28 seconds)**

**Audio Exhibit 5:**
**The Small Faces' You Need Loving (1966) (25 seconds – 48 seconds)**

**Audio Exhibit 6:**
**Live performance of Led Zeppelin playing Fresh Garbage 1-10-1969**


**<u>AUDIO EXHIBITS – COMPARISON AUDIO</u>**
**Audio Exhibit 7:**
**Stairway to Heaven (0 seconds – 25 seconds)**

**Audio Exhibit 8:**
**Taurus (45 seconds – 1 minute, 13 seconds)**

**Audio Exhibit 9:**
**8 measures of Stairway from note 1 of the acoustic guitar, repeated multiple times**

**Audio Exhibit 10:**
**Part A:**
**8 Measures of Taurus from note 1 of the acoustic guitar, repeated multiple times**

**Audio Exhibit 11:**
**8 measures of Stairway and Taurus played together from note 1 of the acoustic guitar, repeated multiple times**

**AUDIO EXHIBITS - RE-RECORDING OF STAIRWAY TO HEAVEN**

| | |
|---|---|
| **Audio Exhibit 12:** | **Acoustic Guitar** |
| **Audio Exhibit 13:** | **Bass** |
| **Audio Exhibit 14:** | **Drums** |
| **Audio Exhibit 15:** | **Electric 12 Strings** |
| **Audio Exhibit 16:** | **Electric Piano** |
| **Audio Exhibit 17:** | **End Guitar** |
| **Audio Exhibit 18:** | **Les Pauls** |
| **Audio Exhibit 19:** | **Recorders** |
| **Audio Exhibit 20:** | **Slide** |
| **Audio Exhibit 21:** | **Solo** |

**AUDIO EXHIBITS - RE-RECORDING OF TAURUS**

| | |
|---|---|
| **Audio Exhibit 22:** | **Acoustic Guitar** |
| **Audio Exhibit 23:** | **Cello 1** |
| **Audio Exhibit 24:** | **Cello 2** |
| **Audio Exhibit 25:** | **Cymbal** |
| **Audio Exhibit 26:** | **Flute** |
| **Audio Exhibit 27:** | **Harpsichord** |
| **Audio Exhibit 28:** | **String Bass** |
| **Audio Exhibit 29:** | **Viola** |
| **Audio Exhibit 30:** | **Violins** |

**02545**

**AUDIO EXHIBITS – ALEXANDER STEWART**

| | |
|---|---|
| **Audio Exhibit 31:** | **(Previously: Audio Exhibit A)** |
| **"Stairway to Heaven" (album)** | |
| **Audio Exhibit 32:** | **(Previously: Audio Exhibit B)** |
| **"Taurus" (album)** | |
| **Audio Exhibit 33:** | **(Previously: Audio Exhibit E)** |
| **Taurus Live at Ash Grove (7/10/1967)** | |
| **Audio Exhibit 34:** | **(Previously: Audio Exhibit C)** |
| **Taurus Live at Ash Grove (7/31/1967)** | |
| **Audio Exhibit 35:** | **(Previously: Audio Exhibit D)** |
| **Taurus Live at Ash Grove (8/8/1967)** | |
| **Audio Exhibit 36:** | **(Previously: Audio Exhibit H)** |
| **Taurus Demo Recording (8/1967)** | |
| **Audio Exhibit 37:** | **(Previously: Audio Exhibit F)** |
| **Taurus Live at Kaleidoscope (4/5/1968)** | |
| **Audio Exhibit 38:** | **(Previously: Audio Exhibit G)** |
| **Taurus Live at The Time Coast** | |
| **Audio Exhibit 39:** | **(Previously: Audio Exhibit H)** |
| **Taurus Live at Acoustic (1996)** | |
| **Audio Exhibit 40:** | **(Previously: Audio Exhibit J)** |
| **Combination – Acoustic Taurus Synced to STH SR – Part A, played over Master SR of STH** | |
| **Audio Exhibit 41:** | **(Previously: Audio Exhibit K)** |
| **Acoustic Taurus Synced to Master SR of STH – Part A** | |
| **Audio Exhibit 42:** | **(Previously: Audio Exhibit L)** |
| **Stairway Acoustic – Part A:** | |
| **Audio Exhibit 43:** | **(Previously: Audio Exhibit M)** |
| **Taurus Acoustic – Part A:** | |
| **Audio Exhibit 44:** | **(Previously: Audio Exhibit N)** |
| **Combination – Acoustic Taurus Synced to Master SR of STH (Part A), played over Acoustic Stairway (Part A)** | |

**AUDIO EXHIBITS – REBUTTAL OF MATHES**

| | |
|---|---|
| **Audio Exhibit 45:** | **Mathes Audio Exhibit Tempo Matched - Stairway** |
| **Audio Exhibit 46:** | **Mathes Audio Exhibit Tempo Matched - Taurus** |
| **Audio Exhibit 47:** | **Mathes Audio Exhibit Tempo Matched - STH & Taurus** |

**VIDEO EXHIBITS – DEMONSTRATIVE GUITAR PERFORMANCE**

| | |
|---|---|
| **Video Exhibit 1:** | **Taurus – Left Hand** |
| **Video Exhibit 2:** | **Taurus – Right Hand** |
| **Video Exhibit 3:** | **Stairway to Heaven – Left Hand** |
| **Video Exhibit 4:** | **Stairway to Heaven – Right Hand** |

1    Peter J. Anderson, Esq., Cal. Bar No. 88891
     E-Mail: pja@pjanderson.com
2    LAW OFFICES OF PETER J. ANDERSON
     A Professional Corporation
3    100 Wilshire Boulevard, Suite 2010
     Santa Monica, CA 90401
4    Tel: (310) 260-6030
     Fax: (310) 260-6040
5    Attorneys for Defendants
     JAMES PATRICK PAGE, ROBERT ANTHONY
6    PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
     MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7    ATLANTIC RECORDING CORP., RHINO
     ENTERTAINMENT COMPANY and WARNER
8    MUSIC GROUP CORP.

9    Helene Freeman, Esq., admitted *pro hac vice*
     E-Mail:  hfreeman@phillipsnizer.com
10   PHILIPS NIZER LLP
     666 Fifth Avenue
11   New York, NY 10103-0084
     Tel: (212) 977-9700
12   Fax: (212) 262-5152
     Attorneys for Defendants
13   JAMES PATRICK PAGE, ROBERT ANTHONY
     PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                     **WESTERN DIVISION**

18   MICHAEL SKIDMORE, *etc.*,        )  Case No. 2:15-cv-03462 RGK (AGRx)
                                       )
19          Plaintiff,                 )
                                       )
20       vs.                           )  AMENDED [*PROPOSED*]
                                       )  STATEMENT OF
21   LED ZEPPELIN, *et al.*,           )  UNCONTROVERTED FACTS AND
                                       )  CONCLUSIONS OF LAW
22          Defendants.                )
                                       )  Date:  March 28, 2016
23   _____)  Time: 9:00 a.m.

24                                        Courtroom of the Honorable
                                          R. Gary Klausner
25                                        United States District Judge

26

27

28

                              **02548**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

STATEMENT OF UNCONTROVERTED FACTS ..................................................1

AND CONCLUSIONS OF LAW ........................................................................1

1.     UNCONTROVERTED FACTS. .............................................................1

   (a)     Spirit's August 29, 1967 Recording Contract and Wolfe's
           Employment by Hollenbeck Under the August 29, 1967 Exclusive
           Songwriter Agreement ..........................................................................1

   (b)     Ode Records' January 1968 Release of a First Spirit Album, which
           Included a Short Instrumental – *Taurus* – that Was Not Released as
           a Single ..................................................................................................4

   (c)     Ode Records' December 1968 Release of Spirit's Break-Out Album,
           and Spirit's Touring in Support of its New Albums, Rarely
           Performing *Taurus* ...............................................................................7

   (d)     Spirit and Led Zeppelin Never Performed Together ..............................8

   (e)     The Three Occasions when Spirit and Led Zeppelin Performed on
           the Same Day ........................................................................................10

           (1)     The Arena Auditorium in Denver, Colorado, on December
                   26, 1968 ....................................................................................10

           (2)     The Atlanta Int'l Pop Festival in Atlanta, Georgia, Int'l
                   Raceway, on July 5, 1969 ..........................................................13

           (3)     The Seattle Pop Festival in Woodinville, Washington, on
                   July 25-27, 1968 .......................................................................15

           (4)     At the Texas Int'l Pop Festival on August 30-September 1,
                   1969, Led Zeppelin and Spirit Performed on Different Days .....16

           (5)     Led Zeppelin Did Not Perform at the Northern California
                   Folk-Rock Festival .....................................................................18

i

|    |     |       |                                                                                                                    |    |
|----|-----|-------|--------------------------------------------------------------------------------------------------------------------|----|
| 1  |     | (6)   | Before Coming to the U.S. in 1968, Led Zeppelin Had                                                                |    |
| 2  |     |       | Already Begun Performing a Medley that Included a Bass Riff                                                         |    |
| 3  |     |       | Similar to *Fresh Garbage*, which Appeared in a U.K. Album                                                          |    |
| 4  |     |       | that Did Not Include *Taurus* ..........................................................................19          |    |
| 5  | (f) |       | Plaintiff's Contention that Robert Plant Saw Spirit Perform at a                                                   |    |
| 6  |     |       | Club in Birmingham, England ...............................................................20                      |    |
| 7  | (g) |       | The November 1971 Release of the *Led Zeppelin IV* Album, with                                                     |    |
| 8  |     |       | *Stairway to Heaven* ...............................................................................23             |    |
| 9  | (h) |       | Jimmy Page Purchased a Theremin-Like Devise Before Led                                                             |    |
| 10 |     |       | Zeppelin Was Formed...............................................................................24               |    |
| 11 | (i) |       | Wolfe's 1991 Waiver of any Claim as to *Stairway to Heaven* ..............25                                       |    |
| 12 | (j) |       | The Forty-Three Years of Delay Before this Claim Was Asserted .......26                                            |    |
| 13 | (k) |       | That Jimmy Page Has a Spirit Album Now Does Not Prove He                                                           |    |
| 14 |     |       | Had It Forty-Five Years Ago ..................................................................29                    |    |
| 15 | (l) |       | Plaintiff Never Produced the *Taurus* Deposit Copy that                                                            |    |
| 16 |     |       | Accompanied Hollenbeck's 1967 Registration of Copyright in the                                                     |    |
| 17 |     |       | *Taurus* Musical Composition ................................................................30                    |    |
| 18 | (m) |       | The Absence of Substantial or Striking Similarities between What                                                   |    |
| 19 |     |       | May Be the *Taurus* Transcription and *Stairway* ...................................30                             |    |
| 20 | (n) |       | John Paul Jones, Super Hype Publishing, Inc., and Warner Music                                                     |    |
| 21 |     |       | Group Corp. Have Not Performed or Distributed *Stairway* .................35                                       |    |
| 22 | 2.  |       | CONCLUSIONS OF LAW................................................................36                               |    |
| 23 | (a) |       | The Court's Jurisdiction...........................................................................36              |    |
| 24 | (b) |       | The Summary Judgment Standards .........................................................36                         |    |
| 25 | (c) |       | Summary Judgment on Plaintiff's Copyright Claims Is Appropriate                                                    |    |
| 26 |     |       | Because *Taurus* Is a Work for Hire Owned by Hollenbeck Music .......37                                            |    |
| 27 | (d) |       | Summary Judgment on Plaintiff's Copyright Claims Is Also                                                           |    |
| 28 |     |       | Appropriate Because Wolfe Waived the Claim....................................37                                   |    |

(e)  In Addition, Summary Judgment Is Appropriate Because Wolfe and the Trust Abandoned the Claim .......................................................38

(f)  Laches Also Bars the Claims as Beneficial Owner ...............................38

(g)  Summary Judgment Also Is Appropriate Because Plaintiffs Have Failed to Carry their Burden of Presenting Admissible Evidence Establishing Copying of Protected Expression.....................................40

  (1)  A Copyright Infringement Claim Requires Proof of Copying Original Elements of the Registered Work .................................40

  (2)  Plaintiff Fails to Establish Copying.............................................40

    (i)  *Plaintiff Presents No Direct Evidence of Copying and No Evidence Establishing Striking Similarities* ...............40

    (ii)  *Plaintiff Fails to Prove Access Plus Substantial Similarity* ..........................................................................41

      a.  Plaintiff Relies on Conjecture and Speculation that Led Zeppelin's Members Might Have Heard *Taurus* Before Recording *Stairway* in 1971 .............................41

      b.  Plaintiff Also Fails to Establish Substantial Similarity Between Protectable Portions of the Copyrighted *Taurus* Transcription and *Stairway*.............................42

(h)  Summary Judgment Is Also Appropriate as to John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp. .............44

(i)  Summary Judgment Is Also Proper on Plaintiff's Remaining Claim for "Right of Attribution" ....................................................................45

3.  CONCLUSION ..........................................................................................45

**STATEMENT OF UNCONTROVERTED FACTS**

**AND CONCLUSIONS OF LAW**

The Court having considered the Motion of defendants James Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc., Super Hype Publishing, Inc., Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Inc. for Summary Judgment or, in the alternative, Partial Summary Judgment, plaintiff Michael Skidmore's opposition, the reply papers and the oral argument at the hearing on the Motion,

**1.     UNCONTROVERTED FACTS.**

The Court determines that the following facts have been established as uncontroverted:

| Undisputed Fact | Evidence in Support |
|---|---|
| **(a)     Spirit's August 29, 1967 Recording Contract and Wolfe's Employment by Hollenbeck Under the August 29, 1967 Exclusive Songwriter Agreement** | |
| 1.     On August 29, 1967, Randy Wolfe ("Wolfe"), professionally known as Randy California, and the other members of the band Spirit entered into a recording contract with Ode Records, Inc., and Wolfe entered into an Exclusive Songwriter Agreement with Hollenbeck Music | First Am. Complaint ("FAC"; Doc. 31) at 6, ¶¶ 22, 24; Anderson Decl. at 1, ¶¶ 3-6; Ferguson Depo. (Anderson Decl. Exh. 8) at 22:22-23, 28:5-10, 28:15-25, 45:24 to 46:4, 238:1-11, 243:17-20, & Anderson Decl. Exh. 10 (deposition exhibit 347)[1] & Exh. 11; Andes Depo. (Anderson Decl. Exh. 9) at 16:22-24, 45:10-11; 46:8-12, 47:2-6, 48:14 to |

---

[1]     Unless otherwise specified, all references to "Exh." are to Exhibits to the Declaration of Peter J. Anderson.

1

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| ("Hollenbeck"). | 49:5. |
| 2.     Under the August 29, 1967 Exclusive Songwriter Agreement, Hollenbeck "employ[ed Wolfe] to render his services as a songwriter and composer . . . ." | Exh. 11 at 1, ¶ 1. |
| 3.     Wolfe agreed in the August 29, 1967 Exclusive Songwriter Agreement that he "is deemed to be a 'writer for hire' hereunder with full rights of copyright renewal vested in [Hollenbeck]." | Exh. 11 at 10, ¶ 11. |
| 4.     California law applies to the August 29, 1967 Exclusive Songwriter Agreement. | Exh. 11 at 15, ¶ 16. |
| 5.     Plaintiff has produced no evidence that Wolfe disaffirmed the August 29, 1967 Exclusive Songwriter Agreement when he attained majority or at any time thereafter. | Anderson Decl. at 1-2, ¶ 7. |

2

| | **Undisputed Fact** | **Evidence in Support** |
|---|---|---|
| | 6.    On November 30, 1967, the Superior Court of the State of California entered its Order approving Hollenbeck's contract with Wolfe for his services as a songwriter. | Anderson Decl. at 1, ¶ 8, & Exh. 12. |
| | 7.    After being twice warned that his prior discovery responses were late, plaintiff failed to respond to defendants' December 4, 2015 Request for Admissions, and he has not sought relief from his deemed admissions | Anderson Decl. at 2-3, ¶¶ 9-14, Exh. 13-15. |
| | 8.    Defendants' December 4, 2015 Request for Admissions included the requests that plaintiff admit that "The *Taurus* Composition is a work for hire," "The *Taurus* Composition is a work for hire in which you contend that Randy Craig Wolfe was a beneficial owner" and "The *Taurus* Composition is a work for hire in which you claim beneficial ownership of the copyright as the | Exh. 15 at 2:4-15. |

3

| | **Undisputed Fact** | **Evidence in Support** |
|---|---|---|
| | successor to Randy Craig Wolfe." | |
| | **(b)   Ode Records' January 1968 Release of a First Spirit Album, which Included a Short Instrumental – _Taurus_ – that Was Not Released as a Single** | |
| | 9.     After the August 29, 1967 recording contract and Exclusive Songwriter Agreement, the members of Spirit recorded in a recording studio their performances of various songs and a short instrumental called _Taurus_. | Ferguson Depo. (Anderson Exh. 8) at 197:15 to 198:1; Andes Depo. (Anderson Decl. 9) at 150:18 to 151:3, 156:7-16. |
| | 10.    Ode Records' recording of _Taurus_ was produced by Lou Adler and was the completed _Taurus_, with instruments and music that Spirit never performed live. | Ferguson Depo. (Anderson Decl. Exh. 8) at 198:12 to 199:2, 199:3-18; Andes Depo. (Anderson Decl. 9) at 158:2 to 160:14; Freeman Decl. at 1-2, ¶¶ 3-6, & Exh. 6 at 1-4. |
| | 11.    On or about December 22, 1967, Hollenbeck, as owner, registered a copyright in the _Taurus_ musical composition. | Anderson Decl. at 3, ¶ 15, & Exh. 16. |

4

| | **Undisputed Fact** | **Evidence in Support** |
|---|---|---|
| | 12.   Plaintiff has not produced in this action the deposit copy that accompanied Hollenbeck's 1967 registration of a copyright in the *Taurus* musical composition. | Anderson Decl. at 3, ¶ 16. |
| | 13.   While defendants obtained a copy of a *Taurus* transcription from the Library of Congress, it does not bear the Library of Congress' stamp, as does the *Stairway* deposit copy. | Anderson Decl. at 3, ¶ 17, & Exh. 16-17. |
| | 14.   Ode Records, Inc., released its first Spirit album, titled *Spirit*, in 1967. | Ferguson Depo. (Anderson Decl. Exh. 8) at 46:10-19; Andes Depo. (Anderson Decl. Exh. 9) at 57:16-25. |
| | 15.   Ode Records' first Spirit album had eleven different recordings, including the recording of an instrumental composition titled *Taurus*. | Anderson Decl. at 3, ¶ 18, & Exh. 18; Ferrara Audio Exhibit 1 at Track 1. |
| | 16.   Ode Records' recording of *Taurus* includes a descending chromatic line and arpeggios, which | Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7, Exh. 2 (Stewart Report) at 4, ¶ 8. |

5

| Undisputed Fact | Evidence in Support |
|---|---|
| are commonplace. | |
| 17.    A "single" is a song chosen from an album, to be played on the radio for promotion. | Ferguson Depo. (Anderson Decl. Exh. 8) at 46:20 to 47:4, 47:10-14; Andes Depo. (Anderson Decl. Exh. 9) at 58:9 to 59:10. |
| 18.    A recording of *Taurus* was not released as a "single." | Ferguson Depo. (Anderson Decl. Exh. 8) at 48:2-8; Andes Depo. (Anderson Decl. Exh. 9) at 59:11-15, 60:3-4. |
| 19.    There is no evidence that *Taurus* was played on the radio prior to the 1971 release of the album *Led Zeppelin IV*, with *Stairway to Heaven* ("*Stairway*"). | Anderson Decl. at 4, ¶ 19. |
| 20.    There is no evidence as to the extent of sales or other distribution of the first Spirit album prior to the 1971 release of the album *Led Zeppelin IV*, with *Stairway*. | Anderson Decl. at 4, ¶ 20. |

6

| Undisputed Fact | Evidence in Support |
|---|---|
| **(c)  Ode Records' December 1968 Release of Spirit's Break-Out Album, and Spirit's Touring in Support of its New Albums, Rarely Performing _Taurus_** | |
| 21.   Ode Records, Inc., released its second Spirit album, titled _The Family that Plays Together_, in 1968. | Ferguson Depo. (Anderson Decl. Exh. 8) at 49:18-21; Andes Depo. (Anderson Exh. 9) at 60:23 to 61:4. |
| 22.   _The Family that Plays Together_ was Spirit's first break out album, with Spirit's hit single, _I Got a Line on You_. | Ferguson Depo. (Anderson Decl. Exh. 8) at 51:10-16; Andes Depo. (Anderson Decl. Exh. 9) at 61:18-22, 62:5-23. |
| 23.   When Spirit performed live, it supported its new or upcoming albums by performing songs from those albums, together with Spirit tent pole songs that did not include _Taurus_. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7, 53:22 to 54:21; Andes Depo. (Anderson Decl. Exh. 9) at 67:10-22, 68:7 to 69:9, 69:21 to 70:6, 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). |
| 24.   Of the 175 live Spirit performances from December 1968 to December 1971 that plaintiff claims occurred, _Taurus_ was reportedly performed only at the | Anderson Decl. at 4, ¶ 22; Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:20, 71:19-22, 94:4-16, 95:12-14, 96:5-6, 96:22 to 97:2, 97:5 to 98:1, 98:9-13, 98:20 to 99:7, 100:11-22, |

7

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| Santa Monica, California, Civic Auditorium on May 29, 1970, and the Anaheim Convention Center in Anaheim, California at an unknown date. | 100:25 to 101:9, 177:19 to 178:17, & Anderson Decl. Exh. 21 (deposition exhibits, without audio CDs, 306 to 312); Andes Depo. (Anderson Decl. Exh. 9) at 78:8-21, 80:19-23, 82:24 to 83:2, 84:21-25, 85:1-14, 101:14, 101:25 to 102:4, 102:5-10, 102:19 to 103:4, & Anderson Decl. Exh. 20 (deposition exhibit 352). |
| 25.    There is no evidence that Led Zeppelin's members were present at the Santa Monica Civic Auditorium or the Anaheim Convention Center when Spirit performed. | Anderson Decl. at 4, ¶ 24. |
| **(d)    Spirit and Led Zeppelin Never Performed Together** | |
| 26.    Spirit and Led Zeppelin never toured together. | Ferguson Depo. (Anderson Decl. Exh. 8) at 77:9-17. |
| 27.    Spirit and Led Zeppelin never performed together and were never on the same stage at the same time. | Page Decl. at 2, ¶ 10; Plant Decl. at 1, ¶ 7; Jones Decl. at 1, ¶ 10; Ferguson Depo. (Anderson Decl. Exh. 8) at 330:8-12. |

8

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| 28.   The surviving members of Spirit have no recollection of ever speaking with, or seeing any other member of Spirit speak with, Jimmy Page, John Paul Jones or John Bonham. | Ferguson Depo. (Anderson Decl. Exh. 8) at 87:2-18, 89:2-4, 89:8-9; Andes Depo. (Anderson Decl. Exh. 9) at 104:2-3, 104:13 to 105:2. |
| 29.   At concerts, each band on the bill used its own guitars, amplifiers, keyboards, drums and other equipment, which took at least 15-20 minutes for road crews to set up or dismantle and remove between performances. | Page Decl. at 3, ¶ 14; Ferguson Depo. (Anderson Decl. Exh. 8) at 344:10 to 11; Andes Depo. (Anderson Decl. Exh. 9) at 89:4-12, 89:21-25. |
| 30.   During equipment changes between bands, band members were not on stage. | Ferguson Depo. (Anderson Decl. Exh. 8) at 329:22 to 330:12, 346:13 to 347:6; Page Decl. at 3, ¶ 15. |

9

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| **(e)** **The Three Occasions when Spirit and Led Zeppelin Performed on the Same Day** | |
| **(1)** **The Arena Auditorium in Denver, Colorado, on December 26, 1968** | |
| 31.    On December 26, 1968, Led Zeppelin (in its first U.S. performance), Spirit and Vanilla Fudge – Vanilla Fudge being the headlining act that night – each played, separately, at the Arena Auditorium in Denver, Colorado. | Page Decl. at 2:22-25; Plant Decl. at 1:24-27; Jones Decl. at 1, ¶ 8; Andes Depo. (Anderson Decl. Exh. 9) at 85:15-18. |
| 32.    There is no evidence that prior to December 26, 1968, Led Zeppelin and Spirit ever performed at the same venue on the same day. | Anderson Decl. at 4, ¶ 25. |
| 33.    When Spirit performed at the Arena Auditorium in Denver, Colorado on December 26, 1968, it was touring in support of its new album, *The Family that Plays Together*, playing songs from that new record and tent pole songs that | Ferguson Depo. (Anderson Decl. Exh. 8) at 53:22 to 44:21; 49:18-21, Andes Depo. (Anderson Decl. Exh. 9) at 60:23 to 61:4. |

10

| Undisputed Fact | Evidence in Support |
|---|---|
| did not include *Taurus*. | |
| 34.    The    handbill    for    Spirit's performance on December 26, 1968, is captioned with the title of Ode Records' second Spirit album, "The Family that Plays Together," and does not mention *Taurus*. | Andes Depo. (Anderson Decl. Exh. 9) at 92:14-17, 93:19 to 94:8, & Anderson Decl. Exh. 22 (deposition exhibit 320). |
| 35.    When   Spirit   was   not   the headling act – as was the case in Denver on December 26, 1968 – Spirit would play for as little as half an hour. | Ferguson Depo. (Anderson Decl. Exh. 8) at 43:21 to 44:9. |
| 36.    The   only   known   published review of the December 26, 1967 concert, identifies songs performed by Spirit and does not include *Taurus*. | Ferguson Depo. (Anderson Decl. Exh. 8) at 101:12 to 102:7, & Anderson Decl. Exh. 23 (deposition exhibit 313) |
| 37.    Other than – at his counsel's suggestion – Andes' testimony to a "faint   recollection"   that   Spirit performed *Taurus* at the Denver Arena Auditorium, the evidence is | Andes Depo. (Anderson Decl. Exh. 9) at 10:7-11, 94:11 to 95:5, 95:25 to 95:36, 97:9 to 99:9, 99:12 to 100:3; Ferguson Depo. (Anderson Decl. Exh. |

11

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| that Spirit did not perform *Taurus* there. | 38:24 to 39:1, 81:23 to 83:6. |
| 38. Andes testified that his testimony to a "faint recollection" that Spirit performed *Taurus* at the Denver Arena Auditorium, was based on the assumption it would have been typical to play it. | Andes Depo. (Anderson Decl. Exh. 9) at 99:12 to 100:3. |
| 39. Andes admitted, however, that a list of songs *Taurus* performed at a concert slightly more than a month later, was the songs they typically performed, and the list does not include *Taurus*. | Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10 to 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). |
| 40. Andes testified that Toby Roberts, who had helped the members of Led Zeppelin lease their first airplane, introduced him to the members at the Denver Arena Auditorium in December 1968. | Andes Depo. (Anderson Decl. Exh. 9) at 105:11 to 106:16. |
| 41. The members of Led Zeppelin did not know Toby Roberts in | Page Decl. at 3, ¶ 16. |

12

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| December 1968, Roberts was not involved in Led Zeppelin's first U.S. performances and the members of Led Zeppelin did not lease their first airplane until 1973. | |
| 42.    Andes does not recall anything that was said when Toby Roberts supposedly introduced him. | Andes Depo. (Anderson Decl. Exh. 9) at 107:13-17. |
| 43.    In any event, Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Arena Auditorium. | Ferguson Depo. (Anderson Decl. Exh. 8) at 103:1-4; Andes Depo. (Anderson Decl. Exh. 9) at 108:8-16. |
| 44.    The members of Led Zeppelin did not hear Spirit perform at the Arena Auditorium. | Page Decl. at 2, ¶ 8, & at 3, ¶ 12; Plant Decl. at 1, ¶ 6, & at 2, ¶ 9; Jones Decl. at 1, ¶¶ 5-6, 8. |
| **(2)    The Atlanta Int'l Pop Festival in Atlanta, Georgia, Int'l Raceway, on July 5, 1969** | |
| 45.    On July 5, 1969, Led Zeppelin and Spirit were among at least ten or | Page Decl. at 2:25-26, 2:27 to 3:2; Plant Decl. at 1:27-28, 2:1-3; Jones |

13

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| more bands and performers that performed on the second day of the Atlanta Int'l Pop Festival held on July 4 and 5, 1969. | Decl. at 1-2, ¶ 9. |
| 46.   Led Zeppelin and Spirit performed separately at the Atlanta Int'l Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 329:8 to 330:12; Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. |
| 47.   Spirit's surviving members do not recall performing *Taurus* at the Atlanta Int'l Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 37:20 to 37:1, Andes Depo. (Anderson Decl. Exh. 9) at 129:3-5. |
| 48.   Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Atlanta Int'l Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 106:10-13, 108:6-10; Andes Depo. (Anderson Decl. Exh. 9) at 126:23 to 127:1, 127:10-25, 128:20-23. |
| 49.   The members of Led Zeppelin did not hear Spirit perform at the Atlanta Int'l Pop Festival. | Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. |

14

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| **(3)    The Seattle Pop Festival in Woodinville, Washington, on July 25-27, 1968** | |
| 50.    On July 27, 1969, Led Zeppelin and Spirit were among at least ten or more bands and performers that performed on the third day of the Seattle Pop Festival held on July 25, 26 and 27, 1969. | Page Decl. at 2:26 to 3:2; Plant Decl. at 1:28 to 2:3; Jones Decl. at 1-2, ¶ 9. |
| 51.    Led Zeppelin and Spirit performed separately at the Seattle Pop Festival. | Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. |
| 52.    Spirit's surviving members do not recall performing *Taurus* at the Seattle Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 108:11-25; Andes Depo. (Anderson Decl. Exh. 9) at 130:20-22. |
| 53.    Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). |

15

| Undisputed Fact | Evidence in Support |
|---|---|
| 54.    A published review of the Seattle Pop Festival does not mention *Taurus*. | Anderson Decl. at 5, ¶ 28, & Exh. 24 (deposition exhibit 317). |
| 55.    Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Seattle Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 35:16-36:4, 37:10-18, 85:22 to 86:1, 108:11-25; Andes Depo. (Anderson Decl. Exh. 9) at 129:21-24, 130:6-17, 132:1-13, 136:1-10, 137:1 to 138:3. |
| 56.    The members of Led Zeppelin did not hear Spirit perform at the Seattle Pop Festival. | Page Decl. at 3, ¶ 13; Plant Decl. at 2, ¶ 10; Jones Decl. at 2, ¶ 10. |
| **(4)    At the Texas Int'l Pop Festival on August 30-September 1, 1969, Led Zeppelin and Spirit Performed on Different Days** | |
| 57.    The Texas Int'l Pop Festival took place over three days, and Spirit performed on the last day, September 1, 1969. | Ferguson Depo. (Anderson Decl. Exh. 8) at 115:4-8, 115:22-25. |
| 58.    There is no evidence that Led Zeppelin performed on the same day | Ferguson Depo. (Anderson Decl. Exh. |

16

| Undisputed Fact | Evidence in Support |
|---|---|
| as Spirit at the Texas Int'l Pop Festival. | 8) at 116:4 to 116:17. |
| 59.   Led Zeppelin was not present at the Texas Int'l Pop Festival on the day that Spirit performed. | Andes Depo. (Anderson Decl. Exh. 9) at 140:21-25. |
| 60.   Spirit's surviving members do not recall performing *Taurus* at the Texas Int'l Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:3; Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14, 138:9-17. |
| 61.   Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). |
| 62.   Spirit's surviving members have no recollection of Led Zeppelin's members being present when Spirit performed at the Texas Pop Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 114:4-9; Andes Depo. (Anderson Decl. Exh. 9) at 140:21-25. |

17

| Undisputed Fact | Evidence in Support |
|---|---|
| 63.    The members of Led Zeppelin were not present when Spirit performed at the Texas Pop Festival. | Page Decl. at 2-3, ¶¶ 9, 11; Plant Decl. at 1-2, ¶¶ 6, 8; Jones Decl. at 1, ¶ 5. |
| **(5)    Led Zeppelin Did Not Perform at the Northern California Folk-Rock Festival** | |
| 64.    Although a poster for the Northern California Folk-Rock Festival in San Jose, California, on May 23-25, 1969, lists Led Zeppelin among 28 bands, there is no evidence that Led Zeppelin performed at that festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 89:18-25, 90:4-6; Andes Depo. (Anderson Decl. Exh. 9) at 122:3-8. |
| 65.    Spirit's surviving members do not recall performing *Taurus* at the Northern California Folk-Rock Festival. | Ferguson Depo. (Anderson Decl. Exh. 8) at 89:18 to 25, 90:4-6; Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14. |
| 66.    Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition |

18

| Undisputed Fact | Evidence in Support |
|---|---|
| exhibit 352). | |
| **(6)** **Before Coming to the U.S. in 1968, Led Zeppelin Had Already Begun Performing a Medley that Included a Bass Riff Similar to *Fresh Garbage*, which Appeared in a U.K. Album that Did Not Include *Taurus*** | |
| 67.    Before coming to the U.S. in 1968, the members of Led Zeppelin had included in their live performances a medley that included a "bass riff" similar to the bass riff in a Spirit recording titled *Fresh Garbage*. | Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. |
| 68.    *Fresh Garbage* was played on radio and included in a popular U.K. album titled *The Rock Machine Turns You On*, that combined recordings of many different groups, and that U.K. album did not include *Taurus*. | Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. |
| 69.    Before going to the U.S. in December 1968, members of Led Zeppelin were already familiar with *Fresh Garbage* from the radio and | Page Decl. at 3, ¶ 17; Plant Decl. at 2-3, ¶ 13; Jones Decl. at 2, ¶ 12. |

19

| | Undisputed Fact | Evidence in Support |
|---|---|---|
| | from the album, *The Rock Machine Turns You On*. | |
| | **(f)    Plaintiff's Contention that Robert Plant Saw Spirit Perform at a Club in Birmingham, England** | |
| | 70.    On or about January 31, 1970, Robert Plant and his wife were present with friends at a local club, called Mothers, near his home in Birmingham, England, after which he and his wife were in an automobile accident while on the way home. | Plant Decl. at 2, ¶¶ 11-12. |
| | 71.    No other member of Led Zeppelin was present at Mothers Club in January 1970. | Andes Depo. (Anderson Decl. Exh. 9) at 124:4-10. |
| | 72.    Spirit's surviving members testified that they saw Mr. Plant and, in a "meet-and-greet" that lasted 15 to 30 seconds, introduced themselves to him before Spirit performed at the other end of the club. | Ferguson Depo. (Anderson Decl. Exh. 8) at 16:12-22, 17:14 to 18:1, 55:6 to 59:7, Andes Depo. (Anderson Decl. Exh. 9) at 111:17 to 112:3. |

20

| | Undisputed Fact | Evidence in Support |
|---|---|---|
| 73. | Ode Records, Inc., released its third Spirit album, titled *Clear Spirit*, in October 1969. | Ferguson Depo. (Anderson Decl. Exh. 8) at 52:9-16, 53:2-9; Andes Depo. (Anderson Decl. Exh. 9) at 62:24 to 63:1, 63:20-23. |
| 74. | Ode Records, Inc., released its fourth Spirit album, titled *Twelve Dreams of Dr. Sardonicus*, in 1970. | Ferguson Depo. (Anderson Decl. Exh. 8) at 53:10-21; Andes Depo. (Anderson Decl. Exh. 9) at 63:24 to 64:1. |
| 75. | Spirit's surviving members do not recall performing *Taurus* at Mothers Club in January 1970. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:4-9, 40:22 to 41:3; Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14. |
| 76. | Spirit's tent pole songs – the earlier ones and new ones that they would perform live – did not include *Taurus*. | Ferguson Depo. (Anderson Decl. Exh. 8) at 21:13-20, 51:19-25, 52:1-7; Andes Depo. (Anderson Decl. Exh. 9) at 102:5-10. 102:19 to 103:4, 103:18-24, & Anderson Decl. Exh. 20 (deposition exhibit 352). |
| 77. | One of Spirit's surviving members contends that after Spirit's performance, he and other Spirit members went to a pub with Robert Plant, where they drank and played | Andes Depo. (Anderson Decl. Exh. 9) at 110:18 to 111: 1, 112:4 to 113:5. |

21

| | **Undisputed Fact** | | **Evidence in Support** |
|---|---|---|---|
| | snooker. | | |
| | 78.   Spirit's   other   surviving member does not recall anything but briefly   meeting   Robert   Plant   at Mothers Club before Spirit began playing. | | Ferguson Depo. (Anderson Decl. Exh. 8) at 59:1-7. |
| | 79.    Further, at the time pubs, by law, closed at 10 p.m. and well before Spirit would have finished performing at Mothers Club. | | Plant Decl. at 2, ¶ 12. |
| | 80.    In any event, Spirit's surviving members do not recall *Taurus* being played or discussed with Robert Plant in Birmingham, England. | | Ferguson Depo. (Anderson Decl. Exh. 8) at 40:22 to 41:3, Andes Depo. (Anderson Decl. Exh. 9) at 101:7-14, 112:25 to 113:1-5, 118:7-19. |
| | 81.    Andes also recalls speaking with Robert Plant, maybe in Atlanta, but they only exchanged pleasantries. | | Andes Depo. (Anderson Decl. Exh. 9) at 108:23 to 110:14. |

22

| Undisputed Fact | Evidence in Support |
|---|---|
| **(g)   The November 1971 Release of the *Led Zeppelin IV* Album, with *Stairway to Heaven*** | |
| 82.   The musical composition *Stairway* was created by Jimmy Page and Robert Plant in 1970, independently and without knowledge of *Taurus*. | Page Decl. at 1, ¶¶ 3-4; Plant Decl. at 1, ¶¶ 3-4. |
| 83.   *Stairway* was recorded in England in December 1970 to January 1971. | Page Decl. at 1:15-16; Plant Decl. at 1:15-12-13; Jones Decl. at 1:10-11. |
| 84.   Led Zeppelin first publicly performed *Stairway* in March 1971 at Ulster Hall in Belfast, Northern Ireland. | Page Decl. at 1:16-17; Plant Decl. at 1:13-15; Jones Decl. at 1:11-13. |
| 85.   The untitled album commonly referred to as *Led Zeppelin IV*, which includes *Stairway*, was released to the public on November 8, 1971. | Page Decl. at 1:17-19; Plant Decl. at 1:15-17; Jones Decl. at 1:13-14. |
| 86.   *Stairway* begins with a minor line cliché and arpeggios, over which | Page Decl. at 1:20-21; Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 3-4, |

23

| | Undisputed Fact | Evidence in Support |
|---|---|---|
| | an ascending line is played. | ¶¶ 9-13, & Exh. 1 at 4-5, ¶ 7, at 5-6, ¶¶ 10-12, at 7-8, ¶¶ 14-17. |
| | 87.    Long before 1968, Jimmy Page was aware of minor line clichés and arpeggios and had included similar music when he performed as a session guitarist. | Page Decl. at 1-2, ¶¶ 5-7; Ferrara Audio Exh. 1 at Track 15. |
| | **(h)    Jimmy Page Purchased a Theremin-Like Devise Before Led Zeppelin Was Formed** | |
| | 88.    While he was with the Yardbirds and before Led Zeppelin was formed, Jimmy Page purchased a Sonic Wave, a Theremin-type devise, in Los Angeles, California. | Page Decl. at 4:1-2. |
| | 89.    Jimmy Page purchased the Sonic Wave after Jeff Beck told him that Brian Wilson of the Beach Boys used a Theremin in the 1966 song *Good Vibrations* and on tour. | Page Decl. at 4:2-4. |

24

| Undisputed Fact | Evidence in Support |
|---|---|
| **(i)    Wolfe's 1991 Waiver of any Claim as to _Stairway to Heaven_** | |
| 90.    In    1991,    Wolfe    was interviewed in connection with the preparation of text – referred to as liner notes – to accompany the upcoming release of a two-CD album, titled _Time Circle_, combining a number of Spirit recordings. | Freeman Decl. at 3, ¶ 1, & Ruhlmann Depo. (Freeman Exh. 3) at 9:2-16, 10:11-17, 14:1-19, 15:7-16, 38:1-6; Ferguson Depo. (Anderson Decl. Exh. 8) at 183:13-17 |
| 91.    In that interview, which was recorded, Wolfe stated that he was not    bothered    by    the    similarity between _Taurus_ and _Stairway_, that he considered    the    band    members friends, that "if they wanted to use" _Taurus_ "that's fine," and "I'll let them have the beginning of Taurus for their song without a lawsuit" and he was "letting them off the hook." | Ruhlmann Depo. (Freeman Exh. 3) at 8:4-6, 8:18-25, 7:16 to 8:10; Freeman Decl. at 1-2, ¶¶ 4-6, & Exh. 4, Exh. 5, Exh. 6 at 5:1 to 8:4; Freeman Audio Exhibit 3 at 22 minutes 49 seconds to 27 minutes 25 seconds. |
| 92.    In the text accompanying the album _Time Circle_ released to the public in 1991, Wolfe is quoted as stating with respect to _Stairway_, that if Led Zeppelin wants to use it that is | Freeman Decl. at 2, ¶ 7, & Exh. 7 (deposition exhibit 339) at 37. |

25

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| fine and "I'll let them have the beginning of 'Taurus' for their song." | |
| 93.    The    quotation    of    Wolfe appearing in the text accompanying *Time Circle* is an accurate quotation of what Wolfe told the interviewer. | Ruhlman Depo. (Freeman Exh. 3) at 9:9-16, 11: 15-25, 12:16 to 24:9. |
| **(j)    The Forty-Three Years of Delay Before this Claim Was Asserted** | |
| 94.    The untitled album commonly referred to as *Led Zeppelin IV* and which    includes    *Stairway*,    was released to the public on November 8, 1971. | Page Decl. at 1:17-19. |
| 95.    When    Wolfe's    bandmate, Andes, first heard *Stairway* when it was released in the early 1970s, he believed there were similarities to *Taurus*. | Andes Depo. (Anderson Decl. Exh. 9) at 172:11 to 173:1, 173:17-20. |
| 96.    Although aware of *Stairway* and   believing   its   introduction   is | Anderson Decl. at 5, ¶ 30. |

26

| Undisputed Fact | Evidence in Support |
|---|---|
| similar to *Taurus*, Wolfe did not sue. | |
| 97.   Wolfe died in 1997 and from 2002 until her death, his mother, Bernice Pearl, was the trustee or co-trustee of the Randy Craig Wolfe Trust (the "Trust") that claims rights in *Taurus*. | FAC at 12, ¶ 62. |
| 98.   There is no evidence that Pearl sued or otherwise asserted a claim, individually or on behalf of the Trust, as to *Stairway*. | Anderson Decl. at 5, ¶ 6. |
| 99.   Plaintiff became a co-trustee of the Trust prior to Pearl's death, and did not file this action until May 31, 2014, over forty-three years after the 1971 release of *Led Zeppelin IV* and *Stairway*. | Complaint (Doc. 1) ; FAC at 12, ¶ 62. |
| 100. In the over four decades between the 1971 release of Led Zeppelin IV and *Stairway* and plaintiff's filing of this action in 2014, multiple witnesses have died, | Page Decl. at 4, ¶ 22; Ferguson Depo. (Anderson Decl. Exh. 8) at 73:22 to 74:4, 77:18-19, 88:20-24; 89: 3-4. |

27

Case 2:15-cv-03462-RGK-AGR   Document 105   Filed 02/25/16   Page 32 of 50   Page ID
#:2113

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| including John Bonham (the fourth member of Led Zeppelin) in 1980; Peter Grant (Led Zeppelin's personal manager and who attended many of their concerts) in 1995; Wolfe in 1997; John Locke (another member of Spirit) in 2006; Bernice Pearl (Wolfe's mother and trustee of the Trust) in 2009; Ed Cassidy (another member of Spirit) in 2012; Andy Johns (the engineer for the recording of recorded *Stairway*) in 2013; and Danny Tucker (Spirit's road manager in 1968-79). | |
| 101. In the over four decades between the 1971 release of Led Zeppelin IV and *Stairway* and plaintiff's filing of this action in 2014, documents have been lost or stolen, including recordings reflecting the creation of *Stairway*, and set lists identifying the songs performed by Spirit at concerts. | Page Decl. at 4, ¶ 21; Andes Depo. (Anderson Decl. Exh. 9) at 38:12-18, 39:13-17, 39:21-25, 64:3-17. |

28

**02579**

| | **Undisputed Fact** | **Evidence in Support** |
|---|---|---|
| | 102.  In 2012-14 and at substantial cost, Rhino Entertainment Co. arranged for the remastering and re-release of Led Zeppelin recordings, including the *Led Zeppelin IV* album and *Stairway*. | Anderson Decl. at 6, ¶ 36. |

**(k)      That Jimmy Page Has a Spirit Album Now Does Not Prove He Had It Forty-Five Years Ago**

| | | |
|---|---|---|
| | 103.  Jimmy Page has a collection of several thousands of different albums of many kinds, including albums he purchased, albums people gave him and albums that were simply left at his home, and he has never listened to many of them, | Page Decl. at 4, ¶ 19. |
| | 104.  In connection with this litigation, he found a copy of Spirit's first album in his collection of several thousand records. | Page Decl. at 4:9-10. |
| | 105.  He had not previously seen the album in his collection, he does not know how or when it got there and it | Page Decl. at 4:10:13. |

29

**02580**

| Undisputed Fact | Evidence in Support |
|---|---|
| may have been left by a guest, it is unlikely it was there for long since he never noticed it before. | |
| **(l)** **Plaintiff Never Produced the _Taurus_ Deposit Copy that Accompanied Hollenbeck's 1967 Registration of Copyright in the _Taurus_ Musical Composition** | |
| 106.  Plaintiff did not produce with his initial disclosures or in discovery the deposit copy of the _Taurus_ musical composition that accompanied Hollenbeck's 1967 registration of copyright in that musical composition. | Anderson Decl. at 3, ¶ 16. |
| **(m)** **The Absence of Substantial or Striking Similarities between What May Be the _Taurus_ Transcription and _Stairway_** | |
| 107.  On February 10, 2014, plaintiff provided his initial expert disclosures, including the report of his musicologist, Alexander Stewart. | Anderson Decl. at 5, ¶ 32, & Ferrara Exh. 2 (Stewart Report). |

30

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| 108. Neither Stewart's nor any other report submitted by plaintiff, mentions the musical transcription of *Taurus* that would have accompanied Hollenbeck's 1967 registration of copyright in the *Taurus* musical composition. | Anderson Decl. at 5, ¶ 33, & Ferrara Exh. 2. |
| 109. Stewart's report purports to analyze and compare Ode Records, Inc.'s and other recordings of *Taurus*, on the one hand, and *Stairway*, on the other hand. | Ferrara Exh. 2. |
| 110. Stewart's report purports to conclude there are substantial similarities, and does not claim there are striking similarities. | Ferrara Exh. 2. |
| 111. Stewart's report relies on claimed similarities in how *Taurus* and *Stairway* were performed in their respective recordings, including purported similarities with Spirit's recorded "fingerpicking style," "acoustic guitar," tempo, "classical | Ferrara Exh. 2; Ferrara Decl. at 2, ¶ 6. |

31

| | **Undisputed Fact** | **Evidence in Support** |
|---|---|---|
| instruments such as flute . . . strings and harpsichord," "atmospheric sustained pads" and "fretboard positioning and fingering" on the guitar. | | |
| 112.  The *Taurus* transcription that defendants believe may have been deposited with the Copyright Office and a phrase in *Stairway* both have a commonplace descending scale of pitches. | Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7. | |
| 113.  The descending scale in both the *Taurus* transcription and *Stairway* is a fundamental musical building block widely used in chord progressions in popular music prior to "Taurus", used in classical music as early as the 17[th] century, and so common that they are sometimes referred to as a "minor line cliché". | Ferrara Audio Exh. 2 at Track 2; Ferrara Decl. at 1, ¶¶ 3-4, & Exh. 1 (Ferrara Report) at 4-5, ¶ 7, Exh. 2(Stewart Report) at 4, ¶ 8. | |
| 114.  Similar chord progressions with such descending pitches appear in prior compositions such as, for | Ferrara Audio Exh. 2 at Track 2; Ferrara Exh. 1 (Ferrara Report) at 4-5, ¶ | |

32

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| example, "Dido's Lament" by Henry Purcell (1689), "My Funny Valentine", "A Taste of Honey", "Cry Me a River", "Michelle", "The Meaning of the Blues", "How Insensitive", "Walkin' My Baby Back Home", "More", and "Chim Chim Cher-ee" (from *Mary Poppins*), as well as The Beatles' *Michelle*. | 7, & at Attachment B at 5-22. |
| 115.  Randy Wolfe, as well as the other members of Spirit, were fans of The Beatles and performed songs by The Beatles. | Ferguson Depo. (Anderson Decl. Exh. 8) at 65:7-16, 66:22-23; Freeman Exh. 6 at 3:21 to 4:1. |
| 116.  Before 1968, Jimmy Page was aware of this musical device, having heard it as early as 1960 in a Chris Farlowe recording he arranged and, in 1964, in *Chim Chim Cher-ee* from the movie *Mary Poppins*. | Page Decl. at 1-2, ¶¶ 5-6; Ferrara Audio Exh. 1 at Track 4 (*Chim Chim Cher-ee*) & Track 8 (*Spring is Near*). |
| 117.  Before leaving for the U.S. in December 1968, Jimmy Page was a session musician on Cartoone's recording of *Ice Cream Dreams*, | Page Decl. at 2, ¶ 7; Anderson Decl. at 5, ¶ 29, & Exh. 25; Ferrara Audio Exhibit 1 at Track 15. |

33

| **Undisputed Fact** | **Evidence in Support** |
|---|---|
| which includes a similar introduction. | |
| 118. There is no substantial similarity in the structures of the *Taurus* musical composition and *Stairway to Heaven*, and their structures are markedly different. | Ferrara Decl. at 2, ¶ 8, & Ferrara Exh. 1 (Ferrara Report) at 5, ¶ 7, & Attachment A. |
| 119. There are no substantial harmonic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their harmonies are markedly different. | Ferrara Decl. at 3, ¶¶ 9-11, & Ferrara Exh. 1 (Ferrara Report) at 5-6, ¶¶ 10-12, & Attachment B. |
| 120. There are no substantial rhythmic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their rhythms are markedly different. | Ferrara Exh. 1 (Ferrara Report) at 7, ¶ 13, & Attachment C. |
| 121. There are no substantial melodic similarities between the *Taurus* musical composition and *Stairway to Heaven*, and their melodies are markedly different. | Ferrara Decl. at 4-5, ¶¶ 12-15, & Ferrara Exh. 1 (Ferrara Report) at 7-8, ¶¶ 13-17, & Attachment D. |

34

| Undisputed Fact | Evidence in Support |
|---|---|
| 122.  The *Taurus* musical composition and *Stairway to Heaven* are very different musical compositions. | Ferrara Exh. 1 (Ferrara Report) at 8-9, ¶¶ 18-20, & Attachment E. |
| **(n)    John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp. Have Not Performed or Distributed *Stairway*** | |
| 123.  Plaintiff has not presented any admissible evidence establishing that John Paul Jones, Super Hype Publishing, Inc., or Warner Music Group Corp. performed or distributed *Stairway* within the three years preceding plaintiff's filing of this action. | Anderson Decl. at 6, ¶ 37. |

35

**2.     CONCLUSIONS OF LAW**

**The Court makes the following conclusions of law:**

**(a)     The Court's Jurisdiction.**

1.     The Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331 and 1338(a).

**(b)     The Summary Judgment Standards**

2.     "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"   *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *quoting* Fed. R. Civ. P. 1.

3.     Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

4.     Once the moving party shows it is entitled to summary judgment, the burden shifts to the non-moving party to establish genuine issues exist as to material facts.  *Celotex*, 477 U.S. at 324.  The non-moving party cannot carry that burden by conclusory allegations, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986), by speculation or conjecture, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) or by the "mere existence of a scintilla of evidence."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1983).   The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Berg*, 794 F.2d at 459.

5.     The non-moving party is entitled only to "justifiable inferences," *id.* at 255, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

36

1       **(c)**     **Summary Judgment on Plaintiff's Copyright Claims Is**

2                 **Appropriate Because *Taurus* Is a Work for Hire Owned by**

3                 **Hollenbeck Music**

4       6.    Plaintiff's first three claims are for direct, contributory and vicarious

5 infringement of the copyright in the musical composition *Taurus*.  FAC (Document

6 31) at 24-28.

7       7.    "To be entitled to sue for copyright infringement, the plaintiff must be

8 the 'legal or beneficial owner of an exclusive right under a copyright.'"  *Silvers v.*

9 *Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (*quoting* 17 U.S.C. §

10 501(b)), *cert. denied* 546 U.S. 827 (2005).

11      8.    "Beneficial owners include, 'for example, an author who had parted

12 with legal title to the copyright in exchange for percentage royalties based on sales

13 or license fees.'"  *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1144 (9th

14 Cir.2003), *quoting* H.R. Rep. No. 94–1476, at 159.  But, "[a] creator of a work made

15 for hire does not qualify as a beneficial owner even if he or she is entitled to

16 royalties."   *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 n. 7 (9th Cir.

17 2015).  Because the evidence, and plaintiff's admission under Federal Rule of Civil

18 Procedure 36, is that *Taurus* is a work for hire, summary judgment is appropriate.

19       **(d)**     **Summary Judgment on Plaintiff's Copyright Claims Is Also**

20                 **Appropriate Because Wolfe Waived the Claim**

21      9.    The defenses that defendants raised in their Answers include waiver.

22 Answer (Doc. 68) at 29, ¶ 213; Answer (Doc. 69) at 33, ¶ 214.

23      10.    "Waiver is the intentional relinquishment of a known right with

24 knowledge of its existence and the intent to relinquish it."  *A&M Records, Inc. v.*

25 *Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001), *quoting United States v. King*

26 *Features Entm't, Inc.,* 843 F.2d 394, 399 (9th Cir.1988).  "In copyright, waiver . . .

27 'occurs only if there is an intent by the copyright proprietor to surrender rights in his

28 work.'"  *A&M Records* 239 F.3d at 1026, *quoting* 4 *Nimmer on Copyright* ¶ 13.06.

1   Because the evidence is that Wolfe waived the claim that *Stairway* copies *Taurus*,
2   summary judgment is appropriate.

3       **(e)**    **In Addition, Summary Judgment Is Appropriate Because Wolfe**
4               **and the Trust Abandoned the Claim**

5       11.    Defendants also raised the defense of abandonment.  Answer (Doc. 68)
6   at 29, ¶ 212; Answer (Doc. 69) at 33, ¶ 213.  "Abandonment occurs when the
7   copyright proprietor intends to surrender a copyright interest in his work."  *Hadady*
8   *Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990).
9   "To find abandonment, 'the copyright owner must have clearly manifested that
10  intention through some affirmative act.'"  *Id.*, *quoting* Goldstein, *Goldstein on*
11  *Copyright* 160 (1989).  A copyright holder may abandon some rights without
12  abandoning others.  *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1114 (9th
13  Cir.1998).  It is sufficient that the plaintiff intended the act that constitutes
14  abandonment, even if he did not realize he was abandoning his copyright.  *Lopez v.*
15  *Electrical Rebuilders, Inc.*, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976).

16      12.    A public statement that a right will not be pursued, may constitute the
17  overt act establishing abandonment.  *Hadady*, 739 F. Supp. at 1399; *Wyatt Tech.*
18  *Corp. v. Malvern Instruments Inc.*, No. CV 07-08298-DDP-MANx, 2009 WL
19  2365647, at *13-14 (C.D. Cal. July 29, 2009), *aff'd*, 526 F. App'x 761 (9th Cir.
20  2013); *Rouse v. Walter & Associates, L.L.C.*, 513 F. Supp. 2d 1041, 1070 (S.D. Iowa
21  2007) (claimed owners' failure to assert rights and statement work could be used,
22  constituted abandonment).

23      13.    Although Wolfe was not an owner, beneficially or otherwise, of the
24  *Taurus* copyright, he abandoned any right to claim that *Stairway* copies *Taurus*.

25      **(f)**    **Laches Also Bars the Claims as Beneficial Owner**
26      14.    The Supreme Court has ruled that laches does not bar a legal claim for
27  copyright infringement, and confirmed that laches continues to apply to equitable
28  claims.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1973-75, 1977-79,

38

1   188 L. Ed. 2d 979 (2014).  Because *Petrella*'s ruling is limited to actions at law and

2   preserves laches as a defense in equity, this Circuit's law as to laches remains intact

3   when applied to equitable claims.

4        15.    A claim as beneficial ownership of a copyright is an equitable claim.

5   *Warren*, 328 F.3d at 1144 (beneficial ownership of copyright is "an equitable trust

6   relationship"), *quoting Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984); *see, also*

7   Black's Law Dictionary (10th ed. 2014) ("beneficial owner . . . 1.  One recognized in

8   equity . . . even though legal title may belong to someone else").

9        16.    The forty-three years of delay in asserting these claims triggers a

10  "strong presumption" that laches bars them.  *Miller v. Glenn Miller Prods., Inc.*, 454

11  F.3d 975, 997 (9th Cir. 2006).

12       17.    Further, the evidence establishes laches.  Laches applies if there has

13  been unreasonable delay to the defendant's prejudice.  *Danjaq LLC v. Sony Corp.*,

14  263 F.3d 942, 951 (9th Cir. 2001).  As to delay, "the relevant delay is the period

15  from when the plaintiff knew (or should have known) of the allegedly infringing

16  conduct, until the initiation of the lawsuit  . . . ."  *Id.* at 952.  Forty-three years of

17  delay is unreasonable as a matter of law.  As to prejudice, "Courts have recognized

18  two chief forms of prejudice in the laches context—evidentiary and expectations-

19  based.  Evidentiary prejudice includes such things as lost, stale, or degraded

20  evidence, or witnesses whose memories have faded or who have died . . . .  A

21  defendant may also demonstrate prejudice by showing that it took actions or suffered

22  consequences that it would not have, had the plaintiff brought suit promptly."

23  *Danjaq*, 263 F.3d at 955.  The evidence establishes both types of prejudice and

24  plaintiff cannot overcome the strong presumption that laches applies.  Accordingly,

25  for this additional reason summary judgment is appropriate.

26

27

28

39

**(g)** **Summary Judgment Also Is Appropriate Because Plaintiffs Have Failed to Carry their Burden of Presenting Admissible Evidence Establishing Copying of Protected Expression**

**(1)** **A Copyright Infringement Claim Requires Proof of Copying Original Elements of the Registered Work**

18.   A plaintiff asserting a copyright infringement claim has the burden of proving "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003), *quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

19.   Copying is therefore an essential element and, "absent copying, there can be no infringement of copyright, . . . ."   2 M. & D. Nimmer, *Nimmer on Copyright* § 8.01[A].

**(2)** **Plaintiff Fails to Establish Copying**

**(i)** **Plaintiff Presents No Direct Evidence of Copying and No Evidence Establishing Striking Similarities**

20.   To prove the required element of copying, a plaintiff must (1) present direct evidence of copying or (2) prove copying circumstantially by showing (a) there are striking similarities between the works or (b) the alleged copier had "access" to the plaintiff's work and the works are substantially similar.   *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Stewart*, 574 F. Supp. 2d at 1084.

21.   Plaintiff presents no direct evidence of copying and failed to present admissible expert testimony of striking similarity.   4 *Nimmer on Copyright* § 13.02[B] (the requirement of expert testimony to establish striking similarities is especially applicable "in 'technical' areas, such as music . . . .").

40

     ***(ii)***   ***Plaintiff Fails to Prove Access Plus Substantial
Similarity***

       **a.**   **Plaintiff Relies on Conjecture and Speculation
that Led Zeppelin's Members Might Have Heard
*Taurus* Before Recording *Stairway* in 1971**

22. To prove access, the plaintiff in a copyright case must present evidence that the creator of the defendant's work had a "reasonable possibility, not merely a bare possibility," to copy the plaintiff's work. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Access is proven "either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Id.*.

23. Plaintiff has presented no evidence of widespread dissemination of *Taurus* prior to 1972 and, to the contrary, the evidence is that it was not released as a single, was not played on radio and was only rarely played by Spirit in concerts.

24. As to access by a chain of events linking the plaintiff's work to the alleged copier, "[r]easonable access requires more than a 'bare possibility,' and 'may not be inferred through mere speculation or conjecture.'" *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010), *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert. denied* 531 U.S. 1126, 121 S,Ct. 881, 148 L.Ed.2d 790, *in turn quoting* 4 *Nimmer on Copyright*, § 13.02[A] at 13-19.

25. There is no evidence that *Taurus* was performed at any concert where Led Zeppelin was present and no evidence that any member of Led Zeppelin heard *Taurus* before *Stairway* was created. That some of Spirit's other songs became popular does not prove that members of Led Zeppelin heard *Taurus*, which was on their first album and was not popular. Also, the mere fact that in 2015 a copy of Spirit's album was in Page's record collection, is not "significant, affirmative and probative evidence" that he heard *Taurus* forty-five years ago. *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 281 (S.D.N.Y. 1991).

26.     Accordingly, plaintiff's copyright claims fail for the additional reason that he fails to establish access.

> **b.      Plaintiff Also Fails to Establish Substantial Similarity Between Protectable Portions of the Copyrighted *Taurus* Transcription and *Stairway***

27.     Plaintiff sues on the copyright in the *Taurus* transcription deposited with the Copyright Office in 1967 and, accordingly, bears the burden of presenting expert testimony establishing substantial similarity between that transcription and *Stairway*.   Plaintiff, however, failed to do so and cannot present that affirmative testimony by rebuttal.   Accordingly, for that reason alone plaintiff fails to carry his burden as to substantial similarity and summary judgment is appropriate.

28.     Further, there is no genuine dispute that the *Taurus* transcription and *Stairway* are not substantially similar. "To determine whether two works are substantially similar, a two-part analysis – an extrinsic test and an intrinsic test – is applied." *Rice*, 330 F.3d at at 1174.   "For summary judgment, only the extrinsic test is important." *Id.*, *quoting Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, . . . ." *Id.*

29.     "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test requires 'analytical dissection of a work and expert testimony.'" *Id.*, *quoting Three Boys Music*, 212 F.3d at 485. "'Analytical dissection' requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by 'substantial similarity.'"   *Swirsky*, 376 F.3d at 845, *quoting Rice v. Fox Broadcasting Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other grounds*, *Rice,* 330 F.3d 1170.

42

1    30.   "Because the requirement is one of substantial similarity to *protected*

2    elements of the copyrighted work, it is essential to distinguish between the protected

3    and unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845 (emphasis

4    in original).  Further, "ideas" and "expressions that are standard, stock, or common

5    to a particular subject matter or medium are not protectable under copyright law."

6    *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (emphasis in original), *cert.*

7    *denied,* 540 U.S. 983 (2003); *Smith v. Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir.

8    1996) (unprotected scenes a faire includes musical elements that are "common or

9    trite").

10    31.   In performing this analytic dissection of the works, "[i]t is the copyright

11    plaintiff's burden to identify the elements for this comparison." *Rice*, 148 F.Supp.2d

12    at 1051.

13    32.   Plaintiff's musicologist never mentioned the *Taurus* transcription, let

14    alone identify its elements for comparison.   Instead, plaintiff's musicologist

15    reviewed recordings of performances of *Taurus*.   But, those recordings are

16    irrelevant.  In determining the scope of the *Taurus* copyright, "the Copyright Act of

17    1909 is the applicable law in this case because the copyright was secured . . . prior to

18    the adoption of the 1976 Act." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427

19    (9th Cir. 1996).  Under the 1909 Act "[a] phonograph record is not a copy of the

20    musical composition itself."  *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp.

21    1183, 1192 n. 8 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976).   Further,

22    copyright was secured by depositing the *Taurus* transcription with the Copyright

23    Office as a "complete copy of" the composition protected by the copyright.   17

24    U.S.C. § 12 (repealed).  Accordingly, the copyright in the *Taurus* composition is the

25    copyrighted transcription, while the performance features of recordings that are cited

26    by plaintiff's musicologist, must by law be disregarded.  *Newton v. Diamond*, 388

27    F.3d 1189, 1193 (9th Cir. 2004) (because claim is for alleged use of musical

28    composition, "we may consider only . . . appropriation of the song's compositional

43

1  elements and must remove from consideration all the elements unique to [plaintiff's]

2  performance"), *cert. denied* 545 U.S. 1114 (2005).

3      33.    Focusing, as required by binding case law, only on the *Taurus*

4  composition as transcribed, the evidence is that any similarity with *Stairway* is

5  limited to a descending chromatic scale of pitches resulting from "broken" chords or

6  "arpeggios" and which is so common in music it is sometimes called a minor line

7  cliché.  Both sides' experts have identified multiple similar compositions that

8  predate *Taurus* and *Stairway* by years, decades and centuries, and agree that the

9  descending line and arpeggios are public domain.  *See, also* Copyright Office

10  Compendium § 802.5(A) (chromatic scales and arpeggios are "common property

11  musical material" in the public domain and not subject to copyright).  The

12  descending chromatic scale and arpeggios must be disregarded.  *Apple Computer,*

13  *Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) ("only those elements of

14  a work that are protectable and used without the author's permission can be

15  compared when it comes to the ultimate question of illicit copying"), *cert. denied*

16  513 U.S. 1184 (1995).

17      34.    Accordingly, defendants are entitled to summary judgment in their

18  favor on plaintiff's copyright infringement claims.

19      **(h)**    **Summary Judgment Is Also Appropriate as to John Paul Jones,**

20          **Super Hype Publishing, Inc., and Warner Music Group Corp.**

21      35.    Neither has plaintiff presented admissible evidence establishing a claim

22  against defendants John Paul Jones, Super Hype Publishing, Inc., and Warner Music

23  Group Corp.  None of them have been involved in the performance or distribution of

24  *Stairway* within the three years preceding plaintiff's filing of this action, if at all.

25  *Petrella*, 134 S. Ct. at 1969 ("Under the Act's three-year provision, [the alleged]

26  infringer is insulated from liability for earlier infringements of the same work").

27  Accordingly, and irrespective of the Court's conclusions above, plaintiff's claims

28  fail as to these defendants.

44

**(i)**   **Summary Judgment Is Also Proper on Plaintiff's Remaining Claim for "Right of Attribution"**

36.   Plaintiff's fourth and final claim is labeled "Right of Attribution—Equitable Relief – Falsification of Rock n' Roll History" and claims an entitlement to have Wolfe credited as a *Stairway* songwriter.  FAC at 29-30.  The evidence, however, is that Wolfe did not write any portion of *Stairway*.  For that reason alone, the claim fails.

37.   Further, the Copyright Act does not confer a right to credit as co-writer of a musical work.  17 U.S.C. §§ 106 & 106A (limiting right to attribution to works of visual art); *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) ("it is well established that the right to attribution is not a protected right under the Copyright Act").

38.   A right to attribution is also precluded by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (under *Dastar*, misstating credit not actionable); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. (Wash.) 2009) (authorship claim "foreclosed by *Dastar*"), *cert. denied* 558 U.S. 822 (2009).

39.   Accordingly, summary judgment on plaintiff's fourth claim is also proper.

**3.**   **CONCLUSION**

40.   There is no triable issue as to plaintiff's claims and defendants are entitled to summary judgment.  Fed. R. Civ. Proc. 56(a).

45

02596

1    **IT IS HEREBY ORDERED** that judgment on plaintiff's claims be entered

2    against plaintiff and in favor of defendants, and each of them.

3

4

5    Dated:

                                   The Honorable R. Gary Klausner

6                                    United States District Judge

7

8

9

10   *Submitted by*:

11   Peter J. Anderson, Esq., Cal. Bar No. 088891
      E-Mail: pja@pjanderson.com
12   LAW OFFICES OF PETER J. ANDERSON
      A Professional Corporation
13   Attorney for Defendants
      JAMES PATRICK PAGE, ROBERT ANTHONY
14   PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
      MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
15   ATLANTIC RECORDING CORP., RHINO
      ENTERTAINMENT COMPANY and WARNER
16   MUSIC GROUP CORP.

17   Helene Freeman, Esq., admitted *pro hac vice*
      E-Mail:  hfreeman@phillipsnizer.com
18   PHILIPS NIZER LLP
      Attorneys for Defendants
19   JAMES PATRICK PAGE, ROBERT
      ANTHONY PLANT and JOHN PAUL JONES

20

21

22

23

24

25

26

27

28

46

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17                  **WESTERN DIVISION**

18  MICHAEL SKIDMORE, *etc.*,          )  Case No. 2:15-cv-03462 RGK (AGRx)
                                       )
19          Plaintiff,                 )
                                       )
20     vs.                            )  DEFENDANTS' NOTICE OF
                                       )  MOTION AND MOTION FOR
21  LED ZEPPELIN, *et al.*,            )  SUMMARY JUDGMENT OR, IN
                                       )  THE ALTERNATIVE, PARTIAL
22          Defendants.                )  SUMMARY JUDGMENT
                                       )
23  _____     )  Date:  March 28, 2016
                                       )  Time: 9:00 a.m.

24                                        Courtroom of the Honorable
                                             R. Gary Klausner
25                                        United States District Judge

26

27

28

**02598**

1    **TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on March 28, 2016, at 9:00 a.m. or as soon

3 thereafter as the matter may be heard in Courtroom 850 of the above-entitled District

4 Court, located at 255 East Temple Street, Los Angeles, California, defendants James

5 Patrick Page, Robert Anthony Plant, John Paul Jones, Warner/Chappell Music, Inc.,

6 Super Hype Publishing, Inc., Atlantic Recording Corporation, Rhino Entertainment

7 Company and Warner Music Group Inc.,[1] will move the above-entitled Court, the

8 Honorable R. Gary Klausner, United States District Judge presiding, for summary

9 judgment in their favor on plaintiff's First Amended Complaint and the claims

10 therein, and, if for any reason summary judgment is not granted, for partial summary

11 judgment.

12    The Motion for Summary Judgment is brought on the grounds that, as stated

13 more fully in the accompanying Memorandum of Points and Authorities, there is no

14 genuine issue of material fact that:

15      1.    Defendants are entitled to judgment in their favor on plaintiff's

16      first through third claims for direct, contributory and vicarious copyright

17      infringement of a copyright in the 1967 musical composition titled *Taurus*,

18      because:

19        (a)    The musical composition *Taurus* is a work for hire

20        and plaintiff is neither an owner nor beneficial owner of the

21        copyright in that work and, as a result, cannot maintain the

22        infringement claims;

23        (b)    The creator of the musical composition *Taurus*

24        expressly waived the alleged claims;

25 ///

26

27 [1]    Plaintiff's complaint purports to refer to "Led Zeppelin" as a defendant, but that is the name of a musical group and not a juridical entity capable of suing or

28 being sued.

1

02599

1    (c)    The allegedly-infringed copyright rights in the

2    *Taurus* musical composition were abandoned;

3    (d)    Laches applies to plaintiff's claims as supposed

4    beneficial owner of the allegedly-infringed copyright and bars

5    those claims; and

6    (e)    Copying of protectable expression in a work in

7    which a copyright was registered with the Copyright Office are

8    essential elements of the claims and are absent because:

9    (1)    plaintiff has not produced admissible evidence

10    of the *Taurus* musical composition in which the allegedly-

11    infringed copyright was registered; and

12    (2)    plaintiff has not produced admissible evidence

13    of striking similarities between the *Taurus* musical

14    composition and *Stairway to Heaven*, has not produced

15    admissible, non-speculative evidence of access and has not

16    produced admissible evidence of substantial similarities in

17    protectable expression between the *Taurus* musical

18    composition and *Stairway to Heaven*.

19    2.    Defendants John Paul Jones, Super Hype Publishing, Inc., and

20    Warner Music Group Corp. are entitled to judgment in their favor on

21    plaintiff's first through third claims for direct, contributory and vicarious

22    copyright infringement, because plaintiff has produced no admissible

23    evidence that they performed, reproduced or distributed *Stairway to Heaven*

24    within three years of plaintiff's filing of this action.

25    3.    Defendants are entitled to judgment in their favor on plaintiff's

26    fourth and remaining claim for "Right of Attribution" because:

27    (a)    The *Taurus* work was not used in *Stairway to*

28    *Heaven*; and

2

**02600**

1      (b)     In any event, there is no right of attribution under

2          the applicable law.

3      The alternative Motion for partial summary judgment is brought on the

4  grounds that if for any reason summary judgment is not granted dismissing

5  plaintiff's action and claims, the Court can and should grant partial summary

6  judgment that:

7      1.     There are no striking similarities between the *Taurus* musical

8          composition and *Stairway to Heaven*.

9      2.     Laches bars plaintiff from recovering profits or, in the alternative,

10          any profit recovery by plaintiff must exclude profits from the exploitation of

11          *Stairway to Heaven* outside the U.S. and be reduced by 50% to reflect

12          plaintiff's claimed beneficial interest.

13      These Motions are based upon this Notice of Motion and Motion, the

14  Memorandum of Points and Authorities, Declarations and Exhibits filed with this

15  Notice of Motion and Motion, the proposed Statement of Uncontroverted Facts and

16  Conclusions of Law and proposed Order Granting Partial Summary Judgment

17  lodged with this Notice of Motion and Motion, the pleadings, and papers on file in

18  this action, the matters of which this Court may take judicial notice, and such

19  additional matters and oral argument as may be offered in support of the Motions.

20      The Motions are made following the conference with plaintiff's counsel

21  pursuant to Local Rule 7-3, which took place on February 18, 2016.

22  Dated: February 25, 2016                    /s/ Peter J. Anderson
                                          _____
23                                           Peter J. Anderson, Esq.
                                          LAW OFFICES OF PETER J. ANDERSON
24                                           A Professional Corporation
                                          Attorney for Defendants
25                                           JAMES PATRICK PAGE, ROBERT
                                          ANTHONY PLANT, JOHN PAUL JONES,
26                                           WARNER/CHAPPELL MUSIC, INC.,
                                          SUPER HYPE PUBLISHING, INC.,
27                                           ATLANTIC RECORDING CORP., RHINO
                                          ENTERTAINMENT COMPANY and
28                                           WARNER MUSIC GROUP CORP.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
JOHN PAUL JONES

4

1   Peter J. Anderson, Esq., Cal. Bar No. 88891
     E-Mail: pja@pjanderson.com
2   LAW OFFICES OF PETER J. ANDERSON
     A Professional Corporation
3   100 Wilshire Boulevard, Suite 2010
     Santa Monica, CA 90401
4   Tel: (310) 260-6030
     Fax: (310) 260-6040
5   Attorneys for Defendants
     JAMES PATRICK PAGE, ROBERT ANTHONY
6   PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
     MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7   ATLANTIC RECORDING CORP., RHINO
     ENTERTAINMENT COMPANY and WARNER
8   MUSIC GROUP CORP.

9   Helene Freeman, Esq., admitted *pro hac vice*
     E-Mail:  hfreeman@phillipsnizer.com
10   PHILIPS NIZER LLP
     666 Fifth Avenue
11   New York, NY 10103-0084
     Tel: (212) 977-9700
12   Fax: (212) 262-5152
     Attorneys for Defendants
13   JAMES PATRICK PAGE, ROBERT ANTHONY
     PLANT and JOHN PAUL JONES

14

15             **UNITED STATES DISTRICT COURT**

16             **CENTRAL DISTRICT OF CALIFORNIA**

17                **WESTERN DIVISION**

| | |
|---|---|
| 18   MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| 19         Plaintiff, | |
| 20     vs. | DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR |
| 21   LED ZEPPELIN, *et al.*, | SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL |
| 22       Defendants. | SUMMARY JUDGMENT |
| 23 | Date:  March 28, 2016 Time: 9:00 a.m. |
| 24 | |
| 25 | Courtroom of the Honorable R. Gary Klausner United States District Judge |
| 26 | |

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

1.      INTRODUCTION ..........................................................................................1

2.      SUMMARY OF UNCONTROVERTED FACTS.............................................2

        (a)     Spirit's 1967 Recording Contract and Hollenbeck Music's 1967
                Employment of Randy Wolfe as a Songwriter .........................................2

        (b)     In January 1968, Ode Records Released its First Spirit Album,
                which Included *Taurus* – a Short Instrumental with a Minor Line
                Cliché – Which Was Not Released as a Single or on Radio ...................2

        (c)     Spirit's 1968-1971 Live Performances Promoting the Band's
                Subsequent Albums, without Performing *Taurus*....................................2

        (d)     On the Three Occasions When Led Zeppelin and Spirit Played the
                Same Venue, the Evidence Is Spirit Did Not Play *Taurus* and, in
                any Event, Led Zeppelin Did Not Hear Spirit Perform ...........................3

        (e)     Spirit's January 1970 Appearance at Mothers Club in England..............3

        (f)     In Late 1971, the Album *Led Zeppelin IV* Is Released and Includes
                *Stairway*, which Begins with a Variation on a Minor Line Cliché..........4

        (g)     Wolfe Believed *Stairway* Copied *Taurus*' Introduction, and in
                1991 Approved the Supposed Use of *Taurus* ..........................................4

        (h)     The Forty-Three Years of Delay Before this Claim Was Asserted .........4

3.      SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS .........................5

        (a)     Plaintiff Cannot Sue for Copyright Infringement Because *Taurus*
                Is a Work for Hire Owned by Hollenbeck Music ....................................5

                (1)     The Creator of a Work for Hire Cannot Sue for Infringement......5

                (2)     Wolfe Agreed, and Plaintiff Admitted under Federal Rule of
                        Civil Procedure 36, that   *Taurus* Is a Work for Hire ...................5

                (3)     Even if Plaintiff Were Not Bound by His Rule 36 Admissions,
                        there Is No Merit to His Claim *Taurus* Is Not a Work for Hire ....6

i

(b)   Wolfe Waived the Alleged Infringement..................................................8

(c)   Wolfe and the Trust Abandoned the Claim ............................................8

(d)   Laches Bars Plaintiff's Suit as Claimed Beneficial Owner of *Taurus* ....9

    (1)   As to Equitable Claims, *Petrella* Leaves Laches Intact ...............9

    (2)   Laches Bars Plaintiff's Claim as Beneficial Owner of *Taurus* ...10

(e)   Even if Plaintiff Avoids these Hurdles, the Copyright Claims Fail ......11

    (1)   Plaintiff Has Failed to Produce the Copyright Office Deposit
        Copy of *Taurus*, a Required Element of His Claim ...................11

    (2)   Copying of Protected Original Expression Is a Required
        Element of the Copyright Claims ...............................................11

    (3)   Plaintiff Concedes the Songs Are Not Strikingly Similar...........11

    (4)   Neither Is there Admissible Evidence of Access Plus
        Substantial Similarities ...............................................................12

        *i.*   *Plaintiff Was Unable to Prove His Allegations of
            Access* ..............................................................................12

            a.   "Taurus" Was Not "Widely Disseminated" ............... 12

            b.   Neither Is there a "Chain of Events" Establishing
               that Led Zeppelin's Members Heard *Taurus* ............. 12

        *ii.*   *Even if Plaintiff Could Establish Access – Which He
            Cannot Do – there Are No Substantial Similarities* ..........14

            a.   Plaintiff's Expert Ignores that the *Taurus* Deposit
               Copy and *Stairway* Are the Relevant Works.............. 14

            b.   The "Extrinsic Test": Analytical Dissection,
               Discarding Unprotected Ideas and Stock Elements ... 16

            c.   The Minor Line Cliché Must Be Disregarded,
               Leaving No Significant Similarities .......................... 17

(d)   The Claims Also Fail as to John Paul Jones, Super Hype Publishing
    and Warner Music Group Corp............................................................18

ii

1    4.    SUMMARY JUDGMENT ON THE "RIGHT OF ATTRIBUTION"
2          CLAIM ...........................................................................................18
3    5.    IF, FOR ANY REASON, SUMMARY JUDGMENT IS NOT
4          GRANTED, PARTIAL SUMMARY JUDGMENT IS APPROPRIATE.......19
5          (a)    There Are No Striking Similarities Between *Taurus* and *Stairway* ......19
6          (b)    Plaintiff's Claim for Profits from *Stairway* ...........................................19
7                 (1)    Laches Bars Plaintiff's Request for Profits .................................19
8                 (2)    If Profits Are Not Barred, they Are Limited ..............................19
9                        i.    *Extraterritorial Profits Are Not Recoverable* ..................19
10                       ii.   *Plaintiff Can Only Recover as a Beneficial Owner* ..........20
11   6.    CONCLUSION ...............................................................................20

iii

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................ 8

*ABKCO Music, Inc. v. LaVere*, 217 F.3d 684 (9th Cir. 2000), *cert. denied*

   531 U.S. 1051 (2000) ........................................................................................... 7

*Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023 (9th Cir. 1981) ................................... 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1983) ................................... 3

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994),

   *cert. denied* 513 U.S. 1184 (1995) ................................................................... 17

*Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009) ................ 12

*Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. (Wash.) 2009),

   *cert. denied* 558 U.S. 822 (2009) ................................................................... 19

*Cortner v. Israel*, 732 F.2d 267 (2d Cir. 1984) ........................................................ 10

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) ........................................ 10

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ................ 18

*Dowling v. United States*, 473 U.S. 207 (1985) ........................................................ 15

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149

   (2d Cir. 2003), *cert. denied* 541 U.S. 937 (2004) ....................................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................... 11

*Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815 (C.D. Cal. 2010) ........................... 13

*Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392

   (C.D. Cal. 1990) .................................................................................................. 8

*Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274 (S.D.N.Y. 1991) ............................... 14

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146

   (9th Cir. 2010), *cert. denied* 133 S. Ct. 133 (2012) ................................... 7

*Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) ................. 16

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987

   (9th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999) ................................... 20

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996).......................................6

*Manno v. Tennessee Prod. Ctr.*, 657 F. Supp. 2d 425 (S.D.N.Y. 2009) ....................20

*Micro Star v. Formgen, Inc.*, 154 F.3d 1107 (9th Cir.1998).........................................9

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006).............................10

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*
    388 F.3d 1189, *cert. denied* 545 U.S. 1114 (2005)...................................................15

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*
    545 U.S. 1114 (2005) ................................................................................ 15, 16, 17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014) .......... 9, 10, 11, 18, 19

*Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015)............................5, 6

*Rice v. Fox Broadcasting Co.*, 148 F. Supp. 2d 1029 (C.D. Cal. 2001),
    *rev'd on other grounds*, *Rice,* 330 F.3d 1170 ..........................................................17

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ..............................................11

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962 (9th Cir. 2008),
    *cert. denied* 555 U.S. 1137 (2009)...............................................................................6

*Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp. 1183 (S.D.N.Y. 1973),
    *aff'd*, 546 F.2d 461 (2d Cir. 1976) ...............................................................................7

*Rouse v. Walter & Assoc., L.L.C.*, 513 F. Supp. 2d 1041 (S.D. Iowa 2007)...............9

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756 (2d Cir. 1995) ...........9

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), *cert. denied,* 540 U.S. 983
    (2003) ...........................................................................................................................17

*Selle v. Gibb*, 741 F.2d 896 (7th Cir. 1984)................................................................12

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005),
    *cert. denied* 546 U.S. 827 (2005) ................................................................................5

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) .........................................................17

*Societe Civile Succession Guino v. Renoir*, 549 F.3d 1182 (9th Cir. 2008) .................6

*Stewart v. Wachowski*, 574 F.Supp.2d 1074 (C.D. Cal. 2005)....................................11

v

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994),

 *cert. denied* 513 U.S. 1001 (1994) ........................................................... 19

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ................... 19

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000),

 *cert. denied* 531 U.S. 1126 (2011) ............................................... 13, 14, 16

*Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162 (9th Cir. 1996).......................... 7

*UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164

 (E.D. Cal. 2006) ........................................................................... 18

*United States v. King Features Entm't, Inc.,* 843 F.2d 394 (9th Cir. 1988)................. 8

*Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136 (9th Cir.2003)................. 5, 10

*Wyatt Tech. Corp. v. Malvern Instruments Inc.*, No. CV 07-08298-DDP-MANx,

 2009 WL 2365647 (C.D. Cal. July 29, 2009), *aff'd*, 526 F. App'x 761

 (9th Cir. 2013) ........................................................................... 9

**Statutes**

17 U.S.C. § 11 (1909 Act) ................................................................... 7

17 U.S.C. § 12 (1909 Act) ............................................................... 7, 15

17 U.S.C § 303................................................................................ 7

17 U.S.C. § 302 .............................................................................. 6

17 U.S.C. § 501............................................................................... 5

**Other Authorities**

Copyright Office Compendium ........................................................... 17

H.R. Rep. No. 94–1476 ...................................................................... 5

**Rules**

Federal Rule of Civil Procedure 36 ....................................................... 5, 6

**Treatises**

Goldstein, *Goldstein on Copyright* (1989) .................................................. 9

M. Nimmer & David Nimmer, *Nimmer on Copyright* (2016) ........................... 7, 8, 20

02609

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**1.     INTRODUCTION**

Forty-three years after the 1971 release of *Stairway to Heaven* ("*Stairway*"), plaintiff filed this action claiming that *Stairway*'s introduction copies a descending chromatic line in a 1967 musical composition titled *Taurus*.  His pleading relies on gossip, hearsay and hyperbole, and discovery has confirmed his allegations are not as advertised.  That has left him with speculation that, *e.g.*, since Jimmy Page now has a Spirit album, he might have had it forty-five years ago when *Stairway* was created.  For multiple independent reasons, plaintiff's claims fail.

First, since *Taurus* is a work for hire owned by a non-party, plaintiff cannot sue for infringement.  Second, even if there were a claim – and there is not – it was expressly waived in 1991.  Third, the allegedly-infringed rights were abandoned.  Fourth, laches bars plaintiff's equitable claim as beneficial owner of the *Taurus* copyright.   Fifth, plaintiff has failed to produce the required Copyright Office deposit copy of *Taurus* and, for that reason alone, cannot prove the alleged copying. Finally, he also has presented no evidence of copying: he conceded there are no striking similarities; he failed to present admissible, non-speculative evidence of access before *Stairway* was created; and he failed to present evidence of substantial similarity between the copyrighted *Taurus* composition and *Stairway* and cannot do so because (1) his initial expert disclosures did not even mention the relevant copyrighted work and (2) both side's experts agree the compositions share a centuries-old descending chromatic line.   Accordingly, summary judgment for defendants on the copyright infringement claims is appropriate, including as to John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp., who have not performed or distributed *Stairway* within the statutory limitations period.

Plaintiff's remaining "Right of Attribution" claim also fails, including because there is no such claim under the law.  And, if summary judgment is not granted, partial summary judgment is proper as to matters that are beyond genuine dispute.

1

1  **2.      SUMMARY OF UNCONTROVERTED FACTS**

2      **(a)      Spirit's 1967 Recording Contract and Hollenbeck Music's 1967**

3          **Employment of Randy Wolfe as a Songwriter**

4      On August 29, 1967, Randy Wolfe ("Wolfe"), professionally known as Randy

5  California, and the other members of the band Spirit entered into a recording

6  contract with Ode Records, Inc., and Wolfe entered into an Exclusive Songwriter

7  Agreement with its affiliate Hollenbeck Music ("Hollenbeck").   Under the 1967

8  Exclusive Songwriter Agreement, Hollenbeck "employ[ed Wolfe] to render his

9  services as a songwriter and composer . . . ," and Wolfe agreed he was a "'writer for

10  hire' . . . with full rights of copyright renewal vested in [Hollenbeck]."  Fact 1-3.[1]

11      **(b)      In January 1968, Ode Records Released its First Spirit Album,**

12          **which Included *Taurus* – a Short Instrumental with a Minor Line**

13          **Cliché – Which Was Not Released as a Single or on Radio**

14      After the August 29, 1967 contracts, Ode Records recorded Spirit's

15  performances of various songs and a short instrumental called *Taurus*.  On or about

16  December 22, 1967, Hollenbeck, as owner, registered a copyright in the *Taurus*

17  musical composition with the Copyright Office.  Fact 9-11.

18      In 1967, Ode Records released its first Spirit album, titled *Spirit*, with twelve

19  songs, including *Taurus*.  *Taurus*, which includes a commonplace minor line cliché,

20  namely a descending chromatic line with arpeggios, was not released as a "single"

21  and was not played on radio.  Fact 14-19.

22      **(c)      Spirit's 1968-1971 Live Performances Promoting the Band's**

23          **Subsequent Albums, without Performing *Taurus***

24      After its 1967 album, Ode Records released Spirit's 1968 break-out album,

25  *The Family that Plays Together*, and then additional Spirit albums in 1969 and 1970.

26  Spirit performed in concerts to "support" its newest albums, meaning that they

27  performed songs from those albums, along with earlier hits or "tent pole songs" that

---

28  [1]      "Fact" refers to facts in the proposed Statement of Uncontroverted Facts.

2

1  did not include *Taurus*. Also, the 1967 album's recording of *Taurus* has orchestral
2  instruments, so Spirit could not perform it live as it is heard on the album. Fact 10,
3  21-23. Out of 175 live concert performances by Spirit from December 1968 to
4  December 1970, plaintiff established only that two included *Taurus*. Fact 24.

5  **(d)    On the Three Occasions When Led Zeppelin and Spirit Played the**
6  **Same Venue, the Evidence Is Spirit Did Not Play *Taurus* and, in**
7  **any Event, Led Zeppelin Did Not Hear Spirit Perform**

8  Plaintiff alleges Led Zeppelin and Spirit toured together (FAC at 2, ¶ 6, at 10,
9  ¶ 51), but that is not true. Out of hundreds of public performances from 1968 to the
10  completion of *Stairway*'s recording in January 1971, Led Zeppelin and Spirit
11  performed at the same venue on the same day only three times. Even then, they
12  never performed together and were never on stage at the same time.   Fact 26-30.

13  Further, Spirit, in support of its newest albums, played songs from those new
14  albums and "tent pole" songs, none of which included *Taurus*. Other than – at his
15  counsel's aggressive coaching – one witness' testimony to a "faint recollection" that
16  *Taurus* was performed at one of the three venues,[2] the evidence is that Spirit did not
17  perform *Taurus* at any of them. Also, the evidence, including the testimony of that
18  same witness, is Led Zeppelin's members did not hear Spirit perform. Fact 31-66.

19  **(e)    Spirit's January 1970 Appearance at Mothers Club in England**

20  In January 1970, Robert Plant and his wife were at a local club near their
21  home in Birmingham, England. Spirit's two surviving members saw him there and,
22  in a short "meet-and-greet," introduced themselves before Spirit performed at the
23  other end of the club. There is no evidence that Spirit played *Taurus*, which was not
24  one of their new or tent pole songs. Fact 70-76. One of Spirit's surviving members
25  contends that later that night he and other members went to a pub with Plant, but

26  _____

27  [2]    That "faint recollection," properly disregarded as speculation and the result of
counsel's coaching (Fact 37-39), also is less than the "scintilla of evidence" that fails
28  to create a triable issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1983).

3

1  Spirit's other surviving member does not recall that, and at the time pubs closed at

2  10 p.m.  In any event, there is no evidence *Taurus* was discussed.  Fact 77-80.

3      **(f)**    **In Late 1971, the Album _Led Zeppelin IV_ Is Released and Includes**

4          **_Stairway_, which Begins with a Variation on a Minor Line Cliché**

5      *Stairway* was recorded by January 1971 and included in the album *Led*

6  *Zeppelin IV* released in November 1971.  *Stairway* begins with a minor line cliché

7  and arpeggios and, unlike *Taurus*, also has an ascending line.  Audio Exh. 2 at Track

8  2.  Long before 1968, Jimmy Page was aware of minor line clichés and arpeggios

9  and included similar music when he performed as a session guitarist.  Fact 82-87.

10      **(g)**    **Wolfe Believed _Stairway_ Copied _Taurus'_ Introduction, and in 1991**

11          **Approved the Supposed Use of _Taurus_**

12      In 1991, Wolfe was interviewed in connection with a new album, titled *Time*

13  *Circle*, of Spirit recordings.  In that recorded interview, he described a claim he was

14  pursuing that Cheap Trick's Robin Zander had copied Wolfe's *Nature's Way*.  When

15  asked about *Stairway*, Wolfe stated he was not bothered by it, that he considered Led

16  Zeppelin's members friends, that "if they wanted to use" *Taurus* "that's fine," "I'll

17  let them have the beginning of Taurus for their song without a lawsuit" and "I'm

18  letting them off the hook."  Fact 90-91.  His statements were repeated in a booklet in

19  the *Time Circle* album released to the public in 1991.  Fact 92-93.

20      **(h)**    **The Forty-Three Years of Delay Before this Claim Was Asserted**

21      Wolfe also never sued over *Stairway*.  He died in 1997 and from 2002 until

22  her death, his mother was the trustee or co-trustee of the Randy Craig Wolfe Trust

23  (the "Trust") that claims rights in *Taurus*.  She also never sued.  And, plaintiff, who

24  became a co-trustee of the Trust in 2006, did not file this action until May 31, 2014,

25  over forty-three years after the 1971 release of *Stairway*.  Fact 94-99.

26      Plaintiff's First Amended Complaint – decorated with print mimicking a Led

27  Zeppelin album and peppered with specious allegations and gratuitous references to

28  non-parties' supposed claims as to other songs – alleges four claims: direct,

4

1  contributory and vicarious infringement of the *Taurus* musical composition

2  copyright that Hollenbeck registered in 1967, and a fourth claim labeled "Right of

3  Attribution"/"Falsification of Rock n' Roll History."  FAC (Doc. 31) at 24-30.

4  **3.      SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS**

5         **(a)     Plaintiff Cannot Sue for Copyright Infringement Because *Taurus* Is**

6                **a Work for Hire Owned by Hollenbeck Music**

7         A fatal defect in plaintiff's copyright claims is that because *Taurus* is a work

8  for hire owned by Hollenbeck, plaintiff cannot sue for alleged infringement.

9              **(1)     The Creator of a Work for Hire Cannot Sue for Infringement**

10        "To be entitled to sue for copyright infringement, the plaintiff must be the

11  'legal or beneficial owner of an exclusive right under a copyright.'"  *Silvers v. Sony*

12  *Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (*quoting* 17 U.S.C. §

13  501(b)), *cert. denied* 546 U.S. 827 (2005).   "Beneficial owners include, 'for

14  example, an author who had parted with legal title to the copyright in exchange for

15  percentage royalties based on sales or license fees.'"   *Warren v. Fox Family*

16  *Worldwide, Inc.,* 328 F.3d 1136, 1144 (9th Cir.2003), *quoting* H.R. Rep. No. 94–

17  1476, at 159.   But, "[a] creator of a work made for hire does not qualify as a

18  beneficial owner even if he or she is entitled to royalties."  *Ray Charles Found. v.*

19  *Robinson*, 795 F.3d 1109, 1116 n. 7 (9th Cir. 2015).   Here, plaintiff's copyright

20  claims fail because *Taurus* is a work for hire.

21             **(2)     Wolfe Agreed, and Plaintiff Admitted under Federal Rule of**

22                  **Civil Procedure 36, that *Taurus* Is a Work for Hire**

23        Under the August 29, 1967 Songwriter Agreement, Hollenbeck "employ[ed

24  Wolfe] to render his services as a songwriter and composer . . . ," and Wolfe agreed

25  he was a "writer for hire" for Hollenbeck.  Fact 1-3.  Hollenbeck also copyrighted

26  the *Taurus* composition in its name on December 22, 1967.  Fact 11.  In short,

27  *Taurus* is a work for hire whose copyright is owned by Hollenbeck.

28        Neither can plaintiff debate the issue.   After being twice-warned to timely

1  respond to discovery, he failed to respond to Rule 36 requests that, *inter alia*, "[t]he
2  *Taurus* Composition is a work for hire."  Although, <u>six days before the discovery</u>
3  <u>cut-off</u> he provided a response purporting to deny these and other requests, he never
4  sought relief from his automatic, deemed admissions.  Fact 7-8.

5       Both the evidence and plaintiff's admissions establish *Taurus* is a work for
6  hire and the law is clear that the creator of a work for hire cannot sue for copyright
7  infringement.  *Ray Charles*, 795 F.3d at 1116 n. 7.  Summary judgment is proper.

8       **(3)     Even if Plaintiff Were Not Bound by His Rule 36 Admissions,**
9       **there is No Merit to His Claim *Taurus* Is Not a Work for Hire**

10       While plaintiff's Rule 36 admission precludes him from disputing *Taurus* is a
11  work for hire, there also is no merit to his two arguments that it is not.

12       Plaintiff alleges that the Songwriter Agreement is "void" because Wolfe was a
13  minor when he signed and it was not approved by the Court.  FAC at 6, ¶¶ 22, 24-26.
14  However, the Superior Court approved it on November 30, 1967.  Fact 6.

15       Plaintiff also has argued that in the months leading up to the 1967 Songwriter
16  Agreement, Spirit performed versions of *Taurus* live.   But, he relies on bootleg
17  recordings and hearsay as to when the performances occurred.  In any event, 1960s
18  live performances and recordings of *Taurus* are irrelevant: no copyright arose from
19  them and plaintiff instead sues on the copyright in the *Taurus* composition
20  completed and registered during the August 29, 1967 Songwriter Agreement's term.

21       "[T]o analyze questions arising from events that occurred before January 1,
22  1978, such as who is the author of the [work], the 1909 Act applies; . . . ."  *Richlin v.*
23  *Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 971 (9th Cir. 2008)), *cert. denied*
24  555 U.S. 1137 (2009); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir.
25  1996).  Under the 1909 Act, there were only two ways to obtain a copyright.[3]

26  ───────────
    [3]      "The Copyright Act of 1976 changed the basis of copyright protection . . . to
27  creation of a work . . . [but t]hat change applies to works 'created on or after January
    1, 1978.'"  *Societe Civile Succession Guino v. Renoir*, 549 F.3d 1182, 1186 (9th Cir.
28  2008), *quoting* 17 U.S.C. § 302.

6

1    First, publishing copies with the required copyright notice created a copyright.

2  *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996).  But,

3  publication requires the distribution of "tangible copies of a work . . . ." *Am.*

4  *Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981).  A live performance is

5  not a tangible copy, and under the 1909 Act "[a] phonograph record is not a copy of

6  the musical composition itself."  *Rosette v. Rainbo Record Mfg. Corp.*, 354 F. Supp.

7  1183, 1192 n. 8 (S.D.N.Y. 1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976); *ABKCO Music,*

8  *Inc. v. LaVere*, 217 F.3d 684, 688-89 (9th Cir. 2000), *cert. denied* 531 U.S. 1051

9  (2000); 17 U.S.C § 303(b).  Accordingly, 1960s live performances and recordings of

10  *Taurus* did not result in a copyrighted composition.

11    Second, copyright could also be secured under the 1909 Act by registration

12  with the Copyright Office, which required "the deposit, with claim of copyright, of

13  one complete copy of such work if it be a . . . musical, or dramatico-musical

14  composition; . . . ."  17 U.S.C. §§ 11-12 (repealed).  "Because, under the 1909 Act,

15  copyright protection required . . . the deposit of *copies* . . . , to claim copyright in a

16  musical work under the 1909 Act, the work had to be reduced to sheet music or

17  other manuscript form."  2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §

18  2.05[A] (emphasis in original).  When Hollenbeck registered its copyright in the

19  musical composition *Taurus* on December 22, 1967 (Fact 11), it presumably

20  deposited with the Copyright Office a transcription of the composition.  Until then,

21  as far as the 1909 Act was concerned, there was no *Taurus* copyright and it came

22  into existence only when – four months after the August 29, 1967 Songwriter

23  Agreement – a transcription of *Taurus*  was prepared and deposited with the

24  Copyright Office.[4]  As a result, live performances and recordings are irrelevant.

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26  [4]    Although not raised by plaintiff, it makes no difference that Hollenbeck's registration of its *Taurus* copyright did not specify it was a work for hire.  *Jules*

27  *Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (absent intent to defraud, mistake in identifying author of work for hire irrelevant),

28  *cert. denied* 133 S. Ct. 133 (2012).  Further, the Songwriter Agreement's specific

7

1    Since *Taurus* is a work for hire owned by Hollenbeck, plaintiff cannot sue for

2  infringement and summary judgment is proper.

3       **(b)   Wolfe Waived the Alleged Infringement**

4    Even if plaintiff could avoid that *Taurus* is a work for hire, Wolfe expressly

5  waived the alleged infringement decades ago.

6    Defendants pleaded waiver as a defense.  Answer (Doc. 68) at 29, ¶ 213;

7  Answer (Doc. 69) at 33, ¶ 214.  "Waiver is the intentional relinquishment of a

8  known right with knowledge of its existence and the intent to relinquish it."  *A&M*

9  *Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001), *quoting United*

10  *States v. King Features Entm't, Inc.,* 843 F.2d 394, 399 (9th Cir. 1988).  "In

11  copyright, waiver . . . 'occurs only if there is an intent by the copyright proprietor to

12  surrender rights in his work.'"  *A&M Records*, 239 F.3d at 1026, *quoting* 4 *Nimmer*

13  *on Copyright* ¶ 13.06.

14    It could not be clearer that Wolfe "intended to surrender" any claim that

15  *Stairway* copied *Taurus*: he specifically stated in 1991 for public release that, *e.g.*,

16  he's "fine" with the alleged use and "I'll let them have the beginning of Taurus for

17  their song without a lawsuit."  Fact 91.  Since the Trust has no greater rights than

18  Wolfe, it cannot pursue a claim that Wolfe waived during his lifetime.

19    Accordingly, for this additional reason summary judgment is proper.

20       **(c)   Wolfe and the Trust Abandoned the Claim**

21    Defendants also pleaded the defense of abandonment.  Answer (Doc. 68) at

22  29, ¶ 212; Answer (Doc. 69) at 33, ¶ 213.  "Abandonment occurs when the copyright

23  proprietor intends to surrender a copyright interest in his work."  *Hadady Corp. v.*

24  *Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398-99 (C.D. Cal. 1990).  "To find

---

25
26  provisions that Wolfe was an employee and the compositions are works for hire,
trump the registration.  *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342
27  F.3d 149, 167 n. 24 (2d Cir. 2003) (correction of registration decades later approved;
"author" may have been used colloquially in identifying employee as author of work
28  for hire), *cert. denied* 541 U.S. 937 (2004).

8

1    abandonment, 'the copyright owner must have clearly manifested that intention

2    through some affirmative act.'" *Id.*, *quoting* Goldstein, *Goldstein on Copyright* 160

3    (1989).  A copyright holder may abandon some rights without abandoning others.

4    *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1114 (9th Cir.1998).

5           Here, Wolfe was not an owner, beneficially or otherwise, of the *Taurus*

6    copyright.  But, even if he had an interest in that copyright, he, the Trust and even

7    Hollenbeck allowed the alleged use of *Taurus* for over forty-three years.  *Sanga*

8    *Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 761 (2d Cir. 1995)

9    (songwriter abandoned rights by allowing other singer to use song without credit or

10   payment).  And, while *Stairway* does not in fact copy *Taurus*, in 1991 Wolfe stated

11   for release to the public that he waived any claim.  Fact 90-93.  *Hadady*, 739 F.

12   Supp. at 1399 (public statement that use allowed, even if defendant unaware of

13   statement, "abandoned copyright protection" in material allegedly used); *Wyatt*

14   *Tech. Corp. v. Malvern Instruments Inc.*, No. CV 07-08298-DDP-MANx, 2009 WL

15   2365647, at *13-14 (C.D. Cal. July 29, 2009) (same), *aff'd*, 526 F. App'x 761 (9th

16   Cir. 2013); *Rouse v. Walter & Assoc., L.L.C.*, 513 F. Supp. 2d 1041, 1070 (S.D.

17   Iowa 2007) (claimed owners' failure to assert rights and statement that work could

18   be used, constituted abandonment).

19           As a result, the copyright claims also fail because of abandonment.

20         **(d)**    **Laches Bars Plaintiff's Suit as Claimed Beneficial Owner of *Taurus***

21         If plaintiff somehow avoids summary judgment on the basis *Taurus* is a work

22   for hire, then his claims still fail because Wolfe also assigned any copyright rights to

23   Hollenbeck in 1967.  Exh. 11 at 1-5, ¶ 1.  Acknowledging Hollenbeck's ownership

24   of the *Taurus* copyright, and ignoring that *Taurus* is a work for hire, plaintiff has

25   claimed that Wolfe, and now the Trust, are beneficial owners of the *Taurus*

26   copyright. Exh. 26.  But, the claim as beneficial owner is barred by laches.

27         **(1)**    **As to Equitable Claims, *Petrella* Leaves Laches Intact**

28         This and other Circuits have long recognized that laches may bar a copyright

9

1    claim.  *See, e.g., Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 996-97 (9th Cir.

2    2006).  Plaintiff, asserting a claim that is over four decades old, hopes to avoid

3    laches by relying on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014).

4         *Petrella*, however, expressly states that laches remains a viable defense to

5    equitable relief.  134 S.Ct. at 1973-74, 1974-75 ("laches cannot be invoked to bar

6    legal relief") & at 1977-79 (laches available as to equitable relief).  And, plaintiff's

7    claim as purported beneficial owner of the *Taurus* copyright is an equitable claim.

8    *Warren*, 328 F.3d at 1144 (beneficial ownership of copyright is "an equitable trust

9    relationship"), *quoting Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984).

10         **(2)**    **Laches Bars Plaintiff's Claim as Beneficial Owner of *Taurus***

11         *Petrella* leaves intact this Circuit's law as to laches when applied to equitable

12    claims, and this Circuit's law confirms laches bars plaintiff's beneficial ownership

13    claim.  Indeed, the four decades of delay triggers a "strong presumption" the claim is

14    barred (*Miller*, 454 F.3d at 997), and plaintiff cannot rebut that presumption.

15         Laches is established by the plaintiff's unreasonable delay and the defendant's

16    resulting prejudice.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

17    Measured from 1971, when *Stairway* was released, to the filing of this lawsuit in

18    2014 (*id.* at 952), those forty-three years of delay is unreasonable as a matter of law.

19         And, defendant's prejudice is undeniable.  Prejudice may be "evidentiary" or

20    "expectations-based."  *Id.* at 955.  "Evidentiary prejudice includes such things as

21    lost, stale, or degraded evidence, or witnesses whose memories have faded or who

22    have died."  *Id.*  Since 1971, Wolfe and many other important witnesses have died,

23    and set lists, recordings and other documents have been lost or stolen.  Fact 100-01.

24    While that alone establishes the required prejudice, "[a] defendant may also

25    demonstrate prejudice by showing that it took actions or suffered consequences that

26    it would not have, had the plaintiff brought suit promptly."  *Danjaq*, 263 F.3d at 955.

27    Substantial expense was incurred in 2012-14 in the remastering and re-release of

28    Led Zeppelin recordings, including *Stairway*.  Fact 102.

1    Plaintiff cannot overcome the "strong presumption" that his equitable claim as

2    beneficial owner of the *Taurus* copyright is barred by laches.

3    **(e)**    **Even if Plaintiff Avoids these Hurdles, the Copyright Claims Fail**

4    Even if plaintiff could overcome all these hurdles, his claims still fail because

5    there is no admissible evidence that *Stairway* copies protected material in *Taurus*.

6    **(1)**    **Plaintiff Has Failed to Produce the Copyright Office Deposit**

7    **Copy of *Taurus*, a Required Element of His Claim**

8    "[B]oth the certificate [of copyright] and the original work must be on file

9    with the Copyright Office before a copyright owner can sue for infringement."

10    *Petrella*, 134 S. Ct. at 1977.  Plaintiff, however, has never produced the transcription

11    of *Taurus* that Hollenbeck presumably deposited with the Copyright Office in 1967.

12    While defendants obtained an uncertified transcription, it does not bear a Copyright

13    Office stamp.  Fact 12-13.  Since plaintiff has never proven the "original work . . .

14    on file with the Copyright Office," his copyright claims necessarily fail.

15    **(2)**    **Copying of Protected Original Expression Is a Required**

16    **Element of the Copyright Claims**

17    Plaintiff also bears the burden of proving "copying of constituent elements of

18    the work that are original."  *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir.

19    2003), *quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

20    Plaintiff claims no direct evidence of copying, so he must present admissible

21    evidence of either "striking similarities" <u>or</u> "access" plus substantial similarities

22    between *Stairway* and the copyrighted *Taurus* composition.  *Stewart v. Wachowski*,

23    574 F. Supp. 2d 1074, 1084 (C.D. Cal. 2005).  Plaintiff presents neither.

24    **(3)**    **Plaintiff Concedes the Songs Are Not Strikingly Similar**

25    "To prove copyright infringement without evidence of access, a plaintiff must

26    show the works are strikingly similar in both ideas and expression."  *Olson v.*

27    *Tenney*, 466 F. Supp. 2d 1230, 1236 (D. Or. 2006).  Because elements that are

28    "commonplace, or at least sometimes found in other works," cannot be striking

11

1   similarities, "evidence of striking similarity must include 'some testimony or other

2   evidence of the relative complexity or uniqueness of the two compositions' . . . ."

3   *Id.* (expert testimony required in music cases), *quoting Selle v. Gibb*, 741 F.2d 896,

4   905 (7th Cir. 1984). Here, plaintiff's musicologist did not claim striking similarities.

5   Fact 110. Accordingly, it is undisputed there are no striking similarities.

6            **(4)**    **Neither Is there Admissible Evidence of Access Plus**

7                 **Substantial Similarities**

8      Since the works are not strikingly similar, plaintiff must present admissible

9   evidence of access <u>and</u> substantial similarity, and he has done neither.

10            *i.*    *Plaintiff Was Unable to Prove His Allegations of Access*

11      To prove access, plaintiff must present evidence proving that the creator of the

12   defendant's work had more than a "bare possibility" to copy the plaintiff's work.

13   *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

14   Access is proven "either by (1) establishing a chain of events linking the plaintiff's

15   work and the defendant's access, or (2) showing that the plaintiff's work has been

16   widely disseminated." *Id.*

17             **a. "Taurus" Was Not "Widely Disseminated"**

18      *Taurus* was not released as a single and was not played on the radio. It was

19   included in Spirit's first album, but plaintiff failed to produce any evidence as to

20   sales of that album prior to the 1971 creation of *Stairway*. Fact 17-20. Accordingly,

21   plaintiff cannot prove access by widespread dissemination.

22            **b. Neither Is there a "Chain of Events" Establishing**

23                **that Led Zeppelin's Members Heard *Taurus***

24      Plaintiff also has not presented evidence "establishing a chain of events

25   linking the plaintiff's work and the defendant's access." *Art Attacks*, 581 F.3d at

26   1143. He does not contend that anyone provided *Taurus* to any member of Led

27   Zeppelin. Rather, he relies on speculation that perhaps they heard *Taurus* prior to

28   the January 1971 recording of *Stairway*. But, the evidence is to the contrary.

12

1      The evidence is undisputed that Led Zeppelin and Spirit appeared at the same

2 venue on the same day only three times; that at live shows Spirit performed its most

3 recent songs and "tent pole" songs that did not include *Taurus*; and that no member

4 of Led Zeppelin heard Spirit perform.  Fact 26-66.  There also is no evidence that

5 *Taurus* was played at Mothers Club in January 1970.  Fact 73-78, 80.

6      Plaintiff relies on interviews after Ode Records released its later and "break

7 out" Spirit albums, purporting to quote Jimmy Page as liking Spirit's albums and

8 performances.  In addition to being hearsay, that is not evidence he heard their first

9 album years earlier, rather than their subsequent and "break-out" albums that did not

10 include *Taurus*.  Further, out of at least 175 Spirit live performances from December

11 1968 through 1971, the evidence is that Spirit played *Taurus* only two times, and

12 Led Zeppelin was not there.  Fact 23-25.  "Reasonable access requires more than a

13 'bare possibility,' and 'may not be inferred through mere speculation or

14 conjecture.'"  *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 824 (C.D. Cal. 2010),

15 *quoting Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *cert.*

16 *denied* 531 U.S. 1126 (2001).

17      Plaintiff also relies on the fact that forty-five years later, Page now has the

18 Spirit album in his collection of thousands of records.  There is no evidence that he

19 had it before the January 1971 recording of *Stairway*.  Instead, plaintiff speculates

20 that he might have had the album forty-five years ago; that if he did have the album

21 forty-five years ago, he might have played it; that if he did play it forty-five years

22 ago he might also have played *Taurus*; and that he might have then copied it.  That is

23 "mere speculation or conjecture," multiplied.  *Three Boys Music*, 212 F.3d at 482.

24      Plaintiff has argued that since Led Zeppelin performed a live medley of non-

25 Spirit songs with a "bass riff" from Spirit's *Fresh Garbage*, they might have heard

26 *Taurus*.[5]  But, *Fresh Garbage*, unlike *Taurus*, was played on the radio, and was on a

27

---

28 [5]      Live performance of all or parts of others' songs is not infringing, and Spirit performed songs by The Beatles, whose songs also use minor line clichés.  Fact 115.

13

1    popular album released in England that did not include *Taurus*.  And, Led Zeppelin

2    began playing the medley in their European tour before coming to the U.S. in late

3    December 1968.   Fact 67-69.   Playing a bass riff from *Fresh Garbage* is not

4    evidence they heard *Taurus*, let alone heard it before recording *Stairway*.

5         Finally, plaintiff has argued that Jimmy Page must have seen Wolfe perform

6    because Page, like Wolfe, used a musical device referred to as a Theremin.  That, of

7    course, does not mean that he heard Wolfe play *Taurus*, on which there is no

8    Theremin.  Moreover, the 1966 Beach Boys hit, *Good Vibrations*, used a Theremin

9    and Page obtained a similar device after Jeff Beck, with whom Page performed

10   before Led Zeppelin, told him about the device.  Fact 88-89.

11        The burden is on plaintiff to "offer significant, affirmative and probative

12   evidence to support a claim of access."  *Intersong-USA v. CBS, Inc.*, 757 F. Supp.

13   274, 281 (S.D.N.Y. 1991).  Instead, plaintiff offers only "speculation, conjecture,

14   and inference" that is contrary to the evidence.  *Rice*, 330 F.3d at 1178.  The absence

15   of access is another independent basis for summary judgment.

16             **ii.    Even if Plaintiff Could Establish Access – Which He**

17                    **Cannot Do – there Are No Substantial Similarities**

18        The requirement of substantial similarities may be relaxed "when a high

19   degree of access is shown."  *Rice*, 330 F.3d at 1178, *quoting Three Boys Music*, 212

20   F.3d at 485.  However, plaintiff's access theory is "based on speculation, conjecture,

21   and inference which [is] far less than the 'high degree of access' required for

22   application of the inverse ratio rule."  *Rice*, 330 F.3d at 1178.  Accordingly, plaintiff

23   must meet the full requirement of proving substantial similarity, which he fails to do.

24             **a.  Plaintiff's Expert Ignores that the *Taurus* Deposit**

25                  **Copy and *Stairway* Are the Relevant Works**

26        Remarkably, although plaintiff sues on a copyright in a *Taurus* transcription

27   deposited with the Copyright Office in 1967, he has not produced that transcription

28   and his musicologist does not compare it with *Stairway*.  Instead, his expert purports

14

1    to compare *Stairway* to uncopyrighted *Taurus* recordings.

2           However, the 1967 *Taurus* transcription is, by definition, the "complete copy

3    of" the composition protected by the copyright that plaintiff purports to sue upon.

4    17 U.S.C. § 12 (repealed).   Recordings of *Taurus* are not copies of the composition

5    and are not even copyrighted because only recordings created after February 15,

6    1972 are protected by the Copyright Act.  *Dowling v. United States*, 473 U.S. 207,

7    211 n. 4 (1985).  The only relevant copyrighted work is the *Taurus* transcription, but

8    plaintiff's initial expert disclosures make no mention of it.   Since plaintiff cannot

9    rely on rebuttal reports to prove a point he has the burden of proving, he cannot

10   establish substantial similarity as between the works at issue and his claims fail.

11          Further, plaintiff's proffered expert relies on the performances in recordings

12   of *Taurus*, which is another fatal defect because the *Taurus* composition copyright

13   that plaintiff sues upon does not extend to performance elements.

14          "Sound recordings and their underlying musical compositions are separate

15   works with their own distinct copyrights."  *Newton v. Diamond*, 204 F. Supp. 2d

16   1244, 1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189, *cert. denied* 545 U.S. 1114

17   (2005).  "A musical composition consists of rhythm, harmony, and melody, and . . .

18   [a] musical composition's copyright protects the generic sound that would

19   necessarily result from any performance of the piece."  *Id.*  In contrast, "the sound

20   recording is the sound produced by the performer's rendition of the musical work."

21   *Id.* at 1249-50.   Unless they appear in the musical composition's transcription,

22   performance elements are not protected by the composition copyright.  *Id.* at 1250-

23   51.  So, in assessing the alleged copying of a musical composition, the Court "may

24   consider only . . . appropriation of the song's compositional elements and must

25   remove from consideration all the elements unique to [the] performance."  *Newton v.*

26   *Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004), *cert. denied* 545 U.S. 1114 (2005).

27          Flouting these established principles, plaintiff's expert altogether ignores the

28   *Taurus* deposit copy and relies on claimed similarities in how *Taurus* and *Stairway*

1   have been performed.  Thus, he opines that *Stairway* is substantially similar to

2   Spirit's recorded "fingerpicking style," "acoustic guitar," tempo, "classical

3   instruments such as flute . . . strings and harpsichord," "atmospheric sustained pads"

4   and "fretboard positioning and fingering" on the guitar.  Fact 111. Those and other

5   alleged elements of Spirit's recorded performances are irrelevant to plaintiff's claim

6   that the *Taurus* composition copyright was infringed.  *Newton*, 388 F.3d at 1194 ("A

7   crucial problem with the testimony of [plaintiff's] experts is that they continually

8   refer to the 'sound' produced by [plaintiff's'] technique," while his "copyright

9   extends only to the elements . . . that he wrote on the score").

10   Plaintiff bears the burden of proving substantial similarity between the *Taurus*

11   transcription and *Stairway*, and since he failed to provide an expert report as to those

12   works, he cannot carry his burden and summary judgment is proper.

13   **b. The "Extrinsic Test": Analytical Dissection,**

14   **Discarding Unprotected Ideas and Stock Elements**

15   Because defendants are only required to show that plaintiff has not presented

16   evidence establishing substantial similarity, they could rest on plaintiff's failure to

17   provide the required expert report comparing the relevant works.  Defendants,

18   however, will do more, and establish there is in fact no substantial similarity.

19   "To determine whether two works are substantially similar, a two-part

20   analysis – an extrinsic test and an intrinsic test – is applied."  *Rice*, 330 F.3d at 1174.

21   "For summary judgment, only the extrinsic test is important."  *Id.*, *quoting Kouf v.*

22   *Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) ("a plaintiff

23   who cannot satisfy the extrinsic test necessarily loses on summary judgment").

24   "The extrinsic test requires 'analytical dissection of a work and expert

25   testimony.'"  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *quoting Three*

26   *Boys Music*, 212 F.3d at 485.  "'Analytical dissection' requires breaking the works

27   'down into their constituent elements, and comparing those elements for proof of

28   copying as measured by 'substantial similarity.'"  *Swirsky*, 376 F.3d at 845, *quoting*

16

1  *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001), *rev'd on other*

2  *grounds*, *Rice,* 330 F.3d 1170.  "Because the requirement is one of substantial

3  similarity to *protected* elements of the copyrighted work, it is essential to distinguish

4  between the protected and unprotected material in a plaintiff's work."  *Swirsky*, 376

5  F.3d at 845 (emphasis in original).  "[E]xpressions that are standard, stock, or

6  common to a particular subject matter or medium are not protectable under

7  copyright law."  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), *cert. denied*

8  540 U.S. 983 (2003).

9                    **c.  The Minor Line Cliché Must Be Disregarded,**

10                         **Leaving No Significant Similarities**

11          The similarity between *Taurus* and *Stairway* is limited to a descending

12  chromatic scale of pitches resulting from "broken" chords or arpeggios and which is

13  so common in music it is called a minor line cliché.  Fact 113-14.  Both sides'

14  experts have identified multiple similar compositions that predate *Taurus* by years,

15  decades and centuries, and agree that the descending line and arpeggios are public

16  domain.  Fact 114; Copyright Office Compendium § 802.5(A) (chromatic scales and

17  arpeggios are "common property musical material" in the public domain); *Smith v.*

18  *Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical

19  elements not protected).  The descending chromatic scale and arpeggios, as well as

20  the recordings' performance elements that are not protected by the composition

21  copyright, must be disregarded.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d

22  1435, 1443 (9th Cir. 1994) ("only those elements of a work that are protectable . . .

23  can be compared when it comes to the ultimate question of illicit copying"), *cert.*

24  *denied* 513 U.S. 1184 (1995); *Newton*, 388 F.3d at 1194.

25          Disregarding what is not protected by the *Taurus* composition copyright, there

26  is simply nothing left that is similar, let alone substantially similar.  There is no

27  substantial similarity in the works' structures, which are markedly different.  Fact

28  118.  Neither is there any harmonic or melodic similarity beyond the unprotected

17

1  descending line.  Rather, straining to find something, plaintiff's expert argues that

2  *Stairway* and recordings of *Taurus* have only five of the six chords in a centuries-old

3  work – part of public domain material is still public domain material – and that both

4  have the unprotected sequence of notes in a minor scale, A, B and C.  Fact 119-20.

5        Disregarding what plaintiff concedes is an unprotected descending line and

6  arpeggios and common chords, and disregarding performance elements that are not

7  within the *Taurus* composition copyright, there are no substantial similarities and,

8  for that additional reason, summary judgment is proper on the copyright claims.

9      **(d)**   **The Claims Also Fail as to John Paul Jones, Super Hype Publishing**

10          **and Warner Music Group Corp.**

11        In addition to the foregoing, summary judgment is proper as to John Paul

12  Jones, Super Hype Publishing, Inc. and Warner Music Group Corp., on the

13  additional ground that none of them performed or distributed *Stairway* within the

14  three years preceding plaintiff's filing of this action.  Fact 123.  "Under the Act's

15  three-year provision, [the alleged] infringer is insulated from liability for earlier

16  infringements of the same work."  *Petrella*, 134 S. Ct. at 1969; 17 U.S.C. § 507(b).

17  Plaintiff concedes the three year statute "precludes relief as to any alleged

18  infringements prior to May 31, 2011."  Jt. Rule 26(f) Report (Doc. 4) at 4:12-1.

19  **4.**   **SUMMARY JUDGMENT ON THE "RIGHT OF ATTRIBUTION"**

20      **CLAIM**

21        Plaintiff's fourth claim is labeled "Right of Attribution—Equitable Relief –

22  Falsification of Rock n' Roll History" and seeks to have Wolfe credited as a

23  *Stairway* songwriter.  FAC at 29-30.  Wolfe, however, did not write any portion of

24  *Stairway*.  The claim also fails because, with the sole exception of works of visual

25  art, "it is well established that the right to attribution is not a protected right under

26  the Copyright Act."  *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F.

27  Supp. 2d 1164, 1178 (E.D. Cal. 2006).  A right to attribution is also precluded by

28  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  *Sybersound*

18

1  *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (under *Dastar*,

2  misstating credit not actionable); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d

3  1300, 1306 (Fed. Cir. (Wash.) 2009) (same), *cert. denied* 558 U.S. 822 (2009).

4      Accordingly, summary judgment on plaintiff's fourth claim is also proper.

5  **5.**    **IF, FOR ANY REASON, SUMMARY JUDGMENT IS NOT GRANTED,**

6      **PARTIAL SUMMARY JUDGMENT IS APPROPRIATE**

7      If, for any reason, summary judgment is not granted as to plaintiff's action in

8  its entirety, the Court can and should enter partial summary judgment as to the

9  following matters for which there is no genuine dispute.

10      **(a)**    **There Are No Striking Similarities Between *Taurus* and *Stairway***

11      Plaintiff failed to present admissible expert testimony as to striking

12  similarities (*see, above* at 11-12), so the absence of striking similarities is

13  undisputed.

14      **(b)**    **Plaintiff's Claim for Profits from *Stairway***

15      **(1)**    **Laches Bars Plaintiff's Request for Profits**

16      Laches is a defense to an award of profits under the Copyright Act. *Petrella*,

17  134 S.Ct. at 1978-79. Plaintiff does not deny four decades of delay, and the

18  resulting prejudice is severe. Fact 94-102. Also, defendants did not know of the

19  purported claim until shortly before it was filed in 2014 and, as a result, could not

20  have filed an action for declaratory relief. *Petrella*, 134 S.Ct. at 1978-79. These

21  facts confirm that plaintiff's profit claim is properly barred by laches.

22      **(2)**    **If Profits Are Not Barred, they Are Limited**

23      **i.**    ***Extraterritorial Profits Are Not Recoverable***

24      If plaintiff's profit claim is not barred in its entirety, it does not extend to

25  profits from the exploitation of *Stairway* outside the U.S. because the Copyright Act

26  has no extra-territorial reach. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24

27  F.3d 1088, 1089 (9th Cir. 1994), *cert. denied* 513 U.S. 1001 (1994). As a narrow

28  exception to that rule, the export of an allegedly-infringing U.S.-created work may

1   create a lien on a defendant's profits from that work outside the U.S.  *Los Angeles*
2   *News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998), *cert.*
3   *denied*, 525 U.S. 1141 (1999).  But, it is undisputed that *Stairway* was created in
4   England, not the U.S.  Fact 83.  Accordingly, that exception does not apply.

5                  ***ii.      Plaintiff Can Only Recover as a Beneficial Owner***

6          Plaintiff seeks actual damages and profits, but any potential monetary
7   recovery is properly reduced by 50% because plaintiff, relying on a right to royalties
8   under the 1967 Songwriter Agreement, claims as the beneficial owner of the *Taurus*
9   copyright.  Since that Songwriter Agreement limited Wolfe to 50% of any recovery
10  on a claim (Exh. 11 at 13, ¶ 13), he had – and therefore the Trust has – no right to
11  more than 50% of any potential recovery.  *See, e.g., Nimmer on Copyright* § 12.03
12  (a joint owner can sue only "for his particular share of damages or profits"); *Manno*
13  *v. Tennessee Prod. Ctr.*, 657 F. Supp. 2d 425, 432-33 (S.D.N.Y. 2009).

14  **6.    CONCLUSION**

15         For multiple reasons, any one of which is fatal to plaintiff's forty-five-year-
16  old claims, summary judgment should be entered in defendants' favor.

17  Dated: February 25, 2016               _____/s/ Peter J. Anderson_____
18                                          Peter J. Anderson, Esq.
                                           LAW OFFICES OF PETER J. ANDERSON
19                                          A Professional Corporation
                                           Attorney for Defendants
20                                          JAMES PATRICK PAGE, ROBERT
                                           ANTHONY PLANT, JOHN PAUL JONES,
21                                          WARNER/CHAPPELL MUSIC, INC.,
                                           SUPER HYPE PUBLISHING, INC.,
22                                          ATLANTIC RECORDING CORP., RHINO
                                           ENTERTAINMENT COMPANY and
23                                          WARNER MUSIC GROUP CORP.

24                                          Helene M. Freeman, Esq.
                                           PHILLIPS NIZER LLP
25                                          Attorney for Defendants
                                           JAMES PATRICK PAGE,
26                                          ROBERT ANTHONY PLANT and
                                           JOHN PAUL JONES
27

28

                                    20

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DECLARATION OF PETER J. ANDERSON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | |
| | Date:  March 28, 2016 |
| | Time: 9:00 a.m. |
| | Courtroom of the Honorable R. Gary Klausner United States District Judge |

### <u>DECLARATION OF PETER J. ANDERSON</u>

I, Peter J. Anderson, declare and state:

1.      I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.      I represent defendants Warner/Chappell Music, Inc., Syperhype Publishing, Inc., Atlantic Recording Corp., Rhino Entertainment Company, James Patrick Page, Robert Plant and John Paul Jones in this action. This Declaration is submitted in support of their Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

3.      I took the deposition of Jay A. Ferguson on January 13, 2016, in this action.   Mr. Ferguson provided corrections to the transcript of his deposition. Attached to this Declaration as Exhibit 8 are true and correct copies of pages from the transcript of Mr. Ferguson's deposition and which contain the testimony cited in support of defendants' Motion.

4.      I took the deposition of Mark Christopher Andes on January 15, 2016, in this action.   Mr. Andes has not provided corrections to the transcript of his deposition.  Attached to this Declaration as Exhibit 9 are true and correct copies of pages from the transcript of Mr. Andes' deposition and which contain the testimony cited in support of defendants' Motion.

5.      Attached to this Declaration as Exhibit 10 is a true and correct copy of deposition exhibit 347 in this action.

6.      Attached to this Declaration as Exhibit 11 is a true and correct copy of the August 29, 1967 Exclusive Songwriter Agreement produced by plaintiff in this action.

7.      I am familiar with the documents produced by plaintiff in this action and the deposition testimony in this action, and plaintiff has not produced any

///

1

1   documents or other testimony evidencing Randy Wolfe's disaffirmance of the

2   August 29, 1967 Exclusive Songwriter Agreement.

3       8.    Attached to this Declaration as Exhibit 12 is a true and correct certified

4   copy of the November 30, 1967 Order of the California Superior Court, County of

5   Los Angeles, in Case No. 921051, approving the August 29, 1967 Exclusive

6   Songwriter Agreement.

7       9.    On August 14, 2015, I caused written discovery requests as to

8   plaintiff's claimed standing to be served by hand on plaintiff's local counsel, with a

9   copy mailed to plaintiff's Pennsylvania counsel.  Plaintiff's responses to that

10  discovery were due on September 14, 2015, and plaintiff's counsel never asked me

11  for an extension of the time to respond to that discovery.  Plaintiff's counsel did not

12  provide responses until September 16, 2015, and then by e-mail only.  Attached to

13  this Declaration as Exhibit 13 is a true and correct copy of my September 18, 2015

14  e-mail to plaintiff's counsel, raising that plaintiff's responses were late.

15      10.    On August 28, 2015, I caused a second set of written discovery requests

16  to be served by hand on plaintiff's local counsel, with a copy mailed to plaintiff's

17  Pennsylvania counsel.  Plaintiff's responses to that discovery were due on

18  September 28, 2015, and plaintiff's counsel never asked me for an extension of time

19  to respond to that discovery.  Plaintiff's counsel did not provide responses until

20  September 29, 2015, and then by e-mail only.

21      11.    On October 5, 2015, I wrote plaintiff's counsel pursuant to Local Rule

22  37-1, regarding deficiencies in plaintiff's responses to defendants' discovery.  In that

23  letter, I also raised that plaintiff had again failed to timely respond to defendants'

24  written discovery.  Attached to this Declaration as Exhibit 14 are the first and last

25  pages of my October 5, 2015 letter to plaintiff's counsel.

26      12.    On December 4, 2015, I caused a third set of written discovery requests,

27  including defendants' second Request for Admissions, to be served by hand on

28  plaintiff's local counsel, with a copy mailed to plaintiff's Pennsylvania counsel.

1  Attached to this Declaration as Exhibit 15 is a true and correct copy of the December

2  4, 2015 Request for Admissions, omitting exhibits 1-3.

3    13.    Plaintiff's responses to defendants' December 4, 2015 written discovery

4  were due on January 4, 2016.  Plaintiff's never asked me for an extension of time to

5  respond to that discovery.    Plaintiff did not timely respond to that discovery,

6  including the Request for Admissions.  Instead, on February 5, 2016 and at the

7  deposition of plaintiff, plaintiff's counsel handed me purported responses to the

8  December 4, 2015 written discovery, acknowledging that they were late.

9    14.    Plaintiff's counsel has not asked me to stipulate to, and plaintiff has not

10  sought from the Court, an order relieving plaintiff of his deemed admissions of the

11  December 4, 2015 Request for Admissions.

12    15.    Plaintiff has not produced in this case a copy of the 1967 Certificate of

13  Registration of copyright in the musical composition *Taurus*, but defendants

14  obtained a copy, which is attached to this Declaration as Exhibit 16.

15    16.    Plaintiff has not produced in this case a copy of the transcription of the

16  musical composition *Taurus* that was deposited with the Copyright Office in

17  connection with the 1967 application to register that copyright.

18    17.    Defendants obtained through the Library of Congress a transcription

19  titled *Taurus* and stamped "Dec 22, 1967" and "Eu 35222," and a copy of that

20  transcription is attached to this Declaration as Exhibit 17.  I note, however, that it

21  does not bear the Copyright Office's "Deposit" stamp that appears on, for example,

22  the *Stairway to Heaven* deposit copy, a copy of the first page of which is attached to

23  this Declaration as Exhibit 18.

24    18.    Attached to this Declaration as Exhibit 19 is a document produced in

25  this action by plaintiff, and which purports to be the back cover of the album titled

26  Spirit.

27  ///

28  ///

3

1    19.    No evidence has been produced in this action that *Taurus* was played

2  on the radio, let alone that it was played on the radio prior to the 1971 release of the

3  album *Led Zeppelin IV*, which includes *Stairway to Heaven*.

4    20.    No evidence has been produced in this action as to the extent of sales or

5  other distribution of the first Spirit album prior to the 1971 release of the album *Led*

6  *Zeppelin IV*.

7    21.    Attached to this Declaration as Exhibit 20 is a true and correct copy of

8  deposition exhibit 352 in this action.

9    22.    Plaintiff produced in this action a multiple-page listing of dates and

10  venues where plaintiff contends Spirit performed live from February 5, 1967 to

11  December 31, 1971, and plaintiff claims to have designated that listing as

12  "CONFIDENTIAL" under the Stipulated Protective Order in this action.  I have

13  reviewed it carefully and count at least 175 listed Spirit performances that plaintiff

14  contends occurred from December 1968 through December 1971.

15    23.    Attached to this Declaration as Exhibit 21 is a true and correct copy of

16  deposition exhibits 306 to 312 in this action, without the CDs that are photocopied in

17  the exhibits.

18    24.    No evidence has been produced in this action that Led Zeppelin's

19  members were present at the Santa Monica, California, Civic Auditorium or the

20  Anaheim, California, Convention Center when Spirit performed.

21    25.    No evidence has been produced in this action that prior to December

22  26, 1968, Led Zeppelin and Spirit ever performed at the same venue on the same

23  day.

24    26.    Attached to this Declaration as Exhibit 22 is a true and correct copy of

25  deposition exhibit 320 in this action.

26    27.    Attached to this Declaration as Exhibit 23 is a true and correct copy of

27  deposition exhibit 313 in this action.

28  ///

4

28.     Attached to this Declaration as Exhibit 24 is a true and correct copy of deposition exhibit 317 in this action.

29.     Attached to this Declaration as Exhibit 25 is a true and correct copy of excerpts from volume 2 of the book, *Atlantic Records, A Discography*, and which, by reference to the dated recording sessions preceding and following it, indicates that the recording of the album *Cartoone* occurred in early December 1968.

30.     No evidence has been produced in this action that Randy Wolfe, professionally known as Randy California, ever sued over the alleged copying of *Taurus* in *Stairway to Heaven*.

31.     No evidence has been produced in this action that Bernice Pearl, individually or on behalf of The Randy Craig Wolfe Trust, ever sued over the alleged copying of *Taurus* in *Stairway to Heaven*.

32.     At three minutes to midnight, Pacific Time, on February 10, 2014, plaintiff's counsel e-mailed to me and other counsel plaintiff's initial expert disclosures, including the report of his musicologist, Alexander Stewart.  A true and correct copy of that Report, without its exhibits and attachments, is attached as Exhibit 2 to the accompanying Declaration of Dr. Lawrence Ferrara.

33.     Neither Alexander Stewart's nor any other expert report submitted by plaintiff, mentions the musical transcription of *Taurus* that would have accompanied Hollenbeck Music's 1967 application to register a copyright in the *Taurus* musical composition.

34.     Neither Alexander Stewart's report nor any other expert report submitted by plaintiff, is based upon the musical transcription of *Taurus* that would have accompanied Hollenbeck Music's 1967 application to register a copyright in the *Taurus* musical composition.

35.     I attended the February 4, 2015 hearing in this action on defendants' motion to dismiss or transfer, before this action was transferred to this Court. Attached to this Declaration as Exhibit 26 are true and correct copies of pages from

5

1  the Reporter's Transcript of that hearing and which are cited in support of
2  defendants' Motion.

3      36.    In the course of this action, I have produced to plaintiff's counsel
4  documents, designated as confidential under the Protective Order in this case,
5  establishing that in 2012-14 and at substantial cost, Rhino Entertainment Co., with
6  the assistance of other defendants, arranged for the remastering and re-release of Led
7  Zeppelin recordings, including the *Led Zeppelin IV* album and *Stairway to Heaven*,
8  and plaintiff's counsel has not disputed the foregoing.

9      37.    No evidence has been produced in this action that John Paul Jones,
10  Super Hype Publishing, Inc., or Warner Music Group Corp. performed or distributed
11  *Stairway to Heaven* within the three years preceding plaintiff's filing of this action,
12  if at all.

13      I declare under penalty of perjury that the foregoing is true and correct.
14  Executed on February 25, 2016.

15

16                              ____/s/ Peter J. Anderson____
17                              PETER J. ANDERSON

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT 16

# Additional Certificate of Registration of a Claim to Copyright

This is to certify that the statements set forth in the attached have been made a part of the records of the Copyright Office with claim of copyright registered under number

In testimony whereof, the seal of this office is affixed hereto on

**EU 35222**

**July 15, 2014**

*Maria A. Pallante*

Register of Copyrights and
Associate Librarian for Copyright Services

**EXHIBIT 16**
221

*Complete all applicable spaces on next page*



**02638**

Page 1

## Application for Registration of a Claim to Copyright

**to a musical composition the author of which is a citizen or domiciliary of the United States of America or which was first published in the United States of America**

| FORM E | CLASS | REGISTRATION NO |
|---|---|---|
| | E | Eu 35222 |
| | | DO NOT WRITE HERE |

**Instructions:** Make sure that all applicable spaces have been completed before you submit the form. The application must be SIGNED at line 9. For published works the application should not be submitted until after the date of publication given at line 4(a), and should state the facts which existed on that date. For further information, see page 4.

Pages 1 and 2 should be typewritten or printed with pen and ink. Pages 3 and 4 should contain exactly the same information as pages 1 and 2, but may be carbon copies.

Mail all pages of the application to the Register of Copyrights, Library of Congress, Washington, D.C., 20540, together with:

(a) If unpublished, one complete copy of the work and the registration fee of $6.

(b) If published, two copies of the best edition of the work and the registration fee of $6.

Make your remittance payable to the Register of Copyrights.

**1. Copyright Claimant(s) and Address(es):** Give the name(s) and address(es) of the copyright owner(s). In the case of published works the name(s) should ordinarily be the same as in the notice of copyright on the copies deposited.

Name ...... Hollenbeck Music Co. ......

Address ...... 800 Stone Canyon Rd.     Bel Air, Calif. ......

Name ......

Address ......

**2. Title:** ...... Tauras ......
(Give the title of the musical composition as it appears on the copies)

**3. Authors:** Citizenship and domicile information must be given. Where a work is made for hire, the employer is the author. Organizations formed under U.S. Federal or State law are U.S. citizens.

Authors include composers of music, authors of words, arrangers, compilers, etc. If the copyright claim is based on new matter (see line 5) give information about the author of the new matter.

Name ...... Randy California ...... Citizenship: U.S.A. .... Other ......
(Give legal name followed by pseudonym if latter appears on the copies)     (Check if U.S. citizen)     (Name of country)

Domiciled in U.S.A. Yes X.. No .... Address ...... Los Angeles, Calif. ...... Author of ...... Music ......
(State which: words, music, arrangement, etc.)

Name ...... Citizenship: U.S.A. .... Other ......
(Give legal name followed by pseudonym if latter appears on the copies)     (Check if U.S. citizen)     (Name of country)

Domiciled in U.S.A. Yes .... No .... Address ...... Author of ......
(State which: words, music, arrangement, etc.)

Name ...... Citizenship: U.S.A. .... Other ......
(Give legal name followed by pseudonym if latter appears on the copies)     (Check if U.S. citizen)     (Name of country)

Domiciled in U.S.A. Yes .... No .... Address ...... Author of ......
(State which: words, music, arrangement, etc.)

➤➤ **NOTE:  Leave all spaces of line 4 blank unless your work has been PUBLISHED.** ◄◄

**4. (a) Date of Publication:** Give the date when copies of this particular version of the work were first placed on sale, sold, or publicly distributed. The date when copies were made or printed, or the date when the work was performed should not be confused with the date of publication. (NOTE: The full date (month, day, and year) must be given.)

...... ...... ......
(Month)     (Day)     (Year)

**(b) Place of Publication:** Give the name of the country in which this particular version of the work was first published.

......

➤➤ **NOTE:  Leave all spaces of line 5 blank unless the instructions below apply to your work.** ◄◄

**5. Previous Registration or Publication:** If a claim to copyright in any substantial part of this work was previously registered in the U.S. Copyright Office in unpublished form,

or if any substantial part of the work was previously published anywhere, give requested information.

Was work previously registered? Yes .... No .... Date of registration ...... Registration number ......

Was work previously published? Yes .... No .... Date of publication ...... Registration number ......

Is there any substantial NEW MATTER in this version? Yes .... No .... If your answer is "Yes," give a brief statement of the nature of the NEW MATTER in this version. (New matter may consist of compilation, translation, editorial revision, and the like, as well as additional words and music.)

**EXHIBIT 16**

222

*Complete all applicable spaces on next page*

**7. Name and address of person or organization to whom correspondence or refund, if any, should be sent:**

Name  Hollenbeck Music Co.          Address  800 Stone Canyon Rd. Bel A

**8. Send certificate to:**

(Type or
print
name and
address)

Name
> Hollenbeck Music Co.
>
> 800 Stone Canyon Rd.
> _____(Number and street)_____
>
> Bel Air, Calif.
> (City)          (State)          (ZIP code)

**9. Certification:**
(Application not
acceptable
unless signed)

I CERTIFY that the statements made by me in this application are correct to the best of my knowledge.

_____
(Signature of copyright claimant or duly authorized agent)

**Application Forms**

Copies of the following forms will be supplied by the Copyright Office without charge upon request.

Class A  Form A—Published book manufactured in the United States of America.

Class A   Form A-B Foreign—Book or periodical manufactured outside the United States of America (except works subject to
or B      the ad interim provisions of the copyright law).
          Form A-B Ad Interim—Book or periodical in the English language manufactured and first published outside the
          United States of America.

Class B   Form B—Periodical manufactured in the United States of America.
          Form BB—Contribution to a periodical manufactured in the United States of America.

Class C  Form C—Lecture or similar production prepared for oral delivery.

Class D  Form D—Dramatic or dramatico-musical composition.

Class E   Form E—Musical composition the author of which is a citizen or domiciliary of the United States of America or
          which was first published in the United States of America.
          Form E Foreign—Musical composition the author of which is not a citizen or domiciliary of the United States of
          America and which was not first published in the United States of America.

Class F  Form F—Map.

Class G  Form G—Work of art or a model or design for a work of art.

Class H  Form H—Reproduction of a work of art.

Class I  Form I—Drawing or plastic work of a scientific or technical character.

Class J  Form J—Photograph.

Class K   Form K—Print or pictorial illustration.
          Form KK—Print or label used for an article of merchandise.

Class L   Form L-M—Motion picture.
or M
          Form R—Renewal copyright.
          Form U—Notice of use of copyrighted music on mechanical instruments.

---

FOR COPYRIGHT OFFICE USE ONLY

Application received
FEB - 5 1968

One copy received
DEC 2 2 1967

Two copies received

Fee received
5/2/27   DEC 2 2 1967

Renewal
No  738-868

**EXHIBIT 16**
**223**  Page 3

U.S. GOVERNMENT PRINTING OFFICE

# EXHIBIT 17

Case 2:15-cv-03462-RGK-AGR   Document 97-11   Filed 02/25/16   Page 228 of 262   Page ID #:1581



# TAURUS

by Randy California

Eu 35222

EXHIBIT 17
224

02642

D040443

# EXHIBIT 18

Case 2:15-cv-03462-RGK-AGR   Document 97-11   Filed 02/25/16   Page 230 of 262   Page ID #15A3



Copyright ©1972 by SUPERHYPE MUSIC, INC., 1841 Broadway, New York, N.Y. 10023
International Copyright Secured    Printed in U.S.A.    All Rights Reserved

**EXHIBIT 18**
224

D000562

02644



1   Peter J. Anderson, Esq., Cal. Bar No. 88891
    E-Mail: pja@pjanderson.com
2   LAW OFFICES OF PETER J. ANDERSON
    A Professional Corporation
3   100 Wilshire Boulevard, Suite 2010
    Santa Monica, CA 90401
4   Tel: (310) 260-6030
    Fax: (310) 260-6040
5
    Attorneys for Defendants
6   JAMES PATRICK PAGE, ROBERT ANTHONY
    PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
7   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
    ATLANTIC RECORDING CORP., RHINO
8   ENTERTAINMENT COMPANY and WARNER
    MUSIC GROUP CORP.
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13   MICHAEL SKIDMORE, as Trustee for   )   Case No. 2:15-cv-03462 RGK (AGRx)
     the Randy Craig Wolfe Trust,       )
14                                       )
            Plaintiff,                    )
15                                       )   ANSWER OF DEFENDANTS
        vs.                              )   WARNER/CHAPPELL MUSIC,
16                                       )   INC., SUPER HYPE PUBLISHING,
     LED ZEPPELIN, JAMES PATRICK        )   INC., ATLANTIC RECORDING
17   PAGE, ROBERT ANTHONY PLANT,        )   CORP., RHINO ENTERTAINMENT
     JOHN PAUL JONES, SUPER HYPE        )   COMPANY and WARNER
18   PUBLISHING, INC., WARNER           )   MUSIC GROUP CORP.
     MUSIC GROUP CORP., parent of       )
19   WARNER/CHAPPELL MUSIC, INC.,       )
     ATLANTIC RECORDING               )
20   CORPORATION, RHINO                )
     ENTERTAINMENT COMPANY,             )
21                                       )
            Defendants.                   )
22                                       )
                                         )
23   _____ )

24

25

26

27

28

1    Defendants Super Hype Publishing, Inc., Warner Music Group Corp.,
2  Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino
3  Entertainment Company ("Defendants") respond to plaintiff Michael Skidmore's
4  First Amended Complaint as follows:

5                              **"PREAMBLE"**

6    1.    Answering paragraph 1 of the First Amended Complaint, Defendants
7  are without knowledge or information sufficient to form a belief as to the truth of the
8  allegations contained therein and, on that basis, deny the allegations contained
9  therein.

10    2.    Answering paragraph 2 of the First Amended Complaint, Defendants
11  are without knowledge or information sufficient to form a belief as to the truth of the
12  allegations contained therein and, on that basis, deny the allegations contained
13  therein.

14    3.    Answering paragraph 3 of the First Amended Complaint, Defendants
15  are without knowledge or information sufficient to form a belief as to the truth of the
16  allegations contained therein and, on that basis, deny the allegations contained
17  therein.

18    4.    Answering paragraph 4 of the First Amended Complaint, Defendants
19  are without knowledge or information sufficient to form a belief as to the truth of the
20  allegations contained therein and, on that basis, deny the allegations contained
21  therein.

22    5.    Answering paragraph 5 of the First Amended Complaint, Defendants
23  are without knowledge or information sufficient to form a belief as to the truth of the
24  allegations contained therein and, on that basis, deny the allegations contained
25  therein.

26    6.    Answering paragraph 6 of the First Amended Complaint, Defendants
27  admit that the recordings containing the musical composition *Stairway to Heaven*
28  were released to the public in 1971, and Defendants are without knowledge or

1

1   information sufficient to form a belief as to the truth of the remaining allegations
2   contained therein and, on that basis, deny the remaining allegations contained
3   therein.

4       7.      Answering paragraph 7 of the First Amended Complaint, Defendants
5   are without knowledge or information sufficient to form a belief as to the truth of the
6   allegations contained therein and, on that basis, deny the allegations contained
7   therein.

8       8.      Answering paragraph 8 of the First Amended Complaint, Defendants
9   are without knowledge or information sufficient to form a belief as to the truth of the
10  allegations contained therein and, on that basis, deny the allegations contained
11  therein.

12      9.      Answering paragraph 9 of the First Amended Complaint, Defendants
13  are without knowledge or information sufficient to form a belief as to the truth of the
14  allegations contained therein and, on that basis, deny the allegations contained
15  therein.

16      10.     Answering paragraph 10 of the First Amended Complaint, Defendants
17  admit that Anne Bredon, Willie Dixon, Chester Burnett, professionally known as
18  Howlin' Wolf, and Mrs. Valens are each credited on some musical compositions
19  recorded by the musical group Led Zeppelin, and that on occasion errors in
20  songwriter credits or disputed claims have been resolved, and Defendants are
21  without knowledge or information sufficient to form a belief as to the truth of the
22  remaining allegations contained therein and, on that basis, deny the remaining
23  allegations contained therein.

24      11.     Answering paragraph 11 of the First Amended Complaint, including the
25  First Amended Complaint's footnote 1, Defendants are without knowledge or
26  information sufficient to form a belief as to the truth of the allegations contained
27  therein and, on that basis, deny the allegations contained therein.

28  ///

1                           **"FACTS"**

2           **"Randy California is Discovered by Jimi Hendrix"**

3         12.    Answering paragraph 12 of the First Amended Complaint, Defendants

4 are without knowledge or information sufficient to form a belief as to the truth of the

5 allegations contained therein and, on that basis, deny the allegations contained

6 therein.

7         13.    Answering paragraph 13 of the First Amended Complaint, Defendants

8 are without knowledge or information sufficient to form a belief as to the truth of the

9 allegations contained therein and, on that basis, deny the allegations contained

10 therein.

11         14.    Answering paragraph 14 of the First Amended Complaint, Defendants

12 are without knowledge or information sufficient to form a belief as to the truth of the

13 allegations contained therein and, on that basis, deny the allegations contained

14 therein.

15         15.    Answering paragraph 15 of the First Amended Complaint, Defendants

16 are without knowledge or information sufficient to form a belief as to the truth of the

17 allegations contained therein and, on that basis, deny the allegations contained

18 therein.

19                    **"Formation of Spirit"**

20         16.    Answering paragraph 16 of the First Amended Complaint, Defendants

21 are without knowledge or information sufficient to form a belief as to the truth of the

22 allegations contained therein and, on that basis, deny the allegations contained

23 therein.

24         17.    Answering paragraph 17 of the First Amended Complaint, Defendants

25 are without knowledge or information sufficient to form a belief as to the truth of the

26 allegations contained therein and, on that basis, deny the allegations contained

27 therein.

28 ///

1       18.    Answering paragraph 18 of the First Amended Complaint, Defendants
2  are without knowledge or information sufficient to form a belief as to the truth of the
3  allegations contained therein and, on that basis, deny the allegations contained
4  therein.

5       19.    Answering paragraph 19 of the First Amended Complaint, Defendants
6  are without knowledge or information sufficient to form a belief as to the truth of the
7  allegations contained therein and, on that basis, deny the allegations contained
8  therein.

9           **"Creation of the Song 'Taurus'"**

10     20.    Answering paragraph 20 of the First Amended Complaint, Defendants
11  are without knowledge or information sufficient to form a belief as to the truth of the
12  allegations contained therein and, on that basis, deny the allegations contained
13  therein.

14     21.    Answering paragraph 21 of the First Amended Complaint, Defendants
15  are without knowledge or information sufficient to form a belief as to the truth of the
16  allegations contained therein and, on that basis, deny the allegations contained
17  therein.

18     **"Spirit and Randy Sign Songwriting & Recording Contracts"**

19     22.    Answering paragraph 22 of the First Amended Complaint, Defendants
20  are without knowledge or information sufficient to form a belief as to the truth of the
21  allegations contained therein and, on that basis, deny the allegations contained
22  therein.

23     23.    Answering paragraph 23 of the First Amended Complaint, Defendants
24  are without knowledge or information sufficient to form a belief as to the truth of the
25  allegations contained therein and, on that basis, deny the allegations contained
26  therein.

27     24.    Answering paragraph 24 of the First Amended Complaint, Defendants
28  are without knowledge or information sufficient to form a belief as to the truth of the

4

allegations contained therein and, on that basis, deny the allegations contained therein.

25.     Answering paragraph 25 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

26.     Answering paragraph 26 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

27.     Answering paragraph 27 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

28.     Answering paragraph 28 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

29.     Answering paragraph 29 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

30.     Answering paragraph 30 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

31.     Answering paragraph 31 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the

1  allegations contained therein and, on that basis, deny the allegations contained

2  therein.

3        32.    Answering paragraph 32 of the First Amended Complaint, Defendants

4  are without knowledge or information sufficient to form a belief as to the truth of the

5  allegations contained therein and, on that basis, deny the allegations contained

6  therein.

7        33.    Answering paragraph 33 of the First Amended Complaint, Defendants

8  are without knowledge or information sufficient to form a belief as to the truth of the

9  allegations contained therein and, on that basis, deny the allegations contained

10  therein.

11        34.    Answering paragraph 34 of the First Amended Complaint, Defendants

12  are without knowledge or information sufficient to form a belief as to the truth of the

13  allegations contained therein and, on that basis, deny the allegations contained

14  therein.

15                  **"Led Zeppelin was Opening Act for Spirit in 1968"**

16        35.    Answering paragraph 35 of the First Amended Complaint, Defendants

17  are without knowledge or information sufficient to form a belief as to the truth of the

18  allegations contained therein and, on that basis, deny the allegations contained

19  therein.

20        36.    Answering paragraph 36 of the First Amended Complaint, Defendants

21  are without knowledge or information sufficient to form a belief as to the truth of the

22  allegations contained therein and, on that basis, deny the allegations contained

23  therein.

24        37.    Answering paragraph 37 of the First Amended Complaint, Defendants

25  are without knowledge or information sufficient to form a belief as to the truth of the

26  allegations contained therein and, on that basis, deny the allegations contained

27  therein.

28  ///

02651

1        38.    Answering paragraph 38 of the First Amended Complaint, Defendants

2  are without knowledge or information sufficient to form a belief as to the truth of the

3  allegations contained therein and, on that basis, deny the allegations contained

4  therein.

5        39.    Answering paragraph 39 of the First Amended Complaint, Defendants

6  are without knowledge or information sufficient to form a belief as to the truth of the

7  allegations contained therein and, on that basis, deny the allegations contained

8  therein.

9                     **"Spirit Influenced Led Zeppelin and Jimmy Page"**

10        40.    Answering paragraph 40 of the First Amended Complaint, Defendants

11  are without knowledge or information sufficient to form a belief as to the truth of the

12  allegations contained therein and, on that basis, deny the allegations contained

13  therein.

14        41.    Answering paragraph 41 of the First Amended Complaint, Defendants

15  are without knowledge or information sufficient to form a belief as to the truth of the

16  allegations contained therein and, on that basis, deny the allegations contained

17  therein.

18        42.    Answering paragraph 42 of the First Amended Complaint, Defendants

19  are without knowledge or information sufficient to form a belief as to the truth of the

20  allegations contained therein and, on that basis, deny the allegations contained

21  therein.

22        43.    Answering paragraph 43 of the First Amended Complaint, Defendants

23  are without knowledge or information sufficient to form a belief as to the truth of the

24  allegations contained therein and, on that basis, deny the allegations contained

25  therein.

26        44.    Answering paragraph 44 of the First Amended Complaint, Defendants

27  are without knowledge or information sufficient to form a belief as to the truth of the

28  ///

7

1  allegations contained therein and, on that basis, deny the allegations contained
2  therein.

3       45.    Answering paragraph 45 of the First Amended Complaint, Defendants
4  are without knowledge or information sufficient to form a belief as to the truth of the
5  allegations contained therein and, on that basis, deny the allegations contained
6  therein.

7       46.    Answering paragraph 46 of the First Amended Complaint, Defendants
8  are without knowledge or information sufficient to form a belief as to the truth of the
9  allegations contained therein and, on that basis, deny the allegations contained
10 therein.

11      47.    Answering paragraph 47 of the First Amended Complaint, Defendants
12 admit that the album titled Led Zeppelin was recorded in or about October 1968 and
13 admit that the members of the musical group Led Zeppelin had no knowledge of
14 Spirit or Randy California at the time of the recording of that album, and Defendants
15 are without knowledge or information sufficient to form a belief as to the truth of the
16 remaining allegations contained therein and, on that basis, deny the remaining
17 allegations contained therein.

18      48.    Answering paragraph 48 of the First Amended Complaint, Defendants
19 are without knowledge or information sufficient to form a belief as to the truth of the
20 allegations contained therein and, on that basis, deny the allegations contained
21 therein.

22      49.    Answering paragraph 49 of the First Amended Complaint, Defendants
23 are without knowledge or information sufficient to form a belief as to the truth of the
24 allegations contained therein and, on that basis, deny the allegations contained
25 therein.

26      50.    Answering paragraph 50 of the First Amended Complaint, Defendants
27 are without knowledge or information sufficient to form a belief as to the truth of the
28 ///

8

1   allegations contained therein and, on that basis, deny the allegations contained
2   therein.

3   **"Jimmy Page & Robert Plant write 'Stairway to Heaven'"**

4   51.   Answering paragraph 51 of the First Amended Complaint, Defendants
5   are without knowledge or information sufficient to form a belief as to the truth of the
6   allegations contained therein and, on that basis, deny the allegations contained
7   therein.

8   52.   Answering paragraph 52 of the First Amended Complaint, Defendants
9   admit that Jimmy Page gave an interview to a reporter which was broadcast on
10  National Public Radio on or about June 2, 2003 in which he discussed, among other
11  things, the creation of *Stairway to Heaven* and that parts of what he said are
12  contained in an edited manner in paragraph 52 and that other parts are omitted, and
13  Defendants are without knowledge or information sufficient to form a belief as to
14  the truth of the remaining allegations contained therein and, on that basis, deny the
15  remaining allegations contained therein.

16  53.   Answering paragraph 53 of the First Amended Complaint, Defendants
17  are without knowledge or information sufficient to form a belief as to the truth of the
18  allegations contained therein and, on that basis, deny the allegations contained
19  therein.

20  54.   Answering paragraph 54 of the First Amended Complaint, Defendants
21  admit that recording of *Stairway to Heaven* began at Island Records' studio in
22  London, England, in December 1970 and was completed in 1971, and Defendants
23  are without knowledge or information sufficient to form a belief as to the truth of the
24  remaining allegations contained therein and, on that basis, deny the remaining
25  allegations contained therein.

26  55.   Answering paragraph 55 of the First Amended Complaint, Defendants
27  admit that *Stairway to Heaven* was released on an untitled album, commonly
28  referred to as Led Zeppelin IV, and Defendants are without knowledge or

9

1  information sufficient to form a belief as to the truth of the remaining allegations

2  contained therein and, on that basis, deny the remaining allegations contained

3  therein.

4      56.   Answering paragraph 56 of the First Amended Complaint, Defendants

5  admit that *Stairway to Heaven* is a famous song, and Defendants are without

6  knowledge or information sufficient to form a belief as to the truth of the remaining

7  allegations contained therein and, on that basis, deny the remaining allegations

8  contained therein.

9      57.   Answering paragraph 57 of the First Amended Complaint, Defendants

10  deny the allegations contained therein.

11      58.   Answering paragraph 58 of the First Amended Complaint, Defendants

12  deny the allegations contained therein.

13      59.   Answering paragraph 59 of the First Amended Complaint, Defendants

14  admit that copyright in the musical composition *Stairway to Heaven* was registered

15  on or about January 20, 1972, as Registration No. Eu 301137, and renewed on or

16  about January 5, 2000, Registration No. RE 819-939, and Defendants deny the

17  remaining allegations contained therein.

18  **"THE PARTIES"**

19  **"Michael Skidmore"**

20      60.   Answering paragraph 60 of the First Amended Complaint, Defendants

21  are without knowledge or information sufficient to form a belief as to the truth of the

22  allegations contained therein and, on that basis, deny the allegations contained

23  therein.

24      61.   Answering paragraph 61 of the First Amended Complaint, Defendants

25  are without knowledge or information sufficient to form a belief as to the truth of the

26  allegations contained therein and, on that basis, deny the allegations contained

27  therein.

28  ///

10

62.     Answering paragraph 62 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

63.     Answering paragraph 63 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

64.     Answering paragraph 64 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

65.     Answering paragraph 65 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

66.     Answering paragraph 66 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

**"Led Zeppelin"**

67.     Answering paragraph 67 of the First Amended Complaint, Defendants admit that the English rock band known as Led Zeppelin was formed in or about 1968 and its members were Jimmy Page, guitar, Robert Plant, lead singer, John Paul Jones, bass and keyboards, and John Bonham, drums, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

11

68.     Answering paragraph 68 of the First Amended Complaint, Defendants admit that the members of the rock band known as Led Zeppelin signed a recording contract with Atlantic Recording Corporation in or about 1968, that the Led Zeppelin albums released to the public include the albums titled or known as Led Zeppelin, Led Zeppelin II, Led Zeppelin III, Led Zeppelin IV, Houses of the Holy and Physical Graffiti, first released to the public in or about, respectively, 1969, 1969, 1970, 1971, 1973 and 1975, and that the albums achieved significant commercial success, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

69.     Answering paragraph 69 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

70.     Answering paragraph 70 of the First Amended Complaint, Defendants admit that nine studio albums released by Led Zeppelin reached the Billboard Top 10 in the United States, that six reached a number one ranking in the United States, that Led Zeppelin was inducted into the Rock and Roll Hall of Fame in 1995 and that a fragment from the Rock and Roll Hall of Fame biography is quoted in the paragraph, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

71.     Answering paragraph 71 of the First Amended Complaint, Defendants deny the allegations contained therein.

72.     Answering paragraph 72 of the First Amended Complaint, Defendants admit that Randy Wolfe has not been credited or paid as a writer of the musical composition *Stairway to Heaven*, and deny the remaining allegations contained therein, including denying that Randy Wolfe was entitled to credit or payment.

1    73.    Answering paragraph 73 of the First Amended Complaint, Defendants
2    deny the allegations contained therein.

3    74.    Answering paragraph 74 of the First Amended Complaint, Defendants
4    admit that the rock band known as Led Zeppelin publicly performed the musical
5    composition *Stairway to Heaven*, and Defendants are without knowledge or
6    information sufficient to form a belief as to the truth of the remaining allegations
7    contained therein and, on that basis, deny the remaining allegations contained
8    therein.

9    75.    Answering paragraph 75 of the First Amended Complaint, Defendants
10   deny the allegations contained therein.

11   76.    Answering paragraph 76 of the First Amended Complaint, Defendants
12   deny the allegations contained therein.

13                          **"James Patrick Page"**

14   77.    Answering paragraph 77 of the First Amended Complaint, Defendants
15   admit that Jimmy Page is, among other things, a guitarist, and was a founding
16   member of the rock band known as Led Zeppelin, and Defendants are without
17   knowledge or information sufficient to form a belief as to the truth of the remaining
18   allegations contained therein and, on that basis, deny the remaining allegations
19   contained therein.

20   78.    Answering paragraph 78 of the First Amended Complaint, Defendants
21   admit that Jimmy Page is credited as a writer of the musical composition *Stairway to*
22   *Heaven*, and Defendants are without knowledge or information sufficient to form a
23   belief as to the truth of the remaining allegations contained therein and, on that basis,
24   deny the remaining allegations contained therein.

25   79.    Answering paragraph 79 of the First Amended Complaint, Defendants
26   deny the allegations contained therein.

27   80.    Answering paragraph 80 of the First Amended Complaint, Defendants
28   admit that Randy Wolfe has not been credited or paid as a writer of the musical

1   composition *Stairway to Heaven*, and deny the remaining allegations contained

2   therein, including denying that Randy Wolfe was entitled to credit or payment.

3         81.    Answering paragraph 81 of the First Amended Complaint, Defendants

4   deny the allegations contained therein.

5         82.    Answering paragraph 82 of the First Amended Complaint, Defendants

6   admit that Jimmy Page, as a member of the rock band known as Led Zeppelin,

7   publicly performed the musical composition *Stairway to Heaven*, and Defendants

8   are without knowledge or information sufficient to form a belief as to the truth of the

9   remaining allegations contained therein and, on that basis, deny the remaining

10  allegations contained therein.

11        83.    Answering paragraph 83 of the First Amended Complaint, Defendants

12  deny the allegations contained therein.

13        84.    Answering paragraph 84 of the First Amended Complaint, Defendants

14  are without knowledge or information sufficient to form a belief as to the truth of the

15  allegations contained therein and, on that basis, deny the allegations contained

16  therein.

17        85.    Answering paragraph 85 of the First Amended Complaint, Defendants

18  deny the allegations contained therein.

19                  **"Robert Anthony Plant"**

20        86.    Answering paragraph 86 of the First Amended Complaint, Defendants

21  admit that Robert Plant is, among other things, a singer, and was a founding member

22  of the rock band known as Led Zeppelin, and Defendants are without knowledge or

23  information sufficient to form a belief as to the truth of the remaining allegations

24  contained therein and, on that basis, deny the remaining allegations contained

25  therein.

26        87.    Answering paragraph 87 of the First Amended Complaint, Defendants

27  admit that Robert Plant is credited as a writer of the musical composition *Stairway to*

28  *Heaven*, and Defendants are without knowledge or information sufficient to form a

14

1   belief as to the truth of the remaining allegations contained therein and, on that basis,

2   deny the remaining allegations contained therein.

3       88.     Answering paragraph 88 of the First Amended Complaint, Defendants

4   deny the allegations contained therein.

5       89.     Answering paragraph 89 of the First Amended Complaint, Defendants

6   deny the allegations contained therein.

7       90.     Answering paragraph 90 of the First Amended Complaint, Defendants

8   deny the allegations contained therein.

9       91.     Answering paragraph 91 of the First Amended Complaint, Defendants

10  admit that Robert Plant, as a member of the rock band known as Led Zeppelin,

11  publicly performed the musical composition *Stairway to Heaven*, and Defendants

12  are without knowledge or information sufficient to form a belief as to the truth of the

13  remaining allegations contained therein and, on that basis, deny the remaining

14  allegations contained therein.

15      92.     Answering paragraph 92 of the First Amended Complaint, Defendants

16  deny the allegations contained therein.

17      93.     Answering paragraph 93 of the First Amended Complaint, Defendants

18  are without knowledge or information sufficient to form a belief as to the truth of the

19  allegations contained therein and, on that basis, deny the allegations contained

20  therein.

21      94.     Answering paragraph 94 of the First Amended Complaint, Defendants

22  deny the allegations contained therein.

23                              **"John Paul Jones"**

24      95.     Answering paragraph 95 of the First Amended Complaint, Defendants

25  admit that John Paul Jones was a member and bass player in the rock band known as

26  Led Zeppelin, and Defendants are without knowledge or information sufficient to

27  form a belief as to the truth of the remaining allegations contained therein and, on

28  that basis, deny the remaining allegations contained therein.

15

1      96.    Answering paragraph 96 of the First Amended Complaint, Defendants
2  deny the allegations contained therein, including denying that *Stairway to Heaven*
3  infringes *Taurus*.

4      97.    Answering paragraph 97 of the First Amended Complaint, Defendants
5  deny the allegations contained therein.

6      98.    Answering paragraph 98 of the First Amended Complaint, Defendants
7  deny the allegations contained therein.

8      99.    Answering paragraph 99 of the First Amended Complaint, Defendants
9  admit that John Paul Jones, as a member of the rock band known as Led Zeppelin,
10  publicly performed the musical composition *Stairway to Heaven*, and Defendants
11  are without knowledge or information sufficient to form a belief as to the truth of the
12  remaining allegations contained therein and, on that basis, deny the remaining
13  allegations contained therein.

14      100.   Answering paragraph 100 of the First Amended Complaint, Defendants
15  deny the allegations contained therein.

16      101.   Answering paragraph 101 of the First Amended Complaint, Defendants
17  are without knowledge or information sufficient to form a belief as to the truth of the
18  allegations contained therein and, on that basis, deny the allegations contained
19  therein.

20      102.   Answering paragraph 102 of the First Amended Complaint, Defendants
21  deny the allegations contained therein.

22      **"Super Hype Publishing, Inc."**

23      103.   Answering paragraph 103 of the First Amended Complaint, Defendants
24  admit that Super Hype Publishing, Inc., is a music publishing company, and
25  Defendants are without knowledge or information sufficient to form a belief as to
26  the truth of the remaining allegations contained therein and, on that basis, deny the
27  remaining allegations contained therein.

28  ///

16

1    104.   Answering paragraph 104 of the First Amended Complaint, Defendants
2  deny the allegations contained therein.

3    105.   Answering paragraph 105 of the First Amended Complaint, Defendants
4  deny the allegations contained therein.

5    106.   Answering paragraph 106 of the First Amended Complaint, Defendants
6  deny the allegations contained therein.

7    107.   Answering paragraph 107 of the First Amended Complaint, Defendants
8  admit that in the past Super Hype Publishing, Inc., acted as a music publisher of the
9  musical composition *Stairway to Heaven*, Defendants deny that Super Hype
10 Publishing, Inc., currently, or at any time within the applicable statute of limitations,
11 exploited the musical composition *Stairway to Heaven*, and Defendants are without
12 knowledge or information sufficient to form a belief as to the truth of the remaining
13 allegations contained therein and, on that basis, deny the remaining allegations
14 contained therein.

15   108.   Answering paragraph 108 of the First Amended Complaint, Defendants
16 deny the allegations contained therein.

17   109.   Answering paragraph 109 of the First Amended Complaint, Defendants
18 admit the allegations contained therein.

19   110.   Answering paragraph 110 of the First Amended Complaint, Defendants
20 deny the allegations contained therein.

21   111.   Answering paragraph 111 of the First Amended Complaint, Defendants
22 deny the allegations contained therein.

23                    **"Warner Music Group Corp."**

24   112.   Answering paragraph 112 of the First Amended Complaint, Defendants
25 admit that Warner Music Group Corp. owns, directly or indirectly, record companies
26 and music publishing companies, and Defendants are without knowledge or
27 information sufficient to form a belief as to the truth of the remaining allegations
28 ///

17

1   contained therein and, on that basis, deny the remaining allegations contained
2   therein.

3       113.   Answering paragraph 113 of the First Amended Complaint, Defendants
4   admit that defendant Warner Music Group Corp. indirectly owns Warner/Chappell
5   Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company,
6   and Defendants are without knowledge or information sufficient to form a belief as
7   to the truth of the remaining allegations contained therein and, on that basis, deny
8   the remaining allegations contained therein.

9       114.   Answering paragraph 114 of the First Amended Complaint, Defendants
10  deny the allegations contained therein.

11      115.   Answering paragraph 115 of the First Amended Complaint, Defendants
12  deny the allegations contained therein.

13      116.   Answering paragraph 116 of the First Amended Complaint, Defendants
14  deny the allegations contained therein.

15      117.   Answering paragraph 117 of the First Amended Complaint, Defendants
16  admit the allegations contained therein.

17      118.   Answering paragraph 118 of the First Amended Complaint, Defendants
18  admit that Warner/Chappell Music, Inc., is, indirectly, a subsidiary of Warner Music
19  Group Corp., and Defendants are without knowledge or information sufficient to
20  form a belief as to the truth of the remaining allegations contained therein and, on
21  that basis, deny the remaining allegations contained therein.

22      119.   Answering paragraph 119 of the First Amended Complaint, Defendants
23  admit that Atlantic Recording Corporation is, indirectly, a subsidiary of Warner
24  Music Group Corp., and Defendants are without knowledge or information sufficient
25  to form a belief as to the truth of the remaining allegations contained therein and, on
26  that basis, deny the remaining allegations contained therein.

27      120.   Answering paragraph 120 of the First Amended Complaint, Defendants
28  admit that Rhino Entertainment Company is, indirectly, a subsidiary of Warner

18

1   Music Group Corp., and Defendants are without knowledge or information sufficient

2   to form a belief as to the truth of the remaining allegations contained therein and, on

3   that basis, deny the remaining allegations contained therein.

4       121.   Answering paragraph 121 of the First Amended Complaint, Defendants

5   deny the allegations contained therein.

6                  **"Warner/Chappell Music, Inc."**

7       122.   Answering paragraph 122 of the First Amended Complaint, Defendants

8   admit that Warner/Chappell Music, Inc., is a music publishing company, and

9   Defendants are without knowledge or information sufficient to form a belief as to

10  the truth of the remaining allegations contained therein and, on that basis, deny the

11  remaining allegations contained therein.

12      123.   Answering paragraph 123 of the First Amended Complaint, Defendants

13  admit that music publishing includes, but is not limited to, the acquisition of rights

14  to, and licensing of, musical compositions (as opposed to sound recordings) from

15  songwriters, composers or other rights holders, and Defendants are without

16  knowledge or information sufficient to form a belief as to the truth of the remaining

17  allegations contained therein and, on that basis, deny the remaining allegations

18  contained therein.

19      124.   Answering paragraph 124 of the First Amended Complaint, Defendants

20  admit that Warner/Chappell Music Publishing, Inc., is a prominent music publisher,

21  denies that it has offices in more than 40 countries, and Defendants are without

22  knowledge or information sufficient to form a belief as to the truth of the remaining

23  allegations contained therein and, on that basis, deny the remaining allegations

24  contained therein.

25      125.   Answering paragraph 125 of the First Amended Complaint, Defendants

26  admit that Warner/Chappell Music, Inc., currently publishes or administers musical

27  compositions from many composers or others, including Barry Gibb, Beyoncé,

28  Bruno Mars, Eric Clapton, Jay Z, Katy Perry, Madonna, Stephen Sondheim, T.I.,

19

1    Timbaland and Wayne Hector, past or current members of fun., Gamble & Huff,
2    Green Day, Muse, Radiohead, Red Hot Chili Peppers, R.E.M. and Led Zeppelin, and
3    Lionsgate Films, Miramax Films and Roc Nation, and Defendants are without
4    knowledge or information sufficient to form a belief as to the truth of the remaining
5    allegations contained therein and, on that basis, deny the remaining allegations
6    contained therein.

7          126.   Answering paragraph 126 of the First Amended Complaint, Defendants
8    deny the allegations contained therein.

9          127.   Answering paragraph 127 of the First Amended Complaint, Defendants
10   admit that Warner/Chappell Music, Inc., administers the musical composition
11   *Stairway to Heaven*, and Defendants are without knowledge or information
12   sufficient to form a belief as to the truth of the remaining allegations contained
13   therein and, on that basis, deny the remaining allegations contained therein.

14         128.   Answering paragraph 128 of the First Amended Complaint, Defendants
15   deny the allegations contained therein.

16         129.   Answering paragraph 129 of the First Amended Complaint, Defendants
17   admit that Warner/Chappell Music, Inc., is, indirectly, a subsidiary of Warner Music
18   Group Corp., and Defendants are without knowledge or information sufficient to
19   form a belief as to the truth of the remaining allegations contained therein and, on
20   that basis, deny the remaining allegations contained therein.

21         130.   Answering paragraph 130 of the First Amended Complaint, Defendants
22   admit that Warner/Chappell Music, Inc., is, indirectly, a subsidiary of Warner Music
23   Group Corp., and Defendants are without knowledge or information sufficient to
24   form a belief as to the truth of the remaining allegations contained therein and, on
25   that basis, deny the remaining allegations contained therein.

26         131.   Answering paragraph 131 of the First Amended Complaint, Defendants
27   deny the allegations contained therein.
28   ///

20

1      132.   Answering paragraph 132 of the First Amended Complaint, Defendants

2  admit the allegations contained therein.

3      133.   Answering paragraph 133 of the First Amended Complaint, Defendants

4  deny the allegations contained therein.

5             **"Atlantic Recording Corporation"**

6      134.   Answering paragraph 134 of the First Amended Complaint, Defendants

7  admit that Atlantic Recording Corporation is a record company engaged in the

8  business of creating and manufacturing sound recordings, and Defendants are

9  without knowledge or information sufficient to form a belief as to the truth of the

10  remaining allegations contained therein and, on that basis, deny the remaining

11  allegations contained therein.

12      135.   Answering paragraph 135 of the First Amended Complaint, Defendants

13  admit that decades ago the members of the rock band known as Led Zeppelin

14  delivered to Atlantic Recording Corporation sound recordings of their performances

15  and that Atlantic Recording Corporation has caused albums including those sound

16  recordings to be released to the public, and Defendants are without knowledge or

17  information sufficient to form a belief as to the truth of the remaining allegations

18  contained therein and, on that basis, deny the remaining allegations contained

19  therein.

20      136.   Answering paragraph 136 of the First Amended Complaint, Defendants

21  admit that over 40 years ago Atlantic Recording Corporation caused the album

22  known as Led Zeppelin IV to be released to the public, admit that the recordings on

23  that album included the performance of the musical composition *Stairway to*

24  *Heaven*, Defendants deny that the *Stairway to Heaven* musical composition and

25  sound recording, or either of them, infringe a copyright in *Taurus*, and Defendants

26  are without knowledge or information sufficient to form a belief as to the truth of the

27  remaining allegations contained therein and, on that basis, deny the remaining

28  allegations contained therein.

137.   Answering paragraph 137 of the First Amended Complaint, Defendants admit the allegations contained therein.

138.   Answering paragraph 138 of the First Amended Complaint, Defendants admit that Atlantic Recording Corporation owns master recordings of *Stairway to Heaven*, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

139.   Answering paragraph 139 of the First Amended Complaint, Defendants admit that Atlantic Records was a record company founded in 1947 by Ahmet Ertegun and Herb Abramson, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

140.   Answering paragraph 140 of the First Amended Complaint, Defendants admit that Atlantic Recording Corporation is a prominent record company whose recording artists have included Ray Charles, Aretha Franklin, John Coltrane and the members of Led Zeppelin, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

141.   Answering paragraph 141 of the First Amended Complaint, Defendants admit that Atlantic Recording Corporation is a prominent record company with artists including Bruno Mars, Flo Rida, Wiz Khalifa, B.o.B., Trey Songz, Portugal. The Man, Halestorm, James Blunt, Jason Mraz and Lupe Fiasco, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

142.   Answering paragraph 142 of the First Amended Complaint, Defendants deny the allegations contained therein.

///

22

143.   Answering paragraph 143 of the First Amended Complaint, Defendants admit that the performance of the musical composition *Stairway to Heaven* is included in recordings that Atlantic Recording Corporation has caused to be made and distributed to the public, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

144.   Answering paragraph 144 of the First Amended Complaint, Defendants admit the allegations contained therein.

145.   Answering paragraph 145 of the First Amended Complaint, Defendants admit that Atlantic Recording Corporation is, indirectly, a subsidiary of Warner Music Group Corp., and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

146.   Answering paragraph 146 of the First Amended Complaint, Defendants admit that Atlantic Recording Corporation is, indirectly, a subsidiary of Warner Music Group Corp., and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

147.   Answering paragraph 147 of the First Amended Complaint, Defendants admit the allegations contained therein.

148.   Answering paragraph 148 of the First Amended Complaint, Defendants deny the allegations contained therein.

**"Rhino Entertainment Company"**

149.   Answering paragraph 149 of the First Amended Complaint, Defendants admit that Rhino Entertainment Company exploits and develops the catalog of Warner Music Group Corp.'s record labels, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations ///

23

1   contained therein and, on that basis, deny the remaining allegations contained
2   therein.

3       150.   Answering paragraph 150 of the First Amended Complaint, Defendants
4   deny the allegations contained therein.

5       151.   Answering paragraph 151 of the First Amended Complaint, Defendants
6   admit that the performance of the musical composition *Stairway to Heaven* is
7   included in recordings that Rhino Entertainment Company has caused to be made
8   and distributed to the public, and Defendants are without knowledge or information
9   sufficient to form a belief as to the truth of the remaining allegations contained
10  therein and, on that basis, deny the remaining allegations contained therein.

11      152.   Answering paragraph 152 of the First Amended Complaint, Defendants
12  admit the allegations contained therein.

13      153.   Answering paragraph 153 of the First Amended Complaint, Defendants
14  admit that Rhino Entertainment Company is, indirectly, a subsidiary of Warner
15  Music Group Corp., and Defendants are without knowledge or information sufficient
16  to form a belief as to the truth of the remaining allegations contained therein and, on
17  that basis, deny the remaining allegations contained therein.

18      154.   Answering paragraph 154 of the First Amended Complaint, Defendants
19  admit that Rhino Entertainment Company is, indirectly, a subsidiary of Warner
20  Music Group Corp., and Defendants are without knowledge or information sufficient
21  to form a belief as to the truth of the remaining allegations contained therein and, on
22  that basis, deny the remaining allegations contained therein.

23      155.   Answering paragraph 155 of the First Amended Complaint, Defendants
24  admit the allegations contained therein.

25      156.   Answering paragraph 156 of the First Amended Complaint, Defendants
26  deny the allegations contained therein.

27      157.   Answering paragraph 157 of the First Amended Complaint, Defendants
28  deny the allegations contained therein.

1    158.   Answering paragraph 158 of the First Amended Complaint, Defendants

2  admit that plaintiff purports to state the meaning of his references to Defendants or

3  acts by Defendants, and Defendants are without knowledge or information sufficient

4  to form a belief as to the truth of the remaining allegations contained therein and, on

5  that basis, deny the remaining allegations contained therein.

6                          **"JURISDICTION AND VENUE"**

7    159.   Answering paragraph 159 of the First Amended Complaint, Defendants

8  incorporate by reference their responses to paragraphs 1 through 158 as if set forth

9  herein in full.

10    160.   Answering paragraph 160 of the First Amended Complaint, Defendants

11  deny the allegations contained therein.

12    161.   Answering paragraph 161 of the First Amended Complaint, Defendants

13  admit that plaintiff contends that subject matter jurisdiction lies under 28 U.S.C.

14  Sections 1331 and 1338 by virtue of plaintiff's assertion of claims under the

15  Copyright Act of 1976, 17 U.S.C. Sections 101 *et seq.*; and Defendants are without

16  knowledge or information sufficient to form a belief as to the truth of the remaining

17  allegations contained therein and, on that basis, deny the remaining allegations

18  contained therein.

19    162.   Answering paragraph 162 of the First Amended Complaint, Defendants

20  deny the allegations contained therein.

21    **"This Court Has Specific Jurisdiction Because Defendants Have Targeted**

22      **This District for Sales of the Infringing Song 'Stairway to Heaven'"**

23    163.   Answering paragraph 163 of the First Amended Complaint, Defendants

24  deny the allegations contained therein.

25    164.   Answering paragraph 164 of the First Amended Complaint, Defendants

26  deny the allegations contained therein.

27  ///

28  ///

25

1    **"This Court Has General Jurisdiction Because Defendants Exploit this**

2       **District and its Residents to Sell, Promote, Advertise, Perform, and**

3       **Merchandise their Music, Making Millions of Dollars in the Process"**

4          165.   Answering paragraph 165 of the First Amended Complaint, Defendants

5    deny the allegations contained therein.

6          166.   Answering paragraph 166 of the First Amended Complaint, Defendants

7    deny the allegations contained therein.

8          167.   Answering paragraph 167 of the First Amended Complaint, Defendants

9    are without knowledge or information sufficient to form a belief as to the truth of the

10   allegations contained therein and, on that basis, deny the allegations contained

11   therein.

12         168.   Answering paragraph 168 of the First Amended Complaint, Defendants

13   deny the allegations contained therein.

14         **"Venue Is Appropriate in the Eastern District of Pennsylvania"**

15         169.   Answering paragraph 169 of the First Amended Complaint, Defendants

16   deny the allegations contained therein.

17         170.   Answering paragraph 170 of the First Amended Complaint, Defendants

18   are without knowledge or information sufficient to form a belief as to the truth of the

19   allegations contained therein and, on that basis, deny the allegations contained

20   therein.

21         171.   Answering paragraph 171 of the First Amended Complaint, Defendants

22   deny the allegations contained therein.

23                        **"CAUSES OF ACTION"**

24              **"Count I – Direct Copyright Infringement"**

25         172.   Answering paragraph 172 of the First Amended Complaint, Defendants

26   incorporate by reference their responses to paragraphs 1 through 171 as if set forth

27   herein in full.

28   ///

26

173. Answering paragraph 173 of the First Amended Complaint, the allegations contained therein are legal conclusions and no response is required, and, in any event, the legal conclusions are not a correct statement of the applicable law, and, accordingly, Defendants deny the allegations contained therein.

174. Answering paragraph 174 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

175. Answering paragraph 175 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

176. Answering paragraph 176 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

177. Answering paragraph 177 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

178. Answering paragraph 178 of the First Amended Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, deny the allegations contained therein.

179. Answering paragraph 179 of the First Amended Complaint, Defendants deny the allegations contained therein.

180. Answering paragraph 180 of the First Amended Complaint, Defendants deny the allegations contained therein.

27

1     181.   Answering paragraph 181 of the First Amended Complaint, Defendants

2     deny the allegations contained therein.

3     182.   Answering paragraph 182 of the First Amended Complaint, Defendants

4     admit that the musical composition *Stairway to Heaven* is available to the public,

5     Defendants deny that *Stairway to Heaven* exploits Taurus and deny that permission

6     of plaintiff is required in order to exploit *Stairway to Heaven*, and Defendants are

7     without knowledge or information sufficient to form a belief as to the truth of the

8     remaining allegations contained therein and, on that basis, deny the remaining

9     allegations contained therein.

10    183.   Answering paragraph 183 of the First Amended Complaint, Defendants

11    deny the allegations contained therein, including denying that *Stairway to Heaven*

12    infringes a copyright in *Taurus*.

13    184.   Answering paragraph 184 of the First Amended Complaint, Defendants

14    deny that *Stairway to Heaven* infringes a copyright in *Taurus*, and Defendants are

15    without knowledge or information sufficient to form a belief as to the truth of the

16    remaining allegations contained therein and, on that basis, deny the remaining

17    allegations contained therein.

18    185.   Answering paragraph 185 of the First Amended Complaint, Defendants

19    admit that Jimmy Page gave an interview to a reporter which was broadcast on

20    National Public Radio on or about June 2, 2003 in which he discussed, among other

21    things, the creation of *Stairway to Heaven* and that parts of what he said are

22    contained in an edited manner in paragraph 52 and that other parts are omitted, and

23    Defendants are without knowledge or information sufficient to form a belief as to

24    the truth of the remaining allegations contained therein and, on that basis, deny the

25    remaining allegations contained therein.

26    186.   Answering paragraph 186 of the First Amended Complaint, Defendant

27    deny the allegations contained therein.

28    ///

28

**"Count II – Contributory Copyright Infringement"**

187.   Answering paragraph 187 of the First Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 186 as if set forth herein in full.

188.   Answering paragraph 188 of the First Amended Complaint, the allegations contained therein are legal conclusions and no response is required, and, in any event, the legal conclusions are not a correct statement of the applicable law, and, accordingly, Defendants deny the allegations contained therein.

189.   Answering paragraph 189 of the First Amended Complaint, Defendants deny the allegations contained therein, including denying that *Stairway to Heaven* infringes a copyright in *Taurus*.

190.   Answering paragraph 190 of the First Amended Complaint, Defendants admit that the musical composition *Stairway to Heaven* is available to the public, Defendants deny that *Stairway to Heaven* exploits Taurus and deny that permission of plaintiff is required in order to exploit *Stairway to Heaven*, and Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein and, on that basis, deny the remaining allegations contained therein.

**"Count III – Vicarious Copyright Infringement"**

191.   Answering paragraph 191 of the First Amended Complaint, Defendants incorporate by reference their responses to paragraphs 1 through 190 as if set forth herein in full.

192.   Answering paragraph 192 of the First Amended Complaint, the allegations contained therein are legal conclusions and no response is required, and, in any event, the legal conclusions are not a correct statement of the applicable law, and, accordingly, Defendants deny the allegations contained therein.

193.   Answering paragraph 193 of the First Amended Complaint, Defendants deny the allegations contained therein.

29

1    194.   Answering paragraph 194 of the First Amended Complaint, Defendants

2    deny the allegations contained therein.

3    195.   Answering paragraph 195 of the First Amended Complaint, Defendants

4    admit that the musical composition *Stairway to Heaven* is available to the public,

5    Defendants deny that *Stairway to Heaven* exploits Taurus and deny that permission

6    of plaintiff is required in order to exploit *Stairway to Heaven*, and Defendants are

7    without knowledge or information sufficient to form a belief as to the truth of the

8    remaining allegations contained therein and, on that basis, deny the remaining

9    allegations contained therein.

10               **"Count IV – Right of Attribution – Equitable Relief**

11                    **Falsification of Rock N' Roll History"**

12    196.   Answering paragraph 196 of the First Amended Complaint, Defendants

13    incorporate by reference their responses to paragraphs 1 through 195 as if set forth

14    herein in full.

15    197.   Answering paragraph 197 of the First Amended Complaint, Defendants

16    deny the allegations contained therein.

17    198.   Answering paragraph 198 of the First Amended Complaint, Defendants

18    deny the allegations contained therein.

19    199.   Answering paragraph 199 of the First Amended Complaint, Defendants

20    admit that for over 42 years Randy California has not been credited as a writer of the

21    musical composition *Stairway to Heaven*, deny that Randy Wolfe was entitled to

22    credit in connection with *Stairway to Heaven* and deny that all Defendants exploit

23    *Stairway to Heaven*, and Defendants are without knowledge or information

24    sufficient to form a belief as to the truth of the remaining allegations contained

25    therein and, on that basis, deny the remaining allegations contained therein.

26    200.   Answering paragraph 200 of the First Amended Complaint, Defendants

27    deny the allegations contained therein.

28    ///

201.   Answering paragraph 201 of the First Amended Complaint, Defendants deny the allegations contained therein, including denying that Randy Wolfe had a role in creating *Stairway to Heaven*.

202.   Answering paragraph 202 of the First Amended Complaint, Defendants deny the allegations contained therein.

## FIRST AFFIRMATIVE DEFENSE[1]

### (Failure to State a Claim)

203.   Plaintiff's First Amended Complaint fails to state a claim against Defendants upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Independent Creation)

204.   The musical composition and sound recordings of which plaintiff complains were created independently from and without knowledge of plaintiff's claimed work.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Copyrightable Subject Matter)

205.   Plaintiff's claimed work, or the portions thereof allegedly copied, or both, are not copyrightable subject matter.

## FOURTH AFFIRMATIVE DEFENSE

### (Failure to Comply with Copyright Act Formalities)

206.   Plaintiff's claims and/or remedies plaintiff seek are barred by the failure to comply with the Copyright Act of 1909, 17 U.S.C. §§ 1 *et seq.*, and/or the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including but not limited to 17 U.S.C. §§ 10, 11, 13, 401 and 408, and each of them.

///

---

[1]    To the extent that the burden of proof of any matter raised or mentioned in the following defenses lies with plaintiffs, or any of them, Defendants raise the defense out of an abundance of caution and do not thereby assume that burden of proof.

31

02676

### FIFTH AFFIRMATIVE DEFENSE

#### (Alleged Infringement De Minimis)

207.   Without admitting the use of any copyrighted material allegedly owned by the trust on whose behalf plaintiff purports to sue, the alleged use is de minimis.

### SIXTH AFFIRMATIVE DEFENSE

#### (Fair Use)

208.   Without admitting the alleged use of copyrighted material allegedly owned by the trust on whose behalf plaintiff purports to sue, the conduct of which plaintiff complains constitutes fair use.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Failure to Join Indispensable Parties)

209.   Plaintiff has failed to join indispensable parties, without which the case is properly dismissed.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Lack of Causation)

210.   Without in any way admitting any of the allegations contained in the First Amended Complaint, the alleged use of the musical composition *Taurus* work did not proximately cause any of the alleged damages and/or did not proximately result in any of the alleged profits.

### NINTH AFFIRMATIVE DEFENSE

#### (Laches)

211.   Plaintiff's claims and/or remedies plaintiffs seek are barred by the doctrine of laches.

### TENTH AFFIRMATIVE DEFENSE

#### (Statutes of Limitation)

212.   Plaintiff's claims, and each of them, are barred by the applicable statutes of limitation, including but not limited to 17 U.S.C. Section 507(b).

///

32

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Abandonment)**

213.   Plaintiff, plaintiff's predecessors, Randy Wolfe and/or the owners of the copyright in the musical composition *Taurus*, abandoned any copyright in the allegedly-infringed work.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Waiver)**

214.   Plaintiff's claims and/or remedies plaintiff seeks are barred by the doctrine of waiver.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(License)**

215.   Without admitting the use of any copyrighted material allegedly owned by plaintiff, the conduct of which he complains was impliedly and/or expressly licensed.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

216.   Plaintiff's claims are barred by the doctrine of estoppel.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Ratification)**

217.   Without admitting any infringement, plaintiff, plaintiff's predecessors, Randy Wolfe and/or the owners of the copyright in the musical composition *Taurus* ratified the conduct of which plaintiff complains.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Standing)**

218.   Plaintiff does not have standing to assert the claims he asserts.

///

///

///

33

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

219.    Plaintiff'' claims and/or the relief plaintiff seeks, or both, are barred by the doctrine of unclean hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Innocent Infringement)

220.    Without admitting any infringement, which is denied, the alleged infringements were innocent.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Preemption)

221.    Plaintiff's purported fourth claim for relief is preempted by the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including but not limited to 17 U.S.C. § 301(a).

Defendants reserve the right to assert additional affirmative defenses if discovery or Defendants' investigation reveals grounds for the assertion of the additional defenses, including without limitation affirmative defenses that are referenced in Rule 8(c) of the Federal Rules of Civil Procedure or are otherwise available under applicable law.

## PRAYER

**WHEREFORE,** defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company, pray for Judgment as follows:

1.      That plaintiff take nothing by way of his First Amended Complaint and that the First Amended Complaint be dismissed;

///

///

///

///

34

1      2.      That Defendants be awarded their costs and attorneys' fees; and

2      3.      For such other and further relief as the Court deems just and proper.

3

4  Dated: May 20, 2015

5

                       /s/ Peter J. Anderson
                       Peter J. Anderson, Esq.

6            LAW OFFICES OF PETER J. ANDERSON
                A Professional Corporation

7              Attorney for Defendants
            JAMES PATRICK PAGE, ROBERT

8         ANTHONY PLANT, JOHN PAUL JONES,
           WARNER/CHAPPELL MUSIC, INC.,

9          SUPER HYPE PUBLISHING, INC.,
     ATLANTIC RECORDING CORP., RHINO

10       ENTERTAINMENT COMPANY and
         WARNER MUSIC GROUP CORP.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35