# Nos. 16-56057 & 16-56287

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

―――――――――

## MICHAEL SKIDMORE,

### AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST

#### PLAINTIFF, APPELLANT AND APPELLEE

vs.

## LED ZEPPELIN, *ET AL.*

#### DEFENDANTS AND APPELLEES
#### AND

## WARNER/CHAPPELL MUSIC, INC.,

#### DEFENDANT, APPELLEE AND APPELLANT

―――――――――

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO.15-cv-03462 RGK (AGRx)

―――――――――

## SUPPLEMENTAL EXCERPTS OF RECORD – VOL. 1

―――――――――

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON,
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE *ET AL.* AND
DEFENDANT, APPELLEE AND APPELLANT
WARNER/CHAPPELL MUSIC, INC.

HELENE M. FREEMAN, ESQ.
PHILLIPS NIZER LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0084
TEL: (212) 977-9700
ATTORNEY FOR DEFENDANTS AND APPELLEES
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT AND JOHN PAUL JONES

**INDEX**

**Supplemental Excerpts of Record – Volume 1**

| Tab | Date | Document | Dkt. No. | Page |
|-----|------|----------|----------|------|
| 1 | 9/6/16 | Warner/Chappell Notice of Appeal | 313 | 1 |
| 2 | 8/8/16 | Order Denying Motion for Attorney's Fees and Additional Costs | 312 | 3 |
| 3 | 7/25/16 | Warner/Chappell Reply in Support of Motion for Additional Costs | 307 | 8 |
| 4 | 7/25/16 | Warner/Chappell Reply in support of Motion for Attorney's Fees | 306/ 306-1 | 11 |
| 5 | 7/18/16 | Plaintiff's Opposition to Motion for Costs and Motion for Fees | 298 | 24 |
| 6 | 7/18/16 | Malofiy Declaration in Opposition to Motion for Costs and Fees (excerpt) | 299 | 47 |
| 7 | 7/18/16 | Skidmore Declaration Opposing Motion for Costs and Fees | 300 | 50 |
| 8 | 7/18/16 | Fluehr Declaration in Opposition to Motions for Costs and Fees | 301 | 54 |
| 9 | 7/7/16 | Warner/Chappell Notice of Motion & Motion for Attorneys' Fees, Memorandum in support (except) | 293 | 63 |
| 10 | 7/7/16 | Memorandum in support of Motion for Attorneys' Fees (excerpt) | 293-1 | 66 |
| 11 | 7/7/16 | Anderson Declaration in support of Motion for Attorney's Fees (excerpts) | 293-2, 293-3 | 88 |
| 12 | 7/7/16 | Warner/Chappell Notice of Motion & Motion for Additional Costs | 295 | 159 |

i

| Tab | Date | Document | Dkt. No. | Page |
|-----|------|----------|----------|------|
| 13 | 7/7/16 | Memorandum and Declaration in support of Motion for Additional Costs (excerpt) | 295-1 | 162 |
| 14 | 6/20/16 | Defendants' Objections to Plaintiff's Trial Conduct | 252 | 170 |
| 15 | 6/15/16 | Declaration *re* Plaintiff's Altered Exhibit 535 | 291 | 178 |
| 16 | 6/14/16 | Plaintiff's Supplemental Exhibit List (part 1) | 242 | 188 |

### Supplemental Excerpts of Record – Volume 2

| | 6/14/16 | Plaintiff's Supplemental Exhibit List (part 2) | 242 | 301 |

### Supplemental Excerpts of Record – Volume 3

| 17 | 6/7/16 | Defendants' Trial Brief and Declaration (excerpts) | 223, 223-1 | 571 |
| 18 | 4/21/16 | Defendants' Reply in support of Motion *in Limine* No. 8 *re* use of Trust's funds | 188 | 607 |
| 19 | 4/15/16 | Plaintiff's Opposition to Motion *in Limine* No. 8 *re* use of Trust's funds | 168 | 610 |
| 20 | 3/25/16 | Defendants' Motion *in Limine* No. 8 *re* use of Trust's funds | 141 | 615 |

| Tab | Date | Document | Dkt. No. | Page |
|-----|------|----------|----------|------|
| 21 | 2/25/16 | Anderson Declaration in support of Defendants' Motion for Summary Judgment (excerpt) | 97-10 | 623 |

# Tab 1

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the Randy Craig Wolfe Trust, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | WARNER/CHAPPELL MUSIC, INC.'S NOTICE OF APPEAL |
| LED ZEPPELIN, JAMES PATRICK PAGE, ROBERT ANTHONY PLANT, JOHN PAUL JONES, SUPER HYPE PUBLISHING, INC., WARNER MUSIC GROUP CORP., parent of WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING CORPORATION, RHINO ENTERTAINMENT COMPANY, | |
| Defendants. | |

1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that defendant Warner/Chappell Music, Inc., hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Order (Document 312) entered in this action on August 8, 2016, denying defendant Warner/Chappell Music, Inc.'s Motion for Award of Attorneys' Fees and Motion for Award of Additional Costs.  A copy of the foregoing Order and the Representation Statement required by Circuit Rule 3-2 are attached to this Notice of Appeal.

   The appeal of the plaintiff in this action is presently pending before the Court of Appeals for the Ninth Circuit and docketed as No. 16-56057.

Respectfully Submitted,

Dated: September 6, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

2

# Tab 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 15-03462 RGK (AGRx)** | Date | August 8, 2016 |
|---|---|---|---|
| Title | ***Michael Skidmore v. Led Zeppelin et al.*** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) Order re: Defendants' Motion for Attorney's Fees (DE 293) and Costs (DE 295)**

## I.    INTRODUCTION

On May 31, 2014, Michael Skidmore, as trustee for the Randy Craig Wolfe Trust ("Plaintiff") filed suit against Led Zeppelin, James Patrick Page, Robert Anthony Plant, John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp., which is the parent company of Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company ("Defendants"). On October 8, 2014, Plaintiff filed a First Amended Complaint ("FAC"). The FAC claims that Defendants' song, *Stairway to Heaven*, infringes another song, *Taurus*, created by the rock band Spirit. The lawsuit alleges: (1) Copyright Infringement and (2) Violation of the Right of Attribution.

On April 8, 2016, this Court issued an Order granting summary judgment in favor of Defendants on the right of attribution claim but denying summary judgment on the copyright infringement claim. The case proceeded to trial, and on June 23, 2016, a jury returned a verdict in favor of Defendants, finding that they had not infringed Plaintiff's copyright in the song *Taurus*.

Presently before the Court are Defendant Warner/Chappell Music, Inc.'s Motions for Attorney's Fees and Costs. Defendant seeks $613,471 in attorney's fees and $179,699.06 in costs. For the following reasons, the Court **DENIES** Defendant's Motions.

## II.    JUDICIAL STANDARD

Attorney fees are generally not recoverable unless they are provided for by statute or enforceable contract. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 241 (1975). Under Federal Rule of Civil Procedure 54(d)(2)(A), "claims for attorneys' fees . . . shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Fed. R. Civ. P. 54(d)(2)(A). In a motion for attorney fees, the moving party bears the burden of establishing entitlement to an award and documenting the appropriate rates and hours. *See*

3

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As a result, an award of attorney fees is within the court's discretion and will not be disturbed absent abuse of that discretion. *See Intel Corp. v. Terabyte Int'l., Inc.*, 6 F.3d 614, 621 (9th Cir. 1993).

## III.    DISCUSSION

Defendant seeks attorney's fees and costs under the Copyright Act, which states that "the court in its discretion may allow the recovery of full costs . . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996). Recently, the Supreme Court has cautioned lower courts to avoid treating objective reasonableness as the controlling factor; instead, the Court explained, "district courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

As recited above, "[t]he Ninth Circuit has invited district courts to consider five factors when determining whether to award fees in copyright cases. Those factors are: (1) 'the degree of success obtained on the claim'; (2) 'frivolousness'; (3) 'motivation'; (4) 'objective reasonableness of factual and legal arguments'; and (5) 'need for compensation and deterrence.'" *Nutrivita Labs., Inc. v. VBS Distribution Inc.*, No. CV-1301635, 2016 WL 595834, at *4 (C.D. Cal. Jan. 27, 2016). Defendant also urges the Court to consider Plaintiff's litigation misconduct. The Court considers all these factors below.

### A.    **Degree of Success**

Defendant prevailed on the merits at trial, and Plaintiff has not disputed that this factor weighs in Defendant's favor. Therefore, the degree of success favors granting attorney's fees.

### B.    **Frivolousness/Objective Reasonableness**

Defendant maintains that the lawsuit was frivolous and objectively unreasonable from its inception because Plaintiff "relied on public domain material and performance elements not protected by the *Taurus* copyright." (Def.'s Reply ISO Mot. Atty. Fees 8:10-11, ECF No. 306.) The Court disagrees. Plaintiff survived a motion for summary judgment, meaning that this Court considered the merits of the claim and determined that sufficient evidence existed to proceed to trial. Furthermore, at trial, the jury found that Plaintiff owned the copyright in *Taurus* and that Defendants had access to the work. Ultimately, however, the jury found that no substantial similarity existed between the two songs. In doing so, the jury did not determine that Plaintiff's claim impermissibly relied on public domain elements or performance aspects of the musical composition. Therefore, Plaintiff's claim was not frivolous.

Defendant also argues, "[Plaintiff] cannot find shelter in the Court's summary judgment ruling that he raised a triable issue as to substantial similarity: that ruling was expressly based on his experts' reports, which the Court subsequently ruled were inadmissible." (Def.'s Reply ISO Mot. Atty. Fees 8:11-14, ECF No. 306.) The Court rejects this argument. The fact that this Court ruled Plaintiff's expert reports inadmissible after considering and relying on the reports in the summary judgment order does not undermine the validity of the legal conclusion at summary judgment. "At the summary judgment

4

stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In the present case, the Court focused only on the content—not the admissibility—of Plaintiff's expert reports, disregarded the unprotected performance elements, and determined that the remaining material created a triable issue of fact as to substantial similarity. Subsequently, in preparation for trial, this Court issued the following order:

> Plaintiff's expert reports are inadmissible in their present condition because they considered unprotected elements contained only in the sound recording. If Plaintiff wishes to introduce expert testimony at trial, it must submit reports completely purged of any reliance on the unprotected performance elements in the sound recording. Any comparison analysis must consider *only* the protected elements represented in the musical composition.

(Order Granting Def.s' Mot. In Limine No. 4, ECF No. 203.) Nothing in the Court's evidentiary ruling contradicted or undermined its prior holding on summary judgment. Rather, the Order simply instructed Plaintiff to re-submit expert reports without the unprotected performance elements that this Court had disregarded at the summary judgment stage. Put differently, the Court sought to ensure that any expert report presented to the jury contained only the protected musical elements that were deemed relevant to the similarity analysis in the summary judgment order.

Accordingly, because Plaintiff's claim was not frivolous or objectively unreasonable, these two factors militate against an award of attorney's fees.

## C. <u>Motivation</u>

Throughout the course of litigation, Plaintiff has maintained that the purpose of the lawsuit was to secure credit for Randy California, the author of *Taurus*, whose musical composition was allegedly stolen by Defendants. Plaintiff submits evidence that Randy California had considered filing a lawsuit over *Stairway to Heaven* while he was still living, but he ultimately never initiated legal action. (Order Denying Def.'s Mot. Summ. J. 7, ECF No. 159.) After Randy California died, his trust (Plaintiff in this case) would have been equitably prevented from bringing suit because of the lengthy passage of time; however, once the Supreme Court eliminated the equitable defense of laches in copyright claims seeking damages, Plaintiff promptly filed suit. *See Petrella v. Metro-Goldwyn-Mayer, Inc.,* 134 S. Ct. 1962, 1967 (2014).

In rebuttal Defendant contends that Plaintiff was motivated by ignoble ambitions and that the trust initiated the lawsuit to extort a massive settlement from the Led Zeppelin members, even though Randy California never attempted to sue in his lifetime. Defendant, however, has failed to provide any evidence that Plaintiff harbored nefarious motives in bringing this suit. Furthermore, Defendant has not countered the declarations from Plaintiff suggesting that Randy California actually did contemplate a lawsuit.

Therefore, the motivation factor weighs in favor of Plaintiff and militates against granting fees.

## D. <u>Need for Compensation and Deterrence</u>

Defendant argues that allowing fees will deter future claimants from asserting stale and meritless copyright claims. The Court rejects this argument because, as explained above, Plaintiff did not act in bad faith by delaying or bringing a "stale" claim; rather, until the Supreme Court's *Petrella* decision in

2014, Plaintiff's claim would have been barred by laches. Moreover, the Court has already held that Plaintiff's claim was not meritless. Therefore, by filing the lawsuit, Plaintiff did not engage in misconduct that would justify the deterrent effect of attorney's fees.

Defendant also contends that compensation is required, as it was forced to bear its own costs after its insurer denied coverage because the claims asserted were so old. Plaintiff has not challenged Defendant's need for compensation; instead, he rebuts that he manages a charitable trust with limited financial resources incapable of satisfying an award of over $700,000. *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) (holding that the Ninth Circuit considers "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff"). Plaintiff has not proffered any evidence to substantiate his claims about the impecunious nature of the trust, nor has he meaningfully opposed Defendant's argument regarding the need for compensation.

Overall, while Defendant has not demonstrated a need for deterrence, it has shown a need for compensation. Accordingly, this factor weighs slightly in favor of granting attorney's fees.

### E. Litigation Misconduct

In its most recent word on attorney's fees under the Copyright Act, the Supreme Court counseled lower courts to consider factors beyond the objective reasonableness of a claim. As an example, the Court explained that "a [district] court may order fee-shifting because of a *party's litigation misconduct*, whatever the reasonableness of his claims or defenses." *Kirtsaeng*, 136 S. Ct. at 1988–89 (emphasis added). Seizing on this language, Defendant urges this Court to consider Plaintiff's litigation misconduct in the present case

Throughout the course of litigation, Plaintiff's counsel demonstrated a tenuous grasp of legal ethics and a rudimentary understanding of courtroom decorum. Perhaps most emblematic of counsel's cavalier attitude is the "unclean hands" moment of the trial. During his direct examination of Michael Skidmore (the trustee of the Randy Craig Wolfe Trust) Plaintiff's counsel mentioned that Defendants had raised the defense of unclean hands. Plaintiff's counsel then waved his hands in the air and implored Skidmore, "Please show the jury your hands," as if a showing of manicured fingers would rebut the equitable defense of unclean hands. The gallery audience and jury members audibly responded, prompting this Court to reprimand Plaintiff's counsel—even before Defense counsel could rise to object—and instruct the jury members to disregard counsel's antics. As another example, consider the manner in which Plaintiff's counsel ignored this Court's order excluding evidence about the charitable nature of the Randy Craig Wolfe Trust. Mere minutes after the pretrial conference in which the Court issued its evidentiary ruling, Plaintiff's counsel brazenly appeared before television cameras and declared, "If money is won in this case, it's to be used to buy musical instruments for children who are in need in Ventura County." (Anderson Decl. Ex. 1, ECF No. 293.) In further violation of the Court's order, Plaintiff's counsel elicited testimony from Wolfe's sister at trial about the charitable purpose of the trust. (Anderson Decl. Ex. 4 at 157:14-16, ECF No. 293.) Such misconduct demeans the legal proceedings, distracts from the substantive issues, and squanders the Court's time.

The aforementioned examples are just two of many incidents comprising a litany of tasteless courtroom antics and litigation misconduct. (Def.'s Mot. Atty. Fees 5-12, ECF No. 293.) Accordingly, this factor weighs in favor of Defendant.

### F. Weighing the Factors

Overall, two factors (litigation misconduct and degree of success) swing solidly in Defendant's direction, and a third factor (need for compensation) slightly favors Defendant. On the other hand, three factors (motivation, frivolousness, and objective reasonableness) weigh strongly in Plaintiff's favor.

6

Once the media hype and tangential distractions are stripped away, what remains is an objectively reasonable claim motivated by a desire to recognize Randy California's musical contribution. The claim survived a summary judgment motion and proceeded to a hard-fought trial where a jury found for Plaintiff on ownership and access, but ultimately rendered a verdict for Defendants based on a lack of substantial similarity. Plaintiff was afforded a full opportunity to litigate its theory of infringement and Defendants were entitled to raise a meritorious defense, which ultimately prevailed. Viewing "all the circumstances of [this] case on their own terms, in light of the Copyright Act's essential goals," this Court concludes that attorney's fees are not appropriate. *Kirtsaeng*, 136 S. Ct. at 1989.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Attorney's Fees and Costs.


**IT IS SO ORDERED.**


_____  :  _____

Initials of Preparer    _____

7

Tab 3

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15              **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

17                   **WESTERN DIVISION**

18 MICHAEL SKIDMORE, *etc.*,          )   Case No. 2:15-cv-03462 RGK (AGRx)
                                      )
19          Plaintiff,                )
                                      )   DEFENDANT WARNER/
20     vs.                            )   CHAPPELL MUSIC, INC.'S REPLY
                                      )   MEMORANDUM OF POINTS AND
21 LED ZEPPELIN, *et al.*,            )   AUTHORITIES IN SUPPORT OF
                                      )   MOTION FOR AWARD OF
22          Defendants.               )   ADDITIONAL COSTS;
                                      )   DECLARATION
23 _____)
                                          Date: August 8, 2016
24                                        Time: 9:00 a.m.

25                                        Courtroom of the Honorable
                                          R. Gary Klausner
26                                        United States District Judge

27

28

                                                                    8

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Separate from its Motion for attorneys' fees (Doc. 293), defendant Warner/Chappell Music, Inc. ("Warner/Chappell") filed its Motion for additional costs not taxable by the Clerk (Doc. 295). Plaintiff filed no opposition to Warner/Chappell's Motion for additional costs.

And, while plaintiff's opposition to the Motion for attorneys' fees refers to "costs," that opposition does not discuss the Motion for additional costs or challenge any of those additional costs. For example, plaintiff's opposition to the Motion for attorneys' fees nowhere discusses, let alone rebuts, the particularized showing that Warner/Chappell made in support of the award of video deposition and other costs not taxable by the Clerk. W/C Memo. *re* Add'tl Costs (Doc 295-1) at 4-7, Exh. 1-5.

Plaintiff's failure to file opposition to the Motion for additional costs is properly deemed consent to the granting of the Motion. L.R. 7-12.

To the extent that plaintiff's opposition to the Motion for attorneys' fees is deemed relevant to the granting or denial of additional costs, additional costs are still properly granted for the alternative and independent reasons stated in Warner/Chappell's Reply in support of the Motion for attorneys' fees, including (1) that the successful defense of plaintiff's claim on the merits furthered the purposes of the Copyright Act, even if plaintiff's claims were objectively reasonable (W/C Reply Memo. *re* Mtn. for Attys' Fees (Doc. 306) at 1-2), or (2) that plaintiff's litigation misconduct supports the award even if plaintiff's claims were objectively reasonable (*id.* at 4-7), or (3) that the *Fogerty* factors support the award (*id.* at 7-10).

Warner/Chappell respectfully submits that its Motion for additional costs should be granted and Warner/Chappell should be awarded its non-taxable costs of $179,699.06, plus any service of process charges, deposition costs and witness fees

///

///

///

1

9

1  that Warner/Chappell has applied to the Clerk to tax (Doc. 294), but which the Clerk

2  deems non-taxable.

3  Dated: July 25, 2016

                                 _____/s/ Peter J. Anderson_____
                                    Peter J. Anderson, Esq.
                  LAW OFFICES OF PETER J. ANDERSON
                       A Professional Corporation
                       Attorney for Defendants
                  JAMES PATRICK PAGE, ROBERT
            ANTHONY PLANT, JOHN PAUL JONES,
                WARNER/CHAPPELL MUSIC, INC.,
                 SUPER HYPE PUBLISHING, INC.,
           ATLANTIC RECORDING CORP., RHINO
              ENTERTAINMENT COMPANY and
               WARNER MUSIC GROUP CORP.

2

10

Tab 4

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                 **WESTERN DIVISION**

12  MICHAEL SKIDMORE, *etc.*,            ) Case No. 2:15-cv-03462 RGK (AGRx)
                                         )
13         Plaintiff,                    )
                                         )
14      vs.                              ) DEFENDANT WARNER/
                                         ) CHAPPELL MUSIC, INC.'S REPLY
15  LED ZEPPELIN, *et al.*,              ) MEMORANDUM OF POINTS AND
                                         ) AUTHORITIES IN SUPPORT OF
16         Defendants.                   ) MOTION FOR AWARD OF
                                         ) ATTORNEYS' FEES
17  _____  )
                                         ) Date: August 8, 2016
18                                         Time: 9:00 a.m.

19                                         Courtroom of the Honorable
                                           R. Gary Klausner
20                                         United States District Judge

21

22

23

24

25

26

27

28

11

TABLE OF CONTENTS

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................1

1.    INTRODUCTION .............................................................................................1

2.    WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS' FEES....1

      (a)   Even if the Losing Party's Case Was Reasonable, Attorneys' Fees
            Are Properly Awarded to a Prevailing Party Who Has Furthered
            the Policies of the Copyright Act .............................................................1

            (1)   Plaintiff Concedes the Successful Defense of His Claims
                  Furthered the Policies of the Copyright Act .................................1

            (2)   Plaintiff Misrepresents the Supposedly-Unsettled Issue and
                  Has Refused to Disclose the Trust's Financial Resources ...........2

                  i.    *Plaintiff Misrepresents that the Scope of a Deposit
                        Copy's Protection Is an "Unsettled" Legal Issue*...............3

                  ii.   *Plaintiff Cannot and Has Not Established Impecunity* .......3

      (b)   An Alternative Basis to Award Fees Is Plaintiff's Extensive and
            Ongoing Litigation Misconduct ................................................................4

            (1)   Plaintiff Admits Multiple Instances of Litigation Misconduct .....4

            (2)   Plaintiff Does Not Rebut His Other Litigation Misconduct..........5

      (c)   The *Fogerty* Factors Also Confirm that Fees Should Be Awarded.........7

            (1)   The Degree of Success Obtained on the Claim ............................8

            (2)   Frivolousness of Plaintiff's Position.............................................8

            (3)   The Parties' Respective Motivations .............................................8

            (4)   Objective Reasonableness of Factual and Legal Positions ..........8

            (5)   The Need  in Particular Circumstances to Advance
                  Considerations of Compensation and Deterrence ........................9

      (d)   Plaintiff Does Not Dispute the Amount of Attorneys' Fees Claimed ...10

3.    CONCLUSION ...............................................................................................10

i

12

**TABLE OF AUTHORITIES**

**CASES**

*Counts v. Meriwether*, No. 2:14-CV-00396-SVW-CW, 2016 WL 1165888
 (C.D. Cal. Mar. 9, 2016) ...............................................9

*Fahmy v. Jay Z*, No. 07CV05715-CAS-PJWx, 2015 WL 5680299
 (C.D. Cal. Sept. 24, 2015)...............................................3

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996)........................................ 1, 2, 4

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ................................................... 2, 7, 8

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) .................. 1, 2, 4, 5, 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-00371 JW,
 2005 WL 2007932 (N.D. Cal. Aug. 12, 2005) ...........................................2

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) ...........................................8

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869
 (9th Cir. 2005), *cert. denied* 548 U.S. 919 (2006) ...................................10

*UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164
 (E.D. Cal. 2006) ...............................................2

*Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK,
 2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) ................................................. 3, 6, 9

**RULES**

Cal. R. Prof. Resp. 5-120 ...............................................6

L. R. 83-3.1.2 ...............................................6

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**1.** **INTRODUCTION**

Plaintiff's opposition misrepresents the facts and law to argue that he pursued reasonable claims, and he ultimately cannot avoid that, even if his 45-year-old claims were reasonable, Warner/Chappell still should be awarded attorneys' fees because the successful defense of those claims furthered the Copyright Act's purpose and, alternatively, because of his litigation misconduct, most of which he concedes.

**2.** **WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS' FEES**

    **(a)** **Even if the Losing Party's Case Was Reasonable, Attorneys' Fees Are Properly Awarded to a Prevailing Party Who Has Furthered the Policies of the Copyright Act**

Even if – as plaintiff incorrectly contends – his claims were reasonable, the Supreme Court has soundly rejected the argument that objective reasonableness of the losing party's position "raises a presumption against granting fees." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016). Instead, "attorneys' fees are properly awarded to a defendant whose successful defense of even a reasonable claim satisfies the "pivotal criterion" of furthering the Copyright Act's purpose. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) (affirming $1,374,519 fee award to prevailing defendant <u>even though the plaintiff asserted a reasonable claim</u>).

    **(1)** **Plaintiff Concedes the Successful Defense of His Claims Furthered the Policies of the Copyright Act**

Plaintiff agrees that the Copyright Act's purpose is "enriching the general public through access to creative works," and includes "demarcat[ing]" "the boundaries of copyright law . . . ." Pltf's Oppn. (Doc. 298) at 3:21-24; W/C Memo. (Doc. 293-1) at 3, 4. He does not dispute that defendants prevailed on the merits, not a technical defense. *Fantasy*, 94 F.3d at 555, 559. And he does not dispute that by claiming infringement he challenged the validity of *Stairway to Heaven*'s copyright. W/C Memo. at 3-4. For these reasons, alone, defendants' successful defense fur-

14

1    thered the Act's purposes.

2         Plaintiff also admits that his complaints sought injunctive relief and orders of

3    destruction depriving the public of *Stairway to Heaven*, "one of the greatest songs

4    ever written." W/C Memo. at 4, *quoting* FAC (Doc. 31) at 11, ¶ 56. Successfully

5    defending his claims satisfies the "pivotal criterion" of ensuring public access to cre-

6    ative works. *Fantasy*, 94 F.3d at 558. It strains credulity for plaintiff to now suggest

7    that he might not have sought the requested relief if he had prevailed. Pltf's Oppn.

8    at 15:14-15. In fact, he states he sought "credit" in *Stairway to Heaven* (*id*. at 15:7-

9    8), but he only could have obtained that credit by leveraging a permanent injunction

10   and order of destruction to force an agreement. *UMG Recordings, Inc. v. Disco Az-*

11   *teca Distrib., Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006) ("it is well estab-

12   lished that the right to attribution is not a protected right under the Copyright Act").

13        Also, plaintiff concedes that defendants' successful defense confirmed that the

14   "boundaries of copyright law" allow the use of a public domain descending chro-

15   matic line and random pitches. W/C Memo. at 4-5. For each of these reasons, the

16   defense of his claims furthered the Act's purposes and fees should be awarded.

17              **(2)      Plaintiff Misrepresents the Supposedly-Unsettled Issue and**

18                        **Has Refused to Disclose the Trust's Financial Resources**

19        Plaintiff argues that "[g]ranting attorneys' fees is disfavored when a plaintiff

20   pursues an action in good faith in an unsettled area of law and the parties have alike

21   financial resources." Pltf's Oppn. at 3-4, *quoting Perfect 10, Inc. v. Visa Int'l Serv.*

22   *Ass'n*, No. C 04-00371 JW, 2005 WL 2007932, at *4 (N.D. Cal. Aug. 12, 2005).

23   But, that is contrary to both *Fogerty* and *Kirtsaeng*. *Fogerty v. Fantasy, Inc.*, 510

24   U.S. 517, 521-22 (1994) (rejecting that prevailing defendants may recover fees only

25   if plaintiff's claim was frivolous or in bad faith); *Kirtsaeng*, 136 S. Ct. at 1989 (re-

26   jecting denial of fees to prevailing defendants just because plaintiff's claim was ob-

27   jectively reasonable). Further, plaintiff misrepresents the supposedly-unsettled issue

28   and he refused to disclose the Trust's financial resources.

15

### i.  *Plaintiff Misrepresents that the Scope of a Deposit Copy's Protection Is an "Unsettled" Legal Issue*

Plaintiff advises the Court that the scope of copyright protection accorded a 1909 Act deposit copy of a musical composition is "unsettled" and that his view that sound recordings of the composition are relevant was adopted by the district judge in *Williams v. Bridgeport*.  Pltf's Oppn. at 2, 10.  But, neither is true.

In *Williams*, as here, the Court ruled that recordings are "not protectable publications under the 1909 Act" and "the lead sheets are deemed to define the scope of [the 1909 Act] copyrighted compositions."  *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, at *9-10 (C.D. Cal. Oct. 30, 2014).  And in *Williams*, as here, the Court allowed the parties to submit their experts' performances and recordings of performances <u>of the deposit copies.</u>  Anderson Reply Decl. ("Reply Decl.") at 1-2, ¶ 3, & Exh. 7.  Plaintiff's reference to unidentified "prior courts" that ruled differently cannot be credited (Pltf's Oppn. at 10 n. 4), and the other district judge to recently rule on the issue ruled just as this Court did. *Fahmy v. Jay Z*, No. 07CV05715-CAS-PJWx, 2015 WL 5680299, at *13-14 (C.D. Cal. Sept. 24, 2015) (copyright limited to transcription; sound recordings excluded).

Plaintiff blatantly misrepresents *Williams* as conflicting with this Court's rulings and as reflecting "unsettled" law.

### ii.  *Plaintiff Cannot and Has Not Established Impecunity*

Plaintiff asserts that "[t]he Trust has no way to pay for requested costs and fees, which far exceed the Trust's income and assets."  Skidmore Decl. (Doc. 300) at 3:20-21.  But, that is a bare conclusion.  Further, he successfully refused to respond to discovery as to the Trust's claimed status as a charity and the use of its funds. Order (Doc. 89) denying Defs' Mtn. to Compel.  His refusal calls into question his actual use of Trust funds, and estops him from now claiming those funds are inadequate.  And his conclusory assertions are impeached by his admissions that the Trust had nearly $100,000 on hand when he became sole trustee in 2009; that it receives

16

1    ongoing royalties for all of Randy Wolfe's compositions and Spirit's recordings; and

2    that for years he has exploited a storage-unit full of unreleased recordings by Wolfe.

3    Reply Decl. at 2, ¶ 4, & Exh. 8-9.  Given his refusal to produce any documents con-

4    firming that a single penny went to buy instruments for children in Ventura County,

5    his conclusory claimed inability to pay is properly disregarded.

6        Even if plaintiff's claims and actions were objectively reasonable, which they

7    were not, defendants' successful defense on the merits furthered the Act's purposes

8    and, for that reason alone, fees should be awarded.  *Fantasy*, 94 F.3d at 558.

9        **(b)    An Alternative Basis to Award Fees Is Plaintiff's Extensive and**

10              **Ongoing Litigation Misconduct**

11       The "court may order fee-shifting because of a party's litigation misconduct,

12   whatever the reasonableness of his claims or defenses."  *Kirtsaeng*, 136 S. Ct. at

13   1988-89.  Plaintiff, who admits carefully monitoring this case (Skidmore Decl. at

14   2:24-25), concedes multiple instances of his litigation misconduct and makes mate-

15   rial misrepresentations in his failed attempt to sidestep other instances.

16       **(1)    Plaintiff Admits Multiple Instances of Litigation Misconduct**

17       Plaintiff ignores, and therefore admits, his litigation misconduct in (1) suing in

18   the wrong judicial district; (2) claiming, contrary to fact and law, that Wolfe's 1967

19   Agreement with Hollenbeck Music is void for failure to obtain court approval; (3)

20   repeatedly failing to comply with the Court's Orders and Local Rules 16 *re* pretrial;

21   (4) serving on parties and non-parties bogus "notices" and persons-most-

22   knowledgeable trial subpoenas; (5) violating the Court's ruling on defendants' Mo-

23   tion in Limine No. 9 by offering testimony as to millions of dollars of payments his

24   expert ultimately admitted were paid under a 2008 agreement and, therefore, time-

25   barred; (6) violating the Court's ruling on defendants' Motion in Limine No. 8 by

26   repeatedly asking, despite the Court's admonishments, leading questions as to the

27   supposed charitable use of Trust funds; (7) misrepresenting to the Court and the Jury

28   that the 1996 renewal of the *Taurus* copyright terminated Wolfe's 1967 Agreement;

17

and (8) misrepresenting to the Court that his expert's recording of the entire *Taurus* composition had not been played to the Jury. W/C Memo. at 5-6, 8-9, 10-11, 11-12.

Plaintiff's admitted misconduct, which includes multiple contempts of Court, alone supports the award of attorneys' fees. *Kirtsaeng*, 136 S. Ct. at 1988-89.

### (2) Plaintiff Does Not Rebut His Other Litigation Misconduct

In trying to rebut other instances of his litigation misconduct, plaintiff not only falls far short, but engages in yet additional misconduct by misrepresenting facts.

Plaintiff concedes that no reasonable lawyer would contend that evidence of prior claims was relevant. But, he represents to the Court that he never tried to raise past claims and settlements and only sought to prove changes in credits and Led Zeppelin's "songwriting method." Pltf's Oppn. at 15-16. But, credit changes are by settlement, "songwriting method" is plaintiff's euphemism for character assassination and his representation is patently false: his complaints allege prior claims and settlements[1]; his experts' reports of the testimony they intended to offer at trial referred to prior claims and settlements[2]; his expert declarations in opposition to defendants' Rule 56 motion referred to prior claims and settlements and his opposition memorandum referred to defendants as "serial" infringers[3]; his Local Rule 16 Memorandum of Contentions of Fact and Law argued that evidence of prior claims "is highly relevant"[4]; and he strenuously opposed preclusion of evidence of prior claims and settlements.[5] His misrepresentations constitute yet more litigation misconduct.

---

[1] Complaint at 4, ¶ 10; FAC at 4, ¶ 10.

[2] Defs' MIL # 4 (Doc. 137) at 7-8, Exh. 2 at 55, Exh. 3 at 61-62, 68-69, & Exh. 4 at 75; Defs' MIL # 6 (Doc. 139) at 7-8, Exh. 1 at 13.

[3] Johnson Decl. (Doc. 118-9) at 2-3, ¶ 6; Bricklin Decl. (Doc. 118-10) at 3-5, ¶¶ 9-10; Hanson Decl. (Doc. 119-8) at 2, ¶ 6; Somach Decl. (Doc. 123) at 4-5, ¶¶ 9-12; Pltf's Oppn. Memo. (Doc. 118) at 13:18-25.

[4] Pltf's Memo. of Contentions of Fact & Law (Doc. 158) at 12:13-16.

[5] Plft's Oppn. to MIL # 5 (Doc. 165), arguing supposed relevance of an alleged "history of copyright infringement and music theft" and "serial plagiarism."

18

Plaintiff admits filing six motions from February 25, 2016 to June 12, 2016 – more than one a month – that were denied or stricken, but argues they were reasonable. Not so. Defs' Oppn. (Doc. 92) at 4-11 (plaintiff's application to amend Scheduling Order based on misrepresentations of fact); Defs' Oppn. (Doc. 116) at 1-2, 3-4, 11-15 (plaintiff's motion for leave to add new parties based on misrepresentations and his omission that adding parties would require amending the Scheduling Order, which the Court already declined to do); Defs' Oppn. (Doc. 221) at 1-2, 3-9 (plaintiff's motion to compel individual defendants to appear at trial a publicity stunt to taint jury pool and based on misrepresentations, including that the individuals refused to appear at trial); Defs' Oppn. (Doc. 234) at 1-4 (plaintiff's motion to disqualify Dr. Ferrara unsupported by law and based on misrepresentations); Defs' Oppn. (Doc. 235) at 1-2 (plaintiff's application for reconsideration of grant of partial summary judgment two months earlier based on misrepresentations of facts and law).

Plaintiff admits he repeatedly attempted to put on expert and other evidence of the *Taurus* sound recording despite the Court's Orders (*e.g.*, Doc. 159 at 16-20, Doc. 202 at 1 & Doc. 203; Doc. 223 at 16-17), causing Warner/Chappell to incur substantial additional fees and costs. His justification for doing so is to repeat his misrepresentation that *Williams* supports him. Pltf's Oppn. at 18-19; *see, above* at 3:3-17.

He admits that immediately after the Court precluded references at trial to the Trust's supposed charitable purpose, his counsel publicly stated to the press for broadcast to the public – including the jury pool – that any recovery would be used to buy instruments for needy children in Ventura County. W/C Memo. at 9-10. His assertion that "there is no prohibition" against making that statement (Pltf's Oppn. at 19:10-11), also is false. Cal. R. Prof. Resp. 5-120(A); L. R. 83-3.1.2.

He admits that in questioning John Paul Jones at trial plaintiff's counsel misrepresented that an audio exhibit he played is a 1972 interview when in truth it is a 1990 interview, and that plaintiff's last-minute re-numbering of his exhibits prevented defendants' counsel from catching that misrepresentation. Plaintiff claims this

19

1   was a mistake, but presumably he knew his own re-numbered exhibits.  And, he re-

2   lied on his misrepresentation that the interview was in 1972 in trying to impeach Mr.

3   Jones' memory of 1971 events.  Anderson Exh. 4 (Doc. 293-3) at 81-82.

4       Plaintiff admits that his first witness, Janet Wolfe, violated the Court's in

5   limine ruling by stating the Trust is a charity.  W/C Memo. at 10:17-24.  Plaintiff's

6   assertion that she blurted it out "of her own volition" (Pltf's Oppn. at 19:13-15) not

7   only strains credulity – including when seen in the context of plaintiff's overall liti-

8   gation misconduct – but ignores plaintiff's commitment to inform his witnesses of

9   the Court's in limine rulings.  Reply Decl. at 2, ¶ 5, & Exh. 10.

10      Finally, plaintiff admits showing the jury a 1980s photograph that had been

11  cropped to remove those with whom Robert Plant was actually speaking, to create

12  the false appearance he was speaking with Mark Andes.  W/C Memo. at 11:17-23.

13  Plaintiff claims it was an innocent mistake when the photograph was printed from

14  the Getty website.  Pltf's Oppn. at 19-20; Fluehr Decl. (Doc. 301).  But, plaintiff

15  printed the photograph without alteration before producing it to defendants.  And,

16  printing the photograph from that website does not in fact result in it being cropped.

17  Reply Decl. at 2-3, ¶ 6, & Exh. 11-13.  Also, he used the cropped photograph and its

18  misimpression that Mr. Plant was talking to Mr. Andes, to assert before the Jury that

19  the photograph "show[s] that they do know each other, and it goes to their relation-

20  ship over the years."  Trial Trans. at 298:20-22.  Plaintiff's assertion is dependent on

21  the cropping, which is strong evidence the photograph was intentionally altered.

22      Plaintiff's "litigation misconduct," most of which he concedes, is an inde-

23  pendent basis to award attorneys' fees under Section 505, "whatever the reasonable-

24  ness of [his] claims . . . ."  *Kirtsaeng*, 136 S. Ct. at 1988-89.

25      **(c)    The *Fogerty* Factors Also Confirm that Fees Should Be Awarded**

26      The successful defense of plaintiff's claims furthered the policies of the Copy-

27  right Act and plaintiff engaged in multiple instances of misconduct.  Those are each

28  independent reasons to award attorneys' fees even if plaintiff's claims were reasona-

20

1    ble.  In addition, the factors noted by *Fogerty* also cut in favor of the award of fees.

2                **(1)   The Degree of Success Obtained on the Claim**

3         Plaintiff concedes that defendants prevailed on the merits.  He also concedes

4 his settlement demands are relevant, and although he claims he would have settled

5 for a dollar "and credit," he does not dispute that sharing the *Stairway to Heaven*

6 copyright was worth millions over time and that he also demanded $12,000,000.

7 The degree-of-success factor unequivocally cuts in favor of the award of fees.

8                **(2)   Frivolousness of Plaintiff's Position**

9         Plaintiff argues his claims were not frivolous because he lost only on substan-

10 tial similarity.  But, he relied on public domain material and performance elements

11 not protected by the *Taurus* copyright.  He cannot find shelter in the Court's sum-

12 mary judgment ruling that he raised a triable issue as to substantial similarity: that

13 ruling was expressly based on his experts' reports (Order (Doc. 159) at 17-18),

14 which the Court subsequently ruled were inadmissible (Order (Doc. 203)).  In short,

15 summary judgment should have been granted.

16                **(3)   The Parties' Respective Motivations**

17         Plaintiff seeks to shield himself as the disinterested fiduciary of a charity, but

18 he refused to produce proof that the Trust is in fact a charity and he refused to show

19 how he has spent the Trust's funds.  *See, above* at 3-4.  And, he does not dispute that

20 defendants' motivation was simply to defend themselves and *Stairway to Heaven*

21 from his claims and ensure the continued availability of *Stairway to Heaven*.  The

22 factor of motivation also cuts in favor of awarding fees.

23           **(4)   Objective Reasonableness of Factual and Legal Positions**

24         As shown above, plaintiff's positions in this case were not reasonable.  His

25 reliance on *Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2013) is misplaced

26 because there the fee award was based only on the incorrect finding the claim was

27 objectively unreasonable.  *Id.* at 1181.  Here, attorneys' fees are also sought on al-

28 ternate grounds not relied upon in *Seltzer* and that apply even if plaintiff's claims

21

were objectively reasonable. *See, above* at 1-7. Plaintiff's reliance on the denial of fees in *Williams* is also misplaced because there attorneys' fees of $3,536,193 were sought and the losing parties had substantial and reasonable grounds to support the position that there was no infringement. *Williams* (Doc. 554) at 10. Here, Warner/Chappell seeks a fraction of that amount, and plaintiff has known from the outset that his case relies on public domain elements, such as a descending chromatic line, and performance elements not protected by the *Taurus* composition copyright.

Plaintiff also is incorrect in arguing that defendants took unreasonable positions. He mischaracterizes Messrs. Page and Plant's perfectly understandable inability to recall people or events 40 or more years ago as denials. Pltf's Oppn. at 7-8. Further, there were reasonable and in fact solid grounds for defendants to question the validity of the Trust; the Trust's standing to sue; the Trust's acquisition of rights the Superior Court ordered were to be distributed to Wolfe's sole heir, his minor son Quinn Wolfe; Randy Wolfe's express and recorded 1991 waiver of the claims plaintiff sought to pursue; and access. Reply Decl. at 3-6, ¶¶ 7-11. And there is absolutely no merit to plaintiff's false allegations that defendants caused Hollenbeck Music to file corrected copyright registrations or that Dr. Ferrara could not serve as defendants' expert. *Id.* at 6-7, ¶¶ 12-13; Defs' Oppn. (Doc. 234) at 1-3, 6, ¶ 3.

Accordingly, this factor also cuts in favor of the award of attorneys' fees.

### (5) The Need in Particular Circumstances to Advance Considerations of Compensation and Deterrence

Plaintiff argues that his position was supported by the district judge's rulings in *Williams* and that the Trust "has limited funds." Pltf's Oppn. at 12-13. But, plaintiff misrepresents *Williams* and has refused to provide documents as to the Trust's funds. *See, above* at 3-6. Further, his claimed inability to pay does not preclude the award of attorneys' fees. *Counts v. Meriwether*, No. 2:14-CV-00396-SVW-CW, 2016 WL 1165888, at *3 n. 1 (C.D. Cal. Mar. 9, 2016) (granting $768,836 in attorneys' fees against another of Mr. Malofiy's clients under § 505, despite their

22

1  claimed inability to pay). Plaintiff also has not rebutted Warner/Chappell's showing

2  that this factor cuts in favor of awarding fees. W/C Memo. at 15-16.

3      Accordingly, Warner/Chappell respectfully submits that its Motion for attor-

4  neys' fees should be granted.

5      **(d)**   **Plaintiff Does Not Dispute the Amount of Attorneys' Fees Claimed**

6      Plaintiff concedes that apportionment among his copyright claims and right of

7  attribution claims is not appropriate or required. W/C Memo. at 16-17. Plaintiff al-

8  so does not challenge the hourly rates charged by counsel. And, plaintiff does not

9  challenge the total of the attorneys' fees or otherwise suggest they are unreasonable.

10      Plaintiff's only complaint is that the fees include responding to his allegations

11  that the Trust owns the *Taurus* copyright and that defendants had access to *Taurus*,

12  and he suggests the requested fees should be reduced by some unstated amount.

13  Pltf's Oppn. at 20:13-17. However, the attorneys' fees have already been substan-

14  tially reduced by excluding the fees of the individual defendants' New York counsel,

15  who actively participated in their defense from the inception of this case. Defs'

16  Memo. at 1:25-27; Reply Decl. at 7, ¶ 14. Defendants also had a reasonable basis to

17  question ownership and access. *Id.* at 6, ¶ 11. And, a prevailing party's attorneys'

18  fees are not limited to those incurred on the winning argument alone. *Twentieth*

19  *Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 884 (9th Cir. 2005) ("Ra-

20  re, indeed, is the litigant who doesn't lose some skirmishes on the way to winning

21  the war"), *cert. denied* 548 U.S. 919 (2006).

22  **3.**   **CONCLUSION**

23      The successful defense of plaintiff's claims furthered the purposes of the Cop-

24  yright Act and the attorneys' fees incurred and sought are reasonable. Accordingly,

25  the Motion should be granted and Warner/Chappell awarded fees of $613,471.

26  Dated: July 25, 2016

                        _____
                        /s/ Peter J. Anderson

27                      Peter J. Anderson, Esq.
                        LAW OFFICES OF PETER J. ANDERSON

28                      A Professional Corporation
                        Attorney for Defendants

23

Tab 5

1   Francis Malofiy, Esq.
2   Francis Alexander, LLC
    280 N. Providence Rd. | Suite 1
3   Media, PA 19063
    T:  (215) 500-1000; F:  (215) 500-1005
4   E:  francis@francisalexander.com
5   *Attorney for Plaintiff*

6
    Glen L. Kulik, Esq. (SBN 082170)
7   Kulik Gottesman & Siegel LLP
8   15303 Ventura Blvd., Suite 1400
    Sherman Oaks, CA 91403
9   T:  (310) 557-9200; F:  (310) 557-0224
10  E:  gkulik@kgslaw.com
    *Attorney for Plaintiff*
11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14  MICHAEL SKIDMORE, as Trustee for        Case No. 15-cv-03462 RGK (AGRx)
15  the RANDY CRAIG WOLFE TRUST,
                                            Hon. R. Gary Klausner
16                     Plaintiff,
                                            **PLAINTIFF'S OPPOSITION TO**
17          v.                              **DEFENDANTS' MOTION FOR**
                                            **COST AND MOTIONS FOR FEES**
18
19  LED ZEPPELIN; JAMES PATRICK
    PAGE; ROBERT ANTHONY PLANT;
20  JOHN PAUL JONES; SUPER HYPE
21  PUBLISHING, INC.; WARNER MUSIC          Filed concurrently with Declarations;
    GROUP CORP., Parent of                  and [Proposed] Order
22  WARNER/CHAPPELL MUSIC, INC.;
23  ATLANTIC RECORDING                      Trial Date:   August 8, 2016
    CORPORATION; RHINO                      Time:         1:00 p.m.
24  ENTERTAINMENT COMPANY,                  Courtroom:    850
25                     Defendants.
26
27
28

<big>24</big>

## I.    INTRODUCTION

Plaintiff opposes the attorney's fees motion filed by Defendants as baseless; no award of fees is warranted as this lawsuit was both factually and legally reasonable. The British rule—where the loser pays—is not the law. Instead, under the Copyright Act the Court must consider five nonexclusive *Fogerty* factors when deciding whether, within its discretion, the imposition of costs and fees is appropriate. Defendants, it should be noted, are massive figures in the music industry with almost unlimited funds. In contrast, Plaintiff is a small charity with nominal funds who cannot possibly pay the requested number. Heavily factoring into whether fees should be imposed is whether the lawsuit was "objectively reasonable" and not frivolous. Defendants' motion attempts to label the lawsuit as objectively unreasonable and frivolous despite a wealth of evidence to the contrary. But an analysis of Defendants' motion reveals that it is largely conclusory and barely even applies the appropriate *Fogerty* factors to the facts of the case. Defendants, apparently realizing that the *Fogerty* factors do not support an award of fees, instead attempt to support their motion by making misguided, baseless, and irrelevant personal attacks on opposing counsel. These attacks are unbecoming, and in all instances attempt to conclusorily characterize good faith advocacy as "misconduct." An award of fees on such a basis would chill good faith advocacy and leave attorneys in fear that they could later be punished for good faith argumentation.

Defendants' motion ignores that this lawsuit was objectively reasonable and in fact was close at all stages. At the summary judgment stage, the Court determined that there were triable issues of fact on the ownership of Taurus, whether Defendants had access to Taurus, and whether Taurus's deposit copy and Stairway to Heaven were substantially similar. These issues were addressed by the jury which deliberated for over six hours, finding that Plaintiff owned the Taurus copyright and that Defendants had access to the work in question. Defendants, it should be noted, spent much time and money contesting these elements, but at time of trial had little, if any, factual support for their defenses. On the third issue, substantial similarity, the jury found for the Defendants. However, had

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

1   certain evidentiary rulings and jury instructions on novel issues—such as the scope of the
2   deposit copy—gone Plaintiff's way, it is entirely possible the jury's verdict would have
3   been different on substantial similarity. Plaintiff notes that his view of the scope of the
4   expression protected by the deposit transcription of Taurus was one recently endorsed by
5   a prior court in this district, *Williams v. Bridgeport Music* (Blurred Lines case). That this
6   Court reached a different legal conclusion on this novel legal issue supports the notion
7   that reasonable minds can differ.

8        Taken as a whole, and especially considering that the jury agreed with Plaintiff that
9   Defendants had access to Taurus—a key consideration in any copyright case—it is quite
10  clear that this lawsuit was not "objectively unreasonable" or frivolous. It was a hard
11  fought case, concerning novel legal issues. Awarding fees in this case would not serve the
12  interests of the Copyright Act. Plaintiff notes that in a highly similar case that went to
13  verdict, *Williams v. Bridgeport Music*, a Court in the Central District concluded that an
14  award of fees was not appropriate. In addition, Defendants' unreasonable contest of
15  ownership/access needlessly increased the case's cost and does not support an award.

16  II.   LEGAL STANDARD

17       "The Supreme Court has adopted the 'evenhanded' approach to the award of
18  attorney's fees in copyright cases." *Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir.
19  2002) (quoting *Fogerty v. Fantasy, Inc.*, 510 US 517, 534 (1994)). "Prevailing plaintiffs
20  and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to
21  prevailing parties only as a matter of the court's discretion." *Fogerty*, 510 U.S. at 534;
22  *see also Seltzer v. Green Day*, 725 F.3d 1170, 1180 (9th Cir. 1980) (citing *Fogerty*, 510
23  U.S. at 533) (noting that "the Supreme Court rejected the so-called British Rule where the
24  loser pays; rather, attorney's fees are left up to the discretion of the district court"). In
25  exercising their discretion, "courts deciding whether to award attorney's fees can look to
26  five non-exclusive factors: (1) the degree of success obtained; (2) frivolousness; (3)
27  motivation; (4) the objective unreasonableness of the losing party's factual and legal
28  arguments; and (5) the need, in particular circumstances, to advance considerations of

compensation and deterrence." *Seltzer*, 725 F.3d at 1180- 81. These five "*Lieb* factors" are nonexclusive.[1] *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). "[C]ourts may not rely on the *Lieb* factors if they are not 'faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Id.* at 558. "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. Free use of ideas is a central purpose of the Act:

> The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' … To this end, copyright assures authors the right to their original expression, but *encourages others to build freely upon the ideas and information conveyed by a work*.

*Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 349–350 (1991) (emphasis added) (citation omitted).

"While it is true that *one* of the goals of the Copyright Act is to discourage infringement, it is by no means the *only* goal of that Act." *Fogerty*, 510 U.S. at 525 (emphasis in original). "[T]he policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Id*. at 526. The Supreme Court stated:

> Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. … [T]he ultimate aim is … to stimulate artistic creativity for the general public good.

*Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156 (1975). Similarly, because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is particularly important that the boundaries of copyright law be demarcated as clearly as possible.

"Granting attorneys' fees is disfavored when a plaintiff pursues an action in good faith in an unsettled area of law and the parties have alike financial resources." *Perfect

---

[1] The *Lieb* (or *Fogerty*) factors are found in *Lieb v. Topstone Indus*., 788 F.2d 151, 156 (3d. Cir. 1986).

*10, Inc. v. Visa Int'l Ass'n, Inc.*, 2005 WL 2007932 at \*4 (N.D. Cal. Aug. 12, 2005)(citing *Lotus Development Corp. v. Borland International*, 140 F.3d 70, 75 (1st Cir. 1998)). Given the "evenhanded approach" to fees, *Berkla*, 302 F.3d at 922, attorney's fees likewise must be disfavored where a defendant defends a claim in good faith in an unsettled area of law against a party with like resources. *See id*; *Perfect 10, Inc.*, v. *CCBill, LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) ("the standards for evaluating whether an award is proper are the same regardless of which party prevails"). When the parties do not have even resources the Ninth Circuit considers "whether an award of attorney's fees would have a chilling effect that is too great or would impose an inequitable burden on an impecunious plaintiff." *See Williams v. Bridgeport Music Inc.*, 13-cv-6004 (April 12, 2016) (ECF No. 554) (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)). In *Seltzer*, the Ninth Circuit vacated the district court's award of fees to the prevailing defendant where the plaintiff was not objectively unreasonable, and it was a "close and difficult case." 725 F.3d at 1181. Frivolousness, bad faith motivation, and objective unreasonableness are important factors. Courts consistently award fees where the losing party's contentions were frivolous or objectively unreasonable[2] and deny fees where the losing party's contentions were not frivolous or objectively unreasonable.[3]

III.   APPLICATION

The lawsuit was objectively reasonable. "Faithfulness to the purposes of the Copyright Act is … the pivotal criterion." *Fantasy*, 94 F.3d at 558. Plaintiff's lawsuit was

---

[2] *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 75 F.3d 1038, 1042-43 (9th Cir. 2014) (awarding fees where the plaintiff's claims were frivolous); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010)(affirming fee award—claims "bordered on frivolous and were not objectively reasonable"); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484 at \*\*9-12 (C.D. Cal. March 24, 2015) (awarding fees—plaintiff had improper motive and claims were objectively unreasonable).

[3] *See, e.g.*, *Perfect 10, Inc.*, 488 F.3d at 1120 (affirming denial of fees where the plaintiff's claims were not objectively unreasonable or frivolous); *Berkla*, 302 F.3d at 924 (same); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (affirming fee denial where claims were not frivolous or in bad faith); *Perfect 10, Inc.*, 2005 WL 2007932 at \*\*3-5 (claims were not objectively unreasonable and there were novel legal issues).

1    faithful to the goals of the copyright act. Every inch of this case was closely fought,

2    including ownership, access, and especially substantial similarity. Plaintiff proved two

3    out of the three elements necessary to establish copyright infringement, ownership and

4    access, despite heavy opposition from Defendants. Even on the element where Plaintiff

5    fell short, substantial similarity, there was competing expert testimony, which largely

6    revolved around the novel legal question of the scope of the composition of Taurus

7    protected by the deposit copy transcription. The case largely came down to the Court's

8    evidentiary rulings, of which Plaintiff had no way to predict beforehand, and on which

9    courts in this district differ. Indeed, the Court's ruling on Defendants' pertinent motion in

10   limine was only a tentative ruling.

11        Troublingly, Defendants' motion barely even applies the *Fogerty* factors in

12   requesting fees, choosing instead to attack Plaintiff's counsel. *See* Def. Memo. at p.5-10.

13   These misguided attacks are addressed and refuted *infra*. Plaintiff notes that in a highly

14   similar case that went to verdict, *Williams v. Bridgeport Music*, a Court in the Central

15   District recently concluded that an award of fees was not appropriate given the novelty of

16   the issues in dispute. *See Williams v. Bridgeport Music*, 13-cv-6004 (April 12, 2016)

17   (ECF No. 554), at p.5.

18       A.   LAWSUIT WAS OBJECTIVELY REASONABLE AND ALTHOUGH A
          DEFENSE VERDICT WAS RETURNED PLAINTIFF PROVED TWO
19        OUT OF THREE OF THE NECESSARY ELEMENTS DESPITE
20        DEFENDANTS' HEAVY OPPOSITION

21        That a party lost does not, in itself, show that its claim was objectively

22   unreasonable. *Seltzer*, 725 F.3d at 1181. Rather, "a claim is objectively unreasonable

23   when the party advancing it 'should have known from the outset that its chances of

24   success in the case were **slim to none**.'" *Giganews, Inc.*, 2015 WL 1746484 at *11

25   (emphasis added) (quoting *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273,

26   1280 (9th Cir. 2013)). In *Seltzer*, the Ninth Circuit held that the plaintiff was not

27   objectively unreasonable where it was a close and difficult case, and the defendant's

28   transformative fair use "was far from obvious." *Id.* ("There is simply no reason to believe

5

that *Seltzer* 'should have known from the outset that [his] chance of success in this case was slim to none[.]'") (citing *SOFA Entm't*, 709 F.3d at 1280).Plaintiff's claims were objectively reasonable. A plaintiff must show ownership of the source copyright, that defendants had a reasonable possibility of access, and that the two works are substantially similar. Defendants vigorously contested all three elements. Despite that opposition, Plaintiff prevailed on the first two elements. Exhibit 4 to Malofiy Decl. –Verdict Form.

### i. PLAINTIFF PROVED OWNERSHIP

Plaintiff proved ownership and standing to sue despite Defendants' opposition. After the close of evidence, Plaintiff asked the court to grant judgment in its favor on ownership. **The Court noted that Defendants had not introduced a single piece of evidence to dispute the Trust's ownership, and appropriately instructed the jury that the Trust was the owner of Taurus.** *See* Trial Transcript, at p.1171. It is, however, necessary to point out the unreasonable and frivolous nature of Defendants' contest of ownership, when this element should have been stipulated to. Just as an award of fees based on frivolousness can be appropriate, it follows that fees can be denied when the prevailing party acted frivolously despite ultimately succeeding on other issues. *See Fogerty*, 510 US at 531-32 (stating that frivolousness is determination in deciding to award fees).

By advancing frivolous arguments, *for which they never produced any evidence or even a witness*, Defendants needlessly increased the cost of this litigation in discovery and at trial—yet they now ask for these fees. Consider, the Trust had Court orders proving that it owned Randy Craig Wolfe's intellectual property, which includes Taurus. *See* ECF No. 149-1, at p.6-9. Defendants nevertheless advanced numerous theories contesting ownership during the case, all of which were completely meritless. These theories included claiming that:

- the Trust had stolen Quinn Wolfe's inheritance and had unclean hands,
- that Taurus was a work for hire, and
- that Randy Wolfe had abandoned his rights in Taurus.

*See, e.g.*, Def. Memo in Support of Summary Judgment, ECF NO. 97-1, at p.5-10.

At summary judgment Defendant primary arguments were that Taurus was a work for hire and that Wolfe had abandoned Taurus. They spent a great amount of time in discovery attempting to develop these arguments. However, after summary judgment was denied, Defendants completely dropped these arguments as there was no actual evidence to support them. *See* ECF No. 200-1, at p.17. Defendant always knew that there was no way that Taurus, written before the pertinent work for hire contract, could be a work for hire, and that legally speaking Wolfe had never abandoned or waived his rights in Taurus. Defendants should not be rewarded with costs and fees when they pushed frivolous arguments at summary judgment that they knew were factually and legally indefensible.

Even after dropping the work for hire and abandonment arguments, Defendants continued to contest ownership by inappropriately and outrageously attempting to prejudice the jury by claiming that the Trust stole Quinn Wolfe's inheritance and had unclean hands. Defendants repeatedly made this argument but never introduced any evidence to support it. Defendants' accusations are contradicted by the aforementioned California probate proceedings, which definitively establish that the Trust was given ownership of Randy Wolfe's intellectual property. It was particularly underhanded for defendants to continuously argue that the Trust stole Quinn Wolfe's inheritance and had unclean hands (implying that it was for personal gain) without any evidence whatsoever, but to simultaneously object to the evidence that the Trust is a charity which gives its funds to buy disadvantaged children musical instruments.

Simply put, the ownership of Taurus was never in doubt. Yet Defendants unreasonably contested this element. Plaintiff's arguments on this point were objectively reasonable and in fact successful as indicated by the Court and jury.

ii.   PLAINTIFF PROVED ACCESS IN SPITE OF PAGE AND PLANT'S LACK OF CANDOR

Likewise, there was never any real doubt that Defendants had a reasonable possibility of access to Taurus. Yet, despite a wealth of evidence to the contrary,

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES

1  defendants Page and Plant claimed they did not remember Spirit and had little

2  recollection of them as a band. At trial it came out that defendant Page owned or

3  possessed five Spirit albums, including the one that contain Taurus. *See* Trial Transcript,

4  at p.359-61. Not only did Page own the critical album, but Led Zeppelin covered a Spirit

5  song named Fresh Garbage, which was off the same side of that Spirit album that also

6  had Taurus on it. *Id.* at p.401. Spirit was the only rock band that Led Zeppelin ever

7  covered. *Id.* at p.1124-25. Furthermore, Led Zeppelin opened for Spirit during their first

8  US show on December 26, 1968, in Denver. *Id.* at p. 173. Mark Andes testified that Spirit

9  played Taurus at that show. *Id.* at p.268-69. Yet, defendant Page incredibly claimed he

10 was never aware that Spirit played that show—despite the fact that Led Zeppelin was

11 covering Spirit's song at the time. *Id.* at p.418-19 ("I didn't know they were on the bill.").

12 Mr. Page, however, told the Richmond News Leader in 1969, just a few months after the

13 Denver show, that Led Zeppelin had played with Spirit on Led Zeppelin's first US tour:

14       Page reflected on Zeppelin's success. "It's kind of funny. On our first tour
15       around, we played second fiddle to other groups. Last time we were the
16       second group and Spirit was the Third. Now we've each gone up one notch."

17 *See* Exhibit 1 to Malofiy Decl. (Trial Exhibit 100158). Defendant Page's testimony that

18 he did not know Spirit was at the Denver show does not appear to have been candid.

19       There were several other moments that called into question defendant Page's

20 candor, such as where he categorically told the jury that he had never seen the band Spirit

21 play a live show. Trial Transcript, at p.395 (Q: "You don't remember seeing Spirit live?"

22 A: "I didn't see Spirit live."). Defendant Page was clear that this was not a question of

23 memory. But, again, Page's past words from an April 1970 interview—before Stairway

24 to Heaven was written—showed that Page had in fact attended many Spirit shows:

25       Spirit do some really nice things on albums. They give a really nice
26       atmosphere when they play and I always enjoy seeing them.

27 ECF No. 124-1, at p.20 (Trial Exhibit 159). Page again reaffirmed this in a 1972

28 interview when he said, "I saw Spirit a couple of times and thought they were very good"

   and that they struck him on an emotional level *See Id.* at p.30 (Trial Exhibit 157). This is

not to mention that an eyewitness, former Spirit bass player Larry Knight, testified at trial that Page attended a Spirit show in 1973, had spoken to him at an after party, and that Page had also met Randy Wolfe at that party. Trial Transcript, at p.575-76.

Defendant Plant's testimony was also less than candid regarding his familiarity with Spirit. He claimed he did not remember attending a Spirit show in 1970 in Birmingham, England, but also claimed that he would have been in the back of the club not paying attention to the music with friends. *Id.* at p.1106-1110. Yet, an eyewitness came forward, Michael Ware, who testified that he saw Robert Plant in the front row of the Spirit show enjoying himself immensely. Mr. Ware's unrebutted testimony, coupled with the knowledge that Led Zeppelin covered Spirit's music live, makes defendant Plant's claim that he did not see or remember the show highly unlikely. This is not to mention that Mark Andes has a vivid and distinct memory of playing snooker and hanging out with Plant and many of the members of Spirit that night after the show. Trial Transcript, at p.279.

Bluntly put, Defendants do not deserve attorney's fees when they were less than candid on the stand about their familiarity with Spirit and Taurus. There was a reason for this lack of candor, because an admission that they knew about Taurus would be devastating to their defense of the case. Access and substantial similarity are inextricably linked. *See Three Boys Music Corp. v. Bolton*, 212 F. 3d 477, 485 (9th Cir. 2000). Yet, Defendants are now filing for costs and fees, arguing that this lawsuit was frivolous. It would be highly inequitable to award feeds in such a situation where Defendants clearly had access to the work in question, are not being candid about that access (false exculpatory statements are evidence of intent and guilt), but are claiming that Plaintiff's lawsuit was so frivolous that Plaintiff should pay their legal bills. This does not add up.

### iii. PLAINTIFF'S SUBSTANTIAL SIMILARITY CASE IS OBJECTIVELY REASONABLE

Plaintiff's claim of substantial similarity was objectively reasonable. Defendants spend less than a page of their brief conclusorily asserting frivolousness and objective

1  unreasonableness. Def. Memo of Law, at p.13-14, 15. *See Williams v. Bridgeport Music*

2  (stating that conclusory and unsupported assertions do not support a cost and fee motion).

3        There is no indication whatsoever that Plaintiff should have known from the outset

4  that he would not prevail on substantial similarity, much less that his chances were slim

5  to none. Indeed, the Court concluded in denying summary judgment that reasonable

6  minds could differ on the subject—even when restricting the substantial similarity

7  comparison to strictly the notes on the deposit transcription of Taurus. *See* ECF No. 159,

8  at p.18. Plaintiff also notes that the Court's rulings on the sound recordings and scope of

9  the deposit copy are relatively uncharted in the case law as this is a new issue that has not

10 been significantly litigated.[4] Plaintiff relied heavily on the *Williams v. Bridgeport Music*

11 case decided in the Central District of California in 2014, *see* ECF No. 169, at p.2-3,

12 which held that it was permissible to look at the composition in the sound recording of a

13 song as long as it was represented in some way in the deposit copy. *See Williams v.*

14 *Bridgeport Music*, 13-cv-6004 (April 12, 2016) (ECF No. 554), at p.5. The Blurred Lines

15 court allowed the experts to interpret the deposit copy and create re-recordings of the

16 sound recording which focused on only the protectable compositional elements in the

17 sound recordings which were represented in the deposit copy (excluding performance

18 elements). *Id.* These re-recordings were admissible in the Blurred Lines case and resulted

19 in a verdict for the claimant. It should be noted that Plaintiff tried to introduce such re-

20 recordings in this case but they were ruled inadmissible.

21       This Court did not agree with the *Williams* court, and instead restricted the

22 comparison to solely the exact notes in the deposit copy of Taurus. Trial Transcript, at

23 p.598-99. Setting aside Plaintiff disagreement with that ruling, there was no way for

24 Plaintiff to know that this would be the ruling of the Court on that critical issue when this

25 suit was filed. *SOFA Entm't.*, 709 F.3d at 1280 (stating objective unreasonableness is

26 determined if a party knew that at the "outset that its chances of success in the case were

27 slim to none"). For Defendants to conclusorily argue that Plaintiff acted frivolously or

28

---

[4] Indeed, prior courts have permitted the sound recordings to be played in cases applying the 1909 Act.

objectively unreasonably is absurd given the novelty of the issue and that different courts
have reached different conclusions on the issue. Plaintiff also had no way of knowing that
the Court would select the jury instructions that it did, which undoubtedly had a large
effect on the outcome of the case. The Court, for instance, completely excluded any
instruction on the inverse ratio rule which provides that as the degree of access shown
increases, the burden to prove substantial similarity proportionally decreases. Trial
Transcript, at p.1202-03. The Ninth Circuit has explicitly held that the access and
substantial similarity are inextricably linked. *See Three Boys Music Corp.*, 212 F. 3d at
485. Plaintiff built a large part of his case around Defendants' obvious access to Taurus,
and was unaware that the Court would omit what Plaintiff viewed as a critical instruction.
Likewise, Plaintiff's expert Dr. Alexander Stewart focused on the combination of
elements in Taurus that were allegedly copied in Stairway to Heaven. *See, e.g.*, Trial
Testimony, at p.645. The Court however failed to instruct the jury that even the
combination of unprotected elements warrants copyright protection.

Defendants' claims of frivolousness and objective unreasonableness are baseless
and use hindsight to make it seem like their prevailing in this case on substantial
similarity was preordained. The fact of the matter is that there is nothing in the record
that shows that Plaintiff "should have known from the outset that its chances of success
in the case were slim to none." *SOFA Entm't.*, 709 F.3d at 1280.

### B. PLAINTIFF'S MOTIVATION WAS, AND IS, PURE

Plaintiff's motivation is pure and is to get Randy Wolfe credit and recognition. *See*
Declaration of Michael Skidmore. Defendants' motion have fails to show any improper
motivation. Indeed, their memorandum's section on motivation is limited to claiming that
Plaintiff's motive was "to try to coerce a massive settlement." *See* ECF No. 293-1, at
p.14. As Defendants well know, Plaintiff's demand was $1 dollar and credit, which they
categorically rejected. *See* Declaration of Francis Malofiy. Moreover, subsequent
demands were based in good faith on the valuation of Dr. Michael Einhorn, a respected
economist. Defendants never introduced an expert to support their ludicrously low

valuation of this claim (of one of the most popular songs in history) at six figures.
Moreover, Defendants repeatedly claimed that the age of this lawsuit means that it is
unreasonable. *See* ECF No. 293-1. They ignore that Plaintiff submitted declarations
showing that Randy Wolfe sought to sue over this claim, but was told it was not possible
due to the statute of limitations. *See* ECF No. 118-5 (Declaration of Linda Mensch). It
was not until 2014, and the <u>Petrella v. MGM</u> decision by the Supreme Court of the
United States, that Plaintiff could sue for this claim. *See* Decl. of Michael Skidmore.

This lawsuit was brought by the Trust in good faith to preserve and promote the
memory of Randy Wolfe, aka Randy California. It has long been suspected by the
musical community that Led Zeppelin copied Taurus to create Stairway to Heav**e**n—the
same way Jimmy Page and Robert Plant admitted copying many other artists they
appreciated. Plaintiff's only goal in filing this lawsuit was to make sure that Randy
California got the credit he deserved, and if the lawsuit had been successful Mr.
Skidmore would have received nothing as the Trust is a charity. Mr. Skidmore has
submitted a declaration in this matter, explaining his motivations and his dedication to
preserving Randy Wolfe's memory. *See generally* Declaration of Michael Skidmore.

## C.   CONSIDERATIONS OF COMPETENCE AND DETERRENCE

Where neither party has an improper motive, both parties have important economic
interests, and the litigation has some importance for copyright law, "there is no need for
deterrence." *Perfect 10, Inc.*, 2005 WL 2007932 at *5 (citing *Lotus Dev. Corp.*, 140 F.3d
at 74). Here, novel legal issues dominated the substantial similarity comparison.
Plaintiff's position was objectively reasonable and not frivolous, as he relied on a Court
in this district that reach a differing conclusion concerning the scope of the deposit copy.
There is therefore nothing that needs to be "deterred" through an award of fees. *Id.*; *see
also, Inhale, Inc.*, 75 F.3d at 1042-43 (affirming fee award in order to deter "'similarly
frivolous claims against innocent Defendants'"); *Bernal*, 2010 WL 6397561 at *2
(awarding fees where lawsuit was objectively unreasonable in order to "promote
deterrence of meritless claims that tend to chill creative expression"). What was litigated

in this case was a dispute concerning the boundaries of copyright law between the 1909 Act and the 1976 Act and the scope of what deposit transcriptions under the 1909 Act protect. Courts in this district have differed on the correct legal interpretation of these issues, and imposing attorney's costs and fees in light of the uncertainty of this area of law could not serve the purposes of deterrence or competence.

When the parties do not have even resources the Ninth Circuit considers "whether an award of attorney's fees would have a chilling effect that is too great or would impose an inequitable burden on an impecunious plaintiff." *See Williams v. Bridgeport Music*, 13-cv-6004 (April 12, 2016) (ECF No. 554) (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003)). Plaintiff notes that in comparison to Defendants, giants in the music industry, the Trust is miniscule. The Trust is a charity. The Trust does not have significant financial resources at its disposal, and what resources it does have are devoted to purchasing instruments for school kids. Imposing costs and fees would have both a chilling effect that is far too great, and would also be inequitable in light of the Trust's purpose and the Trust's limited funds. There is no possible way the Trust could pay a judgment of $700,000 in attorney's costs and fees. *See* Declaration of Michael Skidmore.

## D. DEFENDANTS' CONDUCT DOES NOT WARRANT GRANTING FEES

Although Defendants erroneously focus their motion, not on the *Fogerty* factors prescribed by the Ninth Circuit, but instead on erroneously attacking Plaintiff's counsel (rebutted *infra*), the truth is that it is Defendant and defense counsel's conduct do not warrant granting fees—even setting aside that Defendants drove up the cost of this litigation by making many frivolous legal arguments on ownership and access.

For instance, defense counsel engaged in extraordinarily underhanded behavior during pre-trial activities. Specifically, after discovery closed, but before summary judgment, Defendants apparently worked with Hollenbeck Music, Plaintiff's publisher, to file a copyright correction form with the copyright office to list Taurus as a work for hire. *See* ECF NO. 129-3, at p.7-10. As the Taurus copyright was under litigation, this secretive and fraudulent attempt to change the Taurus copyright's ownership was a

1    breathtaking attempt to improperly undermine Plaintiff's lawsuit. To be clear, the

2    registration was completely false as there is no evidence that Taurus, written in 1966,

3    could have possibly been covered by the work for hire agreement signed in August 1967

4    with Hollenbeck Music. Defendants' knew this, but presented the false registration

5    document to the Court anyway in their summary judgment package. *Id.* Filing a false

6    registration is illegal under the Copyright Act. *See* 17 U.S.C. § 506(e).

7           Moreover, it was also revealed on May 27, 2016, that defense counsel knew of a

8    serious conflict of interest that their musicological expert, Dr. Lawrence Ferrara, had as a

9    result of previously analyzing Taurus for Plaintiff's publisher. *See generally* ECF No,

10   230 (Motion for Sanctions). Defense counsel actively hid this conflict from Plaintiff and,

11   when it was finally discovered at the 11th hour in Dr. Ferrara's deposition, defense

12   counsel nonsensically claimed that Peter Anderson himself had waived the conflict. *Id.* at

13   p.8. But any waiver of a conflict could only come from Plaintiff! During the deposition of

14   Dr. Ferrara, defense counsel Peter Anderson also took Dr. Ferrara out in the hallway and

15   deliberately coached the witness, something that Dr. Ferrara admitted. *Id.* at p.11-12.

16   Plaintiff refers the Court to the motion for sanctions filed against defense counsel for this

17   conduct, all of which was unethical and severely and unduly prejudiced Plaintiff's

18   prosecution of this lawsuit. <u>See</u> ECF No. 230.[5]

19         E.    DEFENDANTS' BASELESS ACCUSATIONS OF MISCONDUCT ARE
               DESIGNED TO HIDE THAT DEFENDANTS DO NOT HAVE A
20             STRONG CASE FOR FEES UNDER THE *FOGERTY* FACTORS

21          Defendants' allegations of misconduct are meritless and insidiously attempt to

22   misconstrue good faith advocacy as "misconduct." It appears that Defendants have kept

23   track of every dispute they had with Plaintiff in this litigation and laundry listed them

24   here. Defendants' list of petty, subjective complaints has nothing to do with the *Fogerty*

25   factors and cannot support the imposition of costs and fees. Awarding fees based on these

26   completely baseless allegations (most of which Defendants do not even explain how they

27

28   _____
     [5] The Court struck the motion stating that it was filed after the motion deadline. However, Plaintiff notes
     that the issue arose on May 27, 2016 and could not have been filed by the February 25, 2016 motion
     deadline.

could possibly constitute misconduct), would chill advocacy to a standstill, and leave counsel for either plaintiffs or defendants second-guessing every step in the litigation. Defendants never filed a motion for sanctions during this case and are only raising these issues now as an improper and underhanded attempt to support a weak motion for costs and fees. At the onset of this case the Court made it clear that it would not entertain misconduct from either side at trial. There was no misconduct at trial.

**Plaintiff Did Not Attempt to Wipe Stairway to Heaven "Off the Map"—Plaintiff Only Wanted a One Third Credit for the Introduction**

For instance, Defendants hyperbolically claim that Plaintiff "attempted to wipe Stairway to Heaven off the map" by including standard Copyright Act language regarding injunctive relief in the Complaint. Def. Memorandum of Law at p.4. But at no point did Plaintiff move for a preliminary injunction or indicate that such a right would be invoked. As Defendants well know asserting the right to relief in a complaint does not mean that a party would exercise those rights. Nothing about including a request for relief in a complaint explicitly authorized by the Copyright Act is improper or warrants fees.

**Plaintiff Never Tried to Introduce Evidence of Prior Settlements**

Defendants also claim that it was misconduct for Plaintiff to attempt to introduce "instances of prior settlements or potential-but-never asserted copyright infringement claims." Def Memo. at p.6. Defendants claim "any reasonable lawyer would have known that prior claims and settlements are irrelevant." *Id.* **Defendants' accusation is false and mispresents Plaintiff's position.** Plaintiff *never* attempted to introduce evidence of prior lawsuits and settlements. Plaintiff instead wanted to show the jury that Led Zeppelin had repeatedly changed the credits on its songs to credit new artists previously omitted. *See* ECF No. 165 ("Defendants desperately attempt to frame this motion as a request to exclude settlement agreements . . . This could not be further from the truth. FN1 [The fact that the credits on the songs changed does not require any evidence of a settlement agreement]. What Plaintiff seeks to disclose is the songwriting method used by Led Zeppelin [] that resulted in numerous occasions of Led Zeppelin having to change the

credit for its songs.”). Defendants Page and Plant admitted using other artists’ work without credit to create Led Zeppelin’s music. Page, for instance, stated in an interview:

> “[A]s far as my end of it goes, I always tried to bring something fresh to anything that I used. I always made sure to come up with some variation. In fact, I think in most cases, you would never know what the original source could be.”

*See* Exhibit 2 – December 1993 Guitar World, at p.50. If defense counsel is going to lob an allegation of misconduct, it should not completely botch Plaintiff’s actual position. This evidence was also admissible under Fed. RE 404(b), as Plaintiff argued in his motion in limine response. *See* ECF No. 165 at p.4. Plaintiff observes that making arguments Defendants disagree with is not misconduct and does not warrant fees.

**Plaintiff Did Not File Frivolous Motions**

Defendants also laundry list several motions they contend constitute misconduct because they were allegedly frivolous. Def. Memo. at p.6-7. These vague assertions are never developed, only listed. Plaintiff examines each of them in turn:

- Plaintiff’s February 2, 2016 Application to Amend Scheduling Order, denied (Doc. No. 95)
  - This was a routine application to extend the discovery deadline, denied at the discretion of the Court. Defendants never explain how the filing of this application could possibly constitute misconduct.
- Plaintiff’s February 25, 2106 Motion to File Amended Complaint to add defendants, denied (Doc. No. 133)
  - Plaintiff only learned of the new potential defendants in 2016 after Defendants produced voluminous damages discovery, totaling over 45,000 pages. This motion was necessitated because Defendants used shell companies to hide their assets. This motion was timely, well supported, and objectively reasonable. Defendants do not explain how filing this motion was unreasonable, much less could possibly constitute misconduct.

16

40

- Plaintiff's March 26, 2016 Motion to withdraw deemed admissions, stricken (Doc. No. 153)

  o Defendants fail to note that although the Court struck this motion as untimely, Plaintiff prevailed on this issue and Defendants' assertion that Plaintiff had admitted Taurus was a work for hire was rejected.

- Plaintiff's May 17, 2016 Motion to Compel the Individual Defendants to Appear for Trial, denied.

  o Defendants refused to represent whether they would appear for trial. This was a basic lack of common courtesy on the part of defense counsel, as Mr. Malofiy had to spend an enormous amount of time editing video to put together designations for Mr. Page, Plant, and Jones in the event they did not appear. As Plaintiff was restricted to 10 hours to present the entire case, this also made scheduling witnesses infinitely harder, many of whom lived hours away. This motion was premised upon the well-recognized ability of the court to control the witnesses in front of it, that Defendants had consented to jurisdiction in California, and also the fact that defendant Plant and Jones had extensive contact with Los Angeles that allowed them to be compelled under FRCP 45. Defendants do not explain how filing this motion constitutes "misconduct" or was unreasonable in light of their basic lack of courtesy to opposing counsel.

- Plaintiff's June 11, 2016 Motion for Sanctions and Exclusion of Defendants' Musicologist, stricken.

  o This motion was stricken as untimely. Respectfully, it should not have been. The misconduct alleged therein, that Defendants hid a conflict of interest for over two years from Plaintiff, was only discovered on May 27, 2016 and could not have been discovered earlier. Plaintiff filed this motion within two weeks of discovery of the misconduct. This motion was extensively detailed and revealed blatantly unethical conduct by defense counsel. Again, Defendants do not explain how it is

17

Plaintiff's counsel who could possibly be accused of misconduct for filing a well-supported sanctions motion.

- Plaintiff's June 12, 2016 Motion for Reconsideration of Court's April 4, 2016 order granting partial summary judgment.
  - The filing of a motion for reconsideration, without some extraordinary showing, cannot be characterized as misconduct. Defendants make no such showing, just the accusation. In fact, that motion was well-supported.

Defendants also ignore that they too had filings stricken. *See* ECF No. 212. As can be seen, Defendants undeveloped and unsupported accusations attempt to misconstrue good faith advocacy as misconduct. This is insidious and should be rejected.

**Plaintiff's Arguments In Favor of Admitting Taurus Sound Recording Were Objectively Reasonable**

Defendants claim that Plaintiff's arguments that the sound recording of Taurus should be admissible were "misconduct." Def. Memo. at p.7-8. Plaintiff strenuously objects, again, to Defendants misconstruing good faith advocacy as something nefarious. Defendants' motion incorrectly asserts that Plaintiff sued over the infringement of the sound recording copyright of Taurus. *See* Def. Memo. at p.7 ("Congress did not extend federal copyright protection to sound recordings . . . until 1971."). But Plaintiff never asserted a sound recording claim, nor did he claim that Defendants sampled Taurus. Again, Defendants' motion alleges that Plaintiff made a frivolous argument, but misconstrues Plaintiff's actual position.

The motion goes on to note that Plaintiff served expert reports comparing the composition of the sound recording of Taurus to the sound recording of Stairway to Heaven. Def. Memo. at p.8. Defendants absurdly claim this was misconduct. Defendants fail to note that other courts in this district, *see Williams v. Bridgeport Music, supra*, have held that the compositional elements in the sound recording of a source song are admissible for the substantial similarity comparison. Different Courts have come to different opinions on this novel issue. This is good faith advocacy and cannot remotely be

1  construed as "misconduct." That the Court sometimes disagreed with some of Plaintiff's

2  positions (as it did Defendants) does not support Defendants' hyperbolic accusations.

3  **Defendants' Miscellaneous Complaints**

4        Having thoroughly mispresented Plaintiff's legal and factual positions, and falsely

5  portrayed good faith advocacy as misconduct, Defendants go on to complain that

6  Plaintiff's counsel spoke to the media about a case for which there was a huge amount of

7  press coverage. Defendants raised this argument before and during trial. The Court never

8  acted on Defendants' objections, despite being well aware of them. When talking to the

9  media, Plaintiff's counsel reiterated positions that had already been in the public record

10  or were argued before the Court. Plaintiff notes that there is no prohibition on speaking to

11  the media, the Courts are public, misinformation needed to be corrected (the Wolfe

12  family had no stake in the suit), and the jury was instructed to not look at any media.

13        Defendants also claim that Plaintiff elicited testimony on the Trust's purpose and

14  goal as a charity from Janet Wolfe. Def. Memo. at p.10. But Janet Wolfe answered the

15  pertinent question the way she did of her own volition; it was not a leading question.

16        Defendants claim that Plaintiff's counsel misrepresented Exhibit 100164, an

17  interview of Page, Plant, and Jones speaking about the creation of Stairway to Heaven, as

18  being recorded in 1972, instead of 1990, as they assert. Defendants never explain how

19  this dispute over the date mattered in the case or how it could have possibly been

20  motivated by bad faith. To the extent that this issue actually mattered, Defendants could

21  have put on evidence by their very own witnesses. They chose not to because it is a

22  nonissue. Plaintiffs' counsel noted in closing that whether the date is 1972 or 1990, it

23  does not change the veracity of Defendants' statements. Trial Transcript, at p.1229.

24        Defendants further claim that Plaintiff's counsel "altered" a photograph of Mark

25  Andes and Robert Plant speaking in a group in the early 1980s. Plant denies knowing

26  Andes, which Plaintiff argues was a falsehood. As with nearly every one of Defendants'

27  laundry list of unsupported allegations of misconduct, this was already raised before the

28  Court repeatedly and ruled upon. Plaintiff objects to the use of the word "alter," as it is

highly deceptive and loaded. Despite Defendants' over-the-top accusation, the truth is much more mundane. While the photo was being pulled as a screenshot off the Getty Images website by Plaintiff's counsel, the website's software partially cropped the photo. The photo was not "altered" in any way. *See* Declaration of AJ Fluehr. Defendants' accusation of misconduct is refuted by the fact that Plaintiff's counsel had previously sent the full picture to Defendants, demonstrating that there was no attempt to put one over on Defendants. Indeed, they saw the discrepancy and objected. Furthermore, the correct remedy would have been to show the full, uncropped picture to the jury—which merely supported Andes testimony that he and Plant had a conversation at that time. Defendants, however, never wanted this damaging piece of evidence shown the jury and seized on this inadvertent cropping as a convenient way to argue it should be excluded.

IV.    APPORTIONMENT AND CUTTING REQUESTED COSTS AND FEES

The fact is that the Trust is very small when compared to Defendants, financially speaking, and that Defendants focused a large part of their advocacy in this case on disputing ownership and access issues, when they knew their arguments were unsupportable, warrants the Court cutting the costs and fees—provided the Court decides costs and fees should be imposed. *Ryan v. Editions Ltd. West, Inc.*, 786 F. 3d 754, 763 (9th Cir. 2015) (stating that Court may reduce fees for excessive and unreasonable hours); *Schwarz v. Secretary of Health & Human*, 73 F. 3d 895 (9th Cir. 1995) (stating court authorized to make "across-the-board percentage cuts" of final lodestar figure).

V.    CONCLUSION

Plaintiff asks that this motion be denied as the lawsuit was objectively reasonable, hard fought, and was filed with the best of motivations. The purpose of the Copyright Act would not be served in imposing costs and fees, especially given the enormous discrepancy between Defendants, who are titans in the music industry, and the Trust which is a small charity.

Dated:  July 18, 2016                              FRANCIS ALEXANDER, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esq.
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

Plaintiff hereby represents that PLAINTIFF'S RESPONSE TO MOTION FOR ATTORNEY's

COSTS AND FEES has been served upon counsel by electronic filing:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones*
*(collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*


Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp.,*
*Warner/Chappell Music, Inc., Atlantic Recording Corporation, and*
*Rhino Entertainment Company*


*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Alexander Malofiy*
Francis Alexander Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*/d/ July 18, 2016*

Tab 6

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000; F: (215) 500-1005
E: francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq. (SBN 082170)
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T: (310) 557-9200; F: (310) 557-0224
E: gkulik@kgslaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY,<br><br>Defendants. | Case No. 15-cv-03462 RGK (AGRx)<br><br>Hon. R. Gary Klausner<br><br>**DECLARATION OF FRANCIS MALOFIY IN OPPOSITION TO DEFENDANTS' MOTIONS FOR COSTS AND FEES**<br><br>Filed concurrently with Motion Response; and [Proposed] Order<br><br>Trial Date: August 8, 2016<br>Time: 1 p.m.<br>Courtroom: 850 |

I, Francis Malofiy, declare:

1.     I am an attorney in the law firm of Francis Alexander, LLC, and I represent Plaintiff Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust in the above-captioned matter.  I have personal knowledge of the facts recited below, and, if called as a witness, I could and would testify competently to the facts contained in this declaration.

2.     I took this case on contingency, and have expended a great deal of time, effort, and money bringing it to trial, because I believe that it is a meritorious claim. I would not have done so if I believed that the chances of success were not in Plaintiff's favor. I am a musician myself and understand the musical issues involved.

3.     This case has always been about giving credit where credit is due. During settlement negotiations for this case I always told Defendants that Plaintiff would settle for $1.00 and credit. Defendants never accepted this demand. All other, subsequent, settlement demands were based on the incredible earning power Stairway to Heaven has as one of the most popular songs on the planet. Defendants' accusation that I attempted to "coerce" a "massive settlement" is completely false in all respects.

4.     A true and correct copy of Exhibit 1 – 1969 Richmond News Leader Jimmy Page Interview (Trial Exhibit 100158), is attached to this declaration.

5.     A true and correct copy of Exhibit 2 – Dec. 1993 Guitar World Interview with Jimmy Page, is attached to the declaration.

6.     A true and correct copy of Exhibit 3 – Trial Transcript Excerpts, is attached to this declaration

7.     A true and correct copy of Exhibit 4 – Jury Verdict Form, is attached to this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of July 18, 2016 at Media, PA.

1

2

/s/ *Francis Malofiy*
Francis Malofiy

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tab 7

1  Francis Malofiy, Esq.
2  Francis Alexander, LLC
   280 N. Providence Rd. | Suite 1
3  Media, PA 19063
4  T:  (215) 500-1000; F:  (215) 500-1005
   E:  francis@francisalexander.com
5  *Attorney for Plaintiff*

6
   Glen L. Kulik, Esq. (SBN 082170)
7  Kulik Gottesman & Siegel LLP
8  15303 Ventura Blvd., Suite 1400
   Sherman Oaks, CA 91403
9  T:  (310) 557-9200; F: (310) 557-0224
10 E:  gkulik@kgslaw.com
   *Attorney for Plaintiff*
11

12               **UNITED STATES DISTRICT COURT**

13           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 | MICHAEL SKIDMORE, as Trustee for     | Case No. 15-cv-03462 RGK (AGRx)
15 | the RANDY CRAIG WOLFE TRUST,         |
   |                                       | Hon. R. Gary Klausner
16 |              Plaintiff,               |
17 |                                       | **DECLARATION OF MICHAEL**
   |       v.                              | **SKIDMORE OPPOSING**
18 |                                       | **DEFENDANTS REQUEST FOR**
19 | LED ZEPPELIN; JAMES PATRICK           | **COSTS AND FEES**
   | PAGE; ROBERT ANTHONY PLANT;           |
20 | JOHN PAUL JONES; SUPER HYPE           |
21 | PUBLISHING, INC.; WARNER MUSIC        |
   | GROUP CORP., Parent of                |
22 | WARNER/CHAPPELL MUSIC, INC.;          |
23 | ATLANTIC RECORDING                    |
   | CORPORATION; RHINO                    |
24 | ENTERTAINMENT COMPANY,                |
25 |                                       |
   |              Defendants.              |
26
27
28

I, Michael Skidmore, declare:

1.    I have personal knowledge of the facts recited below, and, if called as a witness, I could and would testify competently to the facts contained in this declaration.

2.    Firstly, I understand why the judge did what he did with regards to not allowing the jury to know who the beneficiaries were because he felt that knowing the money went to charitable purposes would be prejudicial, but now I believe these facts are 100% pertinent because without them everything is skewed in an incorrect and biased fashion that favors multi-national corporations. The Trust is a charity and all income provides instruments to children in public schools who cannot afford them.

3.    I have spent the best part of two decades helping promote the music and legacy of my friend Randy California's music. He died in a tragic accident saving his son. This has been a labor of love, but I have done it because I believe in his talent, and also for his family, friends and the fans. There are some things that you believe in and some that are just simply right.

4.    As Trustee for his estate I have taken my fiduciary responsibilities extremely seriously. I have ensured that the funds garnered from song writing royalties and albums that I have produced and released (often at a personal cost to myself) have gone to the intended beneficiaries, that is children in the public school systems to provide instruments and tuition for children that could not afford them. I do not profit from this endeavor. Each year the net income has to be distributed to the beneficiaries. My reward is knowing the funds go to a good cause.

5.    I carefully reviewed this lawsuit at all stages, including after the judge denied summary judgment to Defendants. At no point did I find it to be frivolous, and I firmly believe that that the lawsuit was reasonable, and still do.

6.    I found the personal vilification of myself and the Trust by defendants counsel to be extremely unprofessional, unwarranted and intimidating.

7.     For over two years they have intimidated me and tried to conjure the illusion that I am a vile person with unclean hands that benefited at the expense of someone else (especially during my deposition); even though I have adhered strictly to my responsibilities as trustee of the Randy Craig Wolfe Trust carrying out the wishes of his late mother (the original trustee) and have ample proof of these facts. Despite the fact that defendants' lawyers spent a huge amount of time trying to show that I was not the correct Trustee (a fact not disputed in years) and that the Trust didn't own the copyright to "Taurus," they were unsuccessful at trial.

8.     What I have done is with heartfelt passion and a feeling that I knew I was doing the right thing.  Once I understood in 2014 that there was a chance that Randy California could possibly get the credit he was due thanks to a Supreme Court ruling (*Petrella v. MGM*) I went forward. For decades before his death, Randy California consulted with attorneys to assert his right in Taurus but was told that he could not do so because of the statute of limitations.

9.     I work two jobs, one as a compliance manager and the other as a Customs Consultant. I lost a huge amount of work bringing and supporting this case, but I did it because I believed it was right.

10.     I had no motivation in filing this suit but did so to abide by my fiduciary obligations and to preserve the memory of Randy Craig Wolfe.

11.     The Trust has no way to pay for requested costs and fees, which far exceed the Trust's income and assets. As stated earlier, I am obligated on an annual basis to distribute all income to the benefit of children in public schools that cannot afford musical instruments, in the name of Randy California, so the trust has no independent income. What comes in goes out.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of July, 2016 at Quincy, Massachusetts.

1

/s/ Michael Skidmore

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

53

DECLARATION OF MICHAEL SKIDMORE OPPOSING
DEFENDANTS REQUEST FOR COSTS AND FEES

# Tab 8

1   Francis Malofiy, Esq.
2   Francis Alexander, LLC
    280 N. Providence Rd. | Suite 1
3   Media, PA 19063
4   T:  (215) 500-1000; F:  (215) 500-1005
    E:  francis@francisalexander.com
5   *Attorney for Plaintiff*

6
    Glen L. Kulik, Esq. (SBN 082170)
7   Kulik Gottesman & Siegel LLP
8   15303 Ventura Blvd., Suite 1400
    Sherman Oaks, CA 91403
9   T:  (310) 557-9200; F: (310) 557-0224
10  E:  gkulik@kgslaw.com
    *Attorney for Plaintiff*

11

12              **UNITED STATES DISTRICT COURT**

13         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  MICHAEL SKIDMORE, as Trustee for | Case No. 15-cv-03462 RGK (AGRx) |
| 15  the RANDY CRAIG WOLFE TRUST, | |
| 16 | Hon. R. Gary Klausner |
|     Plaintiff, | |
| 17 | **DECLARATION OF AJ FLUEHR IN** |
|     v. | **OPPOSITION TO DEFENDANTS'** |
| 18 | **MOTIONS FOR COSTS AND FEES** |
| 19  LED ZEPPELIN; JAMES PATRICK | |
|     PAGE; ROBERT ANTHONY PLANT; | Filed concurrently with Motion |
| 20  JOHN PAUL JONES; SUPER HYPE | Response; and [Proposed] Order |
| 21  PUBLISHING, INC.; WARNER MUSIC | |
|     GROUP CORP., Parent of | Trial Date:  August 8, 2016 |
| 22  WARNER/CHAPPELL MUSIC, INC.; | Time:  1 p.m. |
| 23  ATLANTIC RECORDING | Courtroom:  850 |
|     CORPORATION; RHINO | |
| 24  ENTERTAINMENT COMPANY, | |
| 25 | |
|     Defendants. | |
| 26 | |
| 27 | |
| 28 | |

I, AJ Fluehr, declare:

1.      I am an attorney in the law firm of Francis Alexander, LLC, and I represent Plaintiff Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust in the above-captioned matter.  I have personal knowledge of the facts recited below, and, if called as a witness, I could and would testify competently to the facts contained in this declaration.

2.      Defendants have complained that a photograph depicting Robert Plant and Mark Andes speaking while Mr. Andes was a member of Heart was "altered."

3.      I have personal knowledge that this is absolutely false.

4.      While compiling the exhibit list, I was given a link to the Getty Images website and subsequently screenshotted the photo. Attached as Exhibit 1 is the picture included in the exhibit list. The link is: http://www.gettyimages.co.uk/event/classic-entertainment-bestsellers-from-hulton-archive-1980s-146427040#british-musician-robert-plant-visits-members-of-the-rock-group-heart-picture-id3460358.

5.      At the time I screenshotted the picture, I did not realize that the Getty Images website had automatically cropped the picture based on the size of the browser window (I was using Firefox).

6.      Attached as Exhibit 2 is a full screen shot of the Firefox browser demonstrating how the Getty Images website subtly crops the photo based on window size. Attached as Exhibit 3 is the full photo.

7.      Defendants' accusation that the photo was "altered" is completely false, and any cropping of the photo was unintentional. Nothing about this photo was altered.

8.      Defendants were given the full photo by local counsel Glen Kulik— which clearly refutes Robert Plant's denial that he knew Mark Andes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2016 at Media, PA.


/s/ *AJ Fluehr*
AJ Fluehr

# Exhibit 1

57



British musician Robert Plant visits members of the rock group Heart after their performance in Milton Keynes, England, circa 1980s. (L-R) Ann Wilson, Ro...
Carmassi and Howard Leese talk on the... More

January 01, 1980 | License

Keywords: Concert People Performance Full Length Outdoors

535-0001

# Exhibit 2

59



# Exhibit 3

61



# Tab 9

1 | Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
2 | LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
3 | 100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
4 | Tel: (310) 260-6030
Fax: (310) 260-6040
5 | Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
6 | PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7 | ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
8 | MUSIC GROUP CORP.

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

| | |
|---|---|
| 12 MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| 13        Plaintiff, | |
| 14    vs. | DEFENDANT WARNER/ CHAPPELL MUSIC, INC.'S NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES |
| 15 LED ZEPPELIN, *et al.*, | |
| 16        Defendants. | Date: August 8, 2016 Time: 9:00 a.m. |
| 17 | |

Courtroom of the Honorable
R. Gary Klausner
United States District Judge

63

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 8, 2016, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 850 of the above-entitled District Court, located at 255 East Temple Street, Los Angeles, California, defendant Warner/Chappell Music, Inc. ("Warner/Chappell") will move the above-entitled Court, the Honorable R. Gary Klausner, United States District Judge presiding, for an award of attorneys' fees Warner/Chappell incurred in defendants' successful defense of this action.

Warner/Chappell's Motion for attorneys' fees is brought on the grounds that, as stated more fully in the accompanying Memorandum of Points and Authorities:

1.     Defendants prevailed in this action and on plaintiff's claims for copyright infringement and right of attribution;

2.     The award of attorneys' fees is appropriate under 17 U.S.C. Section 505, including because defendants' successful defense of plaintiff's copyright claims fulfilled and promoted the purposes and policies of the Copyright Act, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994);

3.     Plaintiff's claims for copyright infringement and right of attribution all arose from the same core facts or related legal theories and, as a result, the attorneys' fees in defending the entire action are recoverable; and

4.     The $613,471 in attorneys' fees incurred by Warner/Chappell from the inception of this action in 2014 in the Eastern District of Pennsylvania through discovery, pretrial and trial in this District, are reasonable

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations and Exhibits filed with this Notice of Motion and Motion, the pleadings, and papers on file in this action, the

64

matters of which this Court may take judicial notice, and such additional matters and oral argument as may be offered in support of the Motions.

This Motion is made following the conference with plaintiff's counsel pursuant to Local Rule 7-3, which took place on June 30, 2016.

Dated: July 7, 2016

_____/s/ Peter J. Anderson_____
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

65

# Tab 10

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                  **WESTERN DIVISION**

12  MICHAEL SKIDMORE, *etc.*,           )  Case No. 2:15-cv-03462 RGK (AGRx)
                                        )
13            Plaintiff,               )
                                        )
14       vs.                            )  DEFENDANT WARNER/
                                        )  CHAPPELL MUSIC, INC.'S
15  LED ZEPPELIN, *et al.*,             )  MEMORANDUM OF POINTS AND
                                        )  AUTHORITIES IN SUPPORT OF
16            Defendants.              )  MOTION FOR AWARD OF
                                        )  ATTORNEYS' FEES
17  _____       )
                                        )  Date: August 8, 2016
18                                         Time: 9:00 a.m.

19                                         Courtroom of the Honorable
                                           R. Gary Klausner
20                                         United States District Judge

21

22

23

24

25

26

27

28

66

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

1.    SUMMARY OF ARGUMENT ....................................................................1

2.    WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS'
FEES .......................................................................................................2

    (a)    The Court's Broad Discretion to Award Attorneys' Fees in Order
to Further the Copyright Act's Goal of Encouraging a Defendant's
Litigation of a Meritorious Defense.......................................................2

    (b)    Warner/Chappell Is Properly Awarded Attorneys' Fees Incurred in
Successfully Defending Plaintiff's Copyright Infringement
Claims ..................................................................................................3

        (1)    Defendants' Successful Defense of Plaintiff's Infringement
Claims Furthered the Policies of the Copyright Act ....................3

        (2)    Plaintiff's Extensive and Ongoing Litigation Misconduct
Also Justifies the Award of Defendants' Attorneys' Fees ............5

            i.    *Plaintiff's Filing of Complaints with Improper
Allegations and in the Wrong Court, Followed by
Plaintiff's Repeated Filing of Meritless Motions* ...............5

            ii.    *Plaintiff – Ignoring Clear Law that there Is No
Copyright in the* Taurus *Sound Recording – Served
Inadmissible Expert Reports, Forcing Warner/Chappell
to Incur Additional Attorneys' Fees and Expert Fees*........7

            iii.    *Plaintiff's Complete Failure to Comply with LR 16
and the Court's Order* Re *Pretrial Obligations*.................8

            iv.    *Plaintiff's Misconduct up to and throughout Trial* ............9

        (3)    The Factors Mentioned in Fogerty Also Confirm that
Attorneys' Fees Are Properly Awarded .....................................12

            i.    *The Degree of Success Obtained on the Claim* ................13

i

67

1              ii.    *Frivolousness of Plaintiff's Position* ...................................13

2              iii.   *The Parties' Respective Motivations* ...............................14

3              iv.    *Objective Reasonableness of Factual and Legal*

4                     *Positions* ..............................................................................15

5              v.     *The Need  in Particular Circumstances to Advance*

6                     *Considerations of Compensation and Deterrence* ............15

7        (c)   Apportionment of Attorneys' Fees between Plaintiff's Copyright

8              Claims and "Right of Attribution" Claim Would Be Improper: the

9              Claims are "Related Claims" Arising from the Same Core Facts .........16

10       (d)   The Amount of Attorneys' Fees Claimed Is Reasonable ....................17

11             (1)    Calculating the Lodestar Figure ..................................17

12             (2)    *Kerr* Factors Confirm the Fee Is Reasonable ............................19

13   3.   CONCLUSION ...............................................................................20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

68

# TABLE OF AUTHORITIES

**CASES**

*Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434
   (7th Cir. 2004) ..........................................................................................15

*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242
   (W.D. Wash. 2015) ....................................................................................13

*Discovery Communications, Inc., v. Animal Planet, Inc.*, 172 F.Supp.2d 1282
   (C.D. Cal. 2001) ........................................................................................17

*Dowling v. United States*, 473 U.S. 207 (1985) ...........................................7

*Eagle Serv. Corp. v. H2O Industr. Serv. Inc.*, 532 F.3d 620 (7th Cir. 2008).............15

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
   122 F.3d 121 (9th Cir. 1997), *cert. denied* 523 U.S. 1021 (1998)...........................17

*Fantasy, Inc. v. Fogerty*, 94 F.3d 55 (9th Cir. 1996)....................................13

*Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994) ...................... 2, 3, 4, 12, 13, 14, 15, 16

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072
   (9th Cir. 2006) ...........................................................................................14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)..................................................17

*Historical Research v. Cabral*, 80 F.3d 377 (9th Cir. 1996)......................................3

*In re Francis Malofiy*, No. 15-2472, 2016 WL 3553258
   (3d Cir. June 30, 2016)................................................................................5

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)....................................13

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 61 (9th Cir. 1993) ............................. 17, 19

*Kerr v. Screen Actors Guild, Inc.* 526 F. 2d 67 (9th Cir. 1975), *cert. denied*
   425 U.S. 951 (1976) ..................................................................................19

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ........................ 2, 5, 12

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996)....................................3

*Marino v. Usher*, No. CIV. 11-6811, 2014 WL 2116114
   (E.D. Pa. May 21, 2014) .............................................................................5

69

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*

  545 U.S. 1114 (2005) ...................................................................................8

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ........................................14

*Stewart v. Abend*, 495 U.S. 207 (1990) ....................................................19

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ......................................14

*The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829  (9th Cir. 2003) ............17

**STATUTES**

17 U.S.C. § 102 ............................................................................................3

17 U.S.C. § 103 ............................................................................................4

17 U.S.C. § 505 ............................................................................................2

Cal. Civ. Code § 35 ......................................................................................6

Cal. Prob. Code § 6710 ................................................................................6

**OTHER AUTHORITIES**

Copyright Office Compendium § 313.4 ......................................................14

Copyright Office Compendium § 802.5 ......................................................14

**RULES**

Cal. R. Prof. Responsibility 5-120 .............................................................10

Cal. R. Prof. Responsibility 5-200 ...................................................... 11, 12

L. R. 83-3.1.2 ..............................................................................................10

70

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.     SUMMARY OF ARGUMENT

Defendant Warner/Chappell Music, Inc. ("Warner/Chappell") respectfully submits this Memorandum in support of its Motion for the $613,471 in attorneys' fees it incurred in the successful defense of plaintiff's copyright infringement claims and "right of attribution" claim, on behalf of all defendants.

Plaintiff filed this action on May 31, 2014 in the District Court for the Eastern District of Pennsylvania, asserting nearly half-century-old claims that neither Randy Wolfe nor the owner of the allegedly-infringed copyright ever bothered to assert because any similarity between *Taurus* and *Stairway to Heaven* results from the use of a centuries-old, public domain descending chromatic line.  Defendants prevailed at trial, and the award of the attorneys' fees Warner/Chappell incurred is appropriate.

Attorneys' fees are properly awarded in order to encourage and reward the litigation of a meritorious defense, in this case ensuring the continued availability of *Stairway to Heaven* – which plaintiff asked the Court to order enjoined and to have all recordings and sheet music destroyed – and defendants thereby furthered the Copyright Act's ultimate purpose.  *See, below* at 2-5.  In addition, attorneys' fees are properly awarded because of plaintiff's litigation misconduct at every step of this case, from its inception through and including jury deliberations.  *See, below* at 5-12.  Also, attorneys' fees are properly awarded because, *e.g.*, defendants achieved complete success in defending plaintiff's objectively unreasonable positions.  *See, below* at 12-16.  And, no apportionment of attorneys' fees between plaintiff's copyright and "right of attribution" claims is required because the claims arise from a common core of facts and legal theory.  *See, below* at 16-17.  Finally, the amount of fees sought is reasonable.  Indeed, although the individual defendants also incurred substantial attorneys' fees for representation by their New York counsel, the individuals do not seek the award of those fees.  *See, below* at 17-20.

Warner/Chappell respectfully submits that its Motion should be granted.

71

**2.**     **WARNER/CHAPPELL SHOULD BE AWARDED ATTORNEYS' FEES**

    **(a)**     **The Court's Broad Discretion to Award Attorneys' Fees in Order to Further the Copyright Act's Goal of Encouraging a Defendant's Litigation of a Meritorious Defense**

The Supreme Court recently confirmed and clarified the standards applicable to a request for attorneys' fees under the Copyright Act. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016).

The Copyright Act provides that "the court may . . . award a reasonable attorney's fee to the prevailing party . . . ." 17 U.S.C. § 505. The Court has "broad leeway . . ." in awarding attorneys' fees (*Kirstaeng*, 136 S. Ct. at 1985) and "fee awards under § 505 should encourage the types of lawsuits that promote" the Copyright Act's "well settled" objective of "ultimately serv[ing] the purpose of enriching the general public through access to creative works." *Kirtsaeng*, 136 S. Ct. at 1986, *quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

In exercising its discretion, "a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Id.*, *quoting Fogerty*, 510 U.S. at 533; *Kirtsaeng*, 136 S. Ct. at 1985 ("§ 505 grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case"). Also, "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'" *Id.*, *quoting Fogerty*, 510 U.S. at 527.

Further, whether the losing party had an objectively reasonable position may be a factor, but it is "not the controlling one." *Kirtsaeng*, 136 S. Ct. at 1988, & at 1989 (Second Circuit "Court of Appeals' language at times suggests that a finding of reasonableness raises a presumption against granting fees, . . . and that goes too far in cabining how a district court must structure its analysis . . ."). Instead, "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they

72

1   must take into account a range of considerations beyond the reasonableness of

2   litigating positions . . . .  For example, a court may order fee-shifting because of a

3   party's litigation misconduct, whatever the reasonableness of his claims or

4   defenses." *Id.* at 1988-89.  The Court may also consider "frivolousness, motivation,

5   objective unreasonableness[,] and the need in particular circumstances to advance

6   considerations of compensation and deterrence." *Id.* at 1985, *quoting Fogerty,* 510

7   U.S. at 534, n. 19.  Ultimately, however, "courts must view all the circumstances of

8   a case on their own terms, in light of the Copyright Act's essential goals."

9   *Kirtsaeng*, 136 S. Ct. at 1989.

10       Applying these principles, Warner/Chappell should be awarded fees.

11     **(b)**    **Warner/Chappell Is Properly Awarded Attorneys' Fees Incurred in**

12          **Successfully Defending Plaintiff's  Copyright Infringement Claims**

13      **(1)**    **Defendants' Successful Defense of Plaintiff's Infringement**

14          **Claims Furthered the Policies of the Copyright Act**

15       By successfully defending against plaintiff's claims for direct, contributory

16   and vicarious copyright infringement, defendants fulfilled the "pivotal criterion" of

17   furthering the Copyright Act's purpose.  *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558

18   (9th Cir. 1996); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996)

19   ("This court has emphasized that in considering motions for attorney's fees under §

20   505 of the Copyright Act, the district court should 'seek to promote the Copyright

21   Act's objectives'"), *quoting Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th

22   Cir. 1996).  "[C]opyright law ultimately serves the purpose of enriching the general

23   public through access to creative works, . . . ."  *Fogerty*, 510 U.S. at 527.

24   Oftentimes, the defendant has his own copyrighted work and he furthers the policy

25   of encouraging the public's access to creative works by protecting his work from the

26   plaintiff's challenge of infringement.  *Id.* at 526.  That was the case here.

27       The musical composition *Stairway to Heaven* is a work protected by

28   copyright.  17 U.S.C. § 102(a)(2) ("Works of authorship include . . . musical

73

1   works").  Plaintiff stated that *Stairway to Heaven* "is universally acknowledged as

2   one of the greatest songs ever written."  Pltf's First Am. Complaint ("FAC") (Doc.

3   31) at 11, ¶ 56.  Yet, plaintiff not only tried to tar *Stairway to Heaven* and its

4   authors, Jimmy Page and Robert Plant, but by claiming infringement he also

5   challenged *Stairway to Heaven*'s copyright.  17 U.S.C. § 103(a) (copyright "does not

6   extend to any part of the work in which [preexisting] material has been used

7   unlawfully").   Further, plaintiff expressly sought to deprive the public of the

8   *Stairway to Heaven* musical composition and recordings and sheet music of that

9   composition, praying in both his complaints for "[i]Injunctive and other equitable

10  relief inclusive of but not limited to <u>impoundment, destruction, and halting of sales</u>

11  <u>of" *Stairway to Heaven* recordings and sheet music</u>.  Complaint (Doc. 1) at 28, ¶ (f);

12  FAC at 31, ¶ (f).  <u>Defendants successfully defended plaintiff's attempt to wipe</u>

13  <u>*Stairway to Heaven* off the map and, in doing so, defendants furthered the important</u>

14  <u>copyright "purpose of enriching the general public through access to creative works,</u>

15  <u>. . . ."</u> *Fogerty*, 510 U.S. at 527.

16       Also, to ensure a proper balance of competing interests, copyright rights are

17  carefully "limited" by the Copyright Act.  *Id.* at 526-27.  As a result, "it is peculiarly

18  important that the boundaries of copyright law be demarcated as clearly as possible"

19  and the "successful defense of a copyright infringement action may further the

20  policies of the Copyright Act every bit as much as a successful prosecution of an

21  infringement claim . . . ."  *Id.* at 527.  Here, defendants successfully established that

22  the claimed similarities are limited to public domain elements such as a descending

23  chromatic line and the random pitches plaintiff's experts plucked from the *Taurus*

24  and *Stairway to Heaven* compositions.  Defendants' successful defense served the

25  "peculiarly important" copyright policy of demarcating "the boundaries of copyright

26  law," by establishing that use of these commonplace musical elements does not

27  support an infringement claim.  Awarding defendants their attorneys' fees is

28  important because "defendants who seek to advance a variety of meritorious

74

1  copyright defenses should be encouraged to litigate them . . . ." *Id.*; *see, also*

2  *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir.

3  1996) (affirming award of attorneys' fees to prevailing defendant).

4      This is a text-book example of the "successful defense of a copyright

5  infringement action . . . furthering the policies of the Copyright Act every bit as

6  much as a successful prosecution of an infringement claim by the holder of a

7  copyright." *Id.* For that reason alone, attorneys' fees are properly awarded.

8      **(2)    Plaintiff's Extensive and Ongoing Litigation Misconduct Also**

9      **Justifies the Award of Defendants' Attorneys' Fees**

10      The Supreme Court also confirmed that the "court may order fee-shifting

11  because of a party's litigation misconduct, whatever the reasonableness of his claims

12  or defenses." *Kirtsaeng*, 136 S. Ct. at 1988-89. Here, plaintiff's misconduct in

13  litigation started with the filing of his complaint in the wrong court with scurrilous

14  and improper allegations, and continued unabated into the Jury's deliberations when

15  he falsely represented to the Court that the video exhibit the Jury requested had

16  never been played during the trial.[1]

17      ***i.  Plaintiff's Filing of Complaints with Improper***

18      ***Allegations and in the Wrong Court, Followed by***

19      ***Plaintiff's Repeated Filing of Meritless Motions***

20      Despite the fact that <u>no defendant</u> has offices or any jurisdictional presence in

21  Pennsylvania, plaintiff filed this action in the Eastern District of Pennsylvania.

---

[1]    Plaintiff's Philadelphia counsel's misconduct in this case is a continuation of the misconduct that earned him a substantial monetary sanction as well as a three-months-and-a-day suspension in the Eastern District of Pennsylvania. *In re Francis Malofiy*, No. 15-2472, 2016 WL 3553258 (3d Cir. June 30, 2016); *Marino v. Usher*, No. CIV. 11-6811, 2014 WL 2116114, at *1 (E.D. Pa. May 21, 2014) ("Throughout this copyright litigation, Plaintiff's Counsel, Francis Malofiy, has behaved in a flagrantly unprofessional and offensive manner"). Plaintiff, having chosen his Philadelphia counsel despite the charges and pending suspension, ratified his counsel's ongoing misconduct in this action.

75

Further, he fought to keep it there, putting forth objectively unreasonable arguments that, although rejected by the District Court (*Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 587-88 (E.D. Pa. 2015)), nevertheless forced defendants to retain local counsel and incur unnecessary fees in establishing that the case did not belong there.

Plaintiff also included in his complaints improper and false factual allegations.

For example, to sully the reputations of the individual defendants plaintiff listed purported instances of prior settlements or potential-but-never-asserted copyright infringement claims. Complaint at 4, ¶10; FAC at 4, ¶ 10). Plaintiff never even attempted <u>to prove</u> the validity of those claims <u>and</u> any reasonable lawyer would have known that prior claims and settlements are irrelevant. *United States v. Bailey*, 696 F.3d 794, 800-01 (9th Cir. 2012) ("There is no logical relevancy to admitting this type of evidence."); Fed. R. Evid. 404(a)(1) & 408.

As another example, plaintiff repeatedly alleged that the 1967 Exclusive Songwriter's and Composer's Agreement between Hollenbeck Music and Randy Wolfe, which expressly provides it is governed by California law, is "void" because Wolfe was a minor at the time and the 1967 Agreement was not approved by a California court. Complaint at 6-7, ¶¶ 22-30. No reasonable plaintiff would make, let alone persist in making those allegations given that (1) a minor's contract is valid unless promptly disaffirmed upon the minor attaining majority (Cal. Civ. Code § 35, now Cal. Prob. Code § 6710); (2) plaintiff continues to this day to receive and accept Hollenbeck's royalty payments under the 1967 Agreement; and (3) a simple search of the Court records confirms that the 1967 Agreement was approved by the Superior Court in 1967. Order approving Agreement, Trial Exh. 2060. Yet, with no legal basis, plaintiff repeatedly suggested at trial that the 1967 Agreement is invalid.

Plaintiff also filed a series of applications and motions, each of which lacked merit and was denied or stricken by the Court, including:

- Plaintiff's February 2, 2016 Application to Amend Scheduling Order, denied (Doc. 95);

76

- Plaintiff's February 25, 2016 Motion to file Amended Complaint to belatedly add defendants, denied (Doc. 133);

- Plaintiff's March 26, 2016 Motion to withdraw deemed admissions, stricken (Doc. 153)

- Plaintiff's May 17, 2016 Motion to compel the individual defendants to appear for trial, denied (Doc. 224);

- Plaintiff's June 11, 2016 Motions for sanctions and the exclusion of defendants' musicologist, stricken (Doc. 233); and

- Plaintiff's June 12, 2016 Motion for reconsideration of the Court's April 4, 2016 Order granting defendants partial summary judgment, stricken (Doc. 233).

Plaintiff's meritless filings not only imposed substantial additional burdens on the Court, but caused Warner/Chappell to incur additional attorneys' fees, including in filing opposition papers.

### ii. *Plaintiff – Ignoring Clear Law that there Is No Copyright in the* **Taurus** *Sound Recording – Served Inadmissible Expert Reports, Forcing Warner/Chappell to Incur Additional Attorneys' Fees and Expert Fees*

Plaintiff specifically sued for infringement of the copyright in the *Taurus* musical composition registered with the Copyright Office in 1968. Complaint at 7, ¶ 34. And the law is unequivocally clear that the pre-February 15, 1972 *Taurus* sound recordings are not protected by that copyright. *Dowling v. United States*, 473 U.S. 207, 211 n. 4 (1985) ("Congress did not extend federal copyright protection to sound recordings until the Sound Recording Act of 1971 . . . and then only to sound recordings fixed after February 15, 1972"). As a result, "Plaintiff's only copyright claim lies in the musical composition of *Taurus*, not the sound recording." Order (Doc. 159) on Defs' MSJ at 17. No reasonable person could conclude otherwise.

77

Yet, plaintiff's initial expert disclosures included four reports based solely on claimed similarities between *Stairway to Heaven* and the irrelevant *Taurus* recordings, and never even mentioned the relevant copyrighted work, namely the *Taurus* deposit copy. *See, e.g.,* Defs' MIL No. 4 (Doc. 137). Plaintiff's submission of expert reports as to *Taurus* recordings instead of the *Taurus* deposit copy was directly contrary to established law. *See, e.g., Newton v. Diamond*, 388 F.3d 1189, 1194 (9th Cir. 2004) ("A crucial problem with the testimony of [plaintiff's] experts is that they continually refer to the 'sound' produced by [plaintiff's'] technique," while his "copyright extends only to the elements . . . that he wrote on the score"), *cert. denied* 545 U.S. 1114 (2005).

Further, plaintiff's improper expert reports not only required that defendants respond and object to them, but led to the Court's ruling that plaintiff's reports were inadmissible and providing plaintiff leave to submit a second round of reports. Order (Doc. 203). Because of plaintiff's initial submission of inadmissible reports, followed by plaintiff's submission of new reports that inexplicably continued to rely on the *Taurus* recordings, Warner/Chappell incurred yet additional attorneys' fees. Plaintiff also refused to produce his experts for deposition until the Court rejected his absurd argument that expert discovery had been cut-off with fact discovery. Order (Doc. 216). Plaintiff's misconduct also required that defendants submit new rebuttal reports and objections to plaintiff's new reports and his experts' continued reliance on the *Taurus* recordings. *See, e.g.,* Defs' Trial Brief (Doc. 223) at 17-24.

Given that plaintiff sues on a copyright in the *Taurus* deposit copy and that the *Taurus* sound recordings are inadmissible, it was improper and misconduct for plaintiff to persist in trying to inject the *Taurus* sound recordings into this case.

### *iii. Plaintiff's Complete Failure to Comply with LR 16 and the Court's Order* **Re** *Pretrial Obligations*

Plaintiff also completely failed to comply with this Court's Local Rule 16 and his pretrial obligations, including under the Court's Order for Jury Trial (Doc. 79).

78

1    For example, plaintiff failed to cooperate in the timely filing of the required

2    Joint Witness List, the required Joint Exhibit List and the required proposed Pretrial

3    Conference Order.  *See,* Decl. (Doc. 201) *re* late filing of pretrial documents, at 1.

4    As another example, plaintiff insisted on including in the late-filed Joint

5    Exhibit List thousands of documents that no reasonable person could believe would

6    be admissible at trial, including plaintiff's listing of <u>every document</u> on the Court's

7    docket, entire deposition transcripts and hundreds of documents identified only

8    generically (such as 275 separate exhibits each designated only as unidentified

9    "Sheet Music Sold for Exploitation").  *Id.* at 2.  Plaintiff also filed on the first day of

10   trial a 383-page Supplemental Exhibit List (Doc. 242) that added new exhibits and

11   re-numbered exhibits, causing confusion throughout the trial.

12                   *iv. Plaintiff's Misconduct up to and throughout Trial*

13   Plaintiff's misconduct continued up to and throughout the trial.

14   Plaintiff successfully resisted discovery as to his allegations that the Trust is a

15   charitable organization and uses its funds to buy instruments for needy children in

16   Ventura County, California.   Given his refusal to allow discovery on those

17   allegations, and their lack of relevance and potential prejudicial effect, at the April

18   25, 2016 Pretrial Conference the Court tentatively granted defendants' Motion in

19   Limine No. 8 to exclude all evidence and argument as to plaintiff's and the Trust's

20   use of funds and any recovery in this action for charitable purposes.  Order (202) at

21   2 ("Defendants' Motion in Limine 8 to exclude evidence about the charitable goals

22   of the Trust (DE 141), is GRANTED").  But plaintiff's counsel, knowing the Court's

23   ruling and the potential prejudicial effect on the jury pool, literally minutes later

24   stood before media cameras in front of the Courthouse and stated:

25           "If money is won in this case, it's to be used to buy musical

26           instruments for children who are in need in Ventura County."

27   Defs' Objections to Pltf's Trial Conduct (Doc. 252) at 1-2, 7.  Plaintiff's public

28   statement was a willful violation of California Rule of Professional Responsibility

79

1  Rule 5-120(A), which prohibits public statements that could impact the trial. L. R.

2  83-3.1.2 (adopting Cal. Rules of Professional Responsibility).

3  Plaintiff also directly violated the Court's rulings on defendants' Motions in

4  Limine. For example, the Court granted defendants Motion in Limine No. 9 to

5  exclude pre-May 31, 2011 payments, including advances received after that date but

6  under the 2008 contract between two non-parties, WB Music Corp. and Flames of

7  Albion. Following that ruling, the Court sustained defendants' objection to

8  admission of the 2008 contract. Anderson Decl. Exh 4 (Trial Transcript) at 544:6 to

9  545:10. But, plaintiff then elicited testimony from his damages expert as to the

10  advances, which plaintiff and the expert mischaracterized as payments for post-2011

11  exploitation. *Id.* at 771:20 to 773:18. On cross-examination and only after the Court

12  intervened, did plaintiff's expert admit that the payments "were made under the

13  terms of [the] 2008 contract." *Id.* at 783:4-22. Plaintiff's expert's testimony as to

14  millions of dollars of payments was barred by the Court's ruling granting

15  defendants' Motion in Limine and was elicited by plaintiff in direct contempt of the

16  Court's ruling.

17  Plaintiff also violated another of the Court's in Limine rulings when, after the

18  Court confirmed on the first day of trial its ruling "exclud[ing] evidence about the

19  charitable goals of the Trust" (Order (Doc. 202) at 2), plaintiff's counsel elicited

20  from his first witness, Janet Wolfe, that the Trust is a charity:

21      "Q.   What is the Randy Craig Wolfe Trust?

22      "A.   It was my mother's mission to create a legacy for my brother, <u>and</u>

23           <u>it benefits charity.</u>"

24  Anderson Decl. Exh. 4 (Trial Transcript) at 157:14-16. Plaintiff's counsel also

25  directly violated that ruling by stating in leading questions to plaintiff that the Trust

26  used its funds to buy instruments for children. *Id.* at 752:9-11 ("Is it accurate that the

27  assets of the Trust, estate, and its income shall be used for the purpose of providing

28  musical instruments and associated materials . . ."). Plaintiff persisted, over

80

1  sustained objections, in violating the Court's ruling.  *Id.* at 752:24 to 754:24.

2  In addition, on the eve of trial plaintiff purported to issue to defendants and to

3  non-parties "notices" to appear and trial subpoenas directed to unidentified "persons

4  most knowledgeable," all without any basis in the Federal Rules of Civil Procedure

5  or otherwise.  Anderson Decl. at 1, ¶ 4, & Exh. 2.

6  Throughout the trial plaintiff also falsely stated to the Jury, repeated in loaded

7  questions and stated to the press that plaintiff had engaged defendants' musicologist,

8  who "flipped" to represent defendants.[2]  Plaintiff also improperly and falsely stated

9  in opening argument that he would call defense counsel to the stand to testify as to

10  their supposed "duplicitous" conduct.  Anderson Decl. Exh. 4 (Trial Transcript) at

11  125:20 to 126:3.

12  Also, in questioning John Paul Jones plaintiff misrepresented plaintiff's

13  newly-re-numbered exhibit 100164 as being a recording of an interview in 1972

14  shortly after *Stairway to Heaven* was written, when, in truth, the exhibit is an

15  interview in 1990, or almost twenty years later.  *Id.* at 943:4 to 944:22; Anderson

16  Decl. at 1-2, ¶ 5.

17  As another example of plaintiff's gross misconduct, his counsel presented to

18  the Jury a photograph altered to omit two people and create the false impression that

19  Robert Plant was speaking with Mark Andes.  Anderson Decl. Exh. 4 (Trial

20  Transcript) at 298:15 to 299:17; Defs' Decl. *re* Pltf's Altered Exh. 535 (Doc. 291),

21  Anderson Decl. at 2, ¶ 6, & Exh. 3; Cal. R. Prof. Responsibility 5-200(B)

22  (prohibiting counsel from "seek[ing] to mislead the judge, judicial officer, or jury by

23  an artifice").

24  Plaintiff also misrepresented to the Court that the 1996 renewal of copyright

25  in the *Taurus* musical composition "terminated" Wolfe's 1967 Agreement with

26

27  _____

[2]  http://mms.tveyes.com/Transcript.asp?StationID=780&DateTime=6%2F18%
2F2016+1%3A11%3A21+AM&Term=Led+Zeppelin&PlayClip=TRUE.  *See, also*

28  Trial Transcript at 905:12-907:5.

11

81

1  Hollenbeck.  Anderson Decl. Exh. 4 (Trial Transcript) at 720:8-10.  Aside from the
2  fact that plaintiff testified he still receives payments from Hollenbeck under that
3  agreement, plaintiff's representation that Wolfe's renewal terminated the 1967
4  Agreement is plainly untrue.  3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* §
5  9.06[B] ("When the copyright owner transfers rights in the renewal term . . . and
6  survives until renewal vesting, <u>then rights in the renewal term belong to the</u>
7  <u>assignee</u>"); Defs' Mtn. for JMOL (Doc. 250) at 2-4; *see, also* Cal. R. Prof.
8  Responsibility 5-200(B) (prohibiting counsel from seeking to mislead the court by
9  "false statement of fact or law").

10      Plaintiff's misconduct continued even into the Jury's deliberations. When the
11  Jury asked to hear plaintiff's expert's recorded guitar performance of the *Taurus*
12  musical composition, plaintiff misrepresented to the Court that the Jury heard only
13  his expert's performance of the bass clef of the composition, which misrepresents
14  the actual *Taurus* composition by leaving out the treble clef.  Anderson Decl. Exh. 4
15  (Trial Transcript) at 1301:3-13, 1303:21 to 1304:5.  In truth, the Jury had heard
16  plaintiff's Exhibit 525a with the entire deposit copy performed (*id.* at 296:9-18), and
17  that is what they asked to hear.

18      Plaintiff is guilty of continued and gross misconduct throughout the case and,
19  for that additional reason, attorneys' fees should be awarded.

20      **(3)    The Factors Mentioned in Fogerty Also Confirm that**
21              **Attorneys' Fees Are Properly Awarded**

22      *Kirtsaeng* highlighted objective unreasonableness and litigation misconduct as
23  alternative grounds to award attorneys' fees to the prevailing party on a copyright
24  claim, but also recounted that *Fogerty* "noted" "'several non-exclusive factors' to
25  inform a court's fee-shifting decisions: 'frivolousness, motivation, objective
26  unreasonableness[,] and the need in particular circumstances to advance
27  considerations of compensation and deterrence.'"  *Kirtsaeng*, 136 S. Ct. at 1985,
28  *quoting Fogerty*, 510 U.S. at 534, n. 19.  "[C]ourts may not rely on [these] factors if

82

they are not 'faithful to the purposes of the Copyright Act'" when applied in a particular case. *Fantasy*, 94 F.3d at 558, *quoting Fogerty*, 510 U.S. at 34, n. 19. However, those factors also cut in favor of a fee award here.

### i.  The Degree of Success Obtained on the Claim

"In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; . . . ." *Maljack*, 81 F.3d at 889.  Defendants' success is complete: Judgment has been entered in their favor, dismissing plaintiff's action in its entirety.  The Copyright Act is furthered by successfully defending a copyright claim.  *Fogerty*, 510 U.S. at 527.

Also, in determining the degree of success the Court may compare the plaintiff's settlement position with the ultimate result.  *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1246-47 (W.D. Wash. 2015).  Here, even though plaintiff's potential recovery was limited to low six figures, he demanded $12,000,000 or co-ownership of the *Stairway to Heaven* copyright, neither of which he could have recovered in this action even if he had prevailed.  Defendants' successful defense of claims for which plaintiff made such demands further confirms the high degree of success defendants obtained.

The degree-of-success factor unequivocally cuts in favor of the award of fees.

### ii.  Frivolousness of Plaintiff's Position

If the prevailing defendant's defense furthered the policies of the Copyright Act, attorneys' fees are properly awarded even if the plaintiff's position was reasonable.  *Fantasy*, 94 F.3d at 558.  But, frivolousness cuts in favor of a fee award, *Maljack*, 81 F.3d at 889, and is further support for an award of attorneys' fees here.

Plaintiff's copyright infringement claims ran headlong into well-established law confirming that the copyrighted work is limited to the *Taurus* deposit copy and that there is no copyright protection for the elements on which plaintiff based his claim: a commonplace descending chromatic line, the random selection of two or

83

1    three notes and the bare pitches that were not even in the same sequence. *Smith v.*

2    *Jackson*, 84 F.3d 1213, 1216, n. 3 (9th Cir. 1996) ("common or trite" musical

3    elements not protected); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462

4    F.3d 1072, 1077 (9th Cir. 2006) ("non-protectable elements" must be "filter[ed] out

5    and disregard[ed]"), *quoting Cavalier v. Random House, Inc.*, 297 F.3d 815, 822

6    (9th Cir. 2002); *Swirsky v. Carey*, 376 F.3d 841, 848 n. 13 (9th Cir. 2004)

7    ("concentration solely on pitch sequence may break music down beyond

8    recognition"); Copyright Office Compendium §§ 313.4(B), 313.4(C) & 802.5(A)

9    (unprotected material includes chromatic scales, arpeggios and a "music phrase

10   consisting of three notes").

11        While attorneys' fees are properly awarded to a prevailing defendant even if

12   the plaintiff's position was reasonable (*Fantasy*, 94 F.3d at 558), plaintiff's claims

13   were not reasonable and this factor further confirms fees should be awarded.

14                    *iii. The Parties' Respective Motivations*

15        Defendants' motivation was and is to defend themselves and *Stairway to*

16   *Heaven* against claims of infringement and the impounding and enjoining of that

17   composition and recordings and sheet music of that composition.  Defendants'

18   motivation furthered the Copyright Act's purposes.  *Fogerty*, 510 U.S. at 527

19   ("copyright law ultimately serves the purpose of enriching the general public

20   through access to creative works").  "[D]efendants who seek to advance a variety of

21   meritorious copyright defenses should be encouraged to litigate them . . . ." *Id.*  For

22   that reason, alone, this factor cuts in favor of the award of attorney's fees.

23        In addition, plaintiff's motivation was base: after nearly a half-century of

24   inaction, plaintiff relied on public domain elements shared by the works to try to

25   coerce a massive settlement that he could not have achieved in this action even if he

26   had prevailed.  Plaintiff's motivation impedes the creation of new works and ignores

27   the boundaries of copyright protection, thereby frustrating the Copyright Act and its

28   important policies. *Fogerty*, 510 U.S. at 527.

84

The factor of motivation also cuts decidedly in favor of awarding fees.

### iv. Objective Reasonableness of Factual and Legal Positions

While, again, attorneys' fees are properly awarded to a prevailing defendant even if the plaintiff's position was perfectly reasonable (*Fantasy*, 94 F.3d at 558), plaintiff repeatedly took positions that were outright misconduct and, at a bare minimum, were objectively unreasonable. *See, above* at 5-12. Even if viewed as only objectively unreasonable, plaintiff's conduct supports the award of attorneys' fees to defendants. *Maljack*, 81 F.3d 890 (attorneys' fees properly awarded to prevailing defendant where plaintiff's "copyright claims . . . are, if not frivolous, at least factually unreasonable," and "an award of fees may deter baseless suits").

While attorneys' fees are properly awarded because defendants' defense of the case furthered the policies of the Copyright Act, plaintiff's objectively unreasonable conduct also confirms attorneys' fees should be awarded.

### v. The Need in Particular Circumstances to Advance Considerations of Compensation and Deterrence

In terms of compensation and in order to achieve the equal treatment of prevailing plaintiffs and defendants required by *Fogerty*, 510 U.S. at 534, "when the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Eagle Serv. Corp. v. H2O Industr. Serv. Inc.*, 532 F.3d 620, 625 (7th Cir. 2008), *quoting Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

Compensation is especially important here because the attorneys' fees were not borne by an insurer. Because the claim plaintiff asserts is so old, Warner/Chappell's insurer denied coverage and Warner/Chappell itself has borne the attorneys' fees it incurred in successfully defending against plaintiff's claim. Anderson Decl. at 5, ¶ 16. That cuts strongly in favor of awarding Warner/Chappell attorneys' fees.

///

85

In addition, plaintiff sued nearly a half-century late even though the copyright owner and Randy Wolfe had never sued and plaintiff's own experts admitted the claimed similarity is based on a public domain descending chromatic line. Accordingly, the interest in deterring potential claimants from asserting stale and meritless copyright claims also cuts in favor of awarding attorneys' fees.

The successful defense of plaintiff's copyright claims satisfied the "the pivotal criterion" of "[f]aithfulness to the purposes of the Copyright Act" (*Fantasy*, 94 F.3d at 558), by furthering the copyright "purpose of enriching the general public through access to creative works . . . ," and the "peculiarly important" copyright policy of enforcing the "boundaries of copyright law." *Fogerty*, 510 U.S. at 527. For these reasons alone, and because "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them . . . ," attorneys' fees are properly awarded. Further, plaintiff's litigation misconduct, as well as defendants' complete success, their motivation, plaintiff's motivation and plaintiff's unreasonable and even frivolous positions all confirm this is a proper case for the award of attorneys' fees.

Accordingly, Warner/Chappell respectfully submits that its Motion for attorneys' fees should be granted.

**(c)** **Apportionment of Attorneys' Fees between Plaintiff's Copyright Claims and "Right of Attribution" Claim Would Be Improper: the Claims are "Related Claims" Arising from the Same Core Facts**

The Court need not attempt to apportion fees between plaintiff's copyright claims and "right of attribution" claim and, instead, for at least two reasons an award under the Copyright Act properly includes the fees in defending the entire suit.

First, plaintiff's "right of attribution" claim was so patently unsupported by law that no material time was spent on it. Anderson Decl. at 8, ¶ 18.

Second, it is well-established that a party who prevails on a claim for which attorneys' fees are recoverable, can recover attorneys' fees on that claim and any

86

1    rates commensurate with or substantially below the customary rate in the community

2    for attorneys with comparable experience in the field.

3        Accordingly, the *Kerr* factors confirm that the requested fee award is

4    reasonable.

5 **3.**      <u>**CONCLUSION**</u>

6        Defendants – faced with plaintiff's ongoing misconduct and objectively

7    unreasonable positions – triumphed against plaintiff's claims for permanent

8    injunctive relief that would have deprived the public of the *Stairway to Heaven*

9    musical composition, recordings and sheet music. The successful defense of

10    plaintiff's claims furthered the purposes of the Copyright Act and the sum of

11    $613,471 in attorneys' fees is reasonable. Accordingly, those fees and the fees

12    hereafter incurred by Warner/Chappell in connection with this Motion and the

13    accompanying Motion and Application, are properly awarded to Warner/Chappell.

14

15 Dated: July 7, 2016

                 <u>  /s/ Peter J. Anderson  </u>

16                    Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON

17                    A Professional Corporation
Attorney for Defendants

18              JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,

19               WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,

20            ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and

21               WARNER MUSIC GROUP CORP.

22

23

24

25

26

27

28

87

# Tab 11

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DECLARATION OF PETER J. ANDERSON IN SUPPORT OF DEFENDANT WARNER/ CHAPPELL'S MOTION FOR AWARD OF ATTORNEYS' FEES |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | Date: August 8, 2016<br>Time: 9:00 a.m. |

Courtroom of the Honorable
R. Gary Klausner
United States District Court

88

### DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

**1.    PRELIMINARY STATEMENT**

    1.    I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

    2.    In this action, I represent defendants James Patrick Page, Robert Plant, John Paul Jones, Warner/Chappell Music, Inc. ("Warner/Chappell"), Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Corp.  This Declaration is submitted in support of Warner/Chappell's Motion for the award of attorneys' fees pursuant to Section 505 of the Copyright Act of 1976, 17 U.S.C. Sections 101 *et seq.*

**2.    PLAINTIFF'S CONDUCT DURING THE COURSE OF THIS ACTION**

    3.    Attached to this Declaration as Exhibit 1 is a true and correct copy of the letter I wrote plaintiff's counsel after, among other things, the press report plaintiff's counsel's statements immediately following the April 25, 2016 Pretrial Conference, that any recovery by plaintiff would be used to buy musical instruments for children who are in need in Ventura County.

    4.    On the eve of trial, plaintiff purported to issue to defendants and to non-parties "notices" to appear and trial subpoenas directed to unidentified "persons most knowledgeable," even though there is no basis in the Federal Rules of Civil Procedure for those "notices" and trial subpoenas.  Attached to this Declaration as Exhibit 2 is a true and correct copy of the Objections I prepared and served, in response to plaintiff's "notices" and trial subpoenas.

    5.    In questioning John Paul Jones at trial, plaintiff's counsel used plaintiff's newly-re-numbered exhibit 100164, which plaintiff's counsel represented as being a recording of a 1972 interview close to the time *Stairway to Heaven* was written, and he repeatedly asked Mr. Jones whether his memory regarding the

89

creation of *Stairway to Heaven* was better in 1972. In truth, however, plaintiff's newly-renumbered exhibit was a 1990 interview, twenty years after the release of *Stairway to Heaven*, and because of the new numbering we were unaware at the time that plaintiff's counsel had misrepresented the year of the interview.

6. Attached to this Declaration as Exhibit 3 is a true and correct copy of the Declaration regarding plaintiff's use at trial of an altered copy of the photograph that plaintiff marked as Exhibit 535.

7. Attached to this Declaration as Exhibit 4 are true and correct copies of the Trial Transcript in this action cited in defendants' Memorandum in support of their Motion for attorneys' fees.

## 3. <u>MY QUALIFICATIONS AND HOURLY RATES CHARGED BY MY FIRM AND IN THE COMMUNITY</u>

8. I graduated from the UCLA School of Law in 1979, where I was a member of the UCLA Law Review. In 1979, I was admitted to practice in the State of California and before this District Court. I am also admitted to practice before the United States Supreme Court, the Ninth Circuit Court of Appeals and the United States District Court for the Southern District of California. I have been in good standing with the California State Bar and these United States Courts at all times. Since 1996 I have been rated by Martindale-Hubbell as an "AV" attorney and beginning in 2006 and for each of the years since then I have been designated a Southern California "Super Lawyer" by *Law & Politics* and *Los Angeles* magazines.

9. I have practiced entertainment and copyright litigation since April 1980, when I served as second chair for the plaintiffs in the jury trial of a copyright infringement and implied contract case that resulted in a jury verdict for the plaintiffs and against Paramount Pictures, American Broadcasting Cos. and others. Among other matters, I was counsel principally in charge of the prevailing party's case in, for example:

- *Stewart v. Abend*, 495 U.S. 207 (1990) and *Abend v. MCA, Inc.*, 863

90

1  copyright infringement claims and his "right of attribution" claim.

2      23.    Warner/Chappell also respectfully requests that the Court award it the

3  attorney's fees incurred to my firm in connection with its Motion for attorney's fees,

4  Application to Tax Costs and Motion for Additional Costs, as follows:

5      (a)    Attorney's fees of $9,768 incurred through today, in

6  connection with the foregoing Motions and Application;

7      (b)    Attorney's fees in connection with the review of plaintiff's

8  oppositions papers and the preparation of defendants' Reply papers, in

9  the estimated amount of $3,300; and

10      (c)    Attorney's fees in connection with the attendance at the

11  hearing on the Motion, if one is held.

12  I declare under penalty of perjury that the foregoing is true and correct.

13  Executed on July 7, 2016, in Los Angeles County, California.

14

15            /s/ Peter J. Anderson
            PETER J. ANDERSON

91

# EXHIBIT 1

LAW OFFICES OF

# PETER J. ANDERSON

A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD
SUITE 2010
SANTA MONICA, CALIFORNIA 90401
TELEPHONE (310) 260-6030
FACSIMILE (310) 260-6040
EMAIL: pja@pjanderson.com

May 6, 2016

*By E-Mail & U.S. Mail*

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Road
Suite 1
Media, PA 19063

Glen L. Kulik, Esq.
Kulik Gottesman & Siegel LLP
15303 Ventura Boulevard
Suite 1400
Sherman Oaks, CA 91403

Re:  *Led Zeppelin adv. Skidmore*

Dear Gentlemen:

I am writing regarding the following disturbing developments.

First, we have learned that immediately following the Court's Pretrial Conference last Monday, you made at least the following statements to the press on camera and in front of the Courthouse, and which were broadcast on local television and elsewhere:

MR. KULIK:     If money is won in this case, it's to be used to buy musical instruments for children who are in need in Ventura County.

MR. MALOFIY:   They can't hide behind counsel in the misty mountains over there in the UK.

The Court's Local Rule 83-3.1.2 requires that counsel be familiar with the California Rules of Professional Conduct and adopts those Rules as the standards governing counsel's conduct. And, California Rule of Professional Conduct 5-120(A) states:

> "A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

While Mr. Malofiy is not a member of the California Bar, the Rule is applicable to him by reason of Local Rule 83-3.1.2.

**EXHIBIT 1**
**10**

93

Francis Malofiy, Esq.
Glen L. Kulik, Esq.
May 6, 2016
Page 2

Of course, in speaking to the press you knew your statements would "be disseminated by means of public communication . . . ," including to the potential jurors and their friends and relatives. You also know or should have known that the statements you made to the press on camera had "a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

Indeed, you had just left a hearing in which Judge Klausner advised us all that his intention was to grant defendants' motion to exclude all argument and evidence that the Trust would use any recovery in this case to buy musical instruments for children who are in need in Ventura County, California. Yet, minutes later Mr. Kulik made that exact same statement to the press, on camera, knowing and intending the prejudicial statement would be broadcast to the public. Aside from the issue of purposefully trying to frustrate Judge Klausner's ruling by doing an end run on him and going directly to the public, Mr. Kulik's statement is a clear violation of Rule 5-120.

Neither is there any doubt that Mr. Malofiy knew, or should have known, that accusing defendants of trying to hide in the United Kingdom and avoid trial is – especially when broadcast to a public that includes the potential juror pool and their friends and relatives – substantially likely to cause prejudice. Mr. Malofiy's statement is also a violation of Rule 5-120.

Second, in direct violation of the December 28, 2015 Stipulated Protective Order in this action, plaintiff and you have publicly disclosed information that defendants designated "CONFIDENTIAL" under that Protective Order.

As you know, defendants designated as "CONFIDENTIAL" the 2008 Administration Agreement between WB Music and Flames of Albion. Ignoring the Court's Protective Order, however, you included in plaintiff's publicly-filed memorandum in opposition to defendants' motion *in limine* no. 9, the 2008 Agreement' primary financial terms, including the duration of the 2008 Agreement, the dollar amount of the advance paid under the 2008 Agreement and the timing of the advance payment. Plaintiff's Memo. (Doc. 174) at 2:5-12, & at 2-4.

There can be no doubt that when you publicly disclosed this "CONFIDENTIAL" information you were very much aware that the information was subject to the Protective Order: as support for your disclosures you specifically cited to the copy of the 2008 Agreement that had been "filed under seal." *Id.* at 2:9.

Further, we also have just learned that Mr. Malofiy apparently also made the same disclosures to at least some members of the press, who have publicly reported the advance amount paid under the 2008 Agreement designated "CONFIDENTIAL."

The Stipulated Protective Order provides, among other things, that the "violation of this Order may be punished by any and all appropriate measures including, without

**EXHIBIT 1**

**11**

94

Francis Malofiy, Esq.
Glen L. Kulik, Esq.
May 6, 2016
Page 3

limitation, contempt proceedings and/or monetary sanctions." Stipulated Protective Order at 13, ¶ 14. In addition, the willful violation of the Court's Protective Order is a breach of ethical obligations as lawyers and officers of the Court. *See, e.g.* Cal. Bus. & Prof. Code § 6103 ("A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension").

Third, we also have learned that you disclosed to the press that in last Monday's mediation plaintiff offered to settle on the basis of the payment of $1 and a portion of the copyright in *Stairway to Heaven* and that the offer was rejected. In addition to being another violation of Rule 5-120, that disclosure breaches the Mediation and Confidentiality Agreement and violates the Court's Local Rules.

In the Mediation Confidentiality Agreement, each of you and plaintiff agreed in writing that:

> "Consistent with Central District of California Civil L.R. 16-15, General Order 11-10, related Federal Rules of Evidence and to the extent applicable, California Evidence Code Sections 703.5 and 1115-1128, the participants in mediation in the above-captioned case agree that:

> "1. No written or oral communication made by any party, attorney, mediator or other participant in a mediation in the above-named case may be used for any purpose in any pending or future proceeding unless all parties, including the mediator, so agree."

*See, also* L.R. 16-15.8(a) ("all counsel and parties . . . shall treat as 'confidential information' . . . anything that happened or was said relating to the subject matter of the case in mediation, any position taken, . . . . 'Confidential information' shall not be . . . disclosed to anyone not involved in the litigation. . . .").

These are each serious violations and we fully expect that you will not repeat them. However, defendants reserve all of their rights and remedies and, should these or any similar violations occur, defendants will proceed accordingly, including bringing the violations to the Court's attention.

Very truly yours,

Peter J. Anderson

cc: Helene M. Freeman, Esq.

**EXHIBIT 1**
**12**

95

# EXHIBIT 4

1                UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3         HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                          – – –

5                                    )
    MICHAEL SKIDMORE, AS TRUSTEE FOR )
6   THE RANDY CRAIG WOLFE TRUST,     )
                                     )
7                     PLAINTIFF,     )
                                     )
8            vs.                     ) No. CV 15-03462-RGK
                                     )
9   LED ZEPPELIN; JAMES PATRICK PAGE;)
    ROBERT ANTHONY PLANT; JOHN PAUL  )
10  JONES; SUPER HYPE PUBLISHING,    )
    INC.; WARNER MUSIC GROUP CORP.,  )
11  PARENT OF WARNER/CHAPPELL MUSIC, )
    INC.; ATLANTIC RECORDING         )
12  CORPORATION; RHINO ENTERTAINMENT )
    COMPANY,                         )
13                                   )
                      DEFENDANTS.    )
14  _____)

15

16               REPORTER'S TRANSCRIPT OF

17                 JURY TRIAL DAY 1

18             VOLUME II, PAGES 98-199

19            TUESDAY, JUNE 14, 2016

20                   1:28 P.M.

21             LOS ANGELES, CALIFORNIA

22

23         CINDY L. NIRENBERG, CSR 5059, FCRR
               U.S. Official Court Reporter
24              255 East Temple Street
                Los Angeles, CA 90012
25              *www.msfedreporter.com*

```
 1                           I N D E X

 2

 3   PLAINTIFF'S WITNESSES:                    PAGE

 4   JANET WOLFE

 5       DIRECT BY MR. KULIK               143

 6       CROSS BY MR. ANDERSON            160

 7

 8
     JAY FERGUSON
 9
         DIRECT BY MR. MALOFIY            164
10
         CROSS BY MR. ANDERSON            181
11
         REDIRECT BY MR. MALOFIY          194
12

13

14

15   FURTHER PROCEEDINGS                   PAGE

16   OPENING STATEMENT BY MR. MALOFIY      103

17   OPENING STATEMENT BY MR. ANDERSON     128

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**33**

98

```
 1   decided to strike the whole treble clef and say it's not

 2   important.  Well, obviously it wasn't important because it led

 3   to a conclusion that the two songs were substantially similar.

 4              I wish I could play you that audio clip right now or

 5   even the video clip.  I'm not able to do so.  I'm very upset by

 6   that.  I'm not going to show that.  However, let me talk about

 7   a few other things before I wrap up.

 8              Throughout the course of this case, defendants tried

 9   to bust the Trust at every step they could.  They failed.

10              THE COURT:  Counsel, that's argument.

11              MR. MALOFIY:  All right.  I was going to show what

12   the evidence is going to show, Your Honor.

13              THE COURT:  You can tell us what the evidence is

14   going --

15              MR. MALOFIY:  The evidence is going to show that

16   throughout -- in this case, the defendants tried to bust the

17   Trust.  It didn't work.

18              The evidence is going to show that defendants tried

19   to say that Randy California didn't own the copyright.

20              Defendants -- in this case, the evidence is going to

21   show that defense counsel, both Mr. Anderson and Mr. Freeman

22   [sic], worked with Universal Music Group and Rondor Music and

23   plaintiff's publisher to try to extinguish plaintiff of the

24   copyright in "Taurus" and did so most recently.

25              And we're going to bring them on the stand and we're
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**34**

99

```
 1    going to question them as to these issues, because it was

 2    underhanded, it was duplicitous, and it should have never

 3    happened.

 4              And you're going to hear about that.  And you're

 5    going to hear why their expert, Dr. Ferrara, had done a

 6    musicological analysis for Universal Music Group and then

 7    Universal Music Group tried to extinguish the Trust of its

 8    copyright.  Those are also things you're going to hear about.

 9              Now, let me just stay focused on a couple of things.

10              The most memorable and distinct pairs or what makes

11    "Stairway" unique is the AB, BC, C to F-sharp pair.  You're

12    going to hear about that.  What makes it unique is it doesn't

13    go to the fifth.  You're going to hear about that, and you're

14    also going to see that.  What also makes it unique and distinct

15    is the composition itself is done in a very unique and creative

16    way.

17              We'll have pictures and other things to show you.

18    We'll talk about damages later, but for the most part, that

19    sums it up.

20              I'm going to give one last-ditch effort to see if I

21    can get this audio or video to play.

22         (Counsel and technologist confer off the record.)

23              MR. MALOFIY:  I apologize, Your Honor.  I apologize

24    to the jury.

25              THE COURT:  Okay.  Counsel, we'll go on.  You can
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**35**

100

```
 1

 2

 3                          CERTIFICATE

 4

 5      I hereby certify that pursuant to Section 753,

 6  Title 28, United States Code, the foregoing is a true and

 7  correct transcript of the stenographically reported

 8  proceedings held in the above-entitled matter and that the

 9  transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: JUNE 14, 2016

13

14

15

16

17            /s/  Cindy L. Nirenberg, CSR No. 5059

18                         Official Court Reporter

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**36**

101

1        UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                    - - -

5                                    )
   MICHAEL SKIDMORE, AS TRUSTEE FOR  )
6  THE RANDY CRAIG WOLFE TRUST,      )
                                     )
7                   PLAINTIFF,       )
                                     )
8           vs.                      ) No. CV 15-03462-RGK
                                     )
9  LED ZEPPELIN; JAMES PATRICK PAGE; )
   ROBERT ANTHONY PLANT; JOHN PAUL   )
10 JONES; SUPER HYPE PUBLISHING,     )
   INC.; WARNER MUSIC GROUP CORP.,   )
11 PARENT OF WARNER/CHAPPELL MUSIC,  )
   INC.; ATLANTIC RECORDING          )
12 CORPORATION; RHINO ENTERTAINMENT  )
   COMPANY,                          )
13                                   )
                    DEFENDANTS.      )
14 _____)

15

16             REPORTER'S TRANSCRIPT OF

17               JURY TRIAL DAY 1

18            VOLUME II, PAGES 98-199

19           TUESDAY, JUNE 14, 2016

20                 1:28 P.M.

21            LOS ANGELES, CALIFORNIA

22

23        CINDY L. NIRENBERG, CSR 5059, FCRR
             U.S. Official Court Reporter
24             255 East Temple Street
               Los Angeles, CA 90012
25            *www.msfedreporter.com*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**37**

102

```
 1                      I N D E X

 2

 3   PLAINTIFF'S WITNESSES:                PAGE

 4   JANET WOLFE

 5      DIRECT BY MR. KULIK               143

 6      CROSS BY MR. ANDERSON            160

 7

 8

     JAY FERGUSON
 9
        DIRECT BY MR. MALOFIY            164
10
        CROSS BY MR. ANDERSON            181
11
        REDIRECT BY MR. MALOFIY          194
12

13

14

15   FURTHER PROCEEDINGS                  PAGE

16   OPENING STATEMENT BY MR. MALOFIY    103

17   OPENING STATEMENT BY MR. ANDERSON   128

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**38**

103

```
 1   A.    He was swimming and visiting my mother.

 2   Q.    Is that where your mother lived at that time?

 3   A.    My mother had moved back to Hawaii.

 4   Q.    And was his body ever found?

 5   A.    No.

 6   Q.    Now, can you tell me more about the relationship between

 7   your mother and Randy?

 8   A.    They were extremely close.  My mother put all her energy

 9   and love into my brother to help him develop his musical

10   talents, and she acted as sort of behind-the-scenes manager for

11   his career.

12   Q.    Now, are you familiar with the Randy Craig Wolfe Trust?

13   A.    Yes, I am.

14   Q.    What is the Randy Craig Wolfe Trust?

15   A.    It was my mother's mission to create a legacy for my

16   brother, and it benefits charity.

17   Q.    And do you know Mr. Skidmore?

18   A.    Yes, I do.

19         MR. ANDERSON:  Your Honor, the motion in limine -- I

20   apologize, but the motion in limine -- one of the motions in

21   limine deals with this subject that was granted.

22         THE COURT:  You have to tell me which motion,

23   counsel.

24         MR. ANDERSON:  Absolutely, Your Honor.

25         Your Honor, it was Defendants' Motion in Limine
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**39**

104

```
 1    Number 8.
 2            THE COURT:  I'm not so sure, counsel, where he is
 3    going on that question.  I'm going to find out where he is
 4    going with his question.
 5            MR. KULIK:  I'm moving on, Your Honor.
 6            THE COURT:  Okay.
 7    BY MR. KULIK:
 8    Q.    How many times before today have you met Mr. Skidmore?
 9    A.    Two or three times.
10    Q.    And when is the last time you met him before today?
11    A.    Before my mother died.
12    Q.    When did your mother die?
13    A.    Seven years ago.
14    Q.    Can you tell me, who is Mr. Skidmore?
15    A.    He was a friend of my brother's and he became a very close
16    friend to my mother.
17    Q.    Were you involved at all in setting up the trust?
18    A.    No.
19    Q.    Are you a beneficiary of the trust?
20    A.    No.
21    Q.    Do you have any relationship with the trust whatsoever?
22    A.    No, I don't.
23    Q.    If the plaintiff wins any money in this case, is any of
24    that money yours?
25    A.    No, it's not.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**40**

105

```
1

2

3                      CERTIFICATE

4

5      I hereby certify that pursuant to Section 753,

6  Title 28, United States Code, the foregoing is a true and

7  correct transcript of the stenographically reported

8  proceedings held in the above-entitled matter and that the

9  transcript page format is in conformance with the

10 regulations of the Judicial Conference of the United States.

11

12 Date: JUNE 14, 2016

13

14

15

16

17              /s/  Cindy L. Nirenberg, CSR No. 5059

18                       Official Court Reporter

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**41**

106

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION |
| 3 | HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
| 4 | – – – |

```
5                                    )
   MICHAEL SKIDMORE, AS TRUSTEE FOR  )
6  THE RANDY CRAIG WOLFE TRUST,      )
                                     )
7                    PLAINTIFF,      )
                                     )
8           vs.                      ) No. CV 15-03462-RGK
                                     )
9  LED ZEPPELIN; JAMES PATRICK PAGE; )
   ROBERT ANTHONY PLANT; JOHN PAUL   )
10 JONES; SUPER HYPE PUBLISHING,     )
   INC.; WARNER MUSIC GROUP CORP.,   )
11 PARENT OF WARNER/CHAPPELL MUSIC,  )
   INC.; ATLANTIC RECORDING          )
12 CORPORATION; RHINO ENTERTAINMENT  )
   COMPANY,                          )
13                                   )
                     DEFENDANTS.     )
14 _____)
```

| | |
|---|---|
| 15 | |
| 16 | REPORTER'S TRANSCRIPT OF JURY TRIAL |
| 17 | DAY 2, VOLUME II, PAGES 287–450 |
| 18 | WEDNESDAY, JUNE 15, 2016 |
| 19 | 1:02 P.M. |
| 20 | LOS ANGELES, CALIFORNIA |
| 21 | |
| 22 | CINDY L. NIRENBERG, CSR 5059, FCRR |
| 23 | U.S. Official Court Reporter<br>255 East Temple Street<br>Los Angeles, CA 90012 |
| 24 | *www.msfedreporter.com* |
| 25 | |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**42**

107

```
 1                    I N D E X

 2

 3   PLAINTIFF'S WITNESSES:                  PAGE

 4   MARK ANDES

 5      DIRECT BY MR. MALOFIY (RESUMED)      291

 6      CROSS BY MR. ANDERSON                306

 7      REDIRECT BY MR. MALOFIY              328

 8

     BRUCE PATES
 9
        DIRECT BY MR. MALOFIY               333
10

11   JAMES PATRICK PAGE

12      DIRECT BY MR. MALOFIY               343

13

14

15   FURTHER PROCEEDINGS                     PAGE

16   DISCUSSION HELD OUTSIDE PRESENCE OF JURY  430

17

18

19                  E X H I B I T S

20   TRIAL EXHIBITS                  MARKED   ADMITTED

21   2058                              310

22   373                               344

23   160-A                                      391

24   98                                         397

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**43**

108

```
 1              THE COURT:  That's it.  Other than that, the two

 2   being played together, the Court's already said it's irrelevant

 3   at this time, so let's not direct any more questions to the two

 4   being played together.

 5              MR. MALOFIY:  Okay.  Fair enough.

 6   BY MR. MALOFIY:

 7   Q.   Let me move to 525-V.

 8              MR. ANDERSON:  And, Your Honor, if he could identify

 9   what it is.  We have a motion in limine.  I'm concerned

10   about --

11              THE COURT:  Let's -- let me find out.  Has it been

12   received into evidence yet?

13              MR. MALOFIY:  I was already -- this -- I don't

14   believe there is an objection here.

15              THE COURT:  I don't know.  Let's find out.

16              MR. MALOFIY:  Well, I don't -- I don't want to say

17   what it is, Your Honor, because the whole point is that --

18   whether or not this witness can identify.

19              THE COURT:  Why don't you ask your next question and

20   I'll tell you whether or not it's permissible or not.

21              Next question.

22              MR. MALOFIY:  Can he identify the song being played.

23   It is the "Taurus" deposit copy.  I'm not sure why there's

24   objections from defense counsel here.

25              THE COURT:  Okay.  Counsel, back down a little bit.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**44**

109

```
 1        All he wants to do is be put on notice as to what

 2   exhibit you're showing.  As long as you tell him that, he has a

 3   chance to look at it, and then he has a chance to make an

 4   objection or not.  But he does have the right to know what

 5   you're talking about before you start talking about it.

 6        MR. MALOFIY:  Yes.  He --

 7        THE COURT:  All we want to know is the exhibit number

 8   so he knows whether or not he wants to make an objection.

 9        MR. MALOFIY:  Thank you, Your Honor.  525-V.

10        THE COURT:  Okay.  Any objection, counsel?

11        MR. ANDERSON:  Based on the -- based on the

12   description on the audio file, no, Your Honor.

13        THE COURT:  Okay.  Okay, counsel.

14        MR. MALOFIY:  Thank you.

15      (Playing of videotape.)

16   BY MR. MALOFIY:

17   Q.   What song is that?

18   A.   "Taurus."

19   Q.   All right.  Now, it sounds slightly different from the

20   prior audio example we had.

21        Can you explain why?

22        MR. ANDERSON:  Objection.  Lacks foundation, calls

23   for speculation, and lack of expertise in the area.

24        MR. MALOFIY:  He --

25        THE COURT:  Well, calls for expert testimony also.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**45**

110

```
 1   Sustained.
 2           MR. MALOFIY:  Well, it goes back to the actual
 3   deposit copy and the issues in this case.
 4           THE COURT:  You've asked him to give an expert
 5   opinion on it, counsel, and he hasn't been designated as an
 6   expert.
 7           MR. MALOFIY:  It's only --
 8           THE COURT:  You'll have plenty of experts to testify,
 9   I'm sure.
10           MR. MALOFIY:  Yes, Your Honor.  It would only be
11   because of -- well, I'll move forward, Your Honor.
12           THE COURT:  Okay.
13           MR. MALOFIY:  I'll have my experts handle that.
14           THE COURT:  Okay.
15   BY MR. MALOFIY:
16   Q.   There was a couple -- we talked about Mother's Club
17   earlier on in your testimony this morning.
18           Do you recall that?
19   A.   Yes.
20   Q.   Okay.  And in your testimony, you had identified, I
21   think -- I believe you had a -- you had a meet-and-greet with
22   Mr. Page and Mr. Plant in the beginning of that show.
23           Do you recall your testimony there?
24   A.   I do recall the testimony.
25   Q.   All right.  You shared with me that that -- you wanted to
```

**EXHIBIT 4**
**46**

111

```
 1   clarify an issue there; is that correct?

 2   A.   Yes.

 3   Q.   What -- please tell the jury what fact you wanted to

 4   clarify.

 5   A.   When I recall, I really don't have a memory of Jimmy Page

 6   being at that meet-and-greet.

 7   Q.   Is your -- is your memory vivid and distinct as to Robert

 8   Plant?

 9   A.   Yes.

10   Q.   And is your memory vivid and distinct as to after the

11   concert, playing pool, drinking, and having a good time with

12   Robert Plant and other members of Spirit?

13   A.   Yes.

14   Q.   Okay.

15        MR. MALOFIY:  I'd like to pull up Exhibit 535.

16        Please wait until I get clearance.  535.

17   (Counsel confer off the record.)

18        MR. ANDERSON:  Just relevance, Your Honor.  It's a

19   photograph from, I believe, the '80s.

20        MR. MALOFIY:  It's a picture of Robert Plant and also

21   Mark Andes showing that they do know each other, and it goes to

22   their relationship over the years.

23        THE COURT:  Overruled.  Overruled.  You may show it.

24        MR. MALOFIY:  535, yes.

25   (The exhibit was displayed on the screen.)
```

```
 1              MR. MALOFIY:  Now, can you blow that up perhaps right
 2    here (indicating)?
 3    BY MR. MALOFIY:
 4    Q.   Do you recognize this photograph?
 5              MR. ANDERSON:  Your Honor, that has been edited.
 6    That is not the same photograph that was produced to us three
 7    days ago.
 8              MR. MALOFIY:  Your Honor, that's -- I don't know how
 9    he's saying it's edited, but I object to that
10    mischaracterization.  This was pulled down --
11              THE COURT:  Let's take it down at this time.
12              MR. MALOFIY:  I'm sorry, Your Honor.
13              THE COURT:  That's okay.
14              Let's take it down at this time and I'm going to give
15    you two a chance to talk to each other and find out if it's the
16    same one that you had shown him beforehand and if you have a
17    copy of it so you can compare them.
18              MR. ANDERSON:  I believe I do.
19              THE COURT:  Well, just -- the two of you, you can
20    figure it out.
21         (Counsel confer off the record.)
22              THE COURT:  You know, we may be wasting an awful lot
23    of time here.  Let me just ask you a question.
24              Did you have pictures taken with yourself and
25    Mr. Plant?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**48**

113

```
 1

 2

 3                        CERTIFICATE

 4

 5      I hereby certify that pursuant to Section 753,

 6  Title 28, United States Code, the foregoing is a true and

 7  correct transcript of the stenographically reported

 8  proceedings held in the above-entitled matter and that the

 9  transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: JUNE 16, 2016

13

14

15

16

17            /s/  Cindy L. Nirenberg, CSR No. 5059

18                        Official Court Reporter

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**49**

114

1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                 - - - -

5

6  MICHAEL SKIDMORE, AS TRUSTEE FOR  )
   THE RANDY CRAIG WOLFE TRUST,     )
7                          )
              PLAINTIFF,     )
8                          )
    vs.                 )   No. CV 15-03462-RGK
9                          )
   LED ZEPPELIN; JAMES PATRICK PAGE; )
10  ROBERT ANTHONY PLANT; JOHN PAUL   )
   JONES; SUPER HYPE PUBLISHING,    )
11  INC.; WARNER MUSIC GROUP CORP.,   )
   PARENT OF WARNER/CHAPPELL MUSIC,  )
12  INC.; ATLANTIC RECORDING        )
   CORPORATION; RHINO ENTERTAINMENT  )
13  COMPANY,                 )
                          )
14             DEFENDANTS.      )

15

16         REPORTER'S TRANSCRIPT OF JURY TRIAL

17       DAY 3, VOLUME 1; PAGES 451 TO 582

18         THURSDAY, JUNE 16, 2016

19             8:17 A.M.

20        LOS ANGELES, CALIFORNIA

21

22     _____

23      SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
         Official Reporter, U.S. District Court
24           255 East Temple Street
           Los Angeles, CA  90012
25            213.894.5949

**EXHIBIT 4**
**50**

115

```
 1                        I N D E X

 2

 3   PROCEEDINGS                                          PAGE

 4   Discussion outside the presence of the jury          455

 5   Testimony outside the presence of the jury           470

 6

 7   PLAINTIFF'S WITNESSES:                               PAGE

 8   JAMES PATRICK PAGE

 9     DIRECT EXAMINATION (CONTINUED) BY MR. MALOFIY     476

10     CROSS-EXAMINATION BY MR. ANDERSON                 564

11     REDIRECT EXAMINATION BY MR. MALOFIY               569

12     RECROSS-EXAMINATION BY MR. ANDERSON               571

13
     LARRY FUZZY KNIGHT
14
       DIRECT EXAMINATION BY MR. MALOFIY                 572
15
       CROSS-EXAMINATION BY MR. ANDERSON                 578
16

17

18

19                     E X H I B I T S

20   TRIAL EXHIBIT      MARKED FOR I.D.     RECEIVED IN EVIDENCE
       NUMBER:              PAGE:                  PAGE:
21
       2023-A                --                    508
22
       D040194              538                     --
23
       D139243              546                    557
24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 4
51

116

```
 1            THE COURT:  Okay.

 2  BY MR. MALOFIY:

 3  Q.    Can you read me the Bates number on the bottom right-hand

 4  corner of that document, Mr. Page?

 5  A.    Yes, certainly.  It's D000650.

 6  Q.    And do you agree that this is the Flames of Albion

 7  publishing deal where Led Zeppelin, the surviving members and

 8  the heirs of John Bonham, received 60 million dollars over a

 9  course of time for the Led Zeppelin song catalog?

10  A.    I can't agree with that till I've had a look.

11            MR. ANDERSON:  Objection, Your Honor --

12            THE COURT:  Excuse me.

13            MR. ANDERSON:  I'm sorry.  It's a 2008 contract, so

14  it's way outside the statute of limitations and within the

15  motion in limine --

16            MR. MALOFIY:  He -- this is --

17            MR. ANDERSON:  -- number 9.

18            MR. MALOFIY:  This has been raised repeatedly.  The

19  payments are in the statutory period, and they're for a period

20  of ten years, which brings it to 2018.

21            THE COURT:  Does this concern publishing rights for

22  things that were produced before three years ago?

23            THE WITNESS:  It -- it's dated January the 1st, 2008.

24            THE COURT:  Sustained.

25            MR. MALOFIY:  With all due respect --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**52**

117

```
 1          THE COURT:  Sustained, Counsel.  I'm not going to

 2   argue in front of the jury.  We've talked about it many times

 3   in the past.  Sustained.

 4   BY MR. MALOFIY:

 5   Q.   Is that your signature on the back page of that document?

 6   A.   Yeah, it is.

 7          MR. MALOFIY:  I'd like to move that into evidence,

 8   Your Honor.

 9          MR. ANDERSON:  Objection, relevance, Your Honor.

10          THE COURT:  Sustained.

11   BY MR. MALOFIY:

12   Q.   Do you agree that the monies attributable to this

13   publishing deal were received in the last three years?

14          MR. ANDERSON:  Objection.  It's a 2008 contract.  The

15   payments were under that contract.  It's way outside the

16   statute.

17          THE COURT:  Sustained.

18          MR. MALOFIY:  One moment, Your Honor, with the Court's

19   indulgence.

20       (Plaintiff's counsel conferred privately.)

21          MR. MALOFIY:  I have what's been marked by defendants,

22   I'll use their Bates label so it would be easier, D39243,

23   Report of Directors and Unaudited Financial Statements, Year

24   End March 31st, 2015, for Flames of Albion.

25          MR. ANDERSON:  Okay.  If counsel could also provide
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**53**

118

```
 1                          CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4    Title 28, United States Code, the foregoing is a true and

 5    correct transcript of the stenographically reported proceedings

 6    held in the above-entitled matter and that the transcript page

 7    format is in conformance with the regulations of the

 8    Judicial Conference of the United States.

 9

10    Date:  JUNE 17, 2016

11

12

13

14                      /S/ SANDRA MACNEIL
                        _____
15                    Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**54**

119

```
1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3          HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                         –  –  –

5                                    )
   MICHAEL SKIDMORE, AS TRUSTEE FOR  )
6  THE RANDY CRAIG WOLFE TRUST,      )
                                     )
7                       PLAINTIFF,   )
                                     )
8            vs.                     ) No. CV 15-03462-RGK
                                     )
9  LED ZEPPELIN; JAMES PATRICK PAGE; )
   ROBERT ANTHONY PLANT; JOHN PAUL   )
10 JONES; SUPER HYPE PUBLISHING,     )
   INC.; WARNER MUSIC GROUP CORP.,   )
11 PARENT OF WARNER/CHAPPELL MUSIC,  )
   INC.; ATLANTIC RECORDING          )
12 CORPORATION; RHINO ENTERTAINMENT  )
   COMPANY,                          )
13                                   )
                        DEFENDANTS.  )
14 _____)

15

16            REPORTER'S TRANSCRIPT OF JURY TRIAL

17           DAY 3, VOLUME II, PAGES 583-723

18              THURSDAY, JUNE 16, 2016

19                    1:01 P.M.

20              LOS ANGELES, CALIFORNIA

21

22

23         CINDY L. NIRENBERG, CSR 5059, FCRR
              U.S. Official Court Reporter
24              255 East Temple Street
                 Los Angeles, CA 90012
25              www.msfedreporter.com
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**55**

120

```
 1                    I N D E X

 2

 3   PLAINTIFF'S WITNESSES:                    PAGE

 4   KEVIN HANSON

 5      DIRECT BY MR. MALOFIY              590

 6      CROSS BY MR. ANDERSON             624

 7      REDIRECT BY MR. MALOFIY           632

 8      RECROSS BY MR. ANDERSON           634

 9

10   ALEXANDER STEWART

11      DIRECT BY MR. MALOFIY             636

12      CROSS BY MR. ANDERSON             678

13      REDIRECT BY MR. MALOFIY           698

14

15   MICHAEL JEFFREY SKIDMORE

16      DIRECT BY MR. MALOFIY             701

17

18

19

20

21   FURTHER PROCEEDINGS                    PAGE

22   DISCUSSION HELD OUTSIDE PRESENCE OF JURY  711

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**56**

121

```
 1   or is it off?

 2          MR. ANDERSON:  No.  It's absolutely clear the Trust

 3   does not own the copyright, and it's not until the last week

 4   that they claimed it did.

 5          There is an assignment, a 1967 assignment, from Randy

 6   California in the '67 songwriter agreement of the initial and

 7   renewal term of copyright.

 8          MR. KULIK:  We know that the copyright was terminated

 9   in 1996 when Randy Wolfe, as he had a right to do, terminated

10   the copyright, registered the copyright in his own name.

11          The only public record today, the only record, is

12   Randy Wolfe, and now the Trust is the owner of the copyright.

13          THE COURT:  Okay.  And, counsel, let me just --

14          MR. KULIK:  So it is an issue.

15          THE COURT:  Let me just help both -- well, it may or

16   may not be.  Let me just help you out.

17          Mr. Skidmore said that he is the executor and all of

18   the intellectual property of Randy Wolfe's is in that -- is in

19   that Trust.  As of now, that's the only evidence we have.

20          I'm not assuming that they have evidence otherwise or

21   not.  I -- but until they come up with evidence otherwise, it's

22   just not an issue.  That's where -- it's presumed to be in the

23   trust, like Mr. Skidmore said.

24          I don't know if you have some document that you're

25   going to pull out that says -- and if you do, I'm going to be
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**57**

122

1

2

3                              CERTIFICATE

4

5        I hereby certify that pursuant to Section 753,

6    Title 28, United States Code, the foregoing is a true and

7    correct transcript of the stenographically reported

8    proceedings held in the above-entitled matter and that the

9    transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12   Date: JUNE 17, 2016

13

14

15

16

17                 /s/   Cindy L. Nirenberg, CSR No. 5059

18                            Official Court Reporter

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**58**

123

1             UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                         - - - -

5

6   MICHAEL SKIDMORE, AS TRUSTEE FOR  )
    THE RANDY CRAIG WOLFE TRUST,       )
7                                      )
                      PLAINTIFF,       )
8                                      )
        vs.                            )   No. CV 15-03462-RGK
9                                      )
    LED ZEPPELIN; JAMES PATRICK PAGE;  )
10  ROBERT ANTHONY PLANT; JOHN PAUL    )
    JONES; SUPER HYPE PUBLISHING,      )
11  INC.; WARNER MUSIC GROUP CORP.,    )
    PARENT OF WARNER/CHAPPELL MUSIC,   )
12  INC.; ATLANTIC RECORDING           )
    CORPORATION; RHINO ENTERTAINMENT   )
13  COMPANY,                           )
                                       )
14                    DEFENDANTS.      )
    _____)

15

16            REPORTER'S TRANSCRIPT OF JURY TRIAL

17          DAY 4, VOLUME 1; PAGES 725 TO 848

18               FRIDAY, JUNE 17, 2016

19                     8:30 A.M.

20             LOS ANGELES, CALIFORNIA

21

22   _____

23          SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
           Official Reporter, U.S. District Court
24               255 East Temple Street
                 Los Angeles, CA  90012
25                  213.894.5949

**I N D E X**

**PLAINTIFF'S WITNESSES:**                                              **PAGE**

**MICHAEL SKIDMORE**
  DIRECT EXAMINATION (CONTINUED) BY MR. MALOFIY        729
  CROSS-EXAMINATION BY MR. ANDERSON                    735
  REDIRECT EXAMINATION BY MR. MALOFIY                  751

**MICHAEL EINHORN**
  DIRECT EXAMINATION BY MR. MALOFIY                    757
  CROSS-EXAMINATION BY MR. ANDERSON                    780
  REDIRECT EXAMINATION BY MR. MALOFIY                  788

**DEFENDANTS' WITNESSES:**                                             **PAGE**

**LAWRENCE FERRARA**
  DIRECT EXAMINATION BY MR. ANDERSON                   794

**E X H I B I T S**

| TRIAL EXHIBIT NUMBER: | MARKED FOR I.D. PAGE: | RECEIVED IN EVIDENCE PAGE: |
|---|---|---|
| 61-A | -- | 806 |
| 451 | -- | 741 |
| 452 | -- | 744 |
| 453 | -- | 746 |
| 454 | -- | 747 |
| 455 | -- | 747 |
| 1XX | -- | 763 |
| 2016 | -- | 738 |
| 2070 | -- | 740 |
| 2092 | -- | 802 |
| 2405 | -- | 802 |
| 3031-00042 | -- | 733 |
| 450-00001 | -- | 730 |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**60**

**REDIRECT EXAMINATION**

1

2    BY MR. MALOFIY:

3    Q.   Has Janet Wolfe, who took the stand earlier in this case,

4    ever disputed you as the trustee?

5    A.   No.

6              MR. ANDERSON:  Objection, relevance, Your Honor.

7              THE COURT:  Sustained.

8    BY MR. MALOFIY:

9    Q.   Has Marla Wolfe ever disputed you --

10             THE COURT:  Sustained, Counsel, if you're talking

11   about dispute of the Trust.  I just want to make sure you

12   understand the last ruling, and I don't want you to ask the

13   same question again.  So go ahead.

14             MR. MALOFIY:  I'm sorry.

15             THE COURT:  That's okay.

16   BY MR. MALOFIY:

17   Q.   Are you familiar with the fifth amendment of the Trust?

18   A.   Yes.

19   Q.   And is it accurate the fifth amendment of the Trust allows

20   that the assets of the Trust and its estate and income shall be

21   used for the purpose of providing musical instruments --

22             MR. ANDERSON:  Objection, Your Honor.  This is within

23   the motion in limine.

24             THE COURT:  Excuse me, Counsel.

25             MR. MALOFIY:  The door was opened.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**

**61**

126

```
 1            THE COURT:  Counsel, just a second.  One at a time.
 2       Objection why?
 3            MR. ANDERSON:  It's within the motion in limine
 4   relating to the Trust and its use of funds.  That was granted.
 5   And we did not offer the fifth amendment.
 6            MR. MALOFIY:  The fifth --
 7            THE COURT:  Overruled.
 8            MR. MALOFIY:  Thank you, Your Honor.
 9   Q.   Is it accurate that the assets of the Trust, estate, and
10   its income shall be used for the purpose of providing musical
11   instruments and associated materials --
12            MR. ANDERSON:  Your Honor --
13            THE COURT:  Excuse me.  That is sustained, Counsel,
14   yes.  As to what the funds were used for was sustained, is a
15   subject of a motion in limine.  It was excluded.  You can't get
16   into that.
17            MR. MALOFIY:  On the narrow issue of opening the door
18   to the beneficiary, there was issue --
19            THE COURT:  Counsel, is this a question?
20            MR. MALOFIY:  No.  I'll ask my next question, Your
21   Honor.
22            THE COURT:  Okay.
23   BY MR. MALOFIY:
24   Q.   Is the beneficiary of the Trust Ventura County School
25   District?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**62**

127

```
 1          MR. ANDERSON:  Objection, Your Honor.

 2          THE COURT:  Sustained.  It has no relevancy what

 3   they're using the Trust for other than if it's going to one of

 4   the parties in this case.

 5          MR. MALOFIY:  One second, Your Honor.

 6          MR. ANDERSON:  Also, Your Honor, given that he is --

 7   the question mischaracterizes the Trust, the document, I think

 8   it's appropriate that the jury be instructed to ignore the

 9   statement that counsel just made.

10          THE COURT:  Counsel, anytime I sustain an objection,

11   they're to ignore the question.  They know that.

12          MR. ANDERSON:  Thank you, Your Honor.

13          MR. MALOFIY:  Your Honor, if I may, briefly.

14          THE COURT:  Yes.

15          MR. MALOFIY:  The issue is --

16          THE COURT:  Oh, no.  We don't argue anything in front

17   of jury, Counsel, as far as legal issues.  You do that anytime

18   we take a break in the case.  We can do that outside the

19   presence of the jury.

20       It's very clear that the Court stated that anything as to

21   what the monies in the Trust are used for other than going to

22   the beneficiaries, what it's being used for or where it's being

23   sent or whatever, whoever's going to benefit from it was

24   excluded from this case.

25       So go ahead and ask your next question.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**63**

128

```
 1          MR. MALOFIY:  The only issue I had was it was asked,

 2    the beneficiary of the first, second, or third amendment, by

 3    Mr. Anderson.

 4          THE COURT:  Counsel, are you asking a question?  We

 5    don't argue matters of law in front of the jury.

 6          MR. MALOFIY:  I don't want to do that, Your Honor.

 7          THE COURT:  Okay.

 8    BY MR. MALOFIY:

 9    Q.   When Mr. Anderson was asking you questions as far as the

10    beneficiaries, do you recall him asking questions of the first,

11    second, and third amendment?

12    A.   Yes.

13          MR. ANDERSON:  Objection, Your Honor.

14    BY MR. MALOFIY:

15    Q.   The fifth amendment, who's the beneficiary?

16          MR. ANDERSON:  Objection, Your Honor.

17          THE COURT:  Sustained.

18          MR. MALOFIY:  We move to admit the fifth amendment,

19    Your Honor.

20          MR. ANDERSON:  Objection, Your Honor.

21          THE COURT:  Based on what has already been presented

22    to the Court, sustained.  Under the rules that have been

23    already set out before the trial and motions in limine,

24    sustained.

25          MR. MALOFIY:  One moment, Your Honor.  With the
```

```
1    Court's indulgence, one moment.

2           THE COURT:  Yes.

3    BY MR. MALOFIY:

4    Q.   Sir, there was an accusation by defense counsel that you,

5    in the opening, had unclean hands.  Can you show the jury your

6    hands?  Can you do that?

7           THE COURT:  Sustained.

8        Counsel, there's no reason to be playing to the jury like

9    this.  Ask a relevant question.

10          MR. MALOFIY:  That's it, Your Honor.

11          THE COURT:  Okay.

12          MR. ANDERSON:  No recross, Your Honor.

13          THE COURT:  Okay.  You may step down, sir.

14       Okay.  Next witness.

15          MR. MALOFIY:  One moment, Your Honor.  I have to

16   summons him from the hallway.

17          THE COURT:  Okay.

18       While we're waiting for the next witness, ladies and

19   gentlemen, just so you understand what's going on here, the

20   suit is that the Trust owns the property rights interest here.

21   What the Trust does with them afterwards is not relevant.  The

22   question is whether or not the Trust owns the property rights

23   or not.

24       (The witness entered the courtroom.)

25          THE CLERK:  Good morning.  Right here to be sworn,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**65**

130

| | |
|---|---|
| 1 | **MICHAEL EINHORN, CALLED AS A WITNESS BY THE PLAINTIFF,** |
| 2 | **DIRECT EXAMINATION** |
| 3 | BY MR. MALOFIY: |
| 4 | Q.   Mr. Einhorn, thank you for being here. |
| 5 | Where do you live? |
| 6 | A.   I live in New Jersey. |
| 7 | Q.   Let me apologize.  Dr. Einhorn, correct? |
| 8 | A.   Correct. |
| 9 | Q.   All right.  Thank you.  And thank you for being here.  I |
| 10 | know you came in late last night; is that correct? |
| 11 | A.   Correct. |
| 12 | Q.   Now, can you tell me what your background is. |
| 13 | A.   I have a Ph.D. in economics from Yale University.  I |
| 14 | taught economics at Rutgers University.  I also taught as an |
| 15 | adjunct professor in music economics at Fordham University and |
| 16 | also in business at the Columbia University Graduate School of |
| 17 | Business.  And I worked in the music industry since 1997 on |
| 18 | various matters connected with licensing and litigation. |
| 19 | Q.   Now, did you have an opportunity -- and as it relates to |
| 20 | this case, did you have an opportunity -- let me strike that. |
| 21 | Have you done economic analysis for copyright cases in the |
| 22 | past? |
| 23 | A.   Yes, I have. |
| 24 | Q.   And how many of those analyses have you done? |
| 25 | A.   I'd say about, oh, 10 to 15. |

**EXHIBIT 4**
**66**

131

```
 1              THE COURT:  Okay.

 2              THE WITNESS:  What happened was, after May 31st, 2011,

 3    Rhino paid Super Hype 10 million dollars for the right to

 4    re-release the Led Zeppelin live album that was recorded

 5    originally back in 2007.

 6              THE COURT:  Okay.

 7              THE WITNESS:  And I'm looking at the contents of that

 8    album.  That album had 17 songs.

 9              THE COURT:  I'm sorry, you've answered the question.

10       Next question.

11    BY MR. MALOFIY:

12    Q.   Did you say 10 million and then an additional 5 million?

13    A.   That's 10 million for the live.  Then they paid them an

14    additional 5 million for the rights to re-release several other

15    albums.

16    Q.   Now, to be clear, I just want to focus your testimony,

17    that's in addition to what we just discussed in the record --

18    the label revenues of 13.5 million, correct?

19    A.   Correct.

20    Q.   Now, is there also additional monies, publishing monies,

21    that was received pursuant to a contract which are within the

22    statutory period of May 31st, 2011, until today?

23              MR. ANDERSON:  Objection, Your Honor.  First of all,

24    it lacks foundation, but counsel's referring to the 2008

25    agreement, and the Court has already ruled that payments under
```

**EXHIBIT 4**
**67**

132

```
 1    the 2008 agreement are outside the --

 2              THE COURT:  Sustained.

 3              MR. ANDERSON:  -- statute of limitations.

 4              THE COURT:  Sustained.

 5              MR. MALOFIY:  My question's actually a little bit

 6    different.

 7              THE COURT:  Why don't you restate the question, then.

 8    BY MR. MALOFIY:

 9    Q.   Did you have an opportunity to look at the financial

10    statements of the monies that were passed through to Mr. Plant

11    and Mr. Page?

12    A.   Correct.

13    Q.   And when you reviewed those financial statements which

14    were admitted into evidence yesterday in part, did you have an

15    opportunity to see the income that was coming in, the expenses,

16    and what was left?

17    A.   Yes, I did.

18    Q.   And did the expenses wipe out all the income and leave a

19    net profit of zero?

20    A.   Correct.

21              MR. ANDERSON:  Objection, document speaks for itself,

22    and also counsel is talking about payments under the 2008

23    agreement.  They're publishing payments.  Outside the statute

24    of --

25              THE COURT:  Why don't we clarify what documents we're
```

**EXHIBIT 4**
**68**

133

1    talking about.

2           MR. MALOFIY:  These documents were used in Mr. Page's

3    testimony yesterday.  They're the financial --

4           THE COURT:  Counsel, your question, why don't you

5    clarify it for the witness so he can testify.

6    BY MR. MALOFIY:

7    Q.   Do you understand what documents I'm referring to?  And to

8    be particular, it is the financial statements, and I'll --

9    financial statements marked as D39243 to D39321.

10   A.   Yes.

11   Q.   Okay.  Did you have an opportunity to look at those?

12   A.   I did.

13   Q.   And did all the money that came into the -- into that

14   entity in 2015, year ending March 2015, if you look at the

15   second, third, I believe fourth page, does it indicate

16   6.6 million pounds going in, 6.6 million pounds going out, and

17   leaving a profit of zero?

18          MR. ANDERSON:  Your Honor, again, those are payments

19   under the 2008 --

20          THE COURT:  Understand.  Counsel, I understand your

21   objection, and --

22          MR. ANDERSON:  Thank you.

23          THE COURT:  Let me ask the witness.  We're referring

24   to any monies coming in and going out that you can attribute to

25   any re-release after 2011.  Some of those payments may have

1  come in from -- they may be old payments coming in at all.

2  Have you been able to distinguish what came in just during that

3  time period?

4           THE WITNESS:  Yes, I have.

5           THE COURT:  Okay.  Then your question is, just during

6  that time period.

7  BY MR. MALOFIY:

8  Q.   And what was -- what is your conclusion?

9           THE COURT:  Excuse me, Counsel.

10           MR. ANDERSON:  The problem is, this gentleman doesn't

11  agree with Your Honor's ruling.  He is basing that answer on

12  his belief that the payments under the 2008 agreement --

13           THE COURT:  Counsel, you can get into that at

14  cross-examination.  What I've asked him is if he can tell us

15  and designate what money came in and went out solely based on

16  the re-release after 2011, not based on any prior obligations

17  or anything else, and he said he could.

18      So go ahead.

19           MR. ANDERSON:  Thank you, Your Honor.

20           THE WITNESS:  Yes.  According to state -- according to

21  the page I have in front of me, there was an invoice sent out

22  in between April 1st, 2014, and March 31st, 2015.  There is an

23  invoice here.

24           THE COURT:  Okay.  But keep in mind, it's not relevant

25  what the invoice said.  What's relevant is if you can show us

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**70**

135

```
 1    whether or not that invoice reflects only money that was

 2    attributed to productions after 2011.  So we want to make sure

 3    that the invoice doesn't encompass something from 10 years ago

 4    or 15 years ago.  So the question is, can you do that?

 5           THE WITNESS:  I believe that is correct, yes.

 6           THE COURT:  Okay.  Go ahead, then.

 7    BY MR. MALOFIY:

 8    Q.   Please answer the question.  What, in your expert opinion

 9    and analysis, were you able to determine the revenues received

10    from -- from, excuse me, May 31st, 2011, until today as it

11    relates to publishing?

12    A.   Well, I said first -- remember, I'm doing it, I said,

13    April 1st, 2014, to March 31st, 2015.  6.6 million pounds.

14           THE COURT:  Okay.

15    BY MR. MALOFIY:

16    Q.   And were all the expenses eat up -- did all the expenses

17    eat up that income?

18    A.   Correct.

19    Q.   And is that in addition to the 13.5 million, the

20    15 million revenues from Rhino, and -- this is in addition,

21    correct?

22    A.   Yes.

23    Q.   What's the total number if you add those up?

24    A.   Well, that's 6.6 million.

25           Now let me go to the previous year.  According to this
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
71

136

```
1    opinion.

2             MR. ANDERSON:  Yes.  I just want to make sure that

3    that's clear.

4             THE COURT:  Next question.

5             MR. ANDERSON:  Thank you, Your Honor.

6             THE WITNESS:  I'm sorry, could you repeat the

7    question, please?

8             THE COURT:  There was no question.

9    BY MR. ANDERSON:

10   Q.   There was no question pending.

11        And I apologize, I'm just -- given your testimony, there

12   was several questions I'm not going to ask you.

13        The payments that you referred to on the publishing side,

14   for example, I think it came to roughly 6 million dollars,

15   those payments were under a contract dated in 2008; isn't that

16   correct?

17   A.   In the numbers that I reported, I'm just reporting numbers

18   that were off sheets after May 31st, 2011.  I didn't refer back

19   to the contract.  These were numbers that were invoiced and

20   distributed after May 31st, 2011.

21   Q.   Isn't it true that at your deposition you testified that

22   the publishing side -- you've testified to the publishing side

23   payments reflected in the many pages of documents we've

24   provided that were paid under the 2008 contract?

25   A.   At the time of the deposition, I referred to the advances
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**72**

137

Case: 16-56287, 06/02/2017, ID: 10457933, DktEntry: 28-1, Page 153 of 320
Case 2:15-cv-09402-RGK-AGR Document 29-33 Filed 07/07/16 Page 68 of 88 Page ID
#:8563

783

 1    that were paid under the terms of the 2008 advance contract.

 2    Yeah, that is correct.

 3    Q.    Thank you.

 4          Do you have any reason to doubt that the payments that you

 5    were talking about on the publishing side today were payments

 6    under the 2008 contract?

 7                MR. MALOFIY:  Objection.

 8                THE COURT:  Overruled.

 9          You may answer.

10                THE WITNESS:  These were payments for the use of the

11    composition after May 31st, 2011.

12    BY MR. ANDERSON:

13    Q.    And those payments were made under a contract for the use

14    of the composition that was entered into in 2008, correct?

15                THE COURT:  If you know.

16                THE WITNESS:  There was a contract signed, as is

17    always the case, with a record deal.  At some point after the

18    contract were signed --

19                THE COURT:  I'm sorry.  Just listen to the question

20    and answer the question.

21                THE WITNESS:  They were made under the terms of a 2008

22    contract.

23    BY MR. ANDERSON:

24    Q.    Thank you, sir.

25          And those payments under the 2008 contract were for the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**73**

138

```
 1                          CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported proceedings

 6   held in the above-entitled matter and that the transcript page

 7   format is in conformance with the regulations of the

 8   Judicial Conference of the United States.

 9

10   Date:  JUNE 19, 2016

11

12

13

14                  /S/ SANDRA MACNEIL

15               Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**74**

139

```
 1                    UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

 4                             - - -

 5

 6   MICHAEL SKIDMORE, AS TRUSTEE FOR   )
     THE RANDY CRAIG WOLFE TRUST,       )
 7                                      )
                         PLAINTIFF,     )
 8                                      )
              vs.                       ) No. CV 15-03462-RGK
 9                                      )
     LED ZEPPELIN; JAMES PATRICK PAGE;  )
10   ROBERT ANTHONY PLANT; JOHN PAUL    )
     JONES; SUPER HYPE PUBLISHING,      )
11   INC.; WARNER MUSIC GROUP CORP.,    )
     PARENT OF WARNER/CHAPPELL MUSIC,   )
12   INC.; ATLANTIC RECORDING           )
     CORPORATION; RHINO ENTERTAINMENT   )
13   COMPANY,                           )
                                        )
14                       DEFENDANTS.    )
     _____)

15

16               REPORTER'S TRANSCRIPT OF JURY TRIAL

17          DAY 4, VOLUME II, PAGES 849-966

18              FRIDAY, JUNE 17, 2016

19                    1:01 P.M.

20              LOS ANGELES, CALIFORNIA

21

22

23          CINDY L. NIRENBERG, CSR 5059, FCRR
                U.S. Official Court Reporter
24              255 East Temple Street
                Los Angeles, CA 90012
25                 www.msfedreporter.com
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**75**

140

```
 1                     I N D E X

 2

 3   DEFENDANTS' WITNESSES:                 PAGE

 4   LAWRENCE FERRARA

 5      DIRECT BY MR. ANDERSON (RESUMED)    853

 6      CROSS BY MR. MALOFIY                902

 7      REDIRECT BY MR. ANDERSON            932

 8

 9   JOHN BALDWIN

10      DIRECT BY MR. ANDERSON             935

11      CROSS BY MR. MALOFIY               942

12      REDIRECT BY MR. ANDERSON            953

13

14   ROBERT BALLOU MATHES

15      DIRECT BY MR. ANDERSON             954

16

17

18   FURTHER PROCEEDINGS                   PAGE

19   DISCUSSION HELD IN CHAMBERS           921

20

21                  E X H I B I T S

22   TRIAL EXHIBITS               MARKED  ADMITTED

23   2704                                 917

24   2705                                 918

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**76**

141

```
 1   BY MR. MALOFIY:

 2   Q.   Sir, the --

 3   A.   And the answer is yes.

 4          MR. ANDERSON:  Relevance.

 5          THE COURT:  Okay.  Next question.

 6   BY MR. MALOFIY:

 7   Q.   The answer is yes, you never did a report pro bono,

 8   correct?

 9          MR. ANDERSON:  Objection.

10          THE COURT:  Sustained.  Irrelevant.

11   BY MR. MALOFIY:

12   Q.   Now, in this case, you indirectly were working for the

13   plaintiff and then you flipped to work for the defendant for

14   $100,000; isn't that correct?

15          MR. ANDERSON:  Objection.  Misstates the facts.

16          MR. MALOFIY:  No.

17   BY MR. MALOFIY:

18   Q.   Isn't that correct, sir?

19   A.   Absolu --

20          THE COURT:  Well, no.  Excuse me.  Excuse me.

21          First of all, it's argumentative.  Second of all, I

22   don't know if it's correct or not.

23          Have you worked -- did you work for the plaintiff

24   in -- for a time and then -- and now you're working for the

25   defendant?  When I say "working for," were you employed by the
```

```
 1    plaintiff at one time and then employed by the defendant?

 2             THE WITNESS:  No.

 3    BY MR. MALOFIY:

 4    Q.   Indirectly, sir.

 5    A.   No, not indirectly.  I was --

 6             THE COURT:  Okay.  The answer is no, you didn't.

 7             THE WITNESS:  The answer is no.

 8    BY MR. MALOFIY:

 9    Q.   Sir, it was at your deposition that it was disclosed that

10    you, in fact, worked for plaintiff's publisher and never

11    disclosed the fact that you had done a musical --

12             THE COURT:  Counsel, I'm sorry.  You can't testify

13    asking questions.  You can ask him a question, but what you're

14    trying to do is get testimony in front of the jury that the

15    witness hasn't testified to.  So just ask the question.

16    BY MR. MALOFIY:

17    Q.   Sir, isn't it true that you worked and did a musicological

18    analysis for Rondor Music?  Yes or no?

19    A.   Yes, and that is something that I freely said at my

20    deposition, it's not something that --

21    Q.   Sir --

22             MR. MALOFIY:  Strike the answer after "freely."

23    BY MR. MALOFIY:

24    Q.   Yes, you did, correct?

25             THE COURT:  No, no, no, counsel.  Let the Court run
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**78**

143

1    the court, okay?  You're not the one to say, "You can only

2    answer yes," or, "You can only answer no."  That's for the

3    Court to decide.  He's answered the question.  It's relevant.

4    It stays in.

5         Next question.

6    BY MR. MALOFIY:

7    Q.   Sir, isn't Rondor Music an affiliate of Universal Music

8    Group, who administers the copyright on behalf of plaintiff?

9         MR. ANDERSON:  Objection.  Lacks foundation.

10        THE WITNESS:  The answer is in two parts.

11        THE COURT:  Overruled.

12        THE WITNESS:  The first is that in my deposition, I

13   said that Rondor Music, who called me some years ago, not about

14   the "Taurus" deposit copy, is a division of Universal.

15        As to the second part, I am not aware that Universal

16   has an interest in "Taurus."

17        THE COURT:  Okay.  Next question.

18   BY MR. MALOFIY:

19   Q.   Isn't it true that Rondor Music works with Universal and

20   you were hired by Universal?

21        THE COURT:  If you know.

22        THE WITNESS:  Well, I testified to that fact in my

23   deposition, that my understanding is Rondor Music is a division

24   of Universal Music Publishing Group.

25   ///

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**79**

144

```
 1    BY MR. MALOFIY:

 2    Q.   Isn't it true that you never disclosed, prior to your

 3    deposition, that you had done a prior musicological analysis of

 4    the "Taurus" sound recording and the "Stairway to Heaven" sound

 5    recording?

 6              MR. ANDERSON:  Objection.  Argumentative.  Relevance.

 7              THE COURT:  Sustained on both grounds.

 8    BY MR. MALOFIY:

 9    Q.   Isn't it true you did not disclose the facts which you

10    relied upon or the facts which you did not consider in coming

11    to your opinions in this case?

12              MR. ANDERSON:  Same objections.

13              THE COURT:  Sustained.

14    BY MR. MALOFIY:

15    Q.   Sir, in your report, did you ever disclose the fact that

16    you initially looked at the "Taurus" sound recording?

17              MR. ANDERSON:  Objection.

18              THE COURT:  Sustained.

19    BY MR. MALOFIY:

20    Q.   Sir --

21              THE COURT:  Maybe you should listen to the Court when

22    it makes its ruling and understand -- rather than just asking

23    the same question over and over and over again -- when it's

24    been sustained, it's been sustained.

25              MR. MALOFIY:  I'll move forward.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**80**

145

```
 1   A.   No.

 2   Q.   How about 1971?

 3   A.   No.

 4   Q.   All right.  Now, do you remember giving an interview in

 5   the early '70s about Jimmy Page and Robert Plant coming back

 6   from a cottage called Bron-Yr-Aur with a guitar intro and verse

 7   for "Stairway to Heaven"?

 8   A.   No.

 9              MR. MALOFIY:  Please play 164-A.

10              THE CLERK:  What was the number?

11              MR. MALOFIY:  164-A.

12              My apologies.  100164 audio.

13        (Playing of audio tape.)

14              MR. MALOFIY:  Pause it.

15   BY MR. MALOFIY:

16   Q.   Do you recognize that person's voice?

17   A.   Yes, I do.

18   Q.   That's you, correct?

19   A.   Yes, it is.

20   Q.   All right.  Did you hear what the recording said?

21   A.   Yes.

22   Q.   All right.  And it said that they had come back from a

23   Welsh cottage with a guitar intro and a verse.

24              Did I hear that correctly?

25   A.   Yes.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**81**

```
 1    Q.   Okay.  Is your memory correct -- is your memory as

 2    accurate today as it would have been in 1972?

 3    A.   Yes.

 4    Q.   It is?

 5              THE COURT:  He already answered yes.

 6    BY MR. MALOFIY:

 7    Q.   Do you dispute that statement, sir?

 8    A.   I was -- it sounds like I was guessing at the time.

 9    Q.   So are you guessing today or you were guessing in 1972, a

10    year after it was written?

11              MR. ANDERSON:  Objection, Your Honor.  Argumentative.

12              THE COURT:  Sustained.

13    BY MR. MALOFIY:

14    Q.   Are you guessing today or do you know?

15              MR. ANDERSON:  Objection, Your Honor.  Argumentative.

16              THE COURT:  Overruled.

17              THE WITNESS:  I was guessing in 1972.

18    BY MR. MALOFIY:

19    Q.   So your memory is better today than in 1972?

20              THE COURT:  Asked and answered.

21              THE WITNESS:  No.  I do.

22         (Laughter.)

23              MR. MALOFIY:  I'd like to move that into evidence.

24    BY MR. MALOFIY:

25    Q.   One last thing.  In 19- --
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**82**

147

CERTIFICATE


    I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date: JUNE 18, 2016







                    /s/  Cindy L. Nirenberg, CSR No. 5059

                            Official Court Reporter

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**83**

148

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4    - - - -

5

6    MICHAEL SKIDMORE, AS TRUSTEE FOR    )
     THE RANDY CRAIG WOLFE TRUST,        )
7                                        )
                         PLAINTIFF,      )
8                                        )
         vs.                             )    No. CV 15-03462-RGK
9                                        )
     LED ZEPPELIN; JAMES PATRICK PAGE;   )
10   ROBERT ANTHONY PLANT; JOHN PAUL     )
     JONES; SUPER HYPE PUBLISHING,       )
11   INC.; WARNER MUSIC GROUP CORP.,     )
     PARENT OF WARNER/CHAPPELL MUSIC,    )
12   INC.; ATLANTIC RECORDING            )
     CORPORATION; RHINO ENTERTAINMENT    )
13   COMPANY,                            )
                                         )
14                       DEFENDANTS.     )

15

16   REPORTER'S TRANSCRIPT OF JURY TRIAL

17   DAY 7; PAGES 1296 TO 1313

18   THURSDAY, JUNE 23, 2016

19   9:27 A.M.

20   LOS ANGELES, CALIFORNIA

21

22   _____

23   SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
     Official Reporter, U.S. District Court
24   255 East Temple Street
     Los Angeles, CA  90012
25   213.894.5949

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT 4
84

149

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2


 3   FOR DEFENDANTS WARNER/CHAPPELL MUSIC, INC., ATLANTIC RECORDING
     CORPORATION, RHINO ENTERTAINMENT COMPANY:
 4
          LAW OFFICES OF PETER J. ANDERSON, PC
 5        BY:  PETER J. ANDERSON, ATTORNEY AT LAW
          100 WILSHIRE BOULEVARD, SUITE 2010
 6        SANTA MONICA, CALIFORNIA  90401
          310.260.6030
 7


 8


 9   ALSO PRESENT:

10        NATHAN OSHER, WARNER/CHAPPELL MUSIC, INC.

11        BRAD COHEN, WARNER MUSIC GROUP

12        SCOTT DUVAL, SENIOR TECHNOLOGY CONSULTANT

13        DAN MORENO, TRIAL TECHNICIAN

14


15


16                    I N D E X

17

```

```
18   PROCEEDINGS:                                       PAGE:

19    Discussion outside the presence of the jury       1299
      re jury note
20
      Jury note addressed in open court                 1304
21
      Verdict                                           1308
22


23


24


25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**85**

```
 1              LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 23, 2016

 2                            9:27 A.M.

 3                            - - - -

 4      (Outside the presence of the jury:)

 5           THE COURT:  The record will reflect the jury is not

 6   present.

 7        There's a note from the jury that you both have received

 8   copies of asking for plaintiff's audio of "Taurus'" guitar --

 9   of "Taurus" on guitar, and plaintiff's audio of "Stairway to

10   Heaven" on guitar.

11        I understand there is a disagreement as to what that

12   means?

13           MR. MALOFIY:  Yes.

14           THE COURT:  Okay.  What's the plaintiff's position?

15           MR. MALOFIY:  The plaintiff's position is that I don't

16   think there's disagreement as to plaintiff's version of

17   "Stairway to Heaven."  The disagreement is plaintiff's version

18   of "Taurus."

19           THE COURT:  Is that the only disagreement?  "Stairway

20   to Heaven," everybody agrees on?

21           MR. MALOFIY:  I believe so.

22           MR. ANDERSON:  The exhibit they proposed playing

23   "Stairway to Heaven" is not a complete, but it is what they put

24   into evidence as --

25           THE COURT:  Okay.  So the only disagreement is what is
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**86**

151

```
 1    the "Taurus."  And what's your position and what's the defense

 2    position?

 3         MR. MALOFIY:  The one that was played as audio

 4    throughout the trial was 527-V, which is the "Taurus" bass

 5    clef.  The actual full "Taurus" deposit copy was played live by

 6    Mr. Hanson, and the "Taurus" deposit copy recorded was never

 7    played in full for this court or anyone, and so --

 8         THE COURT:  Try that again.  The plaintiff's --

 9         MR. MALOFIY:  The "Taurus" deposit that we played over

10    and over in court was 527-V, and that was Mr. Hanson playing

11    the "Taurus" deposit copy bass clef, and that's what we used in

12    this court as an audio exhibit throughout the trial and also

13    the comparison.

14         THE COURT:  I don't want to know -- I want to know

15    exactly what it is.  It's Hanson's -- go ahead, say it again.

16         MR. MALOFIY:  Hanson's re-recording -- excuse me.

17    Hanson's performance of the "Taurus" deposit copy bass clef,

18    which was used in court over and over again.  The version they

19    want to play was never played in court in full.

20         THE COURT:  So this is the one that you -- what you

21    think they're referring to.  And I don't care what was played

22    in court.  What I'm interested in is what they're referring to,

23    and I'm going to ask them when they come in.  What they're

24    asking for, or what you feel they're referring to is the

25    deposit copy played by --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**87**

152

```
 1          MR. MALOFIY:  Mr. Hanson, our expert.

 2          THE COURT:  Hanson.

 3          MR. MALOFIY:  Right.

 4          THE COURT:  And you feel it's what?

 5          MR. ANDERSON:  Your Honor, first of all, what he's --

 6  it wasn't played throughout the trial, but --

 7          THE COURT:  I don't care.  I want to find out what

 8  they want.

 9          MR. ANDERSON:  Right.  The problem with that recording

10  is, it's only part of "Taurus."  It's only the one clef.

11          THE COURT:  And I don't care if it's part or not.

12  It's what they ask for, and all I want to know is what they ask

13  for.

14          MR. ANDERSON:  Also admitted into evidence --

15          THE COURT:  And counsel, I've gotta tell both sides,

16  one counsel should be on any one issue.  If you want to have --

17  I've had both counsel come up here.  I can't control all these

18  counsel.  One counsel on each side, okay?

19      Go ahead.

20          MR. ANDERSON:  Exhibit 525-V is a plaintiff's exhibit.

21  It was admitted into evidence.  It is Mr. Hanson playing the

22  entire -- both clefs of the "Taurus" deposit copy.

23          THE COURT:  I'm sorry, playing --

24          MR. ANDERSON:  Playing the "Taurus" deposit copy, not

25  just part of the "Taurus" deposit copy.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**88**

153

```
 1            THE COURT:  So you're saying that what you think they

 2    mean is Hanson's playing of both.

 3            MR. ANDERSON:  Of the "Taurus" deposit copy, not just

 4    part of the "Taurus" deposit copy.

 5            THE COURT:  Okay.  So what you're saying is that you

 6    think they mean that they want to hear Hanson's playing of the

 7    entire deposit copy.

 8            MR. ANDERSON:  Right.

 9            THE COURT:  You're saying you think they want play

10    Hanson's version of --

11            MR. ANDERSON:  Just the bass clef.

12            MR. MALOFIY:  It's 527-V, "Taurus" bass clef, because

13    that was --

14            THE COURT:  Just the bass clef.

15            MR. MALOFIY:  Because that's what was played

16    throughout this trial.

17            THE COURT:  Just -- I don't care if it was played

18    throughout the trial.  I want to know what they want to know.

19    And I'm going to ask them.  Do they want Hanson's version of

20    the entire deposit copy, or do they want Hanson's version of

21    just the bass clef?

22            MR. MALOFIY:  And that's what was used for comparison,

23    for Your Honor's reference.

24            THE COURT:  Okay.

25            MR. ANDERSON:  And may I ask, Your Honor, if -- to
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**89**

154

```
 1   give them the choice, if they also want to hear the "Taurus" --
 2   for example, if they're asking for the bass clef, if they also
 3   want to hear the entire deposit copy.
 4           THE COURT:  I'm going to ask them what they're asking
 5   for.  I'm not going to indicate or suggest what they meant.  I
 6   want to know if they want the Hanson version of "Taurus," the
 7   entire playing of the deposit copy, or just the playing of the
 8   bass clef.
 9           MR. ANDERSON:  And if I could explain, Your Honor.
10           THE COURT:  Yes.
11           MR. ANDERSON:  He played live --
12           THE COURT:  I don't care --
13           MR. ANDERSON:  -- 525 --
14           THE COURT:  Counsel, I don't care what he played.  I
15   want to know what the jury wants to know.  If they want to
16   know just two words of what a witness says, that's what I'm
17   going to --
18           MR. ANDERSON:  This is important to that, I think.  If
19   they want to hear what Mr. Hanson played live, it's 525-V.
20           THE COURT:  What he played live.
21           MR. ANDERSON:  On the stand, he played the entire
22   "Taurus," both hands, both clefs, and that -- a recording of
23   that was produced as 525-V.
24           MR. MALOFIY:  It was never played in court.
25           MR. ANDERSON:  So it helps the Court to identify what
```

```
 1    they're asking for.  If they wanted to hear what Mr. Hanson

 2    played live, that would be 525-V.

 3            MR. MALOFIY:  It was never played in court, and the

 4    purpose -- it was objected to by defense counsel, and the

 5    objection was sustained by Your Honor.

 6            THE COURT:  I'm going to ask them whether they want

 7    Hanson's playing of the bass -- or excuse me, of the deposit

 8    copy, the entire deposit copy of "Taurus," or just the bass

 9    clef.

10            MR. MALOFIY:  Thank you.

11            MR. ANDERSON:  Thank you, Your Honor.

12            THE COURT:  Okay.  Why don't we go ahead and bring

13    them in.

14            THE CLERK:  All rise.

15        (Brief pause in the proceedings.)

16        (In the presence of the jury at 9:40 a.m.:)

17            THE COURT:  Okay.  First of all, we have a note from

18    the jury.

19        The foreperson is who?

20            JURY FOREPERSON:  (Raises hand.)

21            THE COURT:  Juror No. 3.  Okay.  And that note reads

22    as follows.

23        First of all, the Court should, for the record, indicate

24    that the jury is present at this time, and we're going over a

25    note that you sent to the Court.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**91**

156

```
1          And the note says this, that we would like to listen to,

2     No. 1, plaintiff's audio of "Taurus" guitar, and, No. 2,

3     plaintiff's audio of "Stairway to Heaven" guitar.

4          Is that correct?

5               JURY FOREPERSON:  (Nods head up and down.)

6               THE COURT:  Yes?

7               JURY FOREPERSON:  We'd like to listen to them twice.

8               THE COURT:  You'd like to listen to them twice.  Okay.

9               JURY FOREPERSON:  Right.

10              THE COURT:  Okay.  As to the plaintiff's audio of

11    "Taurus" guitar, I've gotta figure out which one you mean.  Do

12    you mean the full playing of the deposit copy or do you mean

13    just the bass clef playing of the deposit copy?

14              JUROR NO. 6:  Bass clef.

15              JURY FOREPERSON:  The full copy.

16              THE COURT:  The full copy.  Okay.  So that's what you

17    want, those two, but you want them played twice?

18              JURY FOREPERSON:  Yes.

19              THE COURT:  Do you want them played twice in sequence,

20    or -- in other words, you want --

21              JURY FOREPERSON:  In sequence.

22              THE COURT:  For instance, do you want "Stairway to

23    Heaven" played twice and then "Taurus" played twice, or do you

24    want "Stairway to Heaven," "Taurus," "Stairway to Heaven" and

25    "Taurus"?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**92**

157

```
 1                            CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported proceedings

 6   held in the above-entitled matter and that the transcript page

 7   format is in conformance with the regulations of the

 8   Judicial Conference of the United States.

 9

10   Date:  JUNE 27, 2016

11

12

13

14                    /S/ SANDRA MACNEIL
                      _____

15                    Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT 4**
**93**

158

# Tab 12

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail:  hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES

14

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17                     **WESTERN DIVISION**

18  MICHAEL SKIDMORE, *etc.*,            )  Case No. 2:15-cv-03462 RGK (AGRx)
                                         )
19          Plaintiff,                   )
                                         )  DEFENDANT WARNER/
20      vs.                              )  CHAPPELL MUSIC, INC.'S NOTICE
                                         )  OF MOTION AND MOTION FOR
21  LED ZEPPELIN, *et al.*,              )  AWARD OF ADDITIONAL COSTS
                                         )
22          Defendants.                  )  Date: August 8, 2016
                                         )  Time: 9:00 a.m.
23  _____     )
                                            Courtroom of the Honorable
24                                             R. Gary Klausner
                                            United States District Judge
25

26

27

28

159

1   **TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on August 8, 2016, at 9:00 a.m. or as soon

3   thereafter as the matter may be heard in Courtroom 850 of the above-entitled District

4   Court, located at 255 East Temple Street, Los Angeles, California, defendant

5   Warner/Chappell Music, Inc. ("Warner/Chappell") will move the above-entitled

6   Court, the Honorable R. Gary Klausner, United States District Judge presiding, for

7   an award of additional costs not taxable by the Clerk.

8      The Motion for additional costs is brought on the grounds that, as stated more

9   fully in the accompanying Memorandum of Points and Authorities:

10      1.     Because the Copyright Act provides for the prevailing

11   party's "recovery of full costs" (17 U.S.C. § 505), in copyright

12   infringement cases "district courts may award otherwise non-taxable

13   costs" (*Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d

14   869, 885 (9th Cir. 2005), *cert. denied* 548 U.S. 919 (2006)); and

15      2.     Warner/Chappell is properly awarded its non-taxable costs,

16   including expert witness fees, video deposition costs, trial transcript

17   charges and counsel's travel expenses for depositions in this action, and

18   any service of process charges, deposition costs and witness fees that

19   Warner/Chappell has asked the Clerk to tax, but which the Clerk deems

20   non-taxable.

21      This Motion is based upon this Notice of Motion and Motion, the

22   Memorandum of Points and Authorities, Declaration and Exhibits filed with this

23   Notice of Motion and Motion, the pleadings, and papers on file in this action, the

24   matters of which this Court may take judicial notice, and such additional matters and

25   oral argument as may be offered in support of the Motions.

26   ///

27   ///

28   ///

160

1    This Motion is made following the conference with plaintiff's counsel

2 pursuant to Local Rule 7-3, which took place on June 30, 2016.

3

4 Dated: July 7, 2016                        _____/s/ Peter J. Anderson_____
                                                    Peter J. Anderson, Esq.
5                                          LAW OFFICES OF PETER J. ANDERSON
                                                   A Professional Corporation
6                                                  Attorney for Defendants
                                              JAMES PATRICK PAGE, ROBERT
7                                         ANTHONY PLANT, JOHN PAUL JONES,
                                              WARNER/CHAPPELL MUSIC, INC.,
8                                             SUPER HYPE PUBLISHING, INC.,
                                          ATLANTIC RECORDING CORP., RHINO
9                                             ENTERTAINMENT COMPANY and
                                              WARNER MUSIC GROUP CORP.
10

11                                              Helene M. Freeman, Esq.
                                                 PHILLIPS NIZER LLP
12                                              Attorney for Defendants
                                               JAMES PATRICK PAGE,
13                                          ROBERT ANTHONY PLANT and
                                                 JOHN PAUL JONES
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           2

Tab 13

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail: hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, <br><br> Plaintiff, <br><br> vs. <br><br> LED ZEPPELIN, *et al.*, <br><br> Defendants. | Case No. 2:15-cv-03462 RGK (AGRx) <br><br> DEFENDANT WARNER/ CHAPPELL MUSIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ADDITIONAL COSTS; DECLARATION <br><br> Date: August 8, 2016 <br> Time: 9:00 a.m. <br><br> Courtroom of the Honorable <br> R. Gary Klausner <br> United States District Judge |

162

1               **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **1.**     **INTRODUCTION**

3       Defendant Warner/Chappell Music, Inc. ("Warner/Chappell") respectfully

4   submits this Memorandum in support of its Motion for the award of additional costs

5   not taxable by the Clerk.

6       In this copyright infringement action, the Court has discretion to award

7   Warner/Chappell "full costs" (17 U.S.C. § 505), and the award of full costs is

8   appropriate. As a prevailing party, Warner/Chappell is presumably entitled to costs,

9   and its successful defense against plaintiff's copyright claim furthered the purposes

10   of the Copyright Act. *See,* Warner/Chappell Motion for Attorneys' Fees, at Memo.

11   at 2-5. Accordingly, Warner/Chappell should be awarded its non-taxable costs,

12   including expert witness fees, video deposition costs, trial transcript charges and

13   counsel's travel expenses for depositions in this action, as well as any service of

14   process charges, deposition costs and witness fees that Warner/Chappell has

15   concurrently applied to the Clerk to tax, but which the Clerk deems non-taxable.

16   **2.**     **WARNER/CHAPPELL IS PROPERLY AWARDED ITS NON-**

17        **TAXABLE COSTS**

18       The Copyright Act provides:

19         "In any civil action under this title, the court in its discretion may

20        allow the recovery of full costs by or against any party other than the

21        United States or an officer thereof."

22   17 U.S.C. § 505. Giving "full costs" meaning, the Ninth Circuit has held in a

23   copyright infringement action the "district courts may award otherwise non-taxable

24   costs, including those that lie outside the scope of [28 U.S.C.] § 1920, under § 505.

25   *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir.

26   2005), *cert. denied* 548 U.S. 919 (2006). "In addition to regular taxable costs,

27   allowable costs under section 505 include costs for service of process, depositions

28   expenses, copying, computer assisted legal research, expert witness fees, and travel

163

costs." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *6 (C.D. Cal. Mar. 24, 2015) (compiling cases).

Here, Warner/Chappell has currently applied to the Clerk to tax the taxable costs, including deposition transcript costs and service of process charges.  As for non-taxable costs recoverable under 17 U.S.C. Section 505, Warner/Chappell is properly awarded:

- The video costs Warner/Chappell paid for the videotaped depositions taken by plaintiff or by defendant, totaling $12,227.90;
- The expert witness fees charged by plaintiff's experts for providing their deposition testimony in this action, of at least $6,355.00;
- The expert witness fees Warner/Chappell incurred to defense expert witnesses, totaling $138,571.00;
- The trial transcript costs totaling $10,791.63; and
- Coach airfare and hotel charges Warner/Chappell incurred for its counsel's attendance at depositions outside this judicial district, totaling $$11,753.53.

*See,* attached Declaration at 4-7, ¶¶ 3-8, & Exhibits 1-5.

In addition, Warner/Chappell respectfully requests that the Court award under Section 505 any service of process charges, deposition costs and witness fees that Warner/Chappell has asked the Clerk to tax but which the Clerk deems non-taxable.

///
///
///
///
///
///
///
///

164

1  **3.      CONCLUSION**

2          Warner/Chappell respectfully submits that its Motion is properly granted and

3  its non-taxable costs awarded.

4

5  Dated: July 7, 2016                                    /s/ Peter J. Anderson

6                                                  Peter J. Anderson, Esq.
                                          LAW OFFICES OF PETER J. ANDERSON
7                                              A Professional Corporation
                                                 Attorney for Defendants
8                                          JAMES PATRICK PAGE, ROBERT
                                          ANTHONY PLANT, JOHN PAUL JONES,
9                                              WARNER/CHAPPELL MUSIC, INC.,
                                               SUPER HYPE PUBLISHING, INC.,
10                                        ATLANTIC RECORDING CORP., RHINO
                                              ENTERTAINMENT COMPANY and
11                                            WARNER MUSIC GROUP CORP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

165

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail:  hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*,<br><br>Plaintiff,<br><br>vs.<br><br>LED ZEPPELIN, *et al.*,<br><br>Defendants. | ) Case No. 2:15-cv-03462 RGK (AGRx)<br>)<br>)<br>) DEFENDANT WARNER/<br>) CHAPPELL MUSIC, INC.'S<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT OF<br>) MOTION FOR AWARD OF<br>) ADDITIONAL COSTS;<br>) DECLARATION<br><br>Date: August 8, 2016<br>Time: 9:00 a.m.<br><br>Courtroom of the Honorable<br>R. Gary Klausner<br>United States District Judge |

166

**MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.    INTRODUCTION

Defendant Warner/Chappell Music, Inc. ("Warner/Chappell") respectfully submits this Memorandum in support of its Motion for the award of additional costs not taxable by the Clerk.

In this copyright infringement action, the Court has discretion to award Warner/Chappell "full costs" (17 U.S.C. § 505), and the award of full costs is appropriate. As a prevailing party, Warner/Chappell is presumably entitled to costs, and its successful defense against plaintiff's copyright claim furthered the purposes of the Copyright Act. *See,* Warner/Chappell Motion for Attorneys' Fees, at Memo. at 2-5. Accordingly, Warner/Chappell should be awarded its non-taxable costs, including expert witness fees, video deposition costs, trial transcript charges and counsel's travel expenses for depositions in this action, as well as any service of process charges, deposition costs and witness fees that Warner/Chappell has concurrently applied to the Clerk to tax, but which the Clerk deems non-taxable.

## 2.    WARNER/CHAPPELL IS PROPERLY AWARDED ITS NON-TAXABLE COSTS

The Copyright Act provides:

> "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."

17 U.S.C. § 505. Giving "full costs" meaning, the Ninth Circuit has held in a copyright infringement action the "district courts may award otherwise non-taxable costs, including those that lie outside the scope of [28 U.S.C.] § 1920, under § 505. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005), *cert. denied* 548 U.S. 919 (2006). "In addition to regular taxable costs, allowable costs under section 505 include costs for service of process, depositions expenses, copying, computer assisted legal research, expert witness fees, and travel

1

167

1  costs." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL
2  1746484, at *6 (C.D. Cal. Mar. 24, 2015) (compiling cases).

3      Here, Warner/Chappell has currently applied to the Clerk to tax the taxable
4  costs, including deposition transcript costs and service of process charges.  As for
5  non-taxable costs recoverable under 17 U.S.C. Section 505, Warner/Chappell is
6  properly awarded:

7      • The video costs Warner/Chappell paid for the videotaped depositions
8        taken by plaintiff or by defendant, totaling $12,227.90;
9      • The expert witness fees charged by plaintiff's experts for providing
10       their deposition testimony in this action, of at least $6,355.00;
11     • The expert witness fees Warner/Chappell incurred to defense expert
12       witnesses, totaling $138,571.00;
13     • The trial transcript costs totaling $10,791.63; and
14     • Coach airfare and hotel charges Warner/Chappell incurred for its
15       counsel's attendance at depositions outside this judicial district,
16       totaling $$11,753.53.

17  *See,* attached Declaration at 4-7, ¶¶ 3-8, & Exhibits 1-5.

18      In addition, Warner/Chappell respectfully requests that the Court award under
19  Section 505 any service of process charges, deposition costs and witness fees that
20  Warner/Chappell has asked the Clerk to tax but which the Clerk deems non-taxable.

21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

### 3.   <u>CONCLUSION</u>

Warner/Chappell respectfully submits that its Motion is properly granted and its non-taxable costs awarded.

Dated: July 7, 2016

_/s/ Peter J. Anderson_
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
WARNER MUSIC GROUP CORP.

169

Tab 14

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail: hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*, | Case No. 2:15-cv-03462 RGK (AGRx) |
| Plaintiff, | |
| vs. | DEFENDANTS' OBJECTIONS TO PLAINTIFF'S TRIAL CONDUCT |
| LED ZEPPELIN, *et al.*, | |
| Defendants. | Courtroom of the Honorable R. Gary Klausner United States District Court |

170

# **OBJECTIONS**

Defendants James Patrick Page, Robert Plant, Warner/Chappell Music, Inc., Atlantic Recording Corporation and Rhino Entertainment Company object to the ongoing misconduct of plaintiff Michael Skidmore's counsel which threatens, and has perhaps already caused, serious risk of prejudice to a fair and impartial determination in this case.

For example, Skidmore's counsel has:

1.  Repeatedly included in his questions, false and misleading assertions of fact in order to – as the Court has noted – "testify" rather than question witnesses, resulting in the Jury repeatedly hearing unproven and prejudicial assertions;

2.  Repeatedly sought to elicit testimony that violated the Court's rulings on defendants' motions in limine, including, for example:

    (a) eliciting incorrect or misleading testimony that the Trust was formed for charitable purposes and that the Ventura County School District is the beneficiary of the Trust;

    (b) eliciting testimony from his economic expert as to payments under a 2008 agreement, in violation of the Court's ruling that testimony as to payments under the 2008 agreement are precluded (Trial Transcript at 770:20-771:4, 771:13-773:18, 782:13-783:22);

3.  Presented to the Jury an altered photograph from which two people were cropped out, to create the false impression that Mr. Plant was talking to plaintiff's witness (*see,* Decl. *re* Pltf's Altered Exh. 535, filed June 17, 2016); and

4.  Repeatedly made public statements to the media for broadcast and which are contrary to the Court's rulings on defendants' motions in limine, are false or otherwise have a substantial likelihood of

171

1           materially prejudicing this trial (Skidmore's counsel's public

2           statements to the press include, *e.g.*, that Dr. Ferrara was retained

3           by Skidmore but, after being offered more money, "flipped" to

4           represent defendants[1]).

5 *See, e.g.,* Cal. R. Prof. Responsibility 5-200[2] & 5-120(A)[3]; L. R. 83-3.1.2 (adopting

6 Cal. Rules of Professional Responsibility as the standards governing counsel's

7 conduct in this Court).

8       Skidmore's counsel was previously and promptly cautioned that his conduct,

9 among other things, violated the Rules of Professional Responsibility. *See,* Exh. 1

10 attached hereto. However, with the commencement and throughout the trial, his

11 misconduct has continued and increased, seriously threatening these proceedings and

12

---

13 [1]

14      http://mms.tveyes.com/Transcript.asp?StationID=780&DateTime=6%2F18%2F2016+1%3A11%3A21+AM&Term=Led+Zeppelin&PlayClip=TRUE

15 *See, also* Trial Transcript at 905:12-907:5.

16 [2]      Rule 5-200:

17      "In presenting a matter to a tribunal, a member:

18      "(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth;

19      "(B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law;

20
21      "(C) Shall not intentionally misquote to a tribunal the language of a book, statute, or decision;

22      "(D) Shall not, knowing its invalidity, cite as authority a decision that has been overruled or a statute that has been repealed or declared unconstitutional; and

23      "(E) Shall not assert personal knowledge of the facts at issue, except when testifying as a witness."

24
25 [3]      Rule 5-120(A):

26      "A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

27
28

172

1    the administration of justice. And, given this conduct despite repeated admonitions

2    from the Court, it appears likely that the improper conduct of Skidmore's counsel

3    will likely continue into and including closing arguments.

4       Defendants object to Skidmore's counsel's conduct and ask that the Court

5    ensure these ongoing violations cease immediately and take all appropriate steps to

6    ensure that the Jury has not been affected by them.

7

8    Dated: June 20, 2016                    _____/s/ Peter J. Anderson_____

9                               Peter J. Anderson, Esq.
               LAW OFFICES OF PETER J. ANDERSON

10                       A Professional Corporation
                        Attorney for Defendants

11               JAMES PATRICK PAGE, ROBERT
          ANTHONY PLANT, JOHN PAUL JONES,

12                WARNER/CHAPPELL MUSIC, INC.,
              SUPER HYPE PUBLISHING, INC.,

13        ATLANTIC RECORDING CORP., RHINO
            ENTERTAINMENT COMPANY and

14             WARNER MUSIC GROUP CORP.

15                     Helene M. Freeman, Esq.
                  PHILLIPS NIZER LLP

16                  Attorney for Defendants
               JAMES PATRICK PAGE,

17           ROBERT ANTHONY PLANT and
              JOHN PAUL JONES

18

19

20

21

22

23

24

25

26

27

28

173

# EXHIBIT 1

LAW OFFICES OF

# PETER J. ANDERSON
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD
SUITE 2010
SANTA MONICA, CALIFORNIA 90401
TELEPHONE (310) 260-6030
FACSIMILE (310) 260-6040
EMAIL: pja@pjanderson.com

May 6, 2016

*By E-Mail & U.S. Mail*

Francis Malofiy, Esq.
Francis Alexander, LLC
280 N. Providence Road
Suite 1
Media, PA 19063

Glen L. Kulik, Esq.
Kulik Gottesman & Siegel LLP
15303 Ventura Boulevard
Suite 1400
Sherman Oaks, CA 91403

Re:   *Led Zeppelin adv. Skidmore*

Dear Gentlemen:

I am writing regarding the following disturbing developments.

First, we have learned that immediately following the Court's Pretrial Conference last Monday, you made at least the following statements to the press on camera and in front of the Courthouse, and which were broadcast on local television and elsewhere:

MR. KULIK:      If money is won in this case, it's to be used to buy musical instruments for children who are in need in Ventura County.

MR. MALOFIY:  They can't hide behind counsel in the misty mountains over there in the UK.

The Court's Local Rule 83-3.1.2 requires that counsel be familiar with the California Rules of Professional Conduct and adopts those Rules as the standards governing counsel's conduct. And, California Rule of Professional Conduct 5-120(A) states:

"A member who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the member knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

While Mr. Malofiy is not a member of the California Bar, the Rule is applicable to him by reason of Local Rule 83-3.1.2.

175

Francis Malofiy, Esq.
Glen L. Kulik, Esq.
May 6, 2016
Page 2

Of course, in speaking to the press you knew your statements would "be disseminated by means of public communication . . . ," including to the potential jurors and their friends and relatives. You also know or should have known that the statements you made to the press on camera had "a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

Indeed, you had just left a hearing in which Judge Klausner advised us all that his intention was to grant defendants' motion to exclude all argument and evidence that the Trust would use any recovery in this case to buy musical instruments for children who are in need in Ventura County, California. Yet, minutes later Mr. Kulik made that exact same statement to the press, on camera, knowing and intending the prejudicial statement would be broadcast to the public. Aside from the issue of purposefully trying to frustrate Judge Klausner's ruling by doing an end run on him and going directly to the public, Mr. Kulik's statement is a clear violation of Rule 5-120.

Neither is there any doubt that Mr. Malofiy knew, or should have known, that accusing defendants of trying to hide in the United Kingdom and avoid trial is – especially when broadcast to a public that includes the potential juror pool and their friends and relatives – substantially likely to cause prejudice. Mr. Malofiy's statement is also a violation of Rule 5-120.

Second, in direct violation of the December 28, 2015 Stipulated Protective Order in this action, plaintiff and you have publicly disclosed information that defendants designated "CONFIDENTIAL" under that Protective Order.

As you know, defendants designated as "CONFIDENTIAL" the 2008 Administration Agreement between WB Music and Flames of Albion. Ignoring the Court's Protective Order, however, you included in plaintiff's publicly-filed memorandum in opposition to defendants' motion *in limine* no. 9, the 2008 Agreement' primary financial terms, including the duration of the 2008 Agreement, the dollar amount of the advance paid under the 2008 Agreement and the timing of the advance payment. Plaintiff's Memo. (Doc. 174) at 2:5-12, & at 2-4.

There can be no doubt that when you publicly disclosed this "CONFIDENTIAL" information you were very much aware that the information was subject to the Protective Order: as support for your disclosures you specifically cited to the copy of the 2008 Agreement that had been "filed under seal." *Id.* at 2:9.

Further, we also have just learned that Mr. Malofiy apparently also made the same disclosures to at least some members of the press, who have publicly reported the advance amount paid under the 2008 Agreement designated "CONFIDENTIAL."

The Stipulated Protective Order provides, among other things, that the "violation of this Order may be punished by any and all appropriate measures including, without

176

Francis Malofiy, Esq.
Glen L. Kulik, Esq.
May 6, 2016
Page 3

limitation, contempt proceedings and/or monetary sanctions." Stipulated Protective Order at 13, ¶ 14. In addition, the willful violation of the Court's Protective Order is a breach of ethical obligations as lawyers and officers of the Court. *See, e.g.* Cal. Bus. & Prof. Code § 6103 ("A wilful disobedience or violation of an order of the court requiring him to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear, and any violation of the oath taken by him, or of his duties as such attorney, constitute causes for disbarment or suspension").

Third, we also have learned that you disclosed to the press that in last Monday's mediation plaintiff offered to settle on the basis of the payment of $1 and a portion of the copyright in *Stairway to Heaven* and that the offer was rejected. In addition to being another violation of Rule 5-120, that disclosure breaches the Mediation and Confidentiality Agreement and violates the Court's Local Rules.

In the Mediation Confidentiality Agreement, each of you and plaintiff agreed in writing that:

> "Consistent with Central District of California Civil L.R. 16-15, General Order 11-10, related Federal Rules of Evidence and to the extent applicable, California Evidence Code Sections 703.5 and 1115-1128, the participants in mediation in the above-captioned case agree that:

> "1. No written or oral communication made by any party, attorney, mediator or other participant in a mediation in the above-named case may be used for any purpose in any pending or future proceeding unless all parties, including the mediator, so agree."

*See, also* L.R. 16-15.8(a) ("all counsel and parties . . . shall treat as 'confidential information' . . . anything that happened or was said relating to the subject matter of the case in mediation, any position taken, . . . . 'Confidential information' shall not be . . . disclosed to anyone not involved in the litigation. . . .").

These are each serious violations and we fully expect that you will not repeat them. However, defendants reserve all of their rights and remedies and, should these or any similar violations occur, defendants will proceed accordingly, including bringing the violations to the Court's attention.

Very truly yours,

Peter J. Anderson

cc:    Helene M. Freeman, Esq.

177

# Tab 15

*NUNC PRO*
*TUNC TO*
*JUNE 15, 2016*

1  Peter J. Anderson, Esq., Cal. Bar No. 88891
   E-Mail: pja@pjanderson.com
2  LAW OFFICES OF PETER J. ANDERSON
   A Professional Corporation
3  100 Wilshire Boulevard, Suite 2010
   Santa Monica, CA 90401
4  Tel: (310) 260-6030
   Fax: (310) 260-6040
5  Attorneys for Defendants
   JAMES PATRICK PAGE, ROBERT ANTHONY
6  PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
   MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7  ATLANTIC RECORDING CORP., RHINO
   ENTERTAINMENT COMPANY and WARNER
8  MUSIC GROUP CORP.

9  Helene Freeman, Esq., admitted *pro hac vice*
   E-Mail: hfreeman@phillipsnizer.com
10 PHILIPS NIZER LLP
   666 Fifth Avenue
11 New York, NY 10103-0084
   Tel: (212) 977-9700
12 Fax: (212) 262-5152
   Attorneys for Defendants
13 JAMES PATRICK PAGE, ROBERT ANTHONY
   PLANT and JOHN PAUL JONES
14

FILED
CLERK, U.S. DISTRICT COURT

JUL 5 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

15            **UNITED STATES DISTRICT COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17               **WESTERN DIVISION**

18 MICHAEL SKIDMORE, *etc.*,        )  Case No. 2:15-cv-03462 RGK (AGRx)
                                    )
19         Plaintiff,               )
                                    )  DECLARATION *RE* PLAINTIFF'S
20    vs.                           )  ALTERED EXHIBIT 535
                                    )
21 LED ZEPPELIN, *et al.*,          )       Courtroom of the Honorable
                                    )         R. Gary Klausner
22         Defendants.              )       United States District Court
                                    )
23                                  )
24
25
26
27
28

178

1   Defendants James Patrick Page, Robert Plant, Warner/Chappell Music, Inc.,

2   Atlantic Recording Corporation and Rhino Entertainment Company submit the

3   attached Declaration regarding a photograph that plaintiff published before the Jury

4   on June 15, 2016, and which is an altered version of the photograph that plaintiff

5   produced to defendants on June 9, 2016.

6   In support of plaintiff's contention that Mr. Plant and Mark Andes had a close

7   personal relationship, plaintiff's counsel published – before receiving permission – a

8   photograph that purports to depict Mr. Plant speaking to Mr. Andes in the 1980s, in

9   the company of Ann Wilson and Nancy Wilson of the group Heart. However, that

10  photograph is cropped to omit two additional people, including the person to whom

11  Mr. Plant was actually talking. *Compare* attached Exh. 1 & 2.

12  Plaintiff has strived to create the false impression of a close relationship

13  between Mr. Plant and Mr. Andes, even to the extent of altering a photograph.

14  Further, the doctored photograph was published for the Jury to see on large

15  television screens a clear – and false – image of Mr. Plant speaking to Mr. Andes

16  when, instead, he was speaking to one of the of two other men edited out of the

17  photograph.

18  Defendants respectfully submit that, aside from whatever sanctions the Court

19  deems appropriate, a curative instruction to the Jury is required to ameliorate the

20  prejudice plaintiff has caused.   Specifically, defendants request that the Court

21  explain to the Jury that the photograph plaintiff's counsel displayed is a cropped

22  version of the actual photograph; that the Court provide to the Jury the cropped

23  photograph and the actual photograph; and that the Court instruct the Jury that it

24  may draw whatever inference it deems appropriate from plaintiff's submission of a

25  ///

26  ///

27  ///

28  ///

1

179

1 | photograph that was doctored to create the false impression that Mr. Plant was
2 | speaking to Mr. Andes.

3

4 | Dated: June 16, 2016

5 | Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
6 | A Professional Corporation
Attorney for Defendants
7 | JAMES PATRICK PAGE, ROBERT
ANTHONY PLANT, JOHN PAUL JONES,
8 | WARNER/CHAPPELL MUSIC, INC.,
SUPER HYPE PUBLISHING, INC.,
9 | ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and
10 | WARNER MUSIC GROUP CORP.

11

12 | Helene M. Freeman, Esq.
PHILLIPS NIZER LLP
Attorney for Defendants
13 | JAMES PATRICK PAGE,
ROBERT ANTHONY PLANT and
14 | JOHN PAUL JONES

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

180

1      **DECLARATION OF PETER J. ANDERSON**

2      I, Peter J. Anderson, declare and state:

3      1.    I am an attorney admitted to practice before this Court and all Courts of

4 the State of California.  I have personal knowledge of the following facts and could

5 competently testify to these facts if called upon to do so.

6      2.    I represent defendants James Patrick Page, Robert Plant,

7 Warner/Chappell Music, Inc., Atlantic Recording Corp. and Rhino Entertainment

8 Company in this action.  This Declaration is submitted in connection with their

9 response to plaintiff's publication of an altered photograph at the second day of trial

10 in this action.

11      3.    On June 9, 2016, I received an e-mail from plaintiff's counsel, Glen

12 Kulik, stating that "we just received the attached photo which we will use at the time

13 of trial."  Attached to this Declaration as Exhibit 1 is a true and correct copy of Mr.

14 Kulik's June 9, 2016 e-mail and the attachment to that e-mail, namely a photograph

15 of six individuals, and showing Mr. Plant talking to the male on the far right.

16      4.    On June 14, 2016 and during the first day of trial in this action,

17 plaintiff's counsel, Francis Malofiy, handed me a hard drive with 1,498 electronic

18 files in it.  He did not tell me that the hard drive had any new or different exhibits.

19      5.    On June 15, 2016 and during plaintiff's examination of Mark Andes,

20 and without waiting for defense counsel to state whether they objected, Mr. Malofiy

21 published as an exhibit the same photograph produced by Mr. Kulik, but which was

22 cropped to omit two males on the far right, creating the false impression that Mr.

23 Plant was speaking to the only other male left in the photograph, and who Mr.

24 Malofiy indicated was Mr. Andes.  Attached as Exhibit 2 to this Declaration is a

25 copy of the altered photograph and which I have now confirmed was included

26 among the 1,498 electronic files Mr. Malofiy provided on a hard drive on June 14,

27 2016.

28 ///

6.     Just before or upon publishing the altered photograph for the Jury to see, Mr. Malofiy stated something to the effect that the photograph confirmed the personal relationship supposedly existing between Mr. Plant and Mr. Andes.

7.     Plaintiff's altered photograph was visible to the Jury on the Courtroom monitors.  I stood and objected to the photograph as soon as Ms. Freeman and I realized it was different from the one that Mr. Kulik had produced, and the photograph remained on the Courtroom monitors long enough for me to object and state the grounds for the objection, and for Mr. Malofiy to walk from the lectern, around the Courtroom's audiovisual equipment and defendants trial technician and, standing near me, state that my objection was ridiculous and question the grounds of my objection.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 16, 2016.

PETER J. ANDERSON

4

182

# EXHIBIT 1

| | |
|---|---|
| **From:** | Glen Kulik |
| **To:** | Peter J. Anderson; hfreeman@phillipsnizer.com |
| **Cc:** | Francis Alexander Malofiy (francis@francisalexander.com) |
| **Subject:** | FW: photo |
| **Date:** | Thursday, June 09, 2016 6:43:50 PM |
| **Attachments:** | MARK ANDES - 3460358.jpg |

Peter, we just received the attached photo which we will use at the time of trial.

Glen L. Kulik, Esq.
KULIK GOTTESMAN SIEGEL & WARE LLP
15303 Ventura Boulevard, Suite 1400
Sherman Oaks, California 91403
(310) 557-9200    Main
(310) 557-0224    Fax

**EXHIBIT 1**
5

184

EXHIBIT 1
6

# EXHIBIT 2



# Tab 16

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Rd. | Suite 1
Media, PA 19063
T: (215) 500-1000; F: (215) 500-1005
E: francis@francisalexander.com
*Attorney for Plaintiff*

Glen L. Kulik, Esq.
Kulik Gottesman & Siegel LLP
15303 Ventura Blvd., Suite 1400
Sherman Oaks, CA 91403
T: (310) 557-9200; F: (310) 557-0224
E: gkulik@kgslaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SKIDMORE, as Trustee for the RANDY CRAIG WOLFE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> LED ZEPPELIN; JAMES PATRICK PAGE; ROBERT ANTHONY PLANT; JOHN PAUL JONES; SUPER HYPE PUBLISHING, INC.; WARNER MUSIC GROUP CORP., Parent of WARNER/CHAPPELL MUSIC, INC.; ATLANTIC RECORDING CORPORATION; RHINO ENTERTAINMENT COMPANY, <br><br> Defendants. | Case No. 15-cv-03462 RGK (AGRx) <br><br> Hon. R. Gary Klausner <br><br> **PLAINTIFF SUPPLEMENTAL EXHIBIT LIST** <br><br> **TRIAL: JUNE 14, 2016** <br><br> **TIME: 9:00 A.M.** |

{00255828;1}

188

| | Description | Objections | Date Id. | Date Adm. |
|---|---|---|---|---|
| | **AUDIO EXHIBITS** | | | |
| 1A | Audio Exhibit 1: Dazed and Confused by Led Zeppelin (1969)[207A] | Defs: general objection, as to the entire Joint Exhibit List, that plaintiff has insisted upon the inclusion of material not properly or reasonably considered an exhibit for trial, has failed to identify what documents or recordings he is referring to, and has otherwise not cooperated in the preparation of a proper Joint Exhibit List. As to this specific exhibit: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 2A | Audio Exhibit 2: Dazed and Confused by Jake Holmes (1967)[208A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 3A | Audio Exhibit 3: Whole Lotta Love by Led Zeppelin (1969)[409A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 4A | Audio Exhibit 4: Muddy Waters' You Need Love (1962)(10 seconds – 28 seconds)[209A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 5A | Audio Exhibit 5: The Small Faces' You Need Loving (1966)(25 seconds – 48 seconds)[210A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 6A | Audio Exhibit 6: Live performance of Led Zeppelin | | | |

| | | Defs: failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
|---|---|---|---|---|
| | playing Fresh Garbage (1-10-1969)[20 6A] | | | |
| 7A | Audio Exhibit 7: Stairway to Heaven (0 seconds – 25 seconds) | Defs: failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 8A | Audio Exhibit 8: Taurus (45 seconds – 1 minute, 13 seconds) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002. | | |
| 9A | Audio Exhibit 9: 8 measures of Stairway from note 1 of the acoustic guitar, repeated multiple times [42A] | Defs: failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 10A | Audio Exhibit 10: 8 Measures of Taurus from note 1 of the acoustic guitar, repeated multiple times [43A] | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| 11A | Audio Exhibit 11: 8 measures of Stairway and Taurus played together from note 1 of the acoustic guitar, repeated multiple times [44A] | Defs: as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4), entire, officially release version is relevant work. | | |
| | **AUDIO EXHIBITS –** | | | |

| | | **COMPRASION AUDIO** | | | |
|---|---|---|---|---|---|
| | 12A | Audio Exhibit 12:Acoustic Guitar | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| | 13A | Audio Exhibit 13:Bass | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| | 14A | Audio Exhibit 14:Drums | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |

| | | | | | |
|---|---|---|---|---|---|
| 15A | Audio Exhibit 15: Electric 12 Strings | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 16A | Audio Exhibit 16: Electric Piano | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 17A | Audio Exhibit 17: End Guitar | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 18A | Audio Exhibit 18:Les Pauls | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| | | failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 19A | Audio Exhibit 19: Recorders | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 20A | Audio Exhibit 20: Slide | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 21A | Audio Exhibit 21: Solo | Defs: failure to identify audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| | **AUDIO EXHIBITS – RE-RECORDING OF TAURUS** | | | |

{00255828;1}

6

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

193

| | 22A | Audio Exhibit 22: Acoustic Guitar | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
|---|---|---|---|---|---|
| | 23A | Audio Exhibit 23:Cello 1 | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 24A | Audio Exhibit 24: Cello 2 | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 25A | Audio Exhibit 25: Cymbal | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 26A | Audio Exhibit 26: Flute | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 27A | Audio Exhibit 27: Harpsichord | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 28A | Audio Exhibit 28: String Bass | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 29A | Audio Exhibit 29: Viola | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | 30A | Audio Exhibit 30: Violins | Defs: Defs MIL # 3, # 4, FRE 401-02, 403, 1002. | | |
| | | **AUDIO EXHIBITS – ALEXANDER STEWART** | | | |
| | 31A | Audio Exhibit 31: "Stairway to Heaven" (album) | | | |
| | 32A | Audio Exhibit 32: "Taurus" (album) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002. | | |
| | 33A | Audio Exhibit 33:Taurus Live at Ash Grove (7/10/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| | 34A | Audio Exhibit 34: Taurus Live at Ash Grove (7/31/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| | 35A | Audio Exhibit 35:Taurus Live at Ash Grove (8/8/1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| | 36A | Audio Exhibit 36:Taurus Demo | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| | Recording (8/1967) | | | |
| 37A | Audio Exhibit 37: Taurus Live at Kaleidoscope (4/5/1968) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 38A | Audio Exhibit 38: Taurus Live at The Time Coast | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 39A | Audio Exhibit 39: Taurus Live at Acoustic (1996) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 40A | Audio Exhibit 40: Combination – Acoustic Taurus Synced to STH SR – Part A, played over Master SR of STH | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| 41A | Audio Exhibit 41:Acoustic Taurus Synced to Master SR of STH – Part A | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |
| 42A | Audio Exhibit 42: Stairway Acoustic – Part A [9A] | Defs: Defs MIL #4, FRE 401-02, 403, 1002. | | |
| 43A | Audio Exhibit 43: Taurus Acoustic – Part A [10A] | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |
| 44A | Audio Exhibit 44: Combination – Acoustic Taurus Synced to Master SR of STH (Part A), played over Acoustic | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |

| | | | | |
|---|---|---|---|---|
| | Stairway (Part A) [11A] | | | |
| | **AUDIO EXHIBITS – REBUTTAL OF MATHES** | | | |
| 45A | Audio Exhibit 45: Mathes Audio Exhibit Tempo Matched - Stairway | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 46A | Audio Exhibit 46: Mathes Audio Exhibit Tempo Matched - Taurus | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 47A | Audio Exhibit 47: Mathes Audio Exhibit Tempo Matched - STH & Taurus | Defs: failure to identify and produce audio exhibit and what works recorded; as to Taurus, Defs MIL # 3, # 4, FRE 401-02, 403, 1002; as to Stairway, failure to identify whether refers to officially released version or plaintiff's recreated versions, which are irrelevant, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4); entire, officially release version is relevant work. | | |
| 51A | Audio Exhibit 51: Taurus Deposit Copy | | | |

| | | | | |
|---|---|---|---|---|
| | (by Mathes) | | | |
| 52A | Audio Exhibit 52: Taurus Recording (by Mathes) | Defs: failure to identify and produce audio exhibit (Mathes provided only one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL# 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4) . | | |
| 53A | Audio Exhibit 53:Combined - Taurus Deposit Copy and Taurus Recording (by Mathes) | Defs: failure to identify and produce audio exhibit (Mathes provided only one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 54A | Audio Exhibit 54: Stairway to Heaven (by Mathes) | Defs: failure to identify and produce audio exhibit (description does not match audio recordings provided by Mathes); to the extent plaintiff refers to another of plaintiff's audio recordings, failure to identify and produce audio exhibit, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 55A | Audio Exhibit 55: Combined - Taurus Deposit Copy and Stairway to Heaven (by Mathes) | Defs: failure to identify and produce audio exhibit (description does not match audio recordings provided by Mathes); to the extent plaintiff refers to another of plaintiff's audio recordings, failure to identify and produce audio exhibit, FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 56A | Audio Exhibit 56: Combined - Taurus Recording and Stairway to Heaven (by Mathes) | Defs: failure to identify and produce audio exhibit (Mathes provided only one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 57A | Audio Exhibit 57:Combined – | Defs: failure to identify and produce audio exhibit (Mathes provided only | | |

| | | Taurus Deposit Copy and Taurus Recording and Stairway to Heaven (by Mathes) | one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
|---|---|---|---|---|---|
| | | VIDEO EXHBITIS – DEMONSTRATIVE GUITAR PERFORMANCE | | | |
| | 58A | STH Composition (Hanson) | | | |
| | 58.1A | T Deposit - Bass Clef (Hanson) | | | |
| | 58.2A | T Deposit - Bass Clef - STH Composition (Hanson) | | | |
| | 58.3A | T Deposit - Treble Clef (Hanson) | | | |
| | 58.4A | T Deposit - Treble Clef - STH Composition (Hanson) | | | |
| | 58.5A | T Deposit - Bass Clef - Treble Clef (Hanson) | | | |
| | 58.6A | T Deposit - Bass Clef - Treble Clef - STH Composition (Hanson) | | | |
| | 58.7A | T Deposit - Bass Clef Arpeggio(Hanson) | | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| 58.8A | T Deposit - Bass Clef Arpeggio - STH Composition (Hanson) | | | |
| 59A | T Deposit - Bass Clef Arpeggio - Treble Clef | | | |
| 59.1A | T Deposit - Bass Clef Arpeggio - Treble Clef - STH Composition (Hanson) | | | |
| 59.2A | T Composition (Hanson) | | | |
| 59.3A | T Composition - T Deposit - Bass Clef (Hanson) | | | |
| 59.4A | T Composition - T Deposit - Treble Clef (Hanson) | | | |
| 59.5A | T Composition - STH Composition (Hanson) | | | |
| 59.6A | T Composition - STH Composition - T Deposit - Bass Clef (Hanson) | | | |
| 59.7A | T Composition - STH Composition - T Deposit - Treble Clef (Hanson) | | | |
| 59.8A | T Composition - STH Composition - T Deposit - Bass Clef - | | | |

| | | | | |
|---|---|---|---|---|
| | Treble Clef (Hanson) | | | |
| | | | | |
| 61A | Audio Exhibit 61: Taurus Deposit Copy (by Ferrara) | | | |
| 62A | Audio Exhibit 62: Taurus Recording (by Ferrara) | Defs: failure to identify and produce audio exhibit (Ferrara provided only one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 63A | Audio Exhibit 63:Combined - Taurus Deposit Copy and Taurus Recording (by Ferrara) | Defs: failure to identify and produce audio exhibit (Ferrara provided only one audio recording of Taurus deposit copy, listed above); FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 64A | Audio Exhibit 64: Stairway to Heaven (by Ferrara) | | | |
| 65A | Audio Exhibit 65:Combined – Taurus Deposit Copy and Stairway to Heaven (by Ferrara) | Defs: failure to identify and produce audio exhibit (description does not match audio recordings provided by Ferrara); to the extent plaintiff refers to another of plaintiff's audio recordings, failure to identify and produce audio exhibit, FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 66A | Audio Exhibit 66: Combined - Taurus Recording and Stairway to Heaven (by Ferrara) | Defs: failure to identify and produce audio exhibit (description does not match audio recordings provided by Ferrara); to the extent plaintiff refers to another of plaintiff's audio recordings, failure to identify and produce audio exhibit, FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |

| | | | | |
|---|---|---|---|---|
| 67A | Audio Exhibit 67: Combined – Taurus Deposit Copy and Taurus Recording and Stairway to Heaven (by Ferrara) | Defs: failure to identify and produce audio exhibit (description does not match audio recordings provided by Ferrara); to the extent plaintiff refers to another of plaintiff's audio recordings, failure to identify and produce audio exhibit, FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 70A | Combination: Taurus Deposit Copy (Mathes) Stairway to Heaven Deposit Copy (Hanson) | Def: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 71A | Audio Exhibit 71: Taurus Deposit Copy (by Hanson) | Def: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 72A | Audio Exhibit 72: Taurus Recording (by Hanson) | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL # 3 & #4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 73A | Audio Exhibit 73: Combined - Taurus Deposit Copy and Taurus Recording (by Hanson) | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 74A | Audio Exhibit 74: Stairway to Heaven (by Hanson) | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 75A | Audio Exhibit 75: Combined - Taurus Deposit Copy and Stairway to Heaven (by Hanson) | Defs: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 76A | Audio Exhibit 76: Combined – Taurus | Defs: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack | | |

| | | | | |
|---|---|---|---|---|
| | Recording and Stairway to Heaven (by Hanson) | foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 77A | Audio Exhibit 77: Combined – Taurus Deposit Copy and Taurus Recording and Stairway to Heaven (by Hanson) | Defs: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 78A | Stairway to Heaven Rerecording Mix (Audio Exhibits 12-21) | Def: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 79A | Taurus Rerecording Mix (Audio Exhibits 22-30) | Def: such a recording has never been produced to defendants; FRE 401-02, 403, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| | | | | |
| | **DEPOSITIONS** | | | |
| 80 | Deposition of Jimmy Page (01.07.2016)(Transcript) [Page] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 80D | Designation of Jimmy Page | | | |
| 80M | Deposition of Jimmy Page (01.07.2016) (Mini) [Page] | | | |
| 80V | Deposition of Jimmy Page (01.07.2016)(VIDEO)[Page] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply | | |

| | | | | |
|---|---|---|---|---|
| | | with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 81 | Deposition of John Paul Jones (01.08.2016) (Transcript)[Jones] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 81V | Deposition of John Paul Jones(01.08.2016)(VIDE)[Jones] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 82 | Deposition of Jay Ferguson (01.13.2016)(Transcript)[Ferguson] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 82V | Deposition of Jay Ferguson (01.13.2016)(VIDEO)[Ferguson] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 83 | Deposition of Mark Andes (01.15.2016)(Transcript)[Andes] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use | | |

| | | | | |
|---|---|---|---|---|
| | | of deposition. | | |
| 83V | Deposition of Mark Andes (01.15.2016)(VIDEO)[Andes] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 84 | Deposition of Bruce Pates (01.22.2016)(Transcript)[Pates] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 85 | Deposition of Robert Plant (01.29.2016)(Transcript)[Plant] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 85V | Deposition of Robert Plant (01.29.2016)(VIDEO)[Plant] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 12, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |

| | | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 407, 408, 701, 802 and 805, & within MIL # 1, 2, 3, 5, 11, 14; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
|---|---|---|---|---|
| 86 | Deposition of Michael Skidmore (02.05.2016)(Transcript)[Skidmore] | | | |
| 87 | Deposition of William Ruhlmann (02.08.2016)(Transcript)[Ruhlmann] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 802 and 805, & within MIL # 1; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 87A | Ruhlmann Interview Cassettes (Audio) | Defs: contains material inadmissible under FRE 401-02, 403, 404, 407, 408, 701, 802 and 805, & within MIL # 1, 5. | | |
| 87AT | Ruhlmann Interview Cassettes (Transcript) | | | |
| 88 | Deposition of Jeremy Blietz (02.09.2016)(Transcript)[Blietz] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 802 and 805; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 89 | Deposition of David Woirhaye (02.10.2016)(Transcript)[Woirhaye] | Defs: a deposition is not an exhibit; contains material inadmissible under FRE 401-02, 403, 802 and 805; failure to comply with LR 16-2.7 and, as a result, deprives defendants of opportunity to object to proffered testimony; improper use of deposition. | | |
| 90 | Deposition of Alexander Stewart (2016.05.17)(Transcript) [Stewart] | | | |

| | | | | | |
|---|---|---|---|---|---|
| | 90V | Deposition of Alexander Stewart (2016.05.17) (VIDEO) [Stewart] | | | |
| | 91 | Deposition of Erik Johnson (2016.05.18) (Transcript) [Johnson] | | | |
| | 91V | Deposition of Erik Johnson (2016.05.18) (VIDEO) [Johnson] | | | |
| | 92 | Deposition of Kevin Hanson (2016.05.18) (Transcript) [Hanson] | | | |
| | 92V | Deposition of Kevin Hanson (2016.05.18) (VIDEO) [Hanson] | | | |
| | 93 | Deposition of Brian Bricklin (2016.06.10) (Transcript) [Bricklin] | | | |
| | 93V | Deposition of Brian Bricklin (2016.06.10) (Video) [Bricklin] | | | |
| | 94 | Deposition of Michael Einhorn (2016.05.19) (Transcript) [Einhorn] | | | |
| | 94V | Deposition of Michael Einhorn (2016.05.19) (VIDEO) [Einhorn] | | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| 95 | Deposition of Robert Mathes (2016.05.27) (Transcript) [Mathes] | | | |
| 95V | Deposition of Robert Mathes (2016.05.27) (VIDEO) [Mathes] | | | |
| 96 | Deposition of Lawerence Ferrara (2016.05.27) (Transcript) [Ferrara] | | | |
| 96V | Deposition of Lawrence Ferrara (2016.05.27) (VIDEO) [Ferrara] | | | |
| 97 | Deposition of Michael Ware (2016.05.31) (Transcript) [Ware] | | | |
| 97V | Deposition of Michael Ware (2016.05.31) (VIDEO) [Ware] | | | |
| 98 | New Musical Express Article [Page][D98] | Defs: Defs MIL # 2 & # 5, FRE 401-02, 403, 404, 407, 408, 802, 805. | | |
| 99V | BBC Interview with Jimmy Page (minutes 1:13 to1:25)[VIDEO][Page] | Defs: reserve right to play other portions of the interview. | | |
| 99T | Transcript of BBC Interview with Jimmy Page | | | |

| | | | | |
|---|---|---|---|---|
| | 100A | Taurus and Stairway to Heaven Sound Recording Mash Up | Def: such a recording has never been produced to defendants; mash-ups are inherently misleading and not an accepted musicological practice and is, instead, a musical trick; *Cottrill v. Spears*, 2003 WL 21223846 at *9 (E.D. Pa. May 22, 2003); FRE 401-02, 403, 702, 1002, & lack foundation, MIL # 3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| | 101 | Plaintiff's Amended complaint | Defs: Defs MIL # 1, # 2, # 3, # 5, # 8, #14; FRE 401-02, 403, 404, 407, 408, 701-05, 802 & 805; assertions as to substantial similarity barred by failure to timely provide expert disclosures as to relevant work (1967 transcription), FRCP 26(a), 26(e) & 37(c)(1). | | |
| | 103 | Recorder | Defs: FRE 401-02, 403. | | |
| | 104 | Headley Grange layout Drawing [Page} | | | |
| | 104A | Headley Drawing with Robert's Drawing [Plant] | | | |
| | 105 | Stairway to Heaven Sheet Music (Flames of Albion Music | 1972)[Page] | | | |
| | 106 | Howard Mylett Article [Page] | Defs: FRE 901, illegible, 401-02, 403, 802, 805. | | |
| | 107A | Take 1 – Stairway to Heaven [AUDIO][Page] [D107] | | | |
| | 108A | Take 2 – Stairway to Heaven [AUDIO][Page] [D108] | | | |
| | 109A | Take 3 - Stairway to | | | |

21

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

208

| | | | | |
|---|---|---|---|---|
| | Heaven [AUDIO][Page] [D109] | | | |
| 110A | Take 4 - Stairway to Heaven [AUDIO][Page] [D110] | | | |
| 111A | Take 5 - Stairway to Heaven [AUDIO][Page] [D111] | | | |
| 112A | Take 6 - Stairway to Heaven [AUDIO][Page] [D112] | | | |
| 113A | Take 7 - Stairway to Heaven [AUDIO][Page] [D113] | | | |
| 114A | Take 8 - Stairway to Heaven [AUDIO][Page] [D114] | | | |
| 146 | Plant Crash Article[Page][Jones][D146] | | | |
| 157 | Zig Zag reprinted in Guitar World Interview with Jimmy Page [Page][D157] | Defs: Defs MIL # 2, FRE 401-02, 403, 802, 805. | | |
| 160 | Zig Zag reprinted in Guitar World Interview with Jimmy Page [Page][D157] | Defs: either duplicative of Exh. 157 or not produced; Defs MIL # 2, FRE 401-02, 403, 802, 805. | | |
| 160A | Zig Zag Interview with Jimmy Page [AUDIO][Page] | | | |

| | [D160] | | | |
|---|---|---|---|---|
| 160T | Transcript of Zig Zag Interview with Jimmy Page | | | |
| 161A | Master Sound Recording of Stairway to Heaven [AUDIO][Page] | Defs: failure to identify recording plaintiff is referring to. | | |
| 162A | Master Sound Recording of Taurus – Part A[AUDIO][Page] | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002. | | |
| 163A | Combination – Acoustic Recording of Taurus Synced Master Sound Recording of Stairway to Heaven (by session musician), played over Master Sound Recording of Stairway to Heaven [AUDIO][Page] | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL #3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 164A | Acoustic Recording of Taurus (by session musician) Synced to Master of Stairway to Heaven Sound Recording [AUDIO][Page] | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL #3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 165A | Acoustic Recording of Stairway to Heaven (by | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, MIL # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |

23

210

| | | | | |
|---|---|---|---|---|
| | session musician) [AUDIO][Page] | | | |
| 166A | Acoustic Recording of Taurus (by session musician) Synced Exactly to Master Sound Recording of Taurus – Part A [AUDIO][Page] | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL #3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 167A | Combination – Acoustic Recording of Taurus Synced to Master Sound Recording of Stairway to Heaven (by session musician), played over Acoustic Recording of Stairway to Heaven (by session musician) [AUDIO] [Page] | Def: failure to identify and produce recording; FRE 401-02, 403, 1002, & lack foundation, MIL #3, # 4, failure to comply with FRCP 26(a)(2), (e) & (b)(4). | | |
| 200 | Book - Get the Led Out by Denny Somach (p.19)[Page] | Defs: Defs MIL #2, # 3, # 5, # 6, FRE 901, 401-02, 403, 404, 407, 408, 802, 805. | | |
| 201 | Recorder (as played by Jones)[Jones] | Defs: FRE 401-02. | | |
| 202 | Hohner Piano (as played by Jones) [Jones] | Defs: FRE 401-02. | | |
| 203 | Photos of Led Zeppelin II Album Covers and Vinyl | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |

| | | | | |
|---|---|---|---|---|
| | (Original)[Jones] | | | |
| 204 | Photos of Lez Zeppelin II Album Covers and Vinyl (Remastered) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 205A | Spirit's Fresh Garbage Performance (Feb. 3, 1970)(7:58) [AUDIO][Jones] | Defs: FRE 901, 401-02, 403; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 206A | Led Zeppelin Playing Fresh Garbage (2:51) [AUDIO][Jones][6A] | Defs: FRE 901, 401-02, 403; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 207A | Dazed and Confused (Led Zeppelin)(1969) [AUDIO][Jones][1A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 208A | Dazed and Confused (Jake Holmes)(1967)[AUDIO][Jones][2A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 209A | You Need Love (Muddy Waters)(1962)[AUDIO][Jones][4A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 210A | You Need Loving (The Small Faces)(1966)[AUDIO][Jones][5A] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 211A | Babe I'm Gonna Leave You (Joan Baez/Anne Bredon)(1962)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

25

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

212

| | | | | | |
|---|---|---|---|---|---|
| 212A | Bring It On Home (Sonny Boy Williamson II)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 213A | Never (Moby Grape)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 214A | Hat's Off to Roy Harper (Led Zeppelin)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 215A | Shake 'em on Down (Bukka White)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 216A | Nobody's Fault but Mine (Blind Willie Johnson)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 217A | Bron-Y-Aur Stomp (Led Zeppelin)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 218A | Waggoneer's Lad (Bert Jansch)(1966)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 219A | Black Waterside (Bert Jansch)(1966)[AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 220A | White Summer/Black Mountain Side (LedZeppelin)(1969) [AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

| | | | | |
|---|---|---|---|---|
| 221A | Howlin' Wolf – Killing Floor (1964)[AUDIO] [Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 222A | Traveling Riverside Blues (Robert Johnson)(1937) [AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 223A | The Lemon Song (Led Zeppelin)(first three seconds)(1969)[ AUDIO][Jones] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 224A | Jesus Make Up My Dying Bed (aka In My Time of Dying) (Blind Willie Johnson) (1927) | (misidentified as Jesus Gonna Make Up My Dying Bed) [AUDIO][Jones ] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 225A | Jesus Gonna Make Up My Dying Bed (Josh White) (misidentified as Jesus Make Up My Dying Bed (aka In My Time of Dying))(1933) [AUDIO][Jones ] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 226A | How Many More Times (Led Zeppelin)(1969) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

| | | | | |
|---|---|---|---|---|
| 227A | No Place to Go (aka How Many More Years)(Howlin' Wolf)(1959)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 228A | Rosie (Alexis Korner Blues Inc.)(1967) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 229A | Steal Away (Alexis Korner Blues Inc. & Robert Plant)(1968)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 230A | The Hunter (Albert King)(1967) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 231A | Bring it on Home (Led Zeppelin)(1969) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 232A | When the Levee Breaks Breaks (Led Zeppelin)(1971) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 233A | When the Levee Breaks (Memphis Minnie & Kansas Joe McCoy)(1929)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 234A | Custard Pie (Led Zeppelin)(1975) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 235A | Drop Down Mama (Sleepy John Estes)(1935)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), | | |

| | | | | |
|---|---|---|---|---|
| | UDIO] | 37(c)(1). | | |
| 236A | Want Some of Your Pie (Blind Boy Fuller)(1940)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 237A | In My Time of Dying Bed (Led Zeppelin)(1975)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 238A | Boogie with Stu (Led Zeppelin)(1975) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 239A | Ooh, My Head (Ritchie Valens)(1957)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 240A | Nobody's Fault but Mine (Led Zeppelin)(1976) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 241A | White Summer (Yardbirds)(1969)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 242A | She Moved Thro' the Fair (Davy Graham)(1963)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 243A | The Girl I Love She Got Long Black Wavy Hair (Led Zeppelin)(1969) [AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

| | | | | |
|---|---|---|---|---|
| 244A | The Girl I Love She Got Long Curly Hair (Sleepy John Estes)(1927)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 245A | Watch Your Step (Bobby Parker)(1961)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 246A | Your Time is Gonna Come (Led Zeppelin)(1969)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 247A | Dear Mr. Fantasy (Traffic)(1967)[AUDIO] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 250 | Lyrics and Musical Comparison of Prior Art and Led Zeppelin Songs | Defs: such a recording has never been produced to defendants, FRCP 26(a), 37(c)(1); Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/ provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 300 | Spirit Show History [Ferguson] | Defs: FRE 901, 602, 802, 805. | | |
| 301 | Spirit Gig Listing [Ferguson] | Defs: FRE 901, 602, 802, 805. | | |
| 302 | Spirit CD - Topanga (69)[Ferguson] | | | |
| 302A | Spirit CD - Topanga (69) [AUDIO][Ferguson] | | | |
| 303 | Spirit CD - Valley Music Theatre (12/31/1970)(Disc One)[Ferguson] | | | |

30
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

217

| | | | | | |
|---|---|---|---|---|---|
| | 303A | Spirit CD - Valley Music Theatre (12/31/1970)(Disc One)[AUDIO] [Ferguson] | | | |
| | 304 | Spirit CD - Valley Music Theatre (12/31/1970)(Disc Two)[Ferguson] | | | |
| | 304A | Spirit CD - Valley Music Theatre (12/31/1970)(DiscTwo)[AUDIO] [Ferguson] | | | |
| | 305 | Poster – Northern California Folk-Rock Festival [Ferguson] | Defs: FRE 901, 802, 401-02, 602. | | |
| | 306 | Spirit CD - The Forum (12/12/1970)[Ferguson] | | | |
| | 306A | Spirit CD - The Forum (12/12/1970) [AUDIO] [Ferguson] | | | |
| | 307 | Spirit CD - Mammoth Gardens (6/5/1970)[Ferguson] | | | |
| | 307A | Spirit CD - Mammoth Gardens (6/5/1970)[AUDIO][Ferguson] | | | |
| | 308 | Spirit CD - Cincinnati, Ohio (Unknown venue)(Late 1970)[Ferguson] | | | |

31
218

| | | | | | |
|---|---|---|---|---|---|
| | 308A | Spirit CD - Cincinnati, Ohio (Unknown venue)(Late 1970)[AUDIO][ Ferguson] | | | |
| | 309 | Spirit CD - Whisky A Go Go (11/1/1970)[Fer guson] | | | |
| | 309A | Spirit CD - Whisky A Go Go (11/1/1970)[AU DIO][Ferguson] | | | |
| | 310 | Spirit CD - Mammoth Gardens (2/1/1969)[Ferg uson] | | | |
| | 310A | Spirit CD - Mammoth Gardens (2/1/1969)[AU DIO][Ferguson] | | | |
| | 311 | Spirit CD - Civic Center (Baltimore, MD)(10/3/1969 ) [Ferguson] | | | |
| | 311A | Spirit CD - Civic Center (Baltimore, MD) (10/3/1969) [AUDIO][Fergu son] | | | |
| | 312 | Spirit CD - Center Arena (Seattle, WA)(5/22/1970 ) [Ferguson] | | | |
| | 312A | Spirit CD - Center Arena (Seattle, WA)(5/22/1970 ) | | | |

32

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | [AUDIO][Ferguson] | | | |
| 313 | "Rock Concert is Real Groovy – Rocky Mountain News Music Critic [Ferguson][D136] | | | |
| 314 | "Atlanta Pop- 'Greatest Musical Fair Ever'" – The Hurricane (7/11/1969)[Ferguson][D202] | | | |
| 315 | Atlanta Pop Festival Announcement [Ferguson][D125] | Defs: FRE 802. | | |
| 316 | Seattle Pop Festival Poster [Ferguson][D136] | Defs: FRE 802. | | |
| 317 | Sylvan Rock Flows Smoothly – Seattle Post Intelligencer (7/29/1969)[Ferguson][D117] | | | |
| 318 | Seattle Pop Festival Poster [Ferguson] | Defs: FRE 802. | | |
| 319 | Texas International Pop Festival Poster and News Articles [Ferguson] | Defs: FRE 802. | | |
| 320 | Spirit Poster for (12/26/1967)[Ferguson] | | | |
| 321 | Robert Plant Crash Article – Melody Maker (2/7/1970) | | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| | [Ferguson][D146] | | | |
| 322 | Poster for Spirit Concert w/ Mandrake – Hornsey Town Hall [Ferguson] | Defs: FRE 901, 802, 401-02. | | |
| 323 | Spirit Article - Shindig! (2009)[Ferguson] | Defs: FRE 802, 401-02, 403. | | |
| 324 | "And She's Buying a Lawsuit to Heaven" – Blog Post [Ferguson] | Defs: MIL # 3, FRE 901, 802, 401-02, 403, | | |
| 325 | Wikipedia Article on How Many More Times [Ferguson] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 326 | Wikipedia Article on White Summer [Ferguson] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 327 | "Spirit, Procol Play Concerts" in LA Times (4/17/1969)[Ferguson] | Defs: FRE 802, 401-02, 403, as to Internet posting re lawsuit, claims, Defs MIL # 2, # 3, 5. | | |
| 328 | News Articles from Bruce Pates [Ferguson] | Defs: FRE 802, 401-02, 403. | | |
| 329 | Seattle Pop Festival Poster [Ferguson] | Defs: FRE 901, 802. | | |
| 330 | Sounds Like Teen Spirit by Timothy English [Ferguson] | Defs: Defs MIL # 2, # 5, FRE 407, 408, 401-02, 403, 404, 802. | | |
| 331 | Skidmore Emails to Jay Ferguson (8/28/2015)[Fer | Defs: Defs MIL # 5, FRE 401-02, 403, 404, 802. | | |

| | | | | |
|---|---|---|---|---|
| | guson] | | | |
| 332 | Skidmore Emails to Jay Ferguson (5/29/2015)[Fer guson] | Defs: Defs MIL # 5, FRE 401-02, 403, 404, 802. | | |
| 333 | Spirit Demo Cassette [Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 404, 1002, 802. | | |
| 333A | Spirit Demo Cassette [AUDIO][Fergu son] | Defs: Defs MIL # 3, FRE 401-02, 403, 404, 1002, 802. | | |
| 334 | Spirit Cassette - Whiskey A Go Go Show [Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 334A | Spirit Cassette - Whiskey A Go Go Show [AUDIO][Fergu son] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 335 | Spirit Cassettes - Filmore West and Boston [Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 335A | Spirit Cassettes - Filmore West and Boston [AUDIO][Fergu son] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 336 | Spirit Cassettes – Filmore West [Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 336A | Spirit Cassettes – Filmore West [AUDIO][Fergu son] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. | | |
| 337 | Cassette – As Long As I have You [Ferguson] | Defs: FRE 401-02, 403, 1002, 802. | | |
| 337A | Cassette – As Long As I have You [AUDIO][Fergu son] | Defs: FRE 401-02, 403, 1002, 802. | | |
| 338 | Time Circle | Defs: Defs MIL # 3, FRE 401-02, | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | (Spirit)(Disc 1)[Ferguson] | 403, 1002. |  |  |
| 338A | Time Circle (Spirit)(Disc 1) [AUDIO][Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. |  |  |
| 338.2 | Time Circle (Spirit)(Disc 2)[Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. |  |  |
| 338.2A | Time Circle (Spirit)(Disc 2) [AUDIO][Ferguson] | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802. |  |  |
| 339 | Time Circle Notes [Ferguson][D137] | Defs: Defs. MIL # 3, FRE 802, 805. |  |  |
| 340 | All for One Contract [Ferguson] | Defs: FRE 401-02, 403. |  |  |
| 341 | Letter Canceling "All For One"Contract [Ferguson] | Defs: FRE 401-02, 403. |  |  |
| 342 | Subpoena to Jay Ferguson [Ferguson] |  |  |  |
| 343 | CD Jay Ferguson Interview with Bruce Pates Summerland, CA (June 28, 2000) [Transcript] | Defs: FRE 602, 802, 401-02, 403. |  |  |
| 343A | CD Jay Ferguson Interview with Bruce Pates Summerland, CA (June 28, 2000)[AUDIO][ Ferguson] | Defs: FRE 401-02. |  |  |
| 344 | [DVD] CD Image – 1st Atlanta Pop |  |  |  |

| | | | | |
|---|---|---|---|---|
| | Festival [Ferguson] | | | |
| 344V | [DVD] CD Image – 1st Atlanta Pop Festival [VIDEO][Ferguson] | | | |
| 345 | "Pop Music Festival – With Extras – Brings out the Youth" - NY Times (7/7/1969)[Ferguson] | | | |
| 346 | Texas International Pop Festival Poster, Picture, and News Articles [Ferguson] | Defs: FRE 901, 802, 401-02, 403. | | |
| 347 | Ode Records Recording Contract (8/29/1967) [Ferguson] | | | |
| 348 | Taurus Copyright Registration [Ferguson] | Defs: FRE 1002. | | |
| 349 | Dave Waterbury Phone Call[Transcript] [Plant][402] | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 349A | Dave Waterbury Phone Call [AUDIO] [Plant][402A] | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 350 | Posters and Concert Tickets [Andes] | Defs: as to 350-4 to 350-14, FRE 802, 901, 401-02, 403. | | |
| 351 | Subpoena for Mark Andes [Andes] | | | |

| | | | | | |
|---|---|---|---|---|---|
| | 352 | Bruce Pates Document for Spirit Setlist from (2/1/1969)[Andes] | | | |
| | 353 | "Stairway to Heaven: Song Remains Pretty Similar" by Vernon Silver [Andes] | Defs: Defs MIL # 2, # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| | 360 | Subpoena Bruce Pates [Pates] | | | |
| | 361 | Letter to Ed Cassidy and Notice from Hollenbeck (6/30/1971)[Pates] | Defs: FRE 401-02. | | |
| | 362 | Songwriter Contract (8/29/1967)[Pates] | Defs: this is Cassidy's songwriter contract, which is not relevant; FRE 401-02, 403, 404. | | |
| | 363 | Vintage Guitar Magazine [Pates] | Defs: FRE 401-02. | | |
| | 364 | Cds and List of Songs | Defs: as to 1st CD, Defs MIL # 3, FRE 401-02, 403, 802, 901; as to 5th CD, FRE 401-02, 403, 802, 901, 1002; as to 6th CD, Defs MIL # 2, # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1); as to 7th CD, FRE 802, 901. | | |
| | 365 | Email on Texas Intl. Pop Festival Files from Francis to Peter [Pates] | Defs: FRE 401-02; to the extent plaintiff means to refer to the audio files transferred, *see* objections to Exh. 364. | | |
| | 366 | Goldmine Magazine with Randy Interview [Pates] | Defs: FRE 802, 901, 401-02, 403, 404. | | |

| | | | | |
|---|---|---|---|---|
| 367 | Spirit CD – Civic Center Santa Monica, CA (9-29-1967)[Pates] | Defs: as to 1st CD, Defs MIL # 3, FRE 401-02, 403, 404, 802, 901, 1002. | | |
| 367A | Spirit CD – Civic Center Santa Monica, CA (9-29-1967) [AUDIO][Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 404, 802, 901, 1002. | | |
| 368 | Led Zeppelin CD – Whisky A Go (1/5/1969)[Pates] | Defs: FRE 401-02. | | |
| 368A | Led Zeppelin CD – Whisky A Go (1/5/1969)[AUDIO][Pates] | Defs: FRE 401-02. | | |
| 369 | Spirit CD – Live at the Troubadour (12-6-1975)[Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 802, 901, 1002. | | |
| 369A | Spirit CD – Live at the Troubadour (12-6-1975)[AUDIO][Pates] | Defs: Defs MIL # 3, FRE 401-02, 403, 802, 901, 1002. | | |
| 370 | Quinn Message to Bruce Pates [Pates] | Defs: FRE 401-02. | | |
| 371 | Quinn Message to Pates on (4-30-2002)[Pates] | Defs: FRE 401-02. | | |
| 372 | Quinn Message to Bruce Pates on Yahoo Groups [Pates] | Defs: FRE 401-02. | | |
| 373 | Spirit Album [Pates] | Defs: this deposition exhibit is a photocopy of the back of the album; to the extent plaintiff intends to refer to the audio recordings on the album, Defs MIL # 3, FRE 401-02, | | |

| | | | | | |
|---|---|---|---|---|---|
| | | 403, 1002. | | |
| 374 | Bruce Pates Post on Yahoo Group [Pates] | Defs: FRE 401-02, 802, 602, Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 375 | Bruce Pates Comment on TeamRock [Pates] | Defs: FRE 401-02, 802, 602, Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 376 | Bruce Comments on Article (12-12-2015)[Pates] | Defs: FRE 401-02, 802, 602, Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 377 | Note from Randy to Bruce [Pates] | Defs: FRE 401-02, 403, 802. | | |
| 378 | Postcard – Note from Randy to Bruce [Pates] | Defs: FRE 401-02, 403, 802. | | |
| 379 | Postcard – Note from Randy to Bruce [Pates] | Defs: FRE 401-02, 403, 802. | | |
| 380 | Note to Bruce from Bernice Pearl (1991)[Pates] | Defs: FRE 401-02, 403, 802. | | |
| 381 | Bernice and the Guys Note to Bruce [Pates] | Defs: FRE 401-02, 403, 802. | | |
| 382 | Note from Bernice to Bruce [Pates] | Defs: FRE 401-02, 403, 802. | | |
| 383 | Note from Bernice to Bruce (1991)[Pates] | Defs: FRE 401-02, 403, 802. | | |
| 384 | Led Zeppelin Collector's Edition [Pates] | Defs: Defs MIL #2, # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 385 | Marshall Berle and Bruce Pates Exchange (May | Defs: FRE 401-02, 403, 802, 602. | | |

40
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST
227

| | | | | |
|---|---|---|---|---|
| | 2014)[Pates] | | | |
| 386 | Email Chain Between Jay and Bruce Pates, 6/16/15 | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 387 | Ferguson and Pates Email (June 2015)[Pates] | Defs: Defs MIL # 2, # 5, FRE 401-02, 403, 404, 408, 802. | | |
| 388 | Wikipedia – LZ North American Tour (68-69)[Pates] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 389 | Yahoo Group Message – Between Dave and Bruce [Pates] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 390 | Spirit Poster [Pates] | Defs: FRE 401-02. | | |
| 391 | Jay and Bruce Email from (9-14-2014)[Pates] | Defs: Defs MIL #1, # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 392 | Transcript of Phone Call between Francis Malofiy andTracy Longo [Plant] [403] | | | |
| 393 | Photograph of Guitar Case | | | |
| 394 | Photograph of Guitar | | | |
| 395 | The Last Randy California Guitar | | | |
| 400 | Stairway to Heaven Sheet Music (Superhype Music | | | |

41

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | 1972)[Plant] | | | |
| 401-02 | School of Rock Magazine – Led Zeppelin Edition – Bonham Article [Plant] | Defs: Defs MIL # 2, FRE 901, 802, 805. | | |
| 402 | Dave Waterbury Phone Call Transcript [Plant | Defs: Defs MIL # 1, 11, FRE 802; duplicative exhibit. | | |
| 402A | Dave Waterbury Phone Call Transcript [AUDIO][Plant ] | Defs: Defs MIL # 1, 11, FRE 802; duplicative exhibit. | | |
| 403 | Tracy Longo Phone Call Transcript [Plant] | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 403A | Tracy Longo Phone Call Transcript [AUDIO][Plant | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 404 | 2004 Robert Plant Interview on NPR with Terry Gross (22:10 to 25:46)[Plant] | Defs: Defs MIL # 2, #5, FRE 401-02, 403, 404, 407, 408, 1002, 802. | | |
| 404A | 2004 Robert Plant Interview on NPR with Terry Gross (22:10 to 25:46)[Plant] | Defs: audio recordings not produced by plaintiff despite agreement to do so; 26(a), 26(e), 37(c)(1); MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 404T | Transcript of 2004 Robert Plant Interview on NPR with Terry Gross | | | |

| | | | | |
|---|---|---|---|---|
| 405A | Dazed and Confused (Led Zeppelin)(Clip) [AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 406A | Dazed and Confused (Jake Holmes)(Clip)[AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 407A | Babe I'm Gonna Leave You (Led Zeppelin)(1969) (Clip)[AUDIO] [Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 408A | Babe I'm Gonna Leave You (Joan Baez/Anne Bredon)(1962)( Clip)[AUDIO][ Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 409A.A | Whole Lotta Love (Led Zeppelin)(Clip A)[AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 409A.B | Whole Lotta Love (Led Zeppelin)(Clip B)[AUDIO][Plant] | | | |
| 409A.C | Whole Lotta Love (Led Zeppelin)(Clip C)[AUDIO][Plant] | | | |
| 410A | You Need Love (Willie Dixon/Muddy Waters)(Clip)[AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 411A | You Need Lovin' (The Small Faces)(Clip)[AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |

| | | | | |
|---|---|---|---|---|
| 412A | Communications Breakdown (Led Zeppelin)(1969) (Clip)[AUDIO] [Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 413A | Nervous Breakdown (Eddie Cochran)(1958) (Clip)[AUDIO] [Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 414A | Since I've Been Loving You (Led Zeppelin)(Clip) [AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 415A | Never (Moby Grape)(Clip)[AUDIO][Plant] | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404; failure to identify/provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 450 | Stipulation to Order and Order for Substituted Judgment to Create and Fund Revocable Living Trust and Execute a Pour-Over Will (Probate Code Sec. 2 580(b)(5)) and (13)) [Skidmore] | | | |
| 451 | Randy Craig Wolfe Trust [Skidmore] | | | |
| 452 | First Amendment to Randy Craig Wolfe Trust (February 26, | | | |

44
231

| | | | | |
|---|---|---|---|---|
| | 2002)[Skidmore] | | | |
| 453 | Second Amendment to Randy Craig Wolfe Trust (February 26,2002) [Skidmore] | | | |
| 454 | Third Amendment to Randy Craig Wolfe Trust (February 26, 2002 [Skidmore] | | | |
| 455 | Fourth Amendment to Randy Craig Wolfe Trust (February 26, 2002)[Skidmore] | | | |
| 456 | Fifth Amendment to Randy Craig Wolfe Trust (February 26, 2002)[Skidmore] | | | |
| 457 | Certification of Trust Existence and Authority [Skidmore] | | | |
| 458 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 459 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 460 | Royalty Statement [Skidmore] | Defs: FRE 401-02. | | |
| 461 | Alice Cooper Interview [Skidmore] | Defs: FRE 401-02, 802. | | |

| | | | | |
|---|---|---|---|---|
| 462 | The Rock and Roll Hall of Fame and Museum, The Jimi Hendrix Experience Biography [Skidmore] | Defs: FRE 401-02, 802. | | |
| 463 | 'The Doctor of Rock and Roll,' an Interview with Al Kooper [Skidmore] | Defs: FRE 401-02, 802. | | |
| 464 | Rock'n'roll Confidential, Walter Becker, One Half of the Steely Dan Superbrain Talks Dylan, Psychology and The Blues [Skidmore] | Defs: FRE 401-02, 802. | | |
| 465 | Obituary: Randy California [Skidmore] | Defs: FRE 401-02, 802. | | |
| 466 | Randy California on Hendrix and Jimmy James & The Blue Flames [Skidmore] | Defs: FRE 401-02, 802. | | |
| 467 | Jimmy James & The Blue Flames, 1. Bright Lites, Big City; 2. I'm a Man .. [Skidmore] | Defs: FRE 401-02. | | |
| 468 | Email (Monday, November 10, 2008 6:54:51 PM)[Skidmore] | Defs: Defs MIL # 3, FRE 401-02, 403, 802, 602. | | |
| 469 | Skidmore | Defs: Defs MIL # 3, FRE 401-02, | | |

| | | | | |
|---|---|---|---|---|
| | Supplemental Document Production [Skidmore] | 403, 802, 602. | | |
| 470 | Skidmore Supplemental Document Production [Skidmore] | Defs: Defs MIL # 8; FRE 802; Defs MIL #1, # 5, FRE 407, 408, 401-02, 403, 404, 802; failure to identify/ provide expert testimony as to claimed use, FRCP 26(a), 26(e), 37(c)(1). | | |
| 475 | Subpoena to Testify at a Deposition in a Civil Action [Ruhlmann] | | | |
| 480 | Barney Hoskyns, "Led Zeppelin IV" (2006) (book) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 481 | Light and Shade, by Brad Tolinksi (book) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 482V | Origin of Species Led Zeppelin: A Critical Review of the Band's Roots and Branches (DVD) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 483V | Led Zeppelin: The Untold Story (DVD) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 484V | Led Zeppelin 1969 (DVD) | Def: such a DVD has never been produced to defendants; FRCP 26(a)(1), (e) & 37(c); FRE 401-02, 403, 1002, & MIL # 4, # 5. | | |
| 485V | Led Zeppelin Reunion Collection (DVD) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 486V | Rock 'n Roll (Season: 1 \| Episode 5: Crossroads | Def: such an exhibit has never been produced to defendants; FRCP 26(a)(1), (e) & 37(c); FRE 401-02, 403, 1002, & MIL # 4, # 5. | | |

47

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | | | |
|---|---|---|---|---|
| | (WGBH in Boston in Partnership with the BBC) | | | |
| 487 | Jimmy Page by Jimmy Page (Book) | | | |
| 488A | Led Zeppelin - 4 cassette box set and book (1990 – Atlantic Recording) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 489 | The Little Black Songbook: Led Zeppelin (2009 Wise Publications) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 490 | The Encyclopeida of Picture Chords for All Guitarists (Book) | Def: such an exhibit has never been produced to defendants; FRCP 26(a)(1), (e) & 37(c); FRE 401-02, 403, 1002, & MIL # 4, # 5. | | |
| 491 | The Ultimate Collector's Edition – Led Zeppelin: The Complete Story (magazine) | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 492V | Led Zeppelin (DVD) | | | |
| 493 | Led Zeppelin: The Concert File by Dave Lewis and Simon Pallett | Def: such an exhibit has never been produced to defendants; FRCP 26(a)(1), (e) & 37(c); MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 494 | Led Zeppelin on Led Zeppelin by Hank Borodowitz | Def: such an exhibit has never been produced to defendants; FRCP 26(a)(1), (e) & 37(c); MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |
| 495 | Led Zeppelin: When Giants Walked the Earth by Mick | Def: MIL # 2, #5; failure to identify portion to be offered; FRE 401-02, 403, 404, 405, 407, 408, 702, 802, 805, 901. | | |

{00255828;1}

48

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

| | | Mall | | | |
|---|---|---|---|---|---|
| | 500 | Chromatic Line [Stewart Exhibit] | | | |
| | 501 | Other Art Chromatic Line Comparison [Stewart Exhibit] | | | |
| | 502 | Harmony [Stewart Exhibit] | | | |
| | 503 | Ferrara Harmony Comparison [Stewart Exhibit] | | | |
| | 504 | Mathes Taurus Deposit Copy [Stewart Exhibit][2603.B] | | | |
| | 505 | A Section Taurus and STH [Stewart Exhibit] | | | |
| | 506 | Taurus and STH Note Pairings [Stewart Exhibit] | | | |
| | 507 | Mathes [2603][2603.B][2603.C][2605] [Stewart Exhibit] | | | |
| | 508 | Ferrara [2704][2705][2707] [Stewart Exhibit] | | | |
| | 509 | Taurus and STH Pitch Collections (Graphed) [Stewart | | | |

| | | | | |
|---|---|---|---|---|
| | Exhibit] | | | |
| 510 | Taurus and STH Pitch Collections (Written) [Stewart Exhibit] | | | |
| 511 | Taurus and STH Pitch Inventory (Quantative) [Stewart Exhibit] | | | |
| 512 | Taurus and STH Form [Stewart Exhibit] | | | |
| 513 | T Deposit Copy and STH Vocal Melody [Stewart Exhibit] | | | |
| 514 | Wayne's World Film Information [Stewart Exhibit] | | | |
| 514V | Wayne's World World Stairway Clip (with Overdub) | | | |
| 514VV | Wayne's World World Stairway Clip (without Overdub) | | | |
| 515 | "Phrase" (Harvard Dictionary of Music) [Stewart Exhibit] | | | |
| 516 | Stewart To Catch a Shad Interlude Transcription | | | |
| 517 | Defense Rebuttal Expert | Plt: FRE 401-402; Failure to Disclose | | |

50

| | | Disclosure | | | |
|---|---|---|---|---|---|
| | 518 | Rebuttal Report of Lawrence Ferrara | Plt: FRE 401-402; Failure to Disclose | | |
| | 518.1A | To Catch a Shad, Ferrara Audio Exhibit 3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519 | Rebuttal Report of Robert Mathes | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.1A | Prelude for Lute in C Minor, BWV 999_ I. Prelude | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.2A | Can't Find My Way Home | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.3A | Walk on By | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.4A | 4 + 20 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.5A | Davy Graham - Cry Me A River - 1959 BBC - audio | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.6A | Davy Graham - Cry Me A River - 1959 BBC- video | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.7A | Misirlou (Single Version) mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.8A | Mellow Yellow | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.9A | Season of the Witch | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.10 A | Sunshine Superman | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.11 A | There's a Kind of Hush | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.12 A | River Deep Mountain High | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.13 A | Time In a Bottle | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.14 A | Winter Is Gone | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.15 A | Song to a Seagull | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.16 | A House Is Not | Plt: FRE 401-402; Failure to | | |

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

238

| | A | a Motel (2015 Remastered Version) | Disclose | | |
|---|---|---|---|---|---|
| | 519.17 A | Alone Again Or (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.18 A | Andmoreagain (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.19 A | Bummer In the Summer (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.20 A | Live and Let Live (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.21 A | Maybe the People Would Be the Times Or Between Clark and Hilldale (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.22 A | Old Man (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.23 A | The Daily Planet (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.24 A | The Good Humor Man He Sees Everything Like This (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.25 A | The Red Telephone (2015 Remastered Version) | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.26 A | You Set the Scene (2015 | Plt: FRE 401-402; Failure to Disclose | | |

52

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

239

| | | | | | |
|---|---|---|---|---|---|
| | | Remastered Version) | | | |
| 2 | 519.27 A | Here Comes the Night | Plt: FRE 401-402; Failure to Disclose | | |
| 3 | 519.28 A | To Sir With Love mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.29 A | Scarborough Fair | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.30 A | The Trees They Do Grow High | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.31 A | Downtown | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.32 A | Scarborough Fair _ Canticle___ | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.33 A | The Sounds of Silence | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.34 A | Caroline, No mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.35 A | Don't Talk (Put Your Head On My Shoulder) mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.36 A | God Only Knows mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.37 A | Here Today mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.38 A | I Just Wasn't Made for These Times mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.39 A | I Know There's an Answer mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.40 A | I'm Waiting for the Day mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.41 A | Let's Go Away for Awhile mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.42 A | Pet Sounds mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.43 A | Sloop John B mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.44 A | That's Not Me mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.45 A | Wouldn't It Be Nice mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| | 519.46 A | You Still Believe In Me mp3 | Plt: FRE 401-402; Failure to Disclose | | |

| | | | | | |
|---|---|---|---|---|---|
| 519.47 A | A Day in the Life | Plt: FRE 401-402; Failure to Disclose | | |
| 519.48 A | Blackbird | Plt: FRE 401-402; Failure to Disclose | | |
| 519.49 A | Fixing a Hole | Plt: FRE 401-402; Failure to Disclose | | |
| 519.50 A | The Fool on the Hill | Plt: FRE 401-402; Failure to Disclose | | |
| 519.51 A | In My Life | Plt: FRE 401-402; Failure to Disclose | | |
| 519.52 A | Mother Nature's Son | Plt: FRE 401-402; Failure to Disclose | | |
| 519.53 A | Walk Away Renee | Plt: FRE 401-402; Failure to Disclose | | |
| 519.54 A | California Dreamin' | Plt: FRE 401-402; Failure to Disclose | | |
| 519.55 A | Monday, Monday | Plt: FRE 401-402; Failure to Disclose | | |
| 519.56 A | Sometime in the Morning | Plt: FRE 401-402; Failure to Disclose | | |
| 519.57 A | The Girl I Knew Somewhere | Plt: FRE 401-402; Failure to Disclose | | |
| 519.58 A | Lady Jane | Plt: FRE 401-402; Failure to Disclose | | |
| 519.59 A | Play With Fire | Plt: FRE 401-402; Failure to Disclose | | |
| 519.60 A | Ruby Tuesday | Plt: FRE 401-402; Failure to Disclose | | |
| 519.61 A | She's a Rainbow | Plt: FRE 401-402; Failure to Disclose | | |
| 519.62 A | Wipe Out mp3 | Plt: FRE 401-402; Failure to Disclose | | |
| 519.63 A | Still I'm Sad | Plt: FRE 401-402; Failure to Disclose | | |
| 519.64 A | White Summer | Plt: FRE 401-402; Failure to Disclose | | |
| 519.65 A | It's Not Unusual | Plt: FRE 401-402; Failure to Disclose | | |
| 520 | Spirit Album Liner Notes | | | |
| 521 | Royalty Statements for Randy Wolfe | | | |
| 522 | Billboard Magazine (1968.09.28) | | | |

| | | | | | |
|---|---|---|---|---|---|
| 523 | Top Pop Albums 1955-1992 - Joel Whitburn | | | | |
| 524V | STH [Plaintiff Video Exhibit] | | | | |
| 525V | TAURUS DEPOSIT [Plaintiff Video Exhibit] | | | | |
| 527V | T DEPOSIT (Bass Clef) [Plaintiff Video Exhibit] | | | | |
| 529V | STH PAIRS[Plaintiff Video Exhibit] | | | | |
| 530V | T PAIRS [Plaintiff Video Exhibit] | | | | |
| 532V | TAURUS ALBUM [Plaintiff Video Exhibit] | | | | |
| 534V | TAURUS (Treble Clef) [Plaintiff Video Exhibit] | | | | |
| 535 | Andes and Plant Photo | | | | |
| 536 | Spirit and Led Zeppelin Poster - Illinois Speedway | | | | |
| 537 | Randy California Pictures | | | | |
| 538 | 1968.12.30 - Led Zeppelin Gonazage University Concert, Spokane Washington | | | | |
| 538.1A | The Train Kept A Rollin | | | | |
| 538.2A | I Can't Quit | | | | |

| | | You | | | |
|---|---|---|---|---|---|
| | 538.3A | As Long As I Have You w Fresh Garbage | | | |
| | 538.4A | Dazed and Confused | | | |
| | 538.5A | White Summer | | | |
| | 538.6A | How Many More Times | | | |
| | 538.7A | Pat's Delight | | | |
| | 539 | 1996 Randy Wolfe Interview | | | |
| | 540.1A | Ferrara Audio Exhibit 1 - Taurus | | | |
| | 540.2A | Ferrara Audio Exhibit 2 - Stairway to Heaven | | | |
| | 540.3A | Ferrara Audio Exhibit 3 - The Meaning of the Blues | | | |
| | 540.4A | Ferrara Audio Exhibit 4 - Chim Chim Cher-ee | | | |
| | 540.5A | Ferrara Audio Exhibit 5 - How Insensitive | | | |
| | 540.6A | Ferrara Audio Exhibit 6 - Walking My Baby Back Home | | | |
| | 540.7A | Ferrara Audio Exhibit 7 - More | | | |
| | 540.8A | Ferrara Audio Exhibit 8 - Spring is Near | | | |
| | 540.9A | Ferrara Audio Exhibit 9 - My Funny Valentine | | | |
| | 540.10 | Ferrara Audio | | | |

| | A | Exhibit 10 - A Taste of Honey | | | |
|---|---|---|---|---|---|
| | 540.11 A | Ferrara Audio Exhibit 11 - Cry Me a River | | | |
| | 540.12 A | Ferrara Audio Exhibit 12 - Michelle | | | |
| | 540.13 A | Ferrara Audio Exhibit 13 - Music to Watch Girls By | | | |
| | 540.14 A | Ferrara Audio Exhibit 14 - Summer Rain | | | |
| | 540.15 A | Ferrara Audio Exhibit 15 - Ice Cream Dreams | | | |
| | 540.16 A | Ferrara Audio Exhibit 16 - Thoughts | | | |
| | 540.17 A | Ferrara Audio Exhibit 17 - And She's Lonely | | | |
| | 604 | Led Zeppelin IV (Standard Re-Issue) [D604] | | | |
| | 605 | Led Zeppelin IV (Deluxe 2-LP Set) [D605] | | | |
| | 606 | Led Zeppelin IV (Super Deluxe Edition Box Set)[Page] | | | |
| | 606 | Led Zeppelin IV (Super Deluxe Edition Box Set)(CD)[Page] | | | |
| | 606.76 | Led Zeppelin IV (Super Deluxe Edition Box Set)(Book; p.76)[Page][D606] | | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| 606.1 | Led Zeppelin IV (Super Deluxe Edition Box Set)(Book; p.10)[Page][D606] | | | |
| 606.4 | Led Zeppelin IV (Super Deluxe Edition Box Set)(Book; p.4)[Page][D606] | | | |
| 606.5 | Led Zeppelin IV (Super Deluxe Edition Box Set)(Book; p.5)[Page][D606] | | | |
| 606.9 | Led Zeppelin IV (Super Deluxe Edition Box Set)(Book; p.9)[Page][D606] | | | |
| 642 | WB Music Corp. c/o Warner/Chappell Music, Inc. – Administration Agreement (1/1/08) [Blietz450][Woirhaye450][D642] | | | |
| 655 | Summary of "Stairway to Heaven" US Mechanical Royalties (3Q11 - 3Q15)[Blietz457][D655] | | | |
| 697 | Summary of "Stairway to Heaven" | | | |

| | | | | |
|---|---|---|---|---|
| | ASCAP US Publishing Receipts (3Q11 - 3Q15)[Blietz460][D697] | | | |
| 698 | Summary of "Stairway to Heaven" US Synchronization Licenses (May 31, 2011 – Present)[Blietz462] [D698] | | | |
| 699 | Summary of "Stairway to Heaven" Miscellaneous US Publishing Receipts (3Q11 - 3Q15)[Blietz459][D699] | | | |
| 700 | Backup Documentation [Blietz461][D700] | | | |
| 701 | WB Music Corp. Summary Statement (July to September 2011)[Blietz466][D701] | | | |
| 1165 | WB Music Corp. Summary Statement (January to March 2012)[Blietz463][D1165] | | | |
| 1493 | WB Music Corp. Summary Statement (April to June 2012)[Blietz464][D1493] | | | |
| 2067 | WB Music | | | |

| | | | | |
|---|---|---|---|---|
| | Corp. Summary Statement (January to March 2013)[Blietz465][D2067] | | | |
| 3471 | WB Music Corp. Summary Statement (April to June 2014)[Blietz467][D3471] | | | |
| 3633 | WB Music Corp. Summary Statement (July to September 2014)[Blietz468][D3633] | | | |
| 4123 | WB Music Corp. Summary Statement (January to March 2015)[Blietz469] [D4123] | | | |
| 4547 | WB Music Corp. Summary Statement (April to June 2015)[Blietz470][D4547] | | | |
| 5053 | Royalty Summary Statement Led Zeppelin (early/latter)[Woirhaye472][D5053] | | | |
| 28165 | Royalty Summary Statement (April 2011 - June 2011)[Woirhaye473][D28165] | | | |
| 35850 | Rhino Entertainment | | | |

| | | | | |
|---|---|---|---|---|
| | Company and Superhype Tapes, Ltd. Profit Participation Statement (Quarter Ending December 2012) [Blietz 452] [D35850] | | | |
| 35852 | Schedule A, Led Zeppelin Catalog, Domestic Physical Sales (Quarter Ending December 20120 [Blietz453] [D35852] | | | |
| 35853 | Schedule B, Led Zeppelin Catalog, Domestic Digital Sales - Album (Quarter Ending December 2012) [Blietz454] [353853] | | | |
| 35854 | Schedule C, Led Zeppelin Catalog, Domestci Digital Sales - Tracks (Quarter Ending December 2012) [Blietz455] [D35854] | | | |
| 40419 | Rhino/Atlantic US P&L "Stairway to Heaven" 95/31/11 - 10/30/15 | | | |

61

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

248

| | | | | |
|---|---|---|---|---|
| | [Blietz451] [Woirhaye471] [D40419] | | | |
| 40,421-40,450 | Defendants' Supplemental Discovery Production | Defs: failure to specify discrete exhibits to which objections may be stated, referring instead to a supplemental production. | | |
| 40, 451-55 | Defendants' Supplemental Financial Summaries | | | |
| | **PLAINTIFF'S DISCOVERY** | | | |
| | **Spirit – Taurus – 3 Versions** | | | |
| 750A | 01 Track 01 | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| 751A | 02 Track 02 | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| 752A | 03 Track 03 | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| | **Spirit – Randy Speaks – The Change – Poughkeepsie NY – 05.29.1987** | | | |
| 753A | 01 Track 01 | Defs: Defs MIL # 1, FRE 802, 401-02, 403, 710. | | |
| 754A | 02 Track 02 | Defs: Defs MIL # 1, FRE 802, 401-02, 403, 710. | | |
| | **Spirit – Hornsey Town Hall – N. London UK 02.03.1970** | | | |
| 755A | 01 Track 01 | | | |
| 756A | 02 Track 02 | | | |
| 757A | 03 Track 03 | | | |
| 758A | 04 Track 04 | | | |
| 759A | 05 Track 05 | | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| 760A | 06 Track 06 | | | |
| 761A | 07 Track 07 | | | |
| 762A | 08 Track 08 | | | |
| 763A | 09 Track 09 | | | |
| 764A | 10 Track 10 | | | |
| 765A | 11 Track 11 | | | |
| 766A | 12 Track 12 | | | |
| 767A | 13 Track 13 | | | |
| 768A | 14 Track 14 | | | |
| 769A | 15 Track 15 | | | |
| 770A | 16 Track 16 | | | |
| | **Spirit – Civic Center Santa Monica CA 09.29.1967** | | | |
| 771A | 01 Track 01 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 772A | 02 Track 02 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 773A | 03 Track 03 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 774A | 04 Track 04 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 775A | 05 Track 05 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 776A | 06 Track 06 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 777A | 07 Track 07 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| 778A | 08 Track 08 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |

| | 779A | 09 Track 09 | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
|---|---|---|---|---|---|
| | | **Led Zeppelin – Texas Pop Festival, Dallas** | | | |
| | 780A | 1 | Def: FRE 401-02. | | |
| | 781A | 2 | Def: FRE 401-02. | | |
| | 782A | 3 | Def: FRE 401-02. | | |
| | 783A | 4 | Def: FRE 401-02. | | |
| | 784A | 5 | Def: FRE 401-02. | | |
| | 785A | 6 | Def: FRE 401-02. | | |
| | 786A | 7 | Def: FRE 401-02. | | |
| | | **Led Zeppelin – Fillmore West – San Francisco CA 09.09.1969** | | | |
| | 787A | 01 Track 01 | Def: FRE 401-02. | | |
| | 788A | 02 Track 02 | Def: FRE 401-02. | | |
| | 789A | 03 Track 03 | Def: FRE 401-02. | | |
| | | **Led Zeppelin – Fillmore West – San Francisco CA 01.11.1969** | | | |
| | 790A | 01 Track 01 | Def: FRE 401-02. | | |
| | 791A | 02 Track 02 | Def: FRE 401-02. | | |
| | 792A | 03 Track 03 | Def: FRE 401-02. | | |
| | 793A | 04 Track 04 | Def: FRE 401-02. | | |
| | | **1969-09-01 Texas International Pop Festival** | | | |

| 794A | 1 | | | |
|------|---|---|---|---|
| 795A | 2 | | | |
| 796A | 3 | | | |
| 797A | 4 | | | |
| 798A | 5 | | | |
| 799A | 6 | | | |
| 800A | 7 | | | |
| 801A | 8 | | | |
| | **Led Zeppelin – Discovery Issues – Discovery (SERVED)** | | | |
| 802 | 69_detroit_may_ad.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 803 | 1968_12-26-lzcom_ticketstub.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 804 | atlantapoop69_jp.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 805 | atlantapop_ticket-letter.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as | | |

| | | | | |
|---|---|---|---|---|
| | | to those exhibits apply; otherwise, objections reserved. | | |
| 806 | atlantapop69_press1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 807 | atlantapop69_press1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 808 | atlantapop69-1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 809 | atlantapop69-1b.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 810 | atlantapop69-2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 811 | atlantapop69-3.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| 812 | atlantapop69-4.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 813 | atlantapop69-a.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 814 | atlantapop69-b.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 815 | atlantapop69poster.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 816 | atlantapop69-v.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 817 | atlantapop69-v2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 818 | atlantapop69-v3.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

| 1 | | | objections reserved. | | |
|---|---|---|---|---|---|
| 2 | | | | | |
| 3 | | | | | |
| 4 | 819 | atlantapop-billboard_press.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | 820 | atnaltapop69_tkt2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | 821 | Bernice Note 1 2004.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | 822 | Bernice Note 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | 823 | Bernice Note 3.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |
| 24 | 824 | Bernice Note 4.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |

| 825 | Bob Plant.pdf | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
|---|---|---|---|---|
| 826 | Bruce Spirit Yahoo Groups Post.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 827 | Bruce Team Rock Reply.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 828 | Bruce Yahoo Reply 1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 829 | Bruce Yahoo Reply 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 830 | dallas69-ticket.jpg dallaspop69_poster2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 831 | dallaspop69_press.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

| | | | | |
|---|---|---|---|---|
| | | objections reserved. | | |
| 832 | denver68_ad.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 833 | denver68_review.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 834 | Led Zeppelin Atlanta Pop 69.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 835 | Led Zeppelin Book.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 836 | LED ZEPPELIN Fresh Garbage.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 837 | LZ Giants Page 99.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| 838 | LZ Giants Page 100.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 839 | LZ Guitar World Dec 1993 page 50.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 840 | LZ Guitar World Dec 1993 page 52.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 841 | photo.JPG | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 842 | Randy Note 1-1991.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 843 | Randy Note 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 844 | Randy Note 3.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

71
PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

258

| | | | | |
|---|---|---|---|---|
| | | objections reserved. | | |
| 845 | San Jose CA 1969 Festival Poster.jpeg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 846 | Seattle Pop Fest 1969 Handbill.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 847 | seattlepop69_ad.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 848 | seattlepop69tkt.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 849 | SPIRIT 1st Album Liner Notes.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 850 | SPIRIT 1st Australia.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| 851 | SPIRIT 1st Germany.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
|---|---|---|---|---|
| 852 | SPIRIT 1st Japan.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 853 | SPIRIT 1st UK.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 854 | SPIRIT 68 Agreement.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 855 | SPIRIT Atlanta Pop 1969.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 856 | SPIRIT End Of All For One Page 1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 857 | SPIRIT End Of All For One Page 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as | | |

| | | | | |
|---|---|---|---|---|
| | | objections reserved. | | |
| 858 | SPIRIT End Of All For One Page 3.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 859 | SPIRIT Hornsey N. London 3 Feb 70.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 860 | SPIRIT Jimmy Page Quote on Spirit 1970.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 861 | SPIRIT Leicester UK 4 Feb 70.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 862 | SPIRIT Poughkeepsie 1987.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 863 | SPIRIT Randy Listener Int. Winter 1997.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

74

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

261

| | | | | |
|---|---|---|---|---|
| 864 | Spirit Randy Texas Pop Festival Sep 1 1969.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 865 | SPIRIT Relix 1982 Skidmore 1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 866 | SPIRIT Relix 1982 Skidmore 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 867 | SPIRIT Relix 1993 Skidmore 1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 868 | SPIRIT Relix 1993 Skidmore 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 869 | SPIRIT Relix 1997 Skidmore 1.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 870 | SPIRIT Relix 1997 Skidmore 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

| | | | | |
|---|---|---|---|---|
| | | objections reserved. | | |
| 871 | SPIRIT Seattle Pop 1969.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 872 | Spirit Texas Pop 69 - 2.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 873 | Spirit Texas Pop 69.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 874 | spirit2atlpop[1] (2).jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 875 | Texas Pop 1969 Review.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 876 | Texas Pop Fest Ad 1969.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | 877 | zeppelin_beats_blizzard_12-68.jpg | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
|---|---|---|---|---|---|
| | 878 | 2015.12.30 - LED ZEPPELIN - DISCO - PLT SUPPLEMENTAL DOCUMENT PRODUCTION (SERVED).pdf | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | | **Led Zeppelin – Disco – Plaintiff's Audio Files – Taurus (SERVED)** | | | |
| | 879A | Taurus – Live – Ash Grove (07.31.1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 880A | Taurus – Live – Ash Grove (08.08.1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 881A | Taurus – Live – Kaliedescope (04.05.1968) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 882A | Taurus – Live – The Time Coast | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 883A | Taurus – Live – (07.10.1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 884A | Taurus – Live Acoustic (1996) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 885A | Taurus – Recording (08.1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |
| | 886A | Taurus – Studio Version (11.10.1967) | Defs: Defs MIL # 3, FRE 401-02, 403, 1002, 802; duplicative of other exhibit. | | |

| | | | | |
|---|---|---|---|---|
| | **2015.02.10 – Led Zeppelin Jimmy Page Book (SERVED)** | | | |
| 887 | 2015.02.10 – Led Zeppelin – FYE – Philadelphia, CD Scan – Receipt (SERVED) | Defs: FRE 401-02, 403, MIL # 2. | | |
| 888 | 2015.02.10 – Led Zeppelin – FYE – Philadelphia – CD Scans (SERVED) | Defs: FRE 401-02, 403, MIL # 2. | | |
| 889 | 2015.02.10 – Led Zeppelin – Jimmy Page Book (SERVED) | Defs: FRE 401-02, 403, MIL # 2. | | |
| | **All Plaintiff's Expert Reports & Declarations with Exhibits** | | | |
| 890 | Plaintiffs' Experts Disclosures | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802. | | |
| 891 | Plaintiff's Expert Report, CV/Resume, Audio/Visual Exhibit - Alexander Stewart | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 892 | Plaintiff's Expert Declaration, CV/Resume, Audio/Visual Exhibit - Alexander Stewart | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 893 | Plaintiff's Expert Report, CV/Resume, | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |

| | | | | |
|---|---|---|---|---|
| | Audio/Visual Exhibit - Kevin Hanson | | | |
| 894 | Plaintiff's Expert Declaration, CV/Resume, Audio/Visual Exhibit – Kevin Hanson | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 895 | Plaintiff's Expert Report, CV/Resume, Audio/Visual Exhibit - Erik Johnson | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 896 | Plaintiff's Expert Declaration, CV/Resume, Audio/Visual Exhibit - Erik Johnson | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 897 | Plaintiff's Expert Report, CV/Resume, Audio/Visual Exhibit – Brian Bricklin | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 898 | Plaintiff's Expert Declaration, CV/Resume, Audio/Visual Exhibit - Brian Bricklin | Defs: Defs MIL # 3, #4, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 899 | Plaintiff's Expert Report, CV/Resume, Audio/Visual Exhibit – Denny Somach | Defs: Defs MIL # 3, #6, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |
| 900 | Plaintiff's Expert Declaration, CV/Resume, Audio/Visual Exhibit - Denny | Defs: Defs MIL # 3, #6, FRE 401-02, 403, 1002, 802, failure to produce for deposition. | | |

| | Somach | | | |
|---|---|---|---|---|
| 901 | Plaintiff's Expert Report, CV/Resume, Audio/Visual Exhibit t - Michael Einhorn | Defs: failure to produce for deposition. | | |
| | **Declarations** | | | |
| 903 | Declaration of Paul Franklin With Exhibit | Defs: Def MIL 1, 10, 11, FRE 802, FRCP 26(a), 26(e), 37(c)(1). | | |
| 904 | Declaration of Tracy Longo With Exhibit | Defs: Def MIL 1, 11, FRE 802. | | |
| 905 | Declaration of Andrea Wolfe With Exhibit | Defs: FRE 802, 602, 401-02, 403. | | |
| 906 | Declaration of Janet Wolfe With Exhibit | Defs: FRE 802, 602, 401-02, 403. | | |
| 907 | Declaration of Linda Mensch With Exhibit | Defs: FRE 802, 401-02. | | |
| 908 | Declaration of David Waterbury With Exhibit | Defs: Def MIL 1, 11, FRE 802. | | |
| 909 | Declaration of Francis Malofiy With Exhibit | Defs: improper testimony by counsel at trial; FRE 602, 802; Defs MIL #1, #2, #5. | | |
| 910 | Declaration of Larry Knight With Exhibit | Defs: Defs MIL # 1, #10, #11, FRE 802, 401-02, 403, 802. | | |
| 911 | Declaration of Barry Hansen With Exhibit | Defs: Defs MIL # 3, FRE 802, 401-02, 403, 602. | | |
| 912 | Declaration of Bruce Pates With Exhibit | Defs: FRE 401-02, 701, no expert disclosure provided, failure to comply with FRCP 26(a)(2). | | |
| 913 | Declaration of Jay Ferguson With Exhibit | Defs: Defs MIL # 3, FRE 401-02, 701, no expert disclosure provided, failure to comply with FRCP 26(a)(2). | | |
| 914 | Declaration of | Defs: FRE 401-02, 403, 602, 1002, | | |

| | | | | |
|---|---|---|---|---|
| | Michael Skidmore With Exhibit | 802, failure to produce documents, FRCP 37(c)(1). | | |
| 915 | Declaration of Mike Lee With Exhibit | Defs: Def MIL 1, 10, FRE 802, FRCP 26(a), 26(e), 37(c)(1). | | |
| 916 | Declaration of Robert Lee With Exhibit | Defs: Def MIL 1, 10, FRE 802, FRCP 26(a), 26(e), 37(c)(1). | | |
| 917 | Declaration of Mark Andes With Exhibit | Defs: Def MIL 3, FRE 401-02, 602, 1002. | | |
| | **All Defendants' Expert Reports & Declarations With Exhibits** | | | |
| 918 | Defendants' Expert Report, CV/ Resume, Audio/Visual Exhibit - Lawrence Ferrara | | | |
| 919 | Defendants' Expert Declaration, CV/ Resume, Audio/Visual Exhibit - Lawrence Ferrara | | | |
| 920 | Defendants' Expert Report, CV/ Resume, Audio/Visual Exhibit – Rob Mathes | | | |
| 921 | Defendants' Expert Declaration, CV/ Resume, Audio/Visual | | | |

| | | | | |
|---|---|---|---|---|
| | Exhibit – Rob Mathes | | | |
| | **Declarations** | | | |
| 922 | Declaration of James Patrick Page | Defs: failure to identify which declaration; FRE 401-02, 403. | | |
| 923 | Declaration of Robert Anthony Plant | Defs: failure to identify which declaration; FRE 401-02, 403. | | |
| 924 | Declaration of John Paul Jones | Defs: failure to identify which declaration; FRE 401-02, 403. | | |
| 925 | Declaration of Helene Freeman | Defs: failure to identify which declaration; FRE 401-02, 403. | | |
| 926 | Declaration of Peter J. Anderson | Defs: failure to identify which declaration; FRE 401-02, 403. | | |
| | **Plaintiffs' Document Production to Defendants** | | | |
| 927 | 2015.08.10 - LED ZEPPELIN - DISCO - COPYRIGHT REGISTRATIO N - STAIRWAY TO HEAVEN | Defs: FRE 401-02, 1002. | | |
| 928 | 2015.08.10 - LED ZEPPELIN - DISCO - COPYRIGHT REGISTRATIO N - TAURUS | Defs: FRE 1002. | | |
| 929 | 2015.08.10 - LED ZEPPELIN - DISCO - TRUST DOCUMENTS - CERTIFICATI ON OF TRUST EXISTENCE AND | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | AUTHORITY (05.13.2008) | | | |
|---|---|---|---|---|
| 930 | 2015.08.10 - LED ZEPPELIN - DISCO - TRUST DOCUMENTS - JUDGMENT ESTABLISHING FACTS (02.19.2002) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 931 | 2015.08.10 - LED ZEPPELIN - DISCO - TRUST DOCUMENTS - ORDER TO CREATE AND FUND TRUST (02.19.2002) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 932 | 2015.08.10 - LED ZEPPELIN - DISCO - TRUST DOCUMENTS - RANDY CRAIG WOLFE TRUST - 5TH AMENDMENT (05.13.2008) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 933 | 2015.08.10 - LED ZEPPELIN - DISCO - TRUST DOCUMENTS - RANDY CRAIG WOLFE TRUST (02.26.2002) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

83

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

270

| | 934 | 2015.08.13 - LED ZEPPELIN - Plaintiff's Initial Disclosures | Defs: FRE 401-02, 403, 802. | | |
|---|---|---|---|---|---|
| | 935 | 2015.08.10 – LED ZEPPELIN – Defendants' Initial Disclosures | | | |
| | 936 | 2015.08.16 - LED ZEPPELIN - DISCO - LOU ADLER - HOLLENBEC K - ROYALTIES (01.01.2014 - 06.30.2014) | Defs: FRE 401-02, 403, 802. | | |
| | 937 | 2015.08.16 - LED ZEPPELIN - DISCO - LOU ADLER - HOLLENBEC K - ROYALTIES (07.01.2011 - 12.31.2011) | Defs: FRE 401-02, 403, 802. | | |
| | 938 | 2015.08.16 - LED ZEPPELIN - DISCO - LOU ADLER - HOLLENBEC K - ROYALTIES (07.01.2013 - 12.31.2013) | Defs: FRE 401-02, 403, 802. | | |
| | 939 | 2015.08.16 - LED ZEPPELIN - DISCO - LOU ADLER - HOLLENBEC K - | Defs: FRE 401-02, 403, 802. | | |

| | | | | |
|---|---|---|---|---|
| | ROYALTIES (07.01.2014 - 12.31.2014) | | | |
| 940 | 2015.09.28 - LED ZEPPELIN - DISCO - PLT CHART OF SPIRIT CONCERTS (1967-1971) | Defs: FRE 901, 602, 802, 805. | | |
| 941 | 2015.09.28 - LED ZEPPELIN - DISCO - ASCAP & BMI STATMENTS - BEFORE & AFTER LAWSUIT | Defs: FRE 401-02, 403, 802. | | |
| 942 | 2015.09.28 - LED ZEPPELIN - DISCO - CONTRACT - WRITER GETS ROYALTIES | Defs: FRE 401-02, 403, 802. | | |
| 943 | 2015.09.28 - LED ZEPPELIN - DISCO - PLANT CRASH AFTER SPIRIT UK SHOW - NEW MUSICAL EXPRESS - (2.7.1970) | Defs: duplicative exhibit. | | |
| 944 | 2015.09.28 - LED ZEPPELIN - DISCO - PLT CHART OF SPIRIT CONCERTS (1967-1971) | Defs: FRE 901, 602, 802, 805. | | |

| | | | | |
|---|---|---|---|---|
| | 945 | 2015.09.28 - LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - SEATTLE POP FESTIVAL (1969) | Defs: failure to identify, potentially duplicative; objections reserved. | | |
| | 946 | 2015.09.28 - LED ZEPPELIN - DISCO - SPIRIT CONCERTS - UK | Defs: failure to identify, potentially duplicative; objections reserved. | | |
| | 947 | 2015.09.28 - LED ZEPPELIN - DISCO - WORLDWIDE DISTRIBUTION | Defs: failure to identify, potentially duplicative; objections reserved. | | |
| | | **Docketed Stipulated Protective Order** | Defs: FRE 401-02, 403. | | |
| | 948 | Pates Email - 2014.05.21 - EMAIL - Fwd_ Take a look_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 949 | Pates Email - 2014.09.14 - EMAIL - Fwd_ Taurus Update_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | 950 | Pates Email - 2014.10.17 - EMAIL - Fwd_ SPIRIT - One _ LED ZEPPELIN - | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

| | | | | |
|---|---|---|---|---|
| | Zero_Redacted | objections reserved. | | |
| 951 | Pates Email - 2014.10.22 - EMAIL - Fwd_ And it goes on..._Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 952 | Pates Email - 2014.10.22 - EMAIL - Fwd_ SPIRIT Article_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 953 | Pates Email - 2014.12.11 - EMAIL - Fwd_ Latest_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 954 | Pates Email - 2015.02.05 - EMAIL - JAY - Fwd_ SPIRIT Lawsuit Update_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 955 | Pates Email - 2015.02.15 - EMAIL - JAY - Fwd_ Rhino SPIRIT Primer_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 956 | Pates Email - 2015.05.08 - EMAIL - Fwd_ SPIRIT 2 LED ZEPPELIN 1_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| 957 | Pates Email - 2015.05.11 - EMAIL - Fwd_ Hi Bruce_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 958 | Pates Email - 2015.05.21 - EMAIL - Fwd_ Randy California_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 959 | Pates Email - 2015.06.16 - EMAIL - JAY - Fwd_ Legal bonfire_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 960 | Pates Email - 2015.08.04 - EMAIL - Fwd_ SPIRIT Court Date_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 961 | Pates Email - 2015.12.05 - EMAIL - JAY - Fwd_ Led Zeppelin Subpoenas_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 962 | Pates Email - 2015.12.12 - EMAIL - Fwd_ SPIRIT - 2 LED ZEPPELIN - 1_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 963 | Pates Email - 2015.12.12 - EMAIL - Quinn E-Mails Regarding Guitar Etc. | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as | | |

| | | | | |
|---|---|---|---|---|
| | (with exhibits)_Redacted | objections reserved. | | |
| 964 | Pates Email - 2015.12.12 - EMAIL- Fwd_ Hi Bruce_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 965 | Pates Email - 2015.12.30 - EMAIL - Fwd_ Randy California_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 966 | Pates Email - 2014.05.22 - EMAIL - Fwd_ Randy California_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 967 | Pates Email - 2015.06.16 - EMAIL - Fwd_ Legal bonfire_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 968 | Pates Email - 2015.12.09 - EMAIL - Fwd_ Randy California Confrontation with Jimmy Page_Redacted | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 969 | 2016.01.20 - LED ZEPPELIN - DISCO - PRIVILEGE LOG (SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

89

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

276

| | | | | |
|---|---|---|---|---|
| 970 | 2016.01.20 - LED ZEPPELIN - DISCO - DOCUMENT PRODUCTION (SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 971 | 05.21.2014 - Take a look - photo | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 972 | 2016.01.20 - LED ZEPPELIN - DISCO - TRANSCRIPT OF PHONE CALL - TRACY LONGO | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 973 | LED ZEPPELIN - DISCO - CONTRACT - RECORD DEAL (LOU ADLER - ODE RECORDS) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 974 | LED ZEPPELIN - DISCO - CONTRACT - SONGWRITIN G (LOU ADLER - HOLLENBEC K) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 975 | SERVED - ZEPPELIN - LETTER TO ADLER RE NOTICE OF LAWSUIT - 7.29.14 | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| 976 | Dave Waterbury Telephone Transcript | Defs: Defs MIL # 1, 11, FRE 802. | | |
| 977 | 2016.02.12 - LED ZEPPELIN - Plaintiff's Amended Disclosures | Defs: FRE 401-02, 403, 802. | | |
| 978 | 2016.02.11 - Supplemental Document Production of Plaintiff | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 979 | 2016.02.11 – Quinn Wolfe Receipt of Notification and MySpace Photo | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 980 | LED ZEPPELIN - DISCO - CITE - FAC - 43 - GET THE LED OUT - DENNY SOMACH | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 981 | LED ZEPPELIN - DISCO - CONTRACT - ACTUAL WRITER GETS SONGWRITING ROYALTIES (9.29.94) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 982 | LED ZEPPELIN - DISCO - CONTRACT - BAND SHARES SONGWRITING ROYALTIES | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| | (1967) | | | |
| 983 | LED ZEPPELIN - DISCO - LED ZEPPELIN PLAYING SPIRIT SONG - FRESH GARBAGE (SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 984 | LED ZEPPELIN - DISCO - PAGE - INTERVIEW - ZIGZAG MAGAZINE - PETE FRAME (11.1972)(SERVED) | Defs: Defs MIL # 2, FRE 401-02, 403, 802, 805. | | |
| 985 | LED ZEPPELIN - DISCO - SKIDMORE - REVIEW - DR. SARDONICUS (SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 986 | LED ZEPPELIN - DISCO - SKIDMORE - REVIEW - RELIX - (1997)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 987 | LED ZEPPELIN - DISCO - SKIDMORE - REVIEW - RELIX - OBITUARY (1982)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

| | | | | |
|---|---|---|---|---|
| 988 | LED ZEPPELIN - DISCO - SKIDMORE - REVIEW - RELIX (1993)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 989 | LED ZEPPELIN - DISCO - SPIRIT - INTERVIEW - ROCK PAGE - STEVEN REINER (5.10.1971)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 990 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - 1ST SHOW - DENVER, CO (12.26.1968)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 991 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - ATLANTA POP FESTIVAL (1969)(SERVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 992 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - NORTHERN CALIFORNIA ROACK | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |

93

| | | | | |
|---|---|---|---|---|
| | FESTIVAL - SAN JOSE, CA (5.23.24.1969)( SERVED) | | | |
| 993 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - OLYMPIA STADIUM - DETROIT, MI (5.16.1969)(SE RVED) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 994 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - SEATTLE POP FESTIVAL (1969)(SERVE D) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 995 | LED ZEPPELIN - DISCO - SPIRIT & LED ZEPPELIN CONCERT - TEXAS POP FESTIVAL (1969)(SERVE D) | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| 996 | Guitar World - December 1993 Issue with interview of James Patrick Page | Defs: Defs MIL #3, #5, FRE 407, 408, 401-02, 403, 404 | | |
| 997 | 2016.01.20 - LED ZEPPELIN - DISCO - IMAGE SCAN OF CDS | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, | | |

| | | (SERVED) | objections reserved. | | |
|---|---|---|---|---|---|
| | 998 | Album - Led Zeppelin (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 999 | Album - Led Zeppelin II (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1000 | Album – Led Zeppelin III (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1001 | Album – Untitled album known as Led Zeppelin IV (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1002 | Album – Houses of the Holy (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1003 | Album – Physical Graffiti (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1004 | Album – Presence (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| | 1005 | Album – In Through the Out Door (as originally | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |

| | | | | |
|---|---|---|---|---|
| | released to public) | | | |
| 1006 | Album – Coda (as originally released to public) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1007 | Album - Led Zeppelin (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1008 | Album - Led Zeppelin II (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1009 | Album – Led Zeppelin III (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1010 | Album – Untitled album known as Led Zeppelin IV (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1011 | Album – Houses of the Holy (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1012 | Album – Physical Graffiti (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1013 | Album – Presence (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1014 | Album – In Through the Out Door (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |
| 1015 | Album – Coda (as rereleased with credits changed) | Defs: Defs MIL # 5, FRE 407, 408, 401-02, 403, 404. | | |

| | 1016 | Album – Spirit by Spirit | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
|---|---|---|---|---|---|
| | 1017 | Albums by Spirit pressed and distributed in multiple countries | Defs: Defs MIL # 3, FRE 401-02, 403. | | |
| | | **All Discovery Plaintiffs and Defendants** | Defs: failure to identify the exhibit, despite requests, making it impossible to specify objections; potentially duplicative of other exhibits, in which case objections as to those exhibits apply; otherwise, objections reserved. | | |
| | | **Def First Set and Responses** | | | |
| | 1018 | Defs. Combined Request for Production (Set One) (8/14/2015) | Defs: FRE 401-02, 403. | | |
| | 1019 | Defs. Super Hype Publishing Interrogatories (Set One) (8/14/2015) | Defs: FRE 401-02, 403. | | |
| | 1020 | Defs. Combined Request for Admissions (Set One) (8/14/2015) | Defs: 401-02, 403. | | |
| | 1021 | Plt. Answer to Defs. Combined Requests for Admission Set One (9/16/2015) | Defs: if offered by pltlf, FRE 802. | | |
| | 1022 | Plt. Answer to Defs. Combined Docs Set One (9/16/2015) | Defs: if offered by pltlf, FRE 802. | | |
| | 1023 | Plt. Answer to Def. Super Hype Publishing | Defs: if offered by pltlf, FRE 802. | | |

| | | | | |
|---|---|---|---|---|
| | Interrogatories Set One (9/16/2015) | | | |
| 1024 | Plt. Amended Answer to Defs. Combined Requests for Admission Set One (10/20/2015) | Defs: if offered by pltlf, FRE 802. | | |
| 1025 | Plt. Amended Answer to Defs. Combined Doc Requests Set One (10/20/2015) | Defs: if offered by pltlf, FRE 802. | | |
| 1026 | Plt. Amended Answer to Def. Super Hype Publishing Interrogatories Set One (10/20/2015) | Defs: if offered by pltlf, FRE 802. | | |
| 1027 | Plt. Second Amended Response to Super Hype Interrogatories Set One (12/7/2015) | Defs: if offered by pltlf, FRE 802. | | |
| | **Def Second Set and Responses** | | | |
| 1028 | Def. Combined Request for Production Set Two (8/28/2015) | Defs: FRE 401-02, 403. | | |
| 1029 | Def. Super Hype Publishing Interrogatories Set Two (8/28/2015) | Defs: FRE 401-02, 403. | | |
| 1030 | Plt. Amended Answer to Super Hype Docs Set Two | Defs: if offered by pltlf, FRE 802. | | |

| | | | | | |
|---|---|---|---|---|---|
| 1<br>2<br>3 | 1031 | Plt. Amended Answer to Super Hype Interrogatories Set Two | Defs: if offered by pltlf, FRE 802. | | |
| 4<br>5<br>6 | 1032 | Plt. Amended Answer to Defs. Combined Docs Set Two (10/20/2015) | Defs: if offered by pltlf, FRE 802. | | |
| 7<br>8<br>9 | 1033 | Plt. Amended Answer to Super Hype Interrogatories Set Two (10/20/2015) | Defs: if offered by pltlf, FRE 802. | | |
| 10<br>11 | | **Def Dec Discovery Requests** | | | |
| 12<br>13<br>14 | 1034 | Def. Joint Request for Production Set Three (12/4/2015) | Defs: FRE 401-02, 403. | | |
| 15<br>16<br>17 | 1035 | Def. Joint Request for Admissions Set Two (12/4/2015) | Defs: 401-02, 403. | | |
| 18<br>19<br>20<br>21 | 1036 | Def. Warner/Chappell Interrogatories Set Two (12/4/2015) | Defs: 401-02, 403. | | |
| 22<br>23<br>24 | 1037 | Plt. Response to Combined Defs. Request for Production Set Three (2/5/2016) | Defs: if offered by pltlf, FRE 802. | | |
| 25<br>26<br>27 | 1038 | Plt. Response to Combined Defs. Requests for Admissions Set Two (2/5/2016) | Defs: if offered by pltlf, FRE 802. | | |
| 28 | | | | | |

| | | | | |
|---|---|---|---|---|
| 1039 | Plt. Response to Warner Chappell Interrogatories Set Two (2/5/2016) | Defs: if offered by pltlf, FRE 802. | | |
| | **Plt. Requets and Responses** | | | |
| 1040 | Plt Interrogatories to Page (10/13/2015) | | | |
| 1041 | Plt Interrogatories to Plant (10/13/2015) | | | |
| 1042 | Plt Interrogatories to Jones (10/13/2015) | | | |
| 1043 | Plt Interrogatories to Warner Music Group Corp. (10/13/2015) | | | |
| 1044 | Plt Interrogatories to Super Hype Publishing, Inc. (10/13/2015) | | | |
| 1045 | Plt Interrogatories to Warner/Chappell Music, Inc. (10/13/2015) | | | |
| 1046 | Plt Interrogatories to Atlantic Recording Corp. (10/13/2015) | | | |
| 1047 | Plt Interrogatories to Rhino Entertainment | | | |

|  |  |  |  |  |
|---|---|---|---|---|
|  | (10/13/2015) |  |  |  |
| 1048 | Def. Page Response to Interrogatories (11/23/2015) |  |  |  |
| 1049 | Def. Plant Response to Interrogatories (11/23/2015) |  |  |  |
| 1050 | Def. Jones Response to Interrogatories (11/23/2015) |  |  |  |
| 1051 | Def Warner Music Group Response to Interrogatories (11/23/2015) |  |  |  |
| 1052 | Def. Super Hype Publishing Response to Interrogatories (11/23/2015) |  |  |  |
| 1053 | Def. Warner/Chappell Music Response to Interrogatories (11/23/2015) |  |  |  |
| 1054 | Def. Atlantic Recording Corp. Response to Interrogatories (11/23/2015) |  |  |  |
| 1055 | Def. Rhino Entertainment Response to Interrogatories (11/23/2015) |  |  |  |
| 1056 | Def. Page Supp. Response to Interrogatories (1/5/2016) |  |  |  |

| | 1057 | Def. Plant Supp. Response to Interrogatories (1/5/2016) [Blietz458] | | | |
|---|---|---|---|---|---|
| | 1058 | Def. Jones Supp. Response to Interrogatories (1/5/2016) | | | |
| | 1059 | Def. Warner/Chappell Music Supp. Response to Interrogatories (1/26/2016) | | | |
| | 1060 | Def. Atlantic Recording Corp. Supp. Response to Interrogatories (1/26/2016) | | | |
| | 1061 | Def. Rhino Entertainment Supp. Response to Interrogatories (1/26/2016) | | | |
| | 1062 | Plt Requests for Doc. Production to Page (10/13/2015) | | | |
| | 1063 | Plt Requests for Doc. Production to Plant (10/13/2015) | | | |
| | 1064 | Plt Requests for Doc. Production to Jones (10/13/2015) | | | |
| | 1065 | Plt Requests for Doc. Production to Warner Music Group Corp. (10/13/2015) | | | |

{00255828;1}

102

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

289

| | | | | | |
|---|---|---|---|---|---|
| 1066 | Plt Requests for Doc. Production to Super Hype Publishing, Inc. (10/13/2015) | | | | |
| 1067 | Plt Requests for Doc. Production to Warner/Chappell Music, Inc. (10/13/2015) | | | | |
| 1068 | Plt Requests for Doc. Production to Atlantic Recording Corp. (10/13/2015) | | | | |
| 1069 | Plt Requests for Doc. Production to Rhino Entertainment (10/13/2015) | | | | |
| 1070 | Def. Combined Omnibus Response to Request for Production (11/23/2015) | | | | |
| 1071 | Def. Supplemental Response to Request for Production (12/29/2015) | | | | |
| | **Plt. Second Document Request and Answer** | | | | |
| 1072 | Plt Request for Production to All Defendants (1/8/2016) | | | | |
| 1073 | Def. Joint Response to Plt Request for Production (2/8/2016) | | | | |

| | Docket/Pleadings | | | |
|---|---|---|---|---|
| 3001 | COMPLAINT against All Defendants (Filing fee $ 400 receipt number 102000.), filed by MICHAEL SKIDMORE. (Attachments: # 1 Civil Cover Sheet, # 2 Case Management Track Form, # 3 Designation Form)(ks, ) [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 06/02/2014) *(FILED 05/31/2014) (ECF No. 1)* | Defs: Defs MIL # 1, # 2, # 3, # 5, # 8, #14; FRE 401-02, 403, 404, 407, 408, 701-05, 802 & 805; assertions as to substantial similarity barred by failure to timely provide expert disclosures as to relevant work (1967 transcription), FRCP 26(a), 26(e) & 37(c)(1). | | |
| 3002 | Disclosure Statement Form pursuant to FRCP 7.1 by MICHAEL SKIDMORE.(ks,) [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 06/02/2014) *(FILED 05/31/2014) (ECF No. 2)* | Defs: FRE 401-02, 403. | | |

| | | | | |
|---|---|---|---|---|
| 3003 | Copy of Form to Register of Copyrights. (ks, ) [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 06/02/2014) *(FILED 05/31/2014) (ECF No. 3)* | Defs: FRE 401-02, 403. | | |
| 3004 | PRAECIPE to Issue Alias Summons *for defendants Led Zeppelin, James Patrick Page, Robert Anthony Plant, John Paul Jones, Super Hype Publishing, Inc., and Warner Music Group Corp.* by MICHAEL SKIDMORE. (MALOFIY, FRANCIS) Modified on 7/21/2014 (nd, ). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 07/21/2014) *(FILED 07/10/2014) (ECF No. 4)* | Defs: FRE 401-02, 403. | | |

| | | | | |
|---|---|---|---|---|
| 3005 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie by Personal Service on 7 31-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 5)* | Defs: FRE 401-02, 403. | | |
| 3006 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Jeo Bertie who is designated by law to accept service of process on behalf of James Patrick Page by Personal Service on 731-14, answer due | Defs: FRE 401-02, 403. | | |

| | | | | |
|---|---|---|---|---|
| 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 6)* | | | | |
| 3007 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclosure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Robert Anthony Plant by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED* | Defs: FRE 401-02, 403. | | |

| | | | | |
|---|---|---|---|---|
| | *08/05//2014)* *(ECF No. 7)* | | | |
| 3008 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf on John Paul Jones by Personal Service on 7 31-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 8)* | Defs: FRE 401-02, 403. | | |

| | 3009 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Super Hype Publishing Inc. by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 9)* | Defs: FRE 401-02, 403. | | |
| --- | --- | --- | --- | --- | --- |
| | 3010 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Elena Bou who is designated by | Defs: FRE 401-02, 403. | | |

296

| | | | | |
|---|---|---|---|---|
| | law to accept service of process on behalf of Super Hype Publishing, Inc. by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 10)* | | | |
| 3011 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Warner Music Group Corp. by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) | Defs: FRE 401-02, 403. | | |

{00255828;1}

| | | | | |
|---|---|---|---|---|
| | Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 11)* | | | |
| 3012 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Warner Chappell Music, Inc. by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *FILED 08/05//2014)* | Defs: FRE 401-02, 403. | | |

| | | | | |
|---|---|---|---|---|
| *(ECF No. 12)* | | | | |
| 3013 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Rhino Entertainment by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) *(FILED 08/05//2014) (ECF No. 13)* | Defs: FRE 401-02, 403. | | |

299

| | | | | |
|---|---|---|---|---|
| 3014 | AFFIDAVIT of Service by Thomas Crean, Jr. re: served Complaint, Disclousure Statement, Report re: Copyright Case upon Joe Bertie who is designated by law to accept service of process on behalf of Atlantic Recording Corp. by Personal Service on 731-14, answer due 8/21/14. (MALOFIY, FRANCIS) Modified on 8/6/2014 (md). [Transferred from Pennsylvania Eastern on 5/11/2015.] (Entered: 08/05/2014) ***FILED 08/05//2014) (ECF No. 14)*** | Defs: FRE 401-02, 403. | | |
| 3015 | AFFIDAVIT of Service by Albert G. Mentz re: served Complaint, Disclousure Statement, Report upon Amy McLaren, Manager, who is designated by | Defs: FRE 401-02, 403. | | |

113

PLAINTIFF'S SUPPLEMENTAL EXHIBIT LIST

300