# Nos. 16-56057 & 16-56287

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

---

## MICHAEL SKIDMORE,
### AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
#### PLAINTIFF, APPELLANT AND APPELLEE

vs.

## LED ZEPPELIN, *ET AL.*
### DEFENDANTS AND APPELLEES
#### AND

## WARNER/CHAPPELL MUSIC, INC.,
### DEFENDANT, APPELLEE AND APPELLANT

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO.15-cv-03462 RGK (AGRx)

---

## WARNER/CHAPPELL MUSIC, INC.'S REPLY BRIEF

---

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON,
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANT, APPELLEE AND
APPELLANT WARNER/CHAPPELL MUSIC, INC.,
AND DEFENDANTS AND APPELLEES

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT .....................................................................................2

1. THE DISTRICT COURT'S DENIAL OF WARNER/CHAPPELL'S MOTION FOR ATTORNEYS' FEES ...........................................2

   (a) The District Court's Application of the *Fogerty* Factors ....................2

      (1) Degree of Success: Skidmore Concedes this Factor..................2

      (2) Frivolousness and Objective Unreasonableness: Skidmore Fails to Rebut that the District Court Erred in Concluding these Two Factors Cut Against a Fee Award ...........................2

         i. *Rather than Presenting "Novel Issues," Skidmore's Claims and Positions Contradicted Black Letter Copyright Law* ...............................................................3

            a. It Was Frivolous and Unreasonable for Skidmore to Dispute that the *Taurus* Deposit Copy Is the Copyrighted Work .............................3

               i. A Registered Copyright Protects the Copyrighted Work .......................................4

               ii. None of the Authorities Skidmore Cites Support His Incorrect View of the Law.......7

            b. It Was Frivolous and Unreasonable for Skidmore to Argue that Copyright Protects Public Domain Elements......................................11

            c. Frivolousness and Unreasonableness Are Not Limited to the Day an Action Is Filed.................13

            d.    *Skidmore's Claimed Reliance on His Experts Was Unreasonable* ...................................14

    *ii.*    *The Jury's Verdict Did Not Establish that Skidmore's Claims and Positions Were Reasonable* ......16

    *iii.*    *The Summary Judgment Ruling Also Did Not Establish that Skidmore's Claims and Positions Were Reasonable* ............................................................16

    *iv.*    *The Jury Instructions Are Not Why Skidmore Lost* ........17

    *v.*    *The Award of Attorneys' Fees is Not Cabined by a Requirement of Frivolousness* ........................................19

    *vi.*    *Warner/Chappell Did Not Waive the District Court's Errors* ...............................................................20

  (3)    Motivation: Skidmore Ignores the District Court's Error of Law in Concluding this Factor Cut Against the Award of Attorneys' Fees ...................................................................22

  (4)    Compensation and Deterrence ..................................................23

    *i.*    *The District Court Correctly Concluded that Compensation Cut in Favor of Awarding Fees* ..............23

    *ii.*    *Skidmore Ignores the District Court's Error of Law in Concluding that Deterrence Only Slightly Favored the Award of Fees* .............................................................24

(b)    Skidmore's Outrageous Litigation Misconduct ..................................25

  (1)    Under *Kirtsaeng*, Litigation Misconduct Is an Independent Basis to Award Attorneys' Fees ................................................25

  (2)    Skidmore Cannot Sidestep Responsibility for His Litigation Misconduct by Blaming His Counsel ......................................26

(3) There Is No Merit to Skidmore's Scurrilous Claim that
Misconduct by Defendants Is an Alternative Basis to
Affirm the Denial of Attorneys' Fees ........................................27

    *i.*   *Defendants Had a Legitimate Basis to Contest
Access* ...........................................................................28

    *ii.*   *There Were Substantial Grounds to Dispute
Skidmore's Standing to Sue* ...........................................29

    *iii.*   *Skidmore's Accusation that Defendants Colluded
with Hollenbeck Music Is Pure Fiction* .........................29

    *iv.*   *There Was No Hidden Conflict of Interest* ....................30

c. The District Court's Denial of Attorneys' Fees Did Not
Further the Policies of the Copyright Act ...........................................31

2. THE DISTRICT COURT'S DENIAL OF WARNER/CHAPPELL'S
MOTION FOR ADDITIONAL COSTS ......................................................33

3. CONCLUSION.................................................................................................33

ADDENDUM ........................................................................................................37

Copyright Act of 1909 ..............................................................................38

    Section 1. ......................................................................................38

    Section 3 ........................................................................................40

    Section 7 ........................................................................................41

    Section 10 ......................................................................................41

    Section 11 ......................................................................................41

    Section 12 ......................................................................................41

Copyright Act of 1976 ..............................................................................43

    Section 101 ....................................................................................43

    Section 103 ....................................................................................43

    Section 106 ....................................................................................44

Section 302 ........................................................................44

Section 303 ........................................................................45

Section 408 ........................................................................45

Section 502 ........................................................................45

Section 503 ........................................................................46

Section 504 ........................................................................46

Section 505 ........................................................................49

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ABKCO Music, Inc. v. LaVere*, 217 F.3d 684 (9th Cir. 2000)........................... 5, 10

*Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014)....................................... 4-5

*Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946)........................................................5

*Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138 (9th Cir. 2009)..............28

*Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223

   (9th Cir. 1998) ......................................................................................................11

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267

   (6th Cir. 2009) ........................................................................................................9

*California ex rel. Dep't of Toxic Substances Control v. Campbell*,

   138 F.3d 784 (9th Cir. 1998) ...............................................................................20

*Caliga v. Inter Ocean Newspaper Co.*, 215 U.S. 182 (1909) ....................................5

*Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174 (D. Or. 2016)...............26

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149

   (2d Cir. 2003) .......................................................................................................30

*Fahmy v. Jay Z*, No. 207CV05715CASPJWX, 2015 WL 5680299

   (C.D. Cal. Sept. 24, 2015) .................................................................................. 7-8

*Fame Pub. Co. v. Alabama Custom Tape, Inc.*, 507 F.2d 667

   (5th Cir. 1975) ......................................................................................................10

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996)..................................... 19, 32

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ............................12

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ........................................................32

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003)..................................................32

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CV13-00496SOM/BMK,

   2015 WL 5601853 (D. Haw. Sept. 23, 2015).......................................................14

*Goldstein v. California*, 412 U.S. 546 (1973)..................................................... 9, 10

*Graham-Sult v. Clainos*, 756 F.3d 724 (9th Cir. 2014) ...........................................15

*Hall v. Cole*, 412 U.S. 1 (1973) ...............................................................................23

*In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996) ...................................20

*Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011) ...............................................22

*Jondora Music Pub. Co. v. Melody Recordings, Inc.*, 506 F.2d 392

   (3d Cir. 1974) ........................................................................................................10

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ................. 19, 25, 33

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962).............................................................26

*Loomis v. Cornish*, 836 F.3d 991 (9th Cir. 2016)....................................................28

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010) ......................27

*Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108 (9th Cir. 2013) .................... 20, 31

*Neitzke v. Williams*, 490 U.S. 319 (1989)...................................................................7

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004) ...............................................13

*Ortiz v. Jordan*, 562 U.S. 180 (2011) ......................................................................20

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) ............... 6, 22, 25

*Quality King Distrib., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135

   (1998)........................................................................................................................4

*Ray Charles Found. v. Robinson*, 795 F.3d 1109 (9th Cir. 2015)...........................29

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980)...................................................23

*Russell v. Price*, 612 F.2d 1123 (9th Cir. 1979) ........................................................6

*Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986) ..........................................7

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) .......................23

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996)......................................................19

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273 (9th Cir. 2013)........ 7, 13

*Spanski Enter., Inc. v. Telewizja Polska S.A.*, No. 12-CV-957(TSC),

   2017 WL 4404281 (D.D.C. Sept. 30, 2017).........................................................26

*Stewart v. Abend*, 495 U.S. 207 (1990) ...................................................................12

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ......................................................16

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)........................8, 9

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) ...............................4

*Unistrut Corp. v. Power*, 280 F.2d 18 (1st Cir. 1960)...............................................5

*Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30 (1939) .......................................10

*Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004JAK,

    2014 WL 7877773 (C.D. Cal. Oct. 30, 2014) ......................................................7

**STATUTES**

    <u>1909 Act</u>

17 U.S.C. § 1 ............................................................................. 3, 4, 9, 10

17 U.S.C § 3 ................................................................................ 11, 12

17 U.S.C. § 7 .....................................................................................5

17 U.S.C. § 10 ..................................................................................10

17 U.S.C. § 11 ..................................................................................10

17 U.S.C. § 12 ......................................................................... 3, 5, 6, 9, 11

    <u>1976 Act</u>

17 U.S.C. § 101 ...............................................................................5, 9

17 U.S.C. § 103 ...............................................................................4, 5

17 U.S.C. § 106 ...............................................................................4, 5

17 U.S.C. § 302 .................................................................................9

17 U.S.C. § 408 ................................................................................30

17 U.S.C. § 502 ................................................................................23

17 U.S.C. § 503 ................................................................................23

17 U.S.C. § 504 ................................................................................23

17 U.S.C. § 505 .......................................................................... 23, 33

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976)..............................................12

**RULES**

Federal Rule of Evidence 1002..................................................................7

Ninth Circuit Rule 30-1.4 .......................................................................27

**TREATISES**

Horace G. Ball, *The Law of Copyright & Literary Property* (1944).......................5

## SUMMARY OF ARGUMENT

Skidmore's Combined Reply Brief and Opening [sic] Brief ("Pltf's RAB") concedes the District Court's legal errors—including the legal error that a change in the law justified Skidmore's belated assertion of a forty-three-year-old claim—in ruling that some *Fogerty* factors cut against awarding Warner/Chappell attorneys' fees and additional costs. And the District Court erred in treating Skidmore's outrageous litigation misconduct as just another *Fogerty* factor. The District Court's errors of law aside, all criteria point directly to awarding Warner/Chappell attorneys' fees and additional costs, as does the most important consideration: furthering the purposes of the Copyright Act. By asserting a meritorious defense and winning on the merits at trial, Warner/Chappell not only protected public access to *Stairway to Heaven*, but reaffirmed the boundaries of copyright and ensured that basic musical building blocks such as descending chromatic scales remain available to the creators of new music.

The District Court's Order denying Warner/Chappell's motions for attorneys' fees and additional costs should be reversed and—since Skidmore did not seriously contest the amount of attorneys' fees and additional costs, suggesting only "cutting" them in some unspecified way (1–SER–44:13-16)—reversed with instructions to grant those motions.

1

# ARGUMENT

## 1. THE DISTRICT COURT'S DENIAL OF WARNER/CHAPPELL'S MOTION FOR ATTORNEYS' FEES

### (a) The District Court's Application of the *Fogerty* Factors

The District Court concluded two *Fogerty* factors—the degree of success and, only slightly, compensation and deterrence—plus Skidmore's litigation misconduct favored awarding attorneys' fees, while three *Fogerty* factors—frivolousness, objective unreasonableness and motivation—cut against that award. 1–SER–6. Warner/Chappell showed that the District Court erred on the law and the record and all of the *Fogerty* factors favor awarding attorneys' fees. Defendants' Answering & Opening Brief ("Defs' AOB") at 82-89, 91-93.

#### (1) Degree of Success: Skidmore Concedes this Factor

Skidmore concedes that because defendants "prevailed on the merits at trial, . . . the degree of success favors granting attorney's fees." 1–SER–4.

#### (2) Frivolousness and Objective Unreasonableness: Skidmore Fails to Rebut that the District Court Erred in Concluding these Two Factors Cut Against a Fee Award

In defendants' combined Answering and Opening Brief, Warner/Chappell showed that Skidmore's claims and positions contradict fundamental copyright

2

principles and the Copyright Acts' provisions and that the District Court erred on the law in concluding, based on the jury's verdict and the denial of summary judgment, that Skidmore's claims were not frivolous or objectively unreasonable. Defs' AOB at 37-48, 84-86. Skidmore fails to rebut Warner/Chappell's showing.

> **i.** **Rather than Presenting "Novel Issues," Skidmore's Claims and Positions Contradicted Black Letter Copyright Law**

In the portion of his combined brief directed to Warner/Chappell's appeal, Skidmore argues that his claims and positions were not frivolous or unreasonable because "novel issues of law were at play." Pltf's RAB at 72. But his claims and positions were not novel, they were wrong.

> **a.** **It Was Frivolous and Unreasonable for Skidmore to Dispute that the *Taurus* Deposit Copy Is the Copyrighted Work**

To obtain the federal copyright that Skidmore sued upon, Hollenbeck Music had to deposit with the Copyright Office "one complete copy" of the "copyrighted work." 17 U.S.C. §§ 1 & 12. To satisfy that requirement, Hollenbeck Music submitted the *Taurus* deposit copy bearing the copyright notice "Hollenbeck Music Co. (c) 1967," which the Copyright Office stamped with the copyright registration number, Eu 35222. Exh. 2058, 2964. Turning a blind eye to these facts, the

3

express language of the 1909 and 1976 Copyright Acts and over a hundred years of case law, Skidmore persistently took the frivolous and unreasonable position that—unlike every other federal copyright in all manner of works—the federal copyright he sued upon protects not the statutorily mandated "complete copy of [the] work" deposited with the Copyright Office, but any number of different versions, including in bootleg recordings by unknown members of Spirit's concert audiences.

### i.        A Registered Copyright Protects the Copyrighted Work

It was frivolous and unreasonable for Skidmore to contend that versions of *Taurus* embodied in pre-February 15, 1972 sound recordings are the musical composition protected by the copyright he sued upon. Those versions are simply not the copyrighted work.

The exclusive rights conferred by a copyright are expressly limited by both the 1909 Act and the 1976 Act to "the copyrighted work." 17 U.S.C. § 1(a)-(e); 17 U.S.C. § 106; *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 154 (1975) ("The Copyright Act of 1909, . . . gives to a copyright holder . . . 'exclusive' rights in his copyrighted works"); *Quality King Distrib., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 138 (1998) (copyright confers "the exclusive right to distribute

copies of <u>a copyrighted work</u>"); *Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2502 (2014) (copyright confers "the 'exclusive righ[t]' to 'perform <u>the copyrighted work</u> publicly'"), *quoting* 17 U.S.C. § 106(4).

<u>The sheet music deposited with a 1909 Act copyright registration is "the copyrighted work" protected by the registered copyright.</u>   17 U.S.C. § 12 (requiring deposit of "one complete copy of [the] work" in which copyright is registered).   The deposited sheet music—typically prepared by the songwriter's music publisher and as complete as the registrant desired—defines the copyrighted work.  Defs' AOB at 35, 43-45; *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (1909 Act accorded copyright in "written score"); *Arnstein v. Porter*, 154 F.2d 464, 469, 475-76 (2d Cir. 1946) (claim litigated based on plaintiff's "written music" and defendant's pianist's recordings prepared for case).

<u>And a copyright protects the copyrighted work, not material added to create other versions.</u>  Defs' AOB at 47; *Caliga v. Inter Ocean Newspaper Co.*, 215 U.S. 182, 189-90 (1909) (copyright limited to copy deposited with first registration); *Unistrut Corp. v. Power*, 280 F.2d 18, 23 (1st Cir. 1960) (claim for infringement of material in uncopyrighted revised version of deposit copy failed because material not in deposit copy); 17 U.S.C. § 7 (new versions do not "extend copyright in [the] original works"); 17 U.S.C. §§ 103(b) (same) & § 101 (definition of "created";

"where the work has been prepared in different versions, each version constitutes a separate work"); Horace G. Ball, *The Law of Copyright & Literary Property* 47 (1944) ("In short, there can never be more than one subsisting copyright on a single version of the same work"). Otherwise, the material protected by a registered copyright would be uncertain and changeable and, *e.g.*, copyright in a novel would extend beyond the novel to also protect the Hollywood ending added in a movie version. *Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) (under "well-established doctrine" applicable to all copyrights, material added to make movie not protected by copyright in underlying novel).

These principles of black-letter copyright law lead inexorably to one and only one possible conclusion: the *Taurus* deposit copy that Hollenbeck Music submitted as the "complete copy of" the work in which copyright was registered (17 U.S.C. § 12) is the copyrighted work protected by the registered copyright that Skidmore sued upon. As such, the *Taurus* deposit copy—not different versions captured in uncopyrighted studio and bootleg recordings—is the reference against which his claim had to be measured. Indeed, the requirement that the "original work must be on file with the Copyright Office," thereby "reduc[ing] the need for extrinsic evidence"—such as, here, studio and bootleg recordings—was a key consideration in the very case Skidmore relied upon to avoid laches as a complete bar. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976-77 (2014).

Neither are recordings of different versions of a composition admissible evidence of the copyrighted work when the copyrighted work—here, the *Taurus* deposit copy—is available. Fed. R. Evid. 1002; *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318-19 (9th Cir. 1986).

There is nothing "novel" about the principle that a registered 1909 Act copyright protects the work deposited with the Copyright Office as the statutorily mandated "complete copy." Arguing otherwise was frivolous and unreasonable. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (claim "frivolous where it lacks an arguable basis either in law or in fact"); *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (claim unreasonable if chance of success "slim to none").

### ii. None of the Authorities Skidmore Cites Support His Incorrect View of the Law

None of the authorities cited by Skidmore prove his claims and positions were not frivolous and unreasonable.

Skidmore relies on the district judge's rulings in the *Blurred Lines* case. Pltf's RAB at 73-74. But that judge expressly rejected the argument that 1909 Act "copyrighted compositions consist of 'the recorded work as performed by [the artist]'" and recognized that 1909 Act deposit copies "define the scope of

7

copyrighted compositions." *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004JAK, 2014 WL 7877773, at *9-10 (C.D. Cal. Oct. 30, 2014); *Fahmy v. Jay Z*, No. 207CV05715CASPJWX, 2015 WL 5680299, at *14 (C.D. Cal. Sept. 24, 2015) (same); Defs' AOB at 50-51. Nor is Skidmore helped by the fact *Williams* allowed experts to interpret the deposit copies: here, the District Court also allowed experts to interpret the *Taurus* deposit copy and Skidmore's expert testified that he and defendants' experts had correctly done so, without implying different music present in the Spirit recordings. Defs' AOB at 17, 51-52; Exh. 525V, 51A, 61A.

In a footnote, Skidmore states "prior courts have permitted the sound recordings to be played in cases applying the 1909 Act." Pltf's RAB at 73 n. 19. But his footnote cites no cases. And he has never cited <u>any case</u> ruling that a 1909 Act musical composition copyright goes beyond the deposit copy to protect additional material in other versions embodied in sound recordings. Defs' AOB at 45-46. Neither is there any case permitting an infringement action to proceed founded upon a work other than that for which registration was secured.

Skidmore relies on *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), but there the issue was whether a deposit copy that differed from a recorded version deprived the district court of subject matter jurisdiction. *Id.* at 480, 486-87. Also, by relying on the plaintiff's expert testimony that the copied

8

material appeared in the 1909 Act deposit copy, *Three Boys* confirmed the deposit copy is the copyrighted work. *Id.* at 486; Defs' AOB at 50.

Skidmore leans heavily on *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267 (6th Cir. 2009), but that case did not even involve a 1909 Act composition. Instead, the plaintiffs' 1982 composition became a "copyrighted work" under the 1976 Act when the composition was "created" by "fix[ing it] in a copy or phonorecord for the first time; . . . ." 17 U.S.C. §§ 101 (definitions of "created" and "fixed") & 302(a) ("Copyright in a work created on or after January 1, 1978, subsists from its creation"); *Bridgeport*, 585 F.3d at 272. In stark contrast, unpublished 1909 Act compositions—like *Taurus*—became copyrighted works only by registration coupled with deposit of "one complete copy of such work" in sheet music form. 17 U.S.C § 12; Defs' AOB at 35. Also, *Bridgeport* confirms copyright protection is limited to the copyrighted work: because the plaintiffs' 1976 Act composition became a copyrighted work when recorded, a different version in "sheet music created long after" was irrelevant. 585 F.3d at 276.

Quoting *Goldstein v. California*, 412 U.S. 546, 565-66 (1973), that "under [17 U.S.C.] § 1(e), records and piano rolls were to be considered as 'copies' of the original composition they were capable of reproducing," Skidmore argues that Section 1(e) put recordings "on equal status with the deposit copy." Pltf's RAB at

14-15, 19-20, 21 n. 4. But *Goldstein* confirmed "the intent of Congress in the 1909 Act was not to accord recordings the same copyright status as a written score, but 'only to establish the limits of *the composer's* right'" to control recordings. *ABKCO*, 217 F.3d at 688, *quoting Goldstein*, 412 U.S. at 566 (emphasis in original); Defs' AOB at 38-39; *Jondora Music Pub. Co. v. Melody Recordings, Inc.*, 506 F.2d 392, 395 (3d Cir. 1974) (Section 1(e) compulsory license "authorizes the use of the copyrighted work, that is, the written score," in further recordings); *Fame Pub. Co. v. Alabama Custom Tape, Inc.*, 507 F.2d 667, 669 (5th Cir. 1975) (under Section 1(e), composition copyright owners "may refuse to allow their copyrighted works, in the form of 'sheet music,' ever to be recorded at all").

Furthermore, Skidmore's assertion that "compositions of songs could be embodied in mechanical records" (Pltf's RAB at 19, 37) only highlights the frivolousness of his position. There is no dispute that, *e.g.*, the bootleg recording of Spirit performing at the Kaleidoscope Theatre on April 5, 1968 (Skidmore's Audio Exhibit 37) embodies a version of *Taurus*. Skidmore's problem—among others—is that it is not the version registered for copyright.

Skidmore also ignores that *Washingtonian Pub. Co. v. Pearson*, 306 U.S. 30 (1939) involved delay in depositing copies of works already copyrighted under the 1909 Act by publication with notice. *Id.* at 33-36; 17 U.S.C. §§ 10-11. In contrast,

*Taurus* and other unpublished works were copyrighted only by deposit of "one complete copy," which the Copyright Office preserved as a record of the copyrighted work. 17 U.S.C. § 12; Defs' AOB at 45-46, 47-48.

Finally, Skidmore argues that the 1909 Act's confirmation that federal statutory copyright extends to "component parts" "in which copyright is already subsisting," refers to subsisting common law copyrights. Pltf's RAB at 18; 17 U.S.C. § 3. But "Congress used the term 'copyright' to refer to statutory copyright in the 1909 Act," not common law copyright. *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1229 (9th Cir. 1998). Further, Skidmore claimed that the registered *Taurus* copyright extended beyond the *Taurus* deposit copy's "component parts," to different music in uncopyrighted recorded versions.

It was frivolous and unreasonable for Skidmore to claim that versions of *Taurus* embodied in pre-February 15, 1972 sound recordings are the copyrighted work protected by the registered 1967 *Taurus* copyright he sued upon.

### b. It Was Frivolous and Unreasonable for Skidmore to Argue that Copyright Protects Public Domain Elements

In the portion of his combined brief directed to Warner/Chappell's appeal, Skidmore argues that defendants contended *Taurus* "only consists of unprotected

11

expression" and he merely disputed defendants' contention.  Pltf's RAB at 69, 70-71.

But rather than arguing *Taurus* contains no protectable expression, defendants showed at trial, and the jury agreed, that what is similar between *Taurus* and *Stairway to Heaven* is a public domain descending chromatic scale and a few scattered notes having no musicological significance.  Defs' AOB at 22-27, 67-69.

Also, rather than just contending *Taurus* contains protectable expression, Skidmore claimed that the *Taurus* copyright protects *Taurus*' public domain elements.  OB at 60-61, 61-62; Defs' AOB at 68-69; VII–ER–1812 (Skidmore's expert: "preposterous" that "minor line clichés"—*i.e.*, descending chromatic scales—and arpeggios are "freely available to all").  And Skidmore's claim that the *Taurus* copyright protects the composition's public domain elements was frivolous and unreasonable.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359 (1991) ("copyright . . . has no effect one way or the other on the copyright or public domain status of the preexisting material"), *quoting* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 57 (1976); 17 U.S.C. § 3; *Stewart v. Abend*, 495 U.S. 207, 234-35 (1990) ("if an author attempts to copyright a novel, *e.g.,* about Cinderella, and the story elements are already in the public domain, the author holds a

12

copyright in the novel, but may receive protection only for his original additions to the Cinderella story"); Defs' AOB at 68-69.

### c. Frivolousness and Unreasonableness Are Not Limited to the Day an Action Is Filed

Skidmore argues that whether his claims and positions were frivolous or unreasonable under *Fogerty* is measured by what he knew or should have known when he filed his case. Pltf's RAB at 72-74. Yet from the beginning he took frivolous and unreasonable positions, including alleging in his complaint that *Stairway to Heaven* copied "tempo, instrumentation, and feel" (XI–ER–2737, ¶ 180), which do not appear in the *Taurus* deposit copy and instead are the sound recordings' performance elements unprotected by the composition copyright (*Newton v. Diamond*, 388 F.3d 1189, 1193-94 (9th Cir. 2004); IV–ER–754:15-18). Indeed, Skidmore never even produced the *Taurus* deposit copy. X–ER–2620:8-11, 2623:15-17. He also knew or should have known when he sued that copyright does not protect public domain elements.

Moreover, Skidmore is wrong that frivolousness and objective unreasonableness are determined only as of the day suit is filed. He relies on the statement in *SOFA* that the plaintiff "should have known from the outset that its chances of success in this case were slim to none." 709 F.3d at 1280. The fact that

knowledge at the outset was present in *SOFA* does not mean it is required. Instead, a claim is objectively unreasonable "if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CV13-00496SOM/BMK, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015). Here, even after the District Court's summary judgment ruling confirmed Skidmore's claim was limited to protectable elements of the *Taurus* deposit copy (I–ER–132-133), Skidmore persisted through motions *in limine* and trial to claim that the registered *Taurus* copyright protects public domain elements and different, recorded versions.

### d.    Skidmore's Claimed Reliance on His Experts Was Unreasonable

Skidmore argues that he reasonably relied on his expert witnesses. Pltf's RAB at 70-71. However, at his instruction they improperly compared *Stairway to Heaven* to recordings of Spirit performances rather than to the copyrighted *Taurus* deposit copy. I–ER–132-133. He also could not have reasonably relied on their mistaken testimony that copyright protects public domain elements.

Neither could Skidmore have reasonably relied on his experts' assertions that the Spirit recordings and *Stairway to Heaven* are "identical." Skidmore admits they are "dissimilar." OB at 11, 19, 21, 40-41; Pltf's RAB at 8-9, 33; Defs' AOB

at 56-57. Indeed, aside from the descending chromatic scale—marked in red, below—and a few random notes, *Stairway to Heaven* and Ode Records, Inc.'s studio recording of Spirit's performance are dramatically different:

Four-measure guitar parts

Top staff = Measures 1-4 in *Taurus* Studio Version;

Bottom staff = Measures 1-4 in *Stairway to Heaven*

FER 650.[1]

---

[1] In their combined brief, defendants raised that Skidmore's Opening Brief failed to identify any compositional differences between the copyrighted *Taurus* deposit copy and the recordings of Spirit performing *Taurus*, and, as a result, Skidmore failed to establish that excluding the recordings at trial prevented him from proving supposedly protected compositional elements. Defs' AOB at 36. In his reply, Skidmore argues differences are established by audio recordings and expert testimony in the record but which his Opening Brief failed to discuss. Pltf's RAB at 32-36. Defendants object that Skidmore cannot wait until his reply to argue a point his Opening Brief omitted. *Graham-Sult v. Clainos*, 756 F.3d 724, 746 n. 14 (9th Cir. 2014).

### ii. The Jury's Verdict Did Not Establish that Skidmore's Claims and Positions Were Reasonable

Warner/Chappell raised that the District Court erred on the law when it stated the jury did not find that Skidmore relied on unprotected elements of the *Taurus* composition. Defs' AOB at 84; 1–SER–4. Skidmore argues that is "ridiculous[ ]" because the verdict does not refer to protected expression. Pltf's RAB at 72. But the jury was instructed that copyright protects original elements, and the verdict form asked whether "original elements of the musical composition Taurus are extrinsically substantially similar to Stairway to Heaven." I–ER–2:9-13, 27-29, 31-33. By answering "No," the jury necessarily found that Skidmore's claimed similarities are not protected. *Swirsky v. Carey*, 376 F.3d 841, 848-49 (9th Cir. 2004) (for the fact-finder, extrinsic test "guid[es] attention toward protected elements and away from unprotected elements of a composition").

### iii. The Summary Judgment Ruling Also Did Not Establish that Skidmore's Claims and Positions Were Reasonable

Warner/Chappell also raised that the District Court erred in relying on its denial of summary judgment to conclude that Skidmore's claims and positions were reasonable. Defs' AOB at 85-86; 1–SER–4.

Skidmore concedes the District Court ignored that it granted summary judgment to three defendants—and also on Skidmore's frivolous Rock-and-Roll history claim—which undercuts the District Court's reliance on its summary judgment ruling as establishing the reasonableness of Skidmore's claims and positions. Defs' AOB at 13-14, 85; I–ER–135. In a footnote, Skidmore argues Warner/Chappell should have raised in its fee motion that summary judgment was granted in part. Pltf's RAB at 71 n. 18. But the partial grant is a point that arose when the District Court cited its summary judgment ruling to deny the fee motion.

Warner/Chappell also raised the District Court's legal error in relying on *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), to conclude that the denial of summary judgment to the remaining defendants cut against frivolousness and unreasonableness even though Skidmore failed to submit any expert testimony as to the *Taurus* deposit copy. Defs' AOB at 85-86. Skidmore does not address, and therefore concedes, that legal error by the District Court.

### iv.    *The Jury Instructions Are Not Why Skidmore Lost*

In the portion of his brief directed to Warner/Chappell's appeal, Skidmore argues that his claims and positions were reasonable but undercut by the District Court's jury instructions on the inverse ratio rule, copyrightable selections and

17

arrangements and originality. Pltf's RAB at 74-75. Skidmore cannot blame the jury instructions for the failure of his frivolous and unreasonable claims.

The evidence did not establish the "high degree of access" that his Opening Brief admitted is necessary for the inverse ratio rule (OB at 71) and, in any event, the inverse ratio rule is no substitute for the required substantial similarity in original expression that is absent here. Defs' AOB at 59-62.

Skidmore also did not present evidence of a copyrightable selection and arrangement constituting an original work of authorship, and his own experts admitted the alleged copying was not—as required by this Circuit's law—virtually identical. *Id.* at 62-63, 64-66.

Further, the District Court properly instructed the jury on originality, including by tracking the Supreme Court's language in *Feist*, 499 U.S. at 348. Defs' AOB at 67-68. Skidmore argues that had the jury been instructed that elements are original if not copied from another work, he would have prevailed because there was no evidence Wolfe copied the descending chromatic scale from a prior work. Pltf's RAB at 49. Actually, the jury <u>was</u> instructed that originality includes that "the author did not copy it from another work." I–ER–31. Also, the trial testimony included multiple examples of descending chromatic scales pre-dating *Taurus*, and that Wolfe was a fan of The Beatles, whose 1965 song,

*Michelle*, has a descending chromatic scale and the same "pitch collection" Skidmore's expert found in *Taurus*. Defs' AOB at 10-11, 17-18, 27. Substantial trial evidence supports that Wolfe copied from *Michelle* or any of a number of other pre-existing compositions. In any event, *Taurus*' public domain elements are unprotected even without a showing they were copied from prior works. *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996).

### v. The Award of Attorneys' Fees is Not Cabined by a Requirement of Frivolousness

Skidmore argues the award of attorneys' fees under the Copyright Act turns on whether his claims or positions were frivolous or unreasonable. Pltf's RAB at 67. But reasonableness is "not the controlling [factor]" (*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016)) and the award of attorneys' fees "is not cabined by a requirement of culpability on the part of the losing party." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996) (award of attorneys' fees against plaintiff who asserted reasonable claim, affirmed because successful defense furthered purposes of Copyright Act).

Skidmore's argument and the District Court's conclusion that objective reasonableness "militates" against the award of attorneys' fees (1–SER–5) "resurrect the long-rejected requirements of frivolousness and bad faith" before

awarding fees to a prevailing defendant, and subordinate "[t]he most important factor in determining whether to award fees under the Copyright Act, . . . whether an award will further the purposes of the Act." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013); Defs' AOB at 86.

### vi. *Warner/Chappell Did Not Waive the District Court's Errors*

Skidmore argues that Warner/Chappell waived the District Court's error in concluding its denial of summary judgment cut against awarding fees, because defendants did not appeal the denial of summary judgment and "it is law of the case . . . ." Pltf's RAB at 75-77. An appeal does not lie directly from the denial of summary judgment (*California ex rel. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 784, 786 (9th Cir. 1998)) or "after a full trial on the merits" (*Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)). And the law of the case doctrine applies only to appellate court rulings. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996). Further, while this Court can affirm the Judgment on any ground supported by the record—including that summary judgment should have been granted—Warner/Chappell instead raised the District Court's legal error in concluding that its denial of summary judgment supported denying attorneys' fees. Defs' AOB at 85-86.

Skidmore also argues that Warner/Chappell's fee motion devoted only "a single sentence" to the lack of merit in his claims and positions and, as a result, waived the issue. Pltf's RAB at 77. Skidmore's "single sentence" assertion simply is not true. 1–SER–77:15-78-10, 83:20-84:13, 85:2-13, 16:1-19, 21:8-15.

Skidmore argues that Warner/Chappell waived the frivolousness and unreasonableness of his claims and positions as to what the registered *Taurus* copyright protected, by not discussing the issue in its "opening brief." Pltf's RAB at 77-78. He ignores that Warner/Chappell and the other defendants filed a combined brief showing his claims and positions are directly contrary to established copyright law. Defs' AOB at 37-41, 42-47, 49-53. There is no requirement that Warner/Chappell repeat that material later in the same combined brief.

Finally, Skidmore also argues that Warner/Chappell failed to state "why, exactly, the court's summary judgment opinion was wrong." Pltf's RAB at 77-78. But Warner/Chappell explained, exactly, the District Court's error in relying on its summary judgment ruling, including that summary judgment was denied even though Skidmore offered no expert testimony as to the *Taurus* deposit copy. Defs' AOB at 85-86.

21

The District Court erred in concluding that the *Fogerty* factors of frivolousness and unreasonableness cut against the award of attorneys' fees.

> **(3)** **Motivation: Skidmore Ignores the District Court's Error of Law in Concluding this Factor Cut Against the Award of Attorneys' Fees**

Warner/Chappell raised that the District Court erred on the law in concluding that Skidmore's assertion of a nearly half-century-old copyright claim did not reflect improper motivation because the claim was barred until 2014, when "the Supreme Court eliminated the equitable defense of laches in copyright claims . . . ." Defs' AOB at 87-88, *quoting* 1–SER–5, *citing Petrella*, 134 S. Ct. at 1967. By failing to address the District Court's erroneous statement of the law, Skidmore concedes that ground for reversal.

Rather than address that legal error, Skidmore quotes the District Court's assertion that he only sought "credit for Randy California, . . . ." Pltf's RAB at 68-69. But Randy Wolfe did not seek credit for himself; Wolfe's mother—the predecessor trustee to Skidmore—did not seek credit for Wolfe; and, forty-three years after the fact, Skidmore demanded $12,000,000 or co-ownership of the *Stairway to Heaven* copyright, neither of which he could have recovered even if he had won. 1–SER–71:7-11, 83:10-16; *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (settlement negotiations may be considered in deciding whether to

22

award attorneys' fees); V–ER–1163:19-1164-24, 1187:11-16 (profits from *Stairway to Heaven* less than 17% of the $12,000,000 Skidmore demanded); 17 U.S.C. §§ 502-05 (remedies for copyright infringement, none of which include credit or part of defendant's copyright); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005) ("Copyright . . . is a creature of statute, and the only rights that exist under copyright law are those granted by statute").

In addition, Skidmore ignores that the District Court's finding that he engaged in extensive litigation misconduct also establishes his improper motivation. Defs' AOB at 88, *citing Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980) ("'bad faith' may be found . . . in the conduct of the litigation"), *quoting Hall v. Cole*, 412 U.S. 1, 15 (1973).

The District Court also erred in concluding the *Fogerty* factor of motivation cut against awarding Warner/Chappell attorneys' fees.

### (4) <u>Compensation and Deterrence</u>

#### *i.* *The District Court Correctly Concluded that Compensation Cut in Favor of Awarding Fees*

The District Court concluded that since Warner/Chappell was unable to rely on its insurance because Skidmore asserted a forty-three-year-old claim, and since Skidmore failed to submit any evidence that the Trust was unable to bear the fee

award, the interest of compensating Warner/Chappell for successfully defending his claim cut in favor of awarding attorneys' fees. 1–SER–6.

Skidmore does not contest that conclusion, but asserts in a footnote that Warner/Chappell "is a multi-billion dollar entertainment company while Plaintiff is a charitable trust that provides what little funds it has to buy instruments for school children." Pltf's RAB at 66 n. 15. Skidmore provides no record citation for either proposition. In fact, he successfully refused to produce any evidence that the Trust is a charity or that any disadvantaged child received even a single penny of the proceeds from Skidmore's sales of twelve albums and forty CDs from Wolfe's storage room full of recordings. 3–SER–618:2-619:7; IV–ER–886:10-21. As a result, the District Court not only excluded at trial the Trust's supposed charitable purpose—an order Skidmore repeatedly violated (Defs' AOB at 14-15, 90; 1–SER–6, 79:13-80:2; II–ER–293:14-16; IV–ER–887:17-891:9)—but also rejected his "claims about the impecunious nature of the trust, . . ." (1–SER–6).

### ii. *Skidmore Ignores the District Court's Error of Law in Concluding that Deterrence Only Slightly Favored the Award of Fees*

As to deterrence, Warner/Chappell raised that the District Court erred on the law by concluding that discouraging stale and meritless claims did not cut in favor of awarding attorneys' fees because no claim could have been asserted until

*Petrella*. Defs' AOB at 88-89; 1–SER–5-6. Skidmore ignores, and thus concedes, the legal error.

### (b)    Skidmore's Outrageous Litigation Misconduct

Skidmore's extensive litigation misconduct ran the gamut from violating orders *in limine* and the California Rules of Professional Responsibility, to offering the jury a photograph cropped to create the false impression that Robert Plant and a former Spirit member had a "relationship over the years." Defs' AOB at 90-91, *quoting* III–ER–434:15-436:22; 1–SER–75:8-82:19, 178-187. Skidmore's shocking contumacy, alone, supported the award of attorneys' fees.

### (1)    Under *Kirtsaeng*, Litigation Misconduct Is an Independent Basis to Award Attorneys' Fees

Warner/Chappell raised that since *Kirtsaeng* identified litigation misconduct as an independent ground to award attorneys' fees under the Copyright Act, the District Court erred in treating it as another *Fogerty* factor. Defs' AOB at 89-90.

Skidmore argues that *Kirtsaeng* refers to "a range of considerations" and litigation misconduct is only one of them. Pltf's RAB at 79-80. But *Kirtsaeng* approved the award of fees "because of a party's litigation misconduct, . . . ." 136 S. Ct. at 1988-89. While no circuit court has yet ruled on the point, at least two district courts have relied on *Kirtsaeng* to award attorneys' fees under the

Copyright Act based solely or primarily on the losing party's litigation misconduct. *Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174, 1182-83 (D. Or. 2016); *Spanski Enter., Inc. v. Telewizja Polska S.A.*, No. 12-CV-957(TSC), 2017 WL 4404281, at *2, 3-4 (D.D.C. Sept. 30, 2017).

Skidmore also argues Warner/Chappell did not show that the ruling on its motion was affected by the District Court's failure to treat litigation misconduct as an independent basis to award attorneys' fees. Pltf's RAB at 80. Yet Warner/Chappell showed that treating litigation misconduct as another *Fogerty* factor diluted it, when instead Skidmore's misconduct, alone, warranted a fee award. Defs' AOB at 89-91.

### (2) Skidmore Cannot Sidestep Responsibility for His Litigation Misconduct by Blaming His Counsel

Skidmore does not seriously dispute his litigation misconduct—he merely refers this Court to unidentified arguments he made below and which the District Court found unavailing—and instead argues he is not responsible for his counsel's malfeasance. Pltf's RAB at 78. But he ignores the case law Warner/Chappell cited. Defs' AOB at 91, *citing Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this

freely selected agent"); *see also Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 616 (9th Cir. 2010). Skidmore also ignores that he admitted he "carefully reviewed this lawsuit at all stages," and that he witnessed first-hand his counsel's misconduct at trial. Defs' AOB at 91, *quoting* 1–SER–51:24-25.

Skidmore knew what his counsel was doing on his behalf and cannot hide from the consequences of that outrageous litigation misconduct.

### (3) There Is No Merit to Skidmore's Scurrilous Claim that Misconduct by Defendants Is an Alternative Basis to Affirm the Denial of Attorneys' Fees

Skidmore argues that his opposition to Warner/Chappell's motion for attorneys' fees raised supposed misconduct by defendants that "is further support for [the District Court's] denial of fees." Pltf's RAB at 78-79 n. 21. But he acknowledges his accusations were not even mentioned, let alone adopted, by the District Court. *Id.* Accordingly, they were not addressed in defendants' combined brief and Supplemental Excerpts of Record. Skidmore also fails to provide this Court with Warner/Chappell's response below. 9th Cir. R. 30-1.4(c)(ii). His accusations were baseless and do not provide an alternative ground to support the District Court's denial of attorneys' fees.

27

### i. Defendants Had a Legitimate Basis to Contest Access

Skidmore asserts that defendants "frivolously contested access . . . ." Pltf's RAB at 78 n. 21. Skidmore's accusation is itself frivolous.

Skidmore admits access was a "hotly contested" issue. OB at 71. He offered no evidence that *Taurus* was widely disseminated. *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). *Taurus* appeared only on Spirit's first album before the group's second, break-out album; *Taurus* was not one of the "tent-pole" songs Spirit performed at concerts; and no member of Led Zeppelin was present when Spirit performed it. Defs' AOB at 60-61. While Mr. Page now has a copy of Spirit's first album in his collection of thousands of albums, before *Stairway to Heaven* was written he only had Spirit's second, break-out album and third album. III–ER–491:6-13; *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143-44 (9th Cir. 2009) (access only relevant if before defendant's work created). Skidmore was left with hearsay statements in fifty-year-old fan magazines—which the District Court improperly admitted for impeachment (I–ER–115)—even though one of Spirit's former members agreed misquotations were common. II–ER–193:10-12; VI–ER–1246:17-25.

Defendants had legitimate reasons to dispute access, which is why Skidmore resorted to trickery and a cropped photograph to prove access. 1–SER–178-187.

### ii. There Were Substantial Grounds to Dispute Skidmore's Standing to Sue

Skidmore asserts that defendants "frivolously contested . . . ownership," apparently meaning Skidmore's standing to assert infringement of Hollenbeck Music's *Taurus* copyright. Pltf's RAB at 78 n. 21. That accusation also is frivolous.

By failing to respond to a Federal Rule of Civil Procedure 36 request, Skidmore admitted *Taurus* is a work for hire, which, if the District Court had not relieved him of the admission, would have defeated his claimed standing as beneficial owner. I–ER–127-127; *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1116 n. 7 (9th Cir. 2015) (creator of work for hire cannot sue as beneficial owner). Also, Skidmore sued as trustee under a Trust Agreement that conditioned the Trust's continued existence on it becoming a charitable foundation under federal law, which Skidmore refused to confirm had occurred. FER–654:17-656:8.

### iii. Skidmore's Accusation that Defendants Colluded with Hollenbeck Music Is Pure Fiction

Skidmore asserts that defendants "colluded" with Hollenbeck Music to "falsely change the 'Taurus' copyright to revoke [his] ownership, . . . ." Pltf's RAB at 78 n. 21. That accusation is absurd. Defendants directed a subpoena to

Hollenbeck Music, which produced, among other documents, its correction to the *Taurus* copyright registration to state *Taurus* is a work for hire (FER–657:23-658:1), a correction that Hollenbeck Music was entitled to make (17 U.S.C. § 408(d); *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 165-66 (2d Cir. 2003)).

### iv.     There Was No Hidden Conflict of Interest

Finally, Skidmore argues defendants "hid the fact that Dr. Ferrara had a conflict of interest . . . ." Pltf's RAB at 78 n. 21. But Dr. Ferrara received no confidential information from Rondor and Rondor expressly consented to defendants retaining him. Defs' AOB at 78, 80-81. Even accepting *arguendo* Skidmore's unsubstantiated argument that Rondor acted on behalf of Hollenbeck Music, Skidmore does not dispute that Hollenbeck Music owns the *Taurus* copyright, is not his fiduciary and was free to consent to defendants retaining Dr. Ferrara. *Id.* at 78-79.

Nor was Rondor's consultation of Dr. Ferrara hidden. Skidmore does not suggest there was an obligation to disclose the consultation absent a discovery request. Skidmore also does not dispute that defendants timely objected to the late-served requests for production that he suggests included the consultation in their scope. *Id.* at 80; VII–ER–1548:22-1549:10. Further, Dr. Ferrara disclosed at

his deposition that he had been consulted and testified he was "very happy to tell" Skidmore's counsel what he told Rondor. VII–ER–1634; FER–658:2-15.

None of Skidmore's accusations are true. What is true is that the District Court found he was guilty of extensive litigation misconduct. Whether an independent basis to award attorneys' fees or another *Fogerty* factor, Skidmore's willful violation of court orders, falsification of evidence and other litigation misconduct supported awarding Warner/Chappell attorneys' fees.

### c. The District Court's Denial of Attorneys' Fees Did Not Further the Policies of the Copyright Act

Warner/Chappell raised that the District Court did not consider "[t]he most important factor in determining whether to award fees under the Copyright Act, . . . whether an award will further the purposes of the Act." *Mattel*, 705 F.3d at 1111.

Skidmore argues the District Court "explicitly" considered the Copyright Act's purposes, but he cites to the District Court's quotation of a case referring to the importance of considering them. Pltf's RAB at 65. Skidmore also argues that the District Court implicitly considered the Copyright Act's purposes by applying the *Fogerty* factors. Plft's RAB at 64-65. But "whether an award will further the purposes of the Act" is "the pivotal criterion" governing the grant or denial of attorneys' fees even when the *Fogerty* factors tilt in a different direction. *Fantasy*,

94 F.3d at 558 ("courts may not rely on the [*Fogerty*] factors if they are not 'faithful to the purposes of the Copyright Act'"), *quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994).

Importantly, Skidmore does not dispute that the District Court's denial of attorneys' fees frustrated, rather than furthered, the purposes of the Copyright Act.

"[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works, . . . ." *Fogerty*, 510 U.S. at 526-27. Skidmore sought to enjoin, impound and destroy *Stairway to Heaven*, which he called "one of the greatest songs ever written." XI–ER–2723, ¶ 56, 2743, ¶ (f). Denying Warner/Chappell attorneys' fees for successfully ensuring continued public access to *Stairway to Heaven* frustrates the purposes of the Copyright Act.

By successfully defending Skidmore's claims, Warner/Chappell also confirmed the rights of authors to use musical scales, arpeggios and other public domain musical elements as basic musical building blocks in the creation of new musical works. Warner/Chappell's "defense was the type of defense that furthers the purposes underlying the Copyright Act and therefore should be encouraged through a fee award." *Fantasy*, 94 F.3d at 556 (successful defense "paved the way for future original compositions—by Fogerty and others—in the same distinctive 'Swamp Rock' style and genre"); *Kirtsaeng*, 136 S. Ct. at 1986 ("fee awards under

32

§ 505 should encourage the types of lawsuits that promote" public access to creative works). The District Court frustrated these purposes by denying attorneys' fees.

Warner/Chappell respectfully submits that the District Court's Order denying attorneys' fees should be reversed and the case remanded with instructions that the District Court award Warner/Chappell its attorneys' fees.

## 2. THE DISTRICT COURT'S DENIAL OF WARNER/CHAPPELL'S MOTION FOR ADDITIONAL COSTS

The District Court treated, and the parties treat, the District Court's ruling on Warner/Chappell's motion for additional costs as standing or falling with its ruling on the motion for attorneys' fees. 1–SER–3, 7; Defs' AOB at 93; Pltf's RAB at 63. Accordingly, the denial of additional costs also should be reversed.

## 3. CONCLUSION

Warner/Chappell respectfully submits that the District Court's Order denying Warner/Chappell's motions for attorneys' fees and additional costs should

be reversed with instructions to grant those motions, and defendants should recover

their attorneys' fees and full costs on appeal.


Dated: November 9, 2017        _____/s/ Peter J. Anderson_____

Peter J. Anderson, Esq.

Law Offices of Peter J. Anderson

A Professional Corporation

Attorney for Defendant, Appellee and Appellant

WARNER/CHAPPELL MUSIC, INC.

and

Defendants and Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because this Reply Brief contains 6,994 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This Reply Brief also complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point type size in New Times Roman type style.


Dated: November 9, 2017 _____/s/ Peter J. Anderson_____

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed this Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System on November 9, 2017.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system

Dated: November 9, 2017        _____/s/ Peter J. Anderson_____

# **<u>ADDENDUM</u>**

## Copyright Act of 1909

17 U.S.C. §§ 1 *et seq.* (Mar. 4, 1909):

### § 1.   Exclusive rights as to copyrighted works

Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

(a)  To print, reprint, publish, copy, and vend the copyrighted work;

(b)  To translate the copyrighted work into other languages or dialects, or make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work; to convert it into a novel or other nondramatic work if it be a drama; to arrange or adapt it if it be a musical work; to complete, execute, and finish it if it be a model or design for a work of art;

(c)  To deliver, authorize the delivery of, read, or present the copyrighted work in public for profit if it be a lecture, sermon, address or similar production, or other nondramatic literary work; to make or procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, delivered, presented, produced, or reproduced; and to play or perform it in public for profit, and to exhibit, represent, produce, or reproduce it in any manner or by any method whatsoever. The damages for the infringement by broadcast of any work referred to in this subsection shall not exceed the sum of $100 where the infringing broadcaster shows that he was not aware that he was infringing and that such infringement could not have been reasonably foreseen; and

(d)  To perform or represent the copyrighted work publicly if it be a drama or, if it be a dramatic work and not reproduced in copies for sale, to vend any

manuscript or any record whatsoever thereof; to make or to procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, performed, represented, produced, or reproduced; and to exhibit, perform, represent, produce, or reproduce it in any manner or by any method whatsoever; and

(e)  To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: *Provided,* That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; and the copyright proprietor may require, and if so the manufacturer shall furnish, a report under oath on the 20th day of each month on the number of parts of instruments manufactured during the previous month serving to reproduce mechanically said musical work, and royalties shall be due on the parts manufactured during any month upon the 20th of the next

succeeding month.  The payment of the royalty provided for by this section shall free the articles or devices for which such royalty has been paid from further contribution to the copyright except in case of public performance for profit. It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit action, or proceeding for any infringement of such copyright.

In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount.

The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such reproduction or rendition occurs.

. . .

### § 3.   Protection of component parts of work copyrighted; composite works or periodicals

The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title.

. . .

## § 7. Copyright on compilations of works in public domain or of copyrighted works; subsisting copyrights not affected

Compilations or abridgements, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works.

. . .

## § 10. Publication of work with notice

Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title.

## § 11. Registration of claim and issuance of certificate

Such person may obtain registration of his claim to copyright by complying with the provisions of this title, including the deposit of copies, and upon such compliance the Register of Copyrights shall issue to him the certificates provided for in section 209 of this title.

## § 12. Works not reproduced for sale

Copyright may also be had of the works of an author, of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete

copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition; of a title and description, with one print taken from each scene or act, if the work be a motion-picture photoplay; of a photographic print if the work be a photograph; of a title and description with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay; or of a photograph or other identifying reproduction thereof, if it be a work of art or a plastic work or drawing. But the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies under sections 13 and 14 of this title, where the work is later reproduced in copies for sale.

## **Copyright Act of 1976**

17 U.S.C. §§ 101 *et seq.*

### § 101.  Definitions

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

. . .

A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

. . .

A work is fixed in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.  A work consisting of sounds, images, or both, that are being transmitted, is fixed for purposes of this title if a fixation of the work is being made simultaneously with its transmission.

. . .

### § 103.  Subject matter of copyright: Compilations and derivative works

. . .

(b)    The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and

43

does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

. . .

### § 106.  Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of a copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)　　to reproduce the copyrighted work in copies or phonorecords;

(2)　　to prepare derivative works based upon the copyrighted work;

(3)　　to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)　　in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5)　　in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)　　in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

. . .

### § 302. Duration of copyright: Works created on or after January 1, 1978

**(a) In General.**--Copyright in a work created on or after January 1, 1978, subsists from its creation and, except as provided by the following subsections, endures for a term consisting of the life of the author and 70 years after the author's death.

. . .

### § 303.  Duration of copyright: Works created but not published or copyrighted before January 1, 1978

. . .

(b)     The distribution before January 1, 1978, of a phonorecord shall not for any purpose constitute a publication of any musical work, dramatic work, or literary work embodied therein.

. . .

### § 408.  Copyright registration in general

. . .

(d)     Corrections and Amplifications.—The Register may also establish, by regulation, formal procedures for the filing of an application for supplementary registration, to correct an error in a copyright registration or to amplify the information given in a registration. Such application shall be accompanied by the fee provided by section 708, and shall clearly identify the registration to be corrected or amplified. The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration.

[§ 408(e)-(f) omitted]

. . .

### § 502.  Remedies for infringement: Injunctions

(a)     Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b)     Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person.  The clerk of the court granting the injunction

45

shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

. . .

### § 503.  Remedies for infringement: Impounding and disposition of infringing articles

. . .

(b)    As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

. . .

### § 504. Remedies for infringement: Damages and profits

(a)    In General.  Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1)    the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2)    statutory damages, as provided by subsection (c).

(b)    Actual Damages and Profits.   The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(c)     Statutory Damages.

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118(f)) infringed by performing a published nondramatic literary work or by

reproducing a transmission program embodying a performance of such a work.

(3)(A) In a case of infringement, it shall be a rebuttable presumption that the infringement was committed willfully for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the infringement.

(B) Nothing in this paragraph limits what may be considered willful infringement under this subsection.

(C) For purposes of this paragraph, the term "domain name" has the meaning given that term in section 45 of the Act entitled "An Act to provide for the registration and protection of trademarks used in commerce, to carry out the provisions of certain international conventions, and for other purposes" approved July 5, 1946 (commonly referred to as the "Trademark Act of 1946"; 15 U.S.C. 1127).

(d) Additional damages in certain cases. In any case in which the court finds that a defendant proprietor of an establishment who claims as a defense that its activities were exempt under section 110(5) did not have reasonable grounds to believe that its use of a copyrighted work was exempt under such section, the plaintiff shall be entitled to, in addition to any award of damages under this section, an additional award of two times the amount of the license fee that the proprietor of the establishment concerned should have paid the plaintiff for such use during the preceding period of up to 3 years.

. . .

### § 505. Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.