# Nos. 16-56057 & 16-56287

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

―――――――――

## MICHAEL SKIDMORE,
### AS TRUSTEE FOR THE RANDY CRAIG WOLFE TRUST
#### PLAINTIFF, APPELLANT AND APPELLEE

vs.

## LED ZEPPELIN, *ET AL.*
### DEFENDANTS AND APPELLEES
#### AND
## WARNER/CHAPPELL MUSIC, INC.,
### DEFENDANT, APPELLEE AND APPELLANT

―――――――――

### APPEALS FROM THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### HON. R. GARY KLAUSNER, DISTRICT JUDGE, CASE NO.15-cv-03462 RGK (AGRx)

―――――――――

# FURTHER EXCERPTS OF RECORD

―――――――――

PETER J. ANDERSON, ESQ.
LAW OFFICES OF PETER J. ANDERSON,
A PROFESSIONAL CORPORATION
100 WILSHIRE BOULEVARD, SUITE 2010
SANTA MONICA, CA 90401
TEL.: (310) 260-6030
ATTORNEY FOR DEFENDANT, APPELLEE AND
APPELLANT WARNER/CHAPPELL MUSIC, INC.,
AND DEFENDANTS AND APPELLEES

## **INDEX**

## **Further Excerpts of Record**

| <u>Tab</u> | <u>Date</u> | <u>Document</u> | <u>Dkt. No.</u> | <u>Page</u> |
|------------|-------------|-----------------|-----------------|-------------|
| 22 | 3/14/16 | Reply Declaration of Dr. Lawrence Ferrara in support of Motion for Summary Judgment (excerpt) | 129-1 | 645 |
| 23 | 7/25/16 | Reply Declaration of Anderson in support of Warner/Chappell's Motion for Attorneys' Fees (excerpt) | 306-1 | 651 |

# Tab 22

Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
ATLANTIC RECORDING CORP., RHINO
ENTERTAINMENT COMPANY and WARNER
MUSIC GROUP CORP.

Helene Freeman, Esq., admitted *pro hac vice*
E-Mail: hfreeman@phillipsnizer.com
PHILIPS NIZER LLP
666 Fifth Avenue
New York, NY 10103-0084
Tel: (212) 977-9700
Fax: (212) 262-5152
Attorneys for Defendants
JAMES PATRICK PAGE, ROBERT ANTHONY
PLANT and JOHN PAUL JONES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL SKIDMORE, *etc.*,<br><br>Plaintiff,<br><br>vs.<br><br>LED ZEPPELIN, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-03462 RGK (AGRx)<br><br>REPLY DECLARATION OF DR. LAWRENCE FERRARA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT<br><br>Date: March 28, 2016<br>Time: 9:00 a.m.<br><br>Courtroom of the Honorable<br>R. Gary Klausner<br>United States District Judge |

645

## REPLY DECLARATION OF DR. LAWRENCE FERRARA

I, Dr. Lawrence Ferrara, declare and state:

1.     I am over the age of 18 and have personal knowledge of the following facts and could competently testify to the following facts if called upon to do so.

2.     I am a pianist, a music theorist and a Full Professor of Music and the Director Emeritus of all studies in Music and the Performing Arts in New York University's Steinhardt School.

3.     This Declaration is submitted in reply to the Declarations of Dr. Alexander Stewart, Erik Johnson and Brian Bricklin.  I will summarize principal problems with those Declarations and, for a more detailed rebuttal, I respectfully refer the Court to my Rebuttal Report attached as Exhibit 3 to this Declaration.

**Dr. Alexander Stewart**

4.     Dr. Stewart's Declaration, like his February 10, 2016 Report attached as Exhibit 2 to my February 23, 2016 Declaration in this action, does not analyze the transcription of the "Taurus" musical composition stamped, "Dec 22, 1967" and "Eu 35222" (the "Taurus Transcription") or compare the Taurus Transcription to "Stairway to Heaven" ("Stairway").

5.     In his Declaration at page 12, paragraph 29, Dr. Stewart states that my Report did not include a transcription of "Taurus".  That, of course, is not true: I analyzed, and included as Visual Exhibit A to my Report, the Taurus Transcription. In his Declaration at page 13, paragraph 33, Dr. Stewart states that my analysis is "evasive" because I analyzed the Taurus Transcription rather than recordings of performances of "Taurus".  However, I analyzed the Taurus Transcription because it is my understanding that it is the deposit copy and therefore the copyrighted work. Indeed, I did the same in my analysis of the sheet music deposit copy on behalf of defendants in the Newton v. Diamond case.  Also, at page 16, paragraph 48 in his Declaration, Dr. Stewart states that Tracks 6, 7, and 8 on Audio Exhibit A to my Report dated February 10, 2016 are not respectively "Walkin' My Baby Back

646

# EXHIBIT 3

647

**LAWRENCE FERRARA, Ph.D.**

**d/b/a LAWRENCE FERRARA, INC.**

**MUSIC ANALYSIS**

**<u>REBUTTALS TO THE REPORTS AND/OR DECLARATIONS OF</u>**

**<u>DR. ALEXANDER STEWART, MR. ERIK JOHNSON, AND MR. BRIAN BRICKLIN</u>**

**<u>REGARDING</u>**

**<u>"TAURUS" BY RANDY CALIFORNIA</u>**

**And**

**<u>"STAIRWAY TO HEAVEN" BY JIMMY PAGE & ROBERT PLANT</u>**

**I.      INTRODUCTION**

1.      After being asked to perform a comparative musicological analysis of the musical compositions in (1) "Taurus" written by Randy California and (2) "Stairway to Heaven" written by Jimmy Page and Robert Plant (hereafter "Stairway"), I prepared and submitted a Report dated February 10, 2016 (hereafter "the Ferrara Report").  The Ferrara Report, including its Audio Exhibit 1, were made a part of and incorporated in my Declaration dated February 23, 2016 (hereafter "the Ferrara Declaration") attached to Defendants' Motion for Summary Judgment.

2.      I received and reviewed the Report dated February 10, 2016, by Dr. Alexander Stewart, in this action, (hereafter "the Stewart Report") and the Declaration of Alexander Stewart in Opposition to Defendants' Motion for Summary Judgment, (hereafter "the Stewart Declaration").  I also reviewed the Declarations of Erik Johnson and Brian Bricklin in Opposition to Defendants' Motion for Summary Judgment, (hereafter respectively "the Johnson Declaration" and "the Bricklin Declaration").  I begin with a response to the Stewart Report.

3.      The Stewart Report does not mention the transcription of the "Taurus" musical composition stamped, "Dec 22, 1967" and "Eu 35222" (the "Taurus

II. B. 3.  THE HARMONIC SIMILARITY RESULTS FROM A DESCENDING LINE
CHORD PROGRESSION COMMONLY FOUND IN MUSICAL WORKS THAT
PREDATE THE "TAURUS STUDIO VERSION"

        10.     Similarities in the four-measure chord progressions in the "Taurus

Studio Version" and "Stairway" are found in chord progressions in popular music prior to

the "Taurus Studio Version", used in classical music as early as the 17th century, and so

common that they are sometimes referred to as a "minor line cliché".  The lowest notes

in the first three measures in the chord progressions under analysis in the "Taurus

Studio Version" and "Stairway" move down the chromatic scale.[5]  This is illustrated in

Musical Example 1 immediately below in which the guitar part in the first four measures

of Section A in the "Taurus Studio Version" is written over the guitar part in the first four

measures of "Stairway" in a comparative transcription.  Chord symbols (e.g., "Am") are

listed above the measures.  Such a comparative transcription of the four-measure guitar

parts is absent in the Stewart Report.  Dr. Stewart admits that the "four-measure

passage" contains a descending chromatic bass line, which has been used by many

composers through the ages [the Stewart Declaration at pp. 5-6, ¶ 9].  He states that

composers have used this "foundational pattern" of "six pitches" in "original and creative

ways", but the only new way he identifies in which the "Taurus" recordings and

"Stairway" use this "foundational pattern" is to cut it short by one pitch.  [Id. At p. 6, ¶ 10]

I do not understand how, and do not agree that, using five-sixths of a "foundation

pattern" that is centuries old and common in popular music, is an "original and creative"

use.  For example, I understand that "Mary Had a Little Lamb" is in the public domain,

and I do not see how using five-sixths of "Mary Had a Little Lamb" is original musical

expression.  Also, as stated in the Ferrara Declaration at page 3, paragraph 10, other

popular songs have ended this "foundational pattern" one pitch short".

        11.     In Musical Example 1, the notes in the descending chromatic scale are

highlighted in red in the first three measures of the four-measure chord progressions in

the "Taurus Studio Version" and "Stairway".  This descending chromatic scale, a

_____

[5]      A "chromatic scale" is a scale in which each pitch is separated from its neighbors
by a semitone, the smallest interval in the Western tonal system.  See "scale" in The
Harvard Dictionary of Music, p. 757.

musical building block, starts on scale degree 1 (an "a" pitch) and descends in half steps (i.e., chromatically) to scale degree 6 (an "f" pitch).[6]

### MUSICAL EXAMPLE 1

Four-measure guitar parts
Measures 1-4 in Section A in **The "Taurus Studio Version"**
Measures 1-4 in **"Stairway"**



"Dido's Lament"

12. A chromatic descending scale (or descending line) within a chord progression is common.[7] A very famous example is the chromatic descending line

---

[6] I disagree with many of the notes in the transcription of "Stairway" attached as Visual Exhibit B to the Stewart Report. Among these include the incorrect duration of the notes in the descending chromatic scale. Dr. Stewart transcribes these notes as eighth notes but they are clearly half notes, which are four times longer than eighth notes, as per my transcription attached as **Rebuttal Visual Exhibit C**. Also, I disagree with many of the notes in the transcription of the "Taurus Studio Version" attached as Visual Exhibit C to the Stewart Report, as per my transcription attached as **Rebuttal Visual Exhibit B**.

Tab 23

1    Peter J. Anderson, Esq., Cal. Bar No. 88891
     E-Mail: pja@pjanderson.com
2    LAW OFFICES OF PETER J. ANDERSON
     A Professional Corporation
3    100 Wilshire Boulevard, Suite 2010
     Santa Monica, CA 90401
4    Tel: (310) 260-6030
     Fax: (310) 260-6040
5    Attorneys for Defendants
     JAMES PATRICK PAGE, ROBERT ANTHONY
6    PLANT, JOHN PAUL JONES, WARNER/CHAPPELL
     MUSIC, INC., SUPER HYPE PUBLISHING, INC.,
7    ATLANTIC RECORDING CORP., RHINO
     ENTERTAINMENT COMPANY and WARNER
8    MUSIC GROUP CORP.

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                   **WESTERN DIVISION**

| | | |
|---|---|---|
| 12   MICHAEL SKIDMORE, *etc.*, | ) | Case No. 2:15-cv-03462 RGK (AGRx) |
| 13       Plaintiff, | ) ) | |
| 14     vs. | ) ) | REPLY DECLARATION OF PETER J. ANDERSON IN SUPPORT OF |
| 15   LED ZEPPELIN, *et al.*, | ) ) | DEFENDANT WARNER/ CHAPPELL'S MOTION FOR AWARD OF ATTORNEYS' FEES |
| 16      Defendants. | ) ) | |
| 17 | ) ) | Date: August 8, 2016 Time: 9:00 a.m. |

18

19                      Courtroom of the Honorable
                         R. Gary Klausner

20                      United States District Court

21

22

23

24

25

26

27

28

651

### REPLY DECLARATION OF PETER J. ANDERSON

I, Peter J. Anderson, declare and state:

1.     I am an attorney admitted to practice before this Court and all Courts of the State of California.  I have personal knowledge of the following facts and could competently testify to these facts if called upon to do so.

2.     In this action, I represent defendants James Patrick Page, Robert Plant, John Paul Jones, Warner/Chappell Music, Inc. ("Warner/Chappell"), Atlantic Recording Corporation, Rhino Entertainment Company and Warner Music Group Corp.  This Reply Declaration is submitted in support of Warner/Chappell's Motion for the award of attorneys' fees.

3.     Attached to this Reply Declaration as Exhibit 7 are true and correct copies of pages from the Reporter's Transcript I obtained using PACER, of the trial in *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, that defendants quoted in their Trial Brief in this action (Doc. 223 at 3 n. 1), and where the district judge in *Williams* preliminarily instructed the jury in that action as follows:

> "The works claimed by the Gaye parties in this case are the musical compositions *Got To Give It Up* and *After The Dance*. <u>At the time the copyright in each of these works was separately obtained and registered, only sheet music could be filed by a copyright owner with the copyright office.</u>  Sheet music is paper on which notes, lyrics and other musical elements are written in a notation understandable to musicians.

> "Recordings of musical compositions could not be filed with the copyright office at that time.  Therefore, <u>although sound recordings of *Got To Give It Up* and *After The Dance* were made and released commercially, those particular recordings are not at issue in this case, will not be produced into evidence and will not be played for you during the trial. Instead, you will hear testimony from one or more witnesses from</u>

1

652

each side about what each thinks is shown on the sheet music for each composition.

"You will also hear recorded versions of each work that each side has prepared based on what each side contends is shown in the sheet music that was filed with the copyright office . . . .

"You may also hear one or more witnesses use keyboards to play what each says appears on the sheet music."

Rptr's Trans. Trial Proc. Feb. 24, 2015 at 20:8 to 21:7 (emphasis added).

4. Attached to this Reply Declaration as Exhibit 8 is a true and correct copy of pages from the Reporter's Transcript of plaintiff's trial testimony in this action. Attached to this Reply Declaration as Exhibit 9 is a true and correct copy of portions of the transcript of the deposition of plaintiff in this action.

5. In the depositions taken after the Court's April 25, 2016 tentative rulings granting defendants' motions in limine, I cautioned plaintiff's witnesses that the Court had tentatively ruled testimony as to certain subjects could not be presented to the Jury. My reason for cautioning those witnesses was to ensure a witness did not innocently volunteer testimony that was precluded and, in case plaintiff's counsel coached a witness to volunteer precluded testimony, to confirm the witness was warned beforehand. When I provided those cautions in the depositions, plaintiff's counsel, Mr. Malofiy objected and undertook to advise his witnesses of the Court's rulings. For example, attached to this Declaration as Exhibit 10 is a true and correct copy of portions of the transcript of the deposition of plaintiff's witness, Brian Bricklin, in this action.

6. In opposition to Warner/Chappell's Motion for attorneys' fees, plaintiff submits the Declaration of his counsel, Mr. Fluehr, that the reason plaintiff displayed to the Jury a cropped version of the photograph they produced shortly before trial, is that printing the photograph from Getty's website results in the photograph being cropped to delete two people, including the one to whom Mr. Plant was speaking.

2

653

However, the photograph that plaintiff produced shortly before trial is labeled "Getty Images," so plaintiff presumably printed it out from the Getty website, and it was not cropped. Attached to this Declaration as Exhibit 11 is a true and correct copy of the June 9, 2016 e-mail I received from plaintiff's local counsel and the uncropped photograph that was attached to that e-mail. I have visited the Getty website and, first, the Getty website displays the photograph in its entirety and without cropping. Attached to this Reply Declaration as Exhibit 12 is a true and correct copy of the Getty website's page displaying the photograph. As a result, even if Mr. Fleuhr's statement is accepted at face value, he could and should have seen that the photograph he sought to print showed five people (with Mr. Plant speaking to someone other than Mr. Andes) while the photograph he printed showed only three (with the person with whom Mr. Plant was speaking deleted. In addition, I printed out the photograph from Getty's website and, contrary to Mr. Fleuhr's statement, the entire, uncropped photograph was printed. Attached to this Reply Declaration as Exhibit 13 is a true and correct copy of the photograph as printed from Getty's website.

7.     In his opposition, plaintiff argues that there was no reasonable basis for defendants to question the validity of the Randy Craig Wolfe Trust. However, in discovery plaintiff produced Trust documents showing that the Trust Agreement's last amendment provides that upon the death of plaintiff's co-trustee, Bernice Pearl, the Trust would continue to exist only if it became qualified under federal income tax law as a charitable organization and used its receipts to provide musical instruments to school children. The testimony in this case was that Ms. Pearl died in 2009. Plaintiff failed to produce in discovery any proof that the Trust's condition for continued existence – qualification as a charity and distribution of Trust funds for a particular purpose – ever occurred. But, defendants' motion (Doc. 83, 87) to compel documents as to whether the Trust is really a charity and really uses its funds for the specified purposes, was opposed by plaintiff and denied by the Magistrate

654

Judge. Order (Doc. 89). In light of the plaintiff's successful refusal to engage in discovery on the subject, defendants confirmed that they could not challenge the Trust's existence. *See, e.g.,* Defs' Oppn. to Pltf's MIL # 1 (Doc. 160) at 1:14 to 2:6:

> "From plaintiff's motion [in limine no. 1], however, it appears he actually seeks to prevent defendants from raising that an amendment to the Trust Agreement conditions the Trust's continued existence on its qualification as a charitable organization under federal tax law and its use of Trust funds to buy musical instruments for needy children. As plaintiff raises, he successfully resisted defendants' discovery directed to whether the Trust's trustees complied with those conditions. Further, the Magistrate Judge ruled that defendants lack grounds to challenge whether those conditions had been met. Order (Doc. 89) at 2. Given that ruling and since plaintiff has not produced the requested information and documents, defendants cannot challenge whether the conditions were met. And, since plaintiff successfully argued that satisfying the conditions is not a requirement for the Trust's continued existence, and refused discovery on the issue, neither can plaintiff claim a need to prove the conditions were met. As a result, to the extent plaintiff seeks to preclude evidence or argument as to those conditions, the motion is moot."

8.      In his opposition, plaintiff argues that there was no reasonable basis for defendants to question the Trust's standing to sue. However, the plaintiff would lack standing if, for failure to satisfy the Trust Agreement's express condition described in the preceding paragraph, the Trust did not continue to exist. Also, there was a separate reason to question the Trust's standing: in discovery plaintiff failed to timely respond to Federal Rule of Civil Procedure 36 requests for admission and, as a result, was deemed to have admitted that the *Taurus* musical composition is a work for hire. In addition, the recordings plaintiff produced and which he claimed were

655

public performances of *Taurus* differed from both the *Taurus* deposit copy and the commercially released recording of *Taurus*, and Mr. Ferguson testified in deposition that the compositions were works in progress. Accordingly, and including on the basis of plaintiff's own failure to respond to discovery after multiple warnings, defendants raised in their summary judgment motion that, plaintiff lacked standing to sue. *See,* Defs' Memo. *re* Summary Judgment (Doc. at 97-1) at 5-6. Further, once the Court relieved plaintiff of his deemed admission, defendants did not pursue the work for hire argument.

9. In his opposition, plaintiff argues that there was no reasonable basis for defendants to question the Trust's acquisition of Randy Wolfe's claimed rights in the *Taurus* musical composition. However:

(a)    Plaintiff conceded that Quinn was Wolfe's sole heir;

(b)    When Ms. Pearl petitioned the Superior Court for approval of the creation of the Trust, the proposed Trust Agreement she presented included that all of Mr. Wolfe's assets – including any interest he had in the *Taurus* musical composition – were to be distributed <u>to Quinn</u> when he reached 22 years of age;

(c)    The Superior Court's Order granting her petition made other changes, but did not change that when Quinn reached 22 years of age the Trust was to terminate and its assets were to be distributed <u>to Quinn</u>;

(d)    The Trust Agreement that Ms. Pearl actually signed, however, changed the provision requiring distribution to Quinn when he turned 22 years of age, to distribution to Quinn when Ms. Pearl died;

(e)    Further, Ms. Pearl then amended the Trust Agreement to disinherit Quinn altogether and provide that the Trust assets instead would go to Ms. Pearl's brother and then, by other amendments, to others, but never to Quinn; and

(f)    Plaintiff testified that he understood that Ms. Pearl

656

1    disinherited Quinn because he was Wolfe's "illegitimate son" since

2    Wolfe had never married Quinn's mother.

3    *See,* Trial Exh. 2016, 450-55; Defs' Offer of Proof (Doc. 253) at 1, 6.  Defendants

4    contended that the evidence establishes defendants' unclean hands defense. Defs'

5    Memo. of Contentions of Fact & Law (Doc. 157) at 9, 14.

6        10.    In his opposition, plaintiff argues that there was no reasonable basis for

7    defendants to contend that Wolfe abandoned the claim that *Stairway to Heaven*

8    copied *Taurus*.  However, in including waiver and abandonment as alternate grounds

9    for summary judgment, defendants relied on Wolfe's own recorded 1991 statements

10   that he was not bothered by the similarity between *Taurus* and *Stairway*, that "if they

11   wanted to use" *Taurus* "that's fine," "I'll let them have the beginning of Taurus for

12   their song without a lawsuit" and he was "letting them off the hook."  Freeman Decl.

13   (Doc. 97-8) at 1-2, ¶¶ 3, 6, Exh. 6 at 29-30.

14       11.    In his opposition, plaintiff asserts that defendants had no reasonable

15   basis to challenge plaintiff's claim of access.  However, and for example, plaintiff's

16   own witnesses, the surviving members of Spirit, testifed that at the relevant time

17   they were publicly performing their new songs and hit songs, which did not include

18   *Taurus*, that *Taurus* was never released as a single and that they never saw any

19   member of Led Zeppelin present when *Taurus* was performed.  Also, while Mr.

20   Page presently has Spirit albums in his record collection, he knew only their more

21   successful albums, which did not include *Taurus*, and his record collection includes

22   records given to him, left at his house and remaining from his daughter's collection.

23       12.    In his opposition, plaintiff asserts that defendants "apparently worked

24   with Hollenbeck Music" to cause it to file with the Copyright Office forms

25   correcting the registration and renewal of copyright in the *Taurus* musical

26   composition.  Plaintiff's assertion is incorrect.  In the course of discovery, I directed

27   a subpoena to Hollenbeck Music and it produced documents, including the corrected

28   registration and renewal.  I was not aware that corrected forms would be filed and

657

1    learned of them only after they were produced to me.

2        13.    In his opposition, plaintiff asserts that I purported to waive a supposed

3 conflict that Dr. Ferrara had in serving as defendants' expert in this case. Again,

4 plaintiff's assertion is incorrect. Rather, Universal Music Publishing and Rondor

5 International, who had previously consulted Dr. Ferrara, waived any objection they

6 had to Dr. Ferrara being engaged by defendants. I also note that although plaintiff

7 now refers to Hollenbeck Music as "Plaintiff's publisher," plaintiff produced no

8 publishing agreement between Hollenbeck Music or any other company, on the one

9 hand, and either plaintiff or Mr. Wolfe. Despite multiple requests for production

10 directed to plaintiff in this case and which would have included any such agreement,

11 the only agreement that plaintiff produced is the August 29, 1967 Exclusive

12 Songwriter's and Composer's Agreement between Mr. Wolfe and Hollenbeck Music

13 (Trial Exhibit 2070), which provides that Mr. Wolfe's compositions are owned by

14 Hollenbeck Music, either as works for hire or by assignment for both the initial and

15 renewal terms of copyright.

16        14.    Helene M. Freeman and her firm, Philips Nizer, have served as personal

17 counsel to Mr. Page, Mr. Plant and Mr. Jones throughout the pendency of this action

18 and shared with me responsibility for their defense. Ms. Freeman has actively

19 participated in their defense, from the filing of this action through discovery and

20 trial. However, Mr. Page, Mr. Plant and Mr. Jones are not seeking recovery of her

21 and her firm's attorneys' fees and costs. As a result, recovery of only a portion of

22 the attorneys' fees and costs incurred in the successful defense of this action –

23 namely the portion incurred by Warner/Chappell – is sought.

24        15.    In his opposition, plaintiff asserts that the Jury deliberated for six hours

25 before reaching a verdict. Actually, however, the Jury quickly requested the trial

26 exhibits but, due to the problems with plaintiff's exhibits, the Court's clerks took

27 over four hours working in counsel's presence and with counsel to gather the trial

28 exhibits, which the Jury did not receive before the Court ended their deliberations at

658

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2017, I electronically filed the fore-going document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that at least one of the counsel for each participant in the case is a registered CM/ECF user.

Dated: November 9, 2017            _____/s/ Peter J. Anderson_____

                                      PETER J. ANDERSON