**Case Nos. 16-56057 (L), 16-56287**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———————◆———————

MICHAEL SKIDMORE, as Trustee for the Randy Craig Wolfe Trust,
*Plaintiff-Appellant,*

v.

LED ZEPPELIN, JAMES PATRICK PAGE, ROBERT ANTHONY PLANT,
JOHN PAUL JONES, SUPER HYPE PUBLISHING, INC.,
WARNER MUSIC GROUP CORPORATION, WARNER CHAPPELL MUSIC, INC.,
ATLANTIC RECORDING CORPORATION,
and RHINO ENTERTAINMENT COMPANY,
*Defendants-Appellees.*

———————————————————

*Appeal from a Decision of the United States District Court for the Central District of California,*
*Case No. 2:15-cv-03462-RGK-AGR · Honorable R. Gary Klausner*

**BRIEF *AMICI CURIAE* OF 19 INTELLECTUAL PROPERTY PROFESSORS
IN SUPPORT OF PETITIONER LED ZEPPELIN**

PROFESSOR MARK A. LEMLEY, *Counsel of Record*
STANFORD LAW SCHOOL
Center for Internet & Society
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605 Telephone
mlemley@law.stanford.edu

*Counsel for Amici Curiae,*
*19 Intellectual Property Professors*

 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTEREST AND IDENTITY OF THE AMICI CURIAE .......................................1

SUMMARY OF ARGUMENT ................................................................1

ARGUMENT ..............................................................................2

    I.    The Court Should Clarify the Nature of the Copying-In-Fact
        Inquiry and Abandon Its Use of the Illogical "Inverse Ratio Rule" .....2

    II.    The Court Should Follow Congress's Intent and Its Own
        Precedents to Properly Constrain the Scope of Copyright
        for Musical Compositions and Claims Based on Original
        Selection and Arrangement ................................................11

        A.    Copyright in Musical Works Extends Only to Lyrics
            and Melody ..........................................................12

        B.    A Plaintiff Who Bases His Claim of Infringement on
            Narrow Features of the Work that Have Been Selected and
            Arranged from Unprotectable Material Must Demonstrate
            Virtual Identicality between the Defendants' Work and
            His Own .............................................................19

CONCLUSION ..........................................................................25

CERTIFICATE OF COMPLIANCE .........................................................26

APPENDIX A:  LIST OF SIGNATORIES ...................................................27

CERTIFICATE OF SERVICE .............................................................29

i

# TABLE OF AUTHORITIES

## CASES

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ...........................................................20, 21, 24

*Arc Music Corp. v. Lee*,
  296 F.2d 186 (2d Cir. 1961) ......................................................................7, 8

*Arnstein v. Porter*,
  154 F.2d 464 (2d Cir. 1946) ......................................................................3, 6

*Darrell v. Joe Morris Music Co.*,
  113 F.2d 80 (2d Cir. 1940) .............................................................................4

*Ets-Hokin v. Skyy Spirits, Inc.*,
  323 F.3d 763 (9th Cir. 2003) ..................................................................20, 21

*Folkens v. Wyland Worldwide, Inc.*,
  882 F.3d 768 (9th Cir. 2018) ..................................................................20, 21

*Fred Fisher, Inc. v. Dillingham*,
  298 F. 145 (S.D.N.Y. 1924) (Hand, J.) ......................................................14

*Hein v. Harris*,
  175 F. 875 (C.C.S.D.N.Y.), *aff'd*,
  183 F. 107 (2d Cir. 1910) .............................................................................14

*Jacobsen v. Deseret Book Co.*,
  287 F.3d 936 (10th Cir. 2002) ......................................................................24

*Knitwaves, Inc. v. Lollytogs Ltd.*,
  71 F.3d 996 (2d Cir.1995) .............................................................................23

*Kustoff v. Chaplin*,
  120 F.2d 551 (9th Cir. 1941) ..........................................................................3

*LA Printex Indus. v. Aeropostale, Inc.*,
  676 F.3d 841 (9th Cir. 2012) .......................................................................23

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  616 F.3d 904 (9th Cir. 2010) ..................................................................20, 21

*N. Music Corp. v. King Record Distributing Co.*,
  105 F. Supp. 393 (S.D.N.Y. 1952) ........................................................13, 14

ii

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
 527 F.3d 1142 (11th Cir. 2008) ...............................................................18, 19

*Peters v. West*,
 692 F.3d 629 (7th Cir. 2012) ...........................................................................6

*Petrella v. Metro Goldwyn-Mayer, Inc.*,
 572 U.S. ___; 134 S. Ct. 1962; 188 L. Ed. 2d 979 (2014) ...........................18

*Pivot Point International, Inc. v. Charlene Products, Inc.*,
 372 F.3d 913 (7th Cir. 2004) ...........................................................................5

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018) ............................................3, 4, 5, 7, 8, 10, 11

*Roth Greeting Cards v. United Card Co.*,
 429 F.2d 1106 (9th Cir. 1970) .......................................................................22

*Satava v. Lowry*,
 323 F.3d 805 (9th Cir. 2003) ................................... 12, 19, 20, 21, 22, 24, 25

*Selle v. Gibb*,
 741 F.2d 896 (7th Cir. 1984) .......................................................................3, 4

*Sheldon v. Metro-Goldwyn Pictures, Corp.*,
 81 F.2d 49 (2d Cir. 1936) .................................................................................3

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp*,
 562 F.2d 1157 (9th Cir. 1977) ..................................................................2, 6, 7

*Siskind v. Newton-John*,
 No. 84 Civ. 2634, 1987 WL 11701 (S.D.N.Y. May 22, 1987) ....................14

*Skidmore v. Led Zeppelin*,
 905 F.3d 1116 (9th Cir. 2018) .......................................................................19

*Swirsky v. Carey*,
 376 F.3d 841 (9th Cir. 2004) .......................................................13, 19, 20, 22

*Three Boys Music Corp. v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) ......................................................................9, 10

*Ty, Inc. v. GMA Accessories, Inc.*,
 132 F.3d 1167 (7th Cir. 1997) ..................................................................4, 5, 6

*White-Smith Music Publishing Co. v. Apollo Co.*,
 209 U.S. 1 (1908) ...........................................................................................14

*Williams v. Gaye*,
    895 F.3d 1106 (2018) ..............................................................18, 24

**STATUTES AND REGULATIONS**

17 U.S.C. § 103(b) ...............................................................................20

17 U.S.C. § 106 .......................................................................................2

37 C.F.R. § 202.11 ...............................................................................16

**OTHER AUTHORITIES**

3 William F. Patry, *Patry on Copyright* (West 2007)............................6, 8

Alan Latman, *Probative Similarity As Proof of Copying: Toward Dispelling
    Some Myths in Copyright Infringement*, 90 Colum. L. Rev. 1187 (1990)..7, 8

Architectural Works Copyright Protection Act, Pub. L. No 101-650,
    104 Stat. 5089, 5133 (1990) ...........................................................16

Christopher Buccafusco, *A Theory of Copyright Authorship*,
    102 Va. L. Rev. (2016) ....................................................................16

Compendium of the Copyright Office (2014) .......................................22

The Copyright Act of 1909 ..................................................................15

David Aronoff, *Exploding the Inverse Ratio Rule*,
    55 J. Copyright Soc'y U.S.A. 125 (2008) ...................................7, 8

H.R. Rep. No. 94-1476 (1976)..............................................................17

Jessica Goudreault, *Copyrighting the Quotidian: An Analysis of Copyright
    Law for Postmodern Choreographers*, 39 Cardozo L. Rev. (2017) .......16, 17

Joseph P. Fishman, *Music as a Matter of Law*,
    131 Harv. L. Rev. 1861 (2018)......................................12, 15, 18

Mark A. Lemley, *Our Bizarre System for Proving Copyright Infringement*,
    57 J. Copyright Soc'y U.S.A. (2010) ..........................................7, 8

Mark A. Lemley & Mark P. McKenna, *Scope*,
    57 Wm. & Mary L. Rev. 2197 (2016)..........................................11

*Nimmer on Copyright* (2011)..............................................................3, 24

Peter S. Menell, Mark A. Lemley, & Robert P. Merges, 2 *Intellectual
    Property in the New Technological Age* 641 (2018 edition)............9

iv

Shyamkrishna Balganesh, *The Questionable Origins of the Copyright Infringement Analysis*, 68 Stan. L. Rev. 791 (2016) .....................................14

Stenographic Report of the Proceedings of the First Session of the Conference on Copyright 104 (1905) .......................................15

William B. Hale, *A Treatise on the Law of Copyright and Literary Property* (1917)...........................................................................................................15

## INTEREST AND IDENTITY OF THE AMICI CURIAE

Amici Curiae are intellectual property law professors at schools throughout the United States. Amici have no personal interest in the outcome of this case, but have a professional interest in seeing that copyright law develops in a way that is logical and clear and that achieves the Constitutional objective of promoting the progress of science. No one other than amici has funded or participated in the drafting of this brief. A list of signatories is attached in Appendix A.

## SUMMARY OF ARGUMENT

This Court's precedent on the relationship between access and similarity in proving copying is unclear and inconsistent. This Court should clarify that while a defendant's access to the plaintiff's work is required if there is no direct evidence of copying, proof of greater access does not lessen the burden of showing enough similarity that copying is probable. That burden remains on the plaintiff at all times in an infringement case.

Where, as here, the infringement claim involves a musical composition, this Court should follow traditional doctrine that limited infringement claims to similarity of melody and lyrics. Alternatively, should the Court permit claims based on a "compilation" of unprotectable elements in a musical work, it should apply the "virtual identity" test for infringement the law has developed for just

1

such situations, not the more lenient "substantial similarity" standard the plaintiff advocates.

## ARGUMENT

### I.  The Court Should Clarify the Nature of the Copying-In-Fact Inquiry and Abandon Its Use of the Illogical "Inverse Ratio Rule"

The owner of a valid copyright bears the burden of proving a violation of one of the exclusive rights enumerated in 17 U.S.C. § 106. To prove such a violation, a plaintiff must show two things: (1) that the defendants actually copied the plaintiff's work rather than creating a work independently, and (2) that if such copying occurred, it amounts to an unlawful appropriation of the plaintiff's copyright. *Rentmeester v. Nike, Inc.*, 883 F3d 1111, 1117 (9th Cir. 2018).

In some cases, the plaintiff will have no difficulty proving actual copying. There may be direct evidence of copying such as eyewitness testimony or the defendant's own admission. In *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp*, for example, the defendant expressly told its designers to create characters that were like H. R. Puffenstuff. 562 F.2d 1157, 1164–65 (9th Cir. 1977). In such cases, the court can proceed immediately to the second element and begin to assess whether the defendant's copying was wrongful.

Very often, however, plaintiffs will not be able to demonstrate copying so easily. They must rely on circumstantial evidence. And as with all circumstantial evidence, the fundamental issue for the factfinder is to determine how strongly it

2

supports a particular factual inference. That determination is a question of probabilities. Given the available evidence, is it more likely than not that the defendant copied the plaintiff's work rather than independently created it? *Rentmeester*, 883 F.3d at 1117.

Starting in the early part of twentieth century, American courts began developing the doctrine that would govern the proof that plaintiffs had to offer to establish an inference of copying. *Sheldon v. Metro-Goldwyn Pictures, Corp.* 81 F.2d 49, 54 (2d Cir. 1936); *Kustoff v. Chaplin*, 120 F.2d 551, 560 (9th Cir. 1941); *Arnstein v. Porter*, 154 F.2d 464, 486 (2d Cir. 1946)*.* These courts recognized that if plaintiffs could not plausibly establish that defendants were aware of their works, then there was no way that the defendants could have copied those works. Without access, copying is *impossible*. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).

But what if the plaintiff can show that the defendant may have seen, heard, or otherwise experienced the work prior to creating the allegedly infringing work? At this point, the plaintiff has shown that there is *some possibility* that the defendant copied his work. Given that copying is possible, the plaintiff must now show copying is actually *probable*. The plaintiff must show that, more likely than not, the defendant used the plaintiff's work as a model for its own. 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01[B], at 13-9 (2011). As this and other courts have recognized, the actual strength of that probability now

becomes a matter of the nature of the similarities between the two works.
*Rentmeester*, 883 F.3d at 1117 (plaintiff must show "similarities that are probative
of copying"); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir.
1997).

Two works might be similar for several reasons other than copying. Both of
those works might be copies of a third work that precedes them both, as James
Joyce's *Ulysses* and the Coen Brothers' *O Brother, Where Art Thou?* both copy
Homer's *Odyssey. Ty, Inc.*, 132 F.3d at 1170. Or both works may share similar
features because those features are characteristic of the creative genre. *Darrell v.
Joe Morris Music Co.*, 113 F.2d 80, 80 (2d Cir. 1940) ("[W]hile there are an
enormous number of possible permutations of musical notes of the scale, only a
few are pleasing; and much fewer still suit the infantile demands of the popular ear.
Recurrence is not therefore an inevitable badge of plagiarism."); *Selle*, 741 F.2d at
901. Finally, both creators might independently converge around the same
expression of a given idea, and this can be so even where the second creator had
previously experienced the first creator's work. *Ty, Inc.*, 132 F.3d at 1170. The
prior work may have made no effect on the creator's mind, or he could have
forgotten it entirely.[1]

---

[1] One of us admits to having watched the same movie twice without remembering
the first viewing although his wife proved that they had seen the film together two
years earlier.

4

To prove actual copying through similarities between the parties' works, those similarities should be ones that make the factfinder *suspicious* of copying. They must be *probative* of copying. *Ty, Inc.*, 132 F.3d at 1170. They may include repetitions of errors in the plaintiff's work, like the mannequin's double hairline in *Pivot Point International, Inc. v. Charlene Products, Inc.* 372 F.3d 913, 916 (7th Cir. 2004), or the similarities found in copying "traps" like the fictitious telephone-directory names in *Feist Publications, Inc. v. Rural Telephone Service Company,* 499 U.S. 340, 343 (1991). In such cases, where the likelihood of independent creation is small, a single point of similarity may be enough to establish an inference of copying. Moreover, that single point need not be an otherwise protectable aspect of the plaintiff's expression. *Rentmeester*, 883 F.3d at 1117 ("To prove copying, the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently.")

Two works may also share enough similarities that the combined probabilities of each showing up together in the same work would support an inference of copying even though only one or two such similarities would not. For example, two rap song creators might independently choose the same name for their songs, or the same quotation from Friedrich Nietzsche, or the same simple

5

rhyme, or a similar reference to the model Kate Moss, but the probability that *all four* of those similarities would arise in the two songs independently is considerably lower. *See Peters v. West*, 692 F.3d 629, 634-36 (7th Cir. 2012).

In all these situations, the key issue is the strength of the inference that can be derived from the nature of the alleged similarities. Never does the factfinder need to think further about the degree of access that the defendant had to the plaintiff's work. Proof of access only gets a plaintiff over the threshold showing that copying is not impossible. *Ty, Inc.*, 132 F.3d at 1170 ("[A]ccess does not entail copying"). After that, it does not influence the strength of the inference of copying at all. It should drop out of the inquiry entirely.

This Court has not always embraced this point. Instead, this Court sometimes has declared that if the defendant admits to having access to the plaintiff's work or if the amount of access is "high," then the plaintiff need not demonstrate as much similarity between the two works. This seems to stem from its misreading of *Arnstein v. Porter* in *Sid & Marty Krofft*. Whereas *Arnstein* established the two separate elements of infringement of the reproduction right as copying-in-fact and unlawful appropriation, *Sid & Marty Krofft* instead declared the elements to be (1) access and (2) substantial similarity. 562 F.2d 1164. This misreading obscured the difference between the kinds of similarities that are relevant for proof of copying-in-fact and those that are relevant for unlawful

6

appropriation. Because there the defendant's representatives met with the plaintiff to discuss working together, the court determined "that this degree of access justifies a lower standard of proof to show substantial similarity." *Id* at 1172.

This so-called "inverse ratio rule" has fundamentally undermined one of copyright's bedrock principles—that independent creation is not an infringement. The inverse ratio rule is widely condemned by other courts and scholars. *See, e.g.*, *Arc Music Corp. v. Lee*, 296 F.2d 186, 187 (2d Cir. 1961); 3 William F. Patry, *Patry on Copyright* § 9:91, at 9-243 (West 2007) (concluding that "[i]t is time the inverse ratio 'theory' be killed off permanently"); Alan Latman, *Probative Similarity As Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement*, 90 Colum. L. Rev. 1187 (1990); Mark A. Lemley, *Our Bizarre System for Proving Copyright Infringement*, 57 J. Copyright Soc'y U.S.A. 719, 721 (2010); David Aronoff, *Exploding the Inverse Ratio Rule*, 55 J. Copyright Soc'y U.S.A. 125 (2008).

Although this misreading has caused substantial mischief in this Circuit's copyright jurisprudence, a recent panel decision by this Circuit has corrected the mistake. In *Rentmeester*, the court clarified the absolute separation between the copying-in-fact element and the unlawful appropriation element when it refused the plaintiff's request for an "inverse ratio" instruction on the second element even though the defendant's admitted the first element. *Rentmeester*, 883 F.3d at 1124

("The showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown."). In no case, *Rentmeester* held, will evidence of access affect the plaintiff's burden of proof for the unlawful appropriation element of copyright infringement.

That clarification was welcome, and this Court should reaffirm it here en banc. But it should also join its sister circuits and a chorus of scholars to reject the inverse ratio rule even for proof of copying-in-fact. *Arc Music Corp. v. Lee*, 296 F.2d 186, 187 (2d Cir. 1961); Patry, *Patry on Copyright* at 9-243; Latman, 90 Colum. L. Rev. at 1187; Lemley, 57 J. Copyright Soc'y U.S.A. at 721; Aronoff, 55 J. Copyright Soc'y U.S.A. at 125. Although proof of access to the plaintiff's work is essential for establishing the possibility of copying, "more" access to the plaintiff's work—whatever that even means—does not logically increase the probability that the defendant copied from the plaintiff. Proof of access can establish that copying was not impossible, but beyond that it does not affect the strength of the inference to be drawn about the probability of copying. That inference is a solely a matter of the probative or suspicious similarities between the two works.

Consider the situation in this case. When the members of Led Zeppelin wrote "Stairway to Heaven" in 1970–71, they may have had some access to Spirit's song "Taurus." But, at the same time, they had far more access to The

Rolling Stones' "Honky Tonk Women," Simon & Garfunkel's "Mrs. Robinson," and "London Bridge Is Falling Down." No one, however, would think that it is more likely that "Stairway to Heaven" is copied from one of those works than that it is copied from the plaintiff's work, and the reason is simple: "Stairway to Heaven" does not share any similarities with those works that suggest that it was copied from them. More access to a work is not more probative of copying.

The fact that this Court is considering the rules for infringement en banc provides an opportunity to clarify two other issues about the standard. The first is linguistic. The Court should no longer refer to the degree of proof that the plaintiff must establish to show copying as "substantial similarity." As you know, sometimes words have two meanings. That is true of "substantial similarity." Both similarity probative of copying in step one and similarity of expression that rises to the level of unlawful appropriation in step two have both been referred to as "substantial similarity." *E.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (confusing the two elements of copying-in-fact and unlawful appropriation); Peter S. Menell, Mark A. Lemley, & Robert P. Merges, 2 *Intellectual Property in the New Technological Age* 641 (2018 edition) (describing this confusion and recommending the terms "probative similarity" in step one and "unlawful appropriation" in step two). The term "substantial similarity" misrepresents the nature of the similarities that are relevant. In the

9

absence of direct evidence or an admission of copying, the copying-in-fact element

will be a fact-intensive, medium- and genre-specific inquiry into the strength of the

inference to be drawn from a particular set of similarities. To motivate an inference

of copying, the similarities between the plaintiff's work and the defendant's do not

need to be numerically substantial. Rather, they need to be probative of copying.

They need to generate the suspicion that the defendant copied instead of

independently created his work.

Second, this Court should clarify that the burden of proof for copying-in-fact

always rests with the plaintiff. Some decisions have stated that once the plaintiff

demonstrates access and substantial similarity the burden shifts to the defendant to

prove independent creation. *See, e.g., Three Boys Music Corp.*, 212 F.3d at 486.

If this statement simply means that once the plaintiff has produced evidence

demonstrating that copying is more likely than not the defendant will have to

dispute that evidence in order to win on this element, then it is a correct, if

unnecessary, statement of the burden.[2] We fear, however, that courts have a more

dramatic burden-shifting approach in mind or that jurors may interpret it as such. It

is not the case that where the plaintiff has shown access and some degree of

---

[2] It is unnecessary because it is true of any element of any cause of action in the law. Once the plaintiff has adduced sufficient evidence to establish that an element by a preponderance of the evidence, the defendant will lose if it does not rebut the evidence. We believe that this is what this court meant in *Rentmeester,* 883 F.3d at 1117.

similarity, the defendant must prove independent creation by a preponderance of the evidence. The burden of proof for each element of the prima facie case of copyright infringement always rests with the plaintiff.

## II. The Court Should Follow Congress's Intent and Its Own Precedents to Properly Constrain the Scope of Copyright for Musical Compositions and Claims Based on Original Selection and Arrangement

As *Rentmeester* explained, the second element of the plaintiff's prima facie case for infringement of the reproduction right is unlawful appropriation. 883 F.3d at 1117. Unlike the copying-in-fact inquiry, which is a purely evidentiary determination, the unlawful appropriation inquiry is a more normative judgment about whether the plaintiff should get to control some aspect of the defendant's expression. Here, the principal issues—and the ones at the heart of this case— involve determining the scope of the plaintiff's copyright. What aspects of the plaintiff's work receive copyright protection, and how broadly does that protection stretch to cover other expression? *See* Mark A. Lemley & Mark P. McKenna, *Scope*, 57 Wm. & Mary L. Rev. 2197 (2016).

We make two points about unlawful appropriation. First, this Court should follow congressional intent and longstanding judicial practice of limiting musical work copyrights to the lyrics and melody of the composition, at least for works that were created under the 1909 Copyright Act. The selection and arrangement of elements other than lyrics and melody have not historically been protected at all,

11

and this Court should not disturb that history. Alternatively, if this Court allows the plaintiff to proceed on a copyright claim based on the original selection and arrangement of otherwise unprotectable elements, it should follow its precedents in *Satava* and numerous other cases and limit the scope of infringement to "virtually identical" copying. Either ruling would restore much-needed clarity to the scope of musical-composition copyrights.

### A.   Copyright in Musical Works Extends Only to Lyrics and Melody

Since Congress first extended copyright protection to music in 1831, the copyright in the instrumental portions of a song has almost always covered just one thing: the melody. See Joseph P. Fishman, *Music as a Matter of Law*, 131 Harv. L. Rev. 1861, 1873–83 (2018) (reviewing the history of music infringement cases before the 1976 Act's passage).[3] Courts applying the 1909 Act protected the series of pitches and their corresponding durations: what we colloquially call the tune. They did not, by contrast, protect what Skidmore is asking this Court to protect, whether it's "repeated eighth-note beats" or "the chords associated with a chromatic bassline" or the sort of multielement selection-and-arrangement theory that he has called a "central element" of his infringement claim. Plaintiff's App. Brief, at 58. Because selection-and-arrangement claims have become common in

---

[3]   Lyrics are also protected by copyright, but there is no allegation of infringement of Spirit's lyrics here.

12

copyright's other subject-matter areas, one might initially think they would be equally at home in a music case. But notwithstanding this Court's comment in *Swirsky v. Carey* that unlawful appropriation could occur through a combination of individually unprotected elements like "chord progression, key, tempo, rhythm, and genre," 376 F.3d 841, 848 (9th Cir. 2004), music cases haven't historically worked this way.[4] Nor should they. Because focusing on the melody makes the music infringement test far more predictable for both songwriters and lawyers, this Court should resolve Skidmore's claim by adhering to the narrow scope of melodic inquiry that courts have traditionally applied.

To begin with, extending the scope of protection for a work created in 1967 to selection and arrangement would be deeply anachronistic. The author of "Taurus" could not have reasonably expected his copyright to cover more than the notes of the melodic line. Up until very recently, courts had operated on the principle that, as one decision explained it, "neither rhythm nor harmony can in itself be the subject of copyright" and "[i]t is in the melody of the composition—or the arrangement of notes or tones that originality must be found." *N. Music Corp. v. King Record Distributing Co.*, 105 F. Supp. 393, 400 (S.D.N.Y. 1952); *accord*

---

[4] Although this language is concededly broad, even in *Swirsky* itself the actual object of the Court's analysis was a sequence of pitches. The Court included this observation in the midst of considering an expert opinion that certain notes from the work were more important than others. *See* 376 F.3d at 846–48.

*Siskind v. Newton-John*, No. 84 Civ. 2634, 1987 WL 11701, at *5 (S.D.N.Y. May 22, 1987) (citing *Northern Music* for the proposition that "it is the melody which is the most important feature of the music" and therefore finding no infringement based on a lack of melodic similarity).

That proposition has an extensive pedigree. Judge Learned Hand concluded in *Hein v. Harris* that infringement occurs only when "to the ear of the average person the two [parties'] melodies sound to be the same." 175 F. 875 (C.C.S.D.N.Y.), *aff'd*, 183 F. 107 (2d Cir. 1910); *see also Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 147 (S.D.N.Y. 1924) (Hand, J.) (focusing the infringement inquiry on a quantifiable series of pitches in an instrumental accompaniment); Shyamkrishna Balganesh, *The Questionable Origins of the Copyright Infringement Analysis*, 68 Stan. L. Rev. 791 (2016) (noting that across several music cases, Judge Hand demanded that "for copying to be actionable, the melody itself needed to be copied, regardless of how extensive other copying was"). Two years earlier, while interpreting an earlier version of the Copyright Act, the Supreme Court stated that copyright in a musical work protects against copying "the compilation of notes which, when properly played, produces the melody which is the real invention of the composer." *White-Smith Music Publishing Co. v. Apollo Co.*, 209 U.S. 1, 11 (1908).

14

The Copyright Act of 1909, which governed at the time of the creation of both works at issue here, likewise suggests that music infringement claims should be limited to allegations of melodic copying. It grants the owner of a musical-work copyright the exclusive right "to make any arrangement or setting of it *or of the melody of it* in any system of notation or any form of record." Copyright Act of 1909 § 1(e) (emphasis added). Only melody is singled out from the overall work for purposes of defining the owner's reproduction right. That provision echoes the comments of Thorvald Solberg, the first Register of Copyrights, who during the Library of Congress' hearings leading up to the 1909 Act's passage explained that "the copyright in musical works" means "the melody or the theme." Stenographic Report of the Proceedings of the First Session of the Conference on Copyright 104 (1905). An influential treatise that was published a few years after the legislation's enactment similarly defined infringement of a musical work as an act of copying that results in a scenario where "the theme or melody of two musical works is substantially the same." William B. Hale, *A Treatise on the Law of Copyright and Literary Property* § 320 (1917).

True, many contemporary musical works contain original elements well beyond their melodies. *See* Fishman, 131 Harv. L. Rev. at 1897–1902. One might think it follows from that premise that copyright must therefore protect each of

15

those elements and their various permutations.[5] But the copyright system has never required such a logical leap. Across subject matter as diverse as architecture, useful articles, typography, and choreography, copyright law has often withheld protection from creative expression that could in theory be protected. *See* Christopher Buccafusco, *A Theory of Copyright Authorship*, 102 Va. L. Rev. 1229, 1236 (2016) (explaining that historically Congress has not employed its full constitutional powers when granting copyright protection).

For example, when Congress added protection for architectural works in 1990, it extended that protection only to "buildings," not to other kinds of physical structures. Architectural Works Copyright Protection Act, Pub. L. No 101-650, 104 Stat. 5089, 5133 (1990). Accordingly, the Copyright Office will not register bridges, cloverleafs, or dams even though they may contain architectural creativity. 37 C.F.R. § 202.11. Choreography presents an even closer analogy. Under the 1909 Act, choreographic compositions could only be protected as "dramatic works" if they embodied or represented a narrative story. Jessica Goudreault, *Copyrighting the Quotidian: An Analysis of Copyright Law for Postmodern*

---

[5] Congress did expand the scope of protection for music in 1972 by adding a separate copyright for sound recordings. That copyright, unlike the one at issue here, covers the recording itself and does extend beyond just lyric and melody to the actual sounds generated. But copyright in the sound recording is not at issue here, and there is no allegation that Led Zeppelin copied Spirit's sound recording of "Taurus."

*Choreographers*, 39 Cardozo L. Rev. 751, 766 (2017). Yet even when Congress extended protection to choreography in the 1976 Act, it chose not to protect all aspects of choreographic creativity. Social dance steps and ballroom dances did not receive protection. *Id*. at 767. According to the House Report, "The three undefined categories—'musical works,' 'dramatic works,' and 'pantomimes and choreographic works'—have fairly settled meanings. There is no need…to specify that 'choreographic works' do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 53–54 (1976). Here, Congress explicitly linked musical works and choreographic works as categories with settled jurisprudential meanings that did not extend to the full range of creative authorship. That music should receive less than the absolute broadest scope that Congress is constitutionally entitled to grant it is thus entirely unexceptional—particularly given the separate set of protections for sound recordings, including nonmelodic elements embodied within them.

The question in this case is how far the scope of infringement extended at the time the relevant work was created fifty years ago. If the Court were now retroactively to broaden that scope further, it would profoundly and unfairly interfere with long-settled expectations. Think of other songwriters who a year after the song's creation date used elements from the work that they all correctly understood at that time to be unprotected. For decades, their songs would have

17

been unobjectionable. But those same songs would suddenly be transformed into infringing copies, subject to infringement claims—just like this one—that would once have been dismissed. And because the Supreme Court eliminated laches as a defense in copyright cases in 2014, *Petrella v. Metro Goldwyn-Mayer, Inc.*, 572 U.S. ___; 134 S. Ct. 1962; 188 L. Ed. 2d 979 (2014), they could all bring suit based on decades-old acts of what has newly been defined to be infringement. The best way to avoid such submarine infringement liability is for courts to set copyright's scope at the time protection was first secured.

That a melody-centered infringement test is what people would have expected in 1967 isn't the only reason the Court should adopt it here. It's also a better test on the merits. *See* Fishman, 131 Harv. L. Rev. at 1907–10. It makes copyright scope more certain at the margins as to what's permissible and what's not. Second comers could reasonably predict if they would be violating the owner's reproduction right. The more ill-defined the range of infringing similarities becomes, the harder it becomes to make such predictions correctly. Recent cases before this Court have rightly raised the concern about "draw[ing] the line between protectable and unprotectable expression so broadly that future authors, composers and artists will find a diminished store of ideas on which to build their works," *Williams v. Gaye*, 895 F.3d 1106, 1142 (2018) (Nguyen, J., dissenting) (quoting *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1142,

18

1218, 1225 (11th Cir. 2008) (internal quotation marks omitted). To avoid that overbreadth, this Court should reject Skidmore's proposed selection-and-arrangement theory and instead retain music copyright's traditional standard.

    **B.    A Plaintiff Who Bases His Claim of Infringement on Narrow Features of the Work that Have Been Selected and Arranged from Unprotectable Material Must Demonstrate Virtual Identicality between the Defendants' Work and His Own**

The panel opinion in this case found reversible error in the district court's failure to instruct the jury that it could consider the originality inherent in the selection and arrangement of public-domain elements as a component of the plaintiff's copyright. *Skidmore v. Led Zeppelin*, 905 F.3d 1116, 1129 (9th Cir. 2018). Should this court uphold that aspect of the panel opinion, it should clarify that, according to numerous precedents in this circuit, the scope of a selection-and-arrangement copyright is very thin and requires proof of virtual identicality to be actionable.

The panel opinion of this Court relied on *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003), for the proposition that "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Skidmore*, 905 F.3d. at 1126. The panel opinion also relied upon *Swirsky*, which itself relied on *Satava*, for the claim that original selection and arrangement of unprotectable musical elements is

19

copyrightable as a "compilation" under 17 U.S.C. § 103(b). *Swirsky*, 376 F.3d at 848.

Accepting that a compilation theory of originality applies to musical works does not end the inquiry, however. As numerous Ninth Circuit cases ranging from 1994 until just last year have explained, when the aspect of plaintiff's work that is allegedly infringed is original as a matter of plaintiff's selection and arrangement of unprotectable elements, the scope of plaintiff's copyright is very "thin" because it doesn't extend to the elements of the work themselves. A plaintiff asserting copyright in a work entitled only to thin protection must prove that the defendant's work is virtually identical to its own in order to prevail. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994); *Satava*, 323 F.3d at 812; *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003); *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 914 (9th Cir. 2010); *Folkens v. Wyland Worldwide, Inc.*, 882 F.3d 768, 776 (9th Cir. 2018). Otherwise, the plaintiff's copyright would unduly limit future creators' use of public domain material.

In *Satava,* the court held that plaintiff's glass-in-glass jellyfish sculptures were largely based on uncopyrightable ideas or facts that arose from nature. 323 F.3d at 811. Nonetheless, the court did not deny protection to the plaintiff entirely. Instead, it held that "Satava's copyright on these original elements (or their combination) is 'thin'. … Satava possesses a thin copyright that protects against

only virtually identical copying." Id. at 812. *Satava* itself relied on this Court's holdings in *Ets-Hokin* and *Apple*, which each found that selection and arrangement of elements from a limited pool of unprotectable elements could entitle the plaintiff to a "thin" or "narrow" copyright, requiring virtual identity between plaintiff's and defendant's works. *Ets-Hokin*, 323 F.3d at 766 ("When we apply the limiting doctrines, subtracting the unoriginal elements, Ets Hokin is left with ... a 'thin' copyright, which protects against only virtually identical copying."); *Apple,* 35 F.3d at 1439 ("When the range of protectable expression is narrow, the appropriate standard for illicit copying is virtual identity.").

More recent opinions in this circuit have followed suit. In *Mattel*, the court noted the "highly constrained" expression associated with combining basic features of fashion dolls to limit the plaintiff to "only thin copyright protection against virtually identical copying." 616 F.3d 915. And last year, in *Folkens,* this Court upheld a grant of summary judgement of noninfringement because the plaintiff's representation of two dolphins swimming in a natural formation was only entitled to thin copyright protection. 882 F.3d 776.

In each of these cases, where the plaintiffs were asserting that the aspects of their works that were infringed were protectable according to their original selection and arrangement of otherwise unprotectable elements, this court limited the scope of their protection to a thin copyright. To the extent that the plaintiff's

21

claim rests on a narrow claim of selection and arrangement of public-domain material, it follows that the plaintiff's claim derives from an area of limited creative opportunity. By protecting the plaintiff only with a thin copyright, the courts ensure that future creators will also be able to create in this area. *Satava*, 323 F.3d at 813. Accordingly, each of these plaintiffs lost because they were not able to demonstrate the requisite virtual identicality.

By contrast, this court's opinion in *Swirsky* stands out in allowing the plaintiffs to proceed with a selection-and-arrangement claim with broad copyright scope. Citing *Satava,* the *Swirsky* court held that a combination of individually unprotected elements such as chord progression, key, tempo, rhythm, and genre could receive copyright protection. 376 F.3d at 848. But unlike *Satava* and the other cases discussed above, the court granted the plaintiff broad protection against "substantially similar" rather than virtually identical copying. *Id.* We have no doubt that if the court had applied the virtually identical standard rather than the substantially similar standard, it would not have upheld the jury's verdict.[6]

---

[6] The only other case from this circuit that we have found that allowed a plaintiff broad copyright protection based on a combination of unprotectable elements is *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106 (9th Cir. 1970). That opinion, however, is perhaps the most frequently lamented opinion by this court, and its "overall look and feel" approach is rejected by the Copyright Office. Compendium of the Copyright Office, § 310.4 (2014) ("The U.S. Copyright Office will not consider the so-called 'look and feel' of a work. Invoking a work's 'feel' is not a viable substitute for an objective analysis of the work's fixed and creative elements.").

In this case, plaintiff proposed an instruction on selection and arrangement, but the instruction incorrectly failed to include a "virtual identicality" requirement. Record, at VIII-ER-1968-1970. Defendants, for their part, also proposed a selection-and-arrangement instruction, but theirs correctly limited the scope of any resulting copyright to virtually identical copying. Record, at VIII-ER-2032-2034. The defendants' instruction was the correct one, and this Court should approve of it if it allows the plaintiff to proceed on a compilation theory of protectability.

That approval would not require a virtual-identity standard to be applied in every music infringement case. Any work of authorship is at some level a selection and arrangement of individually unprotected constituent parts. A novel is a compilation of individual words, and a melody is a compilation of individual notes. In order to avoid the argument proving too much, this Court has been appropriately careful not to let defendants always secure a more permissive infringement standard simply by recharacterizing the plaintiff's work as the sum of its parts. *See LA Printex Indus. v. Aeropostale, Inc.,* 676 F. 3d 841, 848 (9th Cir. 2012) (noting the absurdity of the argument that a painting would be unprotectable because "all colors of paint have been used somewhere in the past") (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003 (2d Cir.1995)). Instead, this Court and others have focused on the potential range of creative choices available within the constraints of the selection and arrangement at issue. The fewer the choices

23

available to the author, the thinner the copyright. *See, e.g.*, *Apple*, 35 F.3d at 1439; *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 943 (10th Cir. 2002) ("[M]ore similarity is required when less protectible matter is at issue.") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[A], at 13-28 (2000)).

Had the plaintiff here tried to show that "Stairway to Heaven" was, as a whole, an unlawful appropriation of "Taurus," then an instruction regarding substantial similarity may have been appropriate. That theory of infringement would have been analogous to the one in *Williams*, which allowed a substantial-similarity jury instruction where the issue was non-literal similarity of the entire compositions. 895 F.3d at 1121. But the plaintiff here instead points to only certain aspects of a short snippet of its work, where songwriters' possible range of choices was far more tightly constricted. This plaintiff, like all plaintiffs in such circumstances, must prove that those aspects are virtually identical in each work.

This higher standard is essential to maintaining an optimal balance in copyright law. As this Court stated in the conclusion of its *Satava* opinion:

> We do not mean to short-change the legitimate need of creative artists to protect their original works. After all, copyright law achieves its high purpose of enriching our culture by giving artists a financial incentive to create. But we must be careful in copyright cases not to cheat the public domain. Only by vigorously policing the line between idea and expression can we ensure both that artists receive due reward

24

for their original creations and that proper latitude is granted other
artists to make use of ideas that properly belong to us all.

323 F.3d at 813.

## CONCLUSION

This Court should clarify its test for infringement to make clear that proof of

access does not dispense with the need to show probative similarity, and that in

music cases the level of similarity required is higher when the claim is based only

on a combination of known elements rather than on the melody of the song.

Dated: July 1, 2019                    Respectfully submitted,

                                       /s/ Mark A. Lemley
                                       Mark A. Lemley
                                       STANFORD LAW SCHOOL

                                       *Counsel for Amici Curiae*
                                       *19 Intellectual Property Professors*

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Federal Rules of Appellate Procedure 29, 32(a)(5), 32(a)(7), and Circuit Rule 29-2, the foregoing brief is proportionally spaced, has a typeface of 14-point Times New Roman, and contains 5,983 words, excluding those sections identified in Fed. R. App. P. 32(f).

Dated:  July 1, 2019       /s/ Mark A. Lemley
                                  Mark A. Lemley

**Appendix A**
**List of Signatories[7]**

Professor John R. Allison
McCombs Graduate School of Business
University of Texas at Austin

Professor Annmarie Bridy
University of Idaho School of Law

Professor Christopher Buccafusco
Benjamin Cardozo School of Law, Yeshiva University

Professor Joseph Fishman
Vanderbilt University Law School

Professor Bryan L. Frye
University of Kentucky College of Law

Dean Jon M. Garon
Nova Southeastern University School of Law

Professor Deborah R. Gerhardt
University of North Carolina School of Law

Professor Jim Gibson
University of Richmond School of Law

Professor Paul J. Heald
University of Illinois College of Law

Professor Stacey M. Lantagne
University of Mississippi School of Law

Professor Mark A. Lemley
Stanford Law School

---

[7] All signatories sign in their individual capacity. Institutions for identification purposes only.

Professor David S. Levine
Elon University School of Law

Professor Yvette Joy Liebesman
St. Louis University School of Law

Professor Jonathan S. Masur
University of Chicago School of Law

Professor Mark P. McKenna
Notre Dame Law School

Professor Michael J. Meurer
Boston University School of Law

Professor Matthew Sag
Loyola University-Chicago School of Law

Professor Pamela Samuelson
Berkeley Law School

Professor Joshua Sarnoff
DePaul University School of Law

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Mark A. Lemley
Mark A. Lemley