# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

───────────────────────────

Skidmore v. Led Zeppelin *et al.*

Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Appellant.

───────────────────────────────────────

Appellant Michael Skidmore's Response in Opposition to Musicologists' Motion for Leave to File Amicus Curiae Brief

────────────────────────────────────────

(Music copyright infringement, from the September 28, 2018 panel opinion reversing in part, affirming in part orders of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California. The case was docketed in the Central District at 15- cv-03462)

────────────────────────────────────────

Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph (AJ) Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Michael Skidmore*

Appellant Michael Skidmore's Response in Opposition to Musicologists' Motion for Leave to File Amicus Curiae Brief

Jimmy Page and Robert Plant had an infinite number of ways to write "Stairway to Heaven"; out of these infinite choices they deliberately chose to use "Taurus" to write the first 2:14 minutes of their magnum opus ***precisely because it was unique and brilliant***. It contained that *je ne sais quoi* that all artists strive for, the protection of which is the *raison d'être* of copyright law. Page and Plant owned the album version of the "Taurus," opened for Spirit, covered Spirit's songs live, and stated in interviews that they held Spirit in high regard. It is ironic in the extreme—now that these notes written by Wolfe have become famous and been zealously protected by Led Zeppelin for decades—that Led Zeppelin and its allies are trying to gaslight Appellant and the court system into believing that this iconic musical expression is unoriginal and has never been protected by copyright law.

Appellant Michael Skidmore (Appellant), as Trustee for the Randy Craig Wolfe Trust, respectfully requests that this proposed amici brief be denied because (1) the amici have undisclosed financial and other interests dependent on the outcome of this litigation which have not been fully disclosed, (2) this amicus brief does not address issues appropriate for en banc review, and is instead a musicological expert report, (3) the amici do not address the deposit copy issue, (4) the amici incorrectly compare this case to the Blurred Lines case, (5) the amicus brief uses the

wrong definition of "originality" when claiming that "Taurus" is not original, (6) the amicus brief misstates Appellant's positions and Dr. Alexander Stewart's analysis, and (7) it incorrectly applies thin copyright to musical works when artistic expression is afforded broad protection.

I. THE AMICI HAVE INTERESTS IN THIS MATTER WHICH HAVE NOT BEEN FULLY DISCLOSED

The amici musicologists seek to portray their interest in this case as scholarly and in the best interests of the court system. However, the erroneous and inapplicable virtual identity standard they are advocating for, as opposed to the substantial similarity standard, will benefit them professionally and/or financially—especially when working for deep-pocketed record companies and successful recording artists.[1] The applicable rules provide that all such interests should be disclosed. See FRAP 29(a)(3) (motion for leave to file amicus brief must disclose movants' interests).

Before this Circuit accepts their brief, they should be required to disclose all such cases, their clients, and their compensation. They should especially be required to identify any cases they are associated with in which arguments similar to the ones they advance in the proposed amicus brief have already been made. Are they acting purely as a friend of the court or are other interests implicated?

---

[1] For instance, Dr. Lawrence Ferrara, the expert for the Led Zeppelin's appellees, was paid over $80,000 for his role in the case. (Excerpt 1034-35)

Moreover, the prosed amicus brief is not a legal brief, but instead a musicological report that spends almost all its pages attempting to undercut Appellant's musicologist's opinion. These musicologists are essentially attempting to enter as experts in this case and be treated as such, but have provided no indication as to the extent of their research into the subject songs, been qualified, or disclosed their conflicts of interest. The experts retained in this case, Drs. Stewart and Ferrara, have spent many months transcribing, researching, and analyzing the musical expression at issue. While musicological opinions may differ, and the handful of musicologists whose names appear on this brief may disagree with Appellant's positions in this case, the court does not know their methodology, has no way of knowing whether the proposed amici have read the numerous musicological reports, examined the musical transcriptions, lead sheets, and recordings, and other materials.

## II. The Proposed Amicus Brief will Not Facilitate En Banc Review and asks this Circuit Court to Decide a Dispute of Fact Between Musicologists

The proposed amici seek to convince this Circuit that Plaintiff's expert musicologist, Dr. Alexander Stewart, was wrong in his analysis (as explained below, they seriously misstate Dr. Stewart's position). However, en banc review is meant for the raising of novel or complex legal issues. Attempting to disqualify Plaintiff's expert is not a novel or complex issue appropriate for en banc review, and it is not properly raised at this late hour outside of the full adversarial process. As noted, these

musicologists have not been admitted or vetted as experts. The proposed amici are inappropriately asking this Circuit to weigh and decide factual disputes between musicologists. Dr. Stewart is well-qualified and his opinions are musicologically sound.

Not only is the request that this Circuit dismiss Dr. Stewart's opinions far outside the role of an appellate court—especially one sitting for en banc review—it is also off topic. While this Circuit retains jurisdiction over the whole case during en banc review, the only issue that has in fact been fully briefed for en banc review is the deposit copy issue. See Ninth Circuit Rule 35-2.

### III. The Proposed Amicus Brief Fails to Address What Will Happen if the Circuit Rules in Appellant's Favor on the Deposit Copy Issue

Appellant Skidmore further notes that the proposed amicus brief declaring Dr. Stewart's opinion wrong is premised solely on the deposit copy version of "Taurus." However, currently under en banc review is whether "Taurus's" album composition should have been used in the comparison instead.

If this Circuit decides that the district court based the comparison on the wrong version of "Taurus"—as Appellant Skidmore contends it should do upon en banc review—then the proposed amici's brief (and Dr. Ferrara's testimony) must be thrown out for using the wrong composition. See Plaintiff's Brief, at p.39; Dr. Stewart's report at Excerpt 2122-23; Plaintiff's Reply Brief, at p.31-32, fn6 (stating

"Stewart's conclusion regarding the 'Taurus' album version's composition was that 'During the first 18 notes [the] basic melodic sequence is virtually the same' as compared to 'Stairway to Heaven', and that the songs are so striking similar it precludes 'the possibility of coincidence or independent creation.' (See Excerpt 1789, 1791).").[2]

The proposed amici have not considered and have not addressed the validity of Dr. Stewart's opinions if the album composition of "Taurus" forms the basis of the substantial similarity comparison, instead of the deposit copy.

IV. THE PROPOSED AMICUS BRIEF INCORRECTLY COMPARES THIS CASE TO THE BLURRED LINES CASE WHEN THE SAME BRIEF ADMITS THE TWO CASES ARE DISSIMILAR

The proposed amicus brief is obsessively focused on comparing this case to that of the Blurred Lines case, despite the fact that there is no real comparison. See Amici Brief, at p.4-5. The proposed brief states that in Blurred Lines there was no "melodic, harmonic or rhythmic similarity" and that all that was at issue was an "alleged constellation of similarities" which amici claim did not bear any resemblance to each other, other than feel and groove. Id. They claim that this case is the same and that there is no actual musical similarity. Id.

---

[2] It should be noted that both defense and plaintiff's experts initially analyzed "Taurus" and "Stairway to Heaven," they both utilized the album composition of "Taurus." (Excerpt 1626).

Without addressing whether the Blurred Lines decision was correct, it is self-evident on the face of the amicus brief that this case bears no resemblance to the Blurred Lines matter. The harmonies and rhythms are almost identical between the songs in *this* case, and there are substantial melodic and other similarities as well. Indeed, the proposed amici forthrightly admit that "Taurus" and "Stairway to Heaven" *are musically similar*. See Amici Brief, at p.11-12 (claiming that use of the same minor chromatic line in "Taurus" and copied in "Stairway to Heaven" is unoriginal). It is nonsensical to claim that there are no similarities in the instant matter except a feel and groove (as amici claims was the case in Blurred Lines), but then admit that there is in fact a major musical similarity. The real dispute here is that amici simply do not think, like the Led Zeppelin appellees, that anything protectable was copied. Skidmore's musicologist, Dr. Stewart, disagrees and testified that protected musical similarities were copied in "Stairway to Heaven."

Any comparison of this case to the Blurred Lines case is a non sequitur. This is not a "feel and grove" case. This is a case where the underlying composition is practically identical, as Dr. Stewart has explained that "Stairway to Heaven" copies 18 notes from "Taurus," and repeats them for the first 2:14 minutes of "Stairway to Heaven," the most iconic part of the song. See Plaintiff's Reply Brief, at p.31-32, fn6. Indeed, this is exactly the type of case where musicologists may legitimately differ on the appropriate outcome. To ask this appellate court on en banc rehearing

to decide such a factual dispute, and declare that Dr. Stewart's analysis is wrong because the proposed amici are upset about an entirely different case with different songs, misconceives this appellate court's role.

V. THE PROPOSED AMICUS BRIEF INCORRECTLY DEFINES ORIGINALITY, CONFLATING THE CONCEPT WITH NOVELTY

Throughout the amicus brief it repeatedly claims that the expression in "Taurus" is not "original." It is curious then that the brief never addresses the definition of originality. "In this circuit, the definition of originality is broad, and originality means little more than a prohibition of actual copying." Swirsky, 376 F.3d at 851. The standard jury instruction states: "In copyright law, the 'original' part of a work need not be new or novel." (Excerpt 2029-30).

There is no evidence in the record that Randy Wolfe copied the music he wrote in "Taurus" from anywhere else (it is in fact unique), nor do the amici point to any. Yet, the amicus brief repeatedly claims that the musical expression at issue is "unoriginal," erroneously conflating originality with novelty (Appellant contends that "Taurus" is in fact novel too). This is a basic error and radically undercuts the points the proposed amicus brief is trying to make.

VI. THE PROPOSED AMICUS BRIEF FAILS TO ADDRESS DR. ALEXANDER STEWART'S CONCLUSIONS, INSTEAD REGURGITATING THAT OF LED ZEPPELIN'S MUSICOLOGIST

**First**, the proposed amici erroneously claim that the minor chromatic bass line

is not original. They characterize it as "a descending chromatic bass line moving in half steps from the first to the fourth degree of the scale." Amici Brief, at p.11. This is demonstrably incorrect because, if true, there would be an additional two notes (5 and flat 5) before arriving at 4.

Setting aside the incorrect description of the musical element at issue (and the erroneous usage of the term "original"), the amici provide almost no analysis at all to support their contention this element is not novel, and completely ignore the testimony of Dr. Stewart they seek to disqualify. See Amici Brief, at p.11-12. It is evident they ignore Dr. Stewart because they have no rebuttal to his testimony:

| | |
|---|---|
| MR. MALOFIY: | Okay. Let's go to the minor chromatic line. You identified this as one thing that's unique and memorable. Can you share why the minor chromatic line is used in a unique and memorable way? |
| DR. STEWART: | You know, the minor chromatic line is something that's been used in music for quite a long time, and like a lot of the building blocks of music, **the challenge for any composer is to use it in a new and creative way, an original and creative way**. |
| | And I think that in both of these works, ""Taurus"" and "Stairway," **the composers -- at least in ""Taurus","** the composer found a way to use it in a way that is unlike other works that use this line**. |
| | And one of the things that's very different is instead of going through all six pitches of the chromatic line, all the way to the E, which is where, typically, this progression goes, and as we'll see in all the other examples of pieces of music that the defense has come up with, they always pass through E, or the fifth |

> note of the scale, before they go back to the beginning again.
>
> So one of the important ways that I think that you see this similarity between these two works is that they both do this very unusual thing. **In fact, I don't know any other pieces that do it, and the defense hasn't come up with any that do treat this line the way that they ["Taurus" and Stairway] do**.

(Excerpt 786-87) (emphases added) (Trial Exhibit 501-1, 502-1, 503-1). This testimony has never been rebutted. Plainly this work has more than the required modicum of creativity. No other prior art cited by the Led Zeppelin appellees or the amici comes to rest on the flat 6 before returning to the beginning of the pattern without ever passing through the dominant 5. Plaintiff's expert Kevin Hanson also testified the descending chromatic line was used in an original and creative way in "Taurus". (Excerpt 748, 753, 755). It was most definitely not copied by Randy Wolfe from any prior art as this new piece of music does not appear in the prior art.

Dr. Stewart also testified that around the minor chromatic line which anchors the work, there are five elements in "Taurus" that are protectable in combination that are also copied in "Stairway to Heaven" and appear nowhere else in the prior art: (1) "minor chromatic line and associated chords," (Trial Exhibit 501-1, 502-1, 503-1) (2) durations of pitches of minor chromatic line, (3) melody placed over the descending chromatic line consisting of combination of arpeggios and two-note patterns or pairs (Trial Exhibit 506-1), (4) rhythm of steady 8th note beats, and (5)

the pitch collections and the frequency of their appearance in each measure (Trial Exhibit 511-1). (Excerpt 779-80).

**Second**, the amici claim that the chords following the bass line are not original and therefore should not be considered. See Amici Brief, at p.12-14. They ignore that even if they are correct, their use in combination with the other elements identified by Dr. Stewart is protectable.

Furthermore, their analysis is incorrect. Since there is a prominent sustained "D" in the melody of Taurus on the third beat of the second measure, the fourth chord in chorus could just as easily be considered D/F# as in Dr. Ferrara's analysis of "Stairway to Heaven." In fact the pitches sounded during the second half of this measure are identical (F#, A, C, and D with one exception – the E briefly sounded in "Taurus"). Also, this analysis is based on the deposit copy. ***If the composition as embodied in the "Taurus" album recording is considered, the third measure contains exactly the same chord, F major 7.*** This is precisely why the Led Zeppelin appellees are so anxious to limit the analysis to the deposit copy of "Taurus," because their defense will fall apart if they cannot rely upon an erroneous legal technicality to artificially limit the scope of Plaintiff's composition. The version Jimmy Page and Robert Plant heard was the full album version of "Taurus" and that is what they copied. The jury found that Page and Plant had access to the album version of the "Taurus" given that they owned the pertinent album, opened for

Spirit, covered Spirit's songs live, and stated in interviews that they held Spirit in high regard.

**Third**, the proposed amici claim that any similarities identified by Dr. Stewart are common and not protectable including arpeggios, two-note phrases, eighth note rhythms, pitches of similar duration, and pitches derived from same pitch collection. Amici Brief, at p.14. They claim that Dr. Stewart listed musical elements used in each piece without regard for the context in which they are used. Id. This conclusory accusation is not based in reality as the musical elements are used in the same context in both songs—this is not the situation amici think occurred in the Blurred Lines case.

Dr. Stewart has clearly testified that the similarity between the songs' unique and unprecedented minor chromatic line that resists the expected movement to the 5th degree is confirmed and strengthened by the five overall shared elements that Appellant alleges were copied. None of the prior contains all five of these elements, and most only contain two. Both the minor chromatic line and the combination of the other musical elements are protectable and were copied. Furthermore, if these elements amici attack were different in the two songs, the court can be assured that appellees and amici would be pointing out every difference as extremely probative of a lack of similarity.

With respect to the two-note pattern, amici claim that "Two-note patterns

can barely constitute a motif, let alone a protectable melody, especially when, as here, the two-note patterns occur in entirely different contexts and places in both compositions." Amici Brief, at p.15. They state that such phrases could never "constitute protectable music expression." Id. Setting aside that they are protectable in a selection and arrangement, amici ignore that even Led Zeppelin's expert musicologist assigned significance to the note pairs (which he characterized as the "***most creative and memorable part***"). (Excerpt 1051).

The amici further claim that the duration of the notes is different: "the actual duration of the compared notes between "Taurus" and "Stairway" is manifestly different, so much so that Ferrara had to halve the duration of the "Taurus" notes for this comparison to make any sense." Amici Brief, at p.16. This is an attempt by the amici to play tricks on the court. They are baselessly construing a standard musicological practice, regarding an irrelevant notational choice, as evidence of a lack of similarity. The deposit copy of "Taurus" could have been written with the note values halved and it would make absolutely ***no difference to the musical content***.

Amici also claim that the use of similar pitch collections do not confer originality. Id. However, Appellant never claimed that a pitch collection in and of itself constitutes originality. Dr. Stewart's point was that pitch collections are highly probative for determining substantial similarity. None of the prior art Dr. Ferrara refers to has the same pitch collection and other identified similarities, which means

the prior art necessarily cannot spell out the melodic and harmonic expression shared by "Taurus" and "Stairway to Heaven."

In summary, the amicus brief is trying to have this appellate court decide disputes of musicological facts when these are true disputes that only a jury can resolve. In addition, the proposed amici do not address what happens to their analysis if Appellant is no longer limited to and constrained by the deposit copy.

## VII. The Proposed Amicus Brief Erroneously Claims that Selections and Arrangements are Only Afforded Thin Copyright Protection

Amici's arguments are misplaced for several reasons. Musical works are entitled to broad copyright protection. **First**, Appellant has established that "Taurus" contains unique and original protectable expression (especially regarding the specific minor chromatic line which it is undisputed was never used before in the prior art) which was copied in "Stairway to Heaven." Even under amici's argument, thin copyright does not apply in this circumstance because the similarity is not a selection and arrangement. Of course, Appellant's case is bolstered by the fact that a combination, selection, and arrangement of five musical elements in "Taurus" were further copied in "Stairway to Heaven." Quite frankly, most copyright infringement cases include one or two main similarities, and then an accompanying selection and arrangement of other similarities that might individually be unprotectable but overall strengthen the case for substantial similarity.

**Second**, thin copyright *does not apply* to artistic works such as musical expression. Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1447 (9th Cir. 1994). Thin copyright only applies in cases where there are a limited number of ways to express the idea at issue. Id. The Ninth Circuit is unequivocal that when there are "endless variations" as to how an idea can be expressed, such as in a complex work of art like music, then the work has "broad," not thin, protection—regardless of whether the protection is as a result of selection and arrangement. Id.

The amici cite to Satava v. Lawry, 323 F.3d 805, 811 (9th Cir. 2003) for the proposition that selection and arrangements are only afforded thin copyright, but entirely omit that this theory is not applicable to artistic works like music and is almost exclusively applied when there are limited ways to express the idea at issue (scenes a faire)—particularly for functional, factual works. It applies only when the "range of possible expression is narrow." Apple, 35 F. 3d at 1446-47. This does not remotely include musical expression, which has endless variations; the concept has in fact never been applied to musical works as far as Appellant is aware.

V. Conclusion

The proposed amici musicologists are attempting to enter themselves as experts on this case but have made only a superficial analysis, misstated basic law, and mischaracterized Appellant's positions. They have not been entered as experts, nor have they disclosed their methodology. In addition, they have professional and

financial interests in the outcome of this case, or other conflicts of interest, which are undisclosed.

The fact of the matter is that en banc review is to consider novel and/or complex legal arguments, and attempting to file what amounts to a musicological expert report at this stage of the case is improper.

To the extent the proposed amici do advocate for the virtual identity and thin copyright standard, the law is clear that music copyright infringement comparisons are governed by substantial similarity. If they want to change the law, then they should petition Congress, not the courts.

WHEREFORE, because the motion for leave is not helpful to the en banc review and misconstrues the factual and legal standards at issue, it should be denied.

*Respectfully submitted,*

*/s/ Francis Malofiy*
FRANCIS ALEXANDER, LLC
FRANCIS MALOFIY
ALFRED JOSEPH FLUEHR
280 N. Providence Road; Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Attorneys for Michael Skidmore*

*July 15, 2019*

## Certificate of Filing and Service

Counsel was served via CM/ECF which constitutes service, pursuant to Fed. R. App. P. 25(c)(2) and Ninth Circuit Rule 25-5(g), to all registered CM/ECF users:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
100 Wilshire Blvd. | Suite 2010
Santa Monica, CA 90401
T:(310) 260-6030
F: (310) 260-6040
E: pja@pjanderson.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

Eugene Volokh
Mayer Brown LLP
350 S. Grand Ave. #2500
Los Angeles, CA 90071
T: (310) 206-3926
E: evolokh@mayerbrown.com
*Counsel for RIAA*

Danielle M. Aguirre
Erich C. Carey
Nat'l Music Publishers' Ass'n
975 F St. NW #375
Washington, DC 20004
T: (202) 393-6672
E: daguirre@nmpa.org
E: ecarey@nmpa.org
*Counsel for NMPA*

Edwin F. McPherson
Tracy B. Rane
McPherson Rane LLP
1801 Century Park East, 24th Floor

Los Angeles, California 90067-2326
T: (310) 553-8833
E: emcpherson@mcphersonrane.com
E: trane@mcphersonrane.com
*Attorneys for 123 Songwriters, NSAI, and SONA*

Kenneth D. Freundlich, Esquire
Freundlich Law
16133 Ventura Blvd. | Ste. 645
Encino, CA 91436
T: (310) 275-5350
*Counsel for Musicologists Amici Curiae*

Professor Mark A. Lemley, Esquire
Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305
T: (650) 723-4605
E: mlemley@law.stanford.edu
*Counsel for Amici Curiae, 19 Intellectual Property Professors*

Scott R. McIntosh, Esquire
Daniel Tenny, Esquire
Civil Division, U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7215
Washington, DC 20530
T: (202) 514-1838
*Attorney for United States of America*

*Respectfully submitted,*

*/s/ Francis Malofiy*

Francis Alexander, llc
Francis Malofiy
Alfred Joseph Fluehr
280 N. Providence Road; Suite 1
Media, PA 19063
T:  (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Attorneys for Michael Skidmore*

*July 15, 2019*