**Nos. 16-56057, 16-56287**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

MICHAEL SKIDMORE, AS TRUSTEE FOR THE
RANDY CRAIG WOLFE TRUST,

Plaintiff-Appellant,

v.

LED ZEPPELIN, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Central District of California

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF APPELLEES

*Of Counsel:*

REGAN A. SMITH
*General Counsel and Associate Register of
Copyrights*

JASON E. SLOAN
*Assistant General Counsel*

JALYCE E. MANGUM
*Attorney-Advisor*
*United States Copyright Office*
*Washington, DC 20540*

JOSEPH H. HUNT
*Assistant Attorney General*

NICOLA T. HANNA
*United States Attorney*

SCOTT R. McINTOSH
DANIEL TENNY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*

# TABLE OF CONTENTS

**Page**

INTEREST OF THE UNITED STATES ...........................................................................1

PERTINENT STATUTES AND REGULATIONS ........................................................2

STATEMENT OF THE CASE.......................................................................................2

    A.    Statutory and Regulatory Background..........................................................2

    B.    Facts and Prior Proceedings...........................................................................5

SUMMARY OF ARGUMENT......................................................................................9

ARGUMENT ............................................................................................................. 10

I.    The deposit copy defines the scope of the copyright for an unpublished musical work acquired pursuant to the 1909 Act. ................................................. 10

    A.    The "complete copy" of the work deposited with the Copyright Office defines the scope of the copyright......................................................10

    B.    Plaintiff's contrary arguments are without merit. .....................................14

II.    The copied portion of the composition at issue here is subject, at most, to a thin copyright, which was not infringed........................................................ 20

    A.    Standard musical elements are not protected by copyright and the selection and arrangement of a small number of such elements is entitled to, at most, a thin copyright. ............................................................20

    B.    The district court's judgment should be affirmed. ...................................24

CONCLUSION .......................................................................................................... 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**  **Page(s)**

*ABKCO Music, Inc. v. LaVere,*
  217 F.3d 684 (9th Cir. 2000) ................................................................. 11, 18

*Aliotti v. R. Dakin & Co.,*
  831 F.2d 898 (9th Cir. 1987) ........................................................................21

*Apple Computer, Inc. v. Microsoft Corp.,*
  35 F.3d 1435 (9th Cir. 1994) ................................................................ 21, 22

*Bridgeport Music, Inc. v. UMG Recordings, Inc.,*
  585 F.3d 267 (6th Cir. 2009) ........................................................................19

*Ets-Hokin v. Skyy Spirits, Inc.,*
  323 F.3d 763 (9th Cir. 2003) ......................................................... 22-23, 23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ........................................................................20, 21, 22

*Gaste v. Kaiserman,*
  863 F.2d 1061 (2d Cir. 1988) ........................................................................23

*Marya v. Warner/Chappell Music, Inc.,*
  131 F. Supp. 3d 975 (C.D. Cal. 2015)...........................................................14

*Nichols v. Universal Pictures Corp.,*
  45 F.2d 119 (2d Cir. 1930) ............................................................................23

*Rentmeester v. Nike, Inc.,*
  883 F.3d 1111 (9th Cir. 2018) .............................................................. 16, 20

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.,*
  531 F.3d 962 (9th Cir. 2008) ............................................................... 15, 19

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) ............................................................... 20, 22

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................20

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ........................................................ 15, 16

*White-Smith Music Pub. Co. v. Apollo Co.*,
  209 U.S. 1 (1908) ..................................................................................4

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ...............................................13, 23, 24

**Statutes:**

1976 Copyright Act, Pub. L. No. 94-553, § 102, 90 Stat. 2541, 2598-99
  (codified as note preceding 17 U.S.C. § 101) ......................................2

17 U.S.C. § 1 (1964) ..................................................................................17

17 U.S.C. § 1(e) (1964) ..............................................................................17

17 U.S.C. § 5(e) (1964) .......................................................................... 2, 11

17 U.S.C. § 7 (1964) ............................................................................ 14, 21

17 U.S.C. § 8 (1964) ..................................................................................20

17 U.S.C. § 10 (1964) .......................................................................3, 10, 11

17 U.S.C. § 12 (1964) ......................................... 3, 7, 10, 11, 12, 17, 20

17 U.S.C. § 13 (1964) ..................................................................................4

17 U.S.C. § 101 (2018) ................................................................................5

17 U.S.C. § 106(2) (2018) ..................................................................... 14, 17

17 U.S.C. § 212 (1964) ..............................................................................13

17 U.S.C. § 214 (1964) ..............................................................................13

17 U.S.C. § 301(a) (2018) ......................................................................17

17 U.S.C. § 301(c) (2018) .................................................................. 2, 11

17 U.S.C. § 302(a) (2018) ............................................................... 3, 5, 19

17 U.S.C. § 303(a) (1976) ......................................................................19

17 U.S.C. § 303(a) (2018) .................................................................. 5, 19

17 U.S.C. § 303(b) (2018) .................................................................10-11

17 U.S.C. § 304(a) (2018) ........................................................................2

17 U.S.C. § 407 (2018) ............................................................................4

17 U.S.C. § 408 (2018) ........................................................................ 4, 5

17 U.S.C. § 408(b)(1) (2018) ............................................................. 5, 19

17 U.S.C. § 411 (2018) ............................................................................4

17 U.S.C. § 704(d) (2018) ......................................................................13

**Regulations:**

37 C.F.R. § 202.1 ..................................................................................20

37 C.F.R. § 202.8(a) (1967) .....................................................................3

37 C.F.R. § 202.8(b) (1967) ............................................................... 3, 11

**Other Authorities:**

*Compendium of Copyright Office Practices* (1st ed. 1967) ...................3-4, 4, 11, 12, 14

*Compendium of U.S. Copyright Office Practices* (3d ed. 2017),
 https://www.copyright.gov/comp3/ ...............................................12, 14, 21

Elizabeth K. Dunne, *Study No. 20: Deposit of Copyrighted Works*,
   prepared for the Subcommittee on Patents, Trademarks, and
   Copyrights of the Committee on the Judiciary (1960),
   https://www.copyright.gov/history/studies/study20.pdf ............................ 12-13, 13

## INTEREST OF THE UNITED STATES

This case concerns the proper application of the Copyright Act to a musical composition. The United States has an interest in the proper interpretation of the copyright laws, which foster innovation and creative expression by protecting the rights of authors to profit from their original works while simultaneously allowing the creation and dissemination of new works. The United States has a particular interest in this case because it concerns the legal effect of depositing a complete copy of a work with the Copyright Office, an agency of the federal government, as well as the standard for originality applied by the Copyright Office in examining and registering copyrighted works.

The United States is participating in this case to address two issues: (1) whether the scope of the copyright for unpublished musical works registered before 1978 is defined by the complete copy of the work deposited with the Copyright Office; and (2) whether basic musical elements, such as a chord or chromatic scale, may ever be copyrightable, and whether the selection and arrangement of a small number of such elements can be entitled to only "thin" copyright protection, meaning that the copyright is infringed only by virtually identical copying. In the view of the United States, the panel correctly resolved the first issue, concluding that the copy of the work deposited with the Copyright Office defines the scope of the copyright. But on the second issue, the Court should affirm the district court's judgment in favor of

defendants, because the relevant portion of the work is entitled, at most, to a thin copyright, and the allegedly infringing work is not virtually identical.

## PERTINENT STATUTES AND REGULATIONS

Relevant statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

Because this case concerns a musical work that was registered as unpublished with the Copyright Office before the effective date of the 1976 Copyright Act, the terms of the 1909 Copyright Act, as amended, determine the scope of the relevant copyright.  *See* 1976 Copyright Act, Pub. L. No. 94-553, § 102, 90 Stat. 2541, 2598-99 (codified as note preceding 17 U.S.C. § 101) (January 1, 1978, effective date); 17 U.S.C. § 304(a) (2018) (existing copyrights as of January 1, 1978, continue to endure). Under that statute, copyright protection was available for "[m]usical compositions." 17 U.S.C. § 5(e) (1964).[1]  But the 1909 Act did not protect sound recordings, which did not become subject to copyright protection until 1972.  *See* 17 U.S.C. § 301(c) (2018) ("[N]o sound recording fixed before February 15, 1972, shall be subject to copyright under this title . . . .").

---

[1] The panel opinion at times refers to the 1909 Act as originally enacted. Because the section numbers and some of the text changed between 1909 and the composition and registration of the copyrighted work at issue in this case, all citations in this brief are to the statute as amended.  The pertinent sections of the Act, as in effect at the time of the composition and registration of the copyrighted work at issue, are in the addendum.

Unlike the current Copyright Act, under which copyright protection is automatic upon creation of the work, *see* 17 U.S.C. § 302(a) (2018), the 1909 Act required authors to take affirmative steps to secure copyright protection. A copyright could be secured by publication of the work together with a notice of copyright. 17 U.S.C. § 10 (1964). For unpublished musical works, such as the work at issue here, an author could obtain copyright through registration with the Copyright Office "by the deposit, with claim of copyright, of one complete copy of such work." *Id.* § 12. For certain other types of unpublished works, copyright could be obtained by depositing something other than a complete copy of the work. For example, copyright could be obtained through deposit "of a title and description, with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay; or of a photograph or other identifying reproduction thereof, if it be a work of art or a plastic work or drawing." *Id.*

U.S. Copyright Office regulations and the *Compendium of Copyright Office Practices* confirmed that the deposit for a musical work was required to take the form of sheet music or other "visible notation," rather than a sound recording. 37 C.F.R. § 202.8(a) (1967) (noting that musical compositions could be copyrighted "in the form of visible notation"); *id.* § 202.8(b) (1967) ("A phonograph record or other sound recording is not considered a 'copy' of the compositions recorded on it, and is not acceptable for copyright registration."); *Compendium of Copyright Office Practices* § 2.6.2.II (1st ed. 1967)

3

(*Compendium (First)*)[2]; *White-Smith Music Pub. Co. v. Apollo Co.*, 209 U.S. 1, 17 (1908) (holding that a musical composition must be in written form in order to be subject to copyright). The *Compendium* also stated that for unpublished musical compositions, copyright "protection extends only to the material actually deposited." *Compendium (First)* § 2.6.1.II.a.

While authors of published works secured their copyrights by publication with notice of copyright, they were separately required to deposit "two complete copies of the best edition" of the published work, though the statute allowed the government to provide, by regulation, that it would accept "photographs or other identifying reproductions" for certain types of works if it was "impracticable to deposit copies" of the work as published. 17 U.S.C. § 13 (1964). Congress did not, however, authorize exceptions to the "complete copy" requirement for musical works. Compliance with the Act's registration and deposit requirements was a prerequisite to any action for infringement. *Id.*

The modern Copyright Act still requires authors to deposit published works, and separately requires authors to deposit copies of any work for which copyright registration (which is generally a prerequisite to bringing an infringement action, 17 U.S.C. § 411 (2018)) is sought. 17 U.S.C. §§ 407, 408 (2018). But the modern act specifically allows sound recordings to be deposited for unpublished musical

---

[2] Relevant portions of the Compendium are attached.

compositions.  *See id.* § 408(b)(1) (authorizing deposit of "one complete copy or phonorecord"); *id.* § 101 (defining "phonorecord" as a material object in which sounds are recorded).  And, as noted, the modern act does not make deposit a prerequisite to copyright protection.  *See id.* §§ 302(a), 408.  Moreover, the modern act accords copyright protection, beginning in 1978, to works created before that time that had not received copyright protection and had not entered the public domain.  *Id.* § 303(a).

### B.    Facts and Prior Proceedings

1.  This case involves an assertion that defendant Led Zeppelin's song *Stairway to Heaven* infringed a copyright in a song called *Taurus*, written by Randy Wolfe (plaintiff's predecessor in interest), by copying a passage from that song.  Because *Taurus* was registered with the Copyright Office as an unpublished musical work before the effective date of the 1976 amendments to the Copyright Act, the copyright at issue here was obtained under the 1909 Act, as amended.  Wolfe's agent registered a copyright claim by depositing a single page of sheet music for *Taurus* with the Copyright Office.  *See Taurus* Deposit Copy, Trial Ex. DX2058 (attached).  The deposit copy did not specify the instrumentation or contain other markings specifying how the work was to be performed.  *Id.*

In district court, the parties disputed whether the copyrighted work consisted only of the deposited sheet music, or instead encompassed the musical work as it had

been fixed in a sound recording. The district court agreed with defendants that the copyright was confined to the musical composition transcribed in the deposit copy.

The district court declined to resolve the case on summary judgment, so the parties proceeded to trial. In denying summary judgment, the court held that plaintiff's effort to demonstrate that *Taurus* and *Stairway to Heaven* were substantially similar for purposes of analyzing infringement should be limited to the protected elements of the song embodied in the deposited sheet music. To establish infringement, plaintiff was not entitled to rely on "performance elements" that can be detected in recordings of the song (or would be present in live renditions) but that are not reflected in the sheet music deposited with the Copyright Office. SJ Op. 17 [ER 133]. For example, the "fingerpicking style, acoustic guitar, classical instruments such as flute strings and harpsichord, atmospheric sustained pads and fretboard positioning," all of which could be discerned in recordings or performances of *Taurus* by Wolfe's band, were not part of the deposit copy. *Id.* (quotation marks and ellipsis omitted). In addition, the "music production and mixing process" created a "common ethereal ambience" that is not captured in the sheet music and thus not the proper basis of an infringement finding. *Id.*

The district court nonetheless held that there were sufficient similarities between the songs that the case should go to the jury. The court recognized that "[o]nce all the unprotected performance elements are stripped away, the only remaining similarity is the core, repeated A-minor descending chromatic bass line

structure that marks the first two minutes of each song." SJ Op. 17 [ER 133].

Although "a descending chromatic four-chord progression is a common convention

that abounds in the music industry," the court concluded that there were additional

similarities because "the descending bass line . . . appears at the beginning of both

songs, arguably the most recognizable and important segments," and because "the

descending bass line is played at the same pitch, repeated twice, and separated by a

short bridge in both songs." *Id.* at 18 [ER 134].

The jury returned a verdict for Led Zeppelin. The jury found, as relevant here,

that Led Zeppelin had access to *Taurus*, but that the two songs were not sufficiently

similar to constitute infringement.

2. On appeal, the panel affirmed in part and reversed in part. The panel agreed

with the district court that the deposit copy defines the scope of the copyright. "The

1909 Act states that 'copyright may also be had of the works of an author of which

copies are not reproduced for sale, *by the deposit,* with claim of copyright, of one

complete copy of such work.'" Op. 31 (quoting 1909 Copyright Act, § 11, codified at

17 U.S.C. § 12 (1964)) (panel's emphasis). Because the "existence of copyright" is

"dependent on the deposit copy, it makes sense that the deposit copy also defines the

scope of the copyright." *Id.* Although Congress later provided, in the 1976 Act, that

"copyright attached at the creation of the work," under the 1909 Act the deposit copy

was critical for the copyright of unpublished works, and the panel observed that

"Congress and the Register of Copyrights have taken care to ensure the preservation

of deposit copies." *Id.* The panel rejected plaintiff's policy arguments against this conclusion on the ground that they are inconsistent with the statutory framework. *Id.* at 32.

The panel reversed the district court, however, on some of the jury instructions. The panel held that the district court erred in failing "to instruct the jury that the selection and arrangement of unprotectable musical elements are protectable." Op. 14. The panel recognized that "[t]he copyright in an arrangement of public domain elements extends only to the originality contributed by the author to the arrangement," but noted that "there can be copyright protection on the basis of a sufficiently original combination of otherwise non-protectable music elements." *Id.* at 15. The panel concluded that the jury could have been misled into thinking that the selection and arrangement of unprotected elements could not receive copyright protection. *Id.* at 17.

The panel also concluded that two other jury instructions constituted reversible error. First, the instructions stated that copyright does not protect "common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes." Op. 19 n. 6 (quoting Jury Instruction No. 16). The panel held that this instruction was faulty because "a limited number of notes can be protected by copyright." *Id.* at 20. The panel stated that "considered in the absence of a selection and arrangement instruction," this instruction "could have led the jury to believe that even if a series of three notes or a descending chromatic scale were used in

8

combination with other elements in an original manner, it would not warrant copyright protection." *Id.*

Second, the panel faulted the district court for "omitt[ing] parts of the test for originality and add[ing] misleading language." Op. 21. The panel held that the district court mistakenly rejected a requested instruction "that 'the "original" part of a work need not be new or novel.'" *Id.* And the panel held that the district court should not have included an instruction that "any elements from prior works or the public domain are not considered original parts and not protectable by copyright." *Id.* Although "this statement is not literally incorrect," the panel concluded that "it misleadingly suggests that public domain elements such as basic musical structures are not copyrightable even when they are arranged or modified in a creative, original way." *Id.* at 21-22.

## SUMMARY OF ARGUMENT

The copyright at issue here was obtained, as the Copyright Act then required, by depositing a "complete copy" of the work with the Copyright Office. The copyright that was created by that deposit extends only to the work that was deposited with the Copyright Office. While there may be other, related works in which the author or his successors may hold or have held rights, the federal copyright at issue here extends only to the work that was deposited. The district court and the panel thus properly concluded that "performance elements," which might have been present when the song was performed or recorded but were not reflected in the

deposited sheet music, are not protected by the copyright registered with the Copyright Office.

Once those performance elements are removed, the only similarity between the original work and the allegedly infringing work is the selection and arrangement of two basic musical elements: an A-minor chord and a descending chromatic scale. Those elements may not themselves be copyrighted. The selection and arrangement of a small number of standard elements such as these is entitled, at most, to a "thin" copyright that protects only against virtually identical copying. Because the works at issue here are not virtually identical, the district court's judgment should be affirmed.

## ARGUMENT

### I. The deposit copy defines the scope of the copyright for an unpublished musical work acquired pursuant to the 1909 Act.

#### A. The "complete copy" of the work deposited with the Copyright Office defines the scope of the copyright.

Plaintiff seeks to enforce a copyright in a musical work composed in the 1960s. At that time, federal copyright protection attached to a work only if the work was published with notice of copyright or, for an unpublished work, if the work was deposited, with claim of copyright, with the Copyright Office. 17 U.S.C. §§ 10, 12 (1964). Because public distribution of sound recordings before 1978 did not constitute publication of any musical work embodied in them, copyright protection for a musical composition was triggered only by publication of the sheet music with notice of copyright or registration of an unpublished work. *See* 17 U.S.C. § 303(b)

10

(2018) (publication of sound recordings before 1978 does not constitute publication of a musical work); *id.* § 301(c) (2018) (prohibiting copyright of sound recordings fixed before 1972); *see also* 17 U.S.C. § 5(e) (1964) (musical compositions copyrightable); 17 U.S.C. §§ 10, 12 (1964) (methods of obtaining copyright). The copyright at issue in this case was obtained by registering *Taurus* as an unpublished work by "deposit[ing], with claim of copyright, . . . one complete copy" of the work. 17 U.S.C. § 12 (1964); *see Taurus* Deposit Copy, Trial Ex. DX2058 (attached). As required at the time, the deposit took the form of written music, not a sound recording. *See Compendium (First)* § 2.6.2.II; *see also* 37 C.F.R. § 202.8(b) (1967); *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (recognizing that "the intent of Congress in the 1909 Act was not to accord recordings the same copyright status as a written score").

The copyrighted work consists of the composition reflected in the deposited sheet music. Congress required the author of a musical composition to deposit a "complete copy" of the work, rather than just material sufficient to identify the work. 17 U.S.C. § 12 (1964). For other types of works as to which the copyrighted work need not be limited to the material deposited with the Copyright Office, Congress said so expressly. For example, for a motion picture, Congress authorized deposit of "a title and description, with not less than two prints taken from different sections." *Id.* For works of art, Congress authorized deposit of a "photograph or other identifying reproduction." *Id.* But for musical compositions, Congress required a

11

"complete copy." *Id.* The statutory text thus makes plain that for musical compositions, the deposit does not serve to identify a copyrighted work that is available elsewhere, but rather, as the text indicates, is a "complete copy" of the copyrighted work.

Contemporaneous publications by the Copyright Office confirm the proper reading of the statutory text. As the Copyright Office explained in its *Compendium of Copyright Office Practices*, for unpublished musical compositions copyright "protection extends only to the material actually deposited." *Compendium (First)* § 2.6.1.II.a. The Copyright Office thus made authors aware, as the statute indicates, that they had to deposit a complete copy of the work in order to ensure that the entire work was protected. There is no basis for deviating from the longstanding view of the agency charged with administering the deposit requirement. *See also Compendium of U.S. Copyright Office Practices* § 504.2 (3d ed. 2017) (*Compendium (Third)*)[3] (stating that, with exceptions not relevant here, "a registration for a work of authorship only covers the material that is included in the deposit copy(ies)").

A study issued in 1960 under the supervision of the Copyright Office likewise confirmed that the "basic copyright purpose[] for the retention of deposit copies" was "for identification of the exact work under copyright." Elizabeth K. Dunne, *Study No.*

---

[3] *Available at* https://www.copyright.gov/comp3/

*20: Deposit of Copyrighted Works*, prepared for the Subcommittee on Patents, Trademarks, and Copyrights of the Committee on the Judiciary 25 (1960).[4] Here, the exact work under copyright was the musical composition embodied in the sheet music that was deposited in the Copyright Office.

In keeping with these purposes, the Copyright Office was required to retain unpublished works—for which there would be no other source identifying the exact work under copyright—unless the copyright owner was given an opportunity to claim and remove them. 17 U.S.C. § 214 (1964). Those works were required to be "open to public inspections." *Id.* § 212. And the Office's "general policy" was "to retain custody of unpublished works throughout the entire 56 years of possible copyright protection." *Study No. 20*, at 23. The modern Copyright Act has maintained this practice, prohibiting the Copyright Office from disposing of any unpublished work "during its term of copyright unless a facsimile reproduction of the entire deposit has been made a part of the Copyright Office records." 17 U.S.C. § 704(d) (2018). The observation in a 2015 district-court case that the Copyright Office no longer had the deposit copy for a *published* work registered in 1935, *see Williams v. Gaye*, 895 F.3d 1106, 1121 n.9 (9th Cir. 2018), has no apparent relevance to the disposition of deposit copies of unpublished works, and in any event merely underscores that parties regarded the deposit as sufficiently significant that they sought to introduce evidence

---

[4] https://www.copyright.gov/history/studies/study20.pdf

about it. *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 982 (C.D. Cal. 2015).

### B.    Plaintiff's contrary arguments are without merit.

Plaintiff's suggestion that the copyrighted work is something other than the work deposited with the Copyright Office appears to be largely premised on the mistaken view that there cannot be multiple, distinct copyrightable works that are all versions of the same song. The statute expressly contemplates that there can be. *See* 17 U.S.C. § 7 (1964) ("works republished with new matter[] shall be regarded as new works subject to copyright under the provisions of this title"); *see also* 17 U.S.C. § 106(2) (2018) (current statute giving author exclusive right "to prepare derivative works based upon the copyrighted work"). And the Copyright Office has consistently recognized that more than one version of a work may be eligible for separate copyright protection. *See Compendium (First)* § 2.6.4.III.a ("The substantial revision of the score of existing music, or the addition to an old score of a substantial amount of new music, creates a registrable new version."); *Compendium (Third)* § 504.3 ("A registration only covers the specific version of the work that is submitted for registration.").

Thus, plaintiff does not advance its argument by pointing out that Randy Wolfe composed, performed, and recorded a more extensive version of *Taurus* than is reflected in the deposit copy. He may have done so, but the registration at issue in this litigation did not secure federal copyright protection for that work. There is no

dispute that the mere composition of a musical work, or the embodiment of that work in a sound recording, did not give rise to copyright protection under the 1909 Act. To obtain a copyright, the author of a musical composition needed to publish the work with notice of copyright, or to deposit a complete copy with the Copyright Office. A composition reflected in a sound recording, if it was different from the composition reflected in the deposited sheet music, was an unpublished work as to which no federal copyright had been obtained. As this Court recognized in the context of published works under the 1909 Act, obtaining federal copyright in one version of a work does not extend federal copyright protection to other versions. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 973 (9th Cir. 2008) (holding that elements present in both a published motion picture and in an unpublished and unregistered antecedent work "were statutorily protected as components of the Motion Picture, not as an independent 'work'").

Plaintiff fares no better in pointing out that courts have held that discrepancies between the deposited sheet music and a recorded version do not defeat copyright claims. *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000). Courts and the Copyright Office have accepted deposits that may not reflect the version of the composition contained in a sound recording, but those deposits merely claim a copyright for a musical work that is different than the musical work reflected in the sound recording. Plaintiff identifies no case in which courts have extended the scope of copyright protection beyond the deposit copy where these differences were

15

material to the infringement claim. *See, e.g.*, *id.* (citing expert testimony "that the deposit copy included all of the song's essential elements" and concluding that "any inaccuracies in the deposit copy were minor and do not bar the infringement action"). And this case in any event does not present the question of how to treat minor discrepancies between the deposit copy and the work in which the plaintiff intended to secure protection; as plaintiff acknowledges, the sheet music does not come close to capturing all of the relevant elements of *Taurus* as performed in the sound recording.

Nor does the fact that courts have used recordings or performances of the musical work in assessing whether a work was copied, rather than using deposit copies, suggest that the federal copyright extends beyond the deposited copy of the work. Similarities between performed versions of the copyrighted work and the allegedly infringing work can be relevant to establishing as a matter of fact that the work was copied rather than independently created, as copying can be proven with similarities that "need not involve protected elements of the plaintiff's work." *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). But only protected elements of the work may be considered in evaluating whether any appropriation of a plaintiff's work was unlawful. *Id.* If the similarities do not extend to the copyrighted work as defined by the deposit copy, the infringement claim will fail. Plaintiff does not cite any case that deviates from these principles.

Plaintiff fundamentally misunderstands section 1(e) of the 1909 Copyright Act, which gave the owner of a copyrighted musical composition the exclusive right "to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded." 17 U.S.C. § 1(e) (1964); *cf.* 17 U.S.C. § 106(2) (2018) (current provision stating that copyright owner has exclusive right to "prepare derivative works based upon the copyrighted work"). That provision does not purport to define the scope of the copyright; on its face, it merely identifies an "exclusive right" of the copyright owner. *See* 17 U.S.C. § 1 (1964). Thus, arrangements of the work, just like public performances, are examples of the exercise of the exclusive rights vested in the owner of the work. *See id.* § 1(e) (also providing exclusive right "[t]o perform the copyrighted work publicly"). They do not define the copyrighted work itself.

Plaintiff is likewise mistaken to suggest that the scope of its copyright should be defined by common law. Plaintiff is asserting a federal statutory copyright claim, not a common-law claim. *Cf.* 17 U.S.C. § 301(a) (2018) (preempting common-law claims). And at the time the copyright was obtained, federal law made clear that the deposit created the copyright, rather than merely recognizing a copyright that already existed at common law. *See* 17 U.S.C. § 12 (1964) ("[C]opyright may . . . be had . . . by the deposit, with claim of copyright, of one complete copy of [the] work."). The cases on which plaintiff relies stand for the proposition that state common-law rights were extinguished (even before they were preempted by federal law) once a federal

copyright was obtained. *See ABKCO Music*, 217 F.3d at 688. That proposition does not aid plaintiff in seeking to expand the scope of the federal copyright.

Plaintiff relies on policy arguments to suggest that courts should accord copyright protection to the work as embodied in some form other than the complete copy deposited with the Copyright Office. Even if plaintiff could raise strong policy justifications for a different rule, they would not suffice to defeat the textual and contextual considerations discussed above. But in any event, plaintiff's policy concerns are significantly overstated.

Plaintiff asserts that musicians who compose songs often do not write down the music on paper, but instead compose their music on instruments, and that deposit copies, transcribed by others, generally will not reflect the full composition. But even if deposit copies do not capture all details of a composition, they generally include the elements of a song, such as the melody and lyrics, that are of most importance to the copyright owner. Failure to incorporate elements such as these in the deposit copy would reflect a failing on the part of the copyright owner or its agent, not an insurmountable obstacle imposed by the statutory scheme. Regardless of the outcome of this appeal, the elements of the song deemed significant enough to include in the deposit will still have copyright protection if they are sufficiently original.

In addition, Congress has subsequently addressed this concern by authorizing sound recordings to be sufficient for purposes of satisfying the deposit requirement

18

that is now a prerequisite to copyright registration and to most actions for infringement. 17 U.S.C. § 408(b)(1) (2018). Under the 1976 Act, copyright protection attaches automatically upon creation of the work, *id.* § 302(a), so composers of musical works receive copyright protection without the need to deposit copies at all. *See, e.g.*, *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 276 (6th Cir. 2009) (holding that "composition was embedded in the sound recording" for work composed in 1982). And even as to works created before 1978 but not copyrighted, copyright protection automatically attached on January 1, 1978, so long as the works had not previously entered the public domain. 17 U.S.C. § 303(a) (2018). Thus, in many cases, sufficiently original compositional material captured in sound recording versions but not published or registered with sheet music before 1978 are currently protected by federal copyright law, although such material must be separately registered with the Copyright Office before an infringement suit can be brought. *See Richlin*, 531 F.3d at 970 n.11 (noting, in the context of published works, that copyrightable elements as to which no federal copyright was obtained "retained their common law copyright protection . . . and received statutory copyright protection with the enactment of the 1976 Act" (citing 17 U.S.C. § 303(a) (1976)).

The issue presented here affects only whether works can infringe the copyright created by depositing sheet music with the Copyright Office based on elements of the song that are not included in that sheet music. There is no basis for concluding that

the scope of that copyright extends beyond the "complete copy" of the work that

gave rise to the copyright in the first place. 17 U.S.C. § 12 (1964).

## II. The copied portion of the composition at issue here is subject, at most, to a thin copyright, which was not infringed.

### A. Standard musical elements are not protected by copyright and the selection and arrangement of a small number of such elements is entitled to, at most, a thin copyright.

"[C]opyright protection may extend only to those components of the work that

are original to the author," meaning they were "independently created" and possess

"some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

340, 345, 348 (1991); *see also Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004) (noting

originality requirement); 17 U.S.C. § 8 (1964) ("No copyright shall subsist in the

original text of any work which is in the public domain . . . ."). Thus, the analysis of

copyright infringement requires determining whether the defendants copied

"protected aspects" of the work. *Rentmeester*, 883 F.3d at 1116-17.

It is well established that "expressions that are standard, stock, or common to a

particular subject matter or medium are not protectable under copyright law." *Satava

v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *see also* 37 C.F.R. § 202.1 (describing

material ineligible for copyright protection, including "short phrases," "familiar

symbols," or other "common property"). In the musical context, this means that

standard elements such as arpeggios (*i.e.*, notes of a chord played in sequence) or

chromatic scales can never be independently protectable under copyright law. *See*

20

*Compendium (Third)* § 802.5(A) (citing "chromatic scales" and "[a]rpeggios" as "examples of common property musical material"). Further, certain short musical phrases, even if novel, may not "possess more than a *de minimis* quantum of creativity" and thus may not be eligible for copyright protection. *Feist*, 499 U.S. at 363; *see Compendium (Third)* §§ 313.4(C), 802.5(B).

There is likewise no dispute that an "original selection and arrangement of otherwise uncopyrightable components may be protectable." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994); *see also* 17 U.S.C. § 7 (1964) (copyright protection for "arrangements" of "works in the public domain"). But such arrangements do not provide a copyright in the standard elements themselves: "the party claiming infringement may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements." *Apple Computer*, 35 F.3d at 1446 (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)) (emphasis added by *Apple Computer*); *see also Feist*, 499 U.S. at 348 (noting that others are free to copy uncopyrightable facts embodied in a copyrighted compilation); 17 U.S.C. § 7 (1964) (copyright in arrangement of public-domain works shall not "be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works"). Thus, an author may obtain copyright protection for the original selection and arrangement of unprotectable musical elements, but cannot obtain copyright protection for the constituent musical elements themselves, which remain in the public domain.

Moreover, even if a selection and arrangement of a small number of unprotectable elements is sufficiently original to be copyrightable, the protection for that particular combination is generally regarded as "thin." *Satava*, 323 F.3d at 811-12. As this Court has recognized in other contexts, when there are a "limited number of ways that . . . basic [uncopyrightable] ideas . . . can be expressed differently, . . . only 'thin' protection, against virtually identical copying, is appropriate." *Apple Computer*, 35 F.3d at 1442; *see also Feist*, 499 U.S. at 349 (requiring the "same selection and arrangement" for infringement of a factual compilation). Limiting an author to a "thin" copyright in circumstances in which the author's original contribution is limited helps to "ensure both that artists receive due reward for their original creations and that proper latitude is granted other artists to make use of ideas that properly belong to us all." *Satava*, 323 F.3d at 812.

This principle applies regardless of the type of copyrighted work. In *Satava*, this Court concluded that a sculpture was entitled only to "a thin copyright that protects against only virtually identical copying," because it contained "few variations" from elements that are "so commonplace . . . and so typical . . . that to recognize copyright protection in their combination effectively would give [the author] a monopoly" in a particular type of sculpture. *Satava*, 323 F.3d at 812-13. In *Apple Computer*, this Court concluded that only a thin copyright was available for a computer interface because once unprotectable elements were disregarded, there were few creative choices to be made. *Apple Computer*, 35 F.3d at 1446. In *Ets-Hokin v. Skyy*

22

*Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003), this Court held that only a thin copyright was available for a photograph depicting a basic commercial product shot. *Id.* at 766. This Court observed that the principle of "thin" copyrights "has long been a part of copyright law," citing Judge Learned Hand's application of the principle "in the context of stock dramaturgy." *Id.* (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)).

Regardless of whether it is a sculpture, a computer interface, a photograph, a play, or a musical composition, when the author's original contribution consists only of an arrangement of a small number of conventional elements, copyright protection is thin. Robust copyright protection for relatively simple combinations of standard musical elements would thwart, rather than enhance, creativity by making it more difficult for new composers to avoid copyright claims based on fundamental building blocks of music. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) (noting "the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music").

This Court's decision in *Williams v. Gaye* does not compel a contrary conclusion. There, this Court rejected the argument that the copyright in the song at issue in that case "enjoys only thin protection," observing that "[m]usical compositions are not confined to a narrow range of expression." *Williams*, 895 F.3d at 1120. But *Williams* did not involve an allegation that the infringing work copied

23

only an arrangement of a small number of standard elements; rather, the plaintiff's expert "opined that nearly every bar of [the allegedly infringing work] contains an element similar to [the original work]," and that the copying included "bass lines, keyboard parts, signature phrases, [memorable melodic material], [a musical theme], bass melodies, word painting, and the placement of the rap and 'parlando' sections in the two songs." *Id.* at 1118. The Court did not consider the scope of protection for a single phrase comprising a small number of basic musical elements. The opinion should not be read as requiring more than thin protection for a portion of a musical work with such limited originality, and if it is so read, the en banc Court should reject it.

### B.    The district court's judgment should be affirmed.

In denying summary judgment, the district court properly recognized that, apart from performance elements that do not form part of the deposit copy, the only similarity between *Taurus* and *Stairway to Heaven* "is the core, repeated A-minor descending chromatic bass line structure that marks the first two minutes of each song." SJ Op. 17 [ER 133]. The court further observed that "a descending chromatic four-chord progression is a common convention that abounds in the music industry." *Id.* at 18 [ER 134]. The court noted that "the descending bass line . . . appears at the beginning of both songs" and that it "is played at the same pitch, repeated twice, and separated by a short bridge in both songs." *Id.*

Fundamentally, then, the allegedly copied material, as embodied in the deposit copy of *Taurus*, consists of the use and placement of a combination of basic and not copyrightable elements: the A-minor chord and the descending chromatic scale. While these elements have been selected and arranged to create the bass line pattern at issue, this particular combination, employing simple rhythm and the standard technique of arpeggiation, is itself relatively simple. Such a combination is subject, at most, to a thin copyright; there are not many ways to express this type of chromatically descending arpeggiated bass line and have it still be recognizable as such. Providing broad protection would effectively result in the protection of a musical idea, granting a monopoly on a common musical convention. Infringement should therefore occur only if the allegedly copied portion appears virtually identically in the two works.

There should be no serious dispute that the passages of *Stairway to Heaven* and *Taurus* that are at issue here are not virtually identical. At a minimum, the notes and rhythm are not all, or even mostly, the same. *See* Trial Tr. 822-27 [ER 958-63] (defendants' expert); Trial Ex. 2092-3, at 2, reproduced in Add. 2 to Defs.' Pet. for Reh'g (musical score).

The jury ruled for defendants on the ground that the two works were not sufficiently similar for a finding of infringement to be warranted. The panel vacated the district court's judgment because it concluded that the jury instructions led to inadequate consideration by the jury of the possibility that an original selection and

25

arrangement of unprotectable elements gave rise to infringement. Op. 17, 22-23. Given that the arrangement at issue here would be eligible, at most, for thin copyright protection, and given that no reasonable jury could conclude that the passages are virtually identical, there is no basis for setting aside the jury's verdict. The district court's judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

REGAN A. SMITH
*General Counsel and Associate Register of Copyrights*

JASON E. SLOAN
*Assistant General Counsel*

JALYCE E. MANGUM
*Attorney-Advisor*
*United States Copyright Office*
*Washington, DC 20540*

JOSEPH H. HUNT
*Assistant Attorney General*

NICOLA T. HANNA
*United States Attorney*

SCOTT R. McINTOSH

*s/ Daniel Tenny*
DANIEL TENNY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*
*daniel.tenny@usdoj.gov*

AUGUST 2019

26

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 29-2(c)(3) because it contains 6,491 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Daniel Tenny*
Daniel Tenny

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2019, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Daniel Tenny*
Daniel Tenny

**ADDENDUM**

# TABLE OF CONTENTS

*Taurus* Deposit Copy ................................................................................ A1

Excerpts from Title 17 (1964) ................................................................... A2

37 C.F.R. § 202.8 (1967) ......................................................................... A8

Excerpts from *Compendium (First)* .......................................................... A9

# TAURUS

by Randy California



HollenBeck Music Co
(c) 1967

A1

Sec.
5.   Classification of works for registration.
6.   Registration of prints and labels.
7.   Copyright on compilations of works in public do-
       main or of copyrighted works; subsisting copy-
       rights not affected.
8.   Copyright not to subsist in works in public domain,
       or published prior to July 1, 1909, and not al-
       ready copyrighted, or Government publications;
       publication by Government of copyrighted
       material.
9.   Authors or proprietors, entitled; aliens.
10.  Publication of work with notice.
11.  Registration of claim and issuance of certificate.
12.  Works not reproduced for sale.
13.  Deposit of copies after publication; action or pro-
       ceeding for infringement.
14.  Same; failure to deposit; demand; penalty.
15.  Same; postmaster's receipt; transmission by mail
       without cost.
16.  Mechanical work to be done in United States.
17.  Affidavit to accompany copies.
18.  Making false affidavit.
19.  Notice; form.
20.  Same; place of application of; one notice in each
       volume or number of newspaper or periodical.
21.  Same; effect of accidental omission from copy or
       copies.
22.  Ad interim protection of book or periodical pub-
       lished abroad.
23.  Same; extension to full term.
24.  Duration; renewal and extension.
25.  Renewal of copyrights registered in Patent Office
       under repealed law.
26.  Terms defined.
27.  Copyright distinct from property in object copy-
       righted; effect of sale of object, and of assign-
       ment of copyright.
28.  Assignments and bequests.
29.  Same; executed in foreign country; acknowledg-
       ment and certificate.
30.  Same; record.
31.  Same; certificate of record.
32.  Same; use of name of assignee in notice.

AMENDMENTS

1949—Act June 3, 1949, ch. 171, § 5, 63 Stat. 154, inserted "or periodical" in item 22.

## § 1. Exclusive rights as to copyrighted works.

Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

(a) To print, reprint, publish, copy, and vend the copyrighted work;

(b) To translate the copyrighted work into other languages or dialects, or make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work; to convert it into a novel or other nondramatic work if it be a drama; to arrange or adapt it if it be a musical work; to complete, execute, and finish it if it be a model or design for a work of art;

(c) To deliver, authorize the delivery of, read, or present the copyrighted work in public for profit if it be a lecture, sermon, address or similar production, or other nondramatic literary work; to make or procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, delivered, presented, produced, or reproduced; and to play or perform it in public for profit, and to exhibit, represent, produce, or reproduce it in any manner or by any method whatsoever. The damages for the infringement by broadcast of any work referred to in this subsection shall not exceed the sum of $100 where the infringing broadcaster shows that he was not aware that he was infringing and that such infringement could not have been reasonably foreseen; and

(d) To perform or represent the copyrighted work publicly if it be a drama or, if it be a dramatic work and not reproduced in copies for sale, to vend any manuscript or any record whatsoever thereof; to make or to procure the making of any transcription or record thereof by or from which, in whole or in part, it may in any manner or by any method be exhibited, performed, represented, produced, or reproduced; and to exhibit, perform, represent, produce, or reproduce it in any manner or by any method whatsoever; and

(e) To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: *Provided,* That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; and the copyright proprietor may require, and if so the manufacturer shall furnish, a report under oath on the 20th day of each month on the number of parts of instruments manufactured during the previous month serving to reproduce mechanically said musical work, and royalties shall be due on the parts manufactured during any month upon the 20th of the next succeeding month. The payment of the royalty provided for by this section shall free the articles or devices for which such royalty has been paid from further contribution to the copyright except in case of public performance for profit. It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement of such copyright.

In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after

demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount.

The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such reproduction or rendition occurs. (July 30, 1947, ch. 391, 61 Stat. 652; July 17, 1952, ch. 923, § 1, 66 Stat. 752.)

### AMENDMENTS

1952—Subsec. (c). Act July 17, 1952, provided that all recordation rights in nondramatic literary works will be protected and this protection includes any subsequent recordation or copying of original works.

### EFFECTIVE DATE OF 1952 AMENDMENT

Amendment of subsec. (c) made effective Jan. 1, 1953, by section 2 of act July 17, 1952.

### CROSS REFERENCES

Action for infringement of copyright, see section 101 of this title.

Ad interim protection of book or periodical published abroad, see section 22 of this title.

Assignment and bequests of copyright, see section 28 of this title.

Classification of works for registration, see section 5 of this title.

Common law rights not abrogated, see section 2 of this title.

Copyright as distinct from property in object copyrighted, see section 27 of this title.

Copyright not capital asset, see section 1221 (3) of Title 26, Internal Revenue Code.

Definitions—
    Author, see section 26 of this title.
    Date of publication, see section 26 of this title.
Duration, renewal and extension of copyright, see section 24 of this title.

Fee for recording notice of use, see section 215 of this title.

Form U—For notice of use of music on mechanical instruments, see Rules and Regulations § 202.3 (c), set out in Appendix to this title.

Government publications as not copyrightable, see section 58 of Title 44, Public Printing and Documents, and section 8 of this title.

Immoral and scandalous trade-marks, registrability, see section 1052 of Title 15, Commerce and Trade.

Mechanical reproduction rights, exemption of foreign states, see section 9 of this title.

Nonperformance for profit of musical compositions, see section 104 of this title.

Notice of use, recording of, see Rules and Regulations § 202.18 set out in Appendix to this title.

Power of Congress to grant authors exclusive right to their writings, see Const. Art. 1, § 8, cl. 8.

Proclamation by President granting foreign authors copyright protection, see section 9 of this title.

Rules and regulations for registration of claims to copyright, see section 207 of this title.

### § 2. Rights of author or proprietor of unpublished work.

Nothing in this title shall be construed to annul or limit the right of the author or proprietor of an unpublished work, at common law or in equity, to prevent the copying, publication, or use of such unpublished work without his consent, and to obtain damages therefor. (July 30, 1947, ch. 391, 61 Stat. 654.)

### CROSS REFERENCES

Copyright of works not reproduced for sale, see section 12 of this title.

Jurisdiction of district courts of actions—
    Arising under copyright laws, see section 1338 of Title 28, Judiciary and Judicial Procedure.
    Founded on diversity of citizenship, see section 1332 of Title 28, Judiciary and Judicial Procedure.

Venue of action founded on diversity of citizenship jurisdiction, see section 1391 of Title 28, Judiciary and Judicial Procedure.

### FEDERAL RULES OF CIVIL PROCEDURE

Injunctions, see rule 65, Title 28, Appendix, Judiciary and Judicial Procedure.

### § 3. Protection of component parts of work copyrighted; composite works or periodicals.

The copyright provided by this title shall protect all the copyrightable component parts of the work copyrighted, and all matter therein in which copyright is already subsisting, but without extending the duration or scope of such copyright. The copyright upon composite works or periodicals shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this title. (July 30, 1947, ch. 391, 61 Stat. 654; Oct. 31, 1951, ch. 655, § 16 (a), 65 Stat. 716.)

### AMENDMENTS

1951—Act Oct. 31, 1951, substituted "title" for "tile" in first sentence.

### CROSS REFERENCES

Exclusive rights as to copyrighted works, see section 1 of this title.

Infringement of copyrighted works, see section 101 of this title.

### § 4. All writings of author included.

The works for which copyright may be secured under this title shall include all the writings of an author. (July 30, 1947, ch. 391, 61 Stat. 654.)

### CROSS REFERENCES

Classification of works for registration, see section 5 of this title.

### § 5. Classification of works for registration.

The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

(a) Books, including composite and cyclopedic works, directories, gazetteers, and other compilations.

(b) Periodicals, including newspapers.

(c) Lectures, sermons, addresses (prepared for oral delivery).

(d) Dramatic or dramatico-musical compositions.

(e) Musical compositions.

(f) Maps.

(g) Works of art; models or designs for works of art.

(h) Reproductions of a work of art.

(i) Drawings or plastic works of a scientific or technical character.

(j) Photographs.

(k) Prints and pictorial illustrations including prints or labels used for articles of merchandise.

(l) Motion-picture photoplays.

(m) Motion pictures other than photoplays.

The above specifications shall not be held to limit the subject matter of copyright as defined in section

4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title. (July 30, 1947, ch. 391, 61 Stat. 654.)

CROSS REFERENCES

All writings of author included, see section 4 of this title.

Certificate of registration, see section 209 of this title.

Copyright distinct from property copyrighted, see section 27 of this title.

Copyright on compilations of works in public domain or of copyrighted works, see section 7 of this title.

Deposit of photographs or other identifying reproductions in lieu of copies, see section 13 of this title.

Exclusive rights as to copyrighted works, see section 1 of this title.

Fees for registration of claims to copyright, see section 215 of this title.

Forms of application for registration of copyrighted works, see § 202.3 of Rules and Regulations for Registration of Claims to Copyright, set out in Appendix to this title.

Government publications not copyrightable, see section 58 of Title 44, Public Printing and Documents and section 8 of this title.

Mechanical work to be done in United States, see section 16 of this title.

Notice of copyright, see section 19 of this title.

Patent for designs, see section 171 et seq. of Title 35, Patents.

Persons entitled to copyright, see section 9 of this title.

Protection of component parts of work copyrighted, see section 3 of this title.

Registration of prints and labels, see section 6 of this title.

Works not reproduced for sale, see section 12 of this title.

## § 6. Registration of prints and labels.

Commencing July 1, 1940, the Register of Copyrights is charged with the registration of claims to copyright properly presented, in all prints and labels published in connection with the sale or advertisement of articles of merchandise, including all claims to copyright in prints and labels pending in the Patent Office and uncleared at the close of business June 30, 1940. There shall be paid for registering a claim of copyright in any such print or label not a trade-mark $6, which sum shall cover the expense of furnishing a certificate of such registration, under the seal of the Copyright Office, to the claimant of copyright. (July 30, 1947, ch. 391, 61 Stat. 654.)

CROSS REFERENCES

Action for infringement, see section 101 of this title.

Patents for designs, see section 171 et seq. of Title 35, Patents.

Trade-marks registrable on principal register, see section 1052 of Title 15, Commerce and Trade.

## § 7. Copyright on compilations of works in public domain or of copyrighted works; subsisting copyrights not affected.

Compilations or abridgments, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works. (July 30, 1947, ch. 391, 61 Stat. 655.)

CROSS REFERENCES

Classification of works for registration, see section 5 of this title.

Exclusive rights as to copyrighted works, see section 1 of this title.

## § 8. Copyright not to subsist in works in public domain, or published prior to July 1, 1909, and not already copyrighted, or Government publications; publication by Government of copyrighted material.

No copyright shall subsist in the original text of any work which is in the public domain, or in any work which was published in this country or any foreign country prior to July 1, 1909, and has not been already copyrighted in the United States, or in any publication of the United States Government, or any reprint, in whole or in part, thereof, except that the Postmaster General may secure copyright on behalf of the United States in the whole or any part of the publications authorized by section 2506 of title 39.

The publication or republication by the Government, either separately or in a public document, of any material in which copyright is subsisting shall not be taken to cause any abridgment or annulment of the copyright or to authorize any use or appropriation of such copyright material without the consent of the copyright proprietor. (July 30, 1947, ch. 391, 61 Stat. 655; Oct. 31, 1951, ch. 655, § 16 (b), 65 Stat. 716; Sept. 7, 1962, Pub. L. 87–646, § 21, 76 Stat. 446.)

AMENDMENTS

1962—Pub. L. 87–646 substituted "thereof, except that the Postmaster General may secure copyright on behalf of the United States in the whole or any part of the publications authorized by section 2506 of title 39" for "thereof: Provided, That copyright may be secured by the Postmaster General on behalf of the United States in the whole or any part of the publications authorized by section 1 of the act of January 27, 1938 (39 U.S.C. 371)."

1951—Act Oct. 31, 1951, substituted "January" for "June" near the end of first paragraph.

EFFECTIVE DATE OF 1962 AMENDMENT

Amendment of section by Pub. L. 87–646, effective Nov. 1, 1962, see section 23(a) of Pub. L. 87–646, set out as a note under section 1 of Title 39, The Postal Service.

CONTINUATION OF ORDERS, RULES, AND REGULATIONS

Orders, rules, and regulations in effect under provisions of law superseded or amended by Pub. L. 87–646, to remain in effect, to the extent they would have been authorized under Pub. L. 87–646, until specifically repealed, amended, or revised, see section 22 of Pub. L. 87–646, set out as a note under section 1 of Title 39, The Postal Service.

CROSS REFERENCES

Action against United States founded upon an act of Congress, see section 1346 (a) (2) of Title 28, Judiciary and Judicial Procedure.

Common law copyright protected, see section 2 of this title.

Expiration of copyright term, see section 24 of this title.

Government publications not copyrightable, see section 58 of Title 44, Public Printing and Documents.

## § 9. Authors or proprietors, entitled; aliens.

The author or proprietor of any work made the subject of copyright by this title, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this title: *Provided, however,* That the copyright secured by this title shall extend to the

CROSS REFERENCES

Ad interim protection of book or periodical published abroad, see section 22 of this title.

Assignment and bequest of copyright, see section 28 of this title.

Author as including employer in case of works made for hire, see section 26 of this title.

Deposit of copies of foreign authors published in foreign country, see section 13 of this title.

Exclusive nature of right obtained under copyright, see section 1 of this title.

Persons entitled to renewal of copyright, see section 24 of this title.

Procedure to obtain registration of copyright, see Rules and Regulations issued by the Register of Copyrights as set out under section 207 of this title.

Proprietors entitled to sue for infringement of copyright, see section 101 of this title.

Works of foreign author or composer of musical compositions, see section 1 (e) of this title.

## § 10. Publication of work with notice.

Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and

proclamation of Sept. 28, 1929, regarding the Irish Free State (Eire). Copyright relations with Ireland are therefore governed by that proclamation.

[11] The exchange of notes between the United States and Italy, on the basis of which the proclamations of Oct. 31, 1892 (omitted from list) and May 1, 1915, were issued, was the subject of a note delivered on Mar. 12, 1948, to the Italian Foreign Office by the American Embassy at Rome with respect to pre-war bilateral treaties and other international agreements which the United States desired to keep in force or revive pursuant to Article 44 of the Treaty of Peace with Italy. The note stated in part "that the Government of the United States of America wishes to include the reciprocal copyright arrangement between the United States and Italy effected pursuant to the exchange of notes signed at Washington Oct. 28, 1892, and the exchange of notes signed at Washington Sept. 2, 1914, Feb. 12, Mar. 4 and Mar. 11, 1915, among the pre-war bilateral treaties and other international agreements with Italy which the United States desires to keep in force or revive. Accordingly, it is understood that the aforementioned arrangement will continue in force and that the Government of each country will extend to the nationals of the other country treatment as favorable with respect to copyright as was contemplated at the time the arrangement was entered into by the two countries."

[12] Treaty of Peace with Italy (Annex XV. A) dated at Paris Feb. 10, 1947 (TIAS 1648).

[13] The Department of State has made no announcement as to the applicability of these proclamations to Indonesia since it acquired its new status.

[14] With regard to the Universal Copyright Convention, UNESCO has advised the United States Government that a communication dated Nov. 14, 1955 was received from the Philippine Minister in Paris stating that the Philippine President had directed the withdrawal of the instrument of accession prior to Nov. 19, 1955, the date on which the Convention would become effective in respect of the Philippines. The Department of State has made no announcement as to the legal effect of this communication.

[15] In a note delivered Feb. 26, 1948 to the Rumanian Minister for Foreign Affairs by the American Minister at Bucharest with respect to pre-war bilateral treaties and other international agreements which the United States desired to keep in force or revive pursuant to Article 10 of the Treaty of Peace with Rumania, dated at Paris, Feb. 10, 1947 (TIAS 1649), the following statement was made regarding the proclamation of May 14, 1928, and the exchange of notes on which it is based, "It shall be understood that the reciprocal copyright arrangement between the United States and Rumania effected pursuant to the exchange of notes signed at Bucharest May 13 and Oct. 13, 1928, and at Washington May 12 and 19, 1928, and the proclamation issued May 14, 1928, by the President of the United States of America will continue in force."

[16] Treaty of friendship, commerce and navigation, protocol and exchanges of notes, signed at Bangkok Nov. 13, 1937 (Article 9 of the Treaty) [TS 940]. This treaty replaces the treaty of friendship, commerce and navigation between the United States and Siam signed at Washington Dec. 16, 1920 (TS 655), Article XII of which contains provisions relating to copyright protection.

[17] Not a party to Protocol 1 annexed to the Universal Copyright Convention.

[18] Not a party to Protocol 2 annexed to the Universal Copyright Convention.

[19] Not a party to Protocol 3 annexed to the Universal Copyright Convention.

[20] Ratification of the Convention and Protocols 2 and 3 was deposited December 31, 1952, on behalf of the Bishop of Urgel, co-Prince of Andorra; and ratification of the Convention and Protocols 1, 2, and 3 was deposited January 22, 1953, on behalf of the President of the French Republic, also as co-Prince of Andorra.

[21] France notified the Director-General of UNESCO on November 16, 1955, that the Convention and the three Protocols apply as from the date of their entry into force in respect to France, to metropolitan France and to the Departments of Algeria, Guadeloupe, Martinique, Guiana, and Reunion.

[22] The Director-General of UNESCO received on September 12, 1955, the following declaration made on behalf of the Federal Republic of Germany: "The Universal Copyright Convention and Protocols 1, 2 and 3 annexed shall likewise be applied to Land Berlin so soon as the Convention and the annexed Protocols come into force in respect of the Federal Republic of Germany."

such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title.  (July 30, 1947, ch. 391, 61 Stat. 656.)

CROSS REFERENCES

Action for infringement of copyright, see section 101 of this title.

Ad interim protection of book published abroad, see section 22 of this title.

Common law copyright in unpublished works, see section 2 of this title.

Component parts of work copyrighted, see section 8 of this title.

Deposit of copies after publication, see sections 13 and 14 of this title.

Exemption from requirement that mechanical work be done in United States, see section 16 of this title.

Notice of copyright—
    Accidental omission, see section 21 of this title.
    Form of, see section 19 of this title.
    Fraudulent, see section 105 of this title.
    Place of affixing, see section 20 of this title.

Persons entitled to secure copyright, see section 9 of this title.

Willful infringement for profit, see section 104 of this title.

Works not reproduced for sale, see section 12 of this title.

## § 11. Registration of claim and issuance of certificate.

Such person may obtain registration of his claim to copyright by complying with the provisions of this title, including the deposit of copies, and upon such compliance the Register of Copyrights shall issue to him the certificates provided for in section 209 of this title.  (July 30, 1947, ch. 391, 61 Stat. 656.)

CROSS REFERENCES

Certificate of registration, see section 209 of this title.

Deposit of copies after publication, see section 13 of this title.

## § 12. Works not reproduced for sale.

Copyright may also be had of the works of an author, of which copies are not reproduced for sale, by the deposit, with claim of copyright, of one complete copy of such work if it be a lecture or similar production or a dramatic, musical, or dramatico-musical composition; of a title and description, with one print taken from each scene or act, if the work be a motion-picture photoplay; of a photographic print if the work be a photograph; of a title and description, with not less than two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay; or of a photograph or other identifying reproduction thereof, if it be a work of art or a plastic work or drawing.  But the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies, under sections 13 and 14 of this title, where the work is later reproduced in copies for sale.  (July 30, 1947, ch. 391, 61 Stat. 656.)

CROSS REFERENCES

Action for infringement of copyright, see section 101 of this title.

Articles deposited to be transmitted without cost and receipt given on demand, see section 15 of this title.

Common law rights in unpublished work, see section 2 of this title.

Duration and renewal of copyright, see section 24 of this title.

Entry of deposit in record books of Copyright Office, see section 208 of this title.

Notice of destruction of unpublished manuscripts, see section 214 of this title.

Receipt for copies deposited furnished without charge upon request, see section 209 of this title.

## § 13. Deposit of copies after publication; action or proceeding for infringement.

After copyright has been secured by publication of the work with the notice of copyright as provided in section 10 of this title, there shall be promptly deposited in the Copyright Office or in the mail addressed to the Register of Copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, or if the work is by an author who is a citizen or subject of a foreign state or nation and has been published in a foreign country, one complete copy of the best edition then published in such foreign country, which copies or copy, if the work be a book or periodical, shall have been produced in accordance with the manufacturing provisions specified in section 16 of this title; or if such work be a contribution to a periodical, for which contribution special registration is requested, one copy of the issue or issues containing such contribution; or if the work belongs to a class specified in subsections (g), (h), (i) or (k) of section 5 of this title, and if the Register of Copyrights determines that it is impracticable to deposit copies because of their size, weight, fragility, or monetary value he may permit the deposit of photographs or other identifying reproductions in lieu of copies of the work as published under such rules and regulations as he may prescribe with the approval of the Librarian of Congress; or if the work is not reproduced in copies for sale there shall be deposited the copy, print, photograph, or other identifying reproduction provided by section 12 of this title, such copies or copy, print, photograph, or other reproduction to be accompanied in each case by a claim of copyright. No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with. (July 30, 1947, ch. 391, 61 Stat. 656; Mar. 29, 1956, ch. 109, 70 Stat. 63.)

### AMENDMENTS

1956—Act Mar. 29, 1956, permitted the deposit of photographs or other identifying reproductions in lieu of copies of the work if the work belongs to a class specified in section 5 (g), (h), (i) or (k) of this title.

### CROSS REFERENCES

Action for infringement of copyright, see section 101 of this title.

Affidavit to accompany copies, see section 17 of this title.

Articles deposited to be transmitted without cost and receipt given on demand, see section 15 of this title.

Certificate of compliance as condition to importation, see section 109 of this title.

Deposit of photographs or other identifying reproductions in lieu of copies, see Rules and Regulations § 202.16 set out in Appendix to this title.

Entry of deposit in record books of Copyright Office, see section 208 of this title.

Exemption from deposit requirements, see section 9 of this title.

Failure to deposit copies; penalty, see section 14 of this title.

Mechanical work to be done in United States, see section 16 of this title.

Proof of deposit of copies by persons objecting to importation of copyrighted articles, see section 109 of this title.

Publication with notice of copyright, see section 10 of this title.

Receipt for copies deposited furnished without charge upon request, see section 209 of this title.

## § 14. Same; failure to deposit; demand; penalty.

Should the copies called for by section 13 of this title not be promptly deposited as provided in this title, the Register of Copyrights may at any time after the publication of the work, upon actual notice, require the proprietor of the copyright to deposit them, and after the said demand shall have been made, in default of the deposit of copies of the work within three months from any part of the United States, except an outlying territorial possession of the United States, or within six months from any outlying territorial possession of the United States, or from any foreign country, the proprietor of the copyright shall be liable to a fine of $100 and to pay to the Library of Congress twice the amount of the retail price of the best edition of the work, and the copyright shall become void. (July 30, 1947, ch. 391, 61 Stat. 657.)

### CROSS REFERENCES

Exemption under Universal Copyright Convention, see section 9 of this title.

Jurisdiction of district courts of fines, penalties or forfeitures, see section 1355 of Title 28, Judiciary and Judicial Procedure.

Waiver of deposit requirements, see Rules and Regulations § 202.3 set out in Appendix to this title.

Works not reproduced for sale, deposit of copies, see section 12 of this title.

## § 15. Same; postmaster's receipt; transmission by mail without cost.

The postmaster to whom are delivered the articles deposited as provided in sections 12 and 13 of this title shall, if requested, give a receipt therefor and shall mail them to their destination without cost to the copyright claimant. (July 30, 1947, ch. 391, 61 Stat. 657.)

### CROSS REFERENCES

Deposit of copies—

After publication, see section 13 of this title.

Of works not reproduced for sale, see section 12 of this title.

Penalty mail, authorization to use, see section 4152 of Title 39, The Postal Service.

Reimbursement of Post Office Department of equivalent amount of postage for matter sent without prepayment of postage, see section 4156 of Title 39, The Postal Service.

## § 16. Mechanical work to be done in United States.

Of the printed book or periodical specified in section 5, subsections (a) and (b), of this title, except the original text of a book or periodical of foreign origin in a language or languages other than English, the text of all copies accorded protection under this title, except as below provided, shall be printed from type set within the limits of the United States, either by hand or by the aid of any kind of typesetting machine, or from plates made within the limits of the United States from type set therein, or, if the text be produced by lithographic process, or photoengraving process, then by a process wholly performed within the limits of the United States, and the printing of the text and binding of the said book shall be performed within the limits of the

**§ 212. Records and works deposited in Copyright Office open to public inspection; taking copies of entries.**

The record books of the copyright office, together with the indexes to such record books, and all works deposited and retained in the copyright office, shall be open to public inspection; and copies may be taken of the copyright entries actually made in such record books, subject to such safeguards and regulations as shall be prescribed by the Register of Copyrights and approved by the Librarian of Congress. (July 30, 1947, ch. 391, 61 Stat. 667.)

**§ 213. Disposition of articles deposited in office.**

Of the articles deposited in the copyright office under the provisions of the copyright laws of the United States, the Librarian of Congress shall determine what books and other articles shall be transferred to the permanent collections of the Library of Congress, including the law library, and what other books or articles shall be placed in the reserve collections of the Library of Congress for sale or exchange, or be transferred to other governmental libraries in the District of Columbia for use therein. (July 30, 1947, ch. 391, 61 Stat. 667.)

**§ 214. Destruction of articles deposited in office remaining undisposed of; removal of by author or proprietor; manuscripts of unpublished works.**

Of any articles undisposed of as above provided, together with all titles and correspondence relating thereto, the Librarian of Congress and the Register of Copyrights jointly shall, at suitable intervals, determine what of these received during any period of years it is desirable or useful to preserve in the permanent files of the copyright office, and, after due notice as hereinafter provided, may within their discretion cause the remaining articles and other things to be destroyed: *Provided,* That there shall be printed in the Catalog of Copyright Entries from February to November, inclusive, a statement of the years of receipt of such articles and a notice to permit any author, copyright proprietor, or other lawful claimant to claim and remove before the expiration of the month of December of that year anything found which relates to any of his productions deposited or registered for copyright within the period of years stated, not reserved or disposed of as provided for in this title. No manuscript of an unpublished work shall be destroyed during its term of copyright without specific notice to the copyright proprietor of record, permitting him to claim and remove it. (July 30, 1947, ch. 391, 61 Stat. 667.)

CROSS REFERENCES

Deposit of copies of works not reproduced for sale, see section 12 of this title.

**§ 215. Fees.**

The Register of Copyrights shall receive, and the persons to whom the services designated are rendered shall pay, the following fees:

For the registration of a claim to copyright in any work, except a print or label used for articles of merchandise, $4; for the registration of a claim to copyright in a print or label used for articles of merchandise, $6; which fees shall include a certificate of registration under seal for each work registered: *Provided,* That only one registration fee shall be required in the case of several volumes of the same book published and deposited at the same time: *And provided further,* That with respect to works of foreign origin, in lieu of payment of the copyright fee of $4 together with one copy of the work and application, the foreign author or proprietor may at any time within six months from the date of first publication abroad deposit in the Copyright Office an application for registration and two copies of the work which shall be accompanied by a catalog card in form and content satisfactory to the Register of Copyrights.

For recording the renewal of copyright and issuance of certificate therefor, $2.

For every additional certificate of registration, $1.

For certifying a copy of an application for registration of copyright, and for all other certifications, $2.

For recording every assignment, agreement, power of attorney, or other paper not exceeding six pages, $3; for each additional page or less, 50 cents; for each title over one in the paper recorded, 50 cents additional.

For recording a notice of use, $2, for each notice of not more than five titles; and 50 cents for each additional title.

For any requested search of Copyright Office records, or works deposited, or services rendered in connection therewith, $3 for each hour of time consumed. (July 30, 1947, ch. 391, 61 Stat. 668; Apr. 27, 1948, ch. 236, § 2, 62 Stat. 202; June 3, 1949, ch. 171, § 4, 63 Stat. 154.)

AMENDMENTS

1949—Act June 3, 1949, added last proviso to second paragraph.

1948—Act Apr. 27, 1948, among other changes, increased fees generally.

EFFECTIVE DATE

Amendment of section by act Apr. 27, 1948, effective thirty days after April 27, 1948, see note under section 211 of this title.

CROSS REFERENCES

Catalog card, form and content of, see Rules and Regulations § 201.7 set out in Appendix to this title.

Classification of works for registration, see section 5 of this title.

Registration of prints and labels, see section 6 of this title.

Rules and regulations for registration of claims to copyright, see Appendix to this title.

**§ 216. When the day for taking action falls on Saturday, Sunday, or a holiday.**

When the last day for making any deposit or application, or for paying any fee, or for delivering any other material to the Copyright Office falls on Saturday, Sunday, or a holiday within the District of Columbia, such action may be taken on the next succeeding business day. (Added Apr. 13, 1954, ch. 137, § 1, 68 Stat. 52).

cations for registration of claims to copyright in published periodicals manufactured in the United States of America are made on Form B; in periodicals, or in contributions thereto, manufactured outside the United States of America, except those subject to the ad interim provision of the copyright law, on Form A–B Foreign; and in periodicals, or in contributions thereto, in the English language manufactured and first published outside of the United States of America, and subject to the ad interim provisions of the copyright law, on Form A–B Ad Interim. Applications for registration of claims to copyright in contributions to periodicals manufactured in the United States of America are made on Form BB. Application for registration of claims to copyright in contributions to periodicals, which contributions are prints published in connection with the sale or advertisement of an article or articles of merchandise, are made on Form KK.

§ 202.6  Lectures or similar productions prepared for oral delivery (Class C).

This class includes the scripts of unpublished works prepared in the first instance for oral delivery, such as lectures, sermons, addresses, monologs, panel discussions, and variety programs prepared for radio or television. The script submitted for registration in Class C should consist of the actual text of the work to be presented orally. Formats, outlines, brochures, synopses, or general descriptions of radio and television programs are not registrable in unpublished form. When published with notice as prescribed by law, such works may be considered for registration as "books" in Class A.

§ 202.7  Dramatic and dramatico-musical compositions (Class D).

This class includes published or unpublished works dramatic in character such as the acting version of plays for the stage, motion pictures, radio, television and the like, operas, operettas, musical comedies and similar productions, and pantomimes. Choreographic works of a dramatic character, whether the story or theme be expressed by music and action combined or by actions alone, are subject to registration in Class D. However, descriptions of dance steps and other physical gestures, including ballroom and social dances or choreographic

works which do not tell a story, develop a character or emotion, or otherwise convey a dramatic concept or idea, are not subject to registration in Class D.

§ 202.8  Musical compositions (Class E).

(a) This class includes published or unpublished musical compositions in the form of visible notation (other than dramatico-musical compositions), with or without words, as well as new versions of musical compositions, such as adaptations or arrangements, and editing when such editing is the writing of an author. The words of a song, when unaccompanied by music, are not registrable in Class E.

(b) A phonograph record or other sound recording is not considered a "copy" of the compositions recorded on it, and is not acceptable for copyright registration. Likewise, the Copyright Office does not register claims to exclusive rights in mechanical recordings themselves, or in the performances they reproduce.

§ 202.9  Maps (Class F).

This class includes all published cartographic representations of area, such as terrestrial maps and atlases, marine charts, celestial maps and such three-dimensional works as globes and relief models.

§ 202.10  Works of art (Class G).

(a) *General.* This class includes published or unpublished works of artistic craftsmanship, insofar as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries, as well as works belonging to the fine arts, such as paintings, drawings and sculpture.

(b) In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form. The registrability of a work of art is not affected by the intention of the author as to the use of the work, the number of copies reproduced, or the fact that it appears on a textile material or textile product. The potential availability of protection under the design patent law will not affect the registrability of a work of art, but a copyright claim in a patented design or in the drawings or photographs in a patent application will not be registered after the patent has been issued.

**CHAPTER 2. COPYRIGHTABLE MATTER**

Part 2.6  <u>MUSIC (CLASS E)</u>

**2.6.1 What are musical compositions.**

1. <u>Generally.</u> To constitute a "musical composition"
   for purposes of copyright registration in Class E,
   a work must generally contain notations representing
   a succession of musical sounds, usually in some
   definite melodic and rhythmic pattern. The work may
   consist of music alone, or of words and music combined.
   A work consisting of words alone is not registrable in
   Class E.

II. <u>Evaluation of musical content.</u>

   a. Three elements are usually present in a musical
      composition: melody (a succession of single
      tones), rhythm (groupings of tones according to
      accent and time value), and harmony (chords of
      differing pitch in various related progressions
      or modulations). The presence of all or any one
      or two of these elements may be considered to
      constitute a musical composition. However, before
      making registration for certain unpublished works,
      it may be advisable to write to the applicant,
      pointing out that protection extends only to the
      material actually deposited, and suggesting that
      in his own interest he develop his manuscript to
      supply the missing element.

2-23

**A9**

## 2.6.1 What are musical compositions. (cont'd)

### II. Evaluation of musical content. (cont'd)

**a.** (cont'd)

Examples:



**b.** In determining whether a work is a "musical composition" for purposes of copyright registration, the usual standards of musical criticism have no application. The presence of notes does not necessarily presuppose the existence of a tune or of any relationship to a particular mode or key.

**c.** To support a registration in Class E, a work of music must represent creative authorship.

**2.6.1** <u>What are musical compositions.</u>  (cont'd)

   **II.** <u>Evaluation of musical content.</u>  (cont'd)

      **c.**  (cont'd)

         **1.** A musical score having no element of original composition (e.g., a group of diatonic and chromatic scales for beginning students) is not registrable unless compilation is present.  (See topics 2.6.1.IV.c., 2.6.4.VI.)

         **2.** A phrase consisting of a few musical notes (e.g., the NBC signature; clock chimes), standing alone, would not have sufficient substance to constitute a composition.

         **3.** To be registrable in Class E, it is not necessary that all of the underlying musical themes in the composition be original.  Variations, popular adaptations, arrangements, and other versions of public domain themes (or of copyrighted themes when permission to use has been secured) may be registered as new works of authorship.  (See topic 2.6.4.)

            Examples:

              (a)  Variations on a theme by Paganini

              (b)  A symphonic arrangement of "Yankee Doodle"

              (c)  A popular song based on a theme from Chopin's "Fantasie Impromptu"

         **4.** A work consisting chiefly of text or pictorial matter, although it deals with the subject of music and contains incidental fragments of musical scores, is not registrable in Class E.

            Examples:

              (a)  A book on some musical subject, with brief musical quotations to illustrate the text

              (b)  An advertising print containing a few bars of music to convey the idea of music

**2.6.1** <u>What are musical compositions</u>. (cont'd)

 II. <u>Evaluation of musical content</u>. (cont'd)

  4. (cont'd)

   Examples: (cont'd)

    (c) A book explaining a new system of musical notation, illustrated by excerpts from familiar works in the public domain

    (d) A piano instruction chart containing text and diagrams showing notes on the staff and on the piano keyboard

 III. <u>Evaluation of textual content</u>.

  a. <u>Song lyrics</u>.

   1. The words or lyrics of a song are a component part of the musical composition and may be registered together with the music in published or unpublished form.

   2. The words of a song, without music, are not of themselves a musical composition, and are not registrable in Class E.

    (a) The words of a song, without the music, are not registrable in unpublished form, even if the manuscript indicates that they are to be sung to a well-known melody.

    (b) Words alone may be registered in Class A as a book when published with notice.

   3. The Office prefers that the words of a song be written above or beneath the notes to which they are sung, but this is not a requirement for registration. A manuscript may be registered in Class E even if the words are on one sheet and the music on another.

2.6.2  Nature and completeness of copies deposited.  (cont'd)

   I.  Conventional notation not necessary.  (cont'd)

      c.  (cont'd)

      Example:



   II.  Sound recordings not acceptable.  A sound recording of
a musical composition is not acceptable for registra-
tion in Class E.  When a sound recording is deposited,
the Office will reject the claim but point out to the
applicant the possibility of writing out the composition
in manuscript form and then making registration on the
basis of the manuscript.  (As to the problem of the
sale of recordings as publication, see topic 3.1.3.IV.)

   III.  Completeness of copies deposited.

      a.  Unpublished manuscripts.

         1.  As long as the manuscript appears to
contain copyrightable music, no
effort will generally be made to
determine if the words and music are
complete and if the work is in finished
form.  (But see paragraphs 2 and 3,
below.)

## 2.6.3 Requirements of registration for musical compositions.

I. Unpublished musical compositions.

    a. In general. Claims to copyright in unpublished musical compositions may be registered in Class E. (As to publication, see Chapter 3; as to the formalities of registration, see chapters 5, 9, and 10.)

    b. Two or more versions.

        1. When an applicant submits two or more different unpublished arrangements or other versions of the same composition, separate registrations will be encouraged. A single registration may be considered if the applicant insists, provided the authorship of each version is the same, and a single identifying title is given.

        Examples:

            (a) Arrangements of a composition for piano and for dance orchestra

            (b) English, French, and Spanish versions of a popular song, with different lyrics and minor changes in tempo and phrasing

        2. When an applicant submits two or more unpublished versions of the same composition, in which the only differences are in uncopyrightable elements, they may be registered together on a single application.

        Example:

            The same music in different keys

A14

**2.6.3** Requirements of registration for musical compositions. (cont'd)

   **I.** Unpublished musical compositions. (cont'd)

        **c.** Collections of unpublished musical compositions. A collection of two or more unpublished musical compositions may be registered on one application when all of the following conditions are met:

           **1.** The collection is assembled in an orderly arrangement; and

           **2.** The collection bears a single title identifying the collection as a whole; and

           **3.** The collection as a whole is the subject of a single claim of copyright; and

           **4.** All the compositions are by the same author; or, if they are by different authors, the collection as a whole represents the work of a single author in its compilation or editing.

   **II.** Published musical compositions.

        **a.** In general. Claims to copyright in musical compositions published with the appropriate copyright notice may be registered in Class E. (As to publication, see chapter 3; as to notice, see chapter 4; as to the formalities of registration, see chapters 5, 9, and 10.)

        **b.** Publication of registered manuscript. When a musical composition, previously registered in unpublished form, is published with appropriate notice, registration should again be made to cover the published edition. (17 U.S.C. §12.)

        **c.** Books of music. See topic 2.6.1.IV.

## 2.6.4  New versions of musical compositions.

I.  In general.  In order for registration of a new version of an existing musical composition to be valid, the composition employed must be in the public domain or, if copyrighted or protected under common law, must be used with the owner's permission.

   a.  Frequently the claimant of copyright in the new version is also the owner of copyright in the composition employed in the new version, in which case no question of permission arises.

   b.  In all cases the Copyright Office will assume that use of the existing material is authorized unless there are fairly clear indications that permission has not been obtained (e.g., where the claimant tells us so.) In the latter case, the Office will not refuse registration for the new version, but will suggest the advisability of securing permission before registering a copyright claim or publishing the work.

II.  Adaptations or arrangements.  An adaptation or arrangement of existing music, involving original composition, constitutes a registrable new musical work.

   Examples:

   a.  An adaptation of an organ work for orchestra

   b.  A new piano accompaniment for an old English vocal air

   c.  An arrangement for dance orchestra of the songs from "The Boy Friend"

III.  Revisions or additions.

   a.  The substantial revision of the score of existing music, or the addition to an old score of a substantial amount of new music, creates a registrable new version.

      Examples:

      1.  The rewriting of a substantial portion of the music of a previously copyrighted composition

**A16**

2.6.4 New versions of musical compositions. (cont'd)

    III. Revisions or additions. (cont'd)

        a. (cont'd)

           Examples: (cont'd)

               2. The addition of a piano accompaniment to a copyrighted lead sheet

               3. A medley of old songs joined together by the interpolation of new music

        b. Minor changes in existing music, such as any musician might readily make, and which are not substantial enough to constitute original composition, do not create a registrable new version.

           Examples:

               1. The change of a few notes in the melody of "The Star Spangled Banner"

               2. Mere transposition of an old song into a different key

               3. The omission of two measures from an old song

    IV. Editing. Whether editing of a musical composition constitutes registrable "new matter" depends upon its nature and extent. Assuming it is sufficient to constitute creative authorship, editing will be regarded as a "writing" registrable in Class E.

    V. New lyrics. (See also topic 2.6.1.III.a.)

        a. The addition of copyrightable new words to existing music creates a new version registrable in Class E.

A17

**2.6.4** New versions of musical compositions. (cont'd)

    **V.** New lyrics. (cont'd)

        **a.** (cont'd)

        Examples:

            1. A new verse to "America the Beautiful"

            2. New words to be sung to the melody of Schumann's "Traumerei"

            3. English translations of the words of Russian folk songs, accompanied by the music

        **b.** The setting of an existing poem to existing music, if it involves some element of creative selection and combination, may constitute a new version or adaptation, registrable as music.

        **c.** Minor changes in the words of an existing lyric (e.g., change of the words "Mary dear" to "Ellen dear") will not constitute a new version.

    **VI.** Compilations. (See also topic 2.6.1.IV.c.)

        **a.** A published or unpublished collection of previously published musical works, in which the assembling, selection, or combination of works represents some degree of original authorship, constitutes a registrable compilation.

        Examples:

            1. A collection of compositions for the violin by various composers

            2. A graded selection of Schumann's composition for the piano

            3. An album of Piano arrangements titled "Hits of the Forties"

        **b.** The mere republication together of several

2.6.4  New versions of musical compositions.  (cont'd)

VI.  Compilations.  (cont'd)

b.  (cont'd)
previously published musical works, where no
appreciable degree of original authorship
was involved in putting them together, does
not constitute a registrable compilation.

Examples:

1.  The songs from "Oklahoma"

2.  Beethoven's twelve contra dances

3.  Mozart's Symphonies Nos. 39, 40, and 41

A19