Nos. 16-56057 & 16-56287

---

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust,
*Plaintiff, Appellant and Appellee,*
v.
Led Zeppelin *et al.*, *Defendants and Appellees*, and
Warner/Chappell Music, Inc.,
*Defendant, Appellee and Appellant.*

---

On Appeal from the United States District Court for the Central District of California
The Honorable R. Gary Klausner
No. 15-cv-03462 RGK (AGRx)

---

**Brief *Amicus Curiae* of The Pullman Group, LLC and Structured Asset Sales, LLC in Support of Plaintiff-Appellant on *En Banc* Rehearing**

---

W. Michael Hensley
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
(714) 852-6835
mhensley@alvaradosmith.com
*Counsel for Structured Asset Sales, LLC and the Pullman Group, LLC*

## RULE 26.1 DISCLOSURE STATEMENT

The Pullman Group, LLC has no parent corporation, is not publicly traded, and no publicly held company owns 10% or more of its stock. Structured Asset Sales, LLC has no parent corporation, is not publicly traded, and no publicly held company owns 10% or more of its stock.

Both are 100% owned by David Pullman.

Plaintiff-Appellant's counsel has consented to the filing of this brief. Counsel for *amici* attempted without success to obtain consent from Defendants-Appellees' counsel.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................ iii

INTEREST OF *AMICUS CURIAE* ............................................................... 4

SUMMARY OF ARGUMENT ......................................................................... 5

ARGUMENT ............................................................................................... 9

I. This Court should find that musical compositions registered prior to the enactment of the 1976 Act may include elements not reflected in the sheet music on file with the U.S. Copyright Office ............................................. 9

CONCLUSION .......................................................................................... 12

STATEMENT OF RELATED CASES ........................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................. 14

CERTIFICATE OF SERVICE ..................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*White-Smith Music Pub. Co. v. Apollo Co.*, 209 U.S. 1 (1908)..........................9, 10

## Other Authorities

2 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.05[A] (2017)..........7, 9, 10

H.R. Rep. 94-1476, 182, 1976 U.S.C.C.A.N. 5659, 5798 .....................................11

PL 94–553 (S 22), PL 94–553, October 19, 1976, 90 Stat 2541 ............................11

## INTEREST OF *AMICUS CURIAE*[1]

Structured Asset Sales, LLC is a Limited Liability Company, which invests in and owns rights to thousands of songs and musical compositions and is owned by David Pullman, based in Los Angeles, California who is its Founder, Chairman and CEO, as well as the Founder, Chairman and CEO of The Pullman Group, LLC, the creator of all Pullman Bonds, the first ever music, entertainment and intellectual property including copyright asset backed securitizations of any kind in history including the world famous financial landmark $55 million transaction rated single-A level by multiple ratings agencies Pullman Bond for David Bowie, and Pullman Bond series for the Motown Hit Machine, Holland Dozier Holland, R & B Royalty, Ashford & Simpson, The Godfather of Soul, James Brown and The Isley Brothers, among others backed by copyrights worth hundreds of millions of dollars. See www.pullmanbonds.com.

Structured Asset Sales, LLC is a beneficial owner of one-third of all of the copyright rights of the catalog of songwriter Edward Townsend, including the musical composition "Let's Get it On." "Let's Get it On" was written and produced by Townsend and Marvin Gaye in 1973, registered internationally in

[1] No party or party's counsel has wholly or partly authored this brief, or contributed money intended to fund preparing or submitting the brief. No person other than *amicus* has contributed money intended to fund preparing or submitting the brief.

1973, and renewed with the United States Copyright Office in 2000. Structured Asset Sales, LLC is the plaintiff in a case currently pending before the United States District Court for the Southern District of New York, *Structured Asset Sales, LLC v. Edward Christopher Sheeran p/k/a Ed Sheeran, et al.*, 18-cv-5839. In that case, Structured Asset Sales, LLC alleges that Mr. Sheeran's 2014 song, "Thinking Out Loud," infringes the copyright in the 1973 composition "Let's Get it On."

*Amici* have an interest in maintaining the broad protection granted under the Copyright Act to the copyrighted works they own and in which they invest, including "Let's Get it On."

## SUMMARY OF ARGUMENT

The Copyright Act grants owners of musical compositions a broad set of rights in connection with the works they own, including the right to bring actions against those who would infringe their rights by copying, performing or distributing musical compositions or recordings that are substantially similar to, and thus infringing of, the registered compositions.

Both the Copyright Act of 1976 (the "1976 Act"), and its predecessor from 1909 (the "1909 Act"), required copyright registrants to submit "deposit" copies of their works. Under the 1909 Act, the U.S. Copyright Office would **only** accept sheet music, or equivalent writings using various notation systems, as deposit

copies in connection with musical compositions. Beginning with the enactment of the 1976 Act, the U.S. Copyright Office accepted musical recordings – such as vinyl records, tapes, CDs and digital files – as deposit copies for applications for the registration of musical compositions.

It is Defendants-Appellees' position (and that of the District Court in this case) that in copyright infringement actions brought by the owners of musical compositions registered under the 1909 Act, the scope of the plaintiff's rights is limited to the musical notations on the sheet music submitted to the U.S. Copyright Office as deposit copies, to the exclusion of any elements of the musical composition not found on the deposited sheet music, such as elements one might hear in a recording of such composition. It is also their position that for musical compositions registered following the enactment of the 1976 Act, when the U.S. Copyright Office accepted musical recordings as deposit copies, the scope of plaintiff's rights expanded to the bounds of whatever was submitted as a deposit copy, including musical recordings.

*Amici* disagree, and take the position that plaintiffs bringing actions for copyright infringement based on musical compositions registered under the 1909 Act are not limited in their claims to the sheet music submitted as deposit copies, but rather may argue that the registered composition includes additional elements,

and is entitled to present evidence in support of that position.

Professors Nimmer explain – in a section of their treatise cited with approval by Defendants-Appellees – that the **reason** the U.S. Copyright Office did not allow applicants for the registration of musical compositions to submit recordings as deposit copies was because – at that time – the law did not recognize that musical recordings could infringe musical compositions. According to *Nimmer*, with the enactment of the 1976 Act, and the recognition that musical recordings **could** infringe musical compositions, the U.S. Copyright Office changed its policies to allow submission of musical recordings as deposit copies for musical compositions.

Musical compositions registered before the U.S. Copyright Office changed its policies have sheet music on file with the Copyright Office because, and only because, the Copyright Office was laboring under a policy based on a legal principle which has since been abrogated, in favor of the modern view that musical compositions clearly **can**, and often **do**, embody more than is shown using musical notation on sheet music. Prohibiting plaintiffs from introducing evidence beyond the sheet music to demonstrate the breadth of their musical compositions, based on the historical policies of the Copyright Office, has the effect of robbing those plaintiffs of the full protections granted to them by the Copyright Act.

To put it another way, Defendants-Appellees' position suggests that if the creators of musical compositions had not diligently registered their compositions, but rather waited a number of years until they could file recordings as deposit copies, they would have been rewarded for their delay by a grant of broader protection for their compositions. Such an outcome would be unfair, and would run contrary to the well-established principle under Copyright Law of rewarding early movers, for example through access to a wider range of damages if their registrations precede the alleged infringements.

In this case, and in numerous other cases now pending around the country, courts should recognize that plaintiffs' pre-1976 Act copyright registrations for musical compositions encompass all elements of those compositions, whether or not shown on the sheet music on file at the U.S. Copyright Office, and those courts should make evidentiary rulings in accordance with that recognition, without binding plaintiffs' hands and limiting their ability to make their infringement arguments, either.

*Amici* respectfully request that the *en banc* panel issue a ruling in accordance with the foregoing.

## ARGUMENT

### I. This Court should find that musical compositions registered prior to the enactment of the 1976 Act may include elements not reflected in the sheet music on file with the U.S. Copyright Office

In their June 2, 2017 "Combined Answering and Opening Brief," Defendants Appellees selectively quoted *Nimmer on Copyright*:

> the 1909 Act provided that a work was copyrighted either by publishing copies with the required notice or by registering the work as unpublished and depositing a copy of the work. 17 U.S.C. §§ 10-13. Because sound recordings were not copies of a musical composition, "to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form."

Def-App Br. at 35 (*quoting* 2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (2017)). Defendants-Appellees, however, did not provide the full context of Professors Nimmers' explanation, under the heading "The Diminished Significance of Visible Notation":

> **[A] The Diminished Significance of Visible Notation**
>
> A musical work is entitled to copyright as long as it is "fixed in any tangible medium of expression," regardless of the nature of that medium. Specifically, it is no longer necessary, as formerly, that the medium be visibly intelligible. The fact that the grooves on a phonograph record may not be "read" is no bar to the copyrighting of a musical work by fixing it in record form. It is, thus, possible to obtain statutory copyright over a work merely by recording it, although the composer is unable or unwilling to reduce the work to written form in conventional musical notation.
>
> This rule represents a sweeping departure from the 1909 Act; it constitutes an intentional overruling of *White-Smith Music Co. v. Apollo Co*., in which the Supreme Court held that, in order to constitute a "copy"

> within the meaning of then-extant copyright law, there must be "a written or printed record in intelligible notation." The Court concluded that an unauthorized manufacturer and seller of perforated music on paper (piano rolls) was not an infringer, as piano rolls failed to qualify as "copies" under the above definition, as they lacked a visibly "intelligible notation."
>
> Although *White-Smith* was decided the year before enactment of the 1909 Act, its doctrine became a part of that Act. **It was applied, for example, to phonograph records and to magnetic tape, neither of which could be said to embody intelligible notations and hence did not qualify as copies of the musical works thereby recorded**. **Because, under the 1909 Act, copyright protection required the placement of notice on copies (and likewise the deposit of copies), it followed that a musical work could not claim copyright unless the notice and deposit requirements were satisfied with respect to an object that constituted a visibly intelligible notation. Therefore**, in order to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form. (As an alternative, however, a musical composition recorded on a motion picture sound track could be protected under the motion picture copyright, even though not reduced to visibly intelligible notation.)

2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (2017) (*citing White-Smith Music Pub. Co. v. Apollo Co*., 209 U.S. 1 (1908)) (emphasis added).

Defendants-Appellees' decision to selectively quote from *Nimmer* robbed the passage of its proper meaning. What Professors Nimmer were saying is that the prior policy of the U.S. Copyright Office to accept only sheet music or equivalent written notational forms as deposit copies existed **only because** of the state of copyright infringement law at the time, and when infringement law changed, the policy changed with it. It would be inconsistent and inequitable to limit the scope of rights of copyright holders on this basis.

Indeed, Congress was careful to include the following in the "Transitional and Supplementary Provisions" of the 1976 Act: "All causes of action that arose under title 17 before January 1, 1978, shall be governed by title 17 as it existed when the cause of action arose." PL 94–553 (S 22), PL 94–553, October 19, 1976, 90 Stat 2541. They did so to "make[] clear that a cause of action existing on January 1, 1977, is to be governed by the law under which it arose." H.R. Rep. 94-1476, 182, 1976 U.S.C.C.A.N. 5659, 5798. The obvious corollary is that infringement cases arising in the late 2010s, although involving copyright registrations granted in the early 1970s, would enjoy the expanded benefits of the modern view that musical compositions can embody a wide range of elements that may or may not be reflected in sheet music -- as *Nimmer*'s own explanation demonstrates.

## CONCLUSION

This Court should take this opportunity to state unequivocally that copyright registrations for musical compositions – especially those registered prior to January 1, 1978 – can and often do exist beyond the written page, and that infringement cases should follow this principle when it comes to admission of evidence concerning the scope of the underlying composition. *Amici* respectfully request that the *en banc* panel issue a ruling in accordance with the foregoing.

Respectfully Submitted,

s/ W. Michael Hensley
Attorney for *Amici Curiae*
*The Pullman Group, LLC and*
*Structured Asset Sales, LLC*

## STATEMENT OF RELATED CASES

There are no related cases covered by 9th Cir. R. 28-2.6.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,910 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: August 16, 2019

s/ W. Michael Hensley
Attorney for *Amicus Curiae*
*The Pullman Group, LLC and*
*Structured Asset Sales, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amicus Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 16, 2019.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: August 16, 2019

s/ W. Michael Hensley
Attorney for *Amicus Curiae*
*The Pullman Group, LLC and*
*Structured Asset Sales, LLC*