# United States Court of Appeals
# For the Ninth Circuit

## C.A. 16-56057

---

### Skidmore v. Led Zeppelin *et al.*

Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Appellant.

---

### Appellant Michael Skidmore's Combined Response in Opposition to Intellectual Property Professors and Musicologists' Amicus Briefs

---

(Music copyright infringement, from the September 28, 2018 panel opinion reversing in part, affirming in part orders of the Honorable R. Gary Klausner, of the United States District Court for the Central District of California. The case was docketed in the Central District at 15- cv-03462)

---

### Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph (AJ) Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Michael Skidmore*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 3

INTRODUCTION ....................................................................... 4

ARGUMENT

I.  The Amici Musicologists have Interests in This Matter which Have Not Been Fully Disclosed ............................................... 5

II.  The Amici Briefs will Not Facilitate En Banc Review and asks this Circuit Court to Decide a Dispute of Fact Between Musicologists .............. 6

III.  The Amici Briefs Fail to Address What Will Happen if the Circuit Rules in Appellant's Favor on the Deposit Copy Issue ........................... 7

IV.  The Musicologists' Amicus Brief Incorrectly Compares this Case to the Blurred Lines Case When the Same Brief Admits the Two Cases are Entirely Dissimilar ................................................ 9

V.  The Musicologists' Amicus Brief Incorrectly Defines Originality, Conflating the Concept with Novelty ................................................ 11

VI.  The Musicologists' Brief Fails to Address Dr. Alexander Stewart's Conclusions, Instead Regurgitating that of Led Zeppelin's Musicologist ....................................................................... 12

VII.  The Amici Briefs Erroneously Claim that Selections and Arrangements are Only Afforded Thin Copyright Protection, A Concept Which is In Applicable to Musical Works ............................ 17

    a.  Thin Copyright Does not Apply to Either Version of Taurus .............. 18

    b.  The Amici's Personal Opinions about What Copyright Law Should Be Are Entirely Irrelevant to this Appeal; This Circuit Should Not Legislate from the Bench ......................... 18

    c.  Thin Copyright Does Not Apply to Musical Works and Has Never Been Applied to Musical Works ............................ 20

    d.  The Amici Do Not Address the Deposit Copy Issue ......................... 25

CONCLUSION ....................................................................... 26

# TABLE OF AUTHORITIES

## CASES

Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1447 (9th Cir. 1994) ......... 21, 22, 23, 24

Cooling Systems and Flexibles v. Stuart Radiator, 777 F. 2d 485 (9th Cir. 1985) .....................22

Feist Publishing Inc. v Rural Tel. Serv. Co., 499 U.S. 340, 344 (1991) ...............................20

Landsberg v. Scrabble Crossword Game Players, Inc., 736 F. 2d 485 (9th Cir. 1984) ..............22

McCulloch v. Albert E. Price, Inc., 823 F. 2d 316, 321 (9th Cir. 1987) ...............................21

Satava v. Lawry, 323 F.3d 805, 811 (9th Cir. 2003) ...................................................21,

Swirsky v. Carey, 376 F.3d 841 (9th Cir. 2004) ...............................................12, 21, 25

## STATUTES AND RULES

FRAP 29(a)(3) ................................................................................ 5

RULE 35-2 .................................................................................... 7

## Introduction

Jimmy Page and Robert Plant had an infinite number of ways to write "Stairway to Heaven"; out of these infinite choices they deliberately chose to use "Taurus" to write the first 2:14 minutes of their magnum opus ***precisely because it was unique and brilliant***. It contained that *je ne sais quoi* that all artists strive for, the protection of which is the *raison d'être* of copyright law. Page and Plant owned the album version of the "Taurus," opened for Spirit, covered Spirit's songs live, and stated in interviews that they held Spirit in high regard. It is ironic in the extreme—now that these notes written by Wolfe have become famous and been zealously protected by Led Zeppelin for decades—that Led Zeppelin and its allies are trying to gaslight Appellant and the court system into believing that this iconic musical expression is unoriginal and has never been protected by copyright law.

Appellant Michael Skidmore (Appellant), as Trustee for the Randy Craig Wolfe Trust, respectfully opposes the amici briefs because (1) the amici have undisclosed financial and other interests dependent on the outcome of this litigation, (2) this amici briefs do not address issues appropriate for en banc review, (3) the amici do not address the deposit copy issue, (4) the amici incorrectly compare this case to the <u>Blurred Lines</u> case, (5) the musicologists' brief uses the wrong definition of "originality" when claiming that "Taurus" is not original, (6) the amici misstate Appellant's positions and Dr. Alexander Stewart's analysis, and (7) they incorrectly

applies thin copyright to musical works when artistic expression is afforded broad protection.

Note that the first part of this brief (issues 1 to 6) generally responds to the musicologists' brief, while Appellant's response argument on thin copyright (issue 7) starts on page 17 of this brief.

## I.   THE AMICI MUSICOLOGISTS HAVE INTERESTS IN THIS MATTER WHICH HAVE NOT BEEN FULLY DISCLOSED

The amici musicologists seek to portray their interest in this case as scholarly and in the best interests of the court system. However, the erroneous and inapplicable virtual identity standard they are advocating for, as opposed to the substantial similarity standard, will benefit them professionally and/or financially—especially when working for deep-pocketed record companies and successful recording artists.[1] The applicable rules provide that all such interests should be disclosed. See FRAP 29(a)(3) (motion for leave to file amicus brief must disclose movants' interests).

The amici should be required to disclose all such cases, their clients, and their compensation. They should especially be required to identify any cases they are associated with in which arguments similar to the ones they advance in their brief have already been made. Are they acting purely as a friend of the court or are other

---

[1] For instance, Dr. Lawrence Ferrara, the expert for the Led Zeppelin's appellees, was paid over $80,000 for his role in the case. (Excerpt 1034-35)

interests implicated? This is unknown.

Moreover, the musicologists' brief is not a legal brief at all, but instead a musicological report that spends almost all its pages attempting to undercut Appellant's musicologist's opinion (Dr. Alexander Stewart). These musicologists are essentially attempting to enter as experts in this case, and be treated as such, but have provided no indication as to the extent of their research into the subject songs, been qualified, or disclosed their conflicts of interest. The experts retained in this case, Drs. Stewart and Ferrara, have spent many months transcribing, researching, and analyzing the musical expression at issue. While musicological opinions may differ, and the handful of musicologists whose names appear on this brief may disagree with Appellant's positions in this case, the court does not know their methodology, has no way of knowing whether the amici have read the numerous musicological reports, examined the musical transcriptions, lead sheets, and recordings, and other materials.

II.  The Amici Briefs will Not Facilitate En Banc Review and asks this Circuit Court to Decide a Dispute of Fact Between Musicologists

The amici seek to convince this Circuit that Plaintiff's expert musicologist, Dr. Alexander Stewart, was wrong in his analysis (as explained below, they seriously misstate Dr. Stewart's position). However, en banc review is meant for the raising of novel or complex legal issues. Attempting to disqualify Plaintiff's expert is not a novel or complex issue appropriate for en banc review, and it is not properly raised at this

late hour outside of the full adversarial process. As noted, these musicologists have not been admitted or vetted as experts. The amici are inappropriately asking this Circuit to weigh and decide factual disputes between expert witnesses. Dr. Stewart is well-qualified and his opinions are musicologically sound.

The professors, and to a lesser extent the musicologists, also ask the Court to unilaterally change the copying standard for music copyright infringement from substantial similarity to that of "virtual identity." As explained *infra*, there is no legal basis at all for this change, it is merely the standard that amici wish was in place for various professional and personal reasons. In other words, it is a request that this Circuit legislate from the bench. Amici should have filed their brief with Congress, not this Circuit.

Not only are the requests that this Circuit dismiss Dr. Stewart's opinions, and legislate from the bench, far outside the role of an appellate court—especially one sitting for en banc review—they are also off topic. While this Circuit retains jurisdiction over the whole case during en banc review, the only issue that has in fact been fully briefed for en banc review is the deposit copy issue. See Ninth Circuit Rule 35-2.

## III. The Amici Briefs Fail to Address What Will Happen if the Circuit Rules in Appellant's Favor on the Deposit Copy Issue

Appellant Skidmore further notes that the arguments made by the amici

advocating for "thin copyright," and musicologically analyzing the Taurus deposit copy, fail to address issues actually present in this case.

Currently under en banc review is whether "Taurus's" album composition should have been used in the comparison instead of the deposit copy. If the album composition is the proper basis for the infringement comparison (as Plaintiffs' contend is obviously the case), then any amici arguments are null and void because they are based solely on the Taurus deposit copy.

For instance, the musicologists' attack Plaintiffs' expert musicologist's opinion that the Taurus deposit copy is protectable expression. Yet, the entire point of this en banc review is that a different composition should have been used in the comparison, the album version of Taurus. The musicologists quite deliberately declined to analyze the album version of Taurus because they know that their shoddy analysis would completely fall apart if they did so. See Plaintiff's Brief, at p.39; Dr. Stewart's report at Excerpt 2122-23; Plaintiff's Reply Brief, at p.31-32, fn6 (stating "Stewart's conclusion regarding the 'Taurus' album version's composition was that 'During the first 18 notes [the] basic melodic sequence is virtually the same' as compared to 'Stairway to Heaven', and that the songs are so striking similar it precludes 'the possibility of coincidence or independent creation.' (See Excerpt

1789, 1791).").[2]

The professors' arguments are just as inapplicable. They claim that the Taurus deposit copy should be ruled a thin copyright because it is allegedly a combination of unprotectable elements. They appear unaware that the Taurus deposit copyright *is not* solely based on a combination of protectable elements. All versions of Taurus contain unique elements protectable, on their own, which were copied in Stairway to Heaven. It reflects a gross unfamiliarity with the facts of the case to think that thin copyright could remotely have any applicability here. In any case, even if thin copyright were to be applied to the Taurus deposit copy, *it certainly has no applicability to the Taurus album version where Dr. Stewart explains the Defendants copied 18 notes, note for note*.

## IV. The Musicologists' Amicus Brief Incorrectly Compares this Case to the Blurred Lines Case When the Same Brief Admits the Two Cases are Entirely Dissimilar

The musicologists are obsessively focused on comparing this case to the Blurred Lines matter, despite the fact that there is no real comparison. See Musicologist Amici Brief, at p.4-5. The brief states that in Blurred Lines there was no "melodic, harmonic or rhythmic similarity" and that all that was at issue was an

---

[2] It should be noted that when defense and plaintiff's experts initially analyzed "Taurus" and "Stairway to Heaven," they both utilized the album composition of "Taurus." (Excerpt 1626).

"alleged constellation of similarities" which amici claim did not bear any resemblance to each other, other than feel and groove. Id. They claim that this case is the same and that there is no actual musical similarity. Id. This is essentially what the professors are also arguing, but from the thin copyright angle.

The amici apparently feel strongly about this issue, but this case is not the appropriate vehicle for them to air their grievances.

Without addressing whether the Blurred Lines decision was correct, it is self-evident on the face of the musicologists' brief that this case bears no resemblance to the Blurred Lines matter. Their complaint about the Blurred Lines matter was that there was allegedly no musical similarities, only a similar feel and groove. Yet, contrary to Blurred Lines, the harmonies and rhythms are almost identical between the songs in this case, and there are substantial melodic and other similarities as well. Indeed, the amici forthrightly admit that "Taurus" and "Stairway to Heaven" *are musically similar*. See Musicologist Amici Brief, at p.11-12 (claiming that use of the same minor chromatic line in "Taurus" and copied in "Stairway to Heaven" is unoriginal). That there are admitted musical similarities between the songs in this case automatically means that it does not present the same issue as in Blurred Lines.

The real dispute here is that amici simply do not think, like the Led Zeppelin appellees, that, despite the musical similarities, any protectable expression was copied. Skidmore's musicologist, Dr. Stewart, disagrees and testified that protected

musical similarities were copied in "Stairway to Heaven."

Thus, any comparison of this case to the <u>Blurred Lines</u> case is a non sequitur because even amici admit this is not a "feel and grove" case. Again, if the correct Taurus composition is used, then this is a case where the underlying composition is practically identical, as Dr. Stewart has explained that "Stairway to Heaven" copies 18 notes from "Taurus," and repeats them for the first 2:14 minutes of "Stairway to Heaven," the most iconic part of the song. <u>See</u> Plaintiff's Reply Brief, at p.31-32, fn6.

To ask this appellate court on en banc rehearing to decide such a factual dispute, and declare that Dr. Stewart's analysis is wrong because the amici are upset about an entirely different case with different songs, misconceives this appellate court's role.

## V. The Musicologists' Amicus Brief Incorrectly Defines Originality, Conflating the Concept with Novelty

Throughout the amicus brief it repeatedly claims that the expression in "Taurus" is not "original." It is curious then that the brief never addresses the definition of originality. "In this circuit, the definition of originality is broad, and originality means little more than a prohibition of actual copying." <u>Swirsky v. Carey</u>, 376 F.3d 841, 851 (9th Cir. 2004). The standard jury instruction states: "In copyright law, the 'original' part of a work need not be new or novel." (Excerpt

2029-30).

There is no evidence in the record that Randy Wolfe copied the music he wrote in "Taurus" from anywhere else (it is in fact unique), nor do the amici point to any. Yet, the amicus brief repeatedly claims that the musical expression at issue is "unoriginal," erroneously conflating originality with novelty (Appellant contends that "Taurus" is in fact novel too). This is a basic error and radically undercuts the points the amicus brief is trying to make.

## VI. The Musicologists' Brief Fails to Address Dr. Alexander Stewart's Conclusions, Instead Regurgitating that of Led Zeppelin's Musicologist

**First**, the amici erroneously claim that the minor chromatic bass line is not original. They characterize it as "a descending chromatic bass line moving in half steps from the first to the fourth degree of the scale." Amici Brief, at p.11. This is demonstrably incorrect because, if true, there would be an additional two notes (5 and flat 5) before arriving at 4.

Setting aside the incorrect description of the musical element at issue (and the erroneous usage of the term "original"), the amici provide almost no analysis at all to support their contention this element is not novel, and completely ignore the testimony of Dr. Stewart they seek to disqualify. See Amici Brief, at p.11-12. It is evident they ignore Dr. Stewart because they have no rebuttal to his testimony:

MR. MALOFIY:          Okay. Let's go to the minor chromatic line. You

|  | identified this as one thing that's unique and memorable. Can you share why the minor chromatic line is used in a unique and memorable way? |
|---|---|
| DR. STEWART: | You know, the minor chromatic line is something that's been used in music for quite a long time, and like a lot of the building blocks of music, **the challenge for any composer is to use it in a new and creative way, an original and creative way**. |
|  | And I think that in both of these works, ""Taurus"" and "Stairway," **the composers -- at least in ""Taurus","" the composer found a way to use it in a way that is unlike other works that use this line**. |
|  | And one of the things that's very different is instead of going through all six pitches of the chromatic line, all the way to the E, which is where, typically, this progression goes, and as we'll see in all the other examples of pieces of music that the defense has come up with, they always pass through E, or the fifth note of the scale, before they go back to the beginning again. |
|  | So one of the important ways that I think that you see this similarity between these two works is that they both do this very unusual thing. **In fact, I don't know any other pieces that do it, and the defense hasn't come up with any that do treat this line the way that they ["Taurus" and Stairway] do**. |

(Excerpt 786-87) (emphases added) (Trial Exhibit 501-1, 502-1, 503-1). This testimony has never been rebutted. Plainly this work has more than the required modicum of creativity. No other prior art cited by the Led Zeppelin appellees or the amici comes to rest on the flat 6 before returning to the beginning of the pattern without ever passing through the dominant 5. Plaintiff's expert Kevin Hanson also

testified the descending chromatic line was used in an original and creative way in "Taurus". (Excerpt 748, 753, 755). It was most definitely not copied by Randy Wolfe from any prior art as this new piece of music does not appear in the prior art.

Dr. Stewart also testified that around the minor chromatic line which anchors the work, there are five elements in "Taurus" that are protectable in combination that are also copied in "Stairway to Heaven" and appear nowhere else in the prior art: (1) "minor chromatic line and associated chords," (Trial Exhibit 501-1, 502-1, 503-1) (2) durations of pitches of minor chromatic line, (3) melody placed over the descending chromatic line consisting of combination of arpeggios and two-note patterns or pairs (Trial Exhibit 506-1), (4) rhythm of steady 8th note beats, and (5) the pitch collections and the frequency of their appearance in each measure (Trial Exhibit 511-1). (Excerpt 779-80).

**Second**, the amici claim that the chords following the bass line are not original and therefore should not be considered. See Amici Brief, at p.12-14. They ignore that even if they are correct, their use in combination with the other elements identified by Dr. Stewart is protectable.

Furthermore, their analysis is incorrect. Since there is a prominent sustained "D" in the melody of Taurus on the third beat of the second measure, the fourth chord in chorus could just as easily be considered D/F# as in Dr. Ferrara's analysis of "Stairway to Heaven." In fact the pitches sounded during the second half of this

measure are identical (F#, A, C, and D with one exception – the E briefly sounded in "Taurus"). Also, this analysis is based on the deposit copy. ***If the composition as embodied in the "Taurus" album recording is considered, the third measure contains exactly the same chord, F major 7***. This is precisely why the Led Zeppelin appellees are so anxious to limit the analysis to the deposit copy of "Taurus," because their defense will fall apart if they cannot rely upon an erroneous legal technicality to artificially limit the scope of Plaintiff's composition. The version Jimmy Page and Robert Plant heard was the full album version of "Taurus" and that is what they copied. The jury found that Page and Plant had access to the album version of the "Taurus" given that they owned the pertinent album, opened for Spirit, covered Spirit's songs live, and stated in interviews that they held Spirit in high regard.

**Third**, the amici claim that any similarities identified by Dr. Stewart are common and not protectable including arpeggios, two-note phrases, eighth note rhythms, pitches of similar duration, and pitches derived from same pitch collection. Amici Brief, at p.14. They claim that Dr. Stewart listed musical elements used in each piece without regard for the context in which they are used. Id. This conclusory accusation is not based in reality as the musical elements are used in the same context in both songs—this is not the situation amici think occurred in the Blurred Lines case.

Dr. Stewart has clearly testified that the similarity between the songs' unique and unprecedented minor chromatic line that resists the expected movement to the 5th degree is confirmed and strengthened by the five overall shared elements that Appellant alleges were copied. None of the prior contains all five of these elements, and most only contain two. Both the minor chromatic line and the combination of the other musical elements are protectable and were copied. Furthermore, if these elements amici attack were different in the two songs, the court can be assured that appellees and amici would be pointing out every difference as extremely probative of a lack of similarity.

With respect to the two-note pattern, amici claim that "Two-note patterns can barely constitute a motif, let alone a protectable melody, especially when, as here, the two-note patterns occur in entirely different contexts and places in both compositions." Amici Brief, at p.15. They state that such phrases could never "constitute protectable music expression." Id. Setting aside that they are protectable in a selection and arrangement, amici ignore that even Led Zeppelin's expert musicologist assigned significance to the note pairs (which he characterized as the "***most creative and memorable part***"). (Excerpt 1051).

The amici further claim that the duration of the notes is different: "the actual duration of the compared notes between "Taurus" and "Stairway" is manifestly different, so much so that Ferrara had to halve the duration of the "Taurus" notes

for this comparison to make any sense." Amici Brief, at p.16. This is an attempt by the amici to play tricks on the court. They are baselessly construing a standard musicological practice, regarding an irrelevant notational choice, as evidence of a lack of similarity. The deposit copy of "Taurus" could have been written with the note values halved and it would make absolutely *no difference to the musical content*.

Amici also claim that the use of similar pitch collections do not confer originality. Id. However, Appellant never claimed that a pitch collection in and of itself constitutes originality. Dr. Stewart's point was that pitch collections are highly probative for determining substantial similarity. None of the prior art Dr. Ferrara refers to has the same pitch collection and other identified similarities, which means the prior art necessarily cannot spell out the melodic and harmonic expression shared by "Taurus" and "Stairway to Heaven."

In summary, the amicus brief is trying to have this appellate court decide disputes of musicological facts when these are true disputes that only a jury can resolve. In addition, the amici do not address what happens to their analysis if Appellant is no longer limited to and constrained by the deposit copy.

VII. The Amici Briefs Erroneously Claim that Selections and Arrangements are Only Afforded Thin Copyright Protection, A Concept Which is In Applicable to Musical Works

Amici's arguments on thin copyright are misplaced for several reasons.

Musical works are entitled to broad copyright protection.

### a. Thin Copyright Does not Apply to Either Version of Taurus

Appellant has established that "Taurus" contains unique and original protectable expression (especially regarding the specific minor chromatic line which it is undisputed was never used before in the prior art) which was copied in "Stairway to Heaven." Even under amici's argument, thin copyright does not apply in this circumstance because the similarity is not a selection and arrangement. Of course, Appellant's case is bolstered by the fact that a combination, selection, and arrangement of five musical elements in "Taurus" were ***further*** copied in "Stairway to Heaven." Quite frankly, most copyright infringement cases include one or two main similarities, and then an accompanying selection and arrangement of other similarities that might individually be unprotectable but overall strengthen the case for substantial similarity. This is what happens when songs are copied.

It is completely absurd to argue that the presence of additional similarities in the form of selection and arrangement should count ***in favor*** of the infringer, and allow the infringer to advocate for a more favorable "virtual identity" instead of the "substantial similarity" standard.

### b. The Amici's Personal Opinions about What Copyright Law Should Be Are Entirely Irrelevant to this Appeal; This Circuit Should Not Legislate from the Bench

It has become the cause célèbre of the music industry and their supporters in

academia and government, since en banc review was granted, to pontificate that the substantial similarity infringement standard should essentially be replaced—despite the fact that it has been black letter law for many, many decades and was in place when the 1976 Act was enacted. It is their position that any copyright which is protected even in part by selection and arrangement (i.e., almost all copyrights), is subject to a heretofore unknown "virtual identity" standard. It is beyond peradventure that if this Circuit endorses thin copyright for artistic works then every defendant will argue that such a concept applies to every case. That the music industry wants a "virtual identity" standard is hardly surprising.

These arguments should be recognized as what they are: attempts to foist the personal opinions of the music industry about what the law should be (which will help their bottom line) onto this case. It is a naked attempt to have this Circuit legislate from the bench.

If the music industry, amici, defendants, and government want to change the law on substantial similarity, then they should petition Congress as the Constitution requires—not ask this Circuit to blatantly violate the separation of powers. As noted, thin copyright is a narrow concept which does not apply and has never been applied to complex artistic works—it only applies to functional, practical works. The concerted effort by certain special interests to change the law should be recognized for what it is and rejected.

### c. Thin Copyright Does Not Apply to Musical Works and Has Never Been Applied to Musical Works

The Supreme Court has clearly and unambiguously held that selection and arrangement of otherwise unprotectable elements are afforded copyright protection, since at least <u>Feist Publishing Inc. v Rural Tel. Serv. Co.</u>, 499 U.S. 340, 344 (1991). All that is needed to afford copyright protection to a work is a modicum of creativity, including from selection and arrangement. <u>Id.</u> If that creativity is copied in a substantially similar manner, it is infringement.

It is black-letter law that, in musical works, selection and arrangement is an especially important concept because although most musical elements have been used before there is an almost infinite combination of such elements:

> There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied.

> For example, in *Three Boys* we upheld a jury finding of substantial similarity based on the combination of five otherwise unprotectable elements: (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending.

<u>See</u> <u>Swirsky v. Carey</u>, 376 F.3d 841, 849 (9th Cir. 2004).

The amici claim, citing to Ninth Circuit cases decided before <u>Swirksy</u>, that

the actual standard for *any infringement case* where selection and arrangement is at issue is "virtual identity" not "substantial similarity." See Amici Brief, at p.20 (citing to Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1447 (9th Cir. 1994) and its progeny, including Satava v. Lawry, 323 F.3d 805, 811 (9th Cir. 2003)). The amici cite to Apple and Satava for the proposition that any copyright based upon selection and arrangement only has "thin" copyright, is not entitled to broad protection, and that the appropriate infringement standard is virtual identity. Id. at p.19-20.

However, resolutely ignored by the amici is that the very cases they rely upon expressly state that thin copyright ***does not apply to artistic works*** such as music and painting, but instead only to factual compilations, functional works, or works predominantly composed of scenes a faire in which there is only a narrow range of possible expression.

**First**, the concept of "thin" copyright and the cases the amici cite to, Apple Computer, Inc. v. Microsoft Corp., 35 F. 3d 1435 (9th Cir. 1994) and its progeny, have ***nothing to do*** with music copyright infringement, or selection and arrangement in music copyright—and have never been applied to a music case. Id. at 1447. "Thin copyright" applies not to the "broader protection accorded artistic works," but instead to functional, fact-driven, or scenes a faire copyrights where there are a limited number of ways to express the ideas contained in the work. Id.; McCulloch

v. Albert E. Price, Inc., 823 F. 2d 316, 321 (9th Cir. 1987) (stating that "Works that are not factual receive much broader protection under the copyright laws *because of the endless variations of expression available to the artist*" [emphasis added]); Cooling Systems and Flexibles v. Stuart Radiator, 777 F. 2d 485 (9th Cir. 1985) (stating "copyright law considers factual works to be fundamentally different from more artistic works"); Landsberg v. Scrabble Crossword Game Players, Inc., 736 F. 2d 485 (9th Cir. 1984) (stating "Factual works are different" and "similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed"). Artistic works with endless variations, such as songs, by their nature are afforded broad protection, not "thin" copyright.

Note that that the amici briefs do not once mention the words "functional," "factual," or "artistic," nor do they inform this Circuit of the unambiguous distinction drawn between complex artistic and simple or non-artistic works. Instead, they seek to mislead by omission and have this Circuit erroneously apply thin copyright to a purely artistic, musical work which the case law unanimously holds is entitled to broad protection.

An examination of Apple illustrates just how egregious the amici's mischaracterization of the law is. In Apple, one software company had sued another for allegedly infringing the visuals and animations in its graphic user interface (i.e.,

the windows, folders, and icons in desktop software). This Circuit was confronted with a situation where there were functional/factual works at issue and only a limited number of ways to express the basic ideas embodied in the interface (i.e, for example there are only so many way to arrange and portray the windows, folders, and icons). See Apple, 35 F. 3d at 1446-47. Apple desperately strove to convince this Circuit that its graphic user interface was artistic and not factual/functional in nature, precisely because it wanted the broader protection afforded to artistic works. Id. It did not work; no one buys a desktop for the GUI, but instead its functionality.

The Apple court held that Apple's interface was functional and factual, and that when there are a limited number of ways to express an idea in a functional, factual, and non-artistic work then, as a practical matter, there could only be infringement if there was virtual identity of the works. Id. at 1446-47 (stating factual works "are afforded only 'thin' protection because the range of possible expression is narrow"). Apple contrasted this with the "broader protection accorded artistic works." Id.[3]

---

[3] In Satava, which amici principally rely upon, the court held that a sculpture, which consisted entirely of a jellyfish in glass, was not protectable nor copied by the defendant because it consisted of standard elements known as scenes a faire. Satava, 323 F.3d at 811. Restated, there are only a few ways to pose a jellyfish in clear glass and such a "trivial arrangement" was an idea/concept not capable of being copied. Id. at fn5. This Circuit noted that allowing Satava to copyright a jellyfish in glass would unjustly give him a monopoly over the concept and that as a practical matter only a virtually identical copy would be infringing. Id. This could not be more different than the case at bar

In no way did <u>Apple</u> or the cases that came before it, or after, remotely contemplate that "thin" copyright had any applicability to musical or other complex artistic works like painting. Indeed, these cases specifically distinguished functional/factual works from artistic works where there are ***"endless variations of expression available to [the] artist."*** <u>McCulloch</u>, 823 F. 2d at 321. The "range of possible expression" is ***not*** narrow in these pieces of music, or any others.

Jimmy Page and Robert Plant had an infinite number of ways to write the first 2:14 minutes of "Stairway to Heaven"; out of these infinite choices they deliberately chose to use "Taurus" in their magnum opus ***precisely because it was unique and brilliant***. It contained that *je ne sais quoi* that all artists strive for, the protection of which is the *raison d'être* of copyright law. The jury found that Page and Plant had access to the album version of the "Taurus" given that they owned the pertinent album, opened for Spirit, covered Spirit's songs live, and stated in interviews that they held Spirit in high regard.

---

where no monopolistic concerns are implicated, and there are endless possible variations in musical works.

    In no way was the thin copyright analysis intended to apply to vastly more complicated works of art such as musical compositions; the fact that the Ninth Circuit decided <u>Swirsky</u> just a year later is indicative of that fact. <u>Id.</u>

    Again, the "thin" copyright concept in <u>Satava</u> and <u>Apple</u> have no similarity to works of art where the artists have endless variations to express themselves, and instead only applies to those works where there are limited ways to express the ideas in the work.

Nowhere has this Circuit, or any Circuit, ever applied "thin" copyright or virtual identity to music copyright cases, and have in fact at all points ***specifically warned against applying the concept to such artistic works***. That the distinguished law professors and musicologists entirely omit this critical distinction is troubling.[4]

### d.    The Amici Do Not Address the Deposit Copy Issue

Plaintiff notes that since no amici analyze the album version of Taurus and whether it is protected by selection and arrangement, it is impossible for this Circuit to apply any virtual identity standard here. However, Plaintiff observes that his expert has already opined of the Taurus album composition: 'During the first 18 notes [the] basic melodic sequence is virtually the same' as compared to 'Stairway to Heaven', and that the songs are so striking similar it precludes 'the possibility of coincidence or independent creation.' (See Excerpt 1789, 1791).").

The fact of the matter is that even the baseless virtual identity argument does not save Defendants in this case, because the actual version of Taurus that Defendants copied is identical to Stairway to Heaven.

---

[4] Note the practical effect the amici's proposed arguments will have on copyright law: given that at some level all musical elements appear in the prior art, this will obviously result in arguments from defendants that ***all songs*** are selections and arrangements at some level, and that only virtual identity, not substantial similarity, should be used as the correct infringement standard in music infringement cases. If they want to change the established infringement standard then they should petition Congress to change the law, not attempt to have the courts step outside their role and do so by judicial fiat.

## V.   Conclusion

The amici have made only a superficial analysis, misstated basic law, and mischaracterized Appellant's positions.

They musicologists have not been entered as experts, nor have they disclosed their methodology. In addition, they have professional and financial interests in the outcome of this case, or other conflicts of interest, which are undisclosed.

The fact of the matter is that en banc review is to consider novel and/or complex legal arguments, and attempting to file what amounts to a musicological expert report at this stage of the case is improper.

To the extent the amici do advocate for the virtual identity and thin copyright standard, the law is clear that music copyright infringement comparisons are governed by substantial similarity. If they want to change the law, then they should petition Congress, not the courts. Thin copyright does not apply to musical and other artistic works, and for good reason.

*Respectfully submitted,*

*/s/ Francis Malofiy*

Francis Alexander, LLC
Francis Malofiy
Alfred Joseph Fluehr
280 N. Providence Road; Suite 1
Media, PA 19063
T:  (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Attorneys for Michael Skidmore*

*August 16, 2019*

## CERTIFICATE OF COMPLIANCE

The word court is 5,667 which, in accordance with Local Rule 29(a)(5), is less than half the 13,000 a party is allowed to use when filing a brief.

*Respectfully submitted,*

*/s/ Francis Malofiy*

FRANCIS ALEXANDER, LLC
FRANCIS MALOFIY
ALFRED JOSEPH FLUEHR
280 N. Providence Road; Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*Attorneys for Michael Skidmore*

*August 16, 2019*

## Certificate of Filing and Service

Counsel was served via CM/ECF which constitutes service, pursuant to Fed.

R. App. P. 25(c)(2) and Ninth Circuit Rule 25-5(g), to all registered CM/ECF users:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
865 S Figueroa Street | Suite 2400
Los Angeles, CA 90017
Tel: (213) 633-6800
Direct : (310) 260-6030
Fax: (213) 633-6899
Email: peteranderson@dwt.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

Eugene Volokh
Mayer Brown LLP
350 S. Grand Ave. #2500
Los Angeles, CA 90071
T: (310) 206-3926
E: evolokh@mayerbrown.com
*Counsel for RIAA*

Danielle M. Aguirre
Erich C. Carey
Nat'l Music Publishers' Ass'n
975 F St. NW #375
Washington, DC 20004
T: (202) 393-6672
E: daguirre@nmpa.org
E: ecarey@nmpa.org
*Counsel for NMPA*

Edwin F. McPherson
Tracy B. Rane
McPherson Rane LLP

1801 Century Park East, 24th Floor
Los Angeles, California 90067-2326
T: (310) 553-8833
E: emcpherson@mcphersonrane.com
E: trane@mcphersonrane.com
*Attorneys for 123 Songwriters, NSAI, and SONA*

Kenneth D. Freundlich, Esquire
Freundlich Law
16133 Ventura Blvd. | Ste. 645
Encino, CA 91436
T: (310) 275-5350
*Counsel for Musicologists Amici Curiae*

Professor Mark A. Lemley, Esquire
Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305
T: (650) 723-4605
E: mlemley@law.stanford.edu
*Counsel for Amici Curiae, 19 Intellectual Property Professors*

Scott R. McIntosh, Esquire
Daniel Tenny, Esquire
Civil Division, U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7215
Washington, DC 20530
T: (202) 514-1838
*Attorney for United States of America*

W. Michael Hensley, Esquire
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
T: (714) 852-6835
E: mhensley@alvaradosmith.com
*Counsel for Structured Asset Sales, LLC
and the Pullman Group, LLC*

*Respectfully submitted,*

*/s/ Francis Malofiy*

Francis Alexander, llc
Francis Malofiy
Alfred Joseph Fluehr

280 N. Providence Road; Suite 1
Media, PA 19063
T:  (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Attorneys for Michael Skidmore*

<u>*August 16, 2019*</u>