# United States Court of Appeals
# For the Ninth Circuit

C.A. 16-56057

---

Skidmore v. Led Zeppelin *et al.*

Michael Skidmore, Trustee for the
Randy Craig Wolfe Trust
Appellant.

---

## Appellant Michael Skidmore's Supplemental Brief in Opposition to the Government, 123 Songwriters, and NMPA/RIAA's Amicus Briefs

---

(Music copyright infringement, from the September 28, 2018 panel opinion
reversing in part, affirming in part orders of the Honorable R. Gary Klausner, of the
United States District Court for the Central District of California. The case was
docketed in the Central District at 15- cv-03462)

---

Francis Alexander, LLC
Francis Malofiy, Esquire
Alfred Joseph (AJ) Fluehr, Esquire
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Michael Skidmore*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... 4

INTRODUCTION ........................................................................ 5

ARGUMENT

I.    The US Government Fails to Acknowledge that Copyrights under the 1909 Act Were Protected from the Moment of Creation By the Common Law ................................................................... 6

    a.    The Government Fails to Acknowledge that Copyrights under the 1909 Act Were Protected from the Moment of Creation By the Common Law ...................................................... 6

    b.    It is Settled Law in this Circuit that Inaccuracies in Copyright Deposits are To Be Disregarded if the Defendants Fail to Establish Prejudice ................................................ 11

    c.    The Government's Reliance on Copyright Compendiums is Meaningless; They Do Not Have Force of Law and are Frequently Erroneous, and Even Contradicted by the Government's Own Brief ....................................... 15

    d.    The Government Demonstrates Complete Ignorance of How "Taurus" was Composed, and When and How the Deposit was Created, When It Claims that Skidmore Should Have Registered The Full Composition as a Derivative Version of the "Taurus" Deposit Copy ................................. 17

II.    The Government's Position on Thin Copyright is Without Any Merit ........ 19

    a.    Thin Copyright Does Not Apply to Complex Artistic Works Like Musical Compositions .............................. 19

    b.    The Government Has Not Read Appellant's Musicologist's Expert Report and Erroneously Believes that the "Taurus" Deposit Copy is Only Protected by Selection and Arrangement ..........20

    c.    The Trump Administration Has Consistently Argued that the Courts Should Not Legislate from the Bench, Yet Now Wants This Circuit to Create New Copyright Law by Judicial Fiat....... 21

        **d.**    **The Government Argues that this Lawsuit Should be Dismissed because "Taurus" and "Stairway to Heaven" are Not Identical But Fails to Address the Fact that the Full Composition of "Taurus" is Identical to "Stairway to Heaven"** …. 23

   **III.**    **Appellant Opposes the Amicus Briefs of the 123 Songwriters and the NMPA/RIAA** …………………………………………………… 24

**Conclusion** ……………………………………………………………… 24

# Table of Authorities

## Cases

ABKCO Music, Inc. v. LaVere, 217 F.3d 684 (9th Cir. 2000) .................................. 9, 10, 15

Apple Computer, Inc. v. Microsoft Corp., 35 F. 3d 1435 (9th Cir. 1994) ........................... 19

Bridgeport Music, Inc. v. UMG Recordings, Inc., 585 F.3d 267 (6th Cir. 2009) ................... 10

Brownstein v. Lindsay, 742 F.3d 55 (3d Cir. 2014) .................................................... 16

Cooling Systems and Flexibles v. Stuart Radiator, 777 F. 2d 485 (9th Cir. 1985) ................. 20

Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612 (9th Cir. 2010) ........................ 9

Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir.1984) .................................... 12, 13

Landsberg v. Scrabble Crossword Game Players, Inc., 736 F. 2d 485 (9th Cir. 1984) ...............20

McCulloch v. Albert E. Price, Inc., 823 F. 2d 316 (9th Cir. 1987) ....................................20

Mitchell v. Helms, 530 US 793 (2000) ................................................................. 13

Newton v. Diamond, 204 F. Supp. 2d 1244 (C.D. Cal. 2002) ....................................... 14

Societe Civile Succession Guino v. Renoir, 549 F .3d 1182 (9th Cir. 2008) ......................... 9

Three Boys Music Corporation v. Bolton WB, 212 F.3d 477 (9th Cir. 2000) ..................... 11-13

Whitman v. American Trucking Assns., Inc., 531 U.S. 457 (2001).................................. 11

Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018) ..................................................... 19

## Statutes and Rules

17 U.S.C. § 201(a) ...................................................................................... 16

17 U.S.C. § 301(a) ....................................................................................... 8

Section 2, 1909 Copyright Act .........................................................................10

Section 1(e), 1909 Copyright Act .....................................................................10

## Other Authorities

Compendium of U.S. Copyright Office Practices § 504.2 (3d ed. 2017).............................. 15

Introduction

The Trump Administration's foray into this copyright case is an embarrassment that fails to understand the applicable law or the history of copyright. The Government's contention that a work's registration deposit controlled the scope of copyright protection under the 1909 Copyright Act is ahistorical and blatantly contradicted by all authoritative sources. The case law and legislative history demonstrate that (1) the deposit copy never defined the scope of copyright protection under the dual common law-federal copyright scheme in place before the 1976 Copyright Act and (2) a work was protected as created from the moment of creation.

The Government also, bafflingly, takes a position on "thin copyright," the cause du jour of the music industry and its allies. The Government ignores that the narrow concept of thin copyright has no applicability to complex artistic works such as musical compositions, and also that it is inapplicable to "Taurus" because "Taurus" is original and not protected only by a selection and arrangement.

The unrebutted musicological expert testimony in this case shows that the original composition of "Taurus" embodied in the *Spirit* album—which Jimmy Page owned and a jury found he had access to—is copied note for note in "Stairway to Heaven." This is the only reason that Led Zeppelin and its allies are desperately trying to limit the substantial similarity comparison to the incomplete deposit lead sheet (which Page never saw) used to register "Taurus." Led Zeppelin will lose the

case if the comparison is properly based upon the song Page and Plant actually copied; tellingly, they did not even have their musicologist analyze the two works.

Appellant urges this Circuit to elevate substance over form and ignore the ahistorical, imaginary technicalities being advocated for by the Government.

## I.   THE US GOVERNMENT'S DEPOSIT COPY ARGUMENTS ARE WRONG

### a.   The Government Fails to Acknowledge that Copyrights under the 1909 Act Were Protected from the Moment of Creation By the Common Law

The Government has filed an amicus brief on the deposit copy issue. The Government's erroneous argument can be summed up as: the federal registration of a song with a deposit allegedly created the initial copyright under the 1909 Act and thus, because a "complete" deposit is required for the federal registration, that deposit must therefore implicitly define the scope of the copyright. See Gov. Brief, at p.17-18. The Government further attempts to contrast the 1976 Act—where copyright protection attaches at the moment a work is created—to the 1909 Act, claiming that unlike the modern act a registration deposit was allegedly required by 1909 Act before any copyright could exist. Id. at p.5, 17-19. The Government spends just one error-filled paragraph discussing the common law. Id. at 17-18.

If this position sounds familiar, it is because it was also the position of the panel opinion that Appellant Skidmore petitioned to have vacated and reheard:

Overall, the structure of the 1909 Act demonstrates that the

> deposit copy encompasses the scope of the copyright for unpublished works, as the deposit copy must be filed not only to register the copyright, ***but for the copyright to even exist***.

<u>See</u> Panel Opinion, at p.31 (emphasis added). The panel similarly contrasted the 1976 Act with the 1909 Act, opining that under the 1909 Act a deposit was essential to the existence of an unpublished copyright because it allegedly created the copyright. <u>Id.</u> at 30-31.

As Appellant has consistently pointed out from his opening brief to present, registration was most definitely ***not how unpublished works first gained protection under the 1909 Act copyright scheme***. There is no authority which supports the Government's ahistorical, revisionist misinterpretation of the 1909 Act, nor is there any support for the distinction the Government draws between how works first became copyrighted under the 1909 Act and 1976 Acts.

**First**, federal registration has never, under any copyright act, initially created copyright in a work. From 1790 to present works have been automatically protected ***as created*** from the moment of creation (therefore also defining the scope of the copyright). Before the 1976 Copyright Act, works were protected ***as created*** by common law copyright, which could then be federalized under the 1909 Act either by publication or registration. Under the 1976 Act, works are protected ***as created*** by federal statutory law. However, although the 1976 Act made the entire process federal, it did not change the underlying fundamentals of when and how initial copyright

protection vested.

The legislative history for the 1976 Copyright Act makes it clear that the common law, not the 1909 Act, previously controlled when copyright vested in a work:

> Section 301, one of the bedrock provisions of the bill, would accomplish a fundamental and significant change in the present law. ***Instead of a dual system of "common law copyright" for unpublished works*** and statutory copyright for published works, which has been the system in effect in the United States since the first copyright statute in 1790, the bill adopts a single system of Federal statutory copyright from creation...

See HR Rep. No.94-1476, at p.129-31 (1976), cmt on Section 301 (emphasis added) (federal preemption); Dkt. Entry 85.[1] Consider: If the 1909 Act registration deposit vested a work with copyright as the Government incorrectly contends, then why did Congress state in 1976 that the federal government was ***for the first time*** now going to federally define copyright creation instead of the common law?

The federal 1909 Act deposit requirement obviously had nothing to do with the vesting of copyright or its scope because no federal statute addressed this issue until 70

---

[1] Despite the dual scheme under the 1909 Act being historical fact, the government bizarrely states "Plaintiff is likewise mistaken to suggest that the scope of its copyright should be defined by common law. Plaintiff is asserting a federal statutory copyright claim, not a common-law claim. *Cf.* 17 U.S.C. § 301(a) (2018) (preempting common-law claims)." Gov. Brief, at p.17. This statement makes no sense and raises serious questions about the Government's understanding of the issues at play. Section 301 preemption has no applicability to this claim, nor does federal preemption under the subsequent 1976 Copyright Act alter how copyright was obtained under the 1909 Act copyright scheme.

years later; the Government has its history wrong.

That works under the 1909 Act are protected *as created* by the common law is historical fact, not a matter of statutory interpretation. The Ninth Circuit observes:

> Under the 1909 Act, an unpublished work was protected by state common law copyright from the moment of its creation until it was either published or until it *received protection* under the federal copyright scheme."

ABKCO Music, Inc. v. LaVere, 217 F.3d 684, 688 (9th Cir. 2000) (emphasis added); see also Societe Civile Succession Guino v. Renoir, 549 F .3d 1182, 1185 (9th Cir. 2008); Cosmetic Ideas, Inc. v. IAC/lnteractivecorp., 606 F.3d 612, 618 (9th Cir. 2010). In the case of either published or unpublished works, federal copyright protection was necessarily predicated and based upon an underlying common law copyright which vested at creation. Registration of an unpublished work *did not* change the scope of protection in the already protected work, nor did it create a new work; it only conferred federal benefits and jurisdiction.[2]

Nevertheless, the Government incorrectly argues that the 1976 Act was the first time that copyright protection vested at the moment of creation. See Gov. Brief, at 5, 17-19. The Government fails to realize that vesting a work with copyright at creation was the animating principle of the *nearly 200 year-old common law rule*, which worked

---

[2] Note, under the 1909 Act a work protected at common law became a federal copyright when published or registered. Had Congress intended the federal statute to control the creation and scope of the copyright it would have plainly stated so. It did not. This was only done many years later by the 1976 Act.

in concert with the 1909 Act. Not only does the 1909 Act never state that the federal registration deposit defined the scope of copyright, the 1909 Act actually states that it does not "annul or limit" the rights of an "author or proprietor of an unpublished work, at common law or in equity." Section 2, 1909 Copyright Act.[3]

Indeed, ***nowhere does any authority ever state that federal registration under the 1909 Act could shrink the already existing scope of protection for a work vested at creation;*** yet this is exactly what the Government wants this Circuit to accept without citing any authority for that proposition.

Note that when the Government's brief cites to <u>ABKCO</u>, and claims that this Circuit held that state common law copyrights were extinguished by federal registration, this is a deliberate attempt to mislead this Circuit. <u>See</u> Gov. Brief, at p.17. Contrary to the Government's suggestion, <u>ABKCO</u> specifically notes that registration merely let an unpublished work already protected by common law copyright "receive" federal protection, ***not that it altered the scope of the copyright being protected***.

To be clear, federal registration was significant—it created new rights and

---

[3] Notably, in section 1(e) of the 1909 Act it was also made clear that musical compositions could be embodied in and evidenced by means other than sheet music, such as piano rolls and sound recordings. <u>See</u> <u>Bridgeport Music, Inc. v. UMG Recordings, Inc.</u>, 585 F.3d 267, 276 (6th Cir. 2009) (stating that musical composition is embedded in sound recording); <u>Goldstein v. California</u>, 412 US 546 (1973) (stating that "under § 1 (e), records and piano rolls were to be considered as 'copies' of the original composition they were capable of reproducing").

conferred exclusive federal jurisdiction—but it did not change the already vested scope of copyright being protected or create a new one. If Congress had intended the 1909 Act to federally define when copyright protection vests, then it would have expressly said so—as it did in 1976. See Whitman v. American Trucking Assns., Inc., 531 U.S. 457 (2001) (stating that when Congress intends to alter "fundamental details" of a statutory/regulatory scheme it does not do so ambiguously).

Again, the 1976 Act merely codified a longstanding common law rule as federal law—that works are protected as created from the moment of creation—and made the entire copyright process federal. The Government's position is historically illiterate.

**b.  It is Settled Law in this Circuit that Inaccuracies in Copyright Deposits are To Be Disregarded if the Defendants Fail to Establish Prejudice**

Even if this Circuit accepts the Government's baseless argument that the deposit copy controls the scope of the "Taurus" copyright, the Government has failed to adequately address the longstanding rule in this Circuit that inaccuracies in a deposit copy can be disregarded if the defendants fail to show prejudice. No showing of prejudice has ever been made in this case, nor is there any.

The defendant in Three Boys Music made an almost identical argument to the one that the Government now advocates:

> Bolton and Goldmark argue that in 1964 the Isley Brothers deposited sheet music ("deposit copy") of "Love is a Wonderful Thing" that differed from the recorded version of the song.

Furthermore, ***they claimed that the deposit copy does not include the majority of the musical elements that were part of the infringement claim***.

See Three Boys Music Corporation v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) (emphasis added). This Circuit observed that as long as the deposit was sufficient to identify the composition at issue, and there was no prejudice, then it would exercise its discretion:

> Although the 1909 Copyright Act requires the owner to deposit a ``complete copy'' of the work with the copyright office, our definition of a ``complete copy'' is broad and deferential: ``Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement.'' Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984) (citations omitted).

Id. at 486-87. Moreover, this Circuit stated in Harris that the defendants must make a showing "they have been prejudiced in any way by the incorrect original registration" if they want to use such an argument. Harris, 734 F.2d at 1335.

The district court opinion under review, and the Ninth Circuit panel opinion, both attempted to distinguish Three Boys Music by claiming it was only about whether the court had jurisdiction to consider the suit (given that registration and a deposit is a prerequisite to suit), not about the scope of protection in the work. This reasoning is fallacious.

**First**, this Circuit in Three Boys Music let the substantial similarity comparison take place using the full composition, not limiting it to the deposit copy. As is the case

here, the deposit copy was more than sufficient to identify the song at issue, but did not contain the full composition as created and embodied on the album version of the song. As in that case, Plaintiff's experts explained that main elements of the full "Taurus" composition could be found in the deposit. Excerpt 2115-17.

**Second**, if inaccuracies in the deposit copy can be disregarded for a jurisdictional analysis, then such an analysis should apply with equal force to the substantial similarity comparison. To hold that inaccuracies in the deposit can be disregarded for jurisdictional purposes, but not for substantive purposes, creates a distinction without a difference and improperly exalts form over substance. See Mitchell v. Helms, 530 US 793, 818 (2000) (frowning upon arguments which exalt form over substance).

**Third,** the Government entirely fails to address whether Defendants would suffer any prejudice if the full composition of "Taurus" is used instead of the incomplete deposit copy. As Three Boys Music and Harris make clear, the dispositive issue is whether the Defendants will actually suffer prejudice.

Here, there is no prejudice nor have Defendants ever attempted to demonstrate any. Defendants Jimmy Page and Robert Plant admitted they ***never saw*** the deposit copy lead sheet of "Taurus" they want the composition restricted to, (Excerpt 507-08), and instead owned and copied the full composition of "Taurus" on the Spirit album that Skidmore contends should be used for the comparison. (Excerpt 495-97). As a matter of logic, the full composition that Page and Plant had access to and copied

should be used for the substantial similarity comparison, not some archival lead sheet created well after the full composition was finalized and recorded ***which no one saw***.

Note that the full composition of "Taurus" embodied on the *Spirit* album does not contain performance elements and is actually the full musical composition of "Taurus" as it was originally created and consistently played. See Newton v. Diamond, 204 F. Supp. 2d 1244, 1259 (C.D. Cal. 2002) (stating that composition are those parts of a song which consistently appear on every playing); Plaintiff Opening Brief at p.14, 29 (stating that recordings show "Taurus" in concrete and final form in early 1967, before the deposit sheet music was created and submitted to Copyright Office); Excerpt 2515 (stating that early 1967 live recordings of "Taurus" show full composition already finalized; that final composition was later fixed in the album version owned by Defendants). Wolfe did not even write the lead sheet because he could not write music.

This is exactly the type of case where any incompleteness or inaccuracies in the deposit copy should be disregarded because everyone is explicitly aware that the composition allegedly copied was "Taurus" as originally created (and vested with copyright protection) and embodied on the *Spirit* album owned by Defendants, not the deposit copy they never saw and Wolfe did not create.

c. **The Government's Reliance on Copyright Compendiums is Meaningless; They Do Not Have Force of Law and are Erroneous—and Contradicted by the Government's Own Brief**

In support of its historically illiterate arguments concerning the deposit copy, the Government relies on a Copyright Office compendium from the 1960s which purports to state that the deposit copy delimits the scope of protection in a work under the 1909 Act. Gov. Brief, at p.4. No authority supports this assertion.

These compendiums state they do not have force of law, and in this case the Copyright Office made a legal error. The Copyright Office is conflating copyright protection (which vests with creation) with copyright registration (which confers certain rights and privileges). Cf Brownstein v. Lindsay, 742 F.3d 55, 66 (3d Cir. 2014).

The Copyright Office is not entitled to deference where the statutory scheme is not ambiguous and it makes a legal error. See Smith v. Berryhill, 139 S. Ct. 1765, 1778 (2019) (stating that deference premised on statutory ambiguity). The 1976 House Report, as well as ABKCO, demonstrate that the Copyright Office failed to realize the clear and unambiguous role played by the common law, instead unilaterally construing the deposit requirement as substantive—under both the 1909 *and* 1976 acts.

For instance, the Government's brief cites to a 2017 compendium from the Copyright Office which claims that under the current 1976 Act the deposit copy defines the scope of protected material in a registered copyright. See Gov. Brief, at p.12 (citing *Compendium of U.S. Copyright Office Practices* § 504.2 (3d ed. 2017)).

Yet the Government's own brief blithely contradicts the compendium when it correctly observes that "the modern act does not make deposit a prerequisite to copyright protection" and "copyright protection attaches automatically upon creation of the work, *id.* § 302(a), so composers of musical works receive copyright protection **without the need to deposit copies at all**." Id. at 5, 19 (emphasis added). A work is protected, and registered, as created; no authority holds that the submission of a deposit to identify the work alters the scope of protection if the deposit is incomplete.

If the Government is going to rely on Copyright Office Compendiums as accurate statements of the law, then the fact that it could not write a short amicus brief without contradicting the Copyright Office **on the very matter at issue** is revealing.

Since the 1960s, the Copyright Office has been conflating creation with registration. The Third Circuit observes that the two are very different things:

> Pivotal to this case is distinguishing an author's interest in the copyright to his work from the registration of his work. A "copyright", as a right, vests immediately upon the creation of the work. 17 U.S.C. § 201(a). For this reason, a copyright must not be confused with the act of registering that right.
> ....
> **A deposit copy does not necessarily limit the copyrightable work itself.**

See Brownstein, 742 F.3d at 66. Again, under the common law and 1909 Act an unpublished work's copyright also vested upon creation—not registration.

The Copyright Office was wrong about the purpose of the deposit registration

under the 1909 Act and it is wrong about the purpose of the deposit under the 1976 Act. The Copyright Office has thoroughly botched the law and the history of copyrights in the United States, as has the Department of Justice which filed an amicus without realizing that its brief contradicted the very legal assertions by the Copyright Office it wants this Circuit to accept as true.

### d. The Government Demonstrates Complete Ignorance of How "Taurus" was Composed, and When and How the Deposit was Created, When It Claims that Skidmore Should Have Registered The Full Composition as a Derivative Version of the "Taurus" Deposit Copy

The Government nonsensically argues that, after Wolfe secured registration with the deposit copy, he should have then filed a derivative registration for the full composition which was "based upon the copyrighted [deposit]" to reflect the new music he added. See Gov. Brief at p.14.

Three things are readily apparent: (1) the Government did not read the prior briefing and does not understand the facts of the case, (2) the Government erroneously believes that the "Taurus" deposit copy was created before the full composition, and (3) the Government thinks Wolfe wrote the deposit lead sheet. In fact, the deposit lead sheet was created by Wolfe's publisher long after "Taurus" was written, solely for the purpose of registration, ***because Wolfe did not know how to write music***.

Appellant Skidmore proved at summary judgment and trial that the full

"Taurus" composition, which appears on the Spirit album owned by defendant Page, was created in 1966 and finalized at the latest in early 1967. See Plaintiff Opening Brief, at p.14-15, 72. This was established through witness testimony, recordings from 1966 and 1967, and expert reports. Id.; Audio Exhibits 32-39; Excerpt 2515 (stating that early 1967 live recordings of "Taurus" show full composition already finalized and fixed in the album version owned by defendant Page).

Later in 1967 Wolfe met a producer named Lou Adler (with Hollenbeck Music) who signed the band to a recording contract on August 29, 1967. (Excerpt 289-90). The first Spirit album was released in late 1967 with Taurus on the B-side. (Excerpt 317). Hollenbeck then filed a copyright registration for the "Taurus" album composition that listed Randy Wolfe as the author. (Excerpt 2639, 2754). The composition of "Taurus" on the album recording was the same as the earlier recordings from 1966 and early 1967. As part of the registration packet, a deposit copy lead sheet was transcribed by "B. Hansen." (Trial Exhibit 2058; Excerpt 2642).

In other words, the suggestion that the original composition could have been registered as a derivative work of the later deposit lead sheet is nonsensical, especially because the deposit lead sheet was meant to register the full composition as it was originally created (and automatically protected by common law copyright).

The Government's ignorance of how the song was written and copyrighted illustrates how absurd it is to use an incomplete lead sheet for the substantial

similarity comparison when Defendants actually copied the full composition of "Taurus" from the *Spirt* album defendant Page owned.

## II. The Government's Position on Thin Copyright is Without Any Merit

The Government takes up the standard of the music industry, arguing that "thin copyright" should be applied to musical compositions. The Government then argues that this Circuit should dismiss this lawsuit because the deposit copy version of "Taurus" and "Stairway to Heaven" are not identical.

### a. Thin Copyright Does Not Apply to Complex Artistic Works Like Musical Compositions

Appellant Skidmore has responded at length to various Amici's attempts to argue that thin copyright is applicable to this case, and will not belabor the point.

Appellant observes that "thin copyright" applies not to the "broader protection accorded artistic works," but instead to functional, fact-driven, or scenes a faire copyrights where there are a limited number of ways to express the ideas contained in the work. Apple Computer, Inc. v. Microsoft Corp., 35 F. 3d 1435, 1447 (9th Cir. 1994); Williams v. Gaye, 895 F.3d 1106, 1120 (9th Cir. 2018) (stating thin copyright not applicable to musical compositions because they "are not confined to a narrow range of expression"); McCulloch v. Albert E. Price, Inc., 823 F. 2d 316, 321 (9th Cir. 1987) (stating that "Works that are not factual receive much broader protection under the copyright laws *because of the endless variations of expression*

*available to the artist*" [emphasis added]); <u>Cooling Systems and Flexibles v. Stuart Radiator</u>, 777 F. 2d 485 (9th Cir. 1985) (stating "copyright law considers factual works to be fundamentally different from more artistic works"); <u>Landsberg v. Scrabble Crossword Game Players, Inc.</u>, 736 F. 2d 485 (9th Cir. 1984) (stating "Factual works are different" than artistic works and "similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed").

For further analysis of the history and applicability of the thin copyright doctrine, please refer to Appellant's response in opposition filed on August 16, 2019, to the musicologist and professor's amici briefs. <u>See</u> Dkt. Entry 136.

Artistic works with endless variations, such as songs, by their nature are afforded broad protection, not "thin" copyright.

> **b.  The Government Has Not Read Appellant's Musicologist's Expert Report and Erroneously Believes that the "Taurus" Deposit Copy is Only Protected by Selection and Arrangement**

The Government argues that this Circuit should dismiss Skidmore's case because the deposit copy version of "Taurus" is allegedly only protected by selection and arrangement. Therefore, the Government believes that under thin copyright this case should be dismissed because the "Taurus" deposit copy version is not virtually identical to "Stairway to Heaven."

Setting aside Appellant Skidmore's disagreement with the Government about

the applicability of thin copyright, even if thin copyright applies the Government fails to realize that "Taurus" is *not* only protected by a selection and arrangement.

Appellant's musicologist has established that "Taurus" contains unique and original protectable expression, specifically the original use of a minor chromatic line which it is undisputed was never used before in the prior art, and which was copied in "Stairway to Heaven." (Excerpt 786-87) (emphases added) (Trial Exhibit 501-1, 502-1, 503-1). Of course, Appellant's case is bolstered by the fact that a combination, selection, and arrangement of five musical elements in "Taurus" were *further* copied in "Stairway to Heaven." Id. That a copier will take many elements when copying a song is not surprising, and bolsters the case for infringement.

Of course, this does not even take into account that Appellant's musicologist Alexander Stewart is clear that "Stairway to Heaven" copies 18 notes, note for note, from the full composition of "Taurus." Excerpt 1789, 1791.

The Government's argument fails because it conclusorily assumes that "Taurus" is only protected by selection and arrangement when it is not.

### c. The Trump Administration Has Consistently Argued that the Courts Should Not Legislate from the Bench, Yet Now Wants This Circuit to Create New Copyright Law by Judicial Fiat

It has become the cause célèbre of the music industry and their supporters in academia and government, since en banc review was granted, to pontificate that the substantial similarity infringement standard should essentially be replaced with a

virtual identity standard—despite the fact that it has been black letter law for many, many decades and was in place when the 1976 Act was enacted.

It is beyond peradventure that if this Circuit endorses thin copyright for artistic works then every defendant will attempt to argue that such a concept applies to every case, effectively replacing the substantial similarity standard.

Appellant will not speculate as to why the Trump Administration has suddenly taken up this rallying cry, especially on a case to which thin copyright has no applicability. However, Appellant does note that the Administration has previously argued that the courts should not legislate from the bench and that if a new law is wanted or needed then it should be passed by the legislature:

- "'Judges are not supposed to rewrite the law, reinvent the Constitution, or substitute their own opinions for the will of the people expressed through their laws,' Trump said. 'We reject judicial activism and policymaking from the bench.'" See John Bowden, "Trump says he will 'reject judicial activism' when picking Supreme Court nominee," THE HILL (July 6, 2018).

- "'So I say to all those gathered here: For the sake of our liberty, our security, our prosperity and the separation of powers, this era of judicial activism must come to an end,' Pence said." See Jacqueline Thomsen and Brett Samuels, "Trump officials target authority of judges to issue

national injunctions," THE HILL (May 8, 2019).

However, the Administration now argues that this Circuit should change the law, make policy, and substitute the Administration's opinion on what the law should be for what it actually is.

If the music industry, private amici, defendants, and government want to change the law on substantial similarity, then they should petition Congress as the Constitution requires—not ask this Circuit to create new law.

> **d.    The Government Argues that this Lawsuit Should be Dismissed because "Taurus" and "Stairway to Heaven" are Not Identical But Fails to Address the Fact that the Full Composition of "Taurus" is Identical to "Stairway to Heaven"**

The Government claims that because the "Taurus" deposit copy version is not identical to "Stairway to Heaven" this suit must be dismissed. However, the Government, as well as all the other amici who have offered their two cents on this subject, fail to analyze or address the proper, full composition of "Taurus." Their silence is deafening. They fail to do so ***because the full composition is identical to "Stairway to Heaven"*** and undercuts all of their arguments.

Remember, it was the original composition of "Taurus" which was copied by Jimmy Page and Robert Plant, which they owned and a jury already found they had access to. The unrebutted expert testimony is that musicologically, "During the first 18 notes [the] basic melodic sequence [of 'Taurus'] is virtually the same" as

compared to "Stairway to Heaven," and that the songs are so striking similar it precludes "the possibility of coincidence or independent creation." <u>See</u> Excerpt 1789, 1791).

The spurious deposit copy and thin copyright arguments should be viewed for what they are: misleading, inapplicable technical arguments which attempt to obscure that Led Zeppelin blatantly ripped the song and has no real defense.

Plaintiff's full song that the Defendants indisputably had access to is virtually identical to "Stairway to Heaven." Yet, defendants and their amici supporters are trying to have the court defeat the lawsuit on an imaginary technicality which is ahistorical and is being read into the 1909 Act for the first time in 110 years.

III. Appellant Opposes the Amicus Briefs of the 123 Songwriters and the NMPA/RIAA

Appellant previously opposed the 123 Songwriters' Amici brief, and the brief of the RIAA, on November 9, 2018. Appellant incorporates by reference his short response briefs here.

IV. Conclusion

The Government's amici brief misunderstands the history of US Copyright law, relies on plainly erroneous Copyright Office compendiums which do have force of law, and advocates for this Circuit to misapply the narrow "thin copyright" doctrine to defeat this case. The Government's arguments are wrong and should not

be credited.

> *Respectfully submitted,*
>
> */s/ Francis Malofiy*
>
> FRANCIS ALEXANDER, LLC
> FRANCIS MALOFIY
> ALFRED JOSEPH (AJ) FLUEHR
> 280 N. Providence Road; Suite 1
> Media, PA 19063
> T:  (215) 500-1000
> F: (215) 500-1005
> E: francis@francisalexander.com
> *Attorneys for Michael Skidmore*
>
> *August 30, 2019*

# Certificate of Compliance

The word court is 4,965 which, in accordance with Local Rule 29(a)(5), is less than half the 13,000 a party is allowed to use when filing a brief.

*Respectfully submitted,*

*/s/ Francis Malofiy*

## Francis Alexander, llc
Francis Malofiy
Alfred Joseph (AJ) Fluehr
280 N. Providence Road; Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com
*Attorneys for Michael Skidmore*

*August 30, 2019*

# Certificate of Filing and Service

Counsel was served via CM/ECF which constitutes service, pursuant to Fed.

R. App. P. 25(c)(2) and Ninth Circuit Rule 25-5(g), to all registered CM/ECF users:

Helene Freeman, Esquire
666 Fifth Avenue
New York, NY 10103-0084
T: (212) 841-0547
F: (212) 262-5152
E: hfreeman@phillipsnizer.com
*Attorneys for Defendants James Patrick Page, Robert Anthony Plant, and John Paul Jones (collectively with John Bonham (Deceased), professionally known as Led Zeppelin)*

Peter J. Anderson, Esquire
865 S Figueroa Street | Suite 2400
Los Angeles, CA 90017
Tel: (213) 633-6800
Direct : (310) 260-6030
Fax: (213) 633-6899
Email: peteranderson@dwt.com
*Attorney for Defendants Super Hype Publishing, Inc., Warner Music Group Corp., Warner/Chappell Music, Inc., Atlantic Recording Corporation, and Rhino Entertainment Company*

Eugene Volokh
Mayer Brown LLP
350 S. Grand Ave. #2500
Los Angeles, CA 90071
T: (310) 206-3926
E: evolokh@mayerbrown.com
*Counsel for RIAA*

Danielle M. Aguirre
Erich C. Carey
Nat'l Music Publishers' Ass'n
975 F St. NW #375
Washington, DC 20004
T: (202) 393-6672
E: daguirre@nmpa.org
E: ecarey@nmpa.org
*Counsel for NMPA*

Edwin F. McPherson
Tracy B. Rane
McPherson Rane LLP

1801 Century Park East, 24th Floor
Los Angeles, California 90067-2326
T: (310) 553-8833
E: emcpherson@mcphersonrane.com
E: trane@mcphersonrane.com
*Attorneys for 123 Songwriters, NSAI, and SONA*

Kenneth D. Freundlich, Esquire
Freundlich Law
16133 Ventura Blvd. | Ste. 645
Encino, CA 91436
T: (310) 275-5350
*Counsel for Musicologists Amici Curiae*

Professor Mark A. Lemley, Esquire
Stanford Law School
559 Nathan Abbott Way
Stanford, California 94305
T: (650) 723-4605
E: mlemley@law.stanford.edu
*Counsel for Amici Curiae, 19 Intellectual Property Professors*

Scott R. McIntosh, Esquire
Daniel Tenny, Esquire
Civil Division, U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7215
Washington, DC 20530
T: (202) 514-1838
*Attorney for United States of America*

W. Michael Hensley, Esquire
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
T: (714) 852-6835
E: mhensley@alvaradosmith.com
*Counsel for Structured Asset Sales, LLC*
*and the Pullman Group, LLC*

*Respectfully submitted,*

*/s/ Francis Malofiy*

Francis Alexander, llc
Francis Malofiy
Alfred Joseph (AJ) Fluehr

280 N. Providence Road; Suite 1
Media, PA 19063
T:  (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

*Attorneys for Michael Skidmore*

<u>*August 30, 2019*</u>