Nos. 16-56057 & 16-56287

---

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust,
*Plaintiff, Appellant and Appellee,*
v.
Led Zeppelin *et al.*, *Defendants and Appellees*, and
Warner/Chappell Music, Inc.,
*Defendant, Appellee and Appellant.*

---

On Appeal from the United States District Court for the
Central District of California
The Honorable R. Gary Klausner
No. 15-cv-03462 RGK (AGRx)

---

**Reply Brief *Amicus Curiae* of
The Pullman Group, LLC and
Structured Asset Sales, LLC
in Support of Plaintiff-Appellant on *En Banc* Rehearing**

---

W. Michael Hensley
AlvaradoSmith
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
(714) 852-6835
mhensley@alvaradosmith.com
*Counsel for Structured Asset Sales, LLC
and the Pullman Group, LLC*

# TABLE OF CONTENTS

ARGUMENT ...................................................................................................... 3

    I.    Deposit Copies Identify – But Are Not Identical To – Underlying Copyrighted Works ...................................................... 3

    II.   Songwriters Do Not Behave As Defendants-Appellees And Their Amici Suggest ................................................................................ 5

    III.  Plaintiff-Appellant Seeks Damages For Modern Infringements, Not 1971 Infringements ........................................................................ 6

CONCLUSION ................................................................................................... 7

CERTIFICATE OF COMPLIANCE ................................................................. 8

CERTIFICATE OF SERVICE ............................................................................ 9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) ............................7

*White-Smith Music Pub. Co. v. Apollo Co.*, 209 U.S. 1 (1908)................................3

**Other Authorities**

2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (2017).....................3

Copyright Office, "Circular 61: Copyright Registration of Computer Programs" (Rev. Sept. 2017) ......................................................................................................5

# ARGUMENT

## I. Deposit Copies Identify – But Are Not Identical To – Underlying Copyrighted Works

Defendants-Appellees' brief in response to the opening brief of *amici* continues to dance carefully around the fact that *Nimmer on Copyright* said something that terrifies Defendant-Appellees, an acknowledgement by the copyright luminaries that, prior to 1978, the Copyright Office only accepted sheet music as deposit copies for musical compositions, **not** as a limitation on the scope of the copyright, but because at that time that was the only accepted way to "publish" a composition:

> Although *White-Smith* was decided the year before enactment of the 1909 Act, its doctrine became a part of that Act. **It was applied, for example, to phonograph records and to magnetic tape, neither of which could be said to embody intelligible notations and hence did not qualify as copies of the musical works thereby recorded. Because, under the 1909 Act, copyright protection required the placement of notice on copies (and likewise the deposit of copies), it followed that a musical work could not claim copyright unless the notice and deposit requirements were satisfied with respect to an object that constituted a visibly intelligible notation. Therefore**, in order to claim copyright in a musical work under the 1909 Act, the work had to be reduced to sheet music or other manuscript form. (As an alternative, however, a musical composition recorded on a motion picture sound track could be protected under the motion picture copyright, even though not reduced to visibly intelligible notation.)

2 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.05[A] (2017) (*citing White-Smith Music Pub. Co. v. Apollo Co.*, 209 U.S. 1 (1908)) (emphasis added).

We respectfully ask the Court to remember that musical compositions – like dance and other forms of art – are by their nature ephemeral. Musical notation is a way of trying to capture the ephemeral in the physical, but it is and has always been limited in its ability to capture every nuance of the work. Even musical recordings have their limitations, and the different types of recording technology have their respective advantages and disadvantages – just ask any staunch proponent of vinyl records whether they enjoy listening to music on CD or over the Internet!

Similarly, when it comes to computer programs, the Copyright Office allows the deposit of **portions** of the underlying computer code, both because of the sheer size of some programs, as well as the need to maintain secrecy of the code:

> **Code without Trade Secret Material**
>
> If the source code does not contain trade secrets, submit one copy of the first twenty-five pages and last twenty-five pages of the source code for the specific version you want to register….
>
> **Code with Trade Secret Material**
>
> If the source code does contain trade secrets, you must indicate in writing to the Office that the code contains trade secret material. Using one of the following options, submit a portion of the code for the specific version you want to register:
>
> - One copy of the first ten pages and last ten pages, blocking out none of the code;
> - One copy of the first twenty-five pages and last twenty-five

4

> pages, blocking out the portions of the code containing trade secret material, provided the blocked out portions are less than fifty percent of the deposit;…

Copyright Office, "Circular 61: Copyright Registration of Computer Programs" (Rev. Sept. 2017).

Deposit copies do not, and were never meant to be, a limitation on the scope of the copyright they represent. They serve an identifying function, but do not take the place of the underlying creation.

## II. Songwriters Do Not Behave As Defendants-Appellees And Their *Amici* Suggest

Defendants-Appellees, and their supporting *amici*, advance variations on the following argument of the dire consequences that would arise from a determination that deposit copies do not limit the scope of the underlying copyrighted compositions: Songwriters know and assume that copyrights are limited in scope by what is deposited with the Copyright Office, and if that rule is changed, it will stifle creation of new works because the deposit copies will no longer be reliable guides as to the scope of prior copyrights. *See, e.g.*, Brief of *Amici Curiae* (July 30, 2019) (Dkt. 118-2) at 11.

This type of thinking suggests that songwriters not only research what works have been granted copyrighted registrations previously, but further research what was **deposited** with the Copyright Office in connection with those works, in order

5

to determine the scope of those registrations. Even if songwriters behaved in such a way (and surely they do not), deposit copies are not readily available, and the retrieval process is neither simple nor speedy. Songwriters **do not** pull deposit copies from the Copyright Office during their creative process, and thus clarifying the relevance of deposit copies to the scope of copyrighted compositions will have no impact whatsoever on, and no prejudice to, the creative process of songwriters. To suggest otherwise is simply not credible, and the Court should not let this irrational argument cloud its analysis. Moreover, if Defendants-Appellees are suggesting that songwriters knowingly and purposefully limit their copying to works released before 1978 (when deposit copies were limited to sheet music by operation of the Copyright Office), on the mistaken assumption that the registrations for the copied compositions do not cover the portions infringed, we would suggest this Court discourage them from doing so.

### III.     Plaintiff-Appellant Seeks Damages For Modern Infringements, Not 1971 Infringements

In their response to *amici's* opening brief, and their point that copyright infringements are judged based on the law in effect at the time, Defendants-Appellees write "Even if Mr. Pullman were correct, the infringement alleged here arose upon the 1971 release of Stairway to Heaven and applying the copyright law as it existed at that time supports limiting the protection afforded the Taurus

copyright to melody." This is of course incorrect. Under the twin doctrines of the three-year "lookback" and the separate accrual rule:

> [W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period…..Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969-70 (2014). As *amici* understand it, Plaintiff-Appellant is seeking damages for the infringements that accrued during the three-year period preceding the filing of the complaint.

## CONCLUSION

*Amici* thank the Court for accepting this reply brief, and respectfully request that the *en banc* panel issue a ruling in accordance with the foregoing.

Dated: September 13, 2019

                                             Respectfully Submitted,

                                             <u>s/ W. Michael Hensley</u>
                                             (State Bar No. 90437)
                                             Attorney for *Amici Curiae*
                                             *The Pullman Group, LLC and*
                                             *Structured Asset Sales, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1,154 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: September 13, 2019

s/ W. Michael Hensley
(State Bar No. 90437)
Attorney for *Amicus Curiae*
*The Pullman Group, LLC and*
*Structured Asset Sales, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amicus Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 13, 2019.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: September 13, 2019

s/ W. Michael Hensley<br>
(State Bar No. 90437)<br>
Attorney for *Amicus Curiae*<br>
*The Pullman Group, LLC and*<br>
*Structured Asset Sales, LLC*